## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOSEPH MANTHA on behalf of himself and others similarly situated, | : : : | Case No. |
| Plaintiff, | : : : | |
| v. | : : | **JURY TRIAL DEMANDED** |
| QUOTEWIZARD.COM, LLC | : : | |
| Defendant. | : : : | |

_____/

## CLASS ACTION COMPLAINT

### Preliminary Statement

1.      Plaintiff Joseph Mantha ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices.  *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2.      Quotewizard.com, LLC ("QuoteWizard" or "Defendant") sent automated text message calls to cellular telephone numbers, including the Plaintiff, which is prohibited by the TCPA. The calls were also made to some individuals despite their presence on the National Do Not Call Registry, such as the Plaintiff.

3.      The Plaintiff never consented to receive the calls, which were placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on

behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendant.

4.     A class action is the best means of obtaining redress for the Defendant's wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5.     Plaintiff Joseph Mantha is a Massachusetts resident located in this District.

6.     Defendant QuoteWizard.com, LLC is a Delaware corporation with its principal place of business in Seattle, WA. The Defendant has a registered agent of Incorp. Services, Inc., 44 School St., Suite 325, Boston, MA 02108. The Defendant engages in telemarketing into this District, as it did with the Plaintiff.

## Jurisdiction & Venue

7.     The Court has federal question subject matter jurisdiction over these TCPA claims.  *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

8.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the telemarketing call to the Plaintiff was placed into this District.

## The Telephone Consumer Protection Act

9.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

10.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service."  *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

<u>The National Do Not Call Registry</u>

11.     The TCPA specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

12.     The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific 'do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

13.      Pursuant to this statutory mandate, the FCC established a national "do not call" database. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014* ("DNC Order").


<u>The TCPA Prohibits Automated Telemarketing Calls</u>

14.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone deialing system or an artificial or prerecorded voice to any telephone

number assigned to a paging service, cellular telephone service….." *See* 47 U.S.C. §

227(b)(1)(A)(iii),

     15.     The TCPA provides a private cause of action to persons who receive such calls.

*See* 47 U.S.C. § 227(b)(3).

     16.     According to findings by the Federal Communication Commission ("FCC"), the

agency Congress vested with authority to issue regulations implementing the TCPA, such calls

are prohibited because, as Congress found, automated or prerecorded telephone calls are a

greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly

and inconvenient.

The Growing Problem of Automated Telemarketing

     17.     "Robocalls and telemarketing calls are currently the number one source of

consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016),

https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC

chairman).

     18.     "The FTC receives more complaints about unwanted calls than all other

complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer

Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of

1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016),

https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-

consumer-protection-federal-communications-commission-

rulesregulations/160616robocallscomment.pdf.

19.     Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

20.     According to online robocall tracking service "YouMail," 4.5 billion robocalls were placed in September of 2019 at a rate of 150.8 million per day. www.robocallindex.com (last visited October 18, 2019). YouMail estimates that 2019 robocall totals will exceed 60 billion. *See id.*

21.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data (last visited October 18, 2019).

22.     In fiscal year 2019, the FTC received 5.4 million complaints about unwanted telemarketing calls. Of those complaints, 71 percent were about robocalls. Federal Trade Commission, *FTC Releases FY 2019 National Do Not Call Registry Data Book* (October 18, 2019), https://www.ftc.gov/news-events/press-releases/2019/10/ftc-releases-fy-2019-national-do-not-call-registry-data-book?utm_source=govdelivery.

## Factual Allegations

23.     Defendant is in the business of selling its services to insurance agents, and providing those agents with potential customers and new business.

24.     One of Defendant's strategies for generating new business is through telemarketing.

25.     Defendant's strategy for generating new customers involves the use of an automatic telephone dialing system ("ATDS") to send text messages.

26.     Recipients of these calls, including Plaintiff, did not consent to receive them.

27.     The Defendant used this equipment because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone or respond to the text contact through a telephone call.

28.     Through this method, the Defendant shifts the burden of wasted time to the consumers it calls.

Calls to Plaintiff

29.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

30.     In August of 2019, the Plaintiff received multiple automated calls from the Defendant.

31.     The Plaintiff received at least one text message on August 12 and 13, 2019.

32.     The calls were made to Mr. Mantha's cellular telephone number, (508) 353-XXXX.

33.     Mr. Mantha's cellular telephone number is used for residential purposes.

34.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

35.     Mr. Mantha's cellular telephone number was on the National Do Not Call Registry for more than 31 days prior to the first call sent by the Defendant.

36.     A listing on the Registry must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator.

37.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

38.     Some of the text messages sent to Mr. Mantha are below:



39.     In sending the unsolicited text messages at issue, the Defendant employed the use of an automatic telephone dialing system; hardware and/or software with the capacity to store or produce cellular telephone number to be called, using a random or sequential number generator.

40.    This is evident from the circumstances surrounding the text messages, including the text message's commercial content and that they were sent from a long code[1], which is consistent with the use of an automatic telephone dialing system to send text messages.

41.    In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

42.    The Defendant did not have the required prior express written consent to make the telemarketing calls at issue.

43.    The Plaintiff did not request a quote for auto insurance.

44.    Defendant's purpose in making the calls was to sell its services to Plaintiff.

45.    Plaintiff never provided his prior express written consent to receive the calls at issue.

46.    The calls were not necessitated by an emergency.

---

[1] In fact, the telephone number used to send the text messages to Plaintiff is registered to Bandwidth.com, a cloud-based telecom company that provides mass text messaging services. *See* http://www.watchyourdirt.com/w-y/904-440/t-3 (last visited October 18, 2019).

47.     Plaintiff's privacy has been violated by the above-described telemarketing robocalls from, or on behalf of, Defendant. The calls were an annoying, harassing nuisance.

48.     Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for incoming calls.  The calls occupied their cellular telephone lines, rendering them unavailable for legitimate communication.

**Class Action Allegations**

49.     As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

50.     The classes of persons Plaintiff proposes to represent is tentatively defined as:

Class 1

> All persons within the United States to whom: (a) Defendant and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) using the telephone system(s) used in calling Plaintiff cellular telephone number; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

Class 2

> All persons in the United States who, from four years prior to the filing of this action: (1) Defendant (or an agent acting on behalf of Defendant) made (2) two or more telemarketing calls (3) promoting Defendant's products or services; (4) to a residential phone number that was listed on the National Do Not Call Registry for at least 30 days before the first call; and (5) within any twelve-month period.

51.     Excluded from the classes are the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned and any member of such judge's staff and immediate family.

52.     The class as defined above is identifiable through phone records and phone number databases.

53.     The potential class members number at least in the thousands, since automated telemarketing campaigns make calls to hundreds or thousands of individual a day. Individual joinder of these persons is impracticable.

54.     Plaintiff Mantha is a member of both classes.

55.     There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

a.     Whether Defendant violated the TCPA by using automated telemarketing to call cellular telephones;

b.     Whether Defendant placed calls without obtaining the recipients' prior consent for the call;

c.     Whether the Plaintiff and the class members are entitled to statutory damages because of Defendant's actions.

56.     Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the Class arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

57.     Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the classes, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

58.     Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

59.     Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

60.     The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

61.     Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.


**Legal Claims**

**Count One:
Violation of the TCPA's Automated Calling provisions
(On behalf of Plaintiff and Class 1)**

62.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

63.     The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the

cellular telephone numbers of Plaintiff and members of the Class using an ATDS and/or artificial or prerecorded voice.

64.     As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

65.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

66.     The Defendant's violations were negligent and/or knowing.

**Legal Claims**
**Violation of the TCPA's DNC provisions**
**(On behalf of Plaintiff Mantha and Class 2)**

67.     Plaintiff Mantha incorporates the allegations from all previous paragraphs as if fully set forth herein.

68.     The Defendant violated the TCPA by (a) initiating telephone solicitations to persons and entities whose telephone numbers were listed on the Do Not Call Registry, or (b) by the fact that others made those calls on its behalf.  *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

69.     The Defendant's violations were negligent and/or knowing.

70.     As a result of the Defendant's violations of the TCPA, 47 U.S.C. § 227(c)(5), Plaintiff and members of the Class are entitled of an award of up to $500 in damages for each call made in violation of this section. The Court may award up to $1,500 if the violation was found to be "willful or knowing".

71.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant' behalf from making calls advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry.

### Relief Sought

WHEREFORE, for himself and all class members, Plaintiff request the following relief:

A.     Injunctive relief prohibiting Defendant from calling telephone numbers advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry or to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

C.     Because of Defendant's violations of the TCPA, Plaintiff seeks for himself and the other putative Class members $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3) and (c)(5).

D.     An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiff is proper representatives of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

E.     Such other relief as the Court deems just and proper.

**Plaintiff request a jury trial as to all claims of the complaint so triable.**

PLAINTIFF,
By their attorneys

*/s/ Anthony I. Paronich*
Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Alex M. Washkowitz
Jeremy Cohen
CW LAW GROUP, P.C.
188 Oaks Road
Framingham, MA 01701
alex@cwlawgrouppc.com

Edward A. Broderick
BRODERICK LAW, P.C.
99 High St., Suite 304
Boston, MA 02110
Telephone: (617) 738-7080
ted@broderick-law.com

Matthew P. McCue
THE LAW OFFICE OF MATTHEW P. MCCUE
1 South Avenue, Suite 3
Natick, MA  01760
Telephone: (508) 655-1415
mmccue@massattorneys.net

14