UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH MANTHA, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>QUOTEWIZARD.COM, LLC,<br><br>Defendant. | Civil Action No. 1:19-cv-12235-LTS |

**DEFENDANT QUOTEWIZARD.COM, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND/OR PARTIAL MOTION FOR MORE DEFINITE STATEMENT**

Defendant QuoteWizard.com, LLC ("QuoteWizard") submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff Joseph Mantha's ("Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or alternatively a Motion for a More Definite Statement pursuant to Federal Rule of Civil Procedure 12(e).

**INTRODUCTION**

This is a putative class action case that is, in actuality, a case about Plaintiff consenting to and inviting QuoteWizard not to sell him any services or goods, but to provide him informational auto insurance quotes for his benefit at no cost. Notably, Plaintiff's Complaint both omits essential facts to the story (that QuoteWizard obtained his information based on consent and Plaintiff invited further communications), and knowingly gets basic facts wrong (QuoteWizard never made a single telephone call to Plaintiff using an automated dialing service). Even ignoring these untrue allegations and critical omissions for the moment, Plaintiff's Complaint still fails to state a plausible claim for relief.

Although Plaintiff claims that QuoteWizard used an automatic telephone dialing system ("ATDS") to text message him in violation of the Telephone Consumer Protection Act ("TCPA"), Plaintiff provides no factual allegations to support his conclusion that the device used was an ATDS. Rather, Plaintiff openly speculates that QuoteWizard used an ATDS but in no way plausibly suggests the same.

In addition, although Plaintiff vaguely claims that QuoteWizard also violated the TCPA by contacting his number listed on the National Do Not Call Registry, Plaintiff's Complaint proves that no telephone solicitations were made as required to state a claim. Rather, QuoteWizard was merely offering to convey information—auto insurance quotes—to Plaintiff for his benefit at no cost. Informational communications are not within the ambit of the TCPA's do-not-call prohibition, which require something in the nature of a sales pitch.

Finally, Plaintiff's allegation that QuoteWizard contacted him using a telephonic (rather than text message) ATDS is not only hopelessly vague but also false, as Plaintiff's counsel was specifically informed prior to the filing of this lawsuit. In the event the Court does not dismiss that allegation outright for lack of sufficient detail, QuoteWizard requests that Plaintiff be required to specifically set forth in a further pleading the dates and times when QuoteWizard allegedly contacted him by telephone so that QuoteWizard can prove that it never made the alleged ATDS-assisted telephone calls.

**APPLICABLE LEGAL STANDARDS**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." *Thomas v. Rhode Island*, 542 F.3d 944, 948 (1st Cir. 2008) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)). "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1964-65. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009).

Under Fed. Rule Civ. P. 12(e), a party may move for a more definite statement "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." The purpose of Rule 12(e) is to remedy pleadings that "fail[ ] to specify the allegations in a manner that provides sufficient notice." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

## ARGUMENT & AUTHORITIES

### I. Plaintiff's Vague, False Allegations that QuoteWizard Called Him by Telephone Using an ATDS Must Be Dismissed.

There appear to be two different types of alleged communications referenced in Plaintiff's Complaint: telephone calls and text messages. In Section II *infra*, QuoteWizard addresses the alleged text messages sent by QuoteWizard to Plaintiff. In the first instance, however, Plaintiff's vague allegations concerning alleged telephone calls must be dismissed.

Although Plaintiff identifies the dates on which QuoteWizard allegedly sent texts messages and includes screenshots of the same (*see* Complaint, ¶¶ 31, 38), his allegations concerning the alleged telephone calls notably lack any detail about dates and times, and are otherwise hopelessly vague. *See*, *e.g.*, Complaint, ¶ 30 ("In August of 2019, the Plaintiff received multiple automated calls from the Defendant."). In fact, given the lack of detail of alleged telephone calls (as opposed to text messages), it is unclear if Plaintiff is even asserting

3

alleged TCPA violations on the basis of calls made by telephone.  To the extent he is, they must be dismissed.

As evidenced by Plaintiff's text message allegations, Plaintiff has access to his own telephone records and, therefore, the ability to plead with detail the dates and times that QuoteWizard allegedly contacted him by telephone.  His failure to identify the number of times QuoteWizard allegedly contacted him by this method, the dates and times of the same, and factual allegations plausibly suggesting that the calls were made by an ATDS are fatal to any claim that QuoteWizard violated the TCPA by use of telephone.[1]  *See*, *e.g.*, *Despot v. Allied Interstate, Inc.*, 2016 U.S. Dist. LEXIS 118646, at *17-18 (W.D. Pa. Sep. 2, 2016) ("Plaintiff's allegations merely parrot the language of 47 U.S.C. § 227(b)(1)(A)(iii) and state that he received thirteen 'unlawful' calls. Without more, such conclusory allegations fail to plead sufficient facts to support a plausible TCPA claim." (internal record citation omitted)); *Leon v. Target Corp.*, 2015 U.S. Dist. LEXIS 34490, at *6-8 (M.D. Pa. Mar. 19, 2015) ("[T]he Complaint is bereft of even generalized factual allegations to put Target on notice of its purportedly unlawful conduct, *i.e*., the timing and/or the approximate number of offending calls") (dismissing TCPA claim); *Wallack v. Mercantile Adjustments Bureau, Inc.*, 2014 U.S. Dist. LEXIS 53833, at *4-7 (E.D. Mich. April 18, 2014) ("[T]o satisfy the *Twombly/Iqbal* standard with respect to such a TCPA claim, a plaintiff must plead such facts as (i) the number of allegedly unlawful calls received, (ii) the approximate dates and times of these calls, and (iii) circumstances that would support the inference that these calls were placed with a automatic telephone dialing system or an artificial

---

[1] Indeed, QuoteWizard has informed Plaintiff's counsel both before and during this litigation that QuoteWizard never made any automated telephone calls to Plaintiff.  Plaintiff's counsel has conceded that Plaintiff has no knowledge of automated telephone calls made to him by QuoteWizard.  As such, it is QuoteWizard's position that, unless Plaintiff withdraws these allegations, a Fed. R. Civ. P. 11 motion may be appropriate.

4

or prerecorded voice.") ("The complaint here includes no such allegations that, if proven, would establish Plaintiff's entitlement to relief under the TCPA."); *compare Aronson v. Generation Mortgage Co.*, 2014 U.S. Dist. LEXIS 20239, at *1 (W.D. Pa. Feb. 19, 2014) (denying motion to dismiss TCPA claim because the plaintiff had alleged "sufficient details of the date, time and place").

Moreover, similar to his allegations concerning text messages, Plaintiff has also failed to plead sufficient allegations that plausibly suggest that QuoteWizard used an ATDS, even assuming QuoteWizard made the alleged telephone calls (it did not). *See* Section II, *infra*.

In the event the Court determines that Plaintiff's telephone allegations are sufficient to satisfy the *Iqbal* and *Twombly* threshold, then QuoteWizard requests, in the alternative, that Plaintiff be required to set forth in a further pleading additional detail about the alleged telephone calls, including but not limited to: the dates and times of the alleged calls; and factual allegations concerning alleged ATDS use, which QuoteWizard knows that Plaintiff will be unable to do, because no such telephone calls were made. Such relief is appropriate and necessary pursuant to Rule 12(e) if the Court denies QuoteWizard's motion to dismiss these allegations; otherwise, QuoteWizard is left to speculate about when the alleged telephone calls were made and will not be able to sufficiently prepare its factual defenses thereto. *See* Fed. R. Civ. P. 12(e); *Swierkiewicz*, 534 U.S. at 514.

## II. Plaintiff Has Failed to Sufficiently Plead that QuoteWizard Used an ATDS in Sending Him Text Messages.

Pursuant to Count 1, Plaintiff alleges that QuoteWizard used an ATDS to contact him in violation of the TCPA. *See* Complaint, ¶¶ 63-66. However, the critical element of his claim—

the alleged use of an ATDS—is insufficiently pleaded, and therefore the claim must be dismissed.[2]

It is well-settled in this Circuit and others that a plaintiff cannot satisfy the *Iqbal* and *Twombly* standard by merely pleading in a conclusory fashion that the defendant used an ATDS in violation of the TCPA.  *See*, *e.g.*, *Jones v. FMA Alliance Ltd.*, 978 F. Supp. 2d 84, 86-87 (D. Mass. 2013) ("A bare allegation that defendants used an ATDS is not enough. … Simply alleging the use of an ATDS, without more, is insufficient to sustain a TCPA claim." (quotation marks and citations omitted)); *McDermet v. Trinity Heating & Air, Inc.*, 2018 U.S. Dist. LEXIS 22229, at *9 (D. Mass. Feb. 12, 2018) (same).  Plaintiff here attempts to rely on exactly that type of impermissible conclusory pleading.  *See* Complaint, ¶ 25 ("Defendant's strategy for generating new customers involves the use of an automatic telephone dialing system … to send text messages."); *id.*, ¶ 39 ("In sending the unsolicited text messages at issue, the Defendant employed the use of an automatic telephone dialing system; hardware and/or software with the capacity to store or produce cellular telephone number to be called, using a random or sequential number generator.").

Plaintiff was required to do more.  To sufficiently plead the ATDS element of his claim, Plaintiff was required to, at a bare minimum, plead additional allegations that raise a reasonable inference that an ATDS was used to contact him.  Examples of such allegations that may sufficiently infer the use of an ATDS include: the lack of human response when attempting to

---

[2] The elements of an ATDS claim are that "(1) the defendant used an automatic dialing system or an artificial or prerecorded voice, (2) to call a telephone number assigned to a cellular telephone service or to a service for which the called party is charged for the call."  *Breda v. Cellco Parternship*, 934 F.3d 1, 4 & n.4 (1st Cir. 2019).  Prior consent is a total affirmative defense to the claim.  *See id*. at n.4.

have a conversation; the frequency of the contacts; the generic content of the message received;[3] or the timing, length, and volume of the calls. *See McDermet*, 2018 U.S. Dist. LEXIS 22229, at \*9-10 (*citing in part Jones v. Hanna*, No. 14-2346, slip op. at [2] (1st Cir. Mar. 28, 2016) (noting that "timing, length, frequency and volume of the alleged phone calls may permit a reasonable inference that an ATDS was used.")); *see also Jones*, 978 F. Supp. 2d at 86-87; *Gonzalez v. Hosopo Corp.*, 371 F. Supp. 3d 26, 34-35 (D. Mass. 2019) ("[A]llegations of hearing lengthy pauses, clicks, and then silence after answering a call are adequate to raise an inference that ATDS was used" (quotation marks and citation omitted)). Plaintiff fails to allege any of the aforementioned circumstances that would plausibly suggest that QuoteWizard used an ATDS to text message him. In fact, Plaintiff notably omits the important context of the text messages that would undercut any such suggestion, such as that the text messages were part of an interactive conversation between Plaintiff and QuoteWizard.

Moreover, the allegations Plaintiff does include all show that, contrary to his allegation, QuoteWizard did not use an ATDS to text message him. For example, Plaintiff specifically alleges only two messages over the course of two days, *see* Complaint, ¶ 31, not a barrage of messages so frequent as to suggest that they were automated as opposed to personalized. *Compare Ready v. Synchrony Bank*, 2018 U.S. Dist. LEXIS 59069, at \*12 (D. Me. April 6, 2018) (allegations that defendant called plaintiff's phone "324 times in a similar pattern of calls, on consecutive days, at least twice per day, including mornings, nights, and weekends, even after he twice requested that the defendant cease calling" plausibly inferred use of ATDS); *Hewitt v. Synchrony Bank*, 2017 U.S. Dist. LEXIS 203971, at \*6 (W.D. Mo. Dec. 12, 2017) (where plaintiff alleged that defendant called 45 times on consecutive days in a regular pattern, "the

---

[3] Generic content means "free from personalized information." *See Gragg v. Orange Cab Co.*, 924 F. Supp. 2d 1111, 1115 (W.D. Wash. 2013).

number of calls and timing can imply Defendant used an ATDS to place these calls"); *Gonzalez*, 371 F. Supp. 3d at 35 ("[T]he high number of calls in a short period of time, all for the same purpose, raises a plausible inference that an automated system was used.").

In addition, not only has Plaintiff not alleged that the text messages included non-personalized generic content that may be consistent with ATDS use, his inclusion in the Complaint of screenshots of the alleged messages proves the exact opposite: the alleged texts *included* personalized content.[4] In both alleged messages, a person identifying themselves as "Amanda" specifically addresses "Joe" (a shortened version of Plaintiff's first name), and indicates that she is "following up" on his request for an auto insurance quote. *See* Complaint, ¶ 38. Further, the two messages differ in content. *See id*. These messages do not plausibly suggest the use of an ATDS but, quite the opposite, plausibly suggest if not outright prove that an ATDS was not used. *See*, *e.g.*, *Ibey v. Taco Bell Corp.*, 2012 U.S. Dist. LEXIS 91030, at *9-10 (S.D. Cal. June 18, 2012) (finding that plaintiff "fail[ed] to sufficiently plead the use of an ATDS within the meaning of the TCPA," where plaintiff alleged "[i]n a conclusory manner . . . that [d]efendant used an ATDS," and where "[a]ccording to [p]laintiff's allegations, the [call] did not appear to be random but in direct response to [p]laintiff[]").

In an attempt to dress up his speculative and conclusory ATDS allegation, Plaintiff puts forth two allegations that alone and together are wholly insufficient to push his claim over the *Iqbal* and *Twombly* threshold. First, Plaintiff claims that the use of an ATDS is "evident" from the alleged text message's "commercial content." *See* Complaint, ¶ 40. This is a nonsensical

---

[4] Having included the screenshots in his Complaint, Plaintiff is bound by the consequences thereof, including that the messages undermine his conclusory pleading of ATDS use. *See*, *e.g.*, *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000); *Schatz v. Republican State Leadership Committee*, 669 F.3d 50, 55 & n.3 (1st Cir. 2012) (court considers "implications from documents" included in or attached to the Complaint, "[k]nowing that the documents may trump the complaint's allegations if a conflict exists" (quotation and citation omitted)).

contention, as QuoteWizard is a company and *any* messages it sends could be characterized as "commercial content" (however that is defined), whether sent by a live employee or through an automated service. Therefore, this allegation does not bolster Plaintiff's speculative ATDS conclusion whatsoever.

Second, Plaintiff contends that the text messages trace back to a "long code," which he claims is "consistent with the use of an automatic telephone dialing system to send text messages." *See* Complaint, ¶ 40. Plaintiff even speculates that the "long code" associated with the alleged text messages is registered to a "cloud-based telecom company that provides mass text message services." *Id*., ¶ 40 n.1. QuoteWizard notes in the first instance that courts have found the use of a short code (as opposed to long code) is possibly indicative of the use of an ATDS, thus undermining Plaintiff's speculation that use of a standard long code telephone number implies the use of an ATDS. *See*, *e.g.*, *Legg v. Voice Media Grp., Inc.*, 990 F. Supp. 2d 1351, 1354 (S.D. Fla. 2014) (plaintiff included factual allegations sufficient to reasonably infer that defendant used an ATDS where plaintiff alleged that defendant "sen[t] mass text messages … from a 'short code,' which is a type of telephone number typically used by companies to communicate with large numbers of consumers[,]" and where plaintiff "support[ed] his allegations … by reference to [defendant's] presence in over 50 major metropolitan areas and voluminous consumer complaints about text messages received from [defendant's] short code[,]" such that the messages "could only be achieved via an [ATDS.]").

Therefore, the Court cannot credit Plaintiff's pure speculation that the use of a standard long code telephone number implies the use of an ATDS. The use of a ten-digit telephone number in no way infers or denotes the use of an ATDS and actually supports an inference that an ATDS was not used. *See id*.

Moreover, Plaintiff's attempt to link the "long code" to a website noted in a footnote of the Complaint is further speculation, but also does not raise an inference concerning the use of an ATDS. Even a brief look at the website cited in the Complaint (*see* Complaint, ¶ 40 n.1) reveals that the company that owns the website offers numerous services outside of "mass text messaging services." *See id*. Taking as true Plaintiff's assertion that QuoteWizard uses a telecommunications company to send text messages, this infers standard business practice rather than the specific use of an ATDS in this case. Moreover, where an allegation would make it *equally conceivable* that the messages were or were not sent from an ATDS, the allegations are insufficient to state a claim. *See*, *e.g.*, *Freidman v. Massage Envy Franchising, LCC*, 2013 U.S. Dist. LEXIS 84250, at *6-7 (S.D. Cal. June 13, 2013) (finding plaintiffs' allegations that text messages "'were placed via an [ATDS],'" to "do nothing more than assert a speculation," because, even though the messages were "generic[,] impersonal, . . . . [and] similar in content," it was "just as conceivable that [they] were done by hand, or not using an ATDS").[5]

Thus, it is clear that Plaintiff's allegations concerning the use of an ATDS are pure speculation. Plaintiff cannot point to a single factual allegation to support his conclusory contention of ATDS use. Further, the text messages included in his Complaint seriously

---

[5] To be clear, QuoteWizard is not suggesting that Plaintiff is required to identify the type of alleged ATDS used or provide details beyond his personal knowledge, although plaintiffs in TCPA cases often include such details in their pleadings. *See*, *e.g.*, *DeCapua v. Metro. Prop. & Cas. Ins. Co.*, 2019 U.S. Dist. LEXIS 168061, at *4-5 (D.R.I. Sep. 30, 2019) ("Plaintiff alleges that EZ Texting is an ATDS and was used by Defendant to send thousands of spam texts in violation of the TCPA. He contends that Defendant's system 'stores numbers generated randomly or sequentially using basic features of Microsoft Excel, a common software program used, among other things, to store data and interact with external platforms — like EZ Texting.'" (record citation omitted)).

Rather, QuoteWizard is merely holding Plaintiff to the federal pleadings standard, which requires him to state a plausible claim for relief based on factual allegations derived from his personal knowledge, not improper speculation or conclusory labels. If Plaintiff had any indication that an ATDS was actually used, he could plead factual allegations consistent with such use based solely on what he saw and/or heard during the alleged communications and his own telephone records. He has not done so, and his claims must be dismissed with prejudice as a result.

undermine any allegations that an ATDS was used. Rather, they reveal personalized messages sent to Plaintiff. Plaintiff cannot rest on pure speculation to meet his burden in plausibly pleading QuoteWizard's use of an ATDS. *See Twombly*, 550 U.S. at 555 ("The factual allegations must be enough to raise a right to relief above the speculative level."); *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012) (allegations "nominally cast in factual terms" which "amount merely to an assertion that unspecified facts exist to confirm to the legal blueprint" are insufficient to state a claim); *Peñalbert–Rosa v. Fortuño–Burset*, 631 F.3d 592, 595 (1st Cir. 2011) ("[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual." (internal quotation marks omitted)); *Schatz v. Republican State Leadership Committee*, 669 F.3d 50, 55 (1st Cir. 2012) (speculative factual allegations are not considered).

      Plaintiff may argue in response to this motion that discovery could reveal ATDS use and the Court should overlook his pleading deficiencies on this basis. QuoteWizard strongly denies that discovery would so reveal.[6] In any event, Plaintiff has the threshold burden of *plausibly*

---

[6] The scope of the current definition of an ATDS is subject to debate amongst litigants and courts. However, even accounting for differences in opinion and using the interpretation most helpful to Plaintiff (which QuoteWizard does not adopt), the definition at a minimum requires that there not be human intervention at the time the alleged calls are dialed or the messages sent. *See, e.g.*, *DeCapua v. Metro. Prop. & Cas. Ins. Co.*, 2019 U.S. Dist. LEXIS 168061, at *7-8 (D.R.I. Sep. 30, 2019) (defining ATDS as "a system with the capacity to generate numbers to be called randomly or sequentially without human intervention") ("The EZ Texting system as described in Plaintiff's Complaint fails to meet this definition. It requires human intervention to upload and store a list of phone numbers from another source such as Microsoft Excel. It also requires human intervention to select the groups of stored phone numbers to be called and then to type the message that will be sent and select the time of delivery. Finally, it requires human intervention to review the information submitted and hit a send button." (internal record citations omitted)). *See also Breda v. Cellco Partnership*, 934 F.3d 1, 4 n.3 (1st Cir. 2019) ("[I]t suffices for present purposes to think of an automatic dialing system as a piece of equipment exhibiting the capacity to dial numbers without human intervention." (quotation and citation omitted)).

This Court need not wade into these muddy waters at this stage because Plaintiff's allegations are so insufficient that they fail to plausibly suggest anything even <u>automated</u> about the alleged messages sent. But if Plaintiff sought to amend his Complaint to add more detail or the case reached a factual stage,

11

*pleading* the existence of an ATDS.  Plaintiff has a more fundamental obligation under Fed. R. Civ. P. 11 of only advancing factual contentions that have or are likely to have evidentiary support.  *See* Fed. R. Civ. P. 11(b)(3).  Plaintiff cannot plead the use of an ATDS consistent with this pleading burden and his Rule 11 obligations.  That it is conceivable to Plaintiff that QuoteWizard may have used an ATDS to contact him is insufficient (not to mention factually untrue).  *See Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010) (Souter, J.) ("The make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief."); s*ee Menard*, 698 F.3d at 44 & n.5 (although a plaintiff may rely upon information and belief to plead a claim (*i.e.*, based on "secondhand information that [the asserting party] believes to be true"), at base the plaintiff must "set forth" "any facts to support this assertion"; otherwise, the allegations constitute "pure speculation")).

Plaintiff must have reason to believe that an ATDS was used and then plead factual allegations plausibly suggesting its use.  Plaintiff has failed to do so, and Count 1 must be dismissed as a result.  *See Kruskall v. Sallie Mae Service, Inc.*, 2016 WL 1056973, at *3 (D. Mass. March 14, 2016) (finding insufficient allegations to plead the use of an ATDS and granting motion to dismiss where plaintiff only parroted the statutory definition and alleged that defendant "initiated automated phone calls that monopolized the phone line, came in at all hours, … were placed within as little as 15 minutes of each other[,] … [and where] many of these calls were prerecorded, which prohibited her from voic[ing] her complaints to a real person" (quotations and record citations omitted)); *Ibey*, 2012 U.S. Dist. LEXIS 91030, at *9-10 (plaintiff

---

Plaintiff would still fail at this step because he could not—consistent with Rule 11—plead a lack of human intervention.

failed to plead use of ATDS where plaintiff alleged in conclusory manner that it was used, and allegations evidenced that call was not random but in direct response to plaintiff).

### III. Plaintiff Has Failed to Sufficiently Plead "Telephone Solicitations" to Support Count 2.

Pursuant to Count 2, Plaintiff alleges that the text messages sent by QuoteWizard violated the TCPA where the number to which they were sent is listed on the National Do Not Call Registry. *See* Complaint, ¶¶ 67-71. Among other things, Plaintiff is required to plausibly plead that QuoteWizard's communications with him constituted "telephone solicitations." *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). The TCPA defines "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services . . . ." 47 C.F.R. § 64.1200(f)(14). Generally, courts evaluate the question of whether a message or phone call constitutes a telephone solicitation by looking at the context of the message and by using "a measure of common sense." *See*, *e.g.*, *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012).

Plaintiff's allegations fail to evidence that QuoteWizard's alleged communications with Plaintiff were for the purpose of encouraging his purchase or rental of, or investment in, property, goods, or services. The only allegations arguably related to this element of the claim are wholly insufficient. Plaintiff, for example, alleges in a conclusory fashion that QuoteWizard "initiat[ed] telephone solicitations to persons … whose telephone numbers were listed on the Do Not Call Registry." *See* Complaint, ¶ 68. This allegation merely parrots the regulation's use of the phrase "telephone solicitation" and is therefore insufficient to plausibly plead his claim. *See* 47 C.F.R. § 64.1200(c)(2); *see also Iqbal*, 556 U.S. at 681 (holding that "conclusory" allegations are "not entitled to be assumed true"); *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 43 (1st

13

Cir. 2013) ("allegations that merely parrot the relevant legal standard are disregarded"); *In re Curran*, 855 F.3d 19, 25 (1st Cir. 2017) ("[T]he court must set aside the complaint's conclusory averments. … [T]he court need not give weight to bare conclusions, unembellished by pertinent facts." (internal quotation marks and citations omitted)).

In addition, Plaintiff alleges that "Defendant's purpose in making the calls was to sell its services to Plaintiff," *see* Complaint, ¶ 44, but this is an impermissible speculative allegation concerning QuoteWizard's internal motives. *See Schatz*, 669 F.3d at 55 (speculative factual allegations are not considered). Beyond these speculative and conclusory allegations, Plaintiff does not include a single *factual* allegation that would support an inference that the alleged communications were made to encourage Plaintiff to buy services or goods.

In fact, Plaintiff's screenshots of the alleged text messages included in his Complaint again submarine his attempt to plead a claim. Those alleged text messages state:

> Hey, it's Amanda following up. When's a good day for us to talk Joe? You requested a quote on auto insurance. Message me if you're still interested! …
>
> Hi this is Amanda! Are you looking for an accurate estimate, Joe? We can review your options together. Call me when you're free, it won't take long!

*See* Complaint, ¶ 38.

The alleged messages show that QuoteWizard was not encouraging Plaintiff to purchase anything. Rather, the messages evidence an attempt to provide information—auto insurance quotes—to Plaintiff at no charge and for his benefit. The messages do not encourage Plaintiff to purchase *anything*, whether from QuoteWizard or from anyone else, whether impliedly or expressly. It is well-settled that this type of informational communication does not fall within the ambit of telephone solicitations. *See*, *e.g.*, *Williams-Diggins v. Republic Servs.*, 2019 U.S. Dist. LEXIS 199054, at *3-4 (N.D. Ohio April 25, 2019) ("Informational, non-solicitation

14

telephone calls to numbers on the do-not-call registry do not violate the TCPA."); *Warnick v. Dish Network LLC*, 301 F.R.D. 551, 558 n.3 (D. Colo. 2014) ("[O]nly telephone solicitations . . . are governed by the national [do-not-call] list. Informational calls are not included in the [do-not-call] type of calls.").

Even if QuoteWizard had a good or service to sell to Plaintiff—an allegation Plaintiff neither made nor could support—that is insufficient to infer that QuoteWizard was attempting to sell that service or good to Plaintiff in the communications at issue. Thus, insofar as Plaintiff argues that there must be some commercial gain to result from the communications at issue, that does nothing to bolster his insufficient allegations. *See*, *e.g.*, *Vallianos v. Schultz*, 2019 U.S. Dist. LEXIS 174729, at *3, 8-11 (W.D. Wash. Oct. 8, 2019) (granting motion to dismiss do-not-call claim under TCPA where text messages at issue that invited plaintiffs to view defendant's speech were not "telephone solicitations" even though defendant was also selling and promoting book on website linked in messages).[7]

In fact, Plaintiff more or less concedes that QuoteWizard never encouraged him to buy or rent any services. He impliedly claims that QuoteWizard's intent was to determine his interest in auto insurance quotes so QuoteWizard could then inform insurance agents about potential leads. *See* Complaint, ¶ 23 ("Defendant is in the business of selling its services to insurance agents, and providing those agents with potential customers and new business."). But courts have rejected attempts to interpret the definition of "telephone solicitation" broadly to include situations where the plaintiff suspects that the communications at issue will eventually leads to the purchase of goods or services. For example, in *Spiegel v. Reynolds*, 2017 U.S. Dist. LEXIS 167777, at

---

[7] Moreover, Plaintiff would have to plead and prove *two* telephone solicitations made by QuoteWizard to sustain his do-not-call claim. *See* 47 U.S.C. § 227(c)(5). Plaintiff has not sufficiently pleaded a single one.

15

\*12-14 (N.D. Ill. Oct. 11, 2017), the Court dismissed a TCPA claim based on calls where a charity asked for donations. *Id*. The plaintiff argued that the donations would be used in turn to purchase goods or services for someone else and therefore constituted telephone solicitations. *Id*. at \*13. The Court rejected this argument, noting that "neither the statutory nor the regulatory text uses words like 'indirectly purchase' or 'purchase for the benefit of another person.'" *Id*. at \*13-14. Thus, it is imperative that the challenged communication constitutes a *direct* attempt to encourage the purchase or rental of property, goods, or services. *Id*. ("Under the governing text, when ACS asked for donations, it sought nothing more than gifts from the call recipients, not any purchase, rental, or investment.").

Because Plaintiff has failed to plead *any* facts to suggest the existence of two telephone solicitations, and because the text of the alleged messages in his Complaint show in any event that the alleged communications constituted offers to provide information, Count 2 must be dismissed. *See Joseph v. ARS Nat'l Servs.*, 2014 U.S. Dist. LEXIS 189467, at \*21-22 (N.D. Ga. Feb. 21, 2014) ("Joseph does not allege that ARS made any calls to his cellular phone in an attempt to encourage him to make a purchase or investment, or otherwise to solicit business of any kind. … Because the TCPA's do-not-call provisions apply only to 'telephone solicitations,' however, Joseph's failure to allege that any of the calls were solicitations within the meaning of the TCPA is fatal to his claim.").

## CONCLUSION

If needed, the evidence of this case will show that QuoteWizard obtained Plaintiff's contact information and then contacted Plaintiff by consent; that Plaintiff responded to the communications and invited further contact; that no automated telephone calls were made; and that QuoteWizard did not use an ATDS to text message Plaintiff. In other words, this is a case

16

about the conveyance of information at the Plaintiff's request by humans, not the unsolicited attempt to sell a service or good through the use of automated systems. None of what QuoteWizard did or is alleged to have done violates the TCPA.

But even omitting these truths from his Complaint in an attempt to overcome the *Iqbal* and *Twombly* threshold, Plaintiff has still failed to state a plausible claim. Primarily, he has not pleaded and cannot plead the use of an ATDS; he likewise cannot plead a telephone solicitation. Leave to amend would be futile; as noted, the actual facts of the case are far worse for Plaintiff that what is set forth in his Complaint. QuoteWizard requests that the Court grant its motion and dismiss Plaintiff's Complaint with prejudice.

>Respectfully submitted,
>
>QuoteWizard.com, LLC
>By its attorneys,
>
>*/s/ Kevin P. Polansky*
>Kevin P. Polansky (BBO #667229)
>kevin.polansky@nelsonmullins.com
>Christine M. Kingston (BBO #682962)
>christine.kingston@nelsonmullins.com
>Nelson Mullins Riley & Scarborough LLP
>One Post Office Square, 30th Floor
>Boston, MA 02109
>(t) (617)-217-4700
>(f) (617) 217-4710

Dated: December 20, 2019

## CERTIFICATE OF SERVICE

I, Kevin P. Polansky, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: December 20, 2019                              */s/ Kevin P. Polansky*