IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOSEPH MANTHA on behalf of themselves and others similarly situated, | : : : : Case No. 1:19-cv-12235-LTS : : : : : : : |
| Plaintiff, | |
| v. | |
| QUOTEWIZARD.COM, LLC | |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND/OR FOR MORE DEFINITE STATEMENT (ECF Dkt. #17)**

Plaintiff Joseph Mantha's ("Mr. Mantha") claim under the Telephone Consumer Protection Act, 47 U.S.C § 227 ("TCPA") is well pled. As to Count I of the Complaint, he has directly and plausibly alleged that the defendant QuoteWizard.com, LLC ("QuoteWizard") used an automated telephone dialing system ("ATDS") to send text telemarketing solicitations to his cellular telephone number seeking to sell auto insurance.[1] Not only does Mr. Mantha allege use of an ATDS, but in a pre-suit investigation, he connected the exact number used to send the text solicitations to an entity called Bandwidth.com- an entity that promotes its capacity to send text messages *en masse*. Considering that discovery has not yet commenced, Mr. Mantha has raised a plausible inference that an ATDS was used to send text messages to his cell phone. Similarly, as to Count II of the Complaint, Mr. Mantha has adequately pled that the text messages sent to his

---

[1] QuoteWizard is a telemarketer hired by insurance companies to telemarket to consumers and to then "live transfer" over to the insurance company client consumers interested in purchasing insurance goods or services.  *See* https://quotewizard.com/marketing. Mr. Mantha alleged in his Complaint that QuoteWizard was in the business of selling its services to insurance agents, and providing those agents with potential customers and new business. *See* ECF Dkt. #1 at ¶23.

cell phone were 'telephone solicitations' subject to the TCPA, as the purpose of the texts was to sell him auto insurance. QuoteWizard's claim, via this motion (ECF Dkt. #17), that Mr. Mantha has failed to plead ATDS use with sufficient specificity, and has failed to plead a 'telephone solicitation' are meritless and the motion should be DENIED.

## I.  FACTS

Mr. Mantha, a Massachusetts resident, alleges that on August 12 and 13, 2019, he received text telemarketing solicitation on his cellular telephone number that was listed on the National Do Not Call Registry ("DNC"). *See* ECF Dkt. #1 at ¶5, 31.

The text telemarketing messages read:[2]

> Hey, it's Amanda following up. When's a good day for us to talk Joe? You requested a quote on auto insurance. Message me if you're still interested!
>
> Tuesday 3:15 PM
>
> Hi this is Amanda! Are you looking for an accurate estimate, Joe? We can review your options together. Call me when you're free, it won't take long!

*Id.* at ¶38.

The Complaint further alleged that in sending the above unsolicited text messages, QuoteWizard employed the use of an ATDS, defined as hardware and/or software with the capacity to store or produce cellular telephone number to be called, using a random or sequential number generator. *Id.* at ¶39. Mr. Mantha also alleged that QuoteWizard's use of ATDS was evident from the circumstances surrounding the text messages, including the text message's

---

[2] Curiously, QuoteWizard complains that Mr. Mantha's allegations "lack any detail about dates and times, and are otherwise hopelessly vague." Pg. 3. The Complaint, however, explicitly states the illegal text messages were received on August 12, 2019 and August 13, 2019. In addition, the *exact text* of the text messages themselves were reproduced in the body of the Complaint. *See* ECF Dkt. #1 at ¶31, 38.

commercial content and that they were sent from a long code SMS. *Id.* at ¶40. Going even further, prior to filing suit, Mr. Mantha conducted an independent investigation and connected the telephone number used to send the text messages was registered to Bandwidth.com, a cloud-based telecom company that provides ***mass*** text messaging services to its clients. *See* http://www.watchyourdirt.com/w-y/904-440/t-3 (last visited October 18, 2019). *Id.* at ¶40, fn 1.

## II.   LEGAL STANDARD

In order to state a claim upon which relief can be granted, a complaint must contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim that is plausible on its face." *Twombly*, 550 U.S. at 570. While Rule 8(a)(2) "does not require detailed factual allegations … it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal,* 556 U.S. at 678 (citation and internal quotations omitted). A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Id.* (citation omitted).

## III.   ARGUMENT

### A. Mr. Mantha Has Adequately Pled Text Telemarketing Via ATDS

The TCPA defines an ATDS as "equipment which has the capacity — (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). *See Gonzalez v. Hosopo Corp.*, 371 F. Supp. 3d

4

26, 29-34 (D. Mass. 2019) (to qualify as an ATDS under the TCPA, a device need only have the capacity to do one of the following: either (1) "store . . . telephone numbers to be called" and "dial such numbers," *or* (2) "produce telephone numbers to be called, using a random or sequential number generator" and "dial such numbers.")

As noted above, the operative Complaint alleges:

- QuoteWizard employs a strategy of generating new customers by sending text messages via ATDS. *See* ECF Dkt. #1 at ¶25.

- Recipients of these calls did not consent to receive them. *Id.* at ¶26.

- QuoteWizard used ATDS equipment because it allowed for thousands of calls to be placed at one time. *Id.* at ¶27.

- Quote Wizard sent text telemarketing calls to Mr. Mantha on August 12 and 13, 2019. *Id.* at ¶31.

- In sending the text messages at issue, QuoteWizard employed the use of an ATDS. *Id.* at ¶39.

- The content of the texts were commercial in nature. *Id.* at ¶38.

- The code used by QuoteWizard to send the text telemarketing messages was registered to Bandwidth.com, a cloud based telecom company that provides its clients with mass text messaging services. *Id.* at ¶39.

- Mr. Mantha did not consent to receive the text telemarketing calls at issue, and did not request a quote for auto insurance. *Id.* at ¶42-43.

QuoteWizard claims the Complaint should be dismissed as Mr. Mantha has failed to plead with specificity facts sufficient to allege that an ATDS was used to send the text message at issue. *See* ECF Dkt. #17.³ Mr. Mantha, however, did not just allege ATDS use in his

---

³ In support, QuoteWizard cites to a plethora of cases that involved telemarketing calls to telephones in which a consumer had an opportunity to interact with the telemarketer and to note indicia of ATDS use such as a click or a pause prior to transfer. QuoteWizard then points to the Complaint and notes a lack of similar detailed allegations where consumers received non text telemarketing calls on their cell phones. *See* ECF Dkt. #17 at pg. 6-7. Of course, this case

Complaint, including lack of consent and commercial content, but he actually conducted his own pre-suit investigation and connected the SMS code used to send the text messages at issue to Bandwith.com, an entity who markets itself to clients- such as QuoteWizard- for its capacity to transmit text messages *en masse*.[4] And- of course- the manner in which text messages are delivered *en masse* is via ATDS.

Allegations far less specific than those made by Mr. Mantha have been found sufficient to give rise to a reasonable inference that an ATDS was utilized to send text telemarketing messages. See *Cline v. Ultimate Fitness Grp., LLC.,* 2018 U.S.Dist.LEXIS (MD Fla. June 7, 2018 (court denies motion to dismiss where plaintiff alleged receipt of two text calls, did not consent, and the texts were delivered by ATDS); *Serban v. CarGurus, Inc.,* 2015 U.S.Dist.LEXIS 122066 (N.D. IL Sept. 8, 2016) (allegations of use of ATDS to send text telemarketing messages are sufficient where plaintiff denied consent and noted SMS code used was likely associated with mass telemarketing); *Izak v. Draftkings, Inc.*, 191 F.Supp.3d 900 (ND IL June 13, 2016) (screenshot of text and allegation that message was sent to thousands of others sufficient to allege use of ATDS).

QuoteWizard's contention that since the texts at issue were sent via long form SMS code, such is indicative that an ATDS was not used, falls far short. Bandwidth's own web-site notes that a "high volume" of text messages can be delivered by either short or long SMS code. S*ee* https://www.bandwidth.com/messaging/toll-free-sms/. Courts have also recognized that SMS

---

involves text messages. There was no interaction between Mr. Mantha and QuoteWizard in which an ATDS clicking sound or a pause before transfer could be evidenced. Accordingly, all of these cases are easily distinguished.

[4] *See* https://www.bandwidth.com/messaging/toll-free-sms/ (web site of company used by QuoteWizard to send text solicitations to Mr. Mantha promoted "Ready to Deliver Millions of Messages").

text messages may be transmitted *en masse* via both long and short SMS code. *See Wijesinha v. S. Fla. Mgs*, 2019 U.S. Dist. LEXIS 93030 (S.D. Fl. June 4, 2019) (noting adequate ATDS allegations where "[t]he phone number used by Defendant is a 'long code' that enables it to send text messages en masse, while deceiving recipients into believing the message was personalized and sent from an individual"); *Gerrard v. Acara Solutions Inc.*, Civil Action No. 1:18-cv-01041 (WD. NY., June 27, 2019) ECF NO. 20, *30-31 (noting that in the context of a defendant's business of sending recruitment messages, the use of long form SMS to send text messages raises a reasonable inference of ATDS use).

Of course, absent discovery, it is impossible for a plaintiff such as Mr. Mantha to know the exact technological capacities of the dialing system used to place the call, and courts do not require plaintiffs to plead facts they have no way of knowing. *See Shelton*, 2019 U.S. Dist. LEXIS 59235, at *32-34 (EDPA, Civil Action No. 17-4063, April 5, 2019) ("[W]e cannot require a plaintiff to make allegations regarding the technical aspects of a device, including the precise level of human intervention needed to place a call, when he or she has no way of knowing those details prior to discovery."); *Whitehead v. Ocwen Loan Servicing, LLC*, No. 2:18-cv-470-FtM-99MRM, 2018 U.S. Dist. LEXIS 182386, at *11 (M.D. Fla. Oct. 24, 2018) ("There is no way for [the plaintiff] to know the technological capabilities of the device(s) used to place the calls at issue … short of [the plaintiff] learning that information in discovery."); *Wilson v. Quest Diagnostics Inc.*, No. 2:18-11960, 2018 U.S. Dist. LEXIS 212023, at *8-11 (D.N.J. Dec. 10, 2018) ("During discovery, the parties can explore the actual configuration of the dialing equipment used to call Plaintiff, as such evidence could shed light on whether Quest used a device capable of making autodialed calls"). Rather, all the plaintiff must do at the pleading stage is make indirect allegations as to the surrounding circumstances that are sufficient to raise

an inference that an automatic dialer was utilized. *Scott v. 360 Mortg. Grp., LLC*, No. 17-cv-61055, 2017 U.S. Dist. LEXIS 207513, at *17 (S.D. Fla. Dec. 14, 2017). That is exactly what Mr. Mantha has done here, and the allegations as pled in the Complaint suffice to allege illegal telemarketing via ATDS and text message.

QuoteWizard's contention that Count I of the Complaint should be dismissed for failure to plead ATDS, pursuant to 47 U.S.C § 227(b) should be DENIED.

### B.  Mr. Mantha Has Adequately Pled Text Telemarketing To A DNC Registered Number

Next, QuoteWizard contends that Count II of the Complaint should also be dismissed. Count II alleges that QuoteWizard violated the DNC provisions of the TCPA, 47 U.S.C § 227(c) by sending Mr. Mantha two text messages to his DNC listed cell phone. *See* ECF Dkt. #1 at 67. QuoteWizard notes that the DNC provisions of 47 U.S.C § 227(c) only apply to 'telephone solicitations' initiated for the purposes of selling goods or services. *See* ECF Dkt. #17 at pg. 13, quoting 47 C.F.R. § 64.1200(f)(14). QuoteWizard admits that determining whether or not a call is a 'telephone solicitation' requires a "common sense" inquiry that looks at the "context of the message." *Id.* quoting *Chesbro v. Best Buy Stores, L.P.,* 705 F.3d 913, 918 (9th Cit. 2012).

Here, as detailed above, QuoteWizard sent Mr. Mantha two text messages seeking to send him auto insurance quotes, and inviting Mr. Mantha to then confer with QuoteWizard to review his "options." The context of the texts was to sell Mr. Mantha auto insurance. The further context in which the calls were made is that QuoteWizard is paid by its insurance clients to telemarket to consumers and to then transfer over leads of consumers interested in purchasing insurance goods or services. *See* https://quotewizard.com/marketing.

Leaving all 'common sense' behind, and in a further effort to evade TCPA liability, QuoteWizard claims that its text messages to Mr. Mantha- that clearly sought to ultimately sell

8

auto insurance- are somehow not solicitations- but rather an attempt merely to provide Mr. Mantha with "information" which did not require Mr. Mantha to "purchase anything." *Id.* at pg. 14. In *Chesbro v. Best Buy Stores, L.P.,* 705 F.3d 913, 918 (9th Cit. 2012), the key case relied on by QuoteWizard in support of its contention that the calls at issue were not solicitations, the Ninth Circuit further acknowledged that an overt sales pitch need not be made on the call itself for it to be a 'telephone solicitation' and that the key inquiry is whether the call is "motivated in part by the desire to ultimately sell additional goods or services. *Id.* If the call is intended to offer property, goods, or services for sale either during the call, or in the future… that call is an advertisement." *Id.*

The texts at issue here obviously and ultimately sought to sell Mr. Mantha auto insurance and, as such, the calls are 'telephone solicitations' subject to the regulation of the TCPA. QuoteWizard's contention to the contrary has been squarely rejected by the Federal Communications Commission, the agency charged with implementing the TCPA, which noted that call that has as its basis *any* marketing purpose, even if the marketing pitch does not happen during the call itself, is a telemarketing call for purposes of the TCPA. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14098-99, ¶ 142 (July 5, 2003).

QuoteWizard claims its "informational communications" to Mr. Mantha were similar to the calls in *Williams-Diggins v. Republic Servs.*, 2019 U.S. Dist. LEXIS 199054 (N.D. Ohio April 25, 2019). *Id.* at 14. In *Williams-Diggins*, the *pro se* plaintiff filed suit against her garbage collector claiming its calls to her DNC listed number were in violation of the TCPA. The calls at issue were, however, related to "interruptions in garbage collection service." *Id.*at *2. Here, the texts at issue undeniably sought to sell Mr. Mantha auto insurance on behalf of an insurance company client who hired QuoteWizard to make such text calls. The contention that the texts to

9

Mr. Mantha were not 'telephone solicitations' defies 'common sense' and ignores the context in which the calls were made- an effort by QuoteWizard to sell insurance to consumers on behalf of its insurance company clients. To equate a text intended to sell auto insurance, with a call regarding garbage service interruption is preposterous.

The Motion to Dismiss for failing to plead a 'telephone solicitation' pursuant to 47 U.S.C § 227(c) should be DENIED.

## IV.   CONCLUSION

For the foregoing reasons, QuoteWizard's Motion to Dismiss and its Motion for A More Definite Statement (ECF Dkt. #17) must be DENIED.

PLAINTIFF,

By their attorneys

/s/ Matthew P. McCue

Matthew P. McCue
THE LAW OFFICE OF MATTHEW P. MCCUE
1 South Avenue, Suite 3
Natick, MA 01760
Telephone: (508) 655-1415
mmccue@massattorneys.net

Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Alex M. Washkowitz
Jeremy Cohen
CW LAW GROUP, P.C.
188 Oaks Road Framingham, MA 01701
alex@cwlawgrouppc.com

Edward A. Broderick
BRODERICK LAW, P.C.
99 High St., Suite 304
Boston, MA 02110

                                                   Telephone: (617) 738-7080
                                                   ted@broderick-law.com

Dated:  January 3, 2020

## CERTIFICATE OF SERVICE

     I hereby certify that on January 3, 2020, I electronically transmitted the foregoing to all counsel of record via the electronic filing system.

                                        By:  */s/ Matthew P. McCue*
                                                 Matthew McCue