# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH MANTHA, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>QUOTEWIZARD.COM, LLC,<br><br>Defendant. | Civil Action No. 1:19-cv-12235-LTS<br><br><br><br>*Leave to File Granted on 1/10/2020 [ECF No. 22]* |

### DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION

Defendant QuoteWizard.com, LLC ("QuoteWizard") submits its Reply to Plaintiff Joseph Mantha's ("Plaintiff") Opposition to QuoteWizard's Motion to Dismiss [ECF Nos. 16-17].

**I.  Plaintiff Concedes that Telephone Calls Are Not a Part of this Case.**

Plaintiff concedes in his Opposition, as he must, that his two TCPA claims are solely premised on alleged text messages rather than telephone calls. *See* Opp., pp. 1-2 (referencing two claims based on alleged "***text*** telemarketing solicitations" and "***text messages***") (emphasis added).[1] As such, telephone calls are not a part of this case. Plaintiff's proposed class definitions must be reformed to so reflect if his individual claims and putative class allegations survive QuoteWizard's initial motions. *See* Complaint, ¶ 50 (pleading two proposed classes based on alleged "non-emergency telephone calls" and "telemarketing calls").

---

[1] Where Plaintiff's attorneys intend to allege both telephone calls and text messages, unlike here, they take care to differentiate them. *See*, *e.g.*, *Tiefenthaler v. Amerisave Mortgage Corp.*, No. 1:19-cv-02862-AT (N.D. Ga.), ECF No. 1 (Complaint), ¶ 5 ("[Defendant] made calls and sent messages"); *id*., ¶ 57 (pleading putative "[r]obocall" and "[r]obotexting" classes).

## II.    Plaintiff Has No Factual Knowledge of ATDS Use.

Where ATDS text message allegations have survived a motion to dismiss, the plaintiff has alleged *some* factual allegations relating to the messages themselves to suggest ATDS use—unlike here.  In *McDermet v. Trinity Heating & Air, Inc.*, 2018 U.S. Dist. LEXIS 22229, at *11 (D. Mass. Feb. 12, 2018), the plaintiff alleged that he received four text messages from the same person with the same general content at 9:00 p.m. or later on the same day.  *Id*. The Court found that "[t]he identical phrasing and time frame during which these messages were received could lead to a reasonable inference an ATDS was used."  *Id*.  In other cases, plaintiffs have pleaded that the messages were generic and random; were sent to others as part of a mass campaign; or that the messages traced back to a "short code."  *See*, *e.g.*, *Izsak v. Draftkings, Inc.*, 191 F. Supp. 3d 900, 904 (N.D. Ill. 2016) (generic message; defendant had sent the same message to thousands of other numbers; and plaintiff called the number identified in the text and heard a prerecorded message); *Serban v. CarGurus, Inc.*, 2016 U.S. Dist. LEXIS 122066, at *11-12 (N.D. Ill. Sep. 8, 2016) (message was "both promotional and generic in nature"; defendant used "SMS short code" to send mass text messages; and defendant's service provider reported that defendant had used SMS short codes to transmit possibly millions of texts similar to the one received by plaintiff).

Notably, Plaintiff defends his pleading by pointing to *Izsak* and *Serban*, *supra*.  *See* Opp., p. 6. [2]  But Plaintiff pleaded none of the factual allegations noted above, nor did he include screenshots of a generic, promotional text message.  To the contrary, the text messages are personalized in nature.  *See* Complaint, ¶ 38.  In addition, Plaintiff's alleged key evidence of ATDS

---

[2] Plaintiff also cites *Cline v. Ultimate Fitness Grp., LLC*, 2018 U.S. Dist. LEXIS 98898 (M.D. Fla. June 7, 2018), but a review of the Complaint reveals that plaintiff pleaded far more than Plaintiff here.  *See Cline*, No. 6:18-cv-00771, ECF No. 1, ¶¶ 12-16 (including screenshots of texts where plaintiff indicated in response to message from "Kyla" that he did not want to be contacted, but "Kyla" contacted him again; and pleading that defendant partnered with "Textmunication," a company that advertises in the fitness industry using Internet-to-phone text messages consistent with ATDS).

use is that the messages were sent from a "long code."  But Plaintiff's attorney here has alleged to the complete contrary in a different case that the use of a "short code" is actually indicative of an ATDS.  *See Tiefenthaler v. Amerisave Mortgage Corp.*, No. 1:19-cv-02862-AT (N.D. Ga.), ECF No. 1, ¶ 37("[A] text message containing an SMS short code is characteristic of a message sent using an ATDS that dials a large volume of telephone numbers from a prepared list.").  In fact, Plaintiff cites a case in his Opposition noting that the use of an ATDS is closely associated with *short code* numbers.  *See Gerrard v. Acara Sols. Inc.*, 2019 U.S. Dist. LEXIS 108038, at *39 & n17 (W.D. N.Y. June 27, 2019) ("Another indicator supporting an inference of an autodialer use is … [the use of] a so-called "short-code"); ("A short-code is a six-digit number that allows high-volume, application driver messaging. Long-codes are meant for person-to-person communications and can send only 1 message per record." (quotation and citation omitted))

In truth, *any* active telephone line (short or long code) has the ability to function as an ATDS if intended and programmed that way; but, as noted, ATDS devices are typically associated with short code numbers.  *See id*. at *39-40.  Plaintiff has not pleaded the use of a short code.  Therefore, Plaintiff's allegation is essentially that an active telephone number contacted him by text message; this is not at all indicative of the use of an ATDS.  *See id*.  Stripped of its conclusory pleading, all that remains is an allegation that Plaintiff's attorney allegedly traced the number that sent the messages to a website that, among other services not mentioned by Plaintiff, allegedly provides mass texting services.  There is no factual allegation that QuoteWizard actually used an ATDS <u>in this case</u>.  Plaintiff's allegations are driven solely by his attorneys' ever-changing ATDS legal theories, <u>not</u> based on Plaintiff's factual knowledge.

### III.     Plaintiff's Speculative New Theory Fails to State a Do-Not-Call Claim.

Plaintiff now claims for the first time that "QuoteWizard is paid by its insurance clients to telemarket to consumers and to then transfer over leads of consumers interested in purchasing insurance goods or services." *See* Opp., p. 8.  He insists this must have been the motive behind QuoteWizard's messages to him.  However, Plaintiff never alleged that the purpose of the messages was to sell auto insurance by and through a different company. *See* Complaint.  This new theory is beyond the four corners of the Complaint, but also legally insufficient.

QuoteWizard's alleged business model and the chain of events that may follow the messages at issue are irrelevant; the *only* relevant factor is the messages themselves. *See Salmon v. CRST Expedited, Inc.*, 2015 WL 1395237, at *3 (N.D. Okla. Mar. 25, 2015) ("The characterization of a call does not depend on the caller's perception as to whether the call constitutes a solicitation or advertisement, but the 'purpose of the message' is what governs whether an autodialed call is a prohibited solicitation or advertisement. ").  The two messages included in Plaintiff's Complaint cannot possibly be interpreted as telephone solicitations—they do not encourage the purchase of anything but merely offer to provide information. *See* Complaint, ¶ 38; *see also Salmon*, 2015 WL 1395237, at *5  (prerecorded phone call from recruiter for driving school was not a TCPA violation because the caller was not selling any goods) ("The appropriate inquiry under the TCPA is not whether there is some ancillary commercial benefit to either party, but whether the message is an advertisement which tends to propose a commercial transaction.").

In short, that some auto insurance company and Plaintiff *may later* come together in a mutual transaction for the purchase of auto insurance—a process in which QuoteWizard would have no part—is no proof of a telephone solicitation by QuoteWizard in the messages at issue. *See Aderhold v. Car2go N.A., LLC*, 2014 WL 794802, at *9 (W.D. Wash. Feb. 27, 2014) (text message

instructing the plaintiff to enter an activation code on the defendant's website was not telemarketing even though the plaintiff "could, after choices of his own making, divert himself from the registration process to car2go marketing"), *aff'd* 668 Fed. Appx. 795 (9th Cir. 2016); *Dukes v. DirecTV LLC*, 2016 U.S. Dist. LEXIS 153948, at *5–6 (N.D. Texas, Nov. 7, 2016) (debt collection calls were not telephone solicitations merely where the defendant is generally motivated to sell television subscriptions because no solicitations happened "during the call at issue").

The texts merely completed a process that began when Plaintiff requested auto insurance quotes; that they may result in Plaintiff's purchase of auto insurance from someone else is legally insufficient to show a telephone solicitation by QuoteWizard. *See Daniel vs. Five Stars Loyalty, Inc.*, 2015 WL 7454260, at *4 (N.D. Cal Nov. 24, 2015) (where plaintiff gave contact information to restaurant after inquiring about rewards program and received text about the same, no encouragement of purchase of goods) ("To the extent that it could be reasonably inferred … that the text's purpose was also to encourage future purchases … that purpose is simply too attenuated to make the text telemarketing … [T]he text … could result in an increase in the chances of Daniel making future purchases … But Daniel cites no authority indicating that this degree of connection between communication and purchase is sufficient to transform a text of the sort he received into a telemarketing message.").[3]

[*Signatures on Next Page*]

---

[3] Plaintiff relies on *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012), but that case is easily distinguishable. The communications at issue encouraged customers to redeem points in a rewards program; doing so required the customers to buy something from the defendant, thus meaning that the calls *ipso facto* encouraged the sale of a good. *Id*. at 913.

               Respectfully submitted,

               QuoteWizard.com, LLC,
               By its attorneys,


               */s/ Kevin P. Polansky*
               Kevin P. Polansky (BBO #667229)
               kevin.polansky@nelsonmullins.com
               Christine M. Kingston (BBO #682962)
               christine.kingston@nelsonmullins.com
               Nelson Mullins Riley & Scarborough LLP
               One Post Office Square, 30th Floor
               Boston, MA 02109
               (t) (617)-217-4700
Dated: January 17, 2020       (f) (617) 217-4710

## CERTIFICATE OF SERVICE

  I, Kevin P. Polansky, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: January 17, 2020         */s/ Kevin P. Polansky*

6