UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

ANDREW PERRONG,

    Plaintiff,

    v.

SPERIAN ENERGY CORP., et al.,

    Defendants.

Case No. 2:19-cv-00115-RFB-EJY

**ORDER**

## I. BACKGROUND

Before the Court is Plaintiffs' Notice of Emergency Motion and Memorandum of Points and Authorities in Support of Emergency Motion for Sanctions Directed to Defendant Energy Group Consultants, Inc. (ECF No. 113), and Plaintiffs' Notice of Motion and Memorandum of Points and Authorities in Support of Motion to Seal (ECF No. 114). Responses to Plaintiffs' Emergency Motion were filed by Defendants Energy Group Consultants ("EGC")[1] and Tomorrow Energy FKA Sperian Energy ("Sperian"). ECF Nos. 119 and 120. On January 9, 2020, the Court held a lengthy hearing on Plaintiffs' Emergency Motion and Motion to Seal.

At the conclusion of the hearing, the Court granted the Motion to Seal (ECF No 114) and denied, without prejudice, Plaintiffs' Emergency Motion for Sanctions to the extent Plaintiffs asked the Court to order an adverse inference instruction against EGC and Plaintiffs sought discovery regarding whether EGC and Team Integrity are alter egos. The Court granted Plaintiffs' Motion to the extent it ordered an expansion of the inspection scheduled to occur on January 14, 2020, and ordered that to the extent EGC servers are imaged, file names for images relating to call records

---

[1] Sperian, in its opposition to Plaintiffs' Emergency Motion, distinguishes between Energy Group Consultants, Inc., sued by Plaintiffs, and Energy Group Consultants, LLC, sued by Sperian. ECF No. 119 at 2. However, Energy Group Consultants, Inc., in its response to Plaintiffs' Emergency Motion, does not raise this issue and has not raised this issue in any of the numerous hearings before the Court. ECF Nos. 104, 106, 120, and 121. There is no evidence that Energy Group Consultants, Inc. has objected to any discovery based on Plaintiffs propounding requests on Energy Group Consultants, Inc. rather than on Energy Group Consultants, LLC as this is not raised anywhere in their EGC's opposition brief or in the emails attached to Plaintiffs' Emergency Motion. Even the employee who conducted the electronically stored document search, as recounted in ECF No. 120 (Ex B – Declaration of Andrea Janoush) does not distinguish Energy Group Consultants, Inc. from Energy Group Consultants, LLC. *Id.* ¶ 1.

1

1  were to be provided to the parties. The Court also ordered that if the computers of John Williams
2  and Tyde Bonaparte, of Team Integrity, were available at EGC, those computers would also be
3  imaged based upon the representations made to the process server at the time of service of subpoenas
4  duces tecum on Williams and Bonaparte. The Court made clear to EGC that it was now on notice
5  regarding the alter ego allegation and to preserve all evidence that may exist that would prove or
6  disprove this contention. The transcript of the hearing details these orders.

7  The remainder of Plaintiffs' Emergency Motion was taken under advisement in light of the
8  Court's order requiring Defendant EGC to provide to Plaintiffs' counsel information confirming or
9  denying the existence of a contractual relationship between EGC and Team Integrity (irrespective
10 of the type or form of the contract), the date the contract was formed, and whether EGC has a
11 "dialer." Plaintiffs were then to file the information with the Court. Counsel for EGC has instead
12 filed a supplemental declaration directly with the Court confirming a contractual relationship
13 between EGC and Team Integrity dating back approximately four years. ECF No. 122 ¶ 4(a).

14 EGC, through counsel, further confirms Team Integrity was to provide "call center services
15 to EGC" and, that on February 12, 2019, EGC took steps to ensure "Team Integrity saved and
16 protected all data and information relative to Plaintiff's [sic] allegations and the Sperian campaign."
17 *Id*. ¶¶ 4(b) and (c). The Court notes that no copy of a communication to this effect was provided.
18 Nonetheless, EGC contends that all documents and data related to the Sperian campaign that "was
19 available" to Team Integrity was provided in a file folder to EGC, which EGC has produced. *Id*. ¶¶
20 4(d)-(f). EGC also contends that Team Integrity provided to EGC all documents and data that G-
21 Energy had with respect to the Sperian campaign, and that this too has been produced. *Id*. ¶ 4(d).
22 EGC contends that Mr. Bonaparte of Team Integrity confirmed that the Team Integrity dialer made
23 no calls to Mr. Perrong because Team Integrity's dialer "could not call a number on the "Do Not
24 Contact list." *Id*. at 4(i). Finally, counsel for EGC states that "Mr. Bonaparte stated that G-Energy
25 made the call to the number identified as Mr. Perrong's number and that that information has been
26 provided as well." *Id*. ¶ 4(j).

2

In sum, EGC appears to argue that it has never had any call records of its own, and that all records, including calling records that they were "available" from Team Integrity and Team Integrity's downstream contractor G-Energy, have been produced.[2] Despite this fact, Plaintiffs make clear that they are in possession of no calling records. Moreover, EGC does not state whether the supposed "server in India" on which call records may have at one time existed, and which must be owned by some company, was ever informed by EGC or its downline contractor to preserve call records. *See* ECF Nos. 113-7 at 3 and 122. No attempts to identify the entity to whom the "server in India" appears to belong seems to have been made, and no attempt to identify phone companies that may have calling records relevant to this case has been made. The mystery of the responsibility for preserving calling records continues with various proffers with no party taking responsibility for preservation of such records. Calling records in this TCPA case are obviously records that any entity who is a party to this case must have known had to be preserved as of January 23, 2019, the date an email was sent by Sperian's Chief Legal Officer to Matt Alexander at EGC. ECF No. 113-5.

## II. ANALYSIS

Preservation of relevant evidence is not optional. "A party must preserve evidence it knows or should know is relevant to a claim or defense by any party, or that may lead to the discovery of relevant evidence. . . . The duty to preserve arises not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." *Gonzalez v. Las Vegas Metropolitan Police Dept.*, 2012 WL 1118949, *5 (D. Nev. Apr. 2, 2012) (internal citations omitted). "[I]f relevant evidence has been shown to exist, and if the possessor of that evidence was on notice that the evidence was potentially relevant to litigation which was reasonably foreseeable, and if that party failed to take reasonable steps to preserve it, sanctions may be imposed upon that party." *Fernandez v. Centric*, No. 3:12-cv-00401-LRH-WGC, 2014 WL 2042148, *4 (D. Nev. May 16, 2014). Importantly, "[t]he preservation

---

[2] Despite its recent representations, at one point in time prior counsel for EGC told Plaintiffs' counsel that EGC *did* have calling records that would be produced. That same counsel, just before withdrawing from representation of EGC, communicated that it appeared EGC did not have calling records applicable to this case; rather, such records belong to Team Integrity. ECF No. 113 at 6 (citing Declaration of Anthony Paraonich ¶¶ 6-9). Current EGC counsel seemed to believe not only that EGC does not have calling records, but that EGC also does not have a "dialer" (as stated to the Court during the January 9, 2020 hearing). Email evidence produced by EGC shows EGC does have a "dialer" and, therefore, could have records.

3

1 obligation runs first to counsel, who has a duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction." *Surowiec v. Capital Title Agency, Inc.,* 790 F.Supp.2d 997, 1006 (D.Ariz.2011) (quoting *Richard Green (Fine Paintings) v. McClendon,* 262 F.R.D. 284, 290 (S.D.N.Y.2009)).

Whether records have been spoliated in this case is unclear as no defendant party admits to having call records except that on December 4, 2019 (almost a year after the litigation started), EGC told Plaintiffs that it "contacted Team Integrity about call records and received the following explanation: Team Integrity is utilizing a server in India that does not keep records longer than 30 to 90 days, depending on whether a sale is made." ECF No. 113-7 at 3. In this regard, EGC does not contend it made appropriate efforts to ensure Team Integrity retained call records other than when some unidentified communication went from EGC to Team Integrity on February 12, 2019. ECF No. 112 ¶ 4(c). That is, there is absolutely nothing that evidences any efforts were made by EGC to ensure calling records were retained or to otherwise discover where or how Team Integrity may have maintained such records until the Court entered its Order on November 8, 2019. There is also nothing to evidence EGC did anything to locate records through telephone companies hosting telephone lines.

Sperian made no calls to Plaintiffs or the putative class and, therefore, points to its contractor EGC who was instructed not to call any individual on do not contact lists. Sperian further contends it is not vicariously liable for any wrongdoing by EGC. EGC says it has no calling records and points to Team Integrity with which it contracted for the "Sperian campaign." ECF No. 122 ¶ 4(c). Team Integrity says it could not have made calls to individuals on the "Do Not Contact" list because its "dialer' supposedly could not, but then points to G-Energy, a defendant conveniently in default, who supposedly made the calls to Plaintiff Perrong. *Id*. ¶ 4(i) and (j). Only vague references have been made to a supposed server in India that no currently participating party appears to know enough about such that appropriate information was provided to Plaintiffs or the Court. Further, no entity appears to have provided Plaintiffs with the name or names of telephone companies on whose lines calls were made, which Plaintiffs seek so that they may try and obtain call records directly from the host telephone line companies. This is unacceptable.

4

The Defendants cannot be permitted to simply point fingers at one another each saying it does not have calling records, when calling records are at the heart of this case. Sperian and EGC clearly had notice of this suit and that such records would be relevant. Sperian sent an email to EGC on January 21, 2019, that did not identify the need to ensure "calling records" were specifically retained, but which did state that "to the extent EGC may have any information related to the claims in the lawsuit (which information includes, but is not limited to written, recorded, tests, electronically stored or transmitted, emails, contracts, lead lists, marketing lead lists, *call lists*, and any type of communication) would request you preserve that information in the event it becomes relevant to or discoverable in the lawsuit." ECF No. 113-5 (emphasis added). EGC, on the other hand, having provided no written verification of its efforts to retain calling records it may have, or efforts made to ensure that its downline contractor Team Integrity took appropriate steps to ensure retention of calling records, fails to provide the Court with anything upon which it can reasonably rely to conclude spoliation by EGC (and by virtue of an admitted contract to run the Sperian campaign, Team Integrity) has not occurred. *Surowiec v. Capital Title Agency, Inc.*, 790 F.Supp.2d 997, 1007 (D. Ariz. 2011) ("[a]t least one court has concluded that, once the duty to preserve is triggered, the failure to issue a written litigation hold constitutes gross negligence per se and prejudice may be presumed") (citing *Pension Committee of Univ. of Montreal Pension Plan v. Banc of America Sec.,* 685 F.Supp.2d 456, 465 (S.D.N.Y. 2010).

Therefore, pursuant to Plaintiffs' Motion, and the Court's inherent power, the Court considers the appropriate sanctions for what, at this juncture, clearly appears to be EGC's failure to ensure calling records available as of January 23, 2019 were retained. *In re National Consumer Mortg., LLC*, Case No. 2:10–cv–00930, 2011 WL 1300540, at 8 (D. Nev. March 31, 2011) (District courts may impose sanctions for spoliation of evidence as part of their inherent power to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases.") (citations omitted); *Surowiec*, 790 F.Supp.2d at 1008 ("[b]ecause spoliation is considered an abuse of the judicial process, . . . court may impose sanctions as part of their inherent power to manage their own affairs so as to achieve the orderly and expeditious disposition of cases") (citations and quote marks omitted).

5

> Courts may sanction parties responsible for spoliation of evidence in three ways. First, a court can instruct the jury that it may draw an adverse inference against the party or witness responsible for destroying the evidence. . . . Second, a court can exclude witness testimony based upon the destroyed evidence and proffered by the party responsible for destroying the evidence. . . . Third, the court can dismiss the claim of the party responsible for destroying the evidence. Dismissal, however, is only appropriate where a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings. . . . Before imposing the harsh sanction of dismissal, a court must consider the following factors: (a) the public's interest in expeditious resolution of litigation; (b) the court's need to manage its dockets; (c) the risk of prejudice to the party seeking sanctions; (d) the public policy favoring disposition of cases on their merits; and (e) the availability of less drastic sanctions.

*Id*. (citations and internal quote marks omitted).

Here, the Court is obviously familiar with this case and certainly the recent history pertaining to discovery. However, the Court is not certain that spoliation has occurred; rather, it is only certain that EGC has not demonstrated that (1) its own call records (if any), were retained, (2) call records (if any) in Team Integrity's possession (the entity with which EGC appears to be contracted for the Sperian campaign) were retained, or (3) call records from G-Energy, with whom Team Integrity contracted, were retained. EGC has produced no evidence that Team Integrity was instructed to preserve call records (other than the statement made by counsel that "on or about February 12, 2019 EGC informed Team Integrity to save, preserve and provide EGC with all data from the Sperian campaign"). In sum, to date, EGC has produced no evidence of reasonable efforts to ensure call records were, in fact, retained (even if not produced).

Given the above, and because at the time of this Order the Court does not definitively know that spoliation of call records has occurred, the Court chooses not to grant spoliation related sanctions. The Court instead looks to its power under Fed. R. Civ. P. 37, as well as Plaintiffs' Emergency Motion, for appropriate sanctions in this case. Attorney's fees and costs incurred by Plaintiff may be appropriately awarded pursuant to Fed. R. Civ. P. 37(a). *Hyde & Drath v. Baker*, 24 F.3d 1162, 1170 (9th Cir. 1994). The Court concludes that, although EGC's conduct is irresponsible, until the Court is confident that call records do not exist, EGC's conduct warrants an award of monetary sanctions. *See Surowiec*, 790 F.Supp.2d at 1010-11. EGC's clear lack of

6

1 attention to the issue of call records, which has been the subject of several arguments before the Court and subsequent Court orders, the Court finds that EGC has not acted in good faith.[3]

Assuming, for sake of this Order only, as information is incomplete, that EGC never had call records but knew or should have known that Team Integrity had such records, EGC could easily have been clear with Team Integrity, with which it contracted, to save, preserve, and produce to EGC all records, including *call records*, in its possession or within its control. If it had done so when this case started, and when it allegedly provided some preservation notice/request to Team Integrity, the mystery of EGC's efforts would not exist. Indeed, if upon receipt of records from Team Integrity EGC had reviewed those records and found no call records, it could easily have followed up with Team Integrity. If no records were available for some legitimate reason, that too could have been documented as, presumably, would be the identity of the entity that ultimately, at least at one time, had call records (the "server in India"). By now, if all else failed, EGC could clearly have identified (or demonstrated good faith effort to identify) the telephone companies with which it, Team Integrity or Team Integrity's downline contractors used when making calls. EGC made none of these efforts, or if it has, even at this late date, it has failed to demonstrate those efforts to the Court.

Specifically, Plaintiffs request (1) an award of attorney's fees and costs for bringing their Emergency Motion, and (2) that EGC should pay for the inspection and imaging that occurred during the inspection, which took place on January 14, 2020. ECF No. 113. The Court agrees that these are appropriate sanctions as had EGC been thorough in its duty to preserve call records, and documented those efforts in a manner on which the Court (as well as Plaintiffs) could rely, the inspection may not have been necessary. Thus, in addition to granting Plaintiffs' Emergency Motion

---

[3] *See* ECF Nos. 104 ("EGC, shall produce call records, without names, for the period commencing with four years before the filing of the complaint up to one week prior to production. This Order also includes production of EGC and Baetyl downlines"); and 106. ("EGC shall, no later than **5:00 p.m. PST on December 20, 2019**, produce to Plaintiffs, copying co-defendant, all emails, text messages, and call records for which EGC previously promised to search. EGC shall explain, in writing, how it searched for additional responsive documents, and what, if anything, was located[;] . . . if EGC is unable to produce call records by **5 p.m. PST on December 20, 2019**, it shall provide to Plaintiffs, copying co-defendant, a written explanation regarding why EGC is unable to do so and a date certain that is at least seven (7) days before the inspection for production of such call records[;] … EGC, no later than 5:00 p.m. PST on **December 20, 2019**, shall provide the affidavit previously promised to Plaintiffs.") As of December 20, 2019, none of the above had occurred. *See* ECF No. 113 and exhibits thereto.

7

as stated at the January 9, 2020 hearing, the Court grants Plaintiffs' Emergency Motion seeking payment of fees and costs for bringing the Emergency Motion and for the January 14, 2020 inspection.

### III. ORDER

IT IS HEREBY ORDERED THAT Plaintiffs' Notice of Emergency Motion and Memorandum of Points and Authorities in Support of Emergency Motion for Sanctions Directed to Defendant Energy Group Consultants, Inc. (ECF No. 113) is GRANTED in part and DENIED in PART. *See* transcript of ECF No. 121.

IT IS FURTHER ORDERED THAT Plaintiffs' Notice of Emergency Motion and Memorandum of Points and Authorities in Support of Emergency Motion for Sanctions Directed to Defendant Energy Group Consultants, Inc. is DENIED, without prejudice, to the extent Plaintiffs seek an adverse inference instruction, and to the extent Plaintiffs seek to direct discovery to EGC regarding its relationship with Team Integrity.

IT IS FURTHER ORDERED THAT Plaintiffs' Notice of Emergency Motion and Memorandum of Points and Authorities in Support of Emergency Motion for Sanctions Directed to Defendant Energy Group Consultants, Inc. is GRANTED to the extend EGC seeks attorneys' fees and costs incurred in bringing the instant motion and for payment of inspections and imaging EGC, John Williams, and Tyde Bonaparte's work stations, and EGC's servers.

IT IS FURTHER ORDERED that Plaintiffs' counsel shall submit a memorandum of fees and costs incurred in bringing the Emergency Motion (ECF No. 113) detailing the activities, hours spent (in tenths of hours), and the rate charged by each attorney who worked on the Emergency Motion. Appropriate redactions from billing records for attorney client privilege and/or work product may be made for the public filing with non-redacted copies of such records filed under seal. Plaintiffs shall also submit to the Court records evidencing the costs incurred for travel to Las Vegas for the January 9, 2020 hearing. Plaintiff shall submit invoices or billing statements from the

Case 1:19-cv-12235-LTS  Document 27-4  Filed 01/21/20  Page 9 of 9
Case 2:19-cv-00115-RFB-EJY  Document 125  Filed 01/17/20  Page 9 of 9

individual retained to inspect and image EGC, John Williams, and Tyde Bonaparte's workstations and EGC's servers. Plaintiff shall submit its memorandum within 14 days of this Order. EGC shall have 14 days to file a response, if any is desired. No reply shall be permitted by Plaintiffs.

DATED: January 17, 2020

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

9