### United States District Court
### District of Massachusetts

```
                                    )
Douglas E. Rosenberg,               )
                                    )
            Plaintiff,              )
                                    )
            v.                      )    Civil Action No.
                                    )    19-10661-NMG
LoanDepot.com LLC and Ascendant     )
Marketing Group LLC,                )
                                    )
            Defendants.             )
                                    )
```

### MEMORANDUM & ORDER

**GORTON, J.**

This is a putative class action which purports to arise
from a violation of the Telephone Consumer Protection Act
("TCPA"), 47 U.S.C. § 227. Plaintiff Douglas Rosenberg
("plaintiff" or "Rosenberg") alleges that LoanDepot.com, LLC
("Loan Depot") and Ascendant Marketing, LLC ("Ascendant
Marketing" or "Ascendant") (collectively "defendants") made
repeated automated telemarketing calls to his cell phone in
violation of the TCPA.

Pending before the Court are five motions: (1) Loan Depot's
motion to stay, (2) Loan Depot's motion to strike the class
allegations, (3) the motion of Loan Depot and Ascendant to
dismiss on grounds that the TCPA is unconstitutional and
inseverable and that Rosenberg has failed to state a claim, and

(4) two motions, one by each defendant, to dismiss non-Massachusetts putative class members for lack of personal jurisdiction under Rule 12(b)(2).

For the following reasons, the Court will deny all pending motions.

## I.   Background

### A. Factual Background

Plaintiff Rosenberg is a Massachusetts resident who owns a cell phone with a "508" area code.  He alleges that his cell phone is his only telephone, he uses it for residential purposes and he registered the number on the National Do-Not-Call Registry and the Massachusetts Do-Not-Call List in 2003.

Defendant Loan Depot is a California limited liability company and a non-bank consumer lender.  Ascendant Marketing is a Texas limited liability company and provides marketing services.  Loan Depot allegedly contracted with Ascendant Marketing to generate business through telemarketing services.

In 2018, Rosenberg alleges that he received a number of phone calls, both from Loan Depot and from Ascendant Marketing advertising Loan Depot's services.  Plaintiff alleges that at least two of those calls were made from non-working or "spoofed" numbers, which he contends is indicative of the fact that the calls were made from an Automatic Telephone Dialing System ("ATDS") in violation of the TCPA.  He seeks to certify

-2-

nationwide classes of (1) consumers who were called by
defendants via an automated dialing system in violation of the
TCPA's automated calling provision ("the ATDS class") and (2)
persons who were called by the defendants more than once in a
12-month period in violation of the TCPA's Do-Not-Call provision
("the DNC class").

## B. Procedural History

In April, 2019, Rosenberg filed a complaint against Loan
Depot and a John Doe Corporation as the representative of a
proposed nationwide class. Loan Depot responded with two
motions to dismiss, a motion to strike the class and a motion to
stay the case. In June, 2019, Rosenberg filed an amended
complaint which added Ascendant Marketing as a defendant and set
forth allegations supporting the ATDS class and DNC class.

In response to the amended complaint, the parties
stipulated that the initial motions to dismiss and to strike the
class were moot. Loan Depot subsequently filed renewed motions
seeking the same relief. Both defendants also filed motions to
dismiss the non-Massachusetts putative class members.

## C. The TCPA

In 1991, Congress enacted the TCPA as a response to the
proliferation of intrusive calls from telemarketers. The law
sought to safeguard the public's interest in personal privacy
and, to that end, prohibits multiple abuses of telephone

technology.  Applicable to this litigation are the ATDS and Do Not Call provisions of the TCPA.

As summarized by the District of Columbia Circuit Court of Appeals ("D.C. Circuit"), "the TCPA generally makes it unlawful to call a cell phone using an ATDS." ACA International v. FCC, 885 F.3d 687, 693 (D.C. Cir. 2018).  More specifically, the law provides in relevant part that it is unlawful:

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system ... to any telephone number assigned to a ... cellular telephone service... unless such call is made solely to collect a debt owed or guaranteed by the United States.

47 U.S.C. § 227(b)(1)(A)(iii).

As is evident from the statutory language, the TCPA contains three exceptions to the prohibition on telephone calls made using an ATDS: calls (1) for "emergency purposes," (2) with the "prior express consent of the called party" and (3) "made solely to collect a debt owed to or guaranteed by the United States" (hereinafter, "the debt-collection exemption").  The debt-collection exemption was added by Congress in 2015 as part of a budget bill and is subject to the defendants constitutional challenge as well as extensive constitutional litigation in other courts.

The TCPA goes on to define an ATDS as

-4-

equipment which has the capacity—(A) to store or produce
telephone numbers to be called, using a random or
sequential number generator; and (B) to dial such numbers.

47 U.S.C. § 227(a)(1).

Also relevant to the current litigation, the TCPA and its
implementing regulations prohibit telephone solicitations to
"[a] residential telephone subscriber who has registered his or
her telephone number on the national do-not
call registry ...." 47 C.F.R. § 64.1200(c)(2).

**D. The FCC's Regulatory Orders**

Given the expansive and technical nature of the TCPA,
Congress explicitly vested the FCC with rulemaking authority in
order to implement the statute. 47 U.S.C. § 227(b)(2). The FCC
has used that authority to issue regulations defining the TCPA's
reach including what technology qualifies as an ATDS.
Applicable here, The FCC, in response to changing technology,
issued a series of rulings between 2003 and 2015, which
established that "predictive dialers" (a type of automated
dialing systems) and other similar advanced technology fit the
definition of an ATDS. See Marks v. Crunch San Diego, LLC, 904
F.3d 1041, 1045 (9th Cir. 2018).

In 2015, the FCC issued a ruling reaffirming its position
that predictive dialers constituted an ATDS. However, the 2015
ruling included a new, more expansive definition of an ATDS.
The FCC concluded that an ATDS' "capacity" included not just a

device's present capabilities but also its potential
functionalities. See In Re Rules & Regulations Implementing the
Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 7974
(2015) ("2015 Order"); Richardson 354 F. Supp. 3d 639 at 644.

### E. ACA International and its aftermath

Unsurprisingly, the 2015 Order spurred immediate
litigation as various regulated entities challenged the FCC's
decision.  Those legal challenges resulted in a DC circuit
decision in which the court set aside parts of the 2015 Order,
including the definition of an ATDS, because the FCC "failed to
satisfy the requirement of reasoned decision making." ACA Int'l
885 F.3d 687 at 703.

Courts are now split on the effect of that decision.  The
disagreement turns on whether ACA Int'l overturned just the 2015
FCC interpretation of what constitutes an ATDS or was an
invalidation of all prior FCC interpretations.  See Marks, 904
F.3d 1041 at 1049 (holding that the D.C. Circuit "set aside the
FCC's interpretations of the definition of an ATDS in the 2015
order... and any prior FCC rules that were reinstated by that
order."). But see Gonzalez 371 F. Supp. 3d 26 at 31 (noting that
"other courts have concluded that ACA Int'l only invalidated the
FCC's 2015 ruling, and not the earlier FCC rulings") (collecting
cases).

At this juncture, the definition of an ATDS is not integral to the motions pending before the Court.  As such, the Court need not decide the scope of the <u>ACA Int'l</u> decision.

## II.  **Motion for Stay**

In May, 2019, Loan Depot moved to stay this action pending rulings (1) from the FCC redefining an ATDS in light of <u>ACA Int'l</u> and (2) on a constitutional challenge to the TCPA pending in the Ninth Circuit.  The Ninth Circuit has since ruled on the TCPA's constitutionality, rendering any argument for a stay on those grounds moot. <u>See</u> <u>Gallion</u> v. <u>United States</u>, 772 F. App'x 604, 605 (9th Cir. 2019) (holding that the "2015 amendment to the TCPA, which excepts calls made solely to collect a debt owed to or guaranteed by the United States, is a content-based speech regulation that fails strict scrutiny, and thus is incompatible with the First Amendment" but that the offending provision was severable from the remainder of the statute).

Defendants submit that given the uncertainty surrounding the scope of the D.C. Circuit's <u>ACA Int'l</u> decision and the definition of an ATDS, a stay is warranted under both the primary jurisdiction doctrine and the court's inherent power to manage its docket.

Plaintiff responds that a stay is unwarranted because (1) he has asserted a claim under the Do-Not-Call provision of the TCPA which, because it is unrelated to a definition of an ATDS,

-7-

would be unaffected by any FCC ruling and (2) the Court is perfectly capable of defining "ATDS" based on the statutory text, case law and existing FCC orders.

## A. Primary Jurisdiction Doctrine

### 1. Legal Standard

Primary jurisdiction doctrine is a prudential doctrine which seeks to "promote accurate decision making and regulatory consistency in areas of agency expertise." Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r Mass. Dep't of Envtl. Prot., 196 F.3d 302, 304 (1st Cir. 1999). There is, however, "no fixed formula" for application of the doctrine. United States v. Western Pac. R.R. Co., 352 U.S. 59, 64, (1956). Instead, courts assess "whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." Id. See also PHC, Inc. v. Pioneer Healthcare, Inc., 75 F.3d 75, 80 (1st Cir. 1996) (noting that "[t]he primary jurisdiction rubric is less an organized doctrine than a set of precedents that guide courts . . . .")

Though there is no fixed formula for application of the primary jurisdiction doctrine, the First Circuit Court of Appeals has identified three factors which courts should consider when determining whether deference to an agency is warranted. They are:

(1) whether the agency determination lay at the heart of the task assigned the agency by Congress; (2) whether agency expertise was required to unravel intricate, technical facts; and (3) whether, though perhaps not determinative, the agency determination would materially aid the court.

New England Legal Found. v. Massachusetts Port Auth., 883 F.2d 157, 172 (1st Cir. 1989) (citing Mashpee Tribe v. New Seabury Corp., 592 F.2d 575, 580-81 (1st Cir. 1979))

These factors, however, must be balanced against the delay inherent in granting a stay and the need to adjudicate disputes expeditiously. See Ass'n of Int'l Auto. Mfrs., Inc., 196 F.3d at 305. Given the inherent expense and delay in waiting for an agency, courts should be loath to invoke the doctrine. See Alpharma, Inc., v. Pennfield Oil Co., 411 F.3d 934, 938 (8th Cir. 2005). See also Columbia Gas Transmission Corp. v. Allied Chem. Corp., 652 F.2d 503, 519 n.15 (5th Cir. 1981)(noting that "courts should be reluctant to invoke the doctrine of primary jurisdiction, which often, but not always, results in added expense and delay to the litigants.")

### 2. Application

Although enlightened FCC guidance might prove useful, the Court is unwilling to stay the instant case for an underminate period. The FCC has begun the process of notice and comment rulemaking, yet robust agency rulemaking is a protracted process which can take years. Even after the FCC issues a final rule it will likely be subject to legal challenge, resulting in further

motions to stay.  If the Court were to grant Loan Depot's motion it would result in an indefinite stay which mitigates against application of the primary jurisdiction doctrine. See Grogan v. Aaron's Inc., No. 1:18-CV-2821-AT, 2018 WL 6040195, at *8 (N.D. Ga. Oct. 26, 2018).

Moreover, plaintiff alleges that defendants have violated two distinct provisions of the TCPA.  An FCC ruling on what constitutes an ATDS will not affect plaintiffs claim that defendants have also violated the Do-Not-Call provision of the TCPA.  The fact that plaintiff has also asserted two separate theories of liability further weighs against staying the case. See Pieterson v. Wells Fargo Bank, N.A., No. 17-CV-02306-EDL, 2018 WL 3241069, at *4 (N.D. Cal. July 2, 2018) (noting in a similar circumstance that  "[s]taying the case when an alternative theory of liability can move forward would unduly postpone adjudication of Plaintiffs' claims."). See also Wright v. eXP Realty, LLC, No. 618CV1851ORL40TBS, 2019 WL 2411312, at *4 (M.D. Fla. June 7, 2019) (collecting cases).

This Court is capable of applying existing law and regulatory framework to determine the definition of an ATDS and to resolve this dispute without updated FCC guidance.  There exists an extensive body of applicable TCPA caselaw from which this Court can gain insight.

After careful consideration of the parties' arguments and the purpose of the primary jurisdiction doctrine, this Court finds that a stay is unwarranted.

**B. The Court's Inherent Powers**

In the alternative, defendants ask the court to stay the case using its inherent authority.  The Court has the power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants". <u>Landis</u> v. <u>N. Am. Co.</u>, 299 U.S. 248, 254 (1936). There is, however, "a heavy burden on the party requesting a stay."  <u>Taunton Gardens Co.</u> v. <u>Hills</u>, 557 F.2d 877, 879 (1st Cir. 1977).

This Court declines to exercise its inherent power for the same reasons it found a stay unwarranted under the primary jurisdiction doctrine.

In conclusion, this Court joins the majority of district courts which have considered whether to stay similar proceedings in the wake of <u>ACA Int'l</u> and have declined to do so. <u>See</u> <u>Peralta</u> v. <u>Rack Room Shoes, Inc.</u>, No. CV 18-3738, 2018 WL 6331798, *8-9 (E.D. La. Dec. 3, 2018)(collecting cases).

**III. <u>Motion to Strike Class Allegations</u>**

Loan Depot asserts that plaintiff's putative classes cannot be certified as a matter of law and therefore this Court should take the unusual step of striking the class allegations based

-11-

solely on the pleadings. Specifically, Loan Deport argues that (1) consent (whether or not an individual consented to receive automated calls) is an individualized issue that cannot predominate across the putative class and (2) any class which includes consenting individuals would be fatally overbroad.

Rosenberg responds that defendant's motion to strike the class is premature and that both putative classes contain common questions of law and fact which make class certification plausible. Plaintiff further maintains that consent is not a valid defense to his claim arising from the TCPA's DNC provision and therefore Loan Depot's motion should be denied.

**A. Legal Standard**

If it is obvious from the pleadings that an allegation cannot be certified as a class, a district court may, pursuant to Fed. R. Civ. P 12(f), strike class allegations. See Manning v. Bos. Med. Ctr. Corp., 725 F.3d 34, 59 (1st Cir. 2013). Pre-discovery motions to strike are, however, disfavored and courts should, "exercise caution when striking class action allegations based solely on the pleadings." Id. As a result, allowing such a motion is uncommon and courts "should typically await the development of a factual record." Id. See also Cholakyan v. Mercedes-Benz USA, LLC, 796 F.Supp.2d 1220, 1245. (C.D.Cal.2011) (collecting cases).

-12-

## B. Analysis

The Court finds that the defendant's motion to strike the class allegations is premature before plaintiff can develop the factual record through discovery.  Loan Depot's citation of consent as a potential affirmative defense is insufficient to warrant striking the putative class solely on the pleadings. The motion to strike class allegations will, therefore, be denied without prejudice.

## IV.  <u>Motion to Dismiss</u>

Loan Depot has moved to dismiss Rosenberg's amended complaint on the grounds that the TCPA is unconstitutional and the offending provisions are not severable or, in the alternative, because plaintiff fails to allege facts sufficient to support a claim for relief.

### A. Legal Standard

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter" to state a claim for relief that is actionable as a matter of law and "plausible on its face." <u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. 662, 667 (2009) (quoting <u>Bell Atl. Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the

-13-

misconduct alleged. <u>Ocasio-Hernandez</u> v. <u>Fortuno-Burset</u>, 640 F.3d 1, 12 (1st Cir. 2011).  A court may not disregard properly pled factual allegations even if actual proof of those facts is improbable. <u>Id</u>.  Rather, the relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw. <u>Id</u>. at 13.

When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice. <u>Haley</u> v. <u>City of Boston</u>, 657 F.3d 39, 46 (1st Cir. 2011).

**B. The TCPA's Constitutionality**

Loan Depot avers that the plaintiff's claims must be dismissed because the statute on which they are based, the TCPA, is unconstitutional.  Defendants contend that the entire TCPA, in particular the government-debt exception, the emergency call exception and the healthcare exception, is an unconstitutional content-based restriction on speech which violates the First Amendment and Equal Protection Clause.  Loan Depot also contends that (1) the statute is unconstitutionally vague in violation of the Fifth Amendment Due Process Clause and (2) any unconstitutional provision cannot be severed and, instead, the entire statute must be invalidated.

### 1. The First Amendment

The First Amendment forbids Congress from enacting laws "abridging the freedom of speech." U.S. Const. amend. I. When considering a First Amendment challenge, courts distinguish between content-based and content-neutral regulations of speech. A content-based restriction is one that "applies to particular speech because of the topic discussed or the idea or message expressed." Reed v. Town of Gilbert, Ariz., 135 S. Ct. 2218, 2227 (2015). Content-based restrictions "are presumptively unconstitutional" and subject to strict scrutiny. Id. at 2226. That is, they "may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." Id.

In contrast, a statue is content-neutral if it "serves purposes unrelated to the content of expression ... even if it has an incidental effect on some speakers or messages but not others." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989). A content-neutral restriction is subject to intermediate scrutiny, meaning it must be "narrowly tailored to serve a significant governmental interest." McCullen v. Coakley, 573 U.S. 464, 486 (2014)).

-15-

### a. The Government-Backed, Debt-Collection Exception

#### i. The Government Debt Exception is Content Based

The first step in a First Amendment inquiry is to determine whether the TCPA is content-neutral and therefore subject to intermediate scrutiny or content-based and thus subject to strict scrutiny.  The First Circuit has not opined on whether the TCPA is content-neutral or content based.  The Fourth and Ninth Circuit (and many other district courts that have considered the issue) have, however, found that the law is content-based and therefore subject to strict scrutiny. See Am. Ass'n of Political Consultants, Inc. v. FCC, 923 F.3d 159, 166 (4th Cir. 2019); Duguid v. Facebook, Inc., 926 F.3d 1146, 1153 (9th Cir. 2019);  Hand v. ARB KC, LLC, No. 4:19-CV-00108-NKL, 2019 WL 6497432, at *11-12 (W.D. Mo. Dec. 3, 2019) (collecting district court cases); Perrong v. Liberty Power Corp., No. CV 18-712 (MN), 2019 WL 4751936, at *4 (D. Del. Sept. 30, 2019) (collecting cases); (hereinafter collectively the "TCPA precedent").

This Court agrees with the consensus.  The debt-collection exception is, on its face, content-based.  The only way to determine whether a communication is "to collect a debt owed to or guaranteed by the United States" is to evaluate its content. 47 U.S.C. § 227(b)(1)(A)(iii).  If a call is made solely to collect a government debt, the caller would not be liable under

-16-

the TCPA.  If such a call concerns any other topic, the caller
would be in violation of the TCPA.  The debt-collection
exception is, therefore, content-based and subject to strict
scrutiny. See Am. Ass'n of Political Consultants, Inc., 923 F.3d
at 166.

### ii. The Government Debt Exception does not Survive Strict Scrutiny

To survive strict scrutiny, the government-debt exception
must be narrowly tailored to further a compelling government
interest. Reed, 135 S. Ct. at 2226.  In this case, the
government would have to demonstrate that the TCPA's
"differentiation between [robocalls to collect a debt owed to or
guaranteed by the United States] and other types of [robocalls]"
is narrowly tailored to further a compelling government
interest. Duguid 926 F.3d at 1155. See Am. Ass'n of Political
Consultants, Inc., 923 F.3d at 167.

Contrary to its usual practice and perhaps recognizing the
handwriting on the wall, the government has not chosen to
intervene in this case.  Two circuit courts and a number of
district courts, including a different session of this Court,
have already concluded that the government-based debt exception
does not survive strict scrutiny and is therefore
unconstitutional. See TCPA Precedent; Katz v. Liberty Power

<u>Corp., LLC</u>, No. 18-CV-10506-ADB, 2019 WL 4645524, at *7 (D.
Mass. Sept. 24, 2019).

Similar to his brethren (and "sisteren"), this judicial
officer finds that the government-backed debt exception cannot
survive strict scrutiny.  In previous TCPA cases, the government
has advanced the interest of protecting personal and residential
privacy, <u>Id.</u>, but that proffered justification makes little
sense.  Unwanted robocalls to collect government debt are just
as violative of personal privacy as any other unsolicited
robocalls.  As noted by the Ninth Circuit, "[p]ermitting callers
to collect government debt thus hinders — not furthers — the
government's asserted interest." <u>Duguid</u> 926 F.3d at 1155.  The
decision of Congress to authorize automated calls to collect
government debt may serve other interests (effective debt
collection is a likely candidate) but privacy cannot be one.
<u>See</u> <u>Am. Ass'n of Political Consultants</u>, 923 F.3d at
168 ("Congress implemented the [TCPA] in order to protect
privacy interests.... The debt-collection exemption, however,
undercuts those privacy protections.")

Thus, consistently, this Court holds that the government
debt collection exception is unconstitutional because it does
not serve a compelling government interest and is a content-
based restriction on speech. <u>See</u> <u>TCPA precedent.</u>

-18-

### iii. The Government Debt Exception is Severable

Next, the court addresses the issue of whether the
unconstitutional debt collection exception can be severed from
the TCPA.  Other courts that have considered the issue,
including the Fourth and Ninth Circuit, have found the exception
to be severable. See TCPA precedent.  Again, this Court agrees.

Severability analysis begins with, and largely turns on
congressional intent.  See Regan v. Time, Inc., 468 U.S. 641,
653, (1984)(noting "[w]hether an unconstitutional provision is
severable from the remainder of the statute . . . is largely a
question of legislative intent, but the presumption is in favor
of severability."); Duguid, 926 F.3d at 1165 (stating
"[c]ongressional intent is the touchstone of severability
analysis.").  When a statue includes a severability clause,
there is a "presumption that Congress did not intend the
validity of the statute in question to depend on the validity of
the constitutionally offensive provision." Alaska Airlines, Inc.
v. Brock, 480 U.S. 678, 686 (1987).

Notably, Chapter 5 of the Communications Act of 1934, which
encompasses the TCPA, contains an explicit severability
provision. 47 U.S.C. § 608.  Further, the history of the TCPA
suggests that the government debt collection exception is
severable.  The law was enacted in 1991 and remained unaltered
until the exception was added as an addendum to the 2015 budget

-19-

bill.  The 2015 amendment is not essential to the TCPA's overall statutory scheme and there is no indication that the law cannot function as intended without it.

Given the severability clause, congressional intent, the ancillary nature of the provision and, for broadly similar reasons as discussed by the Fourth and Ninth Circuits, this Court concludes that the unconstitutional government debt collection exception in severable.  See Duguid, 926 F.3d at 1156-57; American Ass'n of Political Consultants, 923 F.3d at 170-71.

### b. The Balance of the TCPA

In addition to their claims that the government-based debt exception is unconstitutional, defendants assert, with minimal analysis, that the balance of the TCPA is a content-based restriction on speech which is subject to strict scrutiny and unconstitutional.

The weight of authority militates against defendants' abbreviated argument. See Gomez v. Campbell-Ewald Co., 768 F.3d 871, 876 (9th Cir. 2014), aff'd on other grounds, 136 S. Ct. 663, (2016)(holding, post Reed, that the pre-amendment TCPA was content-neutral and consistent with the First Amendment); Moser v. FCC, 46 F.3d 970, 973-74 (9th Cir. 1995) (holding that the TCPA is a constitutional content-neutral, time, place and manner restriction); Duguid, 926 F.3d at 1157 (rejecting defendant's

-20-

contention that "the TCPA as a whole is facially
unconstitutional"); Patriotic Veterans, Inc. v. Zoeller, 845
F.3d 303, 304 (7th Cir. 2017) (concluding a state law similar to
the TCPA is constitutional post-Reed); Van Bergen v. Minnesota,
59 F.3d 1541, 1549-56 (8th Cir. 1995); Hand, 2019 WL 6497432, at
*18-19.

      At this juncture, defendants have failed to present a
cogent argument to depart from the consensus that the TCPA,
without the debt-collection exception, is a content-neutral time
place and manner restriction consistent with the First
Amendment.

   **2. The Equal Protection Clause**

      Defendants also claim that the TCPA violates the Equal
Protection Clause.  Loan Depot does not advance cogent arguments
beyond those articulated in their First Amendment challenge.
Because the Court has fully addressed those claims above, it is
unnecessary for it to expound on Loan Depot's Equal Protection
argument. See Katz 2019 WL 4645524, at *8 n.9; Hand 2019 WL
6497432, at *22; See also Hill v. City of Scranton, 411 F.3d
118, 126 (3d Cir. 2005)(noting that "[i]t is generally
unnecessary to analyze laws which burden the exercise of First
Amendment rights by a class of persons under the equal
protection guarantee, because the substantive guarantees of the
Amendment serve as the strongest protection against the

limitation of these rights.")(quoting Ronald Rotunda & John

Nowak, 3 Treatise on Constitutional Law: Substance and Procedure

§ 18.40, at 796 (3d ed. 1999).

### 3. Fifth Amendment Due Process Clause

Finally, defendants argue that the TCPA is

unconstitutionally vague because the ATDS restrictions fail to

provide a person of ordinary intelligence adequate notice of

what constitutes an ATDS.

An indefinite congressional enactment may be

unconstitutional under the Fifth Amendment. As explained by the

Supreme Court, "[i]t is a basic principle of due process that an

enactment is void for vagueness if its prohibitions are not

clearly defined." Grayned v. City of Rockford, 408 U.S. 104,

108 (1972). A prohibition of overly vague laws, seeks, among

other things, "to ensure that persons of ordinary intelligence

have 'fair warning' of what a law prohibits." Nat'l Org. for

Marriage v. McKee, 649 F.3d 34, 62 (1st Cir. 2011) (quoting

Grayned 408 U.S. at 108-109). In cases which touch upon First

Amendment rights, "an even greater degree of specificity is

required." Buckley v. Valeo, 424 U.S. 1, 77 (1976).

Although subject to heightened scrutiny in the First

Amendment Context, "not all vagueness rises to the level of

constitutional concern." Nat'l Org. for Marriage 649 F.3d 34 at

62; see also Ward 491 U.S. 781 (1989)("[P]erfect clarity and

-22-

precise guidance have never been required even of regulations
that restrict expressive activity."); Ridley v. Mass. Bay
Transp. Auth., 390 F.3d 65, 93 (1st Cir. 2004) (noting "[t]he
mere fact that a regulation requires interpretation does not
make it vague.")

The definition of an ATDS contained in the TCPA, 47 U.S.C.
§ 227(a)(1), is not unconstitutionally vague.  The plain
language of the statute gives notice that if a caller uses a
random or sequential number generator to produce a list and then
makes calls to those numbers, that caller may be in violation of
the statute.  From the language of the statute, a person of
ordinary intelligence is reasonably able to determine what kind
of systems are or are not prohibited.  See Wilson v. PL Phase
One Operations L.P., No. CV DKC 18-3285, 2019 WL 4735483, at *7
(D. Md. Sept. 27, 2019)(holding that "though technical, the
TCPA's definition of an ATDS is set out in terms that an
ordinary person exercising ordinary common sense can understand
sufficiently and comply with."); Hand 2019 WL 6497432, at *23.

The Court recognizes that the TCPA is a complex statute
which does require interpretation.  That Congress may be guilty
of inartful or opaque drafting, however, does not signify that a
statue is unconstitutionally vague.  See United States v.
Powell, 423 U.S. 87, 94 (1975)(noting that just because Congress
"may have chosen clearer and more precise language equally

-23-

capable of achieving the end which it sought does not mean that the statute which it in fact drafted is unconstitutionally vague.")

Loan Depot bases their vagueness argument on the fact that Courts have offered competing definitions of what constitutes an ATDS under the statute. In particular, defendants cite ACA Int'l and the disagreement about the scope of the decision as evidence that the TCPA is unconstitutionally vague.

That argument is unpersuasive. Just because courts have come to disparate conclusions as to the scope of a statute or interpret ATDS differently does not render the law unconstitutionally vague. This is particularly so because the principal source of confusion following the D.C. Circuit's decision in ACA Int'l is in distinguishing which of the FCC rulings as to the ATDS remains in effect, not the text of the statute itself. See Barr v. Galvin, 626 F.3d 99, 108 (1st Cir. 2010) (noting "[t]he mere fact that a statute requires interpretation does not necessarily render it void for vagueness."); Henry v. Radius Glob. Sols., LLC, 357 F. Supp. 3d 446, 459 (E.D. Pa. 2019) (noting "[m]ere disagreement amongst courts over the interpretation of a statute does not render the statute unconstitutionally vague.")

Whatever ambiguity exists in the statutory language of the
TCPA, the ATDS provision does not rise to the level of
unconstitutional vagueness.

**C. Plaintiff's Claim for Relief**

In addition to their constitutional challenge, defendants
also assert that Rosenberg has failed to state a plausible claim
for relief.  Defendants contend that Rosenberg has not: (1)
plausibly alleged the use of an ATDS; (2) alleged that his
cellular phone is a residential line; (3) stated a claim
pursuant to 47 C.F.R. § 64.1200(d)(4) because the regulation
lacks a private right of action or (4) stated a non-conclusory
claim for vicarious liability.

The plaintiff rejoins that: (1) he has plausibly alleged
the use of an ATDS; (2) he has properly pled that his cell phone
is a residential line; (3) 47 C.F.R. § 64.1200(d) was
implemented pursuant to 47 U.S.C. § 227(c) and thus contains a
private right of action; and (4) he has properly pled vicarious
liability.

**1. The use of an ATDS**

At the outset, it bears mention that claims based on
alleged violations of the TCPA do not require the usual level of
particularity. See Jackson v. Caribbean Cruise Line, Inc. 88 F.
Supp. 3d 129, 139 (E.D.N.Y 2015).  In order properly to state a
claim under the TCPA, a plaintiff must plausibly plead that a

-25-

defendant made calls using an ATDS without his consent.
District courts have adopted different approaches in evaluating
the sufficiency of a pleading alleging use of an ATDS. Some
courts, recognizing that it is difficult for a plaintiff to
allege precise facts regarding the technical specifications of a
dialing system prior to discovery, have held that a plaintiff
need only allege the use of an ATDS as defined in the statute.
See Hashw v. Dep't Stores Nat'l Bank, 986 F. Supp. 2d 1058, 1061
(D. Minn. 2013); Zeidel v. Nat'l Gas & Elec., LLC, No. 18-CV-
06792, 2019 WL 2161546, at *2 (N.D. Ill. May 17, 2019)
(collecting cases). Others have concluded that, without more, a
bare allegation that an ATDS was used to make the offending call
is insufficient to state a claim. See Kruskall v. Sallie Mae
Serv., Inc., No. 15-CV-11780, 2016 WL 1056973, at *3 (D. Mass.
Mar. 14, 2016)(citing Jones v. FMA All. Ltd., 978 F. Supp. 2d
84, 86 (D. Mass. 2013)).

Given the challenge of pleading specific facts in these
cases, courts adopting the latter approach (including those in
other sessions of this Court) allow a plaintiff to

> rely on indirect allegations, such as the content of the
> message, the context in which it was received, and the
> existence of similar messages to raise an inference that an
> ATDS was used. Jones 978 F. Supp. 2d at 84.

Different kinds of indirect allegations are adequate to
allow a court to make a reasonable inference that the calls

complained about were made using an ATDS. The promotional
content of calls, the fact that they came from "spoofed" numbers
or the timing and volume of such calls can all be sufficient to
state a claim. See e.g., Zeidel v. Nat'l Gas & Elec., LLC, No.
18-CV-06792, 2019 WL 2161546, at *3 (N.D. Ill. May 17,
2019)(finding that allegations of "generic promotional content"
and "different spoofed numbers" sufficient to state a claim);
Jones 978 F. Supp. 2d at 86-87.

    This Session agrees with the practice of other sessions of
this Court and finds that a plaintiff must plead more than the
statutory definition of an ATDS to state a claim but may rely on
indirect allegations.  Under this standard, Rosenberg has pled
just enough facts to state a claim that Loan Depot and Ascendant
Marketing employed an ATDS.  The complaint alleges that at least
one offending call was made from a non-working telephone number
and that the call was made to appear as though it came from a
local Massachusetts area code (so called "spoofing").  He
further states that other people have complained about receiving
similar messages from the same non-working telephone number.
Plaintiff's complaint avers that these facts are indicative of
defendants' use of an ATDS.  Taking those facts as true and in
the light most favorable to Rosenberg, the Court finds that
these allegations are sufficient to draw a reasonable inference

that Loan Depot and Ascendant Marketing employed the use of an
ATDS.

### 2. Plaintiff's use of his Cellular Phone as a Residential Line

Count Two of plaintiff's complaint alleges that loan Depot
violated the Do-not-call provisions of 47 C.F.R. § 64.1200(d)
which prohibits calls to "residential line[s]". Defendants
demur that plaintiff has not properly pled that his cellular
phone is a residential line rather than a business line.

Rosenberg submits that he placed his cellular phone number
on the National Do Not Call registry and that he uses his cell
phone as his residential line. Those allegations are adequate
for the purposes of pleading. In its 2003 Order, the FCC ruled
that cellular numbers that were placed on the DNC registry were
presumed to be residential. In Re Rules & Regulations
Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd.
14014, 14039 (2003). Construing reasonable allegations in favor
of Rosenberg, he has properly alleged that his cellphone is a
residential line.

### 3. Private Right of Action pursuant to 47 C.F.R. § 64.1200(d)(4)

Loan Depot next asserts that 47 C.F.R. §64.1200(d)(4) does
not contain a private right of action and therefore, plaintiff
cannot maintain his claim under that regulation. Broadly,
§64.1200(d) mandates that telemarketing entities develop and

maintain a do-not-call list.  Rosenberg claims that Ascendant

violated subsection (4) of that regulation because it failed to

identify itself when it called him.  The regulation, 47 C.F.R.

§64.1200(d)(4), mandates that

> A person or entity making a call for telemarketing purposes
> must provide the called party with the name of the
> individual caller, the name of the person or entity on
> whose behalf the call is being made, and a telephone number
> or address at which the person or entity may be contacted.

Defendants assert that 47 C.F.R. §64.1200(d)(4) was enacted

pursuant to 47 U.S.C. § 227(d), "technical and procedural

standards", which does not contain a private right of action.

Plaintiff rejoins that the implementing regulation was

promulgated pursuant to § 227(c), "protection of subscriber

privacy rights", which does contain a private right of action.

A majority of courts that have addressed the issue (though

not all), including the Sixth Circuit, have held that 47 C.F.R.

§64.1200(d)(4) was promulgated under the authority in § 227(c)

and, therefore, contains a private right of action.  See Charvat

v. NMP, Ltd. Liab. Co., 656 F.3d 440, 449 (6th Cir. 2011)

(holding that the do not call provision, § 227(c), was

implemented by §64.1200(d)(4)); Cunningham v. Rapid Response

Monitoring Servs., Inc., 251 F. Supp. 3d 1187, 1200 (M.D. Tenn.

2017)(holding that "the internal do-not-call procedures of 47

C.F.R. § 64.1200(d) fit cleanly under the rubric of 47 U.S.C. §

227(c)'s general mandate to adopt adequate do-not-call
regulations."); Wagner v. CLC Resorts & Devs., Inc., 32 F. Supp.
3d 1193, 1198 (M.D. Fla. 2014).

The Court agrees with the majority. Overall, §64.1200(d),
like § 227(c), is concerned principally with the protection of
individual privacy rights. The principal purpose of § 227(c) is
to ensure that subscribers "avoid receiving telephone
solicitations to which they object." The do-not-call
provisions, including §64.1200(d)(4), further that goal and
comport with the statute. The available record indicates that
§64.1200(d) was promulgated under § 227(c) and contains a
private right of action. Defendants' motion to dismiss on that
ground will, therefore, be denied.

   **4. Vicarious Liability**

In their final argument in support of their motion to
dismiss, defendants assert that Rosenberg's allegations that
Loan Depot is vicariously liable for telemarketing calls made by
Ascendant are conclusory and therefore must be dismissed.
Plaintiff responds that he has alleged enough facts with
specificity, at this stage, to state a claim.

A party who engages a third-party telemarketer may be held
vicariously liable under federal common law agency principles
for a TCPA violation. See In re Dish Network, LLC 28 F.C.C. Rcd.
6574, 6582 (2013); Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663,

-30-

674, 193 L. Ed. 2d 571 (2016) (noting that "the Ninth Circuit deferred to [The FCC ruling] and we have no cause to question it.")

Similar to pleading use of an ATDS, the question of vicarious liability is a fact intensive inquiry and, as previously noted, claims based on alleged violations of the TCPA do not require the usual level of particularity. See Jackson 88 F. Supp. 3d at 139. In order to satisfy the pleading requirements, however, Rosenberg must plausibly allege that Ascendant was acting as an agent of Loan Depot, i.e that Loan Depot exercised control over, ratified or openly authorized Ascendant's actions. See Legg v. Voice Media Grp., Inc., 20 F. Supp. 3d 1370, 1377 (S.D. Fla. 2014) (citing In re Dish Network, LLC 28 F.C.C. Rcd. at 6574).

A seller may be liable for unauthorized conduct of a telemarketer if the seller is aware of the unauthorized conduct of the telemarketer and fails to terminate its services. In re Dish Network, LLC 28 F.C.C. Rcd. at 6587 n.104.

Specifically, Rosenberg alleges that Loan Depot hired Ascendant Marketing to conduct telemarketing. He states that Ascendant placed an automated call to him on November 19, 2018, and Loan Depot identified itself on that call. He further alleges that when Loan Depot later contacted him directly, he complained about the conduct of Ascendant Marketing but later

-31-

received an additional telemarketing call. Taken together, Rosenberg alleges that Ascendant Marketing called him as Loan Depot's agent and Loan Depot knew of and therefore ratified Ascendant's unauthorized conduct.

Viewing his complaint in the light most favorable, Rosenberg has stated a claim that Loan Depot is vicariously liable for Ascendants conduct because (1) Ascendant Marketing acted with apparent authority and (2) Loan Depot ratified its conduct.

### D. Conclusion

Based on the foregoing, defendants' motion to dismiss on constitutional grounds, or in the alternative, for failure to state a claim, will be denied.

### V. Loan Depot and Ascendant's Motions to Dismiss Non-Massachusetts Putative Class Members

In their final attempt to dismiss this putative class action, defendants contend (in separate briefs) that the Supreme Court's decision in Bristol-Myers Squibb Co. v. Superior Court extends beyond mass tort actions to class actions and mandates that this Court dismiss the non-Massachusetts putative class members pursuant to Fed. R. Civ. P 12(b)(2). Plaintiffs, and the Court, disagree.

Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty. 137 S. Ct. 1773 (2017) ("the BMS case") was a

mass tort action brought in California state court by a group

consisting of both California and non-California residents who

allegedly suffered injuries from a drug manufactured by BMS.

The California Supreme Court applied a "sliding scale approach

to specific jurisdiction" whereby it exercised specific

jurisdiction over the non-resident plaintiffs. Id.  On review,

the United States Supreme Court reversed.  It found that there

was no connection between the forum and the non-residents'

specific claims and, therefore, exercise of personal

jurisdiction over them violated the Due Process Clause of the

Fourteenth Amendment. Id. at 1781.  Relevant to defendants'

reading of the BMS case, the court did not,

> confront the question whether its opinion here would also
> apply to a class action in which a plaintiff injured in the
> forum State seeks to represent a nationwide class of
> plaintiffs, not all of whom were injured there. Id. at 1789
> n.4 (Sotomayor, J., dissenting)

A mass tort action is fundamentally distinguishable from a

class action. This Court joins the large majority of district

courts which have held the BMS case inapplicable to class

actions such as the instant case.  See e.g., Molock v. Whole

Foods Mkt., Inc., 297 F. Supp. 3d 114, 126 (D.D.C.); Chinese-

Manufactured Drywall Prods. Liability Litig., No. MDL 09-2047,

2017 WL 5971622, at *12-14 (E.D. La. Nov. 30, 2017); Fitzhenry-

Russell v. Dr. Pepper Snapple Grp., Inc., No. 17-CV-00564 NC,

2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017); Cabrera v.

-33-

Bayer Healthcare, LLC, No. LACV1708525JAKJPRX, 2019 WL 1146828,
at *7 (C.D. Cal. Mar. 6, 2019)(collecting cases).

As explained in detail in those opinions, the BMS case does
not apply to a putative class action such as the case at bar.
In brief, there are two key differences.  First, in a mass tort
action each individual plaintiff is a real party in interest.
In a putative class action, however,

> one or more plaintiffs seek to represent the rest of the
> similarly situated plaintiffs, and the named plaintiffs are
> the only plaintiffs actually named in the complaint.

Molock 297 F. Supp. 3d at 126-27.  Second, a class action,
unlike a mass tort case, must meet additional due process
standards for certification under Fed. R. Civ. P. 23.  The
familiar requirements of that rule: numerosity, commonality,
typicality, adequacy of representation, predominance and
superiority, "supply due process safeguards not applicable in
the mass tort context." Id.  Given those inherent differences
and the well-reasoned caselaw holding that the BMS case does not
apply in the class action context, this Court similarly declines
to extend the reach of the BMS decision.  The Court will
therefore deny the two pending motions to dismiss the complaint
as to non-Massachusetts resident putative class members for lack
of personal jurisdiction.

**ORDER**

In accordance with the foregoing:

1) the motion of Loan Depot Motion to Stay (Docket No. 10) is
   **DENIED;**

2) the motion of Loan Depot to Strike Plaintiff's Class
   Allegations (Docket No. 23) is **DENIED without prejudice;**

3) the motion of Loan Depot and Ascendant Marketing Group to
   Dismiss (Docket No. 24) is **DENIED;**

4) the motion of Loan Depot to Dismiss Non-Massachusetts
   Putative Class Members (Docket No. 25) is **DENIED;** and

5) the motion of Ascendant Marketing Group to Dismiss for Lack
   of Jurisdiction (Docket No. 48) is **DENIED.**

**So ordered.**

                                    /s/ Nathaniel M. Gorton
                                    Nathaniel M. Gorton
                                    United States District Judge
Dated January 24, 2020