UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOSEPH MANTHA, on behalf of himself and all others similarly situated, ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) | Civil No. 19-12235-LTS |
| ) | |
| QUOTEWIZARD.COM, LLC, ) ) | |
| Defendant. ) ) | |

ORDER ON MOTION TO STRIKE (DOC. NO. 14), MOTION TO DISMISS (DOC. NO. 16), AND MOTION TO COMMENCE DISCOVERY (DOC. NO. 27)

March 16, 2020

SOROKIN, J.

Plaintiff Joseph Mantha brings a two-count complaint against Defendant QuoteWizard.com, LLC ("QuoteWizard") arising out of two text messages he received on August 12 and August 13, 2019, respectively. Doc. No. 1 ¶ 31. Several motions are pending. See Doc. No. 14 (QuoteWizard's motion to strike); Doc. No. 16 (QuoteWizard's motion to dismiss); Doc. No. 27 (Mantha's motion to commence limited discovery).

The Court first addresses the motion to dismiss for failure to state a claim. Doc. No. 16. Count I of the Complaint alleges a violation of the Telephone Consumer Protection Act's ("TCPA") automated calling provisions, 47 U.S.C. § 227. Doc. No. 1 ¶ 62-66. The parties agree that Mantha must, inter alia, plausibly allege the use of an automatic telephone dialing system ("ATDS") by QuoteWizard in order to state a claim. See Breda v. Cellco P'ship, 934 F.3d 1, 4 (1st Cir. 2019) (holding that "the elements of a TCPA claim are: (1) the defendant used an automatic dialing system or an artificial or prerecorded voice, (2) to call a telephone number

assigned to a cellular telephone service or to a service for which the called party is charged for the call.").

The Complaint alleges that QuoteWizard has a "strategy for generating new customers [that] involves the use of an [ATDS] to send text messages," Doc. No. 1 ¶ 25, without further specification; that QuoteWizard "employed the use of an automatic telephone dialing system," id. ¶ 39, without further specification; that the two text messages at issue in this case were sent from a long code number, id. ¶ 40; that the two text messages contained "commercial content," id.; and, that the number from which the texts were sent "is registered to Bandwidth.com, a cloud-based telecom company that provides mass text messaging services," id. ¶ 40 n.1.

These allegations fail to allege plausibly the use of an ATDS. Mantha's allegations regarding QuoteWizard's business strategy, id. ¶ 25, and use of an ATDS, id. ¶ 39, are conclusory and, as such, the Court sets them aside. See Peñalbert–Rosa v. Fortuño–Burset, 631 F.3d 592, 595 (1st Cir. 2011) ("[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual.") (internal quotation marks omitted). While use of a long code does not foreclose the possibility that QuoteWizard used an ATDS, it does not support a plausible inference that an ATDS was used. Cf. Gerrard v. Acara Sols. Inc., No. 18-CV-1041V(F), 2019 WL 2647758, at *9 (W.D.N.Y. June 27, 2019) ("A short-code is a six-digit number that allows high-volume, application driver messaging . . . Long-codes are meant for person-to-person communications and can send only 1 message per record; short-codes can send 100 messages per second.") (internal quotation marks omitted); Legg v. Voice Media Grp., Inc., 990 F. Supp. 2d 1351, 1354 (S.D. Fla. 2014) (holding that where a plaintiff alleges that mass text messages were sent from a short code, "which is a type of telephone number typically used by companies to

communicate with large numbers of consumers," that allegation supports a plausible inference that defendant used an ATDS).

This leaves only Mantha's allegations about the text messages themselves. However, the number, frequency, nature, and content of the two messages alleged in the Complaint do not give rise to a plausible inference of the use of an ATDS. Contrary to Mantha's assertion, "commercial content" does not, in and of itself, suggest use of an ATDS. See Thomas v. Peterson's Harley Davidson of Miami, L.L.C., 363 F. Supp. 3d 1368, 1372 (S.D. Fla. 2018) (holding that allegations that text messages contained "commercial and generic content" only gave rise to a plausible inference of autodialing alongside additional "circumstances surrounding the text messages," including "the messages' ability to trigger an automated response by replying 'Y,'" and that fact that "the messages were sent from a short code"); Serban v. Cargurus, Inc., No. 16 C 2531, 2016 WL 4709077, at *4 (N.D. Ill. Sept. 8, 2016) (concluding that the "promotional and generic [] nature" of text messages contributed to a plausible inference of ATDS use where the Complaint alleged that defendant used "SMS shortcodes to transmit anywhere from hundreds of thousands to millions of text messages similar to the one [the plaintiff] received to other individuals"). And the mere fact that the text messages came from a number that is registered with a company that offers, amongst other products, mass texting services, does not suffice on the allegations of this complaint. Cf. Products, http://www.bandwidth.com/products/ (last visited March 16, 2020) (listing Bandwidth.com's products, including a service that "makes it easy to send SMS messages from toll-free numbers" and another service that allows "messages to contain images, emojis, videos, and audio.").

At the motion to dismiss stage, Mantha bears the burden of "nudg[ing] [his] claims across the line from conceivable to plausible," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(2007), a burden he has not met with respect to Count I. Accordingly, the Motion to Dismiss Count I is ALLOWED.[1]

Next, Count II of the Complaint alleges that QuoteWizard "violated the TCPA by (a) initiating telephone solicitations to persons and entities whose telephone numbers were listed on the Do Not Call Registry, or (b) by the fact that others made those calls on its behalf." Doc. No. 1 ¶ 68. QuoteWizard also moves to dismiss this Count, contending that the content of the text messages as alleged in the Complaint does not plausibly suggest a solicitation, as opposed to an informational, message. See Doc. No. 17 at 2 (arguing that "[i]nformational communications are not within the ambit of the TCPA's do-not-call prohibition, which require something in the nature of a sales pitch.").

The TCPA defines "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(14). Here, the messages reproduced in Mantha's Complaint say:

- "Hey, it's Amanda following up. When's a good day for us to talk Joe? You requested a quote on auto insurance. Message me if you're still interested!"

- Hi this is Amanda! Are you looking for an accurate estimate, Joe? We can review your options together. Call me when you're free, it won't take long!"

Doc. No. 1 ¶ 38. Drawing all reasonable inferences in Mantha's favor, Gargano Liberty Intern. Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009), these messages were soliciting the purchase of services, specifically automobile insurance. See In Re Rules & Regulations Implementing the

---

[1] Mantha has conceded that Count I of his Complaint does not encompass a claim arising from telephone calls. See Doc. No. 19 at 5-6 n.3 (noting that "this case involves text messages" and thus arguing that "cases that involved telemarketing calls to telephones" are not persuasive authority in this case). In any event, the allegations regarding phone calls are too general and vague to plausibly support Count I of the Complaint.

4

Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14046 (2003) (declining "to establish an exemption for calls made to set 'face-to-face' appointments" and "conclud[ing] that such calls are made for the purpose of encouraging the purchase of goods and services and therefore fall within the statutory definition of telephone solicitation."); id. at 14098–99 (noting that "a message that seeks people to help sell or market a business' products, constitutes an advertisement if the individuals called are encouraged to purchase, rent, or invest in property, goods, or services, during or after the call."). Thus, the Motion to Dismiss Count II is DENIED.

Accordingly, the Motion to Dismiss (Doc. No. 16) is ALLOWED IN PART by dismissing Count I and DENIED as to Count II. The Motion to Strike (Doc. No. 14) is DENIED WITHOUT PREJUDICE. QuoteWizard may renew its objections to the definitions of the class, as well as its assertion that the Court lacks personal jurisdiction over non-Massachusetts class members, at the appropriate time; presently, resolution of those issues is premature. Finally, Mantha's Motion to Commence Discovery (Doc. No. 27) is DENIED WITHOUT PREJUDICE. However, the parties shall (1) confer regarding the preservation of records relating to "the identification of all parties involved in the text campaigns at issue" in this case, "records of the text [messages] to [putative] class members," and "documents that may relate to QuoteWizard's affirmative defense of consent," Doc. No. 27 at 5, and (2) file a joint status report within fourteen days reflecting their joint or separate positions regarding preservation. The Clerk shall schedule a Rule 16 conference.

                                              SO ORDERED.

                                        /s/ Leo T. Sorokin
                                        Leo T. Sorokin
                                        United States District Judge