UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH MANTHA, *on behalf of himself and all others similarly situated*,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>QUOTEWIZARD.COM, LLC,<br><br>　　　　　　Defendant. | Civil Action No. 1:19-cv-12235-LTS |

**<u>JOINT STATUS REPORT CONCERNING DISPUTE OVER RULE 45 SUBPOENAS</u>**

Pursuant to the Court's instructions at the Status Conference on April 7, 2020 (*see* ECF No. 39), Plaintiff Joseph Mantha ("Plaintiff") and Defendant QuoteWizard.com, LLC ("QuoteWizard") (together, the "Parties") hereby respectfully submit a Joint Status Report concerning their respective positions on a discovery dispute that has arisen over three non-party subpoenas served under Fed. R. Civ. P. 45 by Plaintiff on April 15, 2020 on: (1) BlueFlame Web Marketing, LLC ("BlueFlame"); (2) Plural Marketing Solutions, Inc. ("Plural"); and (3) RevPoint Media, LLC ("RevPoint"). All of the subpoenaed parties are known, thought, or alleged to be involved in either the origination or sale/transfer of the consumer lead and consent entered by Plaintiff or someone purporting to be Plaintiff on www.snappyautoinsurance.com on August 5, 2019.

The Parties, through counsel, conferred pursuant to LR 37.1(a) by letter and e-mail on April 21, 24, 29, May 1, and May 4, 2020, and have been able to narrow or resolve the dispute as to some requests, but not as to others. The Parties request a ruling or instructions from the Court on the scope of allowable discovery for the remaining disputed requests.

For the Court's reference, the following documents are attached hereto: **Exhibit A** (copies of the three subpoenas and attached schedules of requests); **Exhibit B** (copies of QuoteWizard's initial objections thereto); **Exhibit C** (copy of e-mail communications between the Parties concerning the dispute); **Exhibit D** (copy of QuoteWizard's latest (and final/operative) objections to the subpoenas); **Exhibit E** (QuoteWizard's proof of consent by Plaintiff, including disclosures given to Plaintiff at time of consent).

In addition to the attached materials, the Parties briefly summarize the remaining disputed requests, and their respective positions on each, below. Because the requests are essentially duplicative for all of the subpoenas, the Parties address each request below together for all three subpoenas. In addition, the Parties have grouped disputed requests together where they relate to the same information or documents.

## Remaining Disputed Requests

**Request No. 1**: Produce documents sufficient to identify and describe your relationship with the Defendant, [BlueFlame, RevPoint, or Plural], SnappyAutoinsurance.com or AutoInsurQuotes.com

**Request No. 2:** Produce any contract you may have with the Defendant, [BlueFlame, RevPoint, or Plural], SnappyAutoinsurance.com or AutoInsurQuotes.com, or any entity that owns or controls these entities.

> **QuoteWizard's Position:** The requests are overbroad, not relevant to any claim or defense, not proportional to the needs of the case, and seek confidential contractual agreements. The general relationship between these entities is irrelevant. Plaintiff or someone purporting to be Plaintiff consented to receive communications through the website www.snappyautoinsurance.com on August 5, 2019 from "AutoInsurQuotes.com and one or more of its marketing partners." *See* Ex. E. Thus, at most, the requests should be limited to QuoteWizard's relationship as a "marketing partner" of AutoInsurQuotes.com for purposes of Plaintiff's consent/invitation/permission to contact, and QuoteWizard does not object to requests limited to this information only (excluding the contents of any contracts).
>
> **Plaintiff's Position:** These requests are issued to understand the nature of the various relationships between the entities that Quotewizard asserts was involved in securing the Plaintiff's telephone number. In order to avoid a dispute, the Plaintiff has offered to send correspondence to the subpoena recipients clarifying that the documents sought are limited

to those that the Plaintiff potentially providing his consent could be implicated. Quotewizard has refused.

**Request No. 8:** Produce all documents that evidence any connection whatsoever to www.snappyautoinsurance.com and Defendant.

> **QuoteWizard's Position:** The request is overly broad, not proportional to the needs of the case, and is not limited to Plaintiff specifically. QuoteWizard would not object to the request if narrowed to relate solely to the relationship between QuoteWizard and www.snappyautoinsurance.com with respect to Plaintiff's remaining individual claim at issue in this litigation, and more specifically his lead/consent given on August 5, 2019.
>
> **Plaintiff's Position:** One of Quotewizard's affirmative defenses in this matter is that by purportedly visiting a website the Plaintiff provided his prior *express* written consent to receive calls. The Plaintiff's position is that support that there must be a connection between the company that called the Plaintiff, Quotewizard, and the website that he purportedly visited.

**Request No. 10:** Produce all documents that evidence the disclosures to consumers mandated by the TCPA and the E-Sign Act, 15 U.S.C. §§ 7001, et seq. See 27 FCC Rcd. 1830, 1844 ¶33-34; 47 C.F.R. § 64.1200(f)(8); on the web sites of SnappyAutoinsurance.com or AutoInsurQuotes.com, on August 5, 2019, or at any time.

> **QuoteWizard's Position:** The request is not relevant to any claim or defense, and also improperly calls for legal conclusions and attorneys' mental impressions concerning asserted compliance with laws. QuoteWizard has already produced a copy of the disclosures given to Plaintiff at the time of his consent (*see* Exhibit E). Whether or not those disclosures complied with certain laws is a legal argument, not a topic in discovery. Moreover, the E-Sign Act's disclosure requirements are irrelevant to this case; there is no requirement under the TCPA that disclosures mandated by a separate law (the E-Sign Act) be given to a consumer to prove the consumer's valid consent under the TCPA. *See Morris v. Modernize, Inc.*, 2018 U.S. Dist. LEXIS 232701, at *7-8, 2018 WL 7076744 (W.D. Tex. September 27, 2018) (rejecting plaintiff's argument that disclosure requirements of E-Sign Act, 15 U.S.C. § 7001(c)(1), were required to show valid consent for TCPA purposes).[1]
>
> In any event, QuoteWizard does not object to Plaintiff also seeking from the subpoenaed parties the disclosures given at the time of his consent, although QuoteWizard believes it would be duplicative of what it already produced. Thus, QuoteWizard does not object to the request if narrowed to simply request the disclosures given to Plaintiff on August 5, 2019 on www.snappyautoinsurance.com or what would have been provided to a hypothetical consumer on that website on that date.

---

[1] The E-Sign Act is relevant to this case only insofar as the Federal Communications Commission has stated that TCPA consent may be validly provided through any digital or electronic signature recognized by the E-Sign Act, such as a click-through web form. The FCC has never superimposed disclosure requirements under the E-Sign Act for unrelated transactions on the TCPA's consent/permission/invitation requirements.

**Plaintiff's Position:** QuoteWizard has produced an unauthenticated printout of what it claims a third-party website received from someone submitting the Plaintiff's information. The Plaintiff has issued a subpoena to the company that owns the website and related companies that sold the Plaintiff's data. As such, the fact that QuoteWizard has produced this unauthenticated copy does not foreclose the need for discovery.

However, to avoid further dispute, the Plaintiff had previously offered to QuoteWizard that it send correspondence to the subpoena recipients that states "After the parties conferred, there is an agreement to limit the information sought in Request No. 10 to any disclosures that were made on August 5, 2019 *only*." Quotewizard refused.

The Plaintiff disagrees that disagrees that the E-Sign Act's disclosure requirements are irrelevant to this case. *See Larson v. Harman Mgmt. Corp.,* No. 1:16-cv-00219-DAD-SKO, 2016 U.S. Dist. LEXIS 149267 (E.D. Cal. Oct. 26, 2016) (Discussing the requirements of E-Sign Act in the context of TCPA consent). However, this legal issue appears immaterial for the time being as both parties appear to agree that some amount of information about the disclosures are permissible.

**Request No. 14:** Produce all communications with any third party concerning the litigation captioned on the subpoena.

**QuoteWizard's Position:** QuoteWizard objects to this request insofar as the request includes communications made or had between QuoteWizard and other entities during or in anticipation of this litigation that are protected by the work product doctrine. If Plaintiff revises the request to exclude those communications and documents, then QuoteWizard would withdraw its objections.

**Plaintiff's Position:** With respect to the issue raised by QuoteWizard, the Plaintiff believes that any communications made or had between QuoteWizard and other entities subject to these subpoenas could be addressed through a privilege log.

### Related Disputed Issues

1.      QuoteWizard submits that it did not receive the requisite advance notice under Fed. R. Civ. P. 45(a)(4), as Plaintiff's counsel e-mailed QuoteWizard's counsel on April 15, 2020 (the date the subpoenas were issued) and stated that "[s]ubpoenas that the Plaintiff is issuing are attached."  As a result, QuoteWizard was not able to substantively review and object to the three subpoenas prior to the time that they were served, which could justify the quashing of each subpoena—where the purpose of the advance notice is to allow objections by a party. *See*, *e.g.*, *Williams v. Weems Community Mental Health Center*, 2006 U.S. Dist. LEXIS 21845, 2006 WL

4

905955, at *2 (S.D. Miss. April 6, 2006). *See also* Fed. R. Civ. P. 45, committee notes on 2013 amendment ("The amendments [to the notice requirement] are intended to achieve the original purpose of enabling the other parties to object or to serve a subpoena for additional materials."). To cure this violation, QuoteWizard asked Plaintiff to withdraw the subpoenas or inform the subpoenaed parties that the requests were stayed until such time that the Parties' dispute could be resolved, but Plaintiff has refused to do so. This means that the subpoenaed parties could respond before QuoteWizard's objections are resolved; in fact, since the time for compliance was 14 days within receipt, the compliance date has either passed or is rapidly nearing. A premature response could prejudice QuoteWizard if, for example, privileged material is produced. As such, QuoteWizard requests that this Court order Plaintiff to withdraw and/or stay the requests by informing the subpoenaed parties of the same until the dispute is resolved.

> Plaintiff's Response: The Plaintiff provided QuoteWizard with Fed. R. Civ. P. 45(a)(4) notice by providing a copy of the subpoenas before they were sent to process servers for service, which is all that is required. *See Osborne v. Google*, No. 1:18 MC 40, 2019 U.S. Dist. LEXIS 3149 (W.D.N.C. Jan. 7, 2019) (Denying motion to quash when subpoenas were served two hours after providing electronic notice to opposing counsel). Furthermore, the parties limited bifurcated discovery period began on April 15, the date that the Plaintiff issued the subpoenas and ends on June 15, 2020, only approximately a month away. If the Plaintiff is forced to reserve the subpoenas, it is unlikely that the parties will be able to meet the Court's Scheduling Order. In fact, the Plaintiff is shortly filing a motion to electronically serve one of the subpoenas, as the recipient's office is closed and his attorney has refused to accept service. There have been no privileged documents produced, no indication that there will be, and of the three subpoena respondents, two have counsel.

2. During the Scheduling Conference on April 7, 2020, the Plaintiff had also requested during the current bifurcated discovery period that he be permitted to issue a subpoena to obtain records of calls made by the vendor of Quotewizard that contacted the Plaintiff, and other potential class members, and to obtain discovery as to the nature of the dialing equipment used to contact the plaintiff. The Court stated that it would take the issue under advisement. As the bifurcated discovery period is almost halfway to its conclusion, the Plaintiff is renewing that request.

> QuoteWizard's Response: QuoteWizard objects to any class discovery at this stage, or to any discovery as to alleged use of an autodialer. Allegations of the use of an autodialer have been dismissed from this case and no discovery can be taken in connection with allegations that are no longer live or pending in this case. Furthermore, "records of calls made by the vendor of Quote[W]izard" is not relevant to any issue in this case. Plaintiff already has copies of the text messages sent to him. Moreover, no class discovery is appropriate at this stage at all, especially as to alleged fraudulent consent, where no evidence of fraudulent consent has ever been offered by Plaintiff. The issue of Plaintiff's consent can be resolved through discovery tailored to that issue.

[*Signatures on Next Page*]

Dated: May 8, 2020

| | |
|---|---|
| Respectfully submitted, | Respectfully submitted, |
| Joseph Mantha, | QuoteWizard.com, LLC, |
| by his attorneys, | By its attorneys, |
| /s/ Matthew P. McCue | /s/ Kevin P. Polansky |
| Matthew P. McCue | Kevin P. Polansky, BBO (BBO #667229) |
| The Law Office of Matthew P. McCue | Christine M. Kingston (BBO #682962) |
| 1 South Avenue, Suite 3 | Nelson Mullins Riley & Scarborough LLP |
| Natick, Massachusetts 01760 | One Post Office Square, 30th Floor |
| (508) 655-1415 | Boston, MA 02109 |
| (508) 319-3077 facsimile | (t) (617)-217-4700 |
| mmccue@massattorneys.net | (f) (617) 217-4710 |
| | kevin.polansky@nelsonmullins.com |
| | christine.kingston@nelsonmullins.com |

CERTIFICATE OF SERVICE

I, Kevin P. Polansky, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: May 8, 2020                    */s/ Kevin P. Polansky*