UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH MANTHA, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>QUOTEWIZARD.COM, LLC,<br><br>Defendant. | Civil Action No. 1:19-cv-12235-LTS |

**JOINT STATUS REPORT CONCERNING DISPUTE OVER PLAINTIFF'S DISCOVERY RESPONSES**

Pursuant to the Court's instructions at the Status Conference on April 7, 2020 (*see* ECF No. 39), Plaintiff Joseph Mantha ("Plaintiff") and Defendant QuoteWizard.com, LLC ("QuoteWizard") (together, the "Parties") hereby respectfully submit a Joint Status Report concerning their respective positions on a discovery dispute that has arisen over Plaintiff's written discovery responses to QuoteWizard's First Set of Interrogatories, Requests for Admission ("RFAs"), and Requests for Production of Documents ("RPDs").

The Parties, through counsel, conferred pursuant to LR 37.1(a) by letter and e-mail on May 29, 2020, and June 4, 2020. While the Parties have been able to resolve some issues, they have been unable to narrow or resolve their dispute as to the requests and issues summarized below. The Parties request a ruling or instructions from the Court on the scope of allowable discovery for the remaining disputed requests.

For the Court's reference, the following documents are attached hereto: **Exhibit A** (QuoteWizard's first set of written discovery requests); **Exhibit B** (Plaintiff's responses thereto);

**Exhibit C** (QuoteWizard's discovery dispute letter to Plaintiff); **Exhibit D** (an e-mail exchange relating thereto); **Exhibit E** (Plaintiff's subpoena to non-party Drips Holdings, LLC); **Exhibit F,** the transcript of the CMC conference**. Exhibit G,** the QuoteWizard Opt In; **Exhibit H,** QuoteWizard's Answers to Interrogatories; **Exhibit I,** the Plural Opt In, **Exhibit J,** Screen shots of www.snappyautoinsurance.com produced by Plural, **Exhibit K,** e-mail with counsel for Plural; **Exhibit L, a** copy of the unpublished decision in *Charvat v. Valente, et al.,* No. 12 C 5746 (N.D. Il., 4/22/2017)(Judge Rowland, USMJ)

In addition to the attached materials, the Parties briefly summarize the disputed requests, and their respective positions on each, below. The disputed requests generally fall into two categories: (1) where Plaintiff has objected and not responded to requests on the basis of the same general objection; and (2) where Plaintiff objected and not responded for reasons unique to the specific request.  Each category is addressed in turn below.

### Remaining General Disputes

**General Dispute No. 1:** Whether the initial discovery phase in this case as to Plaintiff's individual claim relates (or should relate) solely to the issue of consent, or more broadly to any relevant, discoverable issues related to Plaintiff's individual claim.

> **QuoteWizard's Position:** QuoteWizard's position is more fully set forth in the Parties' Joint Status Report being filed concurrently on this exact issue.  QuoteWizard incorporates its position in that Report herein.  Briefly, even though the Court initially envisioned a quick and simple initial discovery phase based on Plaintiff's consent to be contacted, a position seemingly reached because of Plaintiff's counsel's representations that it would be quick and simple, circumstances have materially changed.  Plaintiff has served eight subpoenas, and has retained an expert to examine his electronic devices and testify concerning the same, while simultaneously denying QuoteWizard the right to access the same devices.  QuoteWizard will likely ultimately retain its own expert when it is finally able to examine the devices, meaning that this will likely become a dueling expert case on the issue of consent, all before QuoteWizard even has a chance to depose Plaintiff. Moreover, recent non-party subpoena responses have suggested a different IP address and date for the subject consent, necessitating expansion of the discovery to cover them, too. In short, discovery into the issue of Plaintiff's consent has grown complex.  QuoteWizard will be seeking extensions of the current deadlines (*see* ECF No. 39) in order to complete discovery on the consent issue (and in order to compel production of information and

documents that Plaintiff has withheld to date), and to allow time to determine whether an expert is needed and to retain one. The Court's determinations at the April 7, 2020 scheduling conference, before discovery opened, and based upon Plaintiff's representation that consent issues would be quick and simple, did not contemplate and could not possibly have contemplated the complexity of discovery on the issue of Plaintiff's consent, some of which has been driven by Plaintiff's counsel.

In light of the foregoing, and the Court's admonition at the April 7, 2020 conference for counsel to work reasonably together to eliminate unnecessarily segmented discovery, QuoteWizard is seeking extremely limited discovery on individual issues besides consent. Although the majority of QuoteWizard's discovery requests focus on consent, QuoteWizard has other defenses to Plaintiff's claim, including that: (1) Plaintiff's cell phone number is not a "residential" line; (2) the text messages were not "telephone solicitations"; and (3) QuoteWizard relied in good faith on proof of consent. In total, QuoteWizard's written requests on these other individual issues were extremely circumscribed: only 2 of 24 interrogatories (Nos. 6-7); only 4 of 30 requests for production of documents (Nos. 12-13, 21-22); and only 2 of 12 request for admission (Nos. 10-11). *See* Ex. A. Plaintiff can easily respond to this discovery in the same timeframe as discovery on the consent issue, and it causes him no prejudice to respond now (rather than at some undefined future date). Moreover, Plaintiff has waived any contention that discovery is limited to issues of consent only, as he recently served a subpoena on a non-party that is not limited to consent. *See* Ex. E.

**Plaintiff's Position:** During the Case Management Conference with the Court, a transcript of which is attached at **Exhibit F,** QuoteWizard advocated for the bifurcation of the Plaintiff's individual claim from the class claim. Plaintiff objected and noted there was little efficiency in doing so, and the only issue that would not be on the table then would be plaintiff's ability to discover the scope of QuoteWizard's TCPA violations as to the entire class- discovery to which QuoteWizard has objected at every turn. Rather, Plaintiff suggested that since QuoteWizard was so confident that Mr. Mantha consented to receive the spam texts at issue, that a very brief discovery window be set leading then to summary judgment on that limited issue. If QuoteWizard prevailed on its claimed consent defense, the case would be over. If Mr. Mantha prevailed, the case would then proceed to full discovery, including class discovery. The Court considered both options at the CMC and agreed with Plaintiff's proposal, ordering the Parties to focus initially and solely on QuoteWizard's consent defense. Specifically, the Court noted:

> *Okay. This is what I'm going to do... I'm going to set the following- a schedule we did talk about for sure, because you both agree to that, and I do think it makes a lot of sense to resolve that early on, which is initial disclosures by April 15th. The consent question discovery commences now, or commences on April 15th.*
>
> *And by "consent discovery," what I mean is did Mr. Mantha sign the forms or give his cell phone number, number one; and number two, whatever it is that defendant is relying on, to assert that he agreed, then*

3

> *like the disclosure of the document that he e-signed on the Internet, whatever it is, any discovery about that, with this discovery on those topics closing June 30th.*

See **Exhibit F,** Transcript of CMC at page 26. And if there was any doubt, the Court concluded the CMC by noting:

> *I bifurcated the discovery right here. We're doing this consent question. If we don't do anything else, we're doing that. And we'll do everything else later. **Not discovery about other things.***

*Id.* at page. 28. The Court then entered a schedule taking the Parties through summary judgment briefing on consent only.

In a revisionist spin on what transpired at the CMC, QuoteWizard thereafter took the position that the Court actually did not limit discovery to consent but actually ***agreed with*** QuoteWizard and adopted its proposal to bifurcate discovery, and also to allow QuoteWizard to proceed to discovery on all issues- while at the same time refusing to allow Plaintiff to pursue discovery as to the scope of the class, or as to the telemarketing equipment used to send the texts at issue. The transcript speaks for itself. QuoteWizard should not be able to retroactively revise what transpired at the CMC. Since the CMC, the Plaintiff, as instructed, has focused his discovery requests solely on consent. It did not pursue other discovery requests that would relate even to his individual claim- such as whether QuoteWizard has been sued before for TCPA violations- a discovery request that would support his individual claim that QuoteWizard's TCPA violations were knowing or willful. Further, QuoteWizard now claims it intends to move for summary judgment as to whether or not the texts were 'solicitations' under the TCPA, or whether it is entitled to a "good faith" defense. In reliance on the Court's instructions at the CMC, Plaintiff has yet to explore any discovery whatsoever as to this claim- because it was ordered ***not to do so***. Having ordered the Parties to focus solely on consent, it would be unfair and prejudicial to the Plaintiff now to allow QuoteWizard to unilaterally expand the scope of discovery, while simultaneously allowing QuoteWizard to continue to refuse to allow discovery to proceed that would evidence the scope of QuoteWizard's TCPA violations- discovery that by the way would come almost entirely from third parties and would not burden QuoteWizard in any way whatsoever.

**General Dispute No. 2**: Whether QuoteWizard is entitled to know whether Plaintiff's attorneys have knowledge of or involvement in the underlying events at issue (*i.e.*, the giving of consent and the communications between Plaintiff and QuoteWizard), which is separate and distinct from their role as counsel in this litigation.

> **QuoteWizard's Position:** Plaintiff's discovery responses indicate that his counsel had involvement in the underlying events at issue, but he has refused to disclose the information requested. *See*, *e.g.*, Interrogatory No. 19 (in response to interrogatory concerning whether anyone "helped, guided, or otherwise informed [Plaintiff's] responses to QuoteWizard's communications in or around August of 2019," and seeking the content of those

4

conversations, Plaintiff "object[ed] to the extent that such communications are protected by the Attorney-Client privilege."). In addition, based upon information learned by QuoteWizard's counsel in this case, the circumstances present here (including that Plaintiff admits to "play[ing] along" with the text messages from QuoteWizard instead of not responding, and proof that counsel was working on the case eight days later), and public information (*Clough v. Revenue Frontier, LLC*, 2019 U.S. Dist. LEXIS 102436, at *16-17 (D.N.H. June 19, 2019)), QuoteWizard believes that requests concerning Plaintiff's relationship with counsel may lead to the discovery of relevant evidence on, among other things, (1) whether Plaintiff provided the contested consent, and (2) whether the exchange between Plaintiff and QuoteWizard is within the scope of the TCPA.[1] If Plaintiff was in touch with counsel at or before the time the messages were received, or if counsel coached Plaintiff on how to respond to the messages, this would serve as evidence that the text messages were *expected* (*i.e.*, Plaintiff consented), and in any event could show that this interaction cannot serve as the basis for an alleged TCPA violation. Further, this information is not protected by the attorney-client privilege, as it would predate retention of counsel in connection with this litigation, or because it relates to the underlying factual events at issue and would render counsel a percipient witness to those events.

<u>QuoteWizard respectfully suggests that, if the Court has concerns about privilege, the Court can first order Plaintiff to disclose whether his attorneys had contact with him prior to or during, or involvement in, the underlying events at issue, and then the Parties and the Court can address whether the substantive information is privileged and/or subject to discovery</u>. Although Plaintiff's counsel now represents for the first time that they were retained after the text messages and "played no role" prior, QuoteWizard is simply asking that Plaintiff supplement discovery responses under oath to indicate whether Plaintiff's counsel was in contact with Plaintiff at the time the consent was given and/or when the text messages were received, a point Plaintiff's counsel has refused to address to date. Plaintiff's new representation is contrary to discovery responses that indicated relevant information being withheld on the grounds of privilege on these topics.

**Plaintiff's Position:** QuoteWizard's insinuation that Plaintiff or Plaintiff's counsel did anything untoward to welcome or invite the spam texts at issue in this case is insulting. Like QuoteWizard's Rule 11 threat against Plaintiff's counsel for filing a purportedly frivolous claim, it is patently without merit. Insinuations aside, Plaintiff's counsel can represent to the Court that they were retained by Mr. Mantha *after* Mr. Mantha received text spam messages from QuoteWizard, and played no role whatsoever prior to that time.

QuoteWizard next claims that, by responding to the spam text messages he received from QuoteWizard, in an effort to conclusively identify QuoteWizard as responsible for the spam, Mr. Mantha engaged in some kind of wrongdoing. Of course, it was entirely appropriate for Mr. Mantha to respond to the spam texts at issue to guarantee that before he filed a TCPA class action lawsuit against QuoteWizard, he confirmed that it was really QuoteWizard who was sending him spam. Notably, Mr. Mantha is ***not suing***

---

[1] This information will also be relevant to adequacy of Plaintiff as class representative and of class counsel, and typicality as well.

QuoteWizard for those texts exchanged with QuoteWizard's text bots relating to Mr. Mantha's efforts to confirm QuoteWizard's involvement. Rather, he is suing for the two unsolicited spam texts he received from QuoteWizard's text bots prior to responding to confirm QuoteWizard's involvement and identity. QuoteWizard's insinuation that Mr. Mantha did anything untoward by "playing along" to confirm the identity of the entity spamming his cell phone is desperate. In fact, the Federal Trade Commission, which is charged with enforcement of federal telemarketing laws, regularly has investigators pose or "play along" as potential customers to confirm compliance with telemarketing laws. *See e.g.* Consent Decree, *United States v. Credit Bureau Collection Services*, No. 2:10-cv-169, Doc. No. 3, § X (S.D. Oh. Feb. 24, 2010) (authorizing FTC investigators to use "lawful means," including "posing as consumers" in order to monitor and investigate compliance with federal law). *See FTC v. Lifewatch Inc.*, 176 F. Supp. 3d 757, 771 (N.D. Ill. 2016) (rejecting a telemarketers attack' on a consumer plaintiff who made various admitted misrepresentations to the telemarketer in an effort to confirm the telemarketers identity); *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1194-95 (M.D. Tenn. 2017) (posing as an interested consumer is an approach endorsed by Courts in order to ascertain the identity of the calling party and hold them responsible); *Mey v. Venture Data,* 245 F.Supp.3d 771 at 784 (N.D.W.Va. March 29, 2017) (rejecting defense attack on plaintiff in regards to the means she used to document the illegal telemarketing calls noting "While [defendant] is understandably frustrated by Ms. Mey's efficacy, she is doing exactly what Congress intended—enforcing the law.")

**General Dispute No. 3:** Whether Plaintiff is required to (1) produce documents evidencing his browser and search history, and/or (2) produce his electronic devices that he owned or used at the relevant time periods for inspection by QuoteWizard.

**QuoteWizard's Position:** QuoteWizard has requested Plaintiff's computers, cell phone(s), and electronic devices that he used at the relevant time periods when the consent at issue was provided on www.snappyautoinsurance.com.[2] For example, QuoteWizard has requested that Plaintiff generally produce his cell phone, computer, and electronic device(s) records demonstrating his browser and search history for August 1 through 5, 2019. Plaintiff has objected to such request and responded that no such documents "evidence any visit to www.snappyautoinsurance.com on the date of the alleged consent, or at any time prior to the filing of this lawsuit." *See* RPD No. 17. However, QuoteWizard did not limit the request in the manner that Plaintiff limited his response, nor is QuoteWizard obligated to accept Plaintiff's characterization of the evidence. QuoteWizard is entitled to the evidence firsthand. In addition, Plaintiff admits in his discovery responses that he has retained an expert who has already scanned and searched Plaintiff's cell phone and computer to determine, among other things, his IP address and any references to QuoteWizard. *See* Interrogatory No. 22. Plaintiff cannot refuse to make his devices available to QuoteWizard while simultaneously retaining a testifying expert to testify based on the expert's access to those same devices. As such, QuoteWizard requests that Plaintiff either agree to produce for inspection the electronic devices identified in his Answer to Interrogatory No. 14, or produce the imaging of those devices for inspection by

---

[2] As identified in Plaintiff's response to Interrogatory No. 14.

QuoteWizard through its expert if necessary.[3] QuoteWizard also requests his browser and search history insofar as it would not be reflected on the imaging.

The Federal Rules of Civil Procedure make clear that a testifying expert <u>must</u> disclose the facts or data considered by the expert in forming their opinion. *See* Fed. R. Civ. P. 26(a)(2)(B). "[I]t is essential that the materials of expert witnesses be discoverable by opposing parties." *In re Republic of Ecuador*, 153 F. Supp. 3d 484, 491 (D. Mass. 2015). "[T]he phrase 'facts or data' is to 'be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients' whether or not the expert ultimately relied on that material in forming an opinion. *Deangelis v. Corzine*, 2016 U.S. Dist. LEXIS 1856, at *29, 2016 WL 93862 (S.D.N.Y. Jan. 7, 2016) (*quoting* Fed. R. Civ. P. 26(a)(2)(B) advisory committee's note to 2010 amendment).

Plaintiff's counsel suggests that QuoteWizard is not entitled to this information because he believes that QuoteWizard has not confirmed the validity of its consent information. This is an issue for summary judgment or trial, <u>not</u> a reason to withhold information that is discoverable. Plaintiff's insinuation that QuoteWizard has done nothing in discovery is nonsensical; QuoteWizard has started (like in most cases) with written discovery, which Plaintiff has refused to respond to in full, thus preventing QuoteWizard from taking the logical next steps (like retaining an expert and deposing Plaintiff). QuoteWizard is entitled to seek discovery on Plaintiff's consent, and to the extent there is evidence on Plaintiff's devices that he indeed visited the website in question, then QuoteWizard is entitled to discover that evidence to support its consent argument. QuoteWizard is certainly entitled to that evidence given that Plaintiff has disclosed a purported expert who will be testifying on that exact point on the very same information that Plaintiff is refusing to disclose to QuoteWizard. Plaintiff also complains that the requests are intrusive. But Plaintiff again ignores that, notwithstanding that it is a valid request to begin with, he has *put his own devices at issue by retaining an expert, who examined them and who will testify to the same*. Plaintiff cannot simultaneously allow his expert access to the information and deny QuoteWizard access to the same. *See* Fed. R. Civ. P. 26(a)(2)(B). Plaintiff's intrusiveness argument further ignores that QuoteWizard has offered to limit access to the exact same imaging that his expert created of the devices (in fact, this is QuoteWizard's preference), meaning that Plaintiff would not have to produce his devices at all but his expert merely sends the imaging to QuoteWizard and/or its expert. QuoteWizard also emphasizes that this information cannot be obtained from any other source, as it is solely within Plaintiff's possession, custody, and control. It must be produced as a matter of right under the Rules.

QuoteWizard has also requested that Plaintiff's counsel specifically confirm that Plaintiff is preserving his devices, including that he has not deleted, and agrees not to delete, anything related to this case (including past browser history) until QuoteWizard can obtain the requested information and documents. Plaintiff's counsel has not provided that requested confirmation to QuoteWizard to date. As such, QuoteWizard asks that the Court require Plaintiff to preserve all of his electronic devices, including his browser history, and

---

[3] QuoteWizard has not yet decided to retain an expert witness as it waits for completion of Plaintiff's written discovery responses.

7

also to disclose if he has deleted, obscured, or otherwise changed or altered anything on his devices that arguably relates to this case, including his browser history.

**Plaintiff's Position:** Over the past few months, Plaintiff has focused his discovery efforts solely on consent. The results have been revealing. As noted at the CMC, it is Plaintiff's position that QuoteWizard's consent claim is based on a fraudulent document. QuoteWizard has, claimed since the outset of this case, that Mr. Mantha consented to receive text calls from QuoteWizard by "opting in" and providing his contact information and consent to be texted on a web site called www.snappyautoinsurance.com, and produced a document evidencing this purported consent upon which it relied in sending spam texts to Mr. Mantha (the "QuoteWizard Opt In"). *See **Exhibit G.*** On this basis, QuoteWizard threatened Plaintiff's counsel with Rule 11 sanctions for allegedly filing a frivolous claim. Mr. Mantha has steadfastly denied, under oath, to ever consenting to receive spam telemarketing texts from QuoteWizard. And, although it is QuoteWizard's burden to prove prior express written consent signed in writing, it was Plaintiff who sent a subpoena to Verizon- the telecommunications carrier for the IP Address listed on the QuoteWizard Opt In.  *See* **Exhibit G.** Verizon thereafter confirmed it had no evidence connecting this IP address to Mr. Mantha.

Mr. Mantha also testified under oath not only that he did not consent to receive texts from anyone by visiting www.snappyautoinsurance.com, but he has also denied any connection whatsoever to the IP address QuoteWizard claims was used to opt in to receive its spam texts. He has also attested that he was not even looking for a new auto insurer in the year prior to the spam texts at issue, and has had the same auto insurance since 2014.  *See* **Exhibit B** at Answers 9-11, 13**.**

In its Answers to Interrogatories, QuoteWizard claimed that the QuoteWizard Opt In was purchased from an entity called RevPoint. It further claimed RevPoint purchased the QuoteWizard Opt In from yet another third party called Plural. *See* **Exhibit H,** at Answer 4. Accordingly, Plaintiff then sent a subpoena to Plural, purportedly the original source of the QuoteWizard Opt In lead. In response, Plural produced information also purportedly evidencing Mr. Mantha's consent to receive telemarketing calls (the "Plural Opt In"), attached at **Exhibit I**. The data relating to Mr. Mantha's alleged consent to receive telemarketing calls contained within the QuoteWizard Opt In and the Plural Opt In, however, did not match one another.

For example, the date on the Plural Opt In, evidencing the date a computer purportedly accessed www.snappyautoinsurance.com and consented to receive solicitation calls, differed from the date on the QuoteWizard Opt In. *Compare* **Exhibit G** (opt in date of August 5, 2019) with **Exhibit I** (opt in date of June 26, 2019)**.** The Plural Opt In was the only opt in produced by Plural. In other words, Plural did not produce two opt in leads for Mr. Mantha purportedly indicating that he opted in on www.snappyautoinsurance.com on two different days. Someone then changed the date of the purported opt in from June 26, 2019 to August 5, 2019, to make it look like the alleged consent was closer in time to the transmission of spam texts by QuoteWizard.

8

Further, the consent language on the Plural Opt In states:

*Applicant agreed to receive promotional emails / calls / texts / postal mails from third parties regarding his auto insurance application.*

*See* **Exhibit I.** However, the consent language that appears on the QuoteWizard Opt In provides:

*By clicking the "Compare Rates button" I hereby consent to receive marketing communications via autodialed and/or-pre-recorded calls, including SMS messages, from AutoInsurQuotes.com and or more of its marketing partners...*

*See* **Exhibit G.** Accordingly, someone added TCPA consent language to the QuoteWizard Opt In- after it was sold by Plural to RevPoint- that differed dramatically from the TCPA consent language contained on the original Plural Opt In. *Compare* **Exhibit G** with **Exhibit I.**

Also, the IP address listed on the Plural Opt In identified the computer that was used to log on to [www.snappyautoinsurance.com](www.snappyautoinsurance.com) as being located in New Jersey. *Id.* Mr. Mantha lives in Massachusetts and has attested under oath that on the date of the purported QuoteWizard Opt In (August 5, 2019) he was at all times located in Massachusetts. *See* **Exhibit B** at Answer 16.

In addition, in response to subpoena, Plural produced the screen shots from the web-site of [www.snappyautoinsurance.com](www.snappyautoinsurance.com) that it claimed would have been viewed by a visiting consumer on the date of the purported opt in. The screen shots are attached at **Exhibit J**. These screen shots do not evidence any TCPA consent disclosure language on this web site- at all- in contradiction of both the consent language contained on the Plural Opt In and the consent language contained on the QuoteWizard Opt In. *Compare* **Exhibits G, I and J.**

Further, if QuoteWizard indeed was interested in ascertaining the truth as to whether or not Mr. Mantha opted in to receive spam texts from QuoteWizard from [www.snappyautonsurance.com](www.snappyautonsurance.com), one would think that QuoteWizard would identify the owner of the web-site, subpoena that owner, and depose that owner. QuoteWizard has done nothing. It also has precluded the Plaintiff from doing so as it claims it "does not know" the identity of the owner/operator of the web site. *See* **Exhibit H, at** Answer 2. Of course, the original source of evidence of consumers visits to this web site- and their alleged consent to receive spam texts- would be evidenced by the information contained within the computer server hosting or maintaining [www.snappyautoinsurance.com](www.snappyautoinsurance.com).

And, although it identified Plural as the original source of Mr. Mantha's purported consent to receive spam texts from QuoteWizard (*See* **Exhibit H,** at Answer 4), in response to subpoena, Plural has admitted that this representation is not true. Plural claims that it purchased Mr. Mantha's data from an individual named "Adam Brown." Plural claims that- other than the name and an email- it has no other information as to who this individual is,

9

where he can be located, and whether he was in fact the original source of the consent lead, or whether (and more likely) "Mr. Brown" (if that is even a real name) is merely yet another data broker- in a unknown chain of data brokers- who bought and sold Mr. Mantha's data- and then changed that data in the process to make it look more attractive to the purchaser. *See* **Exhibit K** (email from counsel for Plural confirming Plural has no other contact information for Mr. Brown)**.**

With this key background in mind for context, turning to the dispute at issue, having utterly failed to establish the authenticity, accuracy, validity or admissibility of the evidence underlying its consent defense, that QuoteWizard purchased from RevPoint- that RevPoint purchased from Plural- that Plural purchased from "Mr. Brown"- QuoteWizard turns its attention to Mr. Mantha- a consumer who has dared to even attempt to hold QuoteWizard to account for what is suspected to be a massive campaign of illegal text telemarketing in violation of the TCPA. QuoteWizard is not satisfied that Mr. Mantha has denied under oath- repeatedly- to consenting to receive spam texts from QuoteWizard. Rather, QuoteWizard now demands full access to Mr. Mantha's cell phone and computer systems in a continued quest to search for something that does not exist- Mr. Mantha's consent to receive spam texts from QuoteWizard.

At the CMC, QuoteWizard claimed it was already in possession of all the evidence it needed to proceed to summary judgment on the consent defense, and only needed discovery from Mr. Mantha as to his claim that the consent defense was based on fraudulent information. In this regard, Plaintiff's counsel has confirmed to QuoteWizard that every single shred of evidence that supports the claim that the consent defense in this case is a fraud is already in QuoteWizard's possession. Nothing in Mr. Mantha's computer or phone will shed further light on this issue. To call a spade a spade- QuoteWizard's demand for full access to Mr. Mantha's phone and computers is calculated harassment. QuoteWizard hopes that if it threatens Mr. Mantha- or his counsel enough- or if it can make Mr. Mantha's prosecution of this case as burdensome as possible, Mr. Mantha will simply quit. In that case, QuoteWizard's suspected massive violation of the TCPA will go unchecked.

At the outset of this case, QuoteWizard threatened Plaintiff's counsel with Rule 11 sanctions for purportedly filing a frivolous action. To ensure this threat was specious, Plaintiff's counsel retained a forensics expert to search Mr. Mantha's cell phone and personal computer for any evidence that Mr. Mantha consented to receive spam texts from QuoteWizard as alleged. Plaintiff's counsel also retained a computer expert to ensure that Plaintiff's discovery responses were truthful and accurate. QuoteWizard's contention that Plaintiff's retention of an expert to ensure the accuracy of its production somehow gives it a green light for full access to Mr. Mantha's systems is ridiculous. This is particularly true where, as described above, Mr. Mantha has affirmatively demonstrated through discovery to date, that QuoteWizard's consent claim is bogus and fraudulent. Having faked his consent already, the Court should not sanction QuoteWizard's even more intrusive interference with Mr. Mantha's life and his personal data.  Courts faced with similar defense requests to harass TCPA plaintiffs have rejected such requests. *See* **Exhibit L,** *Charvat v. Valente, et al.,* No. 12 C 5746 (N.D. Il., 4/22/2017)(Judge Rowland, USMJ (under virtually identical circumstances in a TCPA class action, where opt in data was

fabricated by data brokers, Court declines to allow a telemarketer to access plaintiff's computer system and collecting cases for the broad recognition that courts are loathe to sanction intrusive examination of an opponent's computer as a matter of course, or on the mere suspicion that the opponent may be withholding discoverable information absent some compelling showing). *See Moser v. Health Ins. Innovations, Inc.,* 2018 U.S. Dist. LEXIS 215901(SDCA December 21, 2018)(In a TCPA class action court declines to allow a telemarketer to the forensic examination of plaintiff's electronic devices, and noting that "forensic examination is generally regarded as a drastic step" and that courts should guard against undue intrusiveness resulting from inspecting or testing such systems).

**General Dispute No. 4:** Whether Plaintiff is required to identify the IP addresses for his electronic devices owned or used at the relevant time periods.

    **QuoteWizard's Position:** QuoteWizard has requested information and documents showing Plaintiff's IP address for each electronic device he used during the relevant time periods when the consent at issue was given. Plaintiff has objected to this request on the meritless ground that the request for the IP address "is overbroad, unduly burdensome and irrelevant to any issue in this case. Further, given that the purported opt in being used against him in this litigation is a fabrication, plaintiff is wary of sharing this information with the defendant and its various agents and lead generators." *See* Interrogatory No. 14. Yet Plaintiff simultaneously admits that his own retained expert has inspected and discovered his IP address(es). *See id*. This information is both highly relevant to the issue of consent and discoverable, especially where Plaintiff has provided this information to his own testifying expert but has refused to provide it to QuoteWizard.

    Although Plaintiff protests that his IP address has "literally no relevance," to the complete contrary, he has retained an expert to determine his IP addresses and to testify that they are not the same IP addresses as those associated with the disputed consent. And Plaintiff's claim that it should be enough that he contends he did not visit the website and give consent is contrary to the purpose of discovery. QuoteWizard is not obligated to take Plaintiff's word for it. Even if Plaintiff avows that he did not visit the website in August 5, 2019, QuoteWizard has proof that he did. It is possible (among other things) that he simply cannot recall doing so, or that someone entered his information on his behalf (especially where extensive personal information was entered that a stranger would be unlikely to know, such as his e-mail, cell phone, address, education level, and information relating to his vehicle). QuoteWizard is entitled to discover, among other things, his IP addresses for his electronic devices, *evidence that Plaintiff's expert is relying upon despite not making the same available to QuoteWizard. See* Fed. R. Civ. P. 26(a)(2)(B). Plaintiff claims that there is no match between his IP addresses and those shown on the consent forms, and intends to rely on this purported evidence, but he has not *disclosed* his IP addresses, and is required to do so.

    **Plaintiff's Position:** Despite Plaintiff's demonstration, as detailed above, that the consent defense in this case is not only false, but fraudulent, QuoteWizard now wants to compel Mr. Mantha to produce to it his actual IP address. It is undisputed, however, that Mr. Mantha's computer was not used to access www.snappyautoinsurance.com. His IP

11

Address does not match the address used to purportedly access that site. He has testified under oath that he did not visit that web site, consent to receive spam texts from QuoteWizard, and has denied any connection to the IP Address at issue. *See* **Exhibit B** at Answers 9-11, 13**.** The IP Address assigned to Mr. Mantha has literally no relevance to this case whatsoever. Further, as detailed above, Plaintiff has already uncovered evidence that will ultimately prove that the documents purportedly evidencing Mr. Mantha's consent to receive spam texts from QuoteWizard are fraudulent, and have been repeatedly altered in the chain of custody. If this Court compels Mr. Mantha to produce his true IP Address, there is a demonstrated danger that QuoteWizard would then hand that IP Address over to its vendors who may then claim they have now discovered the "true" opt in relating to Mr. Mantha, and this time the opt in magically matches Mr. Mantha's IP Address. It is QuoteWizard's burden to prove consent. It has utterly failed to do so. At the CMC conference, the Court ordered the Parties to focus on the limited issue of consent and explained that the scope of that inquiry would be limited noting:

> *And by "consent discovery," what I mean is did Mr. Mantha sign the forms or give his cell phone number, number one; and number two, whatever it is that defendant is relying on, to assert that he agreed, then like the disclosure of the document that he e-signed on the Internet, whatever it is, any discovery about that, with this discovery on those topics closing June 30th.*

*See* **Exhibit F**, Transcript of CMC at page 26. Certainly, if Mr. Mantha's actual IP Address matched the IP Address on the Plural Opt In or the QuoteWizard Opt In, then an inquiry asking Mr. Mantha to confirm the match would be appropriate. That is not the case here. There is no match.

**General Dispute No. 5:** Whether Plaintiff is required to identify whether he has withheld certain information and documents on privilege grounds and, if so, produce a privilege log.

**QuoteWizard's Position:** Plaintiff has indicated in the RPD responses that some allegedly privileged but otherwise responsive documents have been held back from production (for example, in RPD No. 1) but has not produced a privilege log. QuoteWizard requests that a privilege log be produced <u>forthwith</u> for any document or part of any document that has been withheld from production on grounds of asserted privilege.

QuoteWizard denies that the Parties have a "joint understanding that correspondence between counsel and third parties" relating to subpoenas are not discoverable. To the extent Plaintiff is withholding information or documents that are responsive to QuoteWizard's requests and discoverable, QuoteWizard requests that Plaintiff produce the same, or identify the information/documents being withheld and the grounds for doing so.

**Plaintiff's Position:** Consistent with the Parties joint understanding that correspondence between counsel and third parties in relation to subpoenas are not discoverable, Plaintiff's counsel represents that no documents are being withheld based on privilege.

12

**General Dispute No. 6**: Whether Plaintiff is required to disclose the substance of conversations with his wife concerning the facts underlying his surviving claim.

> **QuoteWizard's Position:** In various interrogatories, QuoteWizard requested that Plaintiff disclose the identity of any witnesses, including people with whom he spoke about the issues in this matter, and the substance and dates of those conversations. Plaintiff identified his wife, Melissa Mantha, as one such witness, but did not disclose the remaining requested information. Plaintiff has since asserted that his conversations with his wife are "privileged." *See* Ex. D. Assuming Plaintiff is attempting to invoke spousal disqualification under Massachusetts law,[4] the law relates to competency to testify and does not prevent the discovery of the conversations in the first place. *See*, *e.g.*, *Green v. Cosby*, 152 F. Supp. 3d 31, 35-36 (D. Mass. 2015) (noting that marital disqualification rule is one of disqualification and not of privilege, concerns a party's competence to testify, and does not prevent a party from discovering the information) ("the rule's underlying character—i.e. competence, not privilege—concerns admissibility of evidence at trial, and not a privilege against discovery. … She has offered no authority suggesting, let alone establishing, that the spousal disqualification rule may foreclose her deposition.").
>
> To the extent Plaintiff is agreeing to supplement his responses with this information, QuoteWizard requests that he formally serve supplemental answers under oath, as QuoteWizard will seek to use this as evidence in subsequent stages of the case.
>
> **Plaintiff's Position:** To avoid this dispute, and not waste judicial resources, the Plaintiff informed his wife of his receipt of spam texts, his frustration with such texts, and his plan to take action to enforce the TCPA.

## Remaining Specific Disputes

**Interrogatory No. 21:** Please describe any and all information you or anyone on your behalf has concerning your allegation that the consent provided on www.snappyautoinsurance.com on August 5, 2019 using your personal information is fraudulent.

> **QuoteWizard's Position:** Plaintiff responded that he "objects as this information is protected by Attorney-Client privilege and Attorney Work-Product Doctrine. Plaintiff has previously attested under oath that the consent allegation is fraudulent and this declaration has been produced." This response is deficient under the rules. While true that Plaintiff has used the label "fraudulent" to describe his consent, this Interrogatory seeks, as is QuoteWizard's right, the *factual basis* for this bald assertion. Plaintiff contends in his RFA responses that he has personal knowledge to support this contention (RFA No. 12), thus he is obligated to provide it in substantive form. Moreover, there is no basis for counsel to object on the ground of attorney-client privilege. To the extent Plaintiff or his counsel has information or knowledge that the consent was fraudulent, this is discoverable. This is particularly where Plaintiff's class theory of this case is based on allegedly fraudulent (rather than merely insufficient) consent.

---

[4] In contrast, spousal *privilege* under Massachusetts law is limited to criminal cases only. *See*, *e.g.*, *In Re Simon*, 587 B.R. 218, 221 (Bankr. D. Mass. 2018).

Plaintiff indicates that he is personally unaware of information that the consent is fraudulent. QuoteWizard requests that this position be set forth in supplemental responses under oath, as QuoteWizard will seek to use this as evidence in subsequent stages of the case.

**Plaintiff's Position:** Other than attesting to under oath, which he has done already- repeatedly- that he did not visit www.snappyautoinsurace.com and consent to receive spam texts from QuoteWizard, the Plaintiff is personally unaware of other facts supporting counsel's claim that the consent evidence relied on by QuoteWizard is fraudulent. Without waiving privilege, the factual basis for the assertion by plaintiff's counsel's that the consent claim is a fraud is aptly described above.

Dated: June 11, 2020

| | |
|---|---|
| Respectfully submitted, | Respectfully submitted, |
| Joseph Mantha, | QuoteWizard.com, LLC, |
| by his attorneys, | By its attorneys, |
| */s/ Matthew P. McCue* | */s/ Kevin P. Polansky* |
| Matthew P. McCue | Kevin P. Polansky, BBO (BBO #667229) |
| The Law Office of Matthew P. McCue | Christine M. Kingston (BBO #682962) |
| 1 South Avenue, Suite 3 | Nelson Mullins Riley & Scarborough LLP |
| Natick, Massachusetts 01760 | One Post Office Square, 30th Floor |
| (508) 655-1415 | Boston, MA 02109 |
| (508) 319-3077 facsimile | (t) (617)-217-4700 |
| mmccue@massattorneys.net | (f) (617) 217-4710 |
| | kevin.polansky@nelsonmullins.com |
| | christine.kingston@nelsonmullins.com |

CERTIFICATE OF SERVICE

I, Kevin P. Polansky, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: June 11, 2020                    */s/ Kevin P. Polansky*