UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOSEPH MANTHA, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 19-12235-LTS |
| QUOTEWIZARD.COM, LLC, | ) ) | |
| Defendant. | ) ) ) | |

ORDER ON PENDING MOTIONS AND DISCOVERY DISPUTES
(DOC. NOS. 45, 51-53, 70, 74)

July 29, 2020

SOROKIN, J.

Plaintiff Joseph Mantha has brought this action against Defendant QuoteWizard for violation of provisions of the Telephone Consumer Protection Act (TCPA) in connection with two text messages Plaintiff received from QuoteWizard in August 2019, allegedly without Plaintiff's prior consent. Doc. No. 1.[1]  On March 16, 2020, the Court dismissed Count I of Plaintiff's complaint, which had alleged a violation of the TCPA's automated calling provisions, for failing to allege sufficient facts from which such a violation could plausibly be inferred with respect to the two text messages at issue in this case. Doc. No. 30.  Following the Rule 16 conference on April 7, 2020, the Court ordered that the initial phase of discovery in this case would be limited to the gating issue of whether Plaintiff had in fact consented to be contacted by QuoteWizard. See Doc. No. 47.

---

[1] Citations to "Doc. No. __" reference documents appearing on the court's electronic docketing system; pincites are to the page numbers in the ECF header.

Now pending before the Court are: (a) Plaintiff's motion to amend the complaint to re-plead a violation of the TCPA's automated calling provisions based on new facts discovered only after the Court's order dismissing that claim (<u>Doc. No. 45</u>); (b) several discovery disputes relating to the proposed amended complaint and to the scope of discovery permitted in the present phase (Doc. Nos. 51-53, 70); and (c) a motion to extend the deadline to complete fact discovery during this first phase of the proceedings (<u>Doc. No. 71</u>), with an accompanying motion for leave to file a reply (<u>Doc. No. 74</u>).  The Court addresses each in turn.

I.    DISCUSSION

A.  <u>Plaintiff's Motion to Amend the Complaint (Doc. No. 45)</u>

Pursuant to Rule 15(a)(2), Plaintiff moves to amend his complaint to re-plead that the text messages at issue in this case were generated and sent to him by means of an automatic telephone dialing system (ATDS) in violation of the TCPA.  <u>Doc. No. 45</u>.  The Supreme Court has made it clear that the standard for allowing amendments under Rule 15(a) is liberal:

> Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. . . . If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

<u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)).

The parties' arguments with respect to the motion to amend (<u>Doc. No. 45</u>) address a single question: whether Plaintiff's proposed amended complaint alleges sufficient facts from which an ATDS violation may plausibly be inferred.  The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called

party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). The statute defines an automatic telephone dialing system (ATDS) as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).[2]

As the Court stated previously when dismissing the ATDS claim in the initial complaint, Plaintiff must plausibly allege that defendant (1) <u>used</u> an ATDS (2) to call (or text) a cellular telephone number. <u>Doc. No. 30 at 1-2</u>. The Court dismissed the ATDS claim after determining that the complaint failed to plausibly allege the use of an ATDS. <u>Id.</u> at 2-3.

After the Court dismissed Plaintiff's original ATDS claim, Plaintiff learned through Defendant's initial disclosures that the entity that sent the text messages at issue in this case is Drips LLC, a company that, according to its website, provides automated text telemarketing services to businesses by using artificial intelligence and computer bots to interact with consumers via text message in a way that is designed to mimic a human interaction. <u>Doc. No. 46 at 4</u>. Reflecting this information, Plaintiff's proposed amended complaint alleges in pertinent part that (a) QuoteWizard engaged Drips to send consumers automated texts by means of technology that uses artificial intelligence and computer bots; (b) Drips's technology allows a computer to automatically interact with consumers via text message in a way that appears to be personalized and that mimics human interaction; (c) the entire text exchange is automated, allowing a computer to interact with and respond to the text recipient without human intervention; (d) consumers who

---

[2] Defendant does not contest that the ATDS prohibition applies to text messages. In any event, the FCC said in 2003 that the TCPA's restrictions on "mak[ing] any call" using an ATDS encompass the sending of text messages. <u>See</u> <u>In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991</u> (2003 Order), 18 FCC Rcd. 14014, 14115, 2003 FCC LEXIS 3673 ¶ 165 (2003).

receive automated texts from Drips are not interacting with a human being but are instead interacting with a bot designed to appear to be a human being; (e) Drips uses the telecommunications systems and technology of Ytel Dialer; and (f) the Ytel Dialer has the capacity to store or produce telephone numbers to be called, either using a random or sequential number generator or by generating the telephone numbers from a list or database of numbers, and to dial such numbers without human intervention.  See Doc. No. 46-1 ¶¶ 26-29, 35-37.

The proposed Amended Complaint plausibly alleges that QuoteWizard employs third parties who provide text messaging services that rely on the use of an automated system to send text messages to cell phones.  Id. ¶¶ 35-37.  Whether that allegation, standing alone, suffices to allege plausibly the use of an ATDS raises at least two questions: first, whether an ATDS is implicated only when calling numbers generated by a random or sequential number generator, as suggested by the Third and District of Columbia Circuits, see Dominguez v. Yahoo, Inc., 894 F.3d 116, 121 (3d. Cir. 2018), ACA Int'l v. FCC, 885 F.3d 687 (D.C. Cir. 2018), or merely by the automated calling of stored numbers, as held by the Second and Ninth Circuits, see Duran v. La Boom Disco, 955 F.3d 279, 284-85 (2d Cir. 2020); Duguid v. Facebook, Inc., 926 F.3d 1146, 1151 (9th Cir. 2019), cert. granted sub nom. Facebook, Inc. v. Duguid, 2020 U.S. LEXIS 3559 (2020).  See also Gonzalez v. Hosopo Corp., 371 F. Supp. 3d 26, 31-34 (D. Mass. 2019) (Saylor, J.) (discussing circuit split and "conclud[ing] that the phrase 'using a random or sequential number generator' modifies only the verb 'produce' and not the verb 'store.'  Therefore, to qualify as an ATDS under the TCPA, a device need only have the capacity to do one of the following: either (1) 'store . . . telephone numbers to be called' and 'dial such numbers,' or (2) 'produce telephone numbers to be called, using a random or sequential number generator' and 'dial such numbers.'").

Whatever the resolution of the first question, the use of an ATDS also raises the question of whether the additional allegations set forth in the proposed complaint suffice.[3]  The Court rejects Defendant's contentions that (a) allegations Defendant asserts are wrong or incorrect ought not be considered and (b) allegations deriving from internet research cannot form the basis of non-conclusory factual allegations to support a claim.  See Doc. No. 63 at 7-10.

Under the totality of the circumstances as well as the uncertainty regarding the interpretation of the statute, the Court concludes that the proposed amended complaint plausibly states a claim in Court I (the only disputed count) and that the potentially complicated legal issues raised by the pleading are best resolved on the complete factual record developed in the course of discovery.  The Court therefore ALLOWS Plaintiff's motion to amend the complaint (Doc. No. 45).

B.  The Parties' Discovery Disputes (Doc. Nos. 51-53, 70)

Previously, at the urging of Defendant, the Court bifurcated discovery in this case with the first phase culminating in an anticipated motion (or cross-motions) for summary judgment solely on the question of consent with a subsequent second phase addressing all other issues.  After careful consideration of the various submissions by the parties regarding their myriad disputes, the Court now concludes that Phase I of discovery should address all issues related to Plaintiff's individual claims and that class discovery occur in Phase II.  The Court addresses the discovery disputes in light of this ruling.

---

[3] The Court notes that if the TCPA requires dialing numbers generated by a random or sequential number generator, and not merely the automatic dialing of stored numbers, then the proposed amended complaint likely falls short in light of the specific allegations that the two texts at issue address the Plaintiff by his first name "Joe."  See Doc. No. 46-1 ¶ 51.

1.   <u>Dispute regarding subpoena to third party Drips (Doc. No. 51)</u>

Request Nos. 5-15 relate to Plaintiff's ATDS claim; the objection that the requests concern a dismissed claim is now moot.  To the extent disputes remain over the scope of these requests or whether they fall within Phase I or Phase II of these proceedings, the parties may raise those disputes to the Court in the course of discovery.

Request No. 1 is ALLOWED IN PART because the information sought is relevant given Defendant's disclosure that the text messages at issue were generated and sent by Drips, but is overly broad to the extent it is not related to the two text messages at issue in this case.  The request is ALLOWED to the extent it is limited to the two text messages at issue here.

Request No. 2 is ALLOWED IN PART to the same extent as Request No. 1.

Request No. 3 is ALLOWED .

Request No. 4 is ALLOWED IN PART to the same extent as Request No. 1.

Request No. 16 is DENIED WITHOUT PREJUDICE as Plaintiff has not explained the purpose or basis for the request.

2.   <u>Dispute concerning the scope of discovery permitted in the present phase</u>
     <u>(Doc. No. 52)</u>

Defendant seeks to take discovery regarding: "(1) whether Plaintiff's cell phone qualifies as a 'residential' line for the purposes of a do-not-call claim; (2) whether the texts were 'telephone solicitations'; and (3) whether the conversational exchange between Plaintiff and QuoteWizard is within the ambit of the TCPA."  <u>Doc. No. 52</u> at 2.  In light of the Court's expansion of the scope of Phase I, these requests are ALLOWED.

3.   <u>Dispute concerning Plaintiff's discovery responses (Doc. No. 53)</u>

The parties' "General Dispute No. 1" merely repeats the dispute at issue in their preceding joint status report and has been resolved above in this Order.

The parties' "General Dispute No. 2" concerns whether Defendant is permitted to seek discovery regarding Plaintiff's attorney's knowledge of or involvement in the events giving rise to this litigation. Defendant may obtain reasonable discovery, subject to privilege, as to the role, if any, of Plaintiff's counsel in the giving of consent or the two text messages alleged in the Complaint and forming the basis of this lawsuit.

The parties' "General Dispute No. 3" concerns "[w]hether Plaintiff is required to (1) produce documents evidencing his browser and search history, and/or (2) produce his electronic devices that he owned or used at the relevant time periods for inspection by QuoteWizard." Doc. No. 53 at 6. The Court ALLOWS the first request to the extent that Plaintiff shall produce responsive entries from both his browser history (all browsers) and his search history (same) to the extent these histories exist in the ordinary course. Plaintiff is not required to retrieve them from deleted space, backups, etc. The Court DENIES the second request as there is no basis to require the production of electronic devices; nothing in this ruling precludes Defendant from seeking discovery from these devices. However, nothing in this ruling permits Plaintiff to withhold information or documents extracted from any of his devices in the course of this case unless protected by privilege. Further, if Plaintiff relies upon an expert evaluation of the devices, Defendant will be afforded a reasonable opportunity for its expert, if it elects to retain one, to inspect the devices.

The parties' "General Dispute No. 4" concerns "[w]hether Plaintiff is required to identify the IP addresses for his electronic devices owned or used at the relevant time periods." Doc. No. 53 at 11. As this topic is relevant to Plaintiff's individual claim, the Court ALLOWS the requested discovery during this phase of the proceedings.

The parties' "General Dispute No. 5" concerns "[w]hether Plaintiff is required to identify whether he has withheld certain information and documents on privilege grounds and, if so, produce a privilege log." Doc. No. 53 at 12. Plaintiff asserts that "[c]onsistent with the Parties['] joint understanding that correspondence between counsel and third parties in relation to subpoenas are [sic] not discoverable, Plaintiff's counsel represents that no documents are being withheld on the basis of privilege." Id. Defendant denies that the parties have an understanding that correspondence between counsel and third parties in relation to subpoenas is not discoverable and seeks to compel such correspondence. Id. Because the requested discovery pertains to Plaintiff's individual claim, the Court ALLOWS Defendant's request during this phase of the proceedings.

The parties' "General Dispute No. 6" appears to be resolved. Plaintiff shall serve supplemental answers to the applicable interrogatories in accordance with his stated position. See Doc. No. 53 at 13.

Defendant's Interrogatory No. 21 asks that Plaintiff "describe any and all information you or anyone on your behalf has concerning your allegation that the consent provided on www.snappyautoinsurance.com on August 5, 2019 using your personal information is fraudulent." Doc. No. 53 at 13. Plaintiff responds that "[o]ther than attesting to under oath, which he has done already repeatedly—that he did not visit www.snappyautoinsurace.com and consent to receive spam texts from QuoteWizard, the Plaintiff is personally unaware of other facts supporting counsel's claim that the consent evidence relied on by QuoteWizard is fraudulent." Plaintiff shall serve a supplemental answer to the interrogatory in accordance with his stated position. See Doc. No. 53 at 14.

As for disclosing any information "anyone acting on [Plaintiff's] behalf has concerning" the consent issue, Plaintiff responds: "Without waiving privilege, the factual basis for the assertion

by plaintiff's counsel's that the consent claim is a fraud is aptly described above." Id.  To the extent Plaintiff is relying on information that anyone acting on Plaintiff's behalf may have to support Plaintiff's allegation that Plaintiff's consent was fraudulent, Plaintiff shall disclose that information in his supplemental answer to Interrogatory No. 21.  Plaintiff shall also produce the relevant documents as ordered below.

        4.   Dispute regarding Plaintiff's discovery responses (Doc. No. 70)

The parties' "General Disputes Nos. 1 and 2" in their Joint Status Report, Doc. No. 70 at 2, repeat their "General Disputes Nos. 3 and 4" presented in their Joint Status Report, Doc. No. 53 at 6-12, which are addressed above, so no further ruling is required.

The parties' "General Dispute No. 3" concerns "[w]hether Plaintiff is required to disclose the basis for his allegation that his consent was fraudulent (as opposed to legally inoperative/insufficient)."  Doc. No. 70 at 2.  This dispute is resolved by the Court's Orders regarding Defendant's Interrogatory No. 21 noted above.

In Request for Production No. 31, Defendant sought search and browser history from Plaintiff's various electronic devices and, after receiving no responsive documents, now seeks follow-up information regarding whether Plaintiff conducted any searches, etc., on the dates in question (June 25-27, 2019), and whether the Plaintiff deleted such information or failed to preserve it.  Plaintiff declines to provide the requested information on the grounds that the meet and confer process "is not an appropriate manner to pursue new discovery requests."  Doc. No. 70 at 3.  Of course, no rule empowers a lawyer to require the other side to provide further information in the course of the meet and confer process.  Nonetheless, there are many good reasons to do so and in the Court's experience, lawyers do so regularly.  See generally Fed. R. Civ. P. 1. Nonetheless, counsel will be able to obtain the answers to these questions in Plaintiff's deposition,

thus, nothing further is ordered on this request at this time.  To the extent Plaintiff's answers to these questions in his deposition reasonably result in supplemental interrogatories or document requests, Defendant may propound such requests within thirty days after obtaining the final transcript of the deposition.

In Request for Production No. 32, Defendant seeks "[a]ny and all documents evidencing the vehicle(s) you owned or drove, or anyone else in your household owned or drove, as of June 25, 2019 through August 5, 2019."  Doc. No. 70 at 3.  The focus of this request is a 2005 Chevrolet Trailblazer listed on certain documentation.  After a lengthy objection regarding the meaning of consent that does not address the issue of connecting an existing consent to a particular person when challenged, Plaintiff's counsel represents that neither Plaintiff nor his family members owned a "2004 Chevrolet Trailblazer."  Doc. No. 70 at 5.  This is insufficient.  Plaintiff shall admit or deny under oath whether as of June 25, 2019 through August 5, 2019, or any part of that period, Plaintiff or someone in his household owned or drove a Chevrolet Trailblazer.  If Plaintiff admits that assertion, then Plaintiff shall identify the year, plate number (with state) and VIN of the vehicle.  The Request is otherwise DENIED.

In Request for Production No. 33, Defendant seeks "[a]ny and all documents showing, evidencing, or referencing the IP address for any and all computers, cell phones, or other electronic devices used by you on June 25, 26, and 27, 2019."  Doc. No. 70 at 5.  The Court addressed this dispute above and it is ALLOWED as described therein.

In Request for Production No. 35, Defendant seeks "[a]ny and all documents concerning, evidencing, or relating to an assertion that consent provided by Joseph Mantha on www.snappyautoinsurance.com on June 26, 2019 was fraudulent."  Doc. No. 70 at 5.  The Court ALLOWS this requested discovery and for the reasons given above.

10

In Request for Production No. 36, Defendant seeks "[a]ny and all documents showing, evidencing, relating to, or concerning the name of your home internet service provider (ISP) in June through August, 2019." Doc. No. 70 at 5. The Court ALLOWS this requested discovery as it is relevant to Plaintiff's individual claim.

In Request for Production No. 38, Defendant seeks "[a]ny and all documents showing, evidencing, relating to, or concerning the IP address associated with your home internet service in June through August, 2019." Doc. No. 70 at 6. For the reasons already given above, the Court ALLOWS this requested discovery.

> 5.  Defendant's Motion to Extend the Scheduling Order (Doc. No. 71) and for Leave to Reply (Doc. No. 74)

The motion to extend the scheduling order (Doc. No. 71) is ALLOWED with the fact discovery period in Phase I extended to September 15, 2020. The Court has enlarged the scope of Phase I, the parties have raised substantial discovery disputes and have additional discovery to undertake. Defendant's motion for leave to reply to Plaintiff's opposition to Defendant's motion to extend the scheduling order (Doc. No. 74) is ALLOWED.

> 6.  Other

The Court refers this case to Chief Magistrate Judge M. Page Kelley for all purposes including revising the governing schedule, resolution of all non-dispositive motions, recommending appropriate resolutions of all dispositive motions and managing all pretrial matters. At various points, Plaintiff has raised concerns regarding the preservation of certain class discovery. To the extent not resolved by the parties, nothing in the bifurcation of discovery precludes Chief Judge Kelley from ensuring any appropriate resolution.

II.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion to amend the Complaint (<u>Doc. No. 45</u>) is

ALLOWED; Defendant's motion for leave to file a reply (<u>Doc. No. 74</u>) is ALLOWED; the parties'

various discovery disputes (Doc. Nos. 51-53, 70) are resolved as ordered above; and the case is

referred to Chief Magistrate Judge M. Page Kelley for all purposes.

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge