IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH MANTHA on behalf of themselves and others similarly situated, | : : : : |
| Plaintiff, | : Case No. 1:19-cv-12235-LTS : |
| v. | : : |
| QUOTEWIZARD.COM, LLC | : : |
| Defendant. | : : : |

**PLAINTIFF'S MOTION TO COMPEL ALLEGED FACTUAL CONSENT EVIDENCE
WITHHELD AS PURPORTED WORK PRODUCT**

Plaintiff, Joseph Mantha, respectfully petitions this Court to compel the Defendant ("QuoteWizard") to produce evidence being withheld on the basis of work product protection. For the reasons set forth below, the motion should be GRANTED.

### I.  BACKGROUND

Plaintiff filed this Telephone Consumer Protection Act class action on October 29, 2019. *See* ECF#1. Almost two months prior to filing, counsel for Mr. Mantha wrote to QuoteWizard to place it on notice of plaintiff's TCPA claim. *See* Exhibit A, September 4, 2019, letter of Alex Washkowitz to QuoteWizard. As this Court is now well aware from prior filings, QuoteWizard claims that Mr. Mantha consented to receive the spam texts at issue- a claim to which Mr. Mantha denies. The document that QuoteWizard claimed evidenced Mr. Mantha's consent to receive telemarketing texts is referred to herein as the "QuoteWizard Opt In." The QuoteWizard Opt In was originally produced to Mr. Mantha as an attachment to the January 10, 2020, letter of Kevin Polansky, Esq., counsel to QuoteWizard, that threatened to

seek Rule 11 sanctions against Mr. Mantha's counsel for filing a frivolous lawsuit. *See* Exhibit B, January 10, 2020, Letter of Counsel, with QuoteWizard Opt In as an attachment.[1]

Given the gravity of defense counsel's Rule 11 allegation, and although it is QuoteWizard who bears the burden of proof to prove consent by clear and convincing evidence, Plaintiff's counsel immediately commenced discovery to explore QuoteWizard's consent defense, and to corroborate whether the information on the QuoteWizard Opt In was true or false.[2] As detailed in prior submissions, discovery obtained to date has been devastating to QuoteWizard's consent defense. *See* ECF 73.

First, the IP address 96.242.xxxxxx on the QuoteWizard Opt In that purportedly was used to consent to receive telemarketing texts on a web site called www.snappyautoinsurance.com has no connection whatsoever to Mr. Mantha. *Id.*

Second, the TCPA disclosure language on the QuoteWizard Opt In was changed by someone after Mr. Mantha's data was purchased from a marketing entity called Plural. *Id.*

---

[1] At the Case Management Conference conducted on April 7, 2020, QuoteWizard claimed it was ***already*** in possession of a document proving such consent and that it *was prepared to move for summary judgment "today" on the consent defense*. *See* ECF 53-6 (transcript of hearing)

[2] A telemarketer who claims it had consent to telemarket to a particular consumer bears the burden of proof, and must maintain records that prove such a claim. The FCC has cautioned that a telemarketer claiming consent "must be prepared to provide clear and convincing evidence of the existence of such a relationship." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* FCC 03-153 at ¶112, -- FCC Rcd. --, 2003 WL 2157853, 2003 FCC LEXIS 3673 (July 3, 2003) (emphasis added). The FCC has longed warned telemarketers- such as QuoteWizard "should any question about the consent arise, the seller will bear the burden of demonstrating that a clear and conspicuous disclosure was provided and that unambiguous consent was obtained. *See* In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 27 FCC Rcd 1830 at ¶112; 2012 FCC LEXIS 794 (Feb. 12, 2012).

Third, the event date on QuoteWizard Opt In was changed after Mr. Mantha's data was obtained from Plural. The QuoteWizard Opt In lists the event date as August 5, 2019. The date provided by Plural noted the purported event date was July 26, 2019. *Id.*

Fourth, the Jornaya Lead ID on the QuoteWizard Opt In that purportedly confirmed Mr. Mantha's visit to www.snappyautoinsurance was proven to have no connection whatsoever to Mr. Mantha, to his IP address, or to any visit of anyone to www.snappyautoinsurance.com. *Id.*

Fifth, Plural disclosed in response to subpoena that the original source of Mr. Mantha's consent and his personal data was Adam Brown, the individual who owns the web site www.snappyautoinsurance.com. After being subpoenaed by Plaintiff's counsel, Mr. Brown wrote to counsel, informed them that the web site www.snappyautoinsurance.com had not been used for seven years, and stated that he was not in the possession of any documents relating to Mr. Mantha. *Id.* [3][4]

---

[3] QuoteWizard initially claimed that RevPoint purchased Mr. Mantha's data from Plural and claimed that Plural was the original source of such data. At its recent deposition, however, Plural confirmed that it, in turn, purchased Mr. Mantha's data from yet another marketing entity- this one based in Bosnia- which in turn, purchased the data from Adam Brown. *See* ECF 74-1. In email correspondence with plaintiff's counsel, Mr. Brown claimed he had not used www.snappyautoinsurance.com in seven years and was not in possession of any data whatsoever as to Mr. Mantha. *See* ECF 73.

[4] Mr. Brown's identity was revealed by Plural months ago in response to Plaintiff's subpoena. QuoteWizard chose not to issue a subpoena to Plural. Although it is not Plaintiff's burden to prove lack of consent, Plaintiff's counsel investigated Mr. Brown's whereabouts, served him with a document subpoena, served him with a deposition notice, and engaged in e-mail correspondence with him. QuoteWizard did nothing. Instead it focused on issuing subpoenas relating to the ever changing IP addresses QuoteWizard claims connect to Mr. Mantha (which do not), and then actually deposing the individuals to whom those IP addresses were assigned (a landlord in New Jersey, and a care giver in Worcester) who have absolutely nothing to do with this case. These witnesses have universally confirmed they did not visit www.snappyautoinsurance.com and have no connection to Mr. Mantha.

Given the devastating developments in discovery, to date, as to its consent defense, QuoteWizard has petitioned the Court for yet more time to come up with another argument. Notably, QuoteWizard claimed at the Case Management Conference that it was purportedly ready to move for summary judgment on months ago based solely on the authenticity of the now debunked QuoteWizard Opt In. *See* ECF 71, 74. Plaintiff has opposed this motion and is ready to proceed to summary judgment as to consent as instructed to do by the Court. *See* ECF 71, 73.

And, as if the above was not enough to discredit QuoteWizard's consent defense, and its Rule 11 threat against Plaintiff's counsel, at its recent 30(b)(6) deposition, QuoteWizard ***admitted*** that the QuoteWizard Opt In was ***not*** a record evidencing Mr. Mantha's consent, created before it was placed on notice of Mr. Mantha's claim. Rather QuoteWizard admitted that the document upon which it has threatened counsel with Rule 11 sanctions was created ***after*** QuoteWizard received the litigation notice letter of plaintiff's counsel dated September 4, 2019. *See* Exhibit A. Specifically, after its receipt of Mr. Mantha's Notice Letter, and purportedly because QuoteWizard was not in possession of Mr. Mantha's prior express written consent to receive its spam telemarketing texts before it sent him such texts, QuoteWizard and its vendor, RevPoint, from whom it obtained Mr. Mantha's contact data, scrambled to find consent data to discredit Mr. Mantha and his counsel. It is this correspondence that QuoteWizard claims is work product and protected from production. As evidenced in the Privilege Log, attached at Exhibit C, on September 26, 2019, and again on October 10, 2019, Matthew Weeks of QuoteWizard engaged in multiple pages of email correspondence with Mike Fishman of RevPoint Media. This correspondence took place merely weeks after QuoteWizard was placed on notice of Plaintiff's class claims. In its Privilege Log, QuoteWizard describes this correspondence as relating to a

"TCPA Request" and a "TCPA Question" and claims such correspondence is protected work product. *Id.*

At its recent deposition, RevPoint confirmed that it exchanged emails with QuoteWizard-after QuoteWizard's receipt of the Notice Letter, relating to QuoteWizard's request for consent data related to Mr. Mantha. Counsel for QuoteWizard even questioned RevPoint at its recent deposition as to the data provided to QuoteWizard by RevPoint.[5] These emails are believed to be Quotewizard_Mantha 000012-21.

Quotewizard's invocation of work product to shield this factual information is particularly indefensible as it is simultaneously seeking correspondence between Plural Marketing Solutions, Inc. and other entities in the lead generation chain also created after QuoteWizard's receipt of the Notice Letter. In the email dated July 30, 2020 attached hereto as Exhibit D, Christine Kingston, Esq. seeks the following categories of documents from Plural:

> We understand following Plural's deposition in this case today that Plural will be supplementing its subpoena response to produce:
>
> (1) Documents and communications by and between Fenix Media Solutions and Plural concerning Mantha's lead
> (2) Plural's contract with Fenix
> (3) Documents and communications between Plural and RevPoint concerning Mantha's lead
>
> These documents are imperative to this case. In light of the fact that Adam Brown's deposition is scheduled for the morning of the 30th, we are requesting that these documents be shared with the persons on this email <u>no later than COB tomorrow</u>.

Exhibit D.

---

[5] RevPoint also failed to produce this correspondence in its subpoena response.

Given that Quotewizard seeks factual information, generated after the commencement of this dispute regarding Mr. Mantha's purported consent between Plural and RevPoint, for Quotewizard to assert that virtually identical communications between Quotewizard personnel and RevPoint on the same topic is somehow Quotewizard's work product is meritless.

Finally, Quotewizard has also withheld from production letters seeking indemnification from RevPoint- the entity from whom QuoteWizard purchased Mr. Mantha's contact data. Like the e-mails between QuoteWizard and RevPoint, these letters are also suspected to contain factual information that relates directly to the validity of Quotewizard's consent defense, and cannot qualify as work product, particularly where Quotewizard is taking an adversarial posture to RevPoint.[6]

## II.    ARGUMENT

### A. The Factual Information Gathered by Quotewizard from RevPoint as to Mr. Mantha's Purported Consent is Not Work Product

Work product protection exists to protect the mental processes of the attorney, but not of underlying facts. In a case in which attorneys were brought before a grand jury and asked questions as to certain information they gathered and passed on to their client, who was the subject of the grand jury investigation, the Tenth Circuit held that such factual information, even obtained from an attorney, was not entitled to work product protection.

> Appellant has failed to establish that any of the same nine questions request protected work-product. The majority of questions focus on the government's attempt to elicit whether Appellant's attorneys passed on certain information to Appellant. The questions do not seek any legal advice, nor do the questions delve into the attorneys' impressions about the facts that might have been conveyed to Appellant. See Attorney X, 621 F. Supp. at 593 (conduit questions are not

---

[6] It is unclear how under any circumstance an indemnity letter can be entitled to work product protection, particularly where QuoteWizard apparently considers RevPoint a litigation adversary. See United States v. Mass. Inst. of Tech., 129 F.3d 681, 687-88 (1st Cir. 1997) (disclosure to a potential adversary results in a waiver of work product).

> protected under the work-product doctrine). The questions do not seek legal conclusions, opinion or legal theories created in anticipation of litigation. See Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 668 (10th Cir. 2006) ( "[W]ork product protection only applies to attorneys' or legal representatives' mental impressions, conclusions, opinions, or legal theories authored in anticipation of litigation."). The questions seek only factual confirmation concerning events the attorney personally witnessed (either as the receiver or giver of information). See Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995) ("[T]he work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions[;] it does not protect facts concerning the creation of work product or facts contained within work product."). Therefore these questions do not ask for protected attorney work product because they do not seek the attorneys' mental impressions--the questions only ask for the attorneys' testimony regarding facts they observed firsthand.

*In re Grand Jury Proceedings,* 616 F.3d 1172, 1185 (10th Cir. 2010). The case for disclosure of the information sought is even stronger here as attorneys for Quotewizard (or RevPoint) were not even party to the emails in question. See Exhibit C, Privilege Log.

### B.  The Burden of Proof As To Work Product Privilege Is Upon QuoteWizard

The work product doctrine, formally codified in Rule 26, protects from disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). The purpose of the doctrine is to protect an attorneys' written materials and mental impressions prepared in anticipation of litigation. *See Vicor Corp. v. Vigilant Ins. Co.*, 674 F.3d 1, 15 (1st Cir. 2012). The privilege is "aimed centrally at protecting the *litigation process,* . . . specifically, work done by counsel to help him or her in *litigating* a case." *United States v. Textron Inc. and Subsidiaries,* 577 F.3d 21, 30-31 (1st Cir. 2009) (emphasis in original). The protection afforded by the work product doctrine can be overcome if the party seeking discovery demonstrates "substantial need of the materials" and cannot obtain the "substantial equivalent" by other means without undue hardship. *Id.*

7

Here, it now appears that prior to sending Mr. Mantha spam texts, QuoteWizard was not in possession of documentation evidencing his prior express written consent to receive such texts. Rather, after the fact, it engaged in a campaign to obtain data from its vendor that it could cobble together to make it appear that it had Mr. Mantha's consent prior to sending him such texts. The emails between QuoteWizard and RevPoint, as detailed above, are suspected to relate to QuoteWizard's request that RevPoint search for data as to Mr. Mantha, and RevPoint's response thereto—which Quotewizard then incorporated into the Quotewizard Opt In and presented to Mr. Mantha's counsel as irrefutable evidence that Mr. Mantha had in fact visited www.snappyautoinsurance.com and provided TCPA compliant consent. Plaintiff has a substantial need for this discovery. If Plaintiff's suspicions are correct, these emails go to the core of QuoteWizard's consent claims, and its threat to seek Rule 11 sanctions from Plaintiff's counsel. These e-mails will essentially tell the story as to What Did QuoteWizard Know and When Did It Know It, as to Mr. Mantha's purported consent to receive its spam texts.

Given the importance of these e-mails to QuoteWizard's consent defense, particularly in light of the above recited facts detailing exactly why QuoteWizard's consent defense is a sham, Mr. Mantha has shown substantial need for the production of these e-mails (sent between non-attorneys prior to the retention of litigation counsel). As the work product doctrine does not extend to protect underlying facts, these documents should be produced.

### C. Work Product Does Not Apply To Documents That Should Have Been Created In The Ordinary Course Of Business Or That Were Required To Be Maintained By Statute

As detailed above, ***before*** a telemarketer can send spam texts to a consumer it must first have that consumer's prior express written consent to receive such spam texts. Such consent must be obtained in writing and include the recipient's signature. In other words, in the ordinary

course of its business, a telemarketer such as QuoteWizard is required by the TCPA to first obtain a consumer's consent in writing and to maintain and preserve such evidence. It now appears obvious that QuoteWizard did not have in its possession documentation evidencing Mr. Mantha's prior express written consent to receive its telemarketing spam. Instead, it scrambled to find it after the fact and now refuses to produce the correspondence evidencing the scramble under the work product doctrine. The work product doctrine, however, does not apply to documents that were created in the ordinary course of business, or documents that "would have been created in essentially similar form irrespective of the litigation." *See W Holding Co. v. Chartis Ins. Co.*, 300 F.R.D. 48, 50 (D.P.R. 2014). Work product also does not apply if the creation of the document at issue was independently required by statute. *Id., citing United States v. Textron. Inc.,* 577 F.3d. 21, 22 (1st Cir. 2009).

For these additional reasons Mr. Mantha is entitled to the production of the evidence being withheld by QuoteWizard. The TCPA required that QuoteWizard obtain and preserve, in the ordinary course, Mr. Mantha's prior express written consent prior to sending him telemarketing texts. Having failed to do so, QuoteWizard cannot now cloak its retroactive efforts to obtain consent evidence under the work product doctrine as to documents it should have created and maintained in the ordinary course. Similarly, as the TCPA mandates that QuoteWizard obtain and preserve consent evidence before it calls consumers, QuoteWizard cannot now withhold the evidence it was statutorily required to obtain and maintain prior to sending spam texts to Mr. Mantha.

D. **QuoteWizard Waived Any Privilege By Failing To Produce An Adequate Log**

The failure to produce a privilege log of sufficient detail constitutes a waiver of the underlying work product claim. *See Stamps v. Town of Framingham*, 38 F. Supp. 3d 134, 142

9

(D. Mass. 2014). It was only at the recent depositions of QuoteWizard and RevPoint did Plaintiff's counsel discover that the QuoteWizard Opt In was created after the fact and was the apparent result of an e-mail collaboration between QuoteWizard and RevPoint that commenced after QuoteWizard was placed on notice of Mr. Mantha's TCPA claim. The Privilege Log produced by QuoteWizard listed these communications but described them in terms so general ("Email re: TCPA Request" and "Email re TCPA Question") they were useless in terms of assessing the true contents of the correspondence. It is now clear that this correspondence goes to the essence of QuoteWizard's consent defense. As QuoteWizard failed to aptly describe the documents being withheld, it has waived any work product privilege.

### III.   PRAYER FOR RELIEF

For the reasons set forth above, Plaintiff requests that this Court compel QuoteWizard to produce the documents referred to in the Privilege Log, attached at Exhibit C, at QuoteWizard_Mantha000012-000021. Plaintiff further requests that QuoteWizard produce the indemnification documents withheld from protection that appear at QuoteWizard_Mantha000022-000061, on the Privilege Log attached at Exhibit C.

Further, the Plaintiff requests that this Court order QuoteWizard to attest that all other correspondence it has had with anyone as to Mr. Mantha's consent to receive telemarketing texts has been reduced to a privilege log. Finally, and in the alternative, Plaintiff requests that the above documents be assessed by the Court *in camera* to ascertain if they are entitled to work product protection.

PLAINTIFF,

By their attorneys

*/s/ Matthew P. McCue*
Matthew P. McCue

>THE LAW OFFICE OF MATTHEW P. MCCUE
>1 South Avenue, Suite 3
>Natick, MA 01760
>Telephone: (508) 655-1415
>mmccue@massattorneys.net
>
>Anthony I. Paronich
>PARONICH LAW, P.C.
>350 Lincoln Street, Suite 2400
>Hingham, MA 02043
>(508) 221-1510
>anthony@paronichlaw.com
>
>Alex M. Washkowitz
>Jeremy Cohen
>CW LAW GROUP, P.C.
>188 Oaks Road Framingham, MA 01701
>alex@cwlawgrouppc.com
>
>Edward A. Broderick
>BRODERICK LAW, P.C.
>99 High St., Suite 304
>Boston, MA 02110
>Telephone: (617) 738-7080
>ted@broderick-law.com

Dated: July 30, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2020, I electronically transmitted the foregoing to all counsel of record via the electronic filing system.

>By: */s/ Matthew P. McCue*
>Matthew McCue

## CERTIFICATE OF COMPLIANCE

In accordance with Local Rule 37, I hereby certify that on May 29, 2019, I met and conferred with opposing counsel as to their work product claims and were not able to resolve the instant dispute.

>By: */s/ Matthew P. McCue*
>Matthew McCue