# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH MANTHA, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>QUOTEWIZARD.COM, LLC,<br><br>Defendant. | Civil Action No. 1:19-cv-12235-LTS |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPPORT OF ITS MOTION TO STAY PLAINTIFF'S CLAIM REGARDING USE OF ALLEGED AUTOMATIC TELEPHONE DIALING SYSTEM DURING PENDENCY OF U.S. SUPREME COURT CASE TO RESOLVE DEFINITION OF THE SAME

Defendant QuoteWizard.com, LLC ("QuoteWizard") respectfully submits this memorandum of law in support of its Motion to Stay Plaintiff Joseph Mantha's ("Plaintiff") Count 1 of his First Amended Complaint, which alleges that QuoteWizard, through its agent, used an automatic telephone dialing system ("ATDS") to contact him, during the pendency and until the merits resolution of *Facebook, Inc. v. Noah Duguid, et al.*, No. 19-511 (U.S. Supreme Court) ("*Duguid*"). Specifically, QuoteWizard seeks to stay Count 1 in its entirety (inclusive of the proposed "Class 1"), including QuoteWizard's responsive pleading deadline thereto, and any and all pending or anticipated discovery on the claim (including a pending documents subpoena to non-party Drips Holdings, LLC).

In *Duguid*, in which a decision is expected by early (or at least the first half of) 2021, the U.S. Supreme Court will resolve a Circuit split concerning the definition of an ATDS under the Telephone Consumer Protection Act ("TCPA"); more specifically, whether an ATDS

encompasses a device that merely automatically dials stored numbers (rather than randomly or sequentially generating numbers). This issue will be dispositive to Plaintiff's claim if the Supreme Court rules in favor of Facebook, Inc. because Plaintiff's number was not randomly or sequentially generated. Even if the Supreme Court finds in favor of the respondent, the ruling will define the scope of individual and class discovery on Count 1 in this case and, therefore, streamline the proceedings.

As explained *infra*, Plaintiff has no good reasons to oppose QuoteWizard's requested stay, particularly in light of the fact that his same attorneys have requested a stay of an ATDS claim in a different case in light of *Duguid*. On the other hand, if a stay is not granted, QuoteWizard will be significantly and irreparably harmed, and this Court will unnecessarily drain its resources to resolve the exact issue that the Supreme Court is in the process of resolving for good.

Therefore, QuoteWizard requests a stay of Count 1 only for a short time period during which *Duguid* is pending. In the interim, Plaintiff's Count 2 in this case, inclusive of sub-issues that could also prove dispositive to Count 1 (for example, consent to contact) would continue to be litigated in the ordinary course.

**PROCEDURAL/FACTUAL BACKGROUND**

**A.** *Duguid*

There is a Circuit split concerning whether the definition of an ATDS under the TCPA, *see* 47 U.S.C. § 227(a), includes the automated calling of *stored* numbers (*i.e.*, where the numbers called were not randomly or sequentially generated), or whether the definition necessarily requires that the numbers be randomly or sequentially generated. The majority of the Circuit Courts have held that, to qualify as an ATDS, the numbers must have been randomly or sequentially generated. *See Gadelhak v. AT&T Services*, No. 19-1738, 2020 U.S. App. LEXIS 5026 (7th Cir. Feb. 19,

2020); *Glasser v. Hilton Grand Vacations*, Case No. 18-14499, 2020 U.S. App. LEXIS 2481 (11th Cir. Jan. 27, 2020); *Dominguez v. Yahoo*, 894 F.3d 116, 120 (3d Cir. 2018). *Contra Duran v. La Boom Disco, Inc.*, No. 19-600 (2d Cir. 2020); *Marks v. Crunch San Diego*, 904 F.3d 1041, 1049 (9th Cir. 2018).

The First Circuit has not to date held one way or the other. District Courts in the First Circuit have reached contrary conclusions on the matter. *Compare DeCapua v. Metro. Prop. & Cas. Ins. Co.*, 2020 U.S. Dist. LEXIS 47695, at *4 (D.R.I. March 18, 2020) (Smith, J.) ("This Court agrees with the majority of courts that have considered the question, a conclusion that ends Plaintiff's case. These decisions hold that, to qualify as an auto-dialer, the system must be able to randomly or sequentially generate numbers."), *appeal pending*, No. 20-1454 (1st Cir.), *with Gonzalez v. Hosopo Corp.*, 371 F. Supp. 3d 26, 31-34 (D. Mass. 2019) (Saylor, J.) ("[T]o qualify as an ATDS under the TCPA, a device need only have the capacity to do one of the following: either (1) 'store . . . telephone numbers to be called' and 'dial such numbers,' or (2) 'produce telephone numbers to be called, using a random or sequential number generator' and 'dial such numbers.'").

In light of the Circuit split, on July 9, 2020, the U.S. Supreme Court granted a petition for writ of certiorari in *Duguid* as to the following issue: "Whether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'" *See Facebook, Inc. v. Noah Duguid, et al.*, No. 19-511 (U.S. Supreme Court), Docket, July 9, 2020 Entry.[1] The briefing schedule has been set as follows: petitioner's brief on the merits is due by September 4, 2020, and the respondents' brief on the merits is due by October 16, 2020. *Id*., July 24, 2020 Entry. Oral

---

[1] The docket for *Duguid* is publicly available at:
https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/19-511.html.

argument will likely occur in the fall, and observers expect a decision by early (or at least the first half of) 2021.

The text messages in *Duguid* (like those here) were sent using a system to target specific individuals at specific phone numbers for specific business purposes. *See Duguid v. Facebook, Inc.*, No. 15-CV-00985-JST, 2016 WL 1169365, at *5 (N.D. Cal. Mar. 24, 2016) ("Facebook's [] text messages are targeted to specific phone numbers"). In other words, as here, the text messages were not sent to randomly or sequentially generated numbers.

### B. The ATDS Allegations in this Case

In the First Amended Complaint ("FAC"), Plaintiff alleges that QuoteWizard retained Drips, LLC ("Drips") to send "automated text messages to consumers." FAC [ECF No. 80], ¶ 26. Plaintiff alleges that "[Drips's] technology allows a computer to automatically interact via text with a consumer in a feigned personalized manner that makes it appear to a consumer they are texting with a human being. They are not. The entire text experience is automated by computer utilizing artificial intelligence in a manner that allows a computer to interact and respond with the text recipient without human intervention." *Id.*, ¶ 27. As to an ATDS specifically, Plaintiff alleges that, "[f]or a telemarketing process to be 'completely automated' and to require 'zero client side operators' the dialing system used must ***have the capacity to either store telephone numbers and to text those numbers, or*** to produce telephone numbers using a random or sequential number generator and to dial such numbers." *Id.*, ¶ 34 (emphasis added). Plaintiff further alleges that Drips used the "Ytel Dialer," which "has the capacity to ***store or produce*** telephone numbers to be called, using a random or sequential number generator, ***or from a list or database of numbers***, and to dial such numbers without human intervention." *Id.*, ¶ 37. Plaintiff appears to allege that

4

he received two text messages in August 2019 from QuoteWizard through Drips using the same or similar technology.  *See id*., ¶¶ 43-44.

Based on the aforementioned allegations, Plaintiff contends that QuoteWizard violated the portion of the TCPA that bars the use of an ATDS except in certain circumstances.  *See* FAC, ¶¶ 73-77 ("Count 1" or "ATDS claim").  Plaintiff further seeks to represent a nationwide class of consumers "to whom: (a) text solicitations were sent via Drips on behalf of QuoteWizard; (b) to their cellular telephone number; (c) via the same telephone dialing system used in calling Plaintiff's cellular telephone number; (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial."  *Id*., ¶ 61 (Proposed "Class 1").[2]

The Court expressly noted in its Order granting Plaintiff's motion to amend to re-plead Count 1 that there is a Circuit split on whether "an ATDS is implicated only when calling numbers generated by a random or sequential number generator, as suggested by the Third and District of Columbia Circuits, or merely by the automated calling of stored numbers, as held by the Second and Ninth Circuits."  ECF No. 75, p. 4 (internal citations omitted).  The Court also noted that, if the definition of an ATDS excluded the automated calling of stored numbers, then Plaintiff's allegations likely even failed to state a plausible claim for relief because he pleaded that the text messages were addressed to "Joe."  *Id*., p. 5 n.3 ("[I]f the TCPA requires dialing numbers generated by a random or sequential number generator, and not merely the automatic dialing of stored numbers, then the proposed amended complaint likely falls short in light of the specific allegations that the two texts at issue address the Plaintiff by his first name 'Joe.'").  The Court appeared to

---

[2] QuoteWizard denies and disputes virtually all of these allegations, including but not limited to a lack of human intervention and the alleged use of a "Ytel dialer." QuoteWizard also notes that Plaintiff omits the material fact that QuoteWizard had consent to contact his telephone number at issue and, thus, his number was specifically provided to Drips, *not* randomly or sequentially generated. However, even accepting all of these allegations as true at the pleading stage, they fail to state a plausible claim for relief if the automated calling of a stored number does not meet the ATDS standard.

grant leave to amend partly because of the uncertainty surrounding the proper scope of the ATDS definition.  *See id.*, p. 5 (citing the "uncertainty regarding the interpretation of the statute").

## APPLICABLE LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  A stay is warranted pursuant to this Court's inherent power to control its docket, including when "a higher court is close to settling an important issue of law bearing on the action."  *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012); *Carter v. U.S.*, 2007 U.S. Dist. LEXIS 62735, 2007 WL 2439500, at *3 (D. Vt. Aug. 23, 2007) ("[I]t is common practice in this Circuit to postpone the final disposition of a case pending an upcoming decision in the United States Supreme Court."). "The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."  *Clinton v. Jones*, 520 U.S. 681, 706 (1997).  "[T]he decision to grant a stay . . . is generally left to the sound discretion of district courts."  *Ryan v. Gonzales*, 568 U.S. 57, 74 (2013) (internal quotation marks omitted).  *See also ACQIS, LLC v. EMC Corp.*, 109 F. Supp. 3d 352, 356 (D. Mass. 2015) (stay is discretionary).  A stay is appropriate where it is "likely to conserve judicial and party time, resources, and energy."  *Diomed, Inc. v. Total Vein Solutions, LLC*, 498 F.Supp.2d 385, 387 (D. Mass. 2007).

## ARGUMENTS & AUTHORITIES

There are numerous and good reasons for a stay during *Duguid* that all emanate from an indisputable fact: the Supreme Court's decision will be outcome determinative to Count 1 in this case if the Court rules in favor of the petitioner, Facebook, Inc.  In other words, if the Supreme

Court holds that the definition of an ATDS under the TCPA *excludes* the automated calling of a stored number, then Plaintiff loses on Count 1, full stop.

### (1) Impact of *Duguid* on Count 1

It cannot be disputed that, if the Supreme Court holds that the definition of an ATDS *excludes* "any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator,'" then Plaintiff's Count 1 herein, and the concomitant class allegations, fail as a matter of law.

Indeed, Plaintiff's own allegations make clear that he is not alleging (nor could he allege) that his number was randomly or sequentially generated. *See* FAC, ¶¶ 34, 37 (alternatively alleging that Drips's technology at issue either stored numbers and texted them *or* produced them using a random or sequential generator). Nowhere in the FAC does Plaintiff allege that Drips's technology can or did randomly or sequentially generate numbers to send text messages, which is obviously why Plaintiff tied his ATDS claim at least in part to an allegation that the technology merely stored and then automatically called numbers. *See id.* Moreover, as the Court highlighted, the FAC shows that text messages at issue were addressed to "Joe" [Mantha], meaning that they necessarily were not randomly or sequentially generated. *See* ECF No, 75, p. 5 n.3.

Putting aside Plaintiff's allegations, it is factually undisputed (or must be) that QuoteWizard purchased Plaintiff's lead, which came with consent to contact him at the telephone number to which the text messages were sent. *See*, *e.g.*, ECF No. 32 (QuoteWizard's Answer to Count 2 of original Complaint), ¶¶ 2-3 ("QuoteWizard states that it had valid express prior consent, invitation, or permission to contact Plaintiff and each of the alleged class members."); ECF No. 53-7 (Plaintiff's opt-in information to be contacted regarding an auto insurance quote at the telephone number at issue). Thus, the text messages at issue were specifically targeted to Plaintiff

("Joe"), *not* randomly or sequentially generated, in direct response to this lead information and consent to contact.[3] This is the ***same*** fact pattern at issue in *Duguid*. *See Duguid v. Facebook, Inc.*, No. 15-CV-00985-JST, 2016 WL 1169365, at *5 (N.D. Cal. Mar. 24, 2016) ("Facebook's [] text messages are targeted to specific phone numbers").

Thus, if the Supreme Court holds that an ATDS excludes technology that merely automatically dials stored numbers, Plaintiff loses on Count 1.[4] This would also bar Plaintiff's proposed Class 1, since QuoteWizard had consent to contact all putative class members, and thus text messages sent to other consumers were not sent to randomly or sequentially generated numbers. Even if the Supreme Court finds in favor of the respondent and reaches the opposite conclusion, its decision will provide much-needed guidance on the proper scope of an ATDS that will impact individual and class discovery on Count 1 herein.[5]

**(2) Good and Numerous Reasons for a Stay**

In light of the fact that *Duguid* will either be outcome determinative to Count 1 or otherwise have a material impact on the scope of the claim, there are good and numerous reasons to stay

---

[3] It is irrelevant for the purposes of this Motion that Plaintiff disputes that he gave the consent. If Plaintiff consented, that is just a further bar to his claims, but does not bear on whether his telephone number was randomly or sequentially generated (it was not). If Plaintiff contests the indisputable fact that his number was not randomly or sequentially generated, QuoteWizard is prepared to submit an Affidavit in response to this argument, but QuoteWizard reasonably believes that this fact is, and should be, beyond dispute.

[4] To the extent Plaintiff claims that *Duguid* is not totally outcome-determinative to Count 1 because he has also included allegations of the use of an "artificial or prerecorded voice," such argument should be rejected outright. The only communications at issue in this case, inclusive of the original Complaint and the FAC, are text messages. Text messages by nature cannot be made using an artificial or prerecorded *voice*. Plaintiff's allegations of the use of an artificial or prerecorded voice are subject to obvious dismissal for this fundamental reason.

[5] Moreover, if the Supreme Court holds that the definition *includes* the automated calling of stored numbers, this does not equate to a victory for Plaintiff on Count 1. Rather, Count 1 would still be subject to attack on numerous grounds: consent to be contacted; human intervention in the process of sending/dialing the text messages; lack of standing; and other arguments and defenses.

Count 1 for a short, specifically delineated amount of time until the Supreme Court issues its decision therein.

First and foremost, the stay will conserve the resources of the Court and the Parties, particularly in a proposed class case. If the Court does not stay Count 1, QuoteWizard will move to dismiss Count 1 under Fed. R. Civ. P. 12(b)(1) and (6) on the grounds that Plaintiff has not pleaded the use of an ATDS, nor did the technology actually qualify as an ATDS. In deciding this motion, the Court will necessarily have to weigh the same legal issue pending in *Duguid*—whether alleged automated calling to a stored telephone number constitutes an ATDS. In doing so, notably, the Court does *not* have the benefit of a binding or even non-binding First Circuit decision to guide it. Rather, the Court will be breaking new ground in the First Circuit and deciding the issue anew, and in doing so will face contrary decisions from other District Courts in the Circuit (*DeCapua* and *Gonzalez*, *supra*). Particularly in light of the fact that the issue is undecided in the First Circuit, there is no good reason for this Court to engage in the same complicated legal analysis that the Supreme Court will be deciding in short order, in a decision that will be binding on this case and all others in federal courts.

Moreover, if the Court does not stay the case, finds in favor of Plaintiff that the technology at issue qualifies as an ATDS (whether based on Plaintiff's allegations or the facts at hand), and allows the case to proceed to the class certification stage on Count 1, substantial resources will have been wasted if the Supreme Court later holds contrary to this Court, thus requiring intervening decisions of this Court to be vacated. Because of the significant resources that will be conserved during the stay, and the resources that will be expended if no stay is instituted, the stay is more than appropriate here, if not necessary. *See Diomed, Inc.*, 498 F.Supp.2d at 387. *See also Ernst v. Dish Network, LLC*, No. 1:12-cv-08794-LGS (S.D.N.Y. Jan. 28, 2016) (staying case pending

9

Supreme Court decision because it impacts "how this case should be managed moving forward"); *Lacy v. Comcast Cable Commc'ns, LLC*, No. 3:19-CV-05007-RBL, 2020 WL 2041755, at *2 (W.D. Wash. Apr. 28, 2020) (staying case pending Supreme Court's First Amendment TCPA decision to prevent the defendant from "needlessly spending time and money to comply with [] broad discovery requests"); *Boger v. Citrix Sys., Inc.*, No. 8:19-CV-01234-PX, 2020 WL 1939702, at *2 (D. Md. Apr. 22, 2020) (stay pending Supreme Court's First Amendment TCPA decision to "conserve[] precious judicial and case resources and avoid[] unnecessary expenditure of time and money on discovery for a cause of action that may ultimately be invalidated").

Further, an express factor in the Court's decision to allow Plaintiff to re-plead Count 1 was the uncertainty around the scope of an ATDS and whether it includes devices that merely automatically dial stored numbers. Plaintiff should not be allowed the benefit of that legal uncertainty (by receiving leave to re-plead the claim), while QuoteWizard is simultaneously unduly punished for the same (by having to defend the claim on the merits if ultimately it is invalidated by the Supreme Court in *Duguid*).

Second, a stay is appropriate here because of the infancy of the proceedings on Count 1. The Court allowed Plaintiff's motion to re-plead the claim on July 30, 2020 and the FAC was filed, inclusive of Count 1, on August 4, 2020. QuoteWizard has not yet filed its responsive pleading thereto. Moreover, no discovery specific to the alleged use of an ATDS has been taken; a subpoena to Drips is pending, but not has not been responded to, and QuoteWizard moves to stay the same. This heavily weighs in favor of a stay. *See KAZ USA, Inc. v. E. Mishan & Sons, Inc*., 2014 U.S. Dist. LEXIS 93149, at *15 (D. Mass. July 9, 2014) (finding that case in "very early stages" "weigh[ed] heavily in favor of granting a stay" where "[l]ittle discovery had occurred") (patent case).

10

Third, and regardless of how the Supreme Court rules in *Duguid*, a ruling there would, at a minimum, define the scope of any discovery on Count 1, streamline proceedings, and potentially prevent the parties and the Court from engaging in expensive and time-consuming class and expert discovery.

Fourth, QuoteWizard's requested stay is narrowly tailored. QuoteWizard is not requesting a stay of the entire proceedings; to the contrary, the case would continue on the exact same track as it was on before Plaintiff re-pleaded Count 1 on August 4, 2020. Plaintiff and QuoteWizard could continue to pursue and conclude discovery on the issue of Plaintiff's consent (an issue that will bear on Count 1 if it survives, and on which no further discovery would be required if it does survive), and brief the merits of Count 2 (the do-not-call claim). Given that initial Phase I discovery does not conclude until September 15, 2020, *see* ECF No. 75, p. 11, and that QuoteWizard thereafter plans to move for summary judgment on Count 2, it is likely that litigation on the individual merits of Count 2 will continue until late 2020/early 2021. Thus, this case will not be stagnant during the requested stay; to the contrary, the Parties will likely resolve at least half of the case, but potentially all of it if the Court finds in QuoteWizard's favor that Plaintiff consented to be contacted.

Finally, if this Court allows Count 1 to continue during the pendency of *Duguid*, it will have substantial impact on a non-party to this case, Drips. Plaintiff has already issued a subpoena to Drips for the production of documents (which is pending and QuoteWizard seeks to stay), and will almost certainly seek to depose Drips concerning the technology used to text message Plaintiff. The mitigation or alleviation of discovery burdens on Drips is also further reason to grant the requested stay. If the Supreme Court finds in favor of Facebook, Inc., the technology used by Drips will be irrelevant, since it will be undisputed (or could be easily proven by a short

declaration) that Drips did not randomly or sequentially generate Plaintiff's number (or those of the proposed class members).

### (3) No Discernible Prejudice to Plaintiff

QuoteWizard can discern no potential prejudice to Plaintiff if the requested short stay is granted. For example, there is no arguable immediate harm to Plaintiff that requires immediate adjudication of Count 1. Notwithstanding QuoteWizard's position that Plaintiff consented to be contacted, and that Drips did not use an ATDS to contact him, QuoteWizard has already placed Plaintiff's telephone number on its internal do-not-call list during the course of this litigation, and its own policies or procedures (predating this litigation) require that QuoteWizard have consent to contact any and all other consumers. Therefore, there is no risk of harm that Plaintiff or anyone else will be contacted by QuoteWizard during the stay in violation of the TCPA; Plaintiff's request for injunctive relief is not relevant to this Motion. *See Whittaker v. All Reverse Mortg.*, 2020 WL 2829785, at *1 (D. Ariz. May 29, 2020) (staying TCPA case notwithstanding request for injunctive relief).

Moreover, Plaintiff seeks only *de minimus* statutory damages under the TCPA ($500 individually, which Plaintiff seeks to treble), meaning that there is no argument that he needs to be made whole immediately. In any event, a request for damages does not preclude a valid request to stay a case. *See Aerotel, Ltd. v. IDT Corp.*, 2003 WL 23100263, at *2 (S.D.N.Y. Dec. 30, 2003) (granting stay and finding no undue prejudice where "suit is largely one for damages").

Finally, contrary to any incorrect claim that Plaintiff might make concerning lack of preservation, there is no risk that a brief stay will cause either non-preservation or destruction of evidence. Both QuoteWizard and Drips have placed litigation holds on, and are preserving, all information and documents relevant to all claims in the FAC and the class allegations.

Rather, and as evidenced by a requested stay made by Plaintiff's own attorneys during the pendency of *Duguid* in another TCPA case (*see infra*), the requested stay will only *benefit* Plaintiff. As noted, a stay will preserve the Parties' and the Court's resources and allow the Parties to ultimately litigate claims based on guidance from the Supreme Court, rather than litigating individual and class claims that might later be wholly invalidated. This is particularly important in a proposed class action case, with the high burdens it places on the parties and the Court. *See*, *e.g.*, *Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*, 2014 WL 413534, at *4 (D.N.J. Feb. 4, 2014) ("[C]lass actions involve the potential for hefty litigation expenses and an extensive use of judicial resources in the resolution of these claims. It is also generally understood that the costs can be particularly enormous for defendants.") (internal citations omitted).

But even if the Plaintiff could articulate some legitimate prejudice that would result from a very limited stay on one of two counts (he cannot), this still does not militate against a stay. As one court has recently recognized, "any prejudice to plaintiff[] resulting from a stay of proceedings is outweighed by the benefits of waiting for Supreme Court guidance on the pivotal ATDS issue." *See Rogers v. Navient Solutions, LLC*, Docket No. 1:20-cv-00276 (E.D. Va.) (Ellis, J.), ECF No. 29, p. 2 (July 27, 2020 Order granting defendant's motion to stay TCPA claims during pendency of *Duguid* three days after motion was filed).

### (4) Other Courts Have Taken the Same Approach

In the wake of the Supreme Court granting certiorari in *Duguid*, numerous courts across the country have granted requests to stay ATDS claims until the resolution of *Duguid*, including:

(1) *Samantha Rossano v. Fashion Marketing and Merchandising Group Inc et al.*, Case No. 2:19-cv-10523-MWF-PJW (C.D. Cal.) (Fitzgerald, J.), ECF No. 31 (July 31, 2020 Order granting stay of case pending *Duguid* over plaintiff's opposition in joint status report);

13

(2) *Howard Hoffman v. Jelly Belly Candy Co., Inc.*, Case No. 2:19-cv-01935 (E.D. Cal.) (Mendez, J.), ECF No. 22 (July 17, 2020 Order granting stay during pendency of *Duguid* over plaintiff's opposition in joint status report);

(3) *Forrest Rogers v. Navient Solutions, LLC*, Docket No. 1:20-cv-00276 (E.D. Va.) (Ellis, J.), ECF No. 29 (July 27, 2020 Order granting defendant's motion to stay during pendency of *Duguid* three days after motion was filed).

(4) *Mizrahi v. Kalamata Research Services, LLC*, Case No. 1:20-cv-00666 (E.D.N.Y.) (Kuo, M.J.), ECF No. 13 (April 24, 2020 Order granting defendant's motion to stay filed eight days earlier pending resolution of *Duguid*);

(5) *Young v. Bank of America, N.A.*, Case No. 4:19-cv-3867-JST (N.D. Cal.) (Tigar, J.), ECF No. 31 (July 15, 2020 Order granting parties' stipulation to stay case pending a ruling on the merits by the Supreme Court in *Duguid*);

(6) *Sunil Daniel v. Lennar Corp.*, Case No. 8:19-cv-00452-JLS-DFM (C.D. Cal.) (Staton, J.), ECF No. 45 (July 20, 2020 Order granting parties' stipulation to stay case pending resolution of *Duguid*);

(7) *Shannon Sensibaugh v. EF Education First, Inc.*, Docket No. 2:20-cv-01068 (C.D. Cal.) (Fitzgerald, J.), ECF No. 30 (July 14, 2020 Order granting defendant's unopposed request to stay case during pendency of *Duguid*, which will "resolve a central issue in this action");

(8) *Scott Runyon v. Everquote, Inc.*, Case No. 1:20-cv-01206 (D. Colo.) (Moore, J.), ECF No. 20 (July 23, 2020 Order granting joint motion to stay proceedings pending a decision in *Duguid*);

(9) *Donna-Marie May v. WhatsApp Inc.*, Case No. 4:20-cv-00659 (N.D. Cal.) (Tigar, J.), ECF No. 20 (July 15, 2020 Order granting stipulation to stay case pending *Duguid*);

(10) *Kenneth Hoagland v. H&R Block, Inc. et al.*, Case No. 3:19-cv-00750 (S.D. Cal.) (Bashant, J.), ECF No. 62 (July 27, 2020 Order granting joint motion to stay proceedings pending *Duguid*);

(11) *Samantha Grome v. USAA Savings Bank*, Case No. 4:19-cv-03080 (D. Neb.) (Bazis, M.J.), ECF No. 45 (July 14, 2020 Order granting stipulation to stay proceedings pending *Duguid*);

(12) *Phillip Blower v. Portfolio Recovery Associates, LLC*, Case No. 3:19-cv-02270 (S.D. Cal.) (Bashant, J.), ECF No. 24 (July 23, 2020 Order granting joint motion to stay case pending *Duguid*);

(13) *Nathan Jones v. USHealth Group, Inc. et al.*, Case No. 2:19-cv-02534-HLT-JPO (D. Kan.) (O'Hara, M.J), ECF No. 55 (July 27, 2020 Order granting stay during pendency of *Duguid* upon joint request of parties);

(14) *James Meyers v. Facebook, Inc.*, Case No. 3:18-cv-00062-WHO (N.D. Cal.) (Orrick, J.), ECF No. 57 (July 20, 2020 Order granting joint stipulation to stay case in light of *Duguid*).

**(5) Plaintiff's Counsel Has Requested a Stay During *Duguid* in Another Case**

Reflecting the good reasons to stay an ATDS claim during the *Duguid* case is a filing made by one of Plaintiff's attorneys in this action in *Frey v. Frontier Utilities Northeast LLC Energy Acquisitions Group, LLC*, Case No. 19-2372-KSM (E.D. Pa.), on August 7, 2020. A true and accurate copy of the motion to stay is attached hereto as **Exhibit A**. Therein, one of Plaintiff's attorneys in this action, in moving for a stay of an ATDS claim under the TCPA on behalf of the plaintiff, wrote:

> The ruling [in *Duguid*] will directly affect this case and could potentially be dispositive. If it is not, it will provide substantial guidance and clarity to this Court and the parties. The ruling will also considerably streamline expert discovery, determine the facts needed to establish that the dialing system was an ATDS, potentially eliminate the need for other proceedings such as briefing and discovery disputes, and encourage settlement discussions. As a result, a stay would not work to the injustice or hardship on any party and would instead conserve the resources of the Court and the parties. …
>
> There is no reason why this Court should not also similarly stay this action. The highest court in the land is close to settling an important and dispositive issue of law on which this case turns.

Ex. A, pp. 3-4.[6] QuoteWizard agrees. Moreover, there is no good reason for Plaintiff's same attorneys to advance the opposite position in this case.

---

[6] The motion is pending.

## CONCLUSION

Because *Duguid* will be potentially outcome-determinative to Count 1 herein, and at a minimum will define the scope of (among other things) discovery on that claim, the Court should stay Count 1 during the pendency of *Duguid*, allowing Count 2 to move forward in the interim.

QuoteWizard respectfully suggests that the Court also order that, within ten (10) days of a decision in *Duguid*, the Parties file a joint status report notifying the Court of the decision and the Parties' position on the impact of that decision on Count 1 herein. QuoteWizard is also amenable to filing periodic status reports (for example, every 60 days) to apprise the Court of the proceedings in *Duguid* until such time that a decision is issued.

Respectfully submitted,

QuoteWizard.com, LLC,
By its attorneys,

*/s/ Christine M. Kingston*
Kevin P. Polansky (BBO #667229)
kevin.polansky@nelsonmullins.com
Christine M. Kingston (BBO #682962)
christine.kingston@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
One Post Office Square, 30th Floor
Boston, MA 02109
(t) (617)-217-4700
(f) (617) 217-4710

Dated: August 18, 2020

## CERTIFICATE OF SERVICE

I, Christine M. Kingston, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: August 18, 2020                                               */s/ Christine M. Kingston*