IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOSEPH MANTHA on behalf of themselves and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>QUOTEWIZARD.COM, LLC<br><br>Defendant. | :<br>:<br>:<br>:<br>: Case No. 1:19-cv-12235-LTS<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>/ |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
<u>**MOTION TO COMPEL AND FOR SANCTIONS**</u>

Plaintiff Joseph Mantha ("Mr. Mantha" or "Plaintiff"), respectfully submits this opposition to the Motion to Enforce an Order of the Court and for Sanctions of the defendant QuoteWizard.com, LLC ("QuoteWizard" or "Defendant"). For the reasons set forth below, the motion should be DENIED.

**BACKGROUND**

QuoteWizard has moved for sanctions for Plaintiff's refusal to grant it unfettered access to Plaintiff's personal computers and iPhone, in spite of the fact QuoteWizard did not actually propound such an outrageous discovery request in the first instance, and more importantly that Judge Sorokin <u>denied</u> QuoteWizard's demand that Plaintiff produce his computers for inspection:  "The Court DENIES the second request as there is no basis to require the production of electronic devices; nothing in this ruling precludes Defendant from seeking discovery from these devices. However, nothing in this ruling permits Plaintiff to withhold information or documents extracted from any of his devices in the course of this case unless protected by privilege." ECF 75 at 7. Because Plaintiff is not withholding any documents, but

rather does not have the search or browser history for the dates in question, Defendant's motion should be denied.

The Court also ruled that if the Plaintiff were to rely on an expert evaluation of the devices, QuoteWizard would be afforded an opportunity to inspect the data contained on Plaintiff's devices relied upon by his expert. As is set forth below, Mr. Mantha has supplemented his interrogatory answers to make clear that he is not relying on an expert witness to prove that he did not consent.

What QuoteWizard actually requested as to Plaintiff's browser and search history was the following discovery request:

> 17. Browser and search history for August 1st through 5, 2019 for any and all computers, cell phones, or other electronic devices used by you on or around that date.

See ECF 52-2 at page 15 of 18 page pdf, ¶ 17.

Plaintiff responded that he had no responsive documents:

> 17. Browser and search history for August 1st through 5, 2019 for any and all computers, cell phones, or other electronic devices used by you on or around that date. ANSWER: OBJECTION: At QuoteWizard's request, the initial discovery phase in this case is to focus solely on QuoteWizard's consent defense per the April 7, 2020, Scheduling Order of Judge Sorokin. See ECF #39. Plaintiff objects to this request to the extent it seeks the production of documents other than documents relating to consent to receive telemarketing texts from QuoteWizard. Plaintiff also objects to this request as it is burdensome and overbroad. Subject to these objections and answering further, there are no responsive documents on the browser or search history of Plaintiff's personal devices, including his lap top and cell phone, that evidence any visit to www.snappyautoinsurance.com on the date of the alleged consent, or at any time prior to the filing of this lawsuit.

Not satisfied with this routine discovery response that he had no responsive documents, Defendant purported to expand its request in the Parties' Joint Status Report Concerning Dispute Over Plaintiff's Discovery Responses, ECF 53, claiming it had "requested Plaintiff's computers, cell phone(s), and electronic devices that he used at the relevant time periods when the consent at issue was provided on [www.snappyautoinsurance.com](www.snappyautoinsurance.com)." ECF 53 at 6. This unilateral transformation of a routine request for documents, which was met with a response that Plaintiff is not in possession of responsive documents, to include a wholesale right to peruse Plaintiff's personal computers an cell phones was rightly rejected by the Court. Order on Pending Motions and Discovery Disputes (Doc. Noc. 45, 51-53, 70, 74). ECF 75 at 7.

Defendant's claim that it is entitled to search Mr. Mantha's computers, and to obtain imaging of his computers and laptops done by a third party, is a red herring. As to a second request for Plaintiff's search and browser history on different dates of June 25-27, 2019 (due to the ever changing purported proof of consent offered by Defendant) the Court did not order any further production, noting that "counsel will be able to obtain the answers to these questions in Plaintiff's deposition, thus, nothing further is ordered on this request at this time." ECF 75 at 9-10.

**ARGUMENT**

I.  **QuoteWizard's Request for Unfettered Access to Plaintiff's Personal Computers to Search for Documents that Do Not Exist was Rejected by Judge Sorokin and Should be Rejected Again, Particularly as QuoteWizard Itself Should Have had the Purportedly Sought-after Consent Before Texting Plaintiff**

QuoteWizard's request for unfettered access to Defendant's computers, simply because he has no responsive documents to produce, is particularly meritless given the burden placed on telemarketers to prove that they had the telemarketing recipient's "prior express written consent" *before* it sent a text message to Mr. Mantha.

Before a telemarketer can send spam texts to a consumer, it must first have the consumers' prior express signed consent to receive such telemarketing texts from a specific seller. Such consent must be signed and be sufficient to show that the consumer received "clear and conspicuous disclosure" of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver telemarketing solicitations by or on behalf of a specific seller; and having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service." *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted). A telemarketer who claims it had consent to telemarket to a particular consumer bears the burden of proof, and must maintain records that prove such a claim. The FCC has cautioned that a telemarketer claiming consent "must be prepared to provide clear and convincing evidence of the existence of such a relationship." In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC 03-153 at ¶112, -- FCC Rcd. --, 2003 WL

2157853, 2003 FCC LEXIS 3673 (July 3, 2003) (emphasis added).  The FCC has also noted: In the event a complaint is filed, the burden of proof [as to whether prior express consent was obtained] rests on the sender to demonstrate that permission was given.  We strongly suggest that senders take steps to promptly document that they received such permission. Id. at ¶46. The FCC has warned telemarketers, specifically in the context of pre-record message telemarketing:

> Finally, should any question about the consent arise, the seller will bear the burden of demonstrating that a clear and conspicuous disclosure was provided and that unambiguous consent was obtained.

*See* In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 27 FCC Rcd 1830 at ¶112; 2012 FCC LEXIS 794 (Feb. 12, 2012).

Here, since the outset of the case, QuoteWizard insisted it had consent Mr. Mantha's consent to send him texts offering auto insurance. At the Case Management Conference, QuoteWizard represented to the Court that it was prepared to ***immediately*** move for summary judgment on the consent claim. It was so confident in its consent defense that it even threatened Plaintiff's counsel with Rule 11 sanctions for having filed a frivolous lawsuit in light of the consent it purportedly possessed. The document that QuoteWizard claimed evidenced Mr. Mantha's consent to receive telemarketing texts is referred to herein as the "QuoteWizard Opt In." The QuoteWizard Opt In was originally produced to Mr. Mantha as an attachment to the January 10, 2020, letter of Kevin Polansky, Esq., counsel to QuoteWizard, that threatened to seek Rule 11 sanctions against Mr. Mantha's counsel for filing a frivolous lawsuit. *See* Exhibit 1, January 10, 2020, Letter of Counsel, with QuoteWizard Opt. Given the gravity of defense counsel's Rule 11 allegation, and although it is QuoteWizard who bears the burden of proof to prove consent in a TCPA case by clear and convincing evidence, Plaintiff's counsel immediately commenced discovery to explore QuoteWizard's consent defense, and to disprove the

information on the QuoteWizard Opt In. Discovery obtained to date has been devastating to QuoteWizard's consent defense.

First, in reliance on the QuoteWizard Opt In, QuoteWizard claimed that Mr. Mantha utilized a computer assigned the IP address 96.242.xxxxxx to consent to receive telemarketing texts on a web site called www.snappyautoinsurance.com. *Id.* Mr. Mantha denied under oath any connection to this web-site or to this IP address. A subpoena to the telecommunications carrier for the IP address confirmed it was assigned to someone in New Jersey. QuoteWizard deposed this individual who confirmed that he never met Mr. Mantha and never visited www.snappyautoinsurance.com. QuoteWizard then changed its story and claimed that Mr. Mantha actually visited www.snappyautoinsurance.com on a different date from a different IP address. Again, Mr. Mantha denied any visit to this website and any connection to the new IP address offered by QuoteWizard as proof of his consent. Similarly, a telecommunications subpoena confirmed the IP address was not assigned to Mr. Mantha. Rather, it was assigned to a woman in Worcester, who QuoteWizard then deposed and who, similarly, confirmed no connection to Mr. Mantha and that she had never visited the web site www.snappyautoinsurance.com. Further, in support of its consent defense, QuoteWizard noted that the QuoteWizard Opt In contained a Jornaya Lead ID that purportedly confirmed Mr. Mantha's visit to www.snappyautoinsurance.com. At its deposition, however, Jornaya confirmed that the Lead ID contained on the QuoteWizard Opt In had nothing to do with Mr. Mantha or to the visit of anyone to www.snappyautoinsurance.com. Jornaya could offer no explanation as to why such Lead ID was assigned to the QuoteWizard Opt In. Finally, during discovery, QuoteWizard's lead vendors confirmed that Mr. Mantha's data originated with a lead broker named Adam Brown, the individual who owns the web site

www.snappyautoinsurance.com. After being subpoenaed by Plaintiff's counsel, Mr. Brown wrote to counsel, informed them that the web site www.snappyautoinsurance.com had not been used for seven years, and stated that he was not in the possession of any documents relating to Mr. Mantha. *Id.* And, as if the above was not enough to discredit QuoteWizard's consent defense, and its Rule 11 threat against Plaintiff's counsel, at its recent 30(b)(6) deposition, QuoteWizard ***admitted*** that the QuoteWizard Opt In was ***not*** created before it was placed on notice of Mr. Mantha's claim. Rather QuoteWizard admitted that the document upon which it has threatened counsel with Rule 11 sanctions was created ***after*** QuoteWizard received the litigation notice letter of plaintiff's counsel dated September 4, 2019.

QuoteWizard's position that it is entitled to unfettered access to Mr. Mantha's computers and iPhone has a through the looking glass quality. Imagine a breach of contract Plaintiff asserting that it had a signed contract by a defendant, having that signature being proven not to belong to defendant (who denies under oath having ever signed, and who of course does not have a copy of the non-existent contract), pivoting and telling a court that it needed to search the defendant's files and computers for a copy of the purportedly signed contract.

Plaintiff, moreover, has supplemented his responses to interrogatories to make clear that he is not relying on an expert as proof that he did not visit the www.snappyautoinsurance.com website that was the source of his purported consent. *See Plaintiff's Answers t Defendant's First Set of Interrogatories as Supplemented*, attached as Exhibit 2 at ¶ 22. ("The Plaintiff has personally reviewed the internet search and browser histories on all of his devices and can personally attest that no responsive documents are in his possession or control. The Plaintiff will not be relying on any expert for this simple proposition. At this time, Plaintiff will not be relying on Mr. DePue for any expert testimony at summary judgment or trial.")

Judge Sorokin *denied* QuoteWizard's blanket demand for Mr. Mantha's devices. In doing so, Judge Sorokin noted, however, that *if* Mr. Mantha were to rely on an expert to testify as to what was found- or not found- on his devices, that the information relied upon by the expert would have to be shared with QuoteWizard and its expert. In response, Mr. Mantha agreed that he would not offer the forensic expert who imaged his devices as an expert going forward. Mr. Mantha also agreed that he would not withhold from production any relevant evidence contained on his devices- to the extent it exists.

This is all that Judge Sorokin ordered. QuoteWizard's attestation to the contrary is an effort to rewrite Judge Sorokin's Order.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that Defendant's Motion to Enforce an Order of the Court and for Sanctions should be denied.

PLAINTIFF,

By their attorneys

*/s/ Edward A. Broderick*
Edward A. Broderick
BRODERICK LAW, P.C.
176 Federal Street, Fifth Floor
Boston, MA 02110
Telephone: (617) 738-7080
ted@broderick-law.com

Matthew P. McCue
THE LAW OFFICE OF MATTHEW P. MCCUE
1 South Avenue, Suite 3
Natick, MA 01760
Telephone: (508) 655-1415
mmccue@massattorneys.net

>Anthony I. Paronich
>PARONICH LAW, P.C.
>350 Lincoln Street, Suite 2400
>Hingham, MA 02043
>(508) 221-1510
>anthony@paronichlaw.com
>
>Alex M. Washkowitz
>Jeremy Cohen
>CW LAW GROUP, P.C.
>188 Oaks Road Framingham, MA 01701
>alex@cwlawgrouppc.com

August 24, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2020, I electronically transmitted the foregoing to all counsel of record via the electronic filing system.

>By: */s/ Edward A. Broderick*
>Edward A. Broderick