# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

JOSEPH MANTHA on behalf of themselves and others similarly situated,

    Plaintiff,

v.

QUOTEWIZARD.COM, LLC

    Defendant.

Case No. 1:19-cv-12235-LTS

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY

In this putative class action lawsuit, the Plaintiff Joseph Mantha has alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c), a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012). Plaintiff alleges that QuoteWizard violated the TCPA by telemarketing via unsolicited text message to the personal phones of class members that were listed at the time on the National Do Not Call Registry. The Plaintiff has also alleged that Quotewizard used automated technology to contact the cellular telephone of class members, a separate violation of the TCPA. *See* 47 U.S.C. § 227(b).

At Quotewizard's request, the parties engaged in a bifurcated discovery period that has involved more than a dozen third party document subpoenas or depositions as well as multiple sets of discovery exchanged between the parties. Quotewizard has deposed, or is seeking to depose, the Plaintiff's wife, employer and a host of third parties who only involvement in this lawsuit is having some tangential connection to a faulty lead that Quotewizard obtained from a third party who purchased data from Bosnia.

After failing to prevent the Plaintiff from amending his complaint to include his second claim pursuant to 47 U.S.C. § 227(b), Quotewizard seeks a stay that could last nearly a year. Acknowledging that there is no circumstance in which the Supreme Court will end this litigation, Quotewizard only seeks to stay one of two claims. As such, Quotewizard is proposing that the parties conduct discovery on one claim and then begin again after the Supreme Court renders their decision sometime in 2021. A stay under these circumstances would be the height of inefficiency and should be denied. Furthermore, Defendant has failed to satisfy their burden that they will be harmed if this case is not stayed, and Plaintiff will be prejudiced by a stay. A stay is therefore unwarranted in these circumstances and this case should proceed to discovery, nearly a year after it was filed.

When confronted with a similar analysis, Judge Zobel denied a stay in a matter earlier this month in a TCPA lawsuit that had claims for 47 U.S.C. § 227(b) and 47 U.S.C. § 227(c), just as the Plaintiff does here. *See Tiefenthaler v. Target Corporation*, Civil Action No. 1:19-cv-12412-RWZ, ECF No. 29 (August 18, 2020).

## BACKGROUND

Defendant is in the business of selling its services to insurance agents and providing those agents with potential customers and new business. *See* ECF No. 80 (Amended Complaint) at ¶ 23. One of Defendant's strategies for generating new business is through telemarketing by automated text message initiated via a third-party vendor. *Id.* at ¶ 25. To send automated texts to consumers, Defendant retained Drips, LLC ("Drips"), a company that developed and utilized technology that uses computers and artificial intelligence to interact with consumers via text message. *Id.* at ¶ 26.

The technology allows a computer to automatically interact via text with a consumer in a feigned personalized manner that makes it appear to a consumer they are texting with a human being. They are not. The entire text experience is automated by computer utilizing artificial intelligence in a

manner that allows a computer to interact and respond with the text recipient without human intervention. *Id.* at ¶ 27. On its web site, Drips explains that its automated texting platform "holds over 1,000,000 humanized automated engagements per day…" *Id.* at ¶ 28.

Because telemarketing campaigns generally place calls to thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of the following proposed nationwide classes:

Class 1

All persons within the United States to whom: (a) text solicitations were sent via Drips on behalf of QuoteWizard; (b) to their cellular telephone number; (c) via the same telephone dialing system used in calling Plaintiff's cellular telephone number; (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

Class 2

All persons within the United States to whom: (a) two or more text telemarketing calls were sent via Drips; (b) promoting QuoteWizard's goods or services; (c) to a residential phone number that was listed on the National Do Not Call Registry for at least 30 days before the first call; (d) within any twelve-month period.

*Id.* at ¶ 61. There is no dispute that only Class 1 potentially has an implication in the Supreme Court's decision.

**ARGUMENT**

I. **The Definition of an ATDS will not be Dispositive on this Case and does not Justify a Stay, as this Court has Already Held.**

"The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citations omitted). Furthermore, the proponent "must make out a clear case of hardship or inequity in being required to go forward[.]" *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). Defendant has not met that burden here. Defendant has no identify any hardship or inequity

that they will suffer if the case goes forward, much less "a clear case." The Court should deny the request to stay this action for that reason alone.

Judge Gorton engaged in a similar analysis when the defendants in another TCPA action wanted to stay the case pending another ATDS analysis that was imminent from the FCC:

> An FCC ruling on what constitutes an ATDS will not affect plaintiffs claim that Defendant has also violated the Do-Not-Call provision of the TCPA. The fact that plaintiff has also asserted two separate theories of liability further weighs against staying the case. See Pieterson v. Wells Fargo Bank, N.A., No. 17-CV-02306-EDL, 2018 U.S. Dist. LEXIS 113125, 2018 WL 3241069, at *4 (N.D. Cal. July 2, 2018) (noting in a similar circumstance that "[s]taying the case when an alternative theory of liability can move forward would unduly postpone adjudication of Plaintiffs' claims.").

*Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 317 (D. Mass. 2020). Here, the analysis is the same, Quotewizard wants to stay one portion of discovery related to Drips telemarketing conduct and proceed with another, only to start all over again in a year when the Supreme Court rules.

## II.     Defendant Fails to Satisfy it Burden to Establish a Need for a Stay, and a Stay will Prejudice Plaintiff

Courts have consistently refused to grant stays based on speculation that a future ruling from the Supreme Court may possibly impact the outcome of the case or where the ruling itself would not be dispositive of the plaintiff's claims, as should the Court here. *See, e.g., Pederson v. Donald J. Trump for Pres., Inc.*, No. CV 19-2735 (JRT/HB), 2020 WL 3047779, at *6 n.1 (D. Minn. June 8, 2020) ("The Court will decline to issue a stay based pending the outcome in that case because the Court finds that it is unlikely that the Supreme Court will void the TCPA in its entirety."); *Johnson v. Moss Bros. Auto Grp., Inc.*, No. ED CV 19-2456 FMO (SPx), 2020 U.S. Dist. LEXIS 86971, at *2-4 (C.D. Cal. May 18, 2020) ("Defendant has not met its burden to show that a stay of this case is appropriate. First, the impact of the Supreme Court's decision … is speculative at this point. … Second, … [a]ny hardship resulting from the resources the parties will expend in two months of

litigation does not justify staying this case on the basis of a Supreme Court case that may affect the outcome of this case." (emphasis in original))*; In re Midland Credit Mgmt., Inc., Tel. Consumer Prot. Act Litig.*, No. 11-MD-2286-MMA (MDD), 2020 WL 1287732 (S.D. Cal. Mar. 18, 2020) ("Thus, based on the focus of the case before the Supreme Court, the Court finds the unlikelihood of the entire automated-call restriction being stricken suggests that a stay is inappropriate.").

This is a particularly appropriate approach in class actions, because a stay compounds the already-substantial difficulty of gathering information necessary to identify class members and establish their claims. *See Young v. Peraza*, No. 1560968-CIV, 2015 WL 4639736, at *2 (S.D. Fla. Aug. 4, 2015) ("Were the Court to grant the Motion [to stay], Plaintiff would stand to suffer prejudice as the memories of eyewitnesses faded with the passage of time."); *Koppelman v. Galt Ocean Manor Condo. Ass'n, Inc.*, No. 16-CV-62175, 2016 WL 6777896, at *1 (S.D. Fla. Nov. 16, 2016) ("when discovery is delayed or prolonged it can create case management problems which impede the [c]ourt's responsibility to expedite discovery and cause unnecessary litigation expenses and problems").

Any delay creates the risk the evidence Plaintiff needs to prevail on his claim will be destroyed, lost, corrupted, or forgotten. *Lathrop v. Uber Techs., Inc.*, 2016 U.S. Dist. LEXIS 2490, at *12 (N.D. Cal. Jan. 8, 2016) (plaintiffs in putative class action may "suffer prejudice from a stay because the case would extend for an indeterminate length of time, increase the difficulty of reaching class members, and increase the risk that evidence will dissipate"); *accord Izor v. Abacus Data Sys.*, 2019 U.S. Dist. LEXIS 130865, at *10 (N.D. Cal. Aug. 5, 2019); *see Blue Cross & Blue Shield of Alabama v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007).

Subjecting Plaintiff and putative class members to the stay Defendant proposes is also inherently prejudicial because it substantially delays their recovery. *See Strougo v. Barclays PLC*, 194 F. Supp. 3d 230, 234 (S.D.N.Y. 2016) ("Plaintiff have a strong interest in being fully compensated for

their losses as soon as possible, and therefore, a stay is not appropriate."); *United States v. Swissco Properties within S. Dist.*, 821 F. Supp. 1472, 1475 (S.D. Fla. 1993) ("justice delayed is justice denied."); *Arden Way Assocs. v. Boesky*, 660 F. Supp. 1494, 1497 (S.D.N.Y. 1987) ("Plaintiff have a substantial interest in the efficient conduct of this complex litigation").

Given this fair possibility of harm to Plaintiff, Defendant must make a "clear showing" of the hardship it will suffer if the case proceeds. *Pascal v. Concentra, Inc.*, 2019 U.S. Dist. LEXIS 185193, at *8 (N.D. Cal. Oct. 24, 2019). Here, there is none. It is well-settled that "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity . . . .'" *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005).

The potential destruction of this evidence necessitates timely discovery consistent with the rules. Here, the Plaintiff's putative class is based off the fact that the TCPA claims are governed by a four year federal statute of limitations. *See* 28 U.S.C. § 1658(a) ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues"); *see also Giovaniello v. ALM Media, LLC*, 726 F.3d 106, 115 (2d Cir. 2013) (four-year statute of limitations applies to private TCPA claims in federal court). However, not all telecommunications companies, including the companies that are used to engage in automated telemarketing, keep records of telephone activities for up to four years, and without an immediate gathering of records, the likelihood of destruction of this evidence increases with each passing day. Attached as <u>Exhibit 1</u> is a chart of national telecommunications providers and their respective call detail record retention policies compiled by the Department of Justice. As detailed in the chart, many of the major telecommunications providers will only retain call record information for 12-18 months, and presumably smaller telecommunications providers keep this information for an even shorter period. While Quotewizard claims that Drips has instituted a litigation hold, what it does

not disclose is that a *third party is involved* with Drips that was recently disclosed, and the status of their records remains uncertain.

The risk to the putative class members' interests is not merely hypothetical. Multiple decisions have turned on the destruction of telephone records. For example, in *Levitt v. Fax.com*, No. 05-949, 2007 WL 3169078, at *2 (D. Md. May 25, 2007), the court denied class certification in a TCPA fax case because "critical information regarding the identity of those who received the facsimile transmissions" was not available. Likewise, in *Pasco v. Protus IP Solutions, Inc.,* 826 F. Supp. 2d 825, 831 (D. Md. 2011), the court was compelled to grant the defendant's motion for summary judgment where Mr. Pasco was unable to obtain the "transmission data on which to support their claims that [the defendant] sent them the unsolicited faxes at issue."

As a result, courts regularly permit plaintiffs to commence discovery prior to a Fed. R. Civ. P. 26(f) conference related to these issues implicating non-parties in TCPA cases. *See e.g. Cooley v. Freedom Forever LLC et. al*., Civil Action No. 2:19-cv-562, ECF No. 37 (D. Nev. July 19, 2019); *Cooley v. First Data Merchant Services, LLC et. al.*, Civil Action No. 19-cv-1185, ECF No. 32 (N.D. Ga. July 8, 2019); *Abante Rooter and Plumbing, Inc. v. Birch Commc'ns, Inc.* Civil Action No. 15-cv-03562, Dkt. No. 32 (N.D. Ga. 2016); *Mey v. Interstate National Dealer Services, Inc., et al.*, Civil Action No. 14-cv-01846, Dkt. No. 23 (N.D. Ga. Aug. 19, 2014). Here, the Plaintiff is simply seeking to proceed in the ordinary course with discovery. This issue was addressed in *Simon v. Ultimate Fitness Grp., LLC*, Case No. 19-cv-890, 2019 U.S. Dist. LEXIS 147676, at *20-22 (S.D.N.Y. Aug. 19, 2019):

> In addition, Orangetheory has not demonstrated irreparable injury; it notes only that it is potentially on the hook for substantial damages, given the putative nationwide class. Monetary damages, of course, do not by themselves constitute irreparable injury. Simon, on the other hand, persuasively argues that she would be injured by a stay, particularly because discovery has yet to commence, and

6

> evidence is at risk of being lost. This injury, which is both likely and irreparable, far outweighs the injury posed by a potential future judgment for money damages.
>
> …
>
> In the meantime, it is clear that critical evidence, including [*22] records from any third parties that Orangetheory may have contracted with for its telephone marketing, may be lost or destroyed.

While the Defendant tries to make great hay from the fact that Plaintiff's counsel had sought a stay in another matter, in that case the *sole claim* is for a violation of the TCPA's autodialer provision. As discussed above, that is not the case here.

Defendant's generic contention it will incur significant costs absent a stay is without merit. Numerous courts have held these pretrial litigation costs do not justify a stay, even where the stay being sought is based on an interlocutory appeal in the same case. *See, e.g.*, *Cesca Therapeutics, Inc. v. SynGen Inc.*, 2017 U.S. Dist. LEXIS 48265, at *13 (E.D. Calif. Mar. 30, 2017) (citing *Britton v. Coop Banking Grp.*, 916 F.2d 1405, 1411-12 (9th Cir. 1990)) (financial burden is not an irreparable harm); *accord Vesta Corp. v. Amdocs Mgmt.*, 2016 U.S. Dist. LEXIS 195556, at *8 (D. Or. Nov. 7, 2016) ("[A]ny argument that proceeding through litigation necessarily causes irreparable harm is unpersuasive."); *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 2016 U.S. Dist. LEXIS 190219, at *4 (D. Ore. Oct. 5, 2016) (same); *see also Guifu Li v. A Perfect Day Franchise, Inc.*, 2011 U.S. Dist. LEXIS 60814, at *12 (N.D. Cal. June 8, 2011) ("[I]ncurring litigation expenses does not amount to an irreparable harm."); *Bradberry v. T-Mobile USA, Inc.*, 2007 U.S. Dist. LEXIS 58801, at *11-12 (N.D. Cal. Aug. 2, 2007) (same).

### III.   No matter the disposition of *Facebook*, Discovery will be Necessary on the Dialing System Will be Necessary

Of course, engaging in discovery about the characteristics of the dialing system at issue will be required no matter how the Supreme Court might clarify the definition of ATDS.

Defendant has not offered any evidence that the system used is not an ATDS under any definition and absent discovery it is impossible for a plaintiff to know the technological capacities of the dialer used to place the call, and courts do not require plaintiffs to plead facts they have no way of knowing. Courts have acknowledged this nationwide. *See Shelton v. Nat'l Gas & Elec., LLC*, No. 17-4063, 2019 U.S. Dist. LEXIS 59235, at *32-34 (E.D. Pa. Apr. 5, 2019) ("[W]e cannot require a plaintiff to make allegations regarding the technical aspects of a device, including the precise level of human intervention needed to place a call, when he or she has no way of knowing those details prior to discovery."); *Wilson v. Quest Diagnostics Inc.*, No. 2:18-11960, 2018 U.S. Dist. LEXIS 212023, at *8-11 (D.N.J. Dec. 10, 2018) ("During discovery, the parties can explore the actual configuration of the dialing equipment used to call Plaintiff, as such evidence could shed light on whether Quest used a device capable of making autodialed calls"); *Battaglia v. Quicken Loans, Inc.*, No. 18-CV-1104, 2019 U.S. Dist. LEXIS 17782 at *5-6 (W.D.N.Y. Feb. 4, 2019) ("Holding plaintiffs to such a standard [to detail defendants' calling technology at the pleading stage] would make callers virtually immune to TCPA claims, which is clearly not what was intended by Congress is creating the TCPA.").

## CONCLUSION

The Court should deny Defendants' request to stay this case pending the Supreme Court's decision in *Facebook*.

>
> PLAINTIFF,
>
> By their attorneys
>
> */s/ Anthony I. Paronich*
> Anthony I. Paronich
> PARONICH LAW, P.C.

8

>350 Lincoln Street, Suite 2400
>Hingham, MA 02043
>(508) 221-1510
>anthony@paronichlaw.com
>
>THE LAW OFFICE OF MATTHEW P. MCCUE
>1 South Avenue, Suite 3
>Natick, MA 01760
>Telephone: (508) 655-1415
>mmccue@massattorneys.net
>
>Alex M. Washkowitz
>Jeremy Cohen
>CW LAW GROUP, P.C.
>188 Oaks Road Framingham, MA 01701
>alex@cwlawgrouppc.com
>
>Edward A. Broderick
>BRODERICK LAW, P.C.
>99 High St., Suite 304
>Boston, MA 02110
>Telephone: (617) 738-7080
>ted@broderick-law.com

Dated: August 27, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2020, I electronically transmitted the foregoing to all counsel of record via the electronic filing system.

>By: */s/ Anthony I. Paronich*
>  Anthony I. Paronich