UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH MANTHA, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>QUOTEWIZARD.COM, LLC,<br><br>Defendant. | Civil Action No. 1:19-cv-12235-LTS<br><br>Leave to File Granted on<br>September 4, 2020 |

### DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO ITS MOTION TO STAY COUNT 1

Defendant QuoteWizard.com, LLC ("QuoteWizard") respectfully submits its Reply to Plaintiff Joseph Mantha's ("Plaintiff") Opposition to its Motion to Stay Count 1 pending a decision in *Facebook, Inc. v. Noah Duguid, et al.*, No. 19-511 (U.S. Supreme Court) ("*Duguid*"). QuoteWizard briefly addresses the below points raised by Plaintiff in his Opposition:

**(1)** ***Plaintiff's Number Was Not Randomly or Sequentially Generated.*** In an unfounded attempt to create a factual issue surrounding QuoteWizard's Motion to Stay, Plaintiff suggests that it remains unclear whether his telephone number was randomly or sequentially generated and contends that he will need discovery to discern this. *See* Opp. [ECF No. 91], pp. 7-8. QuoteWizard can unequivocally represent to the Court that it provided Plaintiff's number to its agent that sent the text messages, Drips Holdings, LLC, only after QuoteWizard purchased Plaintiff's lead and consent to contact him. The number was not randomly or sequentially generated by Drips when sending the texts messages. Moreover, the same is true for all putative class members. This is not a genuinely disputed point in this litigation.

Because Plaintiff's number and those of the putative class were not randomly or sequentially generated by Drips but specifically provided to Drips by QuoteWizard after receiving consent to contact them, Plaintiff's Count 1 and Class 1 will fail if the U.S. Supreme Court finds that an "ATDS" requires the dialed numbers to be randomly or sequentially generated.

**(2)** *Alleged Destruction of Class Records*. Plaintiff contends that Count 1 should not be stayed because of the "potential destruction of" putative class records. Opp., p. 5. Plaintiff has no basis to assert a fear of non-preservation, much less destruction, of putative class records in this case. Plaintiff has been specifically and repeatedly assured by Drips, which has text message records for the putative class, that it is preserving putative class records for this case. *See* Exhibit 1 – *E-mail from Drips's Counsel Confirming Preservation*.

The only other alleged prejudice that Plaintiff can identify is his implausible claim that a stay would unfairly delay his sought-after monetary recovery. *See* Opp., pp. 4-5. Plaintiff has alleged a bare statutory violation only and seeks a *de minimus* $500 in statutory damages only, which he seeks to treble. Plaintiff alleges no actual damages for which he seeks to be recompensed. His pursuit of *de minimus* statutory damages does not justify a denial of QuoteWizard's common sense, well-supported request for a short stay of one claim.

This is contrasted with the very real and very substantial prejudice that would result if Count 1 is not stayed. To the extent that Count 1 reaches the class certification stage, QuoteWizard will be forced to expend substantial resources to both compile necessary records (including to demonstrate consent to contact the putative class members) and to oppose class certification, substantial resources it can never get back once expended. If a class is certified on Count 1 and the Supreme Court later holds that an ATDS does not extend to stored numbers that are

automatically dialed, all of the proceedings would have to be unwound, including any class certified for Count 1, a disastrous and expensive result for all involved.

**(3)** *Rosenberg v. LoanDepot.com LLC is Inapposite.* Plaintiff proffers *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 317 (D. Mass. 2020), as presenting the "same" or "similar analysis" purportedly justifying a denial of QuoteWizard's Motion to Stay. Opp., p. 3. In *Rosenberg*, the Court (Gorton, J.) considered a request to stay pending a ruling from the Federal Communications Commission ("FCC") that was not at all imminent, *not* an imminently forthcoming decision from the U.S. Supreme Court. *Id*. at 315-16. These distinctions make all the difference. *See id*. (noting that, at most, "enlightened FCC guidance might prove useful").[1]

Moreover, another crucial distinction in *Rosenberg*, as the Court made express note of, was that the FCC ruling at issue was not immediately forthcoming; as such, the requested stay was "indeterminate." *Id*. at 317 ("The FCC has begun the process of notice and comment rulemaking, yet robust agency rulemaking is a protracted process which can take years. Even after the FCC issues a final rule it will likely be subject to legal challenge, resulting in further motions to stay. If the Court were to grant Loan Depot's motion it would result in an indefinite stay which mitigates against application of the primary jurisdiction doctrine."). In contrast, here, QuoteWizard has requested a stay of a short, definite time period—until such that that the U.S. Supreme Court issues a decision in *Duguid*, which will almost certainly occur before the end of June 2021.

Finally, another critical distinction is that, in *Rosenberg*, the movant had moved to stay the entirety of the action, not just the claim at issue. *See id.* at 315-16. This is what prompted Judge Gorton to note that a stay was not appropriate if the FCC ruling would only affect one of multiple

---

[1] Under the Administrative Procedure Act, the FCC's rulings may be challenged and overturned by federal courts. In contrast, under the doctrine of *stare decisis*, generally, once the U.S. Supreme Court decides an issue of law, it remains the law.

claims to be stayed. *Id*. at 317. In contrast, here, QuoteWizard has not moved to stay Count 2 in recognition that the claim is unaffected by *Duguid*. Therefore, Count 2 can continue uninterrupted during the requested stay,

       *(4)*    ***Only Very Limited Discovery Would Be Stayed, Which Would be Rendered Moot by Duguid.*** Plaintiff also inaccurately suggests that QuoteWizard is seeking to limit discovery to "one claim" (Count 2) as a result of the requested stay. *See* Opp., p. 2. This is simply not true. The Parties have already engaged in substantial discovery concerning Plaintiff's consent/invitation/permission to be contacted, which applies to both pending claims. That discovery remains ongoing and would remain ongoing even during a stay of Count 1. In other words, the requested stay would have no impact on the discovery that is occurring with respect to both claims.

      Moreover, if Plaintiff's Count 2 is not dismissed at the summary judgment stage, class discovery would proceed on the same track whether or not Count 1 is stayed. Although putative Class 2 would be slightly circumscribed compared to putative Class 1 (since Class 2 would include only persons who were on the Do Not Call Registry), all other aspects of class discovery would be identical for both claims and both putative classes, meaning that class discovery—if the case proceeds to that stage—would proceed undeterred by the stay.

      Thus, the *only* discovery that would be stayed if the Court grants QuoteWizard's motion is discovery into the technology used by Drips to send the text messages—in turn, bearing on whether an alleged ATDS was actually used. But as QuoteWizard has pointed out, this becomes moot if the Supreme Court decides that "ATDS" excludes scenarios where dialed numbers were not randomly or sequentially generated, as was the case here.

*(5)     **Plaintiff Has Exaggerated Length of Requested Stay.***  Plaintiff claims that QuoteWizard has requested a stay that could last "a year." Opp., pp. 2, 4. This is not accurate. The Supreme Court typically issues all decisions for a term by the end of June, meaning that a decision will issue by June 2021, but possibly earlier since *Duguid* will likely be argued in the fall or winter of 2020. It is almost certain that the stay of Count 1 will be significantly less than a year.

*(6)     **Duguid Presents the Exact Same Fact Pattern and Exact Legal Issue.***  Plaintiff inaccurately contends that QuoteWizard is "specul[ating]" that *Duguid* "may possibly impact" this case. Opp., p. 3. To the contrary, the basic facts show that *Duguid* presents the *exact* same factual scenario here (the text messages in *Duguid* (like those here) were sent using a system to target specific individuals at specific phone numbers for specific business purposes). The basic facts also show that *Duguid* presents the *exact* same legal issue that this Court would have to resolve in the face of conflicting Circuit decisions on which the First Circuit has not weighed in ("Whether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'").

QuoteWizard's request for a stay is not reflexive; is not made lightly; is not one-size-fits-all; is not based on speculation; and is not made to delay the case. To the contrary, QuoteWizard genuinely believes that a stay of Count 1 for the short amount of time it will take the Supreme Court to issue its ruling only benefits both parties and the Court. There is no reason for this Court to engage in expensive, contested, drawn out proceedings regarding the definition of an ATDS under the TCPA when the same proceedings are occurring in the Supreme Court and the Supreme Court will issue its binding decision shortly.

[*Signatures on Next Page*]

<table>
<tr><td></td><td>Respectfully submitted,<br><br>QuoteWizard.com, LLC,<br>By its attorneys,<br><br><br>*/s/ Christine M. Kingston*<br>Kevin P. Polansky (BBO #667229)<br>kevin.polansky@nelsonmullins.com<br>Christine M. Kingston (BBO #682962)<br>christine.kingston@nelsonmullins.com<br>Nelson Mullins Riley & Scarborough LLP<br>One Post Office Square, 30th Floor<br>Boston, MA 02109<br>(t) (617)-217-4700</td></tr>
<tr><td>Dated: September 8, 2020</td><td>(f) (617) 217-4710</td></tr>
</table>

CERTIFICATE OF SERVICE

I, Christine M. Kingston, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: September 8, 2020                                                                    */s/ Christine M. Kingston*