UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH MANTHA, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>QUOTEWIZARD.COM, LLC,<br><br>Defendant. | Civil Action No. 1:19-cv-12235-LTS |

### DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER DENYING MOTION TO STAY COUNT 1 PENDING U.S. SUPREME COURT CASE [ECF No. 101]

Now Comes Defendant QuoteWizard.com, LLC ("QuoteWizard"), pursuant to Federal Rule of Civil Procedure 72(a),[1] and hereby files its Objections to the Order of Chief Magistrate Judge M. Page Kelley [ECF No. 101] denying QuoteWizard's Motion to Stay Count 1 of Plaintiff Joseph Mantha's ("Plaintiff") Amended Complaint pending the resolution of *Facebook Inc. v. Duguid* (Case No. 19-511) in the U.S. Supreme Court [ECF Nos. 86-87], as both contrary to law and clearly erroneous.

QuoteWizard specifically objects to the portions of the Order that: (1) found that QuoteWizard was required to show a "clear case of [] hardship" to stay Count 1; (2) credited Plaintiff's bare, generalized, and unsupported allegation that evidence would be lost if a stay is granted; (3) did not apparently consider or weigh the interests of QuoteWizard, the Court, or a

---

[1] Rule 72(a), which relates to nondispositive orders issued by Magistrate Judges, provides that "[a] party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

non-party in ruling on the Motion; and (4) found that, if a stay was granted, discovery would be conducted only on one claim and would have to "begin[] again" if the stay was lifted.  *See* ECF No. 101.

First, QuoteWizard respectfully submits that an incorrectly onerous standard was applied to its request for a partial stay.  The law does not impose a general burden on the movant to show a "clear case of [] hardship."  Rather, the movant must only make a showing of hardship "'if there is a danger that the stay *will damage the other party*.'"  *Amersham Int'l v. Corning Glass Works*, 108 F.R.D. 71, 72 (D. Mass. 1985) (emphasis added) (quoting *Austin v. Unarco Indus.*, 705 F.2d 1, 5 (1st Cir. 1983)).  *See also Landis v. N. Am. Co*., 299 U.S. 248, 255, 57 S. Ct. 163, 166, 81 L. Ed. 153 (1936) (referencing hardship only in the event stay would "work damage to some one else.").  Plaintiff did not articulate any actual damage or prejudice that would result from a brief stay of Count 1.  Rather, in his Opposition, Plaintiff's counsel claimed that "[a]ny delay creates the risk the evidence Plaintiff needs to prevail on his claim will be destroyed, lost, corrupted, or forgotten."  ECF No. 91, p. 5.

But, critically, Plaintiff's counsel neither identified the type or nature of evidence that would be allegedly lost, nor substantiated this generalized speculation with any proof.  On the other hand, QuoteWizard submitted evidence that the party holding the pertinent evidence on Count 1, Drips Holdings, LLC ("Drips")—*i.e.* evidence that would bear on whether Drips used an "ATDS" to send the text messages as well as class records concerning consumers contacted— confirmed in writing preservation of this evidence.  *See* ECF No. 95-1.[2]  Plaintiff's counsel also confirmed during a telephone conference with QuoteWizard's counsel that fear of

---

[2] This exhibit, an e-mail from Drips's counsel confirming preservation of individual and putative class records, was attached to the proposed Reply filed with the motion for leave, *see* ECF No. 95-1 (Ex. A), although it was inadvertently not re-attached when the Reply was filed outright after leave was granted, *see* ECF No. 97.

non-preservation was an argument raised by Plaintiff's counsel in all putative class cases like this one and not generalized to this case at all.

Thus, QuoteWizard respectfully submits that the Order both applied an incorrectly onerous standard (requiring a showing of a clear hardship despite Plaintiff failing to make any showing of harm or damage) and improperly credited Plaintiff's generalized, non-substantiated, and incorrect fear that evidence on Count 1 would be lost or destroyed. The standard that should have been applied is much less onerous; it requires that the movant show a "need" for a stay, which QuoteWizard has demonstrated here—not the least to avoid a potentially incorrectly certified class on Count 1. *See Clinton v. Jones*, 520 U.S. 681, 708, 117 S. Ct. 1636, 1651, 137 L. Ed. 2d 945 (1997) ("The proponent of a stay bears the burden of establishing its need.").

In addition, QuoteWizard objects to the Magistrate Judge's Order based on the failure to consider and weigh the interests of QuoteWizard and the Court at all. Only Plaintiff's alleged interests were expressly credited and weighed. The interests underlying QuoteWizard's request for a stay were not mentioned, considered, or balanced against Plaintiff's bare assertion of non-preservation. As the Supreme Court has explained, it is within the discretion of the Court to grant a stay after consideration of the competing interests of the parties. *See Landis*, 299 U.S. at 254. The determination of whether to grant a stay is made through "the exercise of judgment, which *must weigh competing interests and maintain an even balance*." *Id*. at 254-55 (emphasis added).

QuoteWizard identified significant interests of QuoteWizard, the Court, and non-party Drips that supported its request for a stay. QuoteWizard and the Court's overlapping interests include avoiding the significant undue burden and expense of concluding discovery on Count 1,

briefing and deciding a summary judgment motion thereon,[3] and then (if necessary) briefing and considering class certification on the putative Class 1, while the U.S. Supreme Court is considering a case that could moot Plaintiff's Count 1 in total. If this was simply an individual rather than putative class case, the burden would obviously be less significant, and it would be less difficult to unwind a judgment if rendered incorrect by the Supreme Court's eventual decision. But in the absence of a stay, and if the Supreme Court decides in favor of the petitioner Facebook Inc., this Court would be faced with the unwinding of a class if ultimately certified. This alone justifies the stay. Moreover, non-party Drips has a considerable interest in the stay as well; if the stay is granted and the Supreme Court finds in favor of Facebook Inc., Drips does not have to engage in the costly individual and putative class discovery that Plaintiff has requested of it, which is almost certainly going to include a deposition. The Order also did not appear to weigh the very short time period of the requested stay. Indeed, the *Duguid* case has now been scheduled for oral argument on December 8, 2020.

The Order does not discuss and does not weigh these competing interests as required, including but not limited to the Court's interests in conserving significant resources in deciding the individual merits of Count 1 and class certification thereon. As one court has explained, it is not a "novel proposition that a stay will most likely be granted in situations likely to conserve judicial and party time, resources, and energy." *Diomed, Inc. v. Total Vein Sols., LLC*, 498 F. Supp. 2d 385, 387 (D. Mass. 2007). Therefore, courts generally consider the impact of the stay on

---

[3] No matter how the U.S. Supreme Court decides *Duguid*, there will be a benefit to the Parties and to the Court: the resolution of an issue of law that is unsettled and, to date, undecided in the First Circuit. If a stay is not granted, the Parties will have to expend substantial resources to brief this exact issue of law, which the Court will have to then decide without any guidance from the First Circuit and in the face of a Circuit split. There is no need or basis to undergo this process when the Supreme Court will shortly decide the issue. By granting a stay of Count 1, the Court can "avoid a duplication of efforts and a waste of judicial time and resources." *SEC v. Shkreli*, 2016 WL 1122029, at *6 (E.D.N.Y. Mar. 22, 2016) (citation omitted).

its interests as well as the parties' interests.  *See also Doe v. Indyke*, 2020 U.S. Dist. LEXIS 168258, at *14-15 (S.D.N.Y. Sep. 14, 2020) (expressly considering interests of the Court in considering a request for stay and finding that those interests, including reducing number of issues to be decided by Court, weighed in favor of stay); *Sec. & Exch. Comm'n vs. Blaszczak*, 2018 WL 301091, at *3 (S.D.N.Y. Jan. 3, 2018) ("The fifth factor—the interests of the Court—weighs in favor of the partial stay. … [T]he Court's interest in efficient use of judicial resources[]is best served by granting the Government's motion for a partial stay." (internal quotation marks and citation omitted)).  If the Court does not outright vacate the Order and grant the motion for a stay, QuoteWizard respectfully requests, at a minimum, the consideration and weighing of all interests involved.

Furthermore, QuoteWizard objects to the portion of the Order suggesting that a stay is not appropriate because it is partial only.  Other courts have cited an appropriately tailored, partial stay as a reason to *grant* the request, not deny it.  For example, in *Sec. & Exch. Comm'n vs. Blaszczak*, 2018 WL 301091, at *3, the Court noted that the burden on the defendants as a result of the stay would be "particularly light in this case" because the movant "sought … only a partial stay of discovery."  The Court noted that, as a result, the defendants were not deprived of the right to defend themselves with respect to the remainder of the action, and free in the meantime to take discovery on other information.  *Id*.

Finally, QuoteWizard objects to the portion of the Order finding that "[c]onducting discovery on one claim while waiting for the decision in *Duguid*, and then beginning discovery again after the decision some time in 2021, would be inefficient."  ECF No. 101.  A stay would not affect discovery in this manner.  Plaintiff has not disputed QuoteWizard's position that a stay would affect only a small subset of individual discovery: the type of technology used by Drips to

send text messages to Plaintiff. All other individual and class discovery would proceed the same—for example, the issue of Plaintiff's consent to be contacted (which has been subject to discovery for this entire time period and will continue); class discovery (as class discovery on putative Class 2 would be the same as Count 1, as they both involve consumers contacted by Drips on behalf of QuoteWizard); and other ancillary issues. Moreover, on that small subset of discovery—the type of technology used by Drips—Drips has already responded to Plaintiff's non-party subpoena. Therefore, there would be no discovery inefficiencies created by the requested stay. If the stay is granted and Count 1 is not mooted by *Duguid*, only a very small amount of discovery on Count 1 individually, if any, would remain at that time.

WHEREFORE, QuoteWizard respectfully requests that this Court set aside the Order [ECF No. 101] and grant QuoteWizard's Motion for a Stay, or allow reconsideration of the Motion on the proper balancing of the interests identified by QuoteWizard, or at a minimum deny the Motion without prejudice to renewal after the close of Phase I discovery, as was done in T*iefenthaler v. Target Corporation*, 19-cv-12412-RWZ, ECF No. 29.

> Respectfully submitted,
>
> QuoteWizard.com, LLC,
> By its attorneys,
>
> */s/ Christine M. Kingston*
> Kevin P. Polansky (BBO #667229)
> kevin.polansky@nelsonmullins.com
> Christine M. Kingston (BBO #682962)
> christine.kingston@nelsonmullins.com
> Nelson Mullins Riley & Scarborough LLP
> One Post Office Square, 30th Floor
> Boston, MA 02109
> (t) (617)-217-4700
> (f) (617) 217-4710

Dated: September 24, 2020

## CERTIFICATE OF SERVICE

      I, Christine M. Kingston, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: September 24, 2020                       */s/ Christine M. Kingston*