JOSEPH MANTHA, *on behalf of himself*
*and all others similarly situated*,

        Plaintiff,

v.

QUOTEWIZARD.COM, LLC,

        Defendant.

Civil Action No. 1:19-cv-12235-LTS-PK

## JOINT LETTER REPORT CONCERNING DISPUTE OVER DEFENDANT'S SECOND RESPONSE FOR PRODUCTION OF DOCUMENTS

Pursuant to the Court's instructions at the Status Conference on April 7, 2020 (*see* ECF

No. 39), Plaintiff Joseph Mantha ("Plaintiff") and Defendant QuoteWizard.com, LLC

("QuoteWizard") (together, the "Parties") hereby respectfully submit a Joint Letter Report

concerning their respective positions on a discovery dispute that has arisen over QuoteWizard's

Response to Plaintiff's Second Request for the Production of Documents. The Parties, through

counsel, conferred pursuant to LR 7.1(a) by e-mail over several days and telephonically on

September 14, 2020.  The Parties have been unable to narrow or resolve their dispute as to the

requests and issues summarized below. For the Court's reference, the following documents are

attached hereto: **Exhibit A** (QuoteWizard's Response to Plaintiff's Second Request for the

Production of Documents, **Exhibit B** (QuoteWizard's Initial Privilege Log), **Exhibit C**

(QuoteWizard's Supplemental Privilege Log), **Exhibit D,** Email exchange between

QuoteWizard and its data vendor RevPoint regarding Mr. Mantha after Mr. Mantha complained

as to the texts at issue, **Exhibit E,** QuoteWizard's Rule 30(b)(6) deposition transcript, **Exhibit F,**

non-party RevPoint Media's Rule 30(b)(6) deposition transcript, **Exhibit G,** Plaintiff's Rule 45

subpoena to Drips Holdings, and **Exhibit H**, RevPoint's Supplemental Subpoena Response.

# I.     RECITATION OF APPLICABLE LAW

### A.  Plaintiff's Recitation[1]

In 1991, Congress enacted the TCPA to regulate the explosive growth of the

telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . .

can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L.

No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227). The TCPA makes it unlawful "to make

any call (other than a call made for emergency purposes or made with the prior express consent

of the called party) using an automatic telephone dialing system ("ATDS") or an artificial or

prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See*

47 U.S.C. § 227(b)(1)(A)(iii). *See* 47 U.S.C. § 227(b)(3). Here, Mr. Mantha alleges in the

Amended Complaint that QuoteWizard, using a third party called Drips, sent him unsolicited text

telemarketing messages via an ATDS in violation of the TCPA.

The TCPA also strictly regulates telemarketing to phone numbers listed on the National

Do Not Call Registry ("DNC"). *See* 47 U.S.C. § 227(c)(1). Mr. Mantha received the unsolicited

---

[1] A telemarketer who claims it had consent to telemarket to a particular consumer bears the burden of proof, and must maintain records that prove such a claim. The FCC has cautioned that a telemarketer claiming consent "must be prepared to provide clear and convincing evidence of the existence of such a relationship." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* FCC 03-153 at ¶112, -- FCC Rcd. --, 2003 WL 2157853, 2003 FCC LEXIS 3673 (July 3, 2003) (emphasis added). The FCC has longed warned "should any question about the consent arise, the seller will bear the burden of demonstrating that a clear and conspicuous disclosure was provided and that unambiguous consent was obtained. *See* In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 27 FCC Rcd 1830 at ¶112; 2012 FCC LEXIS 794 (Feb. 12, 2012).

telemarketing texts at issue on his personal cell phone long listed on the DNC in violation of the TCPA.

The TCPA provides for statutory damages that may be trebled if the conduct at issue was "knowing or willful." *See* 47 U.S.C. § 227(b)(c). While a finding of willfulness under the TCPA does not require bad faith, it does require that the caller "have reason to know, or should have known, that his conduct would violate the statute. *See Krakauer v. Dish Network L.L.C.*, No. 1:14-CV-333, 2017 U.S. Dist. LEXIS 77163 at *26 (M.D.N.C. May 22, 2017) (trebling a $20 million jury award against Dish Network for illegal telemarketing calls made by an agent and recounting Dish's knowledge of prior complaints against its dealer for TCPA violations).

The parties disagree as to whether Mr. Mantha is entitled to pursue discovery in support of his individual claim that QuoteWizard's conduct was knowing or willful. QuoteWizard broadly objects to a number of discovery requests in regards to prior complaints, investigations, compliance and Do Not Call requests under the guise that such requests have no relevance, are overbroad, not proportional, privileged or in violation of the privacy rights of other complaining consumers. These requests are relevant as they go directly to the issue as to whether QuoteWizard's violation of the TCPA as to Mr. Mantha's individual claim was knowing or willful, and is thus a subject appropriate for discovery in Phase I.

The parties additionally dispute whether Mr. Mantha is entitled to certain discovery as to QuoteWizard's assertion of a "safe harbor" defense as to Mr. Mantha's DNC claim. A "safe harbor" defense is available under the TCPA to telemarketers who inadvertently make calls to consumers listed on the DNC Registry only if certain statutorily mandated requisites are satisfied. *See* 47 C.F.R. §1200. To be entitled to such a defense, a telemarketer must demonstrate:

- The violation at issue was the result of an error;

- That as part of its routine business practice it has established and implemented written procedures to comply with the TCPA;

- That it has trained personnel, and any entity assisting in its compliance;

- That it maintains a list of numbers that are not to be contacted;

- That it uses a process to ensure that numbers on the DNC are not called;

- That it obtained the complaining consumers prior express consent signed and in writing stating that the agreement agrees to be called by the particular calling seller.

*See* 47 C.F.R. §1200 (c)(2)(i)-(iii). The safe harbor defense, however, cannot be used as a sword and shield. A defendant who claims 'safe harbor" cannot withhold from discovery documents, for example, relating to Do Not Call requests, TCPA complaints, investigations as to telemarketing complaints and responses to telemarketing complaints under a claim of attorney client or work product privilege. In fact, federal courts have ruled on this precise question in TCPA cases, holding that a defendant's assertion of safe harbor defense puts the defendant's compliance at issue and waives the attorney-client privilege for communications pertaining to that defense. *See United States v. Dish Network, LLC*, 283 F.R.D. 420, 424 (C.D. Ill. 2012) (*Dish I*); *see also United States v. Dish Network, LLC*, No. 09-3073, --- F. Supp. 3d ---, 2014 WL 7013223, at *16–17 (C.D. Ill. Dec. 11, 2014) (*Dish II*) (adopting magistrate judge's reasoning and conclusions regarding waiver of privileges in context of a safe harbor claim); *Twigg v.Pilgrim's Pride Corp.*, No.05-00040, 2007 WL 676208, at *9 (N.D.W. Va. Mar. 1, 2007) (defendant's assertion of good faith defense under Family and Medical Leave Act waived attorney-client privilege and work-product protection regarding good faith compliance).[2]

---

[2] QuoteWizard also claims it is entitled to a defense of "good faith." *See* ECF#89, QuoteWizard's Amended Answer at Affirmative Defense Thirteen, Twenty-One. Although such a defense does not exist under the TCPA, consumer telemarketing complaints, Do Not Call

QuoteWizard broadly objects to a number of discovery requests in regards to prior complaints, investigations, compliance and Do Not Call requests claiming that such requests have no relevance, are overbroad, not proportional, privileged or in violation of the privacy rights of other complaining consumers. These requests are relevant as they go directly to the issue of safe harbor and good faith as to Mr. Mantha's individual claim and is thus a subject appropriate for discovery in Phase I.

### B. QuoteWizard's Position

QuoteWizard does not believe that an independent "recitation" of the law is necessary or appropriate for the Court to resolve this dispute. Where case law is relevant to or informs a particular dispute below, it is expressly cited within QuoteWizard's sections.

## II. RECITATION OF RELEVANT BACKGROUND FACTS

### A. Plaintiff's Recitation

Plaintiff filed this TCPA class action on October 29, 2019, after he received unsolicited telemarketing texts on his personal cell phone from QuoteWizard. *See* Complaint, ECF#1. The substance of the texts offered to sell auto insurance. *Id.* The texts at issue were delivered by a third party called Drips, LLC ("Drips") using auto-bot technology that Drips itself claims "holds over 1,000,000 humanized automated engagements per day." *See Amended Complaint,* ECF #80. QuoteWizard responded to the Complaint by threatening plaintiff's counsel with Rule 11 sanctions for filing a frivolous lawsuit. QuoteWizard claimed that Mr. Mantha had consented to receive its texts and it was in possession of proof of such consent. Mr. Mantha

---

requests, and QuoteWizard's investigation into and response to telemarketing complaints would also be clearly relevant to whether or not QuoteWizard's telemarketing texts to Mr. Mantha were made in a "good faith" belief that Mr. Mantha consented to receive such texts or they were otherwise compliant with the TCPA.

responded to the Rule 11 threat by attesting under oath that he never consented to receive QuoteWizard's texts. *See* ECF #70, 73 and 78.

Thereafter, the parties proceeded to a Rule 16 conference with Judge Sorokin. At that hearing, QuoteWizard represented to the Court that it was prepared to move for summary judgment "today" as to its consent defense. In response, and in apparent reliance on QuoteWizard's representation, Judge Sorokin ruled that discovery would be limited as to both time and scope to focus solely on the consent defense. *See* ECF #60. Discovery taken over the course of the next few months was devastating to QuoteWizard's consent defense. For example, the IP addresses QuoteWizard claimed were used by Mr. Mantha to consent to receive QuoteWizard's texts via a web site called www.snappyautoinsurance.com did not connect to Mr. Mantha. The Jornaya Lead ID that QuoteWizard claimed confirmed Mr. Mantha's consent to receive its texts was ultimately shown to have no connection whatsoever to Mr. Mantha. The purported original source of Mr. Mantha's data, Adam Brown, ultimately denied having any knowledge whatsoever of Mr. Mantha or selling his data to anyone. *See* ECF #70, 73 and 78.

Undaunted, however, by the collapse of its consent defense, QuoteWizard changed course and requested that discovery be allowed to proceed as to all issues relating to Mr. Mantha's individual claim, and not be limited to consent. The Court complied, while at the same time it agreed with QuoteWizard and continued to limit Mr. Mantha's ability to pursue class discovery or to otherwise confirm the scope of QuoteWizard's suspected TCPA violations. *See* ECF #75.

Thereafter, QuoteWizard proceeded to aggressively pursue extensive discovery from Mr. Mantha. It deposed Mr. Mantha over a period of two days, deposed his wife and friend who advised him of his rights under the TCPA, and deposed his employer. It served Mr. Mantha

with over thirty interrogatories, several requests for admissions and a total of forty eight individual document requests. Further, in a pending motion, QuoteWizard claims it is entitled to ***full access*** to a copy of Mr. Mantha's computer systems and cell phone- and apparently all of the confidential and sensitive information on these systems with absolutely no connection to this case- a claim to which Mr. Mantha opposes. *See* ECF #83 and #90

Finally, e-mail correspondence between Matthew Weeks of QuoteWizard and Mike Fishman of RevPoint, its data vendor from whom it purchased Mr. Mantha's number, revealed that- *by QuoteWizard's own admission*- the data sold by RevPoint to QuoteWizard relating to Mr. Mantha was "missing a lot of the stuff they look for and want for TCPA compliance" but that Mr. Weeks would "do my best to fill in the blanks for you with this lead**."** *See* Exhibit D, E-Mail exchange dated September 16, 2018, between QuoteWizard and RevPoint. QuoteWizard initially refused to produce these e-mails claiming they were "work product" and listed the e-mails on its original Privilege Log, attached at Exhibit B. QuoteWizard only agreed to produce these e-mails after Mr. Mantha filed a Motion to Compel. *See* ECF #78.

Unbeknownst to Plaintiff's counsel until recently, the post complaint effort to "fill in the blanks," apparently, not only included Mr. Weeks- but it also included in-house counsel for QuoteWizard. On September 3, 2020, QuoteWizard produced a supplemental Privilege Log, attached at Exhibit C, disclosing for the first time that Eryn Linkous Bennett, Counsel to Lending Tree, the parent corporation of QuoteWizard, was involved in additional e-mail communications involving both Mr. Weeks of QuoteWizard and Mr. Fishman of RevPoint during the time that QuoteWizard was trying to "fill in the blanks" as to the consent evidence relating to Mr. Mantha. *See* Exhibit C. QuoteWizard has refused to produce these communications involving Ms. Bennett claiming they are "work product." *Id.*

As detailed below, while inundating Mr. Mantha with discovery requests, as to his individual claim it was purportedly ready to move for summary judgment on months ago, QuoteWizard has refused to comply with its own discovery obligations, hiding behind extensive claims of privilege, relevance, breadth and proportionality, while at the same time claiming its conduct was not knowing and willful, and that it is entitled to assert fact intensive affirmative defenses relating to consent, willful or knowing conduct, safe harbor and good faith.

**B. QuoteWizard's Position**

QuoteWizard does not believe that an independent "recitation" of the parties' viewpoints of the factual or procedural background of the case is necessary or appropriate for the Court to resolve this dispute. Where QuoteWizard's position on the same is relevant to or informs a particular dispute below, it is expressly noted below within QuoteWizard's sections.

### III.    THE DISPUTES AT ISSUE

The disputed discovery requests and responses are set forth below along with the respective position of each party:

RPD #5: Produce all contracts between You and the insurance companies that you would have obtained a "quote on auto insurance" from as referenced in the texts between QuoteWizard and Plaintiff.

**RESPONSE:** QuoteWizard objects to this Request as confusing and unintelligible as written. QuoteWizard further objects insofar as Plaintiff is seeking contracts between QuoteWizard and unidentified "insurance companies" because this request is not relevant to any claim or defense herein, not proportional to the needs of the case, and on the ground that it seeks confidential and proprietary information. Pursuant to these objections, no documents are being produced.

A. **Plaintiff's Position**: QuoteWizard claims its texts to Mr. Mantha are not subject to the TCPA's Do Not Call provisions because they were not solicitations for the sale of goods or services. The texts at issue sought to sell Mr. Mantha auto insurance on behalf of unknown entities. QuoteWizard's contracts with these entities are relevant as they may evidence, or lead to evidence relevant to whether or not QuoteWizard's texts to Mr. Mantha sought to sell goods or services. These contracts are also relevant as to whether QuoteWizard's text campaign was

knowing and willful an issue relevant to treble damages under the TCPA.

B. **QuoteWizard's Position:** This request is not relevant to any claim or defense in this action, including whether the text messages sent to Plaintiff constituted telephone solicitations within the meaning of the TCPA. Telephone solicitations are defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(14). In determining whether a communication is a telephone solicitation, courts consider the substance of the communications, using a measure of common sense. *See, e.g.*, *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012).

The text messages to Plaintiffs, of which he has copies, speak for themselves. QuoteWizard has never denied that the text messages have a commercial backdrop; naturally, QuoteWizard operates as a business. But QuoteWizard denies that the text messages at issue are telephone solicitations because QuoteWizard does not directly sell insurance to consumers, but rather is merely the matchmaker between consumers interested in insurance and insurance companies. There are no disputed facts around this business model or as it was applied to Plaintiff. QuoteWizard sought to provide information to Plaintiff that could have facilitated the purchase of insurance by and between Plaintiff and an insurance company, not by and between QuoteWizard and Plaintiff. Whether the text messages constitute telephone solicitations is a mixed question of fact and law for the Court to decide at summary judgment or for trial, focusing on this "matchmaking" role played by QuoteWizard.

Moreover, to the extent that Plaintiff believed that QuoteWizard's business model for purchasing leads and contacting consumers was somehow relevant to the issue of whether the text messages sent to Plaintiff qualify as telephone solicitations, he could have deposed QuoteWizard on this point, or can identify it as a topic of examination at QuoteWizard's yet-to-be-taken second deposition.

Even if the requested documents were relevant, which they are not, this imposes an unduly burdensome request on QuoteWizard that is also not proportional to the needs of the case. Plaintiff appears to seek confidential and proprietary contracts by and between QuoteWizard and any and all insurance companies which it sells consumer leads to, not limited in time or scope, while simultaneously acknowledging that no such contract is directly applicable to Plaintiff's lead. Therefore, Plaintiff's request actually seeks each and every contract that QuoteWizard has with insurance companies, not applicable to Plaintiff in particular, all in a purported attempt to discern something that can be discerned from the content of the text messages themselves or (at maximum) during re-deposition. QuoteWizard requests that the Court overrule the request.

RPD #7. Produce all contracts or documents representing your agreement with Drips in effect as of the dates of the transmission of the texts at issue to the Plaintiff.

**RESPONSE:** QuoteWizard objects to this Request on the grounds that it is not relevant to any claim or defense herein, seeks confidential and/or proprietary information, and is unduly burdensome and not proportional to the needs of the case. QuoteWizard's contract with Drips is not relevant to any issue in this case and does not bear on Plaintiff's allegations of use of an ATDS. Pursuant to these objections, a copy of the contract will not be produced.

   A. **Plaintiff's Position:** Drips was the entity QuoteWizard hired to send telemarketing texts to Mr. Mantha. The contract between QuoteWizard and Drips will evidence the exact instructions provided to Drips as to the texts sent to Mr. Mantha. These instructions are relevant to whether QuoteWizard's alleged violation of the TCPA was knowing or willful, and element of Mr. Mantha's individual claim. The contract between Drips and QuoteWizard is also relevant to whether or not Drips used an automatic telephone dialing system when texting Mr. Mantha, or informed QuoteWizard of the potential use of such a system. The contract is relevant to whether QuoteWizard's alleged TCPA violations were knowing or willful, or if QuoteWizard is entitled to a safe harbor defense, or a good faith defense.

   B. **QuoteWizard's Position**: The contract between QuoteWizard and Drips is not relevant to "whether QuoteWizard's alleged violation of the TCPA was knowing or willful." That is not an element of Plaintiff's TCPA claim but rather a required showing for treble TCPA statutory damages. Moreover, the contract does not bear on that issue whatsoever. QuoteWizard admits that it directed Drips to send the text messages at issue and that it had purchased Plaintiff's lead with consent to contact. Discovery has confirmed the same. Whether this constitutes willful/knowing conduct under the TCPA such to support a claim for treble damages is a legal question for the Court on which the Drips contract has absolutely no bearing.

   Nor is the contract relevant to whether Drips used an alleged ATDS. As QuoteWizard has informed Plaintiff's counsel, the contract does not discuss, identify, or otherwise bear on the technology that Drips uses. Moreover, that information can and should be sought from Drips directly. In fact, Plaintiff has issued a subpoena to Drips concerning that same information, *see* Ex. G, and can seek to depose Drips on that issue (which it signaled an intent to do) if it so wished. The request for the contract is both irrelevant and an unwarranted intrusion on QuoteWizard's confidential and proprietary contractual relations. QuoteWizard asks that the Court overrule and deny the request.

   In the event the Court rules that the contract must be produced, QuoteWizard notes that it would fall under the Parties' agreed-upon Confidentiality Order and would be produced as Confidential subject to that Order.

RPD #16. Produce all e-mails between You and RevPoint in any way relating to consumer telemarketing complaints of any nature.

**RESPONSE:** QuoteWizard objects to this Request on the grounds that it is not relevant in any way to any claim or defense in this case, is overly broad, unduly burdensome, not proportional to the needs of the case, and improperly seeks confidential information concerning other consumers. QuoteWizard further objects on the basis that is beyond the scope of Phase I discovery. *See* ECF No. 75. In addition, QuoteWizard objects because this information is protected by the work product doctrine. Pursuant to these objections, no documents are being produced.

    **A. Plaintiff's Position:** The request seeks emails exchanged with RevPoint, the broker from whom QuoteWizard obtained Mr. Mantha's contact data in regards to telemarketing complaints relating to QuoteWizard. Plaintiff suspects that Mr. Mantha is not alone and that many other consumers have received illegal telemarketing calls from or on behalf of QuoteWizard. RevPoint, as QuoteWizard's apparent lead data broker, is likely in possession of e-mails relating to telemarketing complaints other than Mr. Mantha's. Even as to Mr. Mantha's individual claim, the existence of prior complaints is relevant to whether or not QuoteWizard was on notice that it was telemarketing to consumers in violation of the TCPA. Whether QuoteWizard knew or should have known it was violating the TCPA is relevant to whether QuoteWizard's conduct was knowing or willful, and whether QuoteWizard is entitled to a "safe harbor" or a "good faith" defense, to the extent that such a defense even exists under the TCPA. E-mail communications between QuoteWizard and RevPoint, the entity from whom QuoteWizard purchased Mr. Mantha's data, as to other consumer telemarketing complaints is relevant to all this issues. Finally, the e-mail communications involving RevPoint and QuoteWizard's counsel, Ms. Bennett, as set forth in the Privilege Log attached at Exhibit C, should be produced in full as QuoteWizard cannot use work product to withhold relevant evidence while simultaneously claiming a safe harbor or good faith defense. QuoteWizard should not be allowed to "fill in the blanks" after the fact and then withhold evidence of such efforts. Further, to the extent the emails involving Ms. Bennett relate to facts and not litigation strategy or mental impressions, they are not entitled to work product protection. The purpose of the doctrine is to protect an attorneys' written materials and mental impressions prepared in anticipation of litigation. *See Vicor Corp. v. Vigilant Ins. Co.*, 674 F.3d 1, 15 (1st Cir. 2012). The privilege is "aimed centrally at protecting the *litigation process,* . . . specifically, work done by counsel to help him or her in *litigating* a case." *United States v. Textron Inc. and Subsidiaries,* 577 F.3d 21, 30-31 (1st Cir. 2009) (emphasis in original). QuoteWizard should be compelled to respond in full.

    **B. QuoteWizard's Position:** This request is not relevant to any claim or defense at issue in Phase I discovery and is, on its face, unduly burdensome, both vague and incredibly broad, and not proportional to the needs of the case.

Plaintiff first claims that the requested information is relevant to whether his alleged

TCPA statutory damages can be trebled on the ground that QuoteWizard knowingly and willfully violated the TCPA. Under the TCPA, the court has discretion to impose treble damages if the defendant's violation was "willful[] or knowing[]." *See* 47 U.S.C. § 227(b)(3)(C). Although those terms are not further defined, courts construe it to mean either that a defendant's actions were intentional (the more plaintiff-friendly interpretation), or that the defendant knew that its conduct violated the TCPA (the more defendant-friendly interpretation). *Compare Sengenberger v. Credit Control Servs., Inc.*, 2010 U.S. Dist. LEXIS 43874, 2010 WL 1791270, at *6 (N.D. Ill. May 5, 2010) (imposing treble damages because willfulness required "only that an action was intentional" and defendants did not contest that "any of the nine disputed phone calls were made willfully or knowingly" (citation omitted)), *with Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 899 (W.D. Tex. 2001) (treble damages were available because defendants "knew their conduct in fact did violate the TCPA"). Under *any* interpretation of that standard, "all e-mails between [QuoteWizard] and RevPoint in any way relating to consumer telemarketing complaints of any nature" is not relevant to that issue. The relevant facts are largely undisputed but in any event known to the parties: QuoteWizard purchased Plaintiff's lead with consent to contact him from RevPoint Media; pursuant to QuoteWizard's contract with RevPoint, RevPoint can only sell QuoteWizard leads that have consent to contact within the meaning of the TCPA; QuoteWizard caused text messages to be sent to Plaintiff given that it had actual or at a minimum apparent consent to contact; and Plaintiff responded to the texts, asked how he could get an auto insurance quote, and did not ask QuoteWizard to stop contacting him or otherwise opt out. These are the facts that will be relevant to the "knowing/willful" inquiry if the Court reaches it (QuoteWizard denies that there was any violation of the TCPA such that statutory damages can be awarded, much less trebled). The existence or content of "telemarketing complaints" from other consumers cannot possibly bear on the issue of whether QuoteWizard violated the TCPA as to Plaintiff and whether its alleged violation as to Plaintiff was knowing or willful.

Plaintiff also suggests that the requested documents are "relevant to whether or not QuoteWizard was on notice that it was telemarketing to consumers in violation of the TCPA. Whether QuoteWizard knew or should have known it was violating the TCPA is relevant to whether QuoteWizard's conduct was knowing or willful, and whether QuoteWizard is entitled to a 'safe harbor' or a 'good faith' defense, to the extent that such a defense even exists under the TCPA."

However, documents relating to other consumers, as noted, cannot possibly be relevant to QuoteWizard's conduct towards Plaintiff specifically, the focus of Phase I discovery in this case. QuoteWizard contacted Plaintiff by text message with consent to contact that it purchased from RevPoint. Whether or not Plaintiff disputes the validity of his consent, QuoteWizard at all times believed that it had consent to contact and acted consistently with the same, and Plaintiff never responded to the text messages by "opting out." Rather, Plaintiff solicited further information. Simply put, the facts necessary to decide Plaintiff's individual claims and QuoteWizard's defenses do not relate to or turn on information and documents concerning other consumers.

(QuoteWizard also notes that it has been more than flexible in Phase I discovery to avoid unnecessary Court intervention. For example, QuoteWizard produced a copy of its Do Not Call Policy—which applies when consumers ask not to be called further— even though Plaintiff never asked QuoteWizard to stop contacting him and therefore the Policy does not apply to him at all. QuoteWizard also produced emails between QuoteWizard and RevPoint that it logged in its Privilege Log as work product when Plaintiff demanded production of them. But QuoteWizard has no choice to object to the categorically irrelevant and inappropriate requests at issue herein.)

Plaintiff's request is, therefore, not relevant to any issue in Phase I discovery. It appears to be an improper attempt to learn the names of putative class members, get an early start on class discovery that has not yet opened, or to fish for other potential claims against QuoteWizard, which definitely is not proper during Phase I individual discovery and would not be appropriate even if and when class discovery opens, as it is not relevant to any Fed. R. Civ. P. 23(a) or (b) issue or element. *See*, *e.g.*, *In re Williams-Sonoma*, 947 F.3d 535, 539-40 (9th Cir. 2020).

Moreover, even if these requested documents were relevant, which they are not, the request is on its face unduly burdensome, incredibly overbroad, not limited in time or scope, and not at all proportional to the needs of the case. As one example, the request relates to "telemarketing complaints," but this is not even purportedly tailored to the specific issues of this case—a disputed consent and alleged use of an ATDS. QuoteWizard also notes that Plaintiff is seeking, at most, $500 in statutory damages which he seeks to treble ($1,500 in total if he prevailed on his individual claims). QuoteWizard asks that the Court consider his incredibly broad requests in light of that, as well, since this further highlights how disproportionate his requests are to the needs of the case. QuoteWizard asks that the Court overrule the request.

Plaintiff also references e-mails sent to or by QuoteWizard's in-house counsel, Attorney Bennett, that were logged in QuoteWizard's Privilege Log (Bates-stamped QuoteWizard_Mantha 000114-129) However, no such documents were withheld as privileged in response to this request or any other at issue in this filing.[3]

RPD #17. Produce all documents evidencing any complaints received by you from anyone, including any government agency, in regards to text messages sent by You or some entity on Your behalf utilizing Drips technology.

**RESPONSE:** QuoteWizard objects to this Request on the grounds that it is not relevant in any way to any claim or defense in this case, is overly broad, unduly burdensome, not proportional to the needs of the case, and improperly seeks confidential information

---

[3] QuoteWizard identified and logged documents in its Privilege Log by and between RevPoint and its in-house counsel pursuant to Request No. 10 ("Produce all documents and communications between You and RevPoint relating to the Plaintiff"). Request No. 10 is not one of the requests that Plaintiff has presented a dispute on to the Court, so QuoteWizard does not substantively address those e-mails here. However, QuoteWizard does note that the e-mails from or to its in-house counsel were all during the pendency of the suit and therefore are protected work product. *See* Fed. R. Civ. P. 26(b)(3)(A).

concerning other consumers. QuoteWizard further objects on the basis that is beyond the scope of Phase I discovery. *See* ECF No. 75. Pursuant to these objections, no documents are being produced.

A. **Plaintiff's Position:** Plaintiff suspects that Mr. Mantha is not alone and that many other consumers have received illegal telemarketing texts sent by Drips on behalf of QuoteWizard. As to Mr. Mantha's individual claim, the existence of prior complaints relating to texts sent via Drips is relevant to whether or not QuoteWizard was on notice that it was telemarketing to consumers in violation of the TCPA. Whether QuoteWizard knew or should have known it was violating the TCPA is also relevant to whether QuoteWizard's conduct was knowing or willful, and whether QuoteWizard is entitled to a "safe harbor" or a "good faith" defense, to the extent that such a defense even exists under the TCPA. Finally, the e-mail communications involving RevPoint and QuoteWizard's counsel, Ms. Bennett, as set forth in the Privilege Log attached at Exhibit C, should be produced in full as QuoteWizard cannot use work product to withhold relevant evidence while simultaneously claiming a safe harbor or good faith defense. QuoteWizard should not be allowed to "fill in the blanks" after the fact and then withhold evidence of such efforts. Further, to the extent the emails involving Ms. Bennett relate to facts and not litigation strategy or mental impressions, they are not entitled to work product protection. The purpose of the doctrine is to protect an attorneys' written materials and mental impressions prepared in anticipation of litigation. *See Vicor Corp. v. Vigilant Ins. Co.*, 674 F.3d 1, 15 (1st Cir. 2012). The privilege is "aimed centrally at protecting the *litigation process*, . . . specifically, work done by counsel to help him or her in *litigating* a case." *United States v. Textron Inc. and Subsidiaries,* 577 F.3d 21, 30-31 (1st Cir. 2009) (emphasis in original). QuoteWizard should be compelled to respond in full. QuoteWizard should be compelled to respond in full. QuoteWizard should be compelled to respond in full.

B. **QuoteWizard's Position**: QuoteWizard incorporates its above-stated position on Request No. 16. "Complaints" by or relating to other consumers is not possibly relevant to any claim or defense at issue in Phase I discovery and is otherwise both vague and overly broad, unduly burdensome, and not proportional to the needs of the case. Moreover, Drips's technology is relevant only insofar as Plaintiff has alleged that the text messages were sent using an ATDS. This is a straightforward fact/legal question that can be addressed by Plaintiff's discovery into Drips's technology. Other consumers' complaints (if any) about Drips do not bear on the technology it uses. QuoteWizard notes that Plaintiff has served a subpoena on Drips concerning the technology it used to send the text messages to Plaintiff. *See* Ex. G. Plaintiff has no need for the requested documents concerning consumer complaints, as they are irrelevant, and the request is so overbroad and burdensome that it is clearly otherwise in violation of Rule 26. QuoteWizard asks that the Court overrule this request.

RPD #18. Produce all documents evidencing your investigation and response to any

such complaints referenced in Request No. 17.

**RESPONSE:** QuoteWizard objects to this Request on the grounds that it is not relevant in any way to any claim or defense in this case, is overly broad, unduly burdensome, not proportional to the needs of the case, and improperly seeks confidential information concerning other consumers. QuoteWizard further objects on the basis that is beyond the scope of Phase I discovery. *See* ECF No. 75. In addition, QuoteWizard objects because this information is protected by the work product doctrine and attorney-client privilege. Pursuant to these objections, no documents are being produced.

   A. **Plaintiff's Position**: For the same reasons as set forth above as to RPD #17, QuoteWizard should be compelled to respond in full.

   B. **QuoteWizard's Position**: QuoteWizard incorporates its above-stated position on Requests No. 16 and 17 and asks that the Court overrule the request.

RPD #19. Produce all documents evidencing any complaints received by You from anyone, including any government agency, alleging that telemarketing texts or calls relating to QuoteWizard were in violation of the TCPA.

**RESPONSE:** QuoteWizard objects to this Request on the grounds that it is not relevant in any way to any claim or defense in this case, is overly broad, unduly burdensome, not proportional to the needs of the case, and improperly seeks confidential information concerning other consumers. QuoteWizard further objects on the basis that is beyond the scope of Phase I discovery. *See* ECF No. 75. Pursuant to these objections, no documents are being produced.

   A. **Plaintiff's Position:** Plaintiff suspects that Mr. Mantha is not alone and that many other consumers have received illegal telemarketing calls from or on behalf of QuoteWizard. As to Mr. Mantha's individual claim, the existence of prior complaints is relevant to whether or not QuoteWizard was on notice that it was telemarketing to consumers in violation of the TCPA. Whether QuoteWizard knew or should have known it was violating the TCPA is also relevant to whether QuoteWizard's conduct was knowing or willful, and whether QuoteWizard is entitled to a "safe harbor" or a "good faith" defense, to the extent that such a defense even exists under the TCPA. Finally, the e-mail communications involving RevPoint and QuoteWizard's counsel, Ms. Bennett, as set forth in the Privilege Log attached at Exhibit C, should be produced in full as QuoteWizard cannot use work product to withhold relevant evidence while simultaneously claiming a safe harbor or good faith defense. QuoteWizard should not be allowed to "fill in the blanks" after the fact and then withhold evidence of such efforts. Further, to the extent the emails involving Ms. Bennett relate to facts and not litigation strategy or mental impressions, they are not entitled to work product protection. The purpose of the doctrine is to protect an attorneys' written materials and mental impressions prepared in anticipation of litigation. *See Vicor Corp. v. Vigilant Ins. Co*., 674 F.3d 1, 15 (1st Cir. 2012). The privilege is "aimed centrally

at protecting the *litigation process*, . . . specifically, work done by counsel to help him or her in *litigating* a case." *United States v. Textron Inc. and Subsidiaries,* 577 F.3d 21, 30-31 (1st Cir. 2009) (emphasis in original). QuoteWizard should be compelled to respond in full. QuoteWizard should be compelled to respond in full. QuoteWizard should be compelled to respond in full.

   **B. QuoteWizard's Position**: QuoteWizard incorporates its above-stated position on Request No. 16 and asks that the Court overrule this request.

RPD #20. Produce all documents evidencing your investigation and response to any such complaints referenced in Request No. 19.

**RESPONSE:** QuoteWizard objects to this Request on the grounds that it is not relevant in any way to any claim or defense in this case, is overly broad, unduly burdensome, not proportional to the needs of the case, and improperly seeks confidential information concerning other consumers. QuoteWizard further objects on the basis that is beyond the scope of Phase I discovery. *See* ECF No. 75. In addition, QuoteWizard objects because this information is protected by the work product doctrine and attorney-client privilege. Pursuant to these objections, no documents are being produced.

   **A. Plaintiff's Position:** For the same reasons as set forth above as to RPD #19, QuoteWizard should be compelled to respond in full.

   **B. QuoteWizard's Position**: QuoteWizard incorporates its above-stated position on Requests No. 16 and 19 and asks that the Court overrule this request.

RPD #21. Produce all documents evidencing, referring or relating to consumers' claims that they did not consent to receive telemarketing calls or texts from or on behalf of QuoteWizard.

**RESPONSE:** QuoteWizard objects to this Request on the grounds that it is not relevant in any way to any claim or defense in this case, is overly broad, unduly burdensome, not proportional to the needs of the case, and improperly seeks confidential information concerning other consumers. QuoteWizard further objects on the basis that is beyond the scope of Phase I discovery. *See* ECF No. 75. Pursuant to these objections, no documents are being produced.

   **A. Plaintiff's Position**: Plaintiff suspects that Mr. Mantha is not alone and that many other consumers who received QuoteWizard telemarketing calls informed QuoteWizard that they did not consent to receive such calls. As to Mr. Mantha's individual claim, the existence of prior instances in which consumers told QuoteWizard that they did not consent to receive QuoteWizard's telemarketing calls is relevant to whether or not QuoteWizard was on notice that it was telemarketing to consumers in violation of the TCPA. Whether QuoteWizard knew or should have known it was violating the TCPA is also relevant to whether

16

QuoteWizard's conduct was knowing or willful, and whether QuoteWizard is entitled to a "safe harbor" or a "good faith" defense, to the extent that such a defense even exists under the TCPA. QuoteWizard should be compelled to respond in full.

**B. QuoteWizard's Position**: QuoteWizard incorporates its above-stated position on Request No. 16 and asks that the Court overrule and deny this request.

RPD #22. Produce all documents evidencing QuoteWizard's investigation and/or response into consumers' claims that they did not consent to receive telemarketing calls or texts from or on behalf of QuoteWizard.

**RESPONSE:** QuoteWizard objects to this Request on the grounds that it is not relevant in any way to any claim or defense in this case, is overly broad, unduly burdensome, not proportional to the needs of the case, and improperly seeks confidential information concerning other consumers. QuoteWizard further objects on the basis that is beyond the scope of Phase I discovery. *See* ECF No. 75. In addition, QuoteWizard objects because this information is protected by the work product doctrine and attorney-client privilege. Pursuant to these objections, no documents are being produced.

**A. Plaintiff's Position:** For the same reasons as set forth above as to RPD #21, QuoteWizard should be compelled to respond in full.

**B. QuoteWizard's Position**: QuoteWizard incorporates its above-stated position on Request No. 16 and asks that the Court overrule and deny this request.

RPD #23. Produce all documents relating to any other TCPA litigation relating to You which involved Drips text technology.

**RESPONSE:** QuoteWizard objects to this Request on the grounds that it is not relevant in any way to any claim or defense in this case, is overly broad, unduly burdensome, not proportional to the needs of the case, and improperly seeks confidential information concerning other consumers. QuoteWizard further objects on the basis that is beyond the scope of Phase I discovery. *See* ECF No. 75. In addition, QuoteWizard objects because this information is protected by the work product doctrine and attorney-client privilege. Pursuant to these objections, no documents are being produced.

**A. Plaintiff's Position**: Plaintiff suspects that Mr. Mantha is not alone and that other consumers have filed lawsuits against QuoteWizard for its alleged illegal telemarketing involving Drips text technology. As to Mr. Mantha's individual claim, the existence of other similar lawsuits is relevant to whether or not QuoteWizard was on notice that it was telemarketing to consumers in violation of the TCPA. Whether QuoteWizard knew or should have known it was violating the TCPA is also relevant to whether QuoteWizard's conduct was knowing or willful, and whether QuoteWizard is entitled to a "safe harbor" or a "good faith"

defense, to the extent that such a defense even exists under the TCPA. QuoteWizard should be compelled to respond in full.

**B. QuoteWizard's Position**: QuoteWizard incorporates its above-stated position on Requests No. 16 and 17, and asks that the Court overrule and deny this request. To require QuoteWizard to research "TCPA litigation," not limited in time, scope, or jurisdiction, and report the results back to Plaintiff, is a facially inappropriate discovery request seeking irrelevant information and which also violates other requirements of Rule 26 (proportionality, etc.). Plaintiff is also free to conduct legal research of his own to the extent he believes other litigation is relevant to this case (it is not).

RPD #24. Produce documents sufficient to identify other TCPA litigation where You were named as a Defendant.

**RESPONSE:** QuoteWizard objects to this Request on the grounds that it is not relevant in any way to any claim or defense in this case, is overly broad, unduly burdensome, not proportional to the needs of the case, and improperly seeks confidential information concerning other consumers. QuoteWizard further objects on the basis that is beyond the scope of Phase I discovery. *See* ECF No. 75. Pursuant to these objections, no documents are being produced.

A. **Plaintiff's Position:** Plaintiff suspects that Mr. Mantha is not alone and that many other consumers have received illegal telemarketing calls on behalf of QuoteWizard. As to Mr. Mantha's individual claim, the existence of prior TCPA litigation relating to QuoteWizard is relevant to whether or not QuoteWizard was on notice that it was telemarketing to consumers in violation of the TCPA. Whether QuoteWizard knew or should have known it was violating the TCPA is also relevant to whether QuoteWizard's conduct was knowing or willful, and whether QuoteWizard is entitled to a "safe harbor" or a "good faith" defense, to the extent that such a defense even exists under the TCPA. QuoteWizard should be compelled to respond in full.

**B. QuoteWizard's Position**: QuoteWizard incorporates its above-stated position on Request No. 16, and asks that the Court deny and overrule this request. To require QuoteWizard to research "TCPA litigation," not limited in time, scope, or jurisdiction, and report the results back to Plaintiff, is a facially inappropriate discovery request seeking irrelevant information and which also violates other requirements of Rule 26 (proportionality, etc.). Plaintiff is also free to conduct legal research of his own to the extent he believes other litigation is relevant to this case (it is not).

RPD #25. Produce all consumer requests that future telemarketing calls cease ("Do Not Call") provided to you by anyone in any way relating to text telemarketing conducted on your behalf by Drips.

**RESPONSE:** QuoteWizard objects to this Request on the grounds that it is not relevant in any way to any claim or defense in this case, is overly broad, unduly burdensome, not proportional to the needs of the case, and improperly seeks confidential information concerning other consumers. QuoteWizard further objects on the basis that is beyond the scope of Phase I discovery. *See* ECF No. 75. Pursuant to these objections, no documents are being produced.

 

    A.  **Plaintiff's Position:** Plaintiff suspects that Mr. Mantha is not alone and that many other consumers have received illegal telemarketing texts sent by Drips on behalf of QuoteWizard. Plaintiff further suspects that many consumers who received QuoteWizard telemarketing texts responded to such and made a Do Not Call Request. QuoteWizard was required by the TCPA to maintain DNC lists of consumers asking to longer be called. As to Mr. Mantha's individual claim, the existence of Do Not Call requests submitted by consumers relating to texts sent via Drips is relevant to whether or not QuoteWizard was on notice that it was telemarketing to consumers in violation of the TCPA. Whether QuoteWizard knew or should have known it was violating the TCPA is also relevant to whether QuoteWizard's conduct was knowing or willful, and whether QuoteWizard is entitled to a "safe harbor" or a "good faith" defense, to the extent that such a defense even exists under the TCPA. QuoteWizard should be compelled to respond in full.

    B.  **QuoteWizard's Position**: QuoteWizard incorporates its above-stated position on Request No. 16. QuoteWizard further notes that it is undisputed that Plaintiff never requested that QuoteWizard stop contacting him. Rather, Plaintiff responded to the text messages from QuoteWizard and solicited further conversation, asking QuoteWizard how to get a quote. QuoteWizard asks that the Court overrule and deny this request.

**RPD #26.** Produce all documents referring or relating to Do Not Call requests made by consumers in any way relating to text telemarketing conducted on your behalf by Drips.

**RESPONSE:** QuoteWizard objects to this Request on the grounds that it is not relevant it any way to any claim or defense in this case, is overly broad, unduly burdensome, not proportional to the needs of the case, and improperly seeks confidential information concerning other consumers. QuoteWizard further objects on the basis that is beyond the scope of Phase I discovery. *See* ECF No. 75. In addition, QuoteWizard objects because this information is protected by the work product doctrine and attorney-client privilege. Pursuant to these objections, no documents are being produced.

    A.  **Plaintiff's Position:** For the same reasons as set forth as to RPD #25, QuoteWizard should be compelled to respond in full.

    B.  **QuoteWizard's Position:** QuoteWizard incorporates its above-stated position on Requests No. 16. QuoteWizard further notes that it is undisputed that Plaintiff

never requested that QuoteWizard stop contacting him. Rather, Plaintiff responded to the text messages from QuoteWizard and solicited further conversation, asking QuoteWizard how to get a quote. QuoteWizard asks that the Court overrule and deny this request.

RPD #31. Produce all drafts of the QuoteWizard Opt In.

**RESPONSE:** QuoteWizard objects to Plaintiff's use and definition of "QuoteWizard Opt In." As explained at QuoteWizard's Fed. R. Civ. P. 30(b)(6) deposition, QuoteWizard, in the course of investigating Plaintiff's legal demand letter and Complaint, compiled pre-existing information concerning Plaintiff's lead. Plaintiff is in possession of all such information concerning his lead. To the extent Plaintiff is attempting to discern the steps taken by QuoteWizard to investigate his legal demand and lawsuit, such request violates the work product and attorney-client privileges. Pursuant to these objections, no documents will be produced.

A. **Plaintiff's Position:** Evidence produced to date indicates that QuoteWizard did not have Mr. Mantha's prior express signed written consent before it sent him telemarketing text messages. Rather, it sought to find and create such consent evidence after Mr. Mantha complained through his counsel. QuoteWizard reprimanded its data vendor RevPoint, as Mr. Mantha's data did not include any evidence supporting his prior express signed consent to receive telemarketing texts. Undeterred, by its own admission, QuoteWizard proceeded- after the fact- to "fill in the blanks" and to attempt to compile data that it now claims supports its consent defense. The QuoteWizard Opt In was the document created by QuoteWizard after it "filled in the blanks." All drafts of the QuoteWizard Opt In are relevant to discovery how exactly QuoteWizard "filled in the blanks" after the fact and whether it can continue to assert a consent defense or to continue to threaten Plaintiff's counsel with Rule 11 sanctions for allegedly filing a frivolous claim. Finally, the e-mail communications involving RevPoint and QuoteWizard's counsel, Ms. Bennett, as set forth in the Privilege Log attached at Exhibit C, should be produced in full as QuoteWizard cannot use work product to withhold relevant evidence while simultaneously claiming a safe harbor or good faith defense. QuoteWizard should not be allowed to "fill in the blanks" after the fact and then withhold evidence of such efforts. Further, to the extent the emails involving Ms. Bennett relate to facts and not litigation strategy or mental impressions, they are not entitled to work product protection. The purpose of the doctrine is to protect an attorneys' written materials and mental impressions prepared in anticipation of litigation. *See Vicor Corp. v. Vigilant Ins. Co.*, 674 F.3d 1, 15 (1st Cir. 2012). The privilege is "aimed centrally at protecting the *litigation process, . . .* specifically, work done by counsel to help him or her in *litigating* a case." *United States v. Textron Inc. and Subsidiaries,* 577 F.3d 21, 30-31 (1st Cir. 2009) (emphasis in original). QuoteWizard should be compelled to respond in full. QuoteWizard should be compelled to respond and produce in full.

**B. QuoteWizard's Position**: Plaintiff has materially misrepresented the factual evidence adduced through discovery in this case. Moreover, this request and others similar to it are harassing and inappropriate attempts to discern QuoteWizard's work product during the pendency of this case.

It is undisputed that QuoteWizard purchased Plaintiff's lead, with consent to contact (whether or not Plaintiff disputes the validity of the lead/consent) from RevPoint Media *before* it caused the text messages at issue to be sent to Plaintiff. RevPoint Media's Rule 30(b)(6) representative testified that it sold Plaintiff's lead with consent to contact to QuoteWizard:

**Q.** When you provided the Joe Mantha lead with the data that we are looking at here to Quotewizard, does RevPoint make any guarantee that the person, that Mr. Mantha had consented to receive -- provided TCPA consent to receive calls or text messages?
…
**A.** Yeah, I don't know how we would make an individual guarantee, other than supplying the data to Quotewizard that is supplied to RevPoint Media.

**Q**. Right, but in essence you are just selling them data, you are not making a guarantee that this person has given TCPA compliance consent in order to receive text messages?
**…**
**A.** ***Well, it's our understanding that this lead had TCPA consent and text with it, so that -- the way we look at it, is that would be the guarantee***.

*See* Ex. F, pp. 30-31 (emphasis added).

As QuoteWizard's Rule 30(b)(6) representative testified at great length, when QuoteWizard purchased Plaintiff's lead from RevPoint, it was through a digital "ping post" system whereby QuoteWizard is provided enough information about Plaintiff to contact him. *See* Ex. E, pp. 12-13 ("So it's how we purchase leads from vendors like RevPoint. We -- it's called ping post. They send into our system, they ping into our API a portion of essentially a lead, a lead without all of the [personal identifying information]. It comes into our system, into our API. Our system takes a look at that -- this is all happening in milliseconds -- determines whether we have a match for that lead. We then, if it matches, if we think – you know, if our system determines that, you know, we have an agent or a corporate carrier that this lead matches to, we return a bid to whoever the vendor is; in this case, RevPoint. RevPoint then either accepts the bid or rejects the bid. And if they accept the bid, they then send us the rest of the lead details. And that's it.").

QuoteWizard's representative also testified that, *after* Plaintiff initiated this lawsuit, QuoteWizard sought to learn more information about Plaintiff's lead from RevPoint to properly investigate and defend the lawsuit (and to further prove the validity of Plaintiff's lead and consent). As part of this process, QuoteWizard

*compiled* preexisting information concerning Plaintiff's lead and consent to contact to properly defend this lawsuit. For example, QuoteWizard's representative testified that, "when this initially came up and we received the complaint and reached out to RevPoint Media to provide the consent information, and they sent me some things such as the IP address of the complainant, and as well as the URL to the consent portion of the website that the complainant went through." *See* Ex. E, p. 10. RevPoint's deponent confirmed the same. *See* Ex. F, pp. 24-25 (testifying that QuoteWizard reached out to RevPoint for additional lead information when this suit arose, and RevPoint provided that information to QuoteWizard, which RevPoint had in turn received from Plural Marketing).

QuoteWizard's deponent further explained that, after this lawsuit was filed, he used the information provided by RevPoint and data already contained in QuoteWizard's database (which was data that QuoteWizard received when it purchased the lead) and summarized it in a document (that Plaintiff is self-describing as "QuoteWizard Opt In") to assist in the defense of the lawsuit. *See* Ex. E, pp. 10-13. QuoteWizard's deponent testified at length to the data contained in the document; where the data came from; and Plaintiff has been provided a copy of that document.

The steps that QuoteWizard took to investigate the Complaint and defend the lawsuit is protected by the work product doctrine. In any event, QuoteWizard's Rule 30(b)(6) representative testified at length to this process. *See* Ex. E. Plaintiff has been provided with every single data point that QuoteWizard has concerning Plaintiff's lead, including the data that QuoteWizard received from RevPoint when it bought Plaintiff's lead *and* the information RevPoint provided to QuoteWizard when QuoteWizard was investigating this lawsuit after it was filed. Furthermore, Plaintiff has received all information that RevPoint has for Plaintiff's lead (*see* Ex. H), and deposed RevPoint on the same, as well as deposing the company that sold Plaintiff's lead in turn to RevPoint (Plural Marketing). QuoteWizard also previously voluntarily produced emails between its employee (the same Rule 30(b)(6) deponent who testified to reaching out to RevPoint during this lawsuit) and RevPoint during investigation of this lawsuit, which was logged as work product, to avoid an unnecessary Court dispute. QuoteWizard has produced and disclosed all information it has concerning Plaintiff's lead and is not withholding any documents or information.

Equally important, QuoteWizard did not "create" any data; is not withholding any data; and merely *compiled* all pre-existing data into a document to assist in the defense of this lawsuit (a copy of which it provided to Plaintiff and explained during its deposition). Plaintiff's continued intrusions into its work product is harassing and unwarranted; and there are no further information or documents to share. QuoteWizard asks that the Court deny and overrule this request.

Moreover, emails between RevPoint and QuoteWizard's in-house counsel (Attorney Bennett) were not logged in response to this request and are therefore irrelevant and not discussed herein. *See supra*, FN 3.

**RPD #32.** Produce all documents referring to the document known as the QuoteWizard Opt In.

**RESPONSE:** QuoteWizard objects to Plaintiff's use and definition of "QuoteWizard Opt In." As explained at QuoteWizard's Fed. R. Civ. P. 30(b)(6) deposition, QuoteWizard, in the course of investigating Plaintiff's legal demand and Complaint, compiled pre-existing information concerning Plaintiff's lead. Plaintiff is in possession of all such information concerning his lead. To the extent Plaintiff is attempting to discern the steps taken by QuoteWizard to investigate his legal demand and lawsuit, such request violates the work product and attorney-client privileges. Pursuant to these objections, no documents will be produced.

A. **Plaintiff's Position:** As explained in prior submissions, *(ECF #70, 73 and 78)* after Mr. Mantha complained to QuoteWizard of his receive of unsolicited telemarketing texts, QuoteWizard contacted its data vendor- RevPoint- and requested all data as to Mr. Mantha and his alleged consent to receive telemarketing texts. The data, however, in RevPoint's possession fell short of QuoteWizard's standards. QuoteWizard then proceeded to gather information from other sources in an effort to "fill in the blanks" as to Mr. Mantha's consent. The document that QuoteWizard ultimately created- after the fact- and then used to threaten plaintiff's counsel with sanctions- is known as the QuoteWizard Opt In. It is attached as an exhibits to prior submissions referred to above. This request seeks all drafts of the QuoteWizard Opt In to which QuoteWizard objects. This request is relevant as to how exactly QuoteWizard "filled in the blanks" after the fact and whether it can continue to assert a consent defense or to continue to threaten Plaintiff's counsel with Rule 11 sanctions for allegedly filing a frivolous claim. Finally, the e-mail communications involving RevPoint and QuoteWizard's counsel, Ms. Bennett, as set forth in the Privilege Log attached at Exhibit C, should be produced in full as QuoteWizard cannot use work product to withhold relevant evidence while simultaneously claiming a safe harbor or good faith defense. QuoteWizard should not be allowed to "fill in the blanks" after the fact and then withhold evidence of such efforts. Further, to the extent the emails involving Ms. Bennett relate to facts and not litigation strategy or mental impressions, they are not entitled to work product protection. The purpose of the doctrine is to protect an attorneys' written materials and mental impressions prepared in anticipation of litigation. *See Vicor Corp. v. Vigilant Ins. Co*., 674 F.3d 1, 15 (1st Cir. 2012). The privilege is "aimed centrally at protecting the *litigation process,* . . . specifically, work done by counsel to help him or her in *litigating* a case." *United States v. Textron Inc. and Subsidiaries,* 577 F.3d 21, 30-31 (1st Cir. 2009) (emphasis in original). QuoteWizard should be compelled to respond in full. QuoteWizard should be compelled to respond and produce in full.

B. **QuoteWizard's Position**: QuoteWizard incorporates its position with respect to Request No. 31 herein and asks that the Court overrule and deny this request.

RPD #35. Produce all documents relating to other occasions where the IP address purportedly identifying the computer used by a consumer to consent to receive telemarketing texts or calls from or on behalf of QuoteWizard did not match the name of that consumer or was not subscribed to that consumer.

**RESPONSE:** QuoteWizard objects to this Request on the grounds that it is not relevant in any way to any claim or defense in this case, is overly broad, unduly burdensome, not proportional to the needs of the case, and improperly seeks confidential information concerning other consumers. QuoteWizard further objects on the basis that is beyond the scope of Phase I discovery. *See* ECF No. 75. Pursuant to these objections, no documents are being produced.

A. **Plaintiff's Position:** At the outset of this litigation, QuoteWizard produced two different IP addresses that it claimed were used by Mr. Mantha to consent to receive QuoteWizard text telemarketing messages. *See* ECF #70, 73 and 78. Subpoenas were sent to the carriers for both IP addresses. Neither connected to Mr. Mantha. Depositions were taken of the subscribers to these IP addresses. Both denied any connection whatsoever to Mr. Mantha or to using their computers to consent to receive QuoteWizard telemarketing texts. Plaintiff suspects that consumers on prior occasions complained to QuoteWizard as to their receipt of QuoteWizard telemarketing texts or calls to which they did not consent, and further suspect that QuoteWizard responded to those complaints similarly claiming those consumers "opted in" from various web sites using specific IP addresses. If prior to texting Mr. Mantha, other consumers had similarly informed QuoteWizard that they did not consent to receive their texts, and the IP addresses relied upon by QuoteWizard did not match the complaining consumers' IP addresses, then QuoteWizard would be on notice that its leads were deficient its telemarketing was in violation of the TCPA. QuoteWizard should be compelled to respond in full.

B. **QuoteWizard's Position**: Plaintiff has again misrepresented the factual evidence borne out of discovery. QuoteWizard has not "produced" two different IP addresses. Rather, the companies that sold Plaintiff's lead prior to it reaching QuoteWizard, Plural Marketing and RevPoint, have produced in discovery IP addresses associated with Plaintiff's lead and consent. That the IP addresses do not match the IP addresses that Plaintiff has identified in discovery as of fall 2020— more than a year after the consent was generated—does not prove that Plaintiff's lead and consent is invalid. As RevPoint's Rule 30(b)(6) designee testified, the IP address associated with Plaintiff's lead could "could come from different places, it could come from the IP address of the servers that the platform is utilizing, it could come from the website of where the lead was generated. There is opportunity there for IP addresses to not match the user IP address who filled out the form." Ex. F, pp. 40-41. Plaintiff has selectively ignored this evidence. Moreover, even if that IP address is associated with the device that generated the lead, this still does not rule out Plaintiff merely because it does not match his purported *current* IP

24

addresses in 2020. For example, Plaintiff could have a dynamic (i.e. changing) IP address (which is common) associated with his devices, could have been using an electronic device he has not disclosed an IP address for, or could have been using the internet (and therefore IP address) of a public location. Given the other evidence that shows that Plaintiff did validly provide his consent (which includes the fact that Plaintiff responded to QuoteWizard's texts not by asking why he was contacted, but confirming that he wanted a quote for auto insurance), the IP address evidence is largely irrelevant. In any event, as explained, the alleged lack of a "match" to Plaintiff's current IP addresses is no evidence of wrongdoing by QuoteWizard or anyone else.

In light of this, there is absolutely no basis to require QuoteWizard to search for "all documents relating to other occasions where the IP address purportedly identifying the computer used by a consumer to consent to receive telemarketing texts or calls from or on behalf of QuoteWizard did not match the name of that consumer or was not subscribed to that consumer." This is not arguably relevant to Plaintiff's individual claims during Phase I discovery, and also violates other Rule 26 requirements (proportionality, etc.). QuoteWizard asks that the Court overrule this request.

RPD #36. Produce all documents from other litigations in which You have asserted that the plaintiff consented to receive telemarketing calls or texts on your behalf.

**RESPONSE:** QuoteWizard objects to this Request on the grounds that it is not relevant in any way to any claim or defense in this case, is overly broad, unduly burdensome, not proportional to the needs of the case, and improperly seeks confidential information concerning other consumers. QuoteWizard further objects on the basis that is beyond the scope of Phase I discovery. *See* ECF No. 75. Pursuant to these objections, no documents are being produced.

   A. **Plaintiff's Position**: Plaintiff suspects, in response to consumer TCPA litigation, QuoteWizard commonly claims that the complaining consumer consented to receive QuoteWizard's telemarketing calls. Plaintiff further suspects that plaintiffs in these cases commonly deny the consent claim is true. If consumers in other litigations have previously informed QuoteWizard their consent claims are not true, then QuoteWizard would then be on notice that its purported consent defense was not true. Whether QuoteWizard knew or should have known that its consent claims were not true is also relevant to whether QuoteWizard's conduct was knowing or willful, and whether QuoteWizard is entitled to a "safe harbor" or a "good faith" defense, to the extent that such a defense even exists under the TCPA. QuoteWizard should be compelled to respond in full.

   B. **QuoteWizard's Position**: QuoteWizard incorporates its position on Request No. 16. Further, this request is in no way relevant to any claim or defense at issue in this lawsuit during Phase I discovery. Evidence concerning the validity of

Plaintiff's consent stands on its own, and other consumers are not relevant to that issue.  Moreover, Plaintiff's position appears to assume that his consent has been definitively proven invalid, which QuoteWizard completely disputes. QuoteWizard's position is that Plaintiff provided valid consent.  In addition, QuoteWizard has produced a copy of its contract with the company from whom it purchased Plaintiff's lead, RevPoint, which establishes that RevPoint sells only leads with valid consent to contact to QuoteWizard.  To the extent Plaintiff believes that his consent is not valid, that QuoteWizard was on notice of the same before it contacted him, and that this is somehow relevant to some legal claim or defense, he can argue that at summary judgment or at trial.  But to require QuoteWizard to research "other litigations," not limited in time, scope, or jurisdiction, and report the results back to Plaintiff, is a facially inappropriate discovery request seeking irrelevant information and which also violates other requirements of Rule 26 (proportionality, etc.).  Plaintiff is also free to conduct legal research of his own to the extent he believes other litigation is relevant to this case (it is not).  QuoteWizard asks that the Court overrule the request.

Dated: September 30, 2020

Respectfully submitted,

Joseph Mantha,

by his attorneys,


/s/ Matthew P. McCue
Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, Massachusetts 01760
(508) 655-1415
(508) 319-3077 facsimile
mmccue@massattorneys.net

Respectfully submitted,

QuoteWizard.com, LLC,

By its attorneys,


/s/ Christine M. Kingston
Kevin P. Polansky, BBO (BBO #667229)
Christine M. Kingston (BBO #682962)
Nelson Mullins Riley & Scarborough LLP
One Post Office Square, 30th Floor
Boston, MA 02109
(t) (617)-217-4700
(f) (617) 217-4710
kevin.polansky@nelsonmullins.com
christine.kingston@nelsonmullins.com