IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOSEPH MANTHA on behalf of themselves and others similarly situated, <br><br>     Plaintiff, <br><br> v. <br><br> QUOTEWIZARD.COM, LLC <br><br>     Defendant. | : <br> : <br> : <br> : Case No. 1:19-cv-12235-LTS <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> / |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER DENYING DEFENDANT'S MOTION TO ENFORCE ORDER AND FOR SANCTIONS**

Plaintiff Joseph Mantha ("Mr. Mantha" or "Plaintiff"), respectfully submits this opposition to *Defendant's Objections to Magistrate Judge's Order Denying Defendant's Motion to Enforce Order and for Sanctions* (ECF No. 100). On July 30, 2020, the Court referred this action to Chief Magistrate Judge Kelley for full pretrial case management, including all dispositive motions. ECF 76. Chief Magistrate Judge Kelley had actively managed discovery in the case since the referral, denying defendant a motion to stay discovery by QuoteWizard.com, LLC ("QuoteWizard" or "Defendant") (ECF 86, denied by ECF 101) as well as QuoteWizard's *Motion to Enforce an Order of the Court and for Sanctions* (ECF 82) which Chief Magistrate Judge Kelley denied in ECF 100, the ruling that QuoteWizard now objects to. Magistrate Judge Kelley has additionally set a hearing on Tuesday, October 13, 2020 on *Plaintiff's Motion to Compel Production of Documents from QuoteWizard*.

QuoteWizard's Objections to Magistrate Judge Kelley's Order ECF 100 falls far short of establishing that Chief Magistrate Judge Kelley's order was "clearly erroneous" as

QuoteWizard's underlying Motion for Sanctions was itself based on a plain misreading of this Court's prior order. QuoteWizard moved sole (erroneous) ground that this Court had ordered production of imaging of Plaintiff's computer, and that Plaintiff should be sanctioned for refusing to produce it. ECF 82. Chief Magistrate Judge Kelley correctly found that this Court had in fact denied QuoteWizard's demand that Mr. Mantha produce his computer's for inspection (which production of the entire forensic image of his computer would be the functional equivalent of), and that Plaintiff is only required to produce responsive documents, and in this instance, he did not have any responsive documents. Magistrate Judge Kelley's succinct Order clearly stated the basis for her ruling

> Defendant's motion to enforce an order of the court and for sanctions, #[82], is denied. Defendant misconstrues Judge Sorokin's order, dated July 30, 2020, docket no. [75]. In that order, Judge Sorokin denied defendant's request that plaintiff produce his devices for inspection, and ordered that plaintiff must allow defendant to inspect the devices only if plaintiff is going to rely on an expert who evaluated the devices. (#[75] at 7.) Plaintiff is not going to rely on an expert who evaluated the devices, so he does not have to produce them for inspection. (#[90] at 2.) Judge Sorokin further ordered that defendant may seek discovery from the devices, and plaintiff could not withhold "information or documents extracted from any of his devices in the course of this case unless protected by privilege." (#[75] at 7.) Defendant requested browser and search history from the devices, and plaintiff's response is that he does not have anything to provide. (#[90] at 2.) Thus, plaintiff is not withholding any information or documents.

For the reasons set forth below, the motion should be DENIED.

## BACKGROUND

QuoteWizard moved for sanctions for Plaintiff's refusal to grant it unfettered access to Plaintiff's personal computers and iPhone, in spite of the fact QuoteWizard did not actually propound such an outrageous discovery request in the first instance, and more importantly that this Court <u>denied</u> QuoteWizard's demand that Plaintiff produce his computers for inspection:

2

"The Court DENIES the second request as there is no basis to require the production of electronic devices; nothing in this ruling precludes Defendant from seeking discovery from these devices. However, nothing in this ruling permits Plaintiff to withhold information or documents extracted from any of his devices in the course of this case unless protected by privilege." ECF 75 at 7. Because Plaintiff is not withholding any documents, but rather does not have the search or browser history for the dates in question, Chief Magistrate Judge Kelley denied Plaintiff's Motion.

This Court also ruled that if the Plaintiff were to rely on an expert evaluation of the devices, QuoteWizard would be afforded an opportunity to inspect the data contained on Plaintiff's devices relied upon by his expert. As is set forth below, Mr. Mantha has supplemented his interrogatory answers to make clear that he is not relying on an expert witness to prove that he did not consent.

What QuoteWizard actually requested as to Plaintiff's browser and search history was the following discovery request:

> 17. Browser and search history for August 1st through 5, 2019 for any and all computers, cell phones, or other electronic devices used by you on or around that date.

See ECF 52-2 at page 15 of 18 page pdf, ¶ 17.

Plaintiff responded that he had no responsive documents:

> 17. Browser and search history for August 1st through 5, 2019 for any and all computers, cell phones, or other electronic devices used by you on or around that date. ANSWER: OBJECTION: At QuoteWizard's request, the initial discovery phase in this case is to focus solely on QuoteWizard's consent defense per the April 7, 2020, Scheduling Order of Judge Sorokin. See ECF #39. Plaintiff objects to this request to the extent it seeks the production of documents other than documents relating to consent to receive telemarketing texts from QuoteWizard. Plaintiff also objects to this request as it is

> burdensome and overbroad. Subject to these objections and answering further, there are no responsive documents on the browser or search history of Plaintiff's personal devices, including his lap top and cell phone, that evidence any visit to www.snappyautoinsurance.com on the date of the alleged consent, or at any time prior to the filing of this lawsuit.

Not satisfied with this routine discovery response that he had no responsive documents, Defendant purported to expand its request in the Parties' Joint Status Report Concerning Dispute Over Plaintiff's Discovery Responses, ECF 53, claiming it had "requested Plaintiff's computers, cell phone(s), and electronic devices that he used at the relevant time periods when the consent at issue was provided on www.snappyautoinsurance.com." ECF 53 at 6. This unilateral transformation of a routine request for documents, which was met with a response that Plaintiff is not in possession of responsive documents, to include a wholesale right to peruse Plaintiff's personal computers an cell phones was rightly rejected by the Court. Order on Pending Motions and Discovery Disputes (Doc. Nos. 45, 51-53, 70, 74). ECF 75 at 7.

Defendant's claim that it is entitled to search Mr. Mantha's computers, and to obtain imaging of his computers and laptops done by a third party, is a red herring. As to a second request for Plaintiff's search and browser history on different dates of June 25-27, 2019 (due to the ever changing purported proof of consent offered by Defendant) this Court did not order any further production, noting that "counsel will be able to obtain the answers to these questions in Plaintiff's deposition, thus, nothing further is ordered on this request at this time." ECF 75 at 9-10.

## ARGUMENT

### Standard of Review

A Magistrate Judge's authority to rule on a non-dispositive pretrial matter emanates from 28 U.S.C. § 636(b)(1)(A), which provides that a district judge may designate a magistrate judge "to hear and determine any pretrial matter pending before the court." After a party files a timely objection to the Magistrate Judge's order on a non-dispositive matter, the District Court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." FED. R. CIV. PRO. 72(a); 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter . . . where it has been shown that the magistrate's [magistrate judge's] order is clearly erroneous or contrary to law"). The discovery issues addressed in the Magistrate Judge's Order are "pretrial matter[s] not dispositive of a party's claim or defense" within the purview of Federal Rule of Civil Procedure 72(a). FED. R. CIV. PRO. 72(a).

Under the "clearly erroneous standard", the Court "must accept both the trier's findings of fact and conclusions drawn therefrom unless, after scrutinizing the entire record, [it] 'form[s] a strong, unyielding belief that a mistake has been made.'" *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999) (citing *Cumpiano v. Banco Santander P.R.*, 902 F.2d 148, 152 (1st Cir. 1990)). "[S]anctions pursuant to Rule 37 . . . are [also] generally reviewed under the 'clearly erroneous or contrary to law' standard." *Russo v. Baxter Healthcare Corp.*, 51 F. Supp. 2d 70, 75 (D.R.I. 1999); *see also In re. Subpoena to TD Bank, N.A.*, No-8-101-P-S, 2008 U.S. Dist. LEXIS 99888, at * 2-3 (D. Me. Dec. 1, 2008).

This standard makes it "extremely difficult to justify alteration of the magistrate judge's non-dispositive actions by the district judge." C. WRIGHT, A. MILLER, & M. KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 3069, at 350-351 (3d ed. 1998).; *Phinney*

*v. Wentworth Douglas Hospital*, 199 F.3d 1, 4 (1st Cir. 1999) (explaining that the magistrate judge's ruling on a non-dispositive matter must be upheld unless, "after scrutinizing the entire record, [the district judge] form[s] a strong, unyielding belief that a mistake has been made") (citations omitted); *United States v. Mehta*, 236 F. Supp. 2d 150, 154 (D. Mass. 2002) ("district court should only overturn a magistrate's order when left with the definite and firm conviction that a mistake has been made").

The First Circuit has held unequivocally that even an appellant objecting to a Magistrate Judge's order under Fed. R. Civ. P. 72(b) which is applicable to *dispositive* motions is not entitled to an entirely new review—but rather is entitled to a review of arguments actually presented to the magistrate judge:

> Appellant tells us that Rule 72(b)'s requirement of a "de novo determination" by the district judge means that an entirely new hand is dealt when objection is lodged to a recommendation. That is not so. At most, the party aggrieved is entitled to a review of the bidding rather than to a fresh deal. The rule does not permit a litigant to present new initiatives to the district judge. We hold categorically that an unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate. *Accord Borden v. Secretary of HHS*, 836 F.2d 4, slip op. at 4 (1st Cir. 1987).

*Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir. 1988). This principle holds with even more force here in an appeal of a magistrate judge's order on a nondispositive motion. Fed.R.Civ.P. 72(a) provides: "[a] party may not assign as error a defect in the order not timely objected to."

**I. QuoteWizard's Request for Unfettered Access to Plaintiff's Personal Computers to Search for Documents that Do Not Exist was Rejected by this Court and Subsequently Rejected by Chief Magistrate Judge Kelley and QuoteWizard's Objection Should be Rejected Again, Particularly as QuoteWizard Itself Should Have had the Purportedly Sought-after Consent Before Texting Plaintiff**

QuoteWizard's request for unfettered access to Defendant's computers, simply because he has no responsive documents to produce, is particularly meritless given the burden placed on telemarketers to prove that they had the telemarketing recipient's "prior express written consent" *before* it sent a text message to Mr. Mantha.

Before a telemarketer can send spam texts to a consumer, it must first have the consumers' prior express signed consent to receive such telemarketing texts from a specific seller. Such consent must be signed and be sufficient to show that the consumer received "clear and conspicuous disclosure" of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver telemarketing solicitations by or on behalf of a specific seller; and having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service." *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted).

A telemarketer who claims it had consent to telemarket to a particular consumer bears the burden of proof, and must maintain records that prove such a claim. The FCC has cautioned that a telemarketer claiming consent "must be prepared to provide clear and convincing evidence of the existence of such a relationship." In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC 03-153 at ¶112, -- FCC Rcd. --, 2003 WL 2157853, 2003 FCC LEXIS 3673 (July 3, 2003) (emphasis added).  The FCC has also noted: In

the event a complaint is filed, the burden of proof [as to whether prior express consent was obtained] rests on the sender to demonstrate that permission was given.  We strongly suggest that senders take steps to promptly document that they received such permission. Id. at ¶46. The FCC has warned telemarketers, specifically in the context of pre-record message telemarketing:

> Finally, should any question about the consent arise, the seller will bear the
> burden of demonstrating that a clear and conspicuous disclosure was provided
> and that unambiguous consent was obtained.

*See* In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 27 FCC Rcd 1830 at ¶112; 2012 FCC LEXIS 794 (Feb. 12, 2012).

QuoteWizard's position that it is entitled to unfettered access to Mr. Mantha's computers and iPhone has a through the looking glass quality. Imagine a breach of contract Plaintiff asserting that it had a signed contract by a defendant, having that signature being proven not to belong to defendant (who denies under oath having ever signed, and who of course does not have a copy of the non-existent contract), pivoting and telling a court that it needed to search the defendant's files and computers for a copy of the purportedly signed contract.

> II. **The Facts Uncovered in Discovery Establish that Mr. Mantha's Purported Opt In Did not Come from www.snappyautoinsurance.com Making QuoteWizard's Demand for Images of Mr. Mantha's Hard Drive and Iphone Baseless**

Here, since the outset of the case, QuoteWizard insisted it had consent Mr. Mantha's consent to send him texts offering auto insurance which Mr. Mantha allegedly provided at www.snappyautoinsurance.com. At the Case Management Conference, QuoteWizard represented to the Court that it was prepared to ***immediately*** move for summary judgment on the consent claim. It was so confident in its consent defense that it even threatened Plaintiff's counsel with Rule 11 sanctions for having filed a frivolous lawsuit in light of the consent it purportedly possessed. The document that QuoteWizard claimed evidenced Mr. Mantha's

8

consent to receive telemarketing texts is referred to herein as the "QuoteWizard Opt In." The QuoteWizard Opt In was originally produced to Mr. Mantha as an attachment to the January 10, 2020, letter of Kevin Polansky, Esq., counsel to QuoteWizard, that threatened to seek Rule 11 sanctions against Mr. Mantha's counsel for filing a frivolous lawsuit. *See* Exhibit 1, January 10, 2020, Letter of Counsel, with QuoteWizard Opt. Given the gravity of defense counsel's Rule 11 allegation, and although it is QuoteWizard who bears the burden of proof to prove consent in a TCPA case by clear and convincing evidence, Plaintiff's counsel immediately commenced discovery to explore QuoteWizard's consent defense, and to disprove the information on the QuoteWizard Opt In. Discovery obtained to date has been devastating to QuoteWizard's consent defense.

First, in reliance on the QuoteWizard Opt In, QuoteWizard claimed that Mr. Mantha utilized a computer assigned the IP address 96.242.xxxxxx to consent to receive telemarketing texts on a web site called www.snappyautoinsurance.com. *Id.* Mr. Mantha denied under oath any connection to this website or to this IP address. A subpoena to the telecommunications carrier for the IP address confirmed it was assigned to someone in New Jersey. QuoteWizard deposed this individual who confirmed that he never met Mr. Mantha and never visited www.snappyautoinsurance.com. QuoteWizard then changed its story and claimed that Mr. Mantha actually visited www.snappyautoinsurance.com on a different date from a different IP address. Again, Mr. Mantha denied any visit to this website and any connection to the new IP address offered by QuoteWizard as proof of his consent. Similarly, a telecommunications subpoena confirmed the IP address was not assigned to Mr. Mantha. Rather, it was assigned to a woman in Worcester, who QuoteWizard then deposed and who, similarly, confirmed no connection to Mr. Mantha and that she had never visited the web site

www.snappyautoinsurance.com. Further, in support of its consent defense, QuoteWizard noted that the QuoteWizard Opt In contained a Jornaya Lead ID that purportedly confirmed Mr. Mantha's visit to www.snappyautoinsurance.com. At its deposition, however, Jornaya confirmed that the Lead ID contained on the QuoteWizard Opt In had nothing to do with Mr. Mantha or to the visit of anyone to www.snappyautoinsurance.com.  Jornaya could offer no explanation as to why such Lead ID was assigned to the QuoteWizard Opt In.

QuoteWizard has asserted that Mr. Mantha opted in a website called www.snappyautoinsurance.com, in 2019 owned by a man named Adam Brown, To test this assertion, Plaintiff deposed the entities involved in providing the Mantha Opt In. QuoteWizard purchased the Mantha Opt In from RevPoint Media, LLC. ("RevPoint") In deposition, RevPoint's Rule 30(b)(6) witness, Michael Fishman confirmed that he purchased the purported Mantha lead from Plural Marketing Solutions, Inc. ("Plural"). *See Deposition of Michael Fishman at 17:8-19,* attached as Exhibit 2. Plural's 30(b)(6) witness George Rios testified that he did not purchase the purported Mantha lead from Adam Brown, but rather it came from an entity in Bosnia known as Fenix Media Solutions. *See Deposition of George Rios at 9:5-10:20,* attached as Exhibit 3.

Notwithstanding that Plural confirmed it purchased the lead from Bosnia, QuoteWizard deposed Adam Brown and his business partner Justin Cohen regarding www.snappyautoinsurance.com. Mr. Brown testified that he has not used the snappyautoinsurance website to generate leads since 2015-2016; that he did not sell the Mantha lead and he had never heard of RevPoint, Plural or Fenix Media Solutions in Bosnia; and that had his database searched for any reference to the Plaintiff, his email or his phone number and found nothing. *See Deposition of Adam Brown* at 20:10-21; 136:18 and 14:16-15:23, attached as

10

Exhibit 4. Mr. Cohen likewise testified that he had never heard the name Joe Mantha before this lawsuit had no involvement with the Mantha lead, and that he did not own the www.snappyautoinsurance.com website. *See Deposition of Justin Cohen* at 105:19-24 and 107:2-6, attached as Exhibit 5.

In a case in which all roads lead to Bosnia, a detour through Mr. Mantha's computer is highly inappropriate. QuoteWizard's demand to search for non-existent documents should again be rejected by this Court—particularly given that the purported IP addresses from which the lead was allegedly created are not connected to Mr. Mantha. If the above was not enough to discredit QuoteWizard's consent defense, and its Rule 11 threat against Plaintiff's counsel, at its recent 30(b)(6) deposition, QuoteWizard ***admitted*** that the QuoteWizard Opt In was ***not*** created before it was placed on notice of Mr. Mantha's claim. Rather QuoteWizard admitted that the document upon which it has threatened counsel with Rule 11 sanctions was created ***after*** QuoteWizard received the litigation notice letter of plaintiff's counsel dated September 4, 2019. *See Deposition of Matthew Weeks at* 10:25-11:19, attached as Exhibit 6.

Plaintiff, moreover, has supplemented his responses to interrogatories to make clear that he is not relying on an expert as proof that he did not visit the www.snappyautoinsurance.com website that was the source of his purported consent. *See Plaintiff's Answers to Defendant's First Set of Interrogatories as Supplemented*, attached as Exhibit 7 at ¶ 22. ("The Plaintiff has personally reviewed the internet search and browser histories on all of his devices and can personally attest that no responsive documents are in his possession or control. The Plaintiff will not be relying on any expert for this simple proposition. At this time, Plaintiff will not be relying on Mr. DePue for any expert testimony at summary judgment or trial.")

11

This Court *denied* QuoteWizard's blanket demand for Mr. Mantha's devices. This Court noted, however, that *if* Mr. Mantha were to rely on an expert to testify as to what was found- or not found- on his devices, that the information relied upon by the expert would have to be shared with QuoteWizard and its expert. In response, Mr. Mantha agreed that he would not offer the forensic expert who imaged his devices as an expert going forward. Mr. Mantha also agreed that he would not withhold from production any relevant evidence contained on his devices- to the extent it exists. Chief Magistrate Judge Kelley was not only not "clearly erroneous" in her ruling, she was entirely correct.

### III.  QuoteWizard's Arguments Not Raised Before Magistrate Judge Kelley Should be Rejected as Untimely and Because they are Meritless

QuoteWizard's sole argument to Magistrate Judge Kelley was that this Court had ordered Plaintiff to provide an image of his hard drive and iPhone (in spite of the Court denying them production of the computers). QuoteWizard's arguments raised in its objection that were not raised before Chief Magistrate Judge Kelley should be rejected out of hand, both because they were not raised before Chief Magistrate Judge Kelley, "[w]e hold categorically that an unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate" *Paterson-Leitch Co.,* 840 F.2d at 990-91 (1st Cir. 1988) and because they are meritless. QuoteWizard faults Plaintiff's response that he has no responsive documents as somehow being different from saying no documents exist is a distinction without a difference. Moreover, Mr. Mantha's deposition testimony does nothing to support the notion that he has his browser history and is withholding it. Nor should QuoteWizard be heard to argue, which it did not raise with before Magistrate Judge Kelley, that Mr. DePue's work as a non-testifying expert is discoverable.

The case cited for QuoteWizard's belief it is entitled to the full image of Mr. Mantha's computer is entirely distinguishable. In *Dr Sys. v. Fujifilm Med. Sys. USA, Inc.*, 2007 U.S. Dist. LEXIS 106276 (S.D. Cal. Feb. 22, 2007), cited by QuoteWizard in ECF 103, at 5, fn 4, the party seeking discovery of documents provided to an expert had already taken the proposed expert witnesses deposition, and then the party resisting production withdrew the expert's designation. The court ruled that by providing the documents to a testifying expert, any attorney-client privilege attaching to the documents had been waived. Here, Plaintiff is not asserting attorney-client privilege subject to waiver—rather this Court has ordered "there is no basis to require the production of electronic devices"—which is exactly what providing the forensic imaging would constitute. Mr. DePue's work for Plaintiff's counsel as a non-testifying expert is work product, but the Court need to reach that distinction on the narrow issue presented by QuoteWizard's request for browser history.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that *Defendant's Objections to Magistrate Judge's Order Denying Defendant's Motion to Enforce Order and for Sanctions* (ECF No. 100) should be overruled.

                PLAINTIFF,

                By their attorneys

                */s/ Edward A. Broderick*
                Edward A. Broderick
                BRODERICK LAW, P.C.
                176 Federal Street, Fifth Floor
                Boston, MA 02110
                Telephone: (617) 738-7080
                ted@broderick-law.com

>Matthew P. McCue
>THE LAW OFFICE OF MATTHEW P. MCCUE
>1 South Avenue, Suite 3
>Natick, MA 01760
>Telephone: (508) 655-1415
>mmccue@massattorneys.net
>
>Anthony I. Paronich
>PARONICH LAW, P.C.
>350 Lincoln Street, Suite 2400
>Hingham, MA 02043
>(508) 221-1510
>anthony@paronichlaw.com
>
>Alex M. Washkowitz
>Jeremy Cohen
>CW LAW GROUP, P.C.
>188 Oaks Road Framingham, MA 01701
>alex@cwlawgrouppc.com

Date: October 8, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2020, I electronically transmitted the foregoing to all counsel of record via the electronic filing system.

>By:  */s/ Edward A. Broderick*
>      Edward A. Broderick