# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH MANTHA, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>QUOTEWIZARD.COM, LLC,<br><br>Defendant. | Civil Action No. 1:19-cv-12235-LTS-PK |

## JOINT LETTER REPORT QUOTEWIZARD'S SECOND RESPONSE FOR PRODUCTION OF DOCUMENTS

On October 19, 2020, this Court allowed certain discovery from QuoteWizard as set forth in the Electronic Clerk's Notes. *See* ECF #112. QuoteWizard fully and timely complied with the same. Plaintiff now seeks additional discovery relating to a request denied by the Court without prejudice. *See id*. (denying Request No. 26 without prejudice). The Parties, through counsel, conferred pursuant to LR 7.1(a) by e-mail and were unable to narrow or resolve their dispute as to the issues summarized below. For the Court's reference, the following documents are attached hereto: **Exhibit 1,** QuoteWizard's Supplemental Response to Plaintiff's Second Request for the Production of Documents; **Exhibit 2**, QuoteWizard's Response to Plaintiff's Second Request for the Production of Documents, and **Exhibit 3,** Declaration of Plaintiff's Counsel. **Exhibit 4** is the text history between Plaintiff and Drips. **Exhibit 5** is an e-mail exchange between counsel about the documents produced under RPD No. 25. **Exhibit 6** is the Declaration of Tricia Winkler dated December 14, 2020.

## I. RESPECTIVE POSITIONS OF THE PARTIES

### A. Plaintiff's Position

The TCPA strictly regulates telemarketing to consumers via text message via an automatic telephone dialing system, or to consumers whose cell phones are listed on the National Do Not Call Registry. *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 U.S.C. § 227(b)(3); 47 U.S.C. § 227(c)(1). The TCPA provides for statutory damages that may be trebled if the conduct at issue was "knowing or willful." *See* 47 U.S.C. § 227(b)(c).

Crucial to the issue as to whether QuoteWizard's alleged illegal telemarketing conduct was "knowing or willful" is whether it knew, or should have known, that it was sending text telemarketing messages to consumers who never consented to receive such texts. It is QuoteWizard's position in this litigation, that not only did consumers consent to receive text telemarketing messages, but they *all* previously provided to QuoteWizard their prior express consent signed and in writing to receive telemarketing texts *specifically from QuoteWizard itself*. QuoteWizard also claims it is immune from liability in this case due to a purported "safe harbor" or "good faith" defense. In other words, QuoteWizard claims it is not liable for any alleged TCPA violations to Mr. Mantha or the class, because it in good faith thought consumers had consented to receive such texts. Accordingly, what QuoteWizard knew about consumers' complaints and DNC requests, as to their telemarketing texts, and when it knew it, is relevant on multiple issues relating to consent, willfulness, good faith and safe harbor.

To explore these issues, Plaintiff sought from QuoteWizard any Do Not Call requests made by consumers who received telemarketing texts via Drips on behalf of QuoteWizard, and documents relating or referring to these DNC requests. Of course, if consumers did in fact consent to receive text telemarketing messages directly from QuoteWizard itself, no-one would

complain or request that such calls cease. Alternatively, if many consumers did, in fact, complain, such would belie QuoteWizard's contention that it only sent to texts to consumers who explicitly requested such texts, and that it otherwise acted in good faith without any reason to doubt the veracity or authenticity of data it purchased from third parties.

On October 19, 2020, this Court heard argument and ordered QuoteWizard to produce all telemarketing complaints including "Do Not Call Requests" relating to telemarketing conducted on behalf of QuoteWizard by Drips. *See* ECF #112. The Court ordered the parties to meet and confer as to the scope of documents relating to QuoteWizard's investigation and response as to telemarketing complaints. *Id.* The Court denied without prejudice Plaintiff's request for documents referring or relating to DNC requests. *Id.*

On November 9, 2020, QuoteWizard responded to this Order with its Second Supplemental Response to Plaintiff's Second Request for the Production of Documents. *See* Exhibit 1. As to telemarketing complaints, QuoteWizard denied that any documents relating to such complaints were in its possession. As to DNC requests made by consumers after they received QuoteWizard telemarketing texts, however, QuoteWizard produced three excel spreadsheets. *See* Exhibit 1 at Supplemental Response #25. Each spreadsheet contained *over* **16,000** DNC requests made by consumers who received telemarketing texts delivered by Drips on behalf of QuoteWizard. In total, between January of 2018 and October of 2020, over **48,000** consumers who received QuoteWizard telemarketing texts demanded that such calls cease. The exact identity of these complaining consumers remains unknown as QuoteWizard- without Court order- redacted the phone numbers of these consumers claiming such was required for "privacy and confidentiality" reasons. QuoteWizard also labelled the DNC requests as

3

"CONFIDENTIAL" per the Court's Default Protective Order. *See* Exhibit 3, Declaration of Plaintiff's Counsel.

Thereafter, Plaintiff's counsel sought documents from QuoteWizard 'relating or referring' to the massive number of DNC requests received by QuoteWizard from recipients of its telemarketing texts. One would think that after receiving 48,000 demands from consumers to "Do Not Call", QuoteWizard would have taken some actions to investigate to determine why so many consumers were complaining and whether, in fact, these complaining consumers did request to receive QuoteWizard's telemarketing texts. QuoteWizard refused to produce anything other than the 48,000 DNC requests, noting that Plaintiff's request for such documents was denied by this Court previously. In response, Plaintiff's counsel noted the Court's prior denial was "without prejudice" and that the Court had previously ordered the parties to meet and confer to determine the scope of documents relating to consumer complaints relating to telemarketing complaints. In response, QuoteWizard remarkably claimed that DNC requests were not "complaints" and refused to produce documents relating or referring to the 48,000 DNC requests of recipients of QuoteWizard telemarketing texts. *See* Exhibit 3, Declaration of Counsel.

Finally, the excel spread-sheets produced by QuoteWizard contained five columns of information. Each column contained a header that explained the data contained in the respective column. One of the columns included a header labelled "Tier." The data listed under "tier" then contained numbers ranging from 0-3. Following receipt of the DNC lists, Plaintiff's counsel asked QuoteWizard to explain the meaning of the Tier ratings in the DNC lists. QuoteWizard refused, noting that Plaintiff's counsel could pursue that information via deposition.[1]

---

[1] Discovery per Order of the Court is to expire on December 18, 2020. Recently, QuoteWizard informed Plaintiff's counsel that it would make its 30(b)(6) witness available on December 18, 2020. The strategy here is transparent. Refuse to provide Plaintiff with access to documents, for example, that would explain the Tier assignments (0-3) to QuoteWizard DNC requests and force Plaintiff's counsel to go into the

**B. QuoteWizard's Position**

The Court ordered that QuoteWizard produce certain information and documents via ECF No. 112, and QuoteWizard fully and timely complied with the same. Included in QuoteWizard's timely production were documents in response to RPD No. 25—which were records provided by Drips to QuoteWizard reflecting consumers who had made do not call requests after being contacted by Drips on behalf of QuoteWizard. As set forth below, these requests relate to *future* communications and are not indicative of a lack of consent to be contacted in the first place and do not represent consumer "complaints." *See* Declaration of Tricia Winkler (Ex. 6).

Likely recognizing that do not call requests had no relation to alleged lack of consent, the Court denied without prejudice Request No. 26, relating to "investigation" into the do not call requests. (Because the do not call requests do not signal anything wrong with the original lead/consent, this is an inexplicable discovery request; there is no need to investigate a consumer's

---

QuoteWizard 30(b)(6) deposition blind on that issue. Then, when Plaintiff seeks to follow up after that deposition to obtain relevant documents, QuoteWizard will note that discovery has closed. The Court should not countenance gamesmanship in this regard/

> **QuoteWizard's Response:** It is unclear what Plaintiff is alleging. Plaintiff noticed the re-deposition of QuoteWizard on December 1, 2020 and is required to confer with QuoteWizard regarding the Rule 30(b)(6) topics under the revised rule but only did so on December 14, 2020. Plaintiff asked QuoteWizard to designate a date for the deposition and, given the short amount of notice, QuoteWizard designated December 18th because it needs time to confer regarding the topics and prepare its witnesses. Plaintiff did not object but freely accepted that date. Plaintiff also refers to the need for additional documents but QuoteWizard has fully complied with its discovery obligations, including timely producing all documents required by ECF No. 112, and Plaintiff is not entitled to any further documents.
>
> Plaintiff's constant fishing expeditions are an attempt to find a class theory where none exists. Plaintiff has consistently claimed throughout this case that his class theory is that Plaintiff's lead is fraudulent (i.e. fraudulently created by QuoteWizard) and that QuoteWizard fraudulently created the leads of the putative class members. Plaintiff now apparently seeks to execute a last minute change to claim that QuoteWizard negligently purchases leads without doing due diligence into the consent attached to each lead. But this was not the theory that Plaintiff pleaded in his operative Complaint and he cannot seek late discovery on this new theory. He has received all documents in Phase I discovery to which he is entitled.

5

decision to opt out of further communications and, since further contact is arguably prohibited at that time, it is unclear what such investigation would even entail.)

Unhappy with the Court's original decision denying No. 26, Plaintiff's counsel then informed QuoteWizard that Plaintiff was seeking documents in response to this request *that the Court had denied*. QuoteWizard noted to Plaintiff's counsel that the Court had denied the request; Plaintiff's counsel did not even attempt to articulate a basis for revisiting the Court's prior denial and instead has moved forward this frivolous motion for reconsideration.

As noted, after hearing, this Court (Kelley, M.J) **denied** the very request that Plaintiff now seeks to compel—RPD #26 (Produce all documents referring or relating to Do Not Call requests made by consumers in any way relating to text telemarketing conducted on your behalf by Drips). To be clear, the Court did not deny the request without prejudice to seeing what QuoteWizard produced in response to RPD No. 25 ("Produce all consumer requests that future telemarketing calls cease ("Do Not Call") provided to you by anyone in any way relating to text telemarketing conducted on your behalf by Drips."). Nor did the Court require the Parties to confer in any respect concerning RPD No. 26. Rather, where the Court determined that a request about QuoteWizard's investigation into complaints should be revisited after the complaints are produced, it expressly noted the same rather than denying the request. *See* No. 112 ("Concerning RPD #17, defendant shall produce all documents evidencing any complaints received by the QuoteWizard from anyone, including any governmental agency, regarding text messages sent by QuoteWizard or on QuoteWizard's behalf using Drips technology. Concerning RPD #18, after receipt of the documents from RPD #17, the parties shall further negotiate what documents shall be produced concerning QuoteWizard's investigation of and response to any complaints.").

Thus, the Court outright denied the request to which Plaintiff again seeks to compel a

6

response. Plaintiff is therefore seeking reconsideration of the Court's denial of RPD #26. But the Court denied the request after a thorough hearing and after allowing many other requests. Plaintiff has not identified any changed circumstances that would justify this Court revisiting its prior denial of this Request. QuoteWizard also explains below why this request is irrelevant and otherwise not subject to discovery, but Plaintiff's request to compel a response to RPD No. 26 should not even be considered since it has already been denied.

Moreover, Plaintiff's counsel's declaration about the events after the production of documents under RPD No. 25 is untrue. After Plaintiff's counsel received the documents, he asked numerous questions about the documents that QuoteWizard was under no obligation to respond to but did so anyway. *See* Ex. 5. QuoteWizard's counsel also told Plaintiff's counsel that should he have any questions about the documents or data therein that those can be addressed at QuoteWizard's re-deposition (scheduled for December 18, 2020) as this was the most efficient manner rather than QuoteWizard's counsel going back and forth between Plaintiff's counsel and QuoteWizard employees to shed further light on the do not call records. Therefore, Plaintiff's counsel's attestations that QuoteWizard "refused" to work with Plaintiff to provide Plaintiff additional information beyond what was required by ECF No. 112 is simply not true. *See* Ex. 5.

If Plaintiff's request for the Court to reconsider the denial of RPD No. 26 is considered even though there are no changed circumstances or justification, the request should be again denied. Pursuant to ECF No. 112, QuoteWizard produced a list of "do not call" requests made by consumers to Drips, its texting vendor, after consumers were contacted. As explained below, "do not call" requests are not, as Plaintiff claims them to be, "complaints" indicating that QuoteWizard did not have permission to contact consumers. Rather, "do not call" requests are opt-out requests by consumers—the functional equivalent of unsubscribing to emails. It is not indicative of a

7

consumer "complaint" and certainly does not bear on an alleged lack of consent. Moreover, Plaintiff never made an opt-out or do not call request to QuoteWizard; he freely interacted with and solicited further contact with QuoteWizard. *See* Ex. 4; Ex. 6. Thus, not only is the request irrelevant to consent, it is not even relevant to Plaintiff. *See* Ex. 6 (Winkler Dec.), ¶¶ 5-6 ("'do not call' records reflect consumers who have consented to receive communications from QuoteWizard but who then requested no further contact. It is the functional equivalent of an 'opt out[]'"; requests "are not complaints from those consumers and do not indicate that the consumers did not originally consent to be contacted"); *id*., ¶ 7 (Mantha did not make a "do not call" request).

## II. THE DISPUTES AT ISSUE

The disputed discovery requests and responses are set forth below along with the respective position of each party:

> RPD #25. Produce all consumer requests that future telemarketing calls cease ("Do Not Call") provided to you by anyone in any way relating to text telemarketing conducted on your behalf by Drips.
>
> **PRIOR ACTION BY THE COURT:**
>
> In its prior Order (ECF #112), the Court granted the above request.
>
> QuoteWizard timely produced these documents to Plaintiff. Confidential consumer information was rightly redacted; that information is protected by law and, in any event, Plaintiff has no right or need to discover the identity of other consumers, at this stage of the litigation or any stage unless and until a class is certified. QuoteWizard's counsel also answered numerous questions from Plaintiff's counsel regarding the documents and indicated that Plaintiff's counsel could and should designate an appropriate topic to ask further questions if needed at the December 18, 2020 second deposition. *See* Ex. 5.
>
> RPD #26. Produce all documents referring or relating to Do Not Call requests made by consumers in any way relating to text telemarketing conducted on your behalf by Drips.
>
> **PRIOR ACTION BY THE COURT:**
>
> In its prior Order (ECF #112), the Court denied the above request without prejudice.
>
> A. **Plaintiff's Position**: QuoteWizard's compelled production evidences the fact that

8

over 46,000 consumers have complained of their receipt of QuoteWizard texts messages and have demanded that QuoteWizard stop texting them. The massive volume of these complaints destroys the credibility of QuoteWizard's contention that all recipients of its text messages explicitly consented to receive such texts and, alternatively, that QuoteWizard at all times acted in good faith with no reason to even suspect that its telemarketing conduct was violative of the TCPA. Whether or not QuoteWizard took any action whatsoever in response to its receipt of over 46,000 DNC demands goes directly to the viability of its consent defense, its claim of good faith and safe harbor, and whether its massive and repeated violation of the TCPA was knowing or willful. QuoteWizard should be compelled to respond in full to RPD #26.

As to RPD #26, QuoteWizard should be compelled to produce all documents referring or relating in any way to the DNC requests made by consumers who had received QuoteWizard telemarketing texts delivered Drips.

As to RPD #25, QuoteWizard should be compelled to produce the DNC lists without redaction, disclosing the phone numbers of the consumers who took the time to complain to QuoteWizard as to their receipt of QuoteWizard telemarketing texts. These consumers are witnesses, as well as potential class members, who can confirm whether or not they consented as alleged to receive telemarketing texts from QuoteWizard.

Further, as to RPD #25, QuoteWizard should be compelled to explain the meaning of the headers listed on the DNC lists, and the data contained therein, or produce documents that would do the same.

B. **QuoteWizard's Position:** Plaintiff's above explanation is premised on a falsehood—that a do not call request made by a consumer after Drips contacted the consumer by text message is a "complaint" about something. **This is false**. Do not call requests made by consumers to Drips after initial contact (following QuoteWizard's purchase of a lead with consent to contact) is the functional equivalent of a consumer clicking on the unsubscribe link in an e-mail to unsubscribe from further communications. It is the revoking of consent given, not a complaint that consent was never given. Plaintiff provides no factual evidence or legal authorities to support his position that these do not call requests are anything else than revoked consent. And Plaintiff's counsel certainly cannot attest to what Drips's records mean or indicate; he has no personal knowledge of the same. The Declaration of Tricia Winkler, submitted herewith, clearly explains that "do not call" requests are simply opt-outs, not complaints, and are not relevant to original consent. *See* Ex. 6.[2]

---

[2] Under the TCPA, a consumer can revoke consent given by making a do not call request to the company that contacts him or her. But in these situations, courts do not find the do not call requests relevant to the giving of the original consent, and even often find that the request does not constitute sufficient revocation of consent given. *See, e.g., Dixon v. Monterey Fin. Servs., Inc.*, 2016 U.S. Dist. LEXIS 82601, 2016 WL 3456680, at *3 (N.D. Cal. June 24, 2016) (consumer's statement to creditor of "I asked you guys not to call

9

Moreover, Plaintiff does not actually seek these documents for any issue relating to Phase I discovery on his individual claims but rather seeks to get an early start on class discovery. Notwithstanding that class discovery has not yet opened, this discovery dispute also shows the clear deficiencies in Plaintiff's class theory. Even assuming Plaintiff will prevail in showing that he did not provide valid consent to be contacted by QuoteWizard (he has not so proven), it is undisputed that each and every lead that QuoteWizard purchases is sold to it with a contractual promise that the lead comes with valid consent to contact for TCPA purposes. Plaintiff is essentially asking this Court to assume that (1) his consent was not valid (2) his consent is fraudulent (he has never identified who he believes created the allegedly fraudulent consent) and (3) all other leads sold to QuoteWizard likewise have fraudulent or invalid consent. But even if this Court could accept (1) and (2) for the sake of argument, Plaintiff has never identified a *common practice* that would lead the Court to believe that *every* lead that QuoteWizard purchases is fraudulent or illegitimate. As explained above, he falsely relies on the do not call requests for this premise, but the do not call requests do not relate to consent *at all*. They simply reflect consumers exercising a right to not be contacted *further* after providing consent. *See* Ex. 6.

Therefore, Plaintiff's attempts to fish into QuoteWizard's contacts with other consumers is to no end. He is asking this Court to burden QuoteWizard with irrelevant discovery so he can search for a needle in a haystack—of the 48,000 or so consumers who revoked consent, Plaintiff wonders if one of those consumers might also allege that they never provided valid consent in the first place. But if a consumer believes they never provided consent, a "do not call" request is in no way indicative of that. They would file a complaint (like Plaintiff) or serve a demand letter. This request, previously denied, is a complete fishing expedition to try to desperately find another consumer who believes they never provided valid consent to be contacted by QuoteWizard. It must be denied again.

Finally, Plaintiff incredibly asks this Court to order QuoteWizard to reveal the identity of the 48,000 consumers who opted out of further communication under the guise that they are "witnesses" or members of the putative class. First, this information is confidential and must remain confidential. Plaintiff's theory that these persons could be witnesses again relies on the false premise that these consumers alleged that their consent was not valid, which is not what occurred. These consumers merely asked that they not be contacted *further* after providing consent. *See* Ex. 6. And even assuming *arguendo* that a fishing expedition into each consumer could dredge up another person who claims to not have provided consent to QuoteWizard despite QuoteWizard buying their lead with consent, this does not justify a fishing expedition into 48,000 persons to find a possible needle

---

me and you can contact my attorney" created an issue of fact as to revocation under the TCPA); *Buchholz v. Valarity, LLC*, 2015 U.S. Dist. LEXIS 16490, 2015 WL 590381, at *2 (E.D. Mo. Feb. 11, 2015) (even where plaintiff told defendant to "stop calling him," finding more than a "metaphysical doubt" concerning the effectiveness of revocation of consent and concluding summary judgment was inappropriate).

in the haystack. Moreover, even if these persons could be arguably part of the putative classes (they are not, since they provided consent), Plaintiff has no need to discover their identity before a class motion is ever made much less granted. Their identity is not relevant to any Rule 23(a) or (b) factor and therefore is not appropriate for class discovery (which has not yet opened)

QuoteWizard strongly believes that Plaintiff's counsel is searching for identity of other QuoteWizard consumers to replace Mantha as the proposed class representative or add another representative plaintiff given clear deficiencies in Mantha's individual claims. This is not an appropriate purpose of discovery and QuoteWizard asks this Court to guard against such improper attempts. This data is confidential and must remain confidential.

Dated: December 15, 2020

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| Joseph Mantha, | QuoteWizard.com, LLC, |
| by his attorneys, | By its attorneys, |
| */s/Matthew P. McCue* | */s/ Kevin P. Polansky* |
| Matthew P. McCue | Kevin P. Polansky, BBO (BBO #667229) |
| The Law Office of Matthew P. McCue | Christine M. Kingston (BBO #682962) |
| 1 South Avenue, Suite 3 | Nelson Mullins Riley & Scarborough LLP |
| Natick, Massachusetts 01760 | One Financial Center, 35th Floor |
| (508) 655-1415 | Boston, MA 02111 |
| (508) 319-3077 facsimile | (t) (617)-217-4700 |
| mmccue@massattorneys.net | (f) (617) 217-4710 |
| | kevin.polansky@nelsonmullins.com |
| | christine.kingston@nelsonmullins.com |