# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH MANTHA, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>QUOTEWIZARD.COM, LLC,<br><br>Defendant. | Civil Action No. 1:19-cv-12235-LTS |

### JOINT STATUS REPORT CONCERNING DISPUTE OVER PLAINTIFF'S RESPONSES TO DEFENDANT'S WRITTEN DISCOVERY REQUESTS AND PLAINTIFF'S COMPLIANCE WITH ECF NO. 109

Pursuant to the Court's instructions at the Status Conference on April 7, 2020 (*see* ECF No. 39), Plaintiff Joseph Mantha ("Plaintiff") and Defendant QuoteWizard.com, LLC ("QuoteWizard") (together, the "Parties") hereby respectfully submit a Joint Status Report concerning their respective positions on a discovery dispute that has arisen over Plaintiff's responses to QuoteWizard's Fourth Set of Interrogatories, Fifth Set of Requests for Production of Documents, and Seventh Set of Requests for Production of Documents, as well as Plaintiff's compliance with ECF No. 109.

The Parties, through counsel, conferred pursuant to LR 37.1(a) by phone on October 26, 2020 and by e-mail on November 6 and 9, 2020. Although the Parties have reached agreement on some issues, they have been unable to narrow or resolve their dispute as to the requests and issues summarized below. QuoteWizard requests a ruling or instructions from the Court on the scope of allowable discovery for the remaining disputed requests.

For the Court's reference, the following documents are attached hereto: **Exhibit A** (QuoteWizard's fourth set of interrogatories); **Exhibit B** (Plaintiff's responses thereto); **Exhibit C** (QuoteWizard's fifth set of document requests); **Exhibit D** (Plaintiff's responses thereto); **Exhibit E** (QuoteWizard's seventh set of document requests); **Exhibit F** (Plaintiff's responses thereto); **Exhibit G** (relevant portions of Dr. Franklin Perkins School's Rule 30(b)(6) deposition); **Exhibit H** Plaintiff's Response, Supplemental Response, Amended Supplemental Response and Second Supplemental Response to Defendant's Requests for Production of Documents, dated October 23,2020, following Judge Sorokin's Order ECF 75; **Exhibit I**, January 10, 2020, Letter of Counsel, with QuoteWizard Opt-In..

## Remaining Disputes

**(1) Plaintiff's Compliance with ECF No. 109:**

> **QuoteWizard's Position:** In ECF No. 109, the Court noted that Plaintiff's expert's extracted data from Plaintiff's electronic device was within Plaintiff's possession, custody, and control for discovery purposes and therefore Plaintiff is required to search that data to respond to QuoteWizard's discovery requests and supplement the same (whether saying no further documents exist or producing the relevant data; failure to supplement at all was not an option). Plaintiff has failed to comply to date (due date was October 23, 2020). He has only supplemented responses to two responses to document requests relating to internet and browser search history for specific dates in June and August 2019, claiming the data does not contain this specific requested history. But QuoteWizard had served numerous additional discovery requests that Plaintiff to date has not supplemented his response to after searching the extracted data. Below are the requests that QuoteWizard is looking for Plaintiff to search the data and supplement a response.
>
> Plaintiff therefore has not complied with ECF No. 109 and QuoteWizard moves to compel his compliance. *See* ECF No. 109 ("[T]he Court supplements Chief Magistrate Judge Kelley's ruling by ordering (1) Mantha to search the extracted data and supplement his responses either with additional discovery or by noting there are no further responsive documents after a search of the extracted data and (2) that the extracted data falls within information in the possession, custody, or control of the Mantha for discovery purposes. Mantha shall supplement his responses by 10/23/2020.")
>
> <u>Discovery requests not supplemented to date after search of extracted data:</u>[1]

---

[1] QuoteWizard has identified the requests that most clearly need to be supplemented under ECF No. 109, but there are likely others. This is Plaintiff's obligation, well overdue.

**RPD No. 7:** Any and all notes, journals, ledgers, diaries or other compilations maintained by Plaintiff for any reason documenting communications with or from QuoteWizard.

**RPD No. 23:** Any correspondence between you and anyone else regarding auto insurance from January 1, 2019 to present.

**RPD No. 25:** Any and all documents evidencing that you requested an auto insurance quote from anyone in 2019 or 2020.

**RPD No. 28:** Copies of any correspondence you had with anyone else concerning your communications with QuoteWizard.

**RPD No. 29:** Copies of any auto insurance quotes you received in 2019 or 2020.

**RPD No. 40:** Any and all documents within the possession, custody, or control of Plaintiff's attorneys that relate to or bear on the issue of someone named Joe Mantha requesting an auto insurance quote and providing Joe Mantha's contact information in 2019 that is at issue in this case.

**RPD No. 41:** Any and all documents referenced or relied upon in your answers to QuoteWizard's Third Set of Interrogatories.

**RPD No. 42:** Any and all communications between Plaintiff and Steven Novia that relate to this Lawsuit, the Telephone Consumer Protection Act, and/or the text messages at issue.

**RPD No. 52:** Browser and search history for Plaintiff's electronic devices, including work, personal, and shared phones, computers, tablets, and iPads, in 2019 that reference auto insurance quotes or auto insurance websites.

**Plaintiff's Position:**

Defendant QuoteWizard fundamentally misconstrues both Judge Sorokin's Order in ECF 109 as well as the content of Plaintiff's discovery responses. As Judge Sorokin noted in Order 109, in its objection to this Court's Order ECF 103, denying QuoteWizard's Motion to Compel that objection was limited, as was Judge Sorokin's modification of that Order: "While the Order concisely resolved a myriad of issues, Quotewizard.com, LLC objects to only one aspect the ruling that Mantha was not withholding information or documents from his browser or

search history." ECF 109. QuoteWizard's assertion that Mr. Mantha was ordered to supplement responses to his responses to Requests for Production 7, 23, 25, 28, 29, 40, 41, 42, and 52 is simply incorrect. Plaintiff is well aware of his obligation to supplement his discovery responses, and has no need to do so as to any of the requests for which QuoteWizard seeks a supplemental response.

In response to this Order, Plaintiff did exactly what he was instructed to do, and served Response, Supplemental Response, Amended Supplemental Response and Second Supplemental Response to Defendant's Requests for Production of Documents, dated October 23, 2020 ("Plaintiff's Supplemental Response"). In Plaintiff's Supplemental response, he confirmed he did not have any saved internet search history for either June 25-27, 2019 or August 1-5, 2019, which were the only requests at issue:

> **(RPD 31) SECOND SUPPLEMENTAL ANSWER:** In accord with the Court's Order of October 9, 2020 (ECF #109), after a search of extracted data, there are no responsive documents on the browser or search history of any of Plaintiff's imaged devices evidencing his internet usage for June 25, 2019 through June 27, 2019.
>
> **(RPD 17) SECOND SUPPLEMENTAL ANSWER:** In accord with the Court's Order of October 9, 2020 (ECF #109), after a search of extracted data, there are no responsive documents on the browser or search history of any of Plaintiff's imaged devices evidencing his internet usage for August 1st through August 5th, 2019.

**Ex. H at p. 8.** Plaintiff has also unequivocally answered that he does not have any internet search history relating any insurance quote websites in his response to Defendant's Seventh Set of Requests for Production of Documents. Contrary to QuoteWizard's claim, this request requires no supplementation per Order 109, which was issued on October 9, 2020, and Plaintiff's timely response to QuoteWizard's was served on October 21, 2020:

> 52. Browser and search history for Plaintiff's electronic devices, including work, personal, and shared phones, computers, tablets, and iPads, in 2019 that reference auto insurance quotes or auto insurance websites.

4

> **ANSWER:** OBJECTION: Plaintiff objects to this request as it is far in excess of the number (2) of sets of document requests permitted by permitted by Local Rule 26.1(c), without leave or court. Plaintiff further objects to this request as it is overbroad and not calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this request noting that the Plaintiff was questioned at length at his deposition as to his internet use specific to auto insurance, and has answered similarly themed interrogatories under oath. Plaintiff further objects to this request as it is overbroad, oppressive and not proportionate to the needs of this case. Subject to these objections and answering further, the sought-after invasion of Mr. Mantha's privacy is particularly egregious as discovery in this action, including depositions of the lead brokers and the actual subscribers to the IP addresses listed on Mr. Mantha's lead information, have proven that the lead did not come from Mr. Mantha, or from any computer with any IP address subscribed to Mr. Mantha, or to anyone associated with Mr. Mantha. As there is zero evidence that Mr. Mantha's computer or phone systems were used in any way to consent to the text telemarketing messages at issue, QuoteWizard's continued campaign to obtain access to these systems is pure harassment. Answering further, and consistent with his prior sworn testimony that he did not consent to receive telemarketing texts from QuoteWizard, and that he did not request auto insurance quotes from anyone in 2019, Plaintiff states that the requested documents do not exist.

Ex. F at 2-3.

Given that the development of the record in this case has made clear that the purported consent relied upon by QuoteWizard did not come from Mr. Mantha, QuoteWizard's motion seeking documents relating to non-existent consent evidence from Mr. Mantha has crossed into harassment. Since the outset of the case, QuoteWizard insisted it had Mr. Mantha's consent to send him texts offering auto insurance which Mr. Mantha allegedly provided at www.snappyautoinsurance.com. At the Case Management Conference, QuoteWizard represented to the Court that it was prepared to *immediately* move for summary judgment on the consent claim. It was so confident in its consent defense that it even threatened Plaintiff's counsel with Rule 11 sanctions for having filed a frivolous lawsuit in light of the consent it purportedly possessed. The document that QuoteWizard claimed evidenced Mr. Mantha's

consent to receive telemarketing texts is referred to herein as the "QuoteWizard Opt In." The QuoteWizard Opt In was originally produced to Mr. Mantha as an attachment to the January 10, 2020, letter of Kevin Polansky, Esq., counsel to QuoteWizard, that threatened to seek Rule 11 sanctions against Mr. Mantha's counsel for filing a frivolous lawsuit. *See* Exhibit I, January 10, 2020, Letter of Counsel, with QuoteWizard Opt-In. Given the gravity of defense counsel's Rule 11 allegation, and although it is QuoteWizard who bears the burden of proof to prove consent in a TCPA case by clear and convincing evidence, Plaintiff's counsel immediately commenced discovery to explore QuoteWizard's consent defense, and to disprove the information on the QuoteWizard Opt In. Discovery obtained to date has been devastating to QuoteWizard's consent defense.

    First, in reliance on the QuoteWizard Opt In, QuoteWizard claimed that Mr. Mantha utilized a computer assigned the IP address 96.242.xxxxxx to consent to receive telemarketing texts on a web site called www.snappyautoinsurance.com. *Id.* Mr. Mantha denied under oath any connection to this website or to this IP address. A subpoena to the telecommunications carrier for the IP address confirmed it was assigned to someone in New Jersey. QuoteWizard deposed this individual who confirmed that he never met Mr. Mantha and never visited www.snappyautoinsurance.com. QuoteWizard then changed its story and claimed that Mr. Mantha actually visited www.snappyautoinsurance.com on a different date from a different IP address. Again, Mr. Mantha denied any visit to this website and any connection to the new IP address offered by QuoteWizard as proof of his consent. Similarly, a telecommunications subpoena confirmed the IP address was not assigned to Mr. Mantha. Rather, it was assigned to a woman in Worcester, who QuoteWizard then deposed and who, similarly, confirmed no connection to Mr. Mantha and that she had never visited the web site

6

www.snappyautoinsurance.com. Further, in support of its consent defense, QuoteWizard noted that the QuoteWizard Opt In contained a Jornaya Lead ID that purportedly confirmed Mr. Mantha's visit to www.snappyautoinsurance.com. At its deposition, however, Jornaya confirmed that the Lead ID contained on the QuoteWizard Opt In had nothing to do with Mr. Mantha or to the visit of anyone to www.snappyautoinsurance.com.  Jornaya could offer no explanation as to why such Lead ID was assigned to the QuoteWizard Opt In.

QuoteWizard has asserted that Mr. Mantha opted in a website called www.snappyautoinsurance.com, in 2019 owned by a man named Adam Brown. To test this assertion, Plaintiff deposed the entities involved in providing the information compiled in the QuoteWizard Opt In. QuoteWizard purchased Mr. Mantha's data from RevPoint Media, LLC. ("RevPoint") In deposition, RevPoint's Rule 30(b)(6) witness, Michael Fishman confirmed that he purchased the purported Mantha lead from Plural Marketing Solutions, Inc. ("Plural"). *See Deposition of Michael Fishman at 17:8-19,* previously filed at ECF 107-2. Plural's 30(b)(6) witness George Rios testified that he did not purchase the purported Mantha lead from Adam Brown, but rather it came from an entity in Bosnia known as Fenix Media Solutions. *See Deposition of George Rios at 9:5-10:20,* previously filed at ECF 107-3.

Notwithstanding that Plural confirmed it purchased the lead from Bosnia, QuoteWizard deposed Adam Brown and his business partner Justin Cohen regarding www.snappyautoinsurance.com. Mr. Brown testified that he has not used the snappyautoinsurance website to generate leads since 2015-2016; that he did not sell the Mantha lead and he had never heard of RevPoint, Plural or Fenix Media Solutions in Bosnia; and that had his database searched for any reference to the Plaintiff, his email or his phone number and found nothing. *See Deposition of Adam Brown* at 20:10-21; 136:18 and 14:16-15:23*,* previously

7

filed at ECF 107-4. Mr. Cohen likewise testified that he had never heard the name Joe Mantha before this lawsuit had no involvement with the Mantha lead, and that he did not own the www.snappyautoinsurance.com website. *See Deposition of Justin Cohen* at 105:19-24 and 107:2-6, previously as ECF-107-5.

In a case in which all roads lead to Bosnia, a detour through Mr. Mantha's computer is highly inappropriate. QuoteWizard's demand to search for non-existent documents should again be rejected by this Court—particularly given that the purported IP addresses from which the lead was allegedly created are <u>not</u> connected to Mr. Mantha. If the above was not enough to discredit QuoteWizard's consent defense, and its Rule 11 threat against Plaintiff's counsel, at its recent 30(b)(6) deposition, QuoteWizard ***admitted*** that the QuoteWizard Opt In was ***not*** created before it was placed on notice of Mr. Mantha's claim. Rather QuoteWizard admitted that the document upon which it has threatened counsel with Rule 11 sanctions was created ***after*** QuoteWizard received the litigation notice letter of plaintiff's counsel dated September 4, 2019. *See Deposition of Matthew Weeks at* 10:25-11:19, previously filed at ECF 107-6.

Finally, QuoteWizard has entirely disregarded the limitations on discovery set forth in Local Rule 26.1(c):

> **Discovery Event Limitations.** Unless the judicial officer orders otherwise, the number of discovery events shall be limited for each side (or group of parties with a common interest) to 10 depositions, 25 interrogatories, 25 requests for admissions, and 2 separate sets of requests for production. For purposes of determining the number of interrogatories propounded, subparts of a basic interrogatory which are logical extensions of the basic interrogatory and seek only to obtain specified additional particularized information with respect to the basic interrogatory shall not be counted separately from the basic interrogatory.

QuoteWizard has served seven sets of document requests and four set of interrogatories, including 37 separately numbered interrogatories—to which Plaintiff objected as to the failure to comply with Local Rule 26.1(c). QuoteWizard has additionally deposed Mr. Mantha twice, and has deposed his wife Melisa Mantha, a friend of Mr. Mantha who shared his knowledge as to the TCPA, and Mr. Manta's employer. QuoteWizard's claim that Mr. Mantha has not complied with his discovery obligations is baseless. The Court should preclude QuoteWizard from obtaining the discovery sought as it has failed to seek relief from Rule 26.1(c). *Advanced Sterilization Prods. v. Jacob*, 190 F.R.D. 284, 286 (D. Mass. 2000)(precluding 13th deposition for failure to seek leave to exceed limits in Local Rule 26.1(c)).

**Interrogatory No. 36:** Identify and provide a list of names of employees, independent contractors, and/or agents of Dr. Franklin Perkins School who had access to your cell phone number or called your cell phone number in 2019, or whom you called from your cell phone number in 2019, including in your answer their names, positions of employment relative to Dr. Franklin Perkins School, and any number from which they may have called or did call your cell phone number in 2019, or the number(s) you called in 2019, including their business and personal numbers.

**QuoteWizard's Position:** Plaintiff has not provided a response to this request to date. Therefore, QuoteWizard moves to compel a response.

QuoteWizard seeks information and documents concerning Mantha's use of his cell phone in connection with his employment as a defense to Mantha's Count 2, which claims that his cell phone was on the National Do Not Call registry and QuoteWizard illegally made two or more telephone solicitations to it. A cell phone number does not qualify as "residential" such to make out a "do no call" TCPA claim if the plaintiff uses the cell phone primarily or substantially for business/employment. *See*, *e.g.*, *Mattson v. Quicken Loans, Inc.*, 2019 WL 7630856, at *6 (D. Or. Nov. 7, 2019).

Mantha is the Director of Residential Services at the Dr. Franklin Perkins School ("Perkins"). Perkins has (among other programs) an elementary, middle, and high schools for students who have "behavioral needs or social and emotional well-being needs." Approximately 50-60 of the students live on campus year-round. *See* Perkins Rule 30(b)(6) Tran., pp. 7-9, 17, 46. The Residential Division of Perkins relates to oversight of the six group homes where the students live on campus, and there are approximately 100 to 110 employees in the Residential Division. *Id*., pp. 42-45. Mantha, as Director of Residential Services, is "responsible" for all of these employees and they are "within his scope." *Id*., pp. 43-44. Because Mantha uses his cell phone in connection with his employment, he is

one of about 15 to 20 of the 351 employees who receives a reimbursement from Perkins for his cell phone use. *See id.*, pp. 80-81.

Based on the "on call" lists that Perkins maintained in case of emergencies at the group homes (on which Mantha and his cell phone number are designated), QuoteWizard to date has isolated at least **1,400 calls** that Mantha made or received in 2019 with his cell phone in connection with his employment. To date, however, QuoteWizard has been provided only with the cell phone numbers for "administrators" at Perkins school. But QuoteWizard is seeking *any* employee at Perkins who called Mantha's cell phone beyond just "administrators." Mantha has refused to respond to this request and is in breach of his discovery obligations. As noted, there are over 100 employees within Mantha's scope and it is almost certain that some or many of these employees called Mantha on his cell phone in 2019. QuoteWizard cannot obtain the employees' numbers such to cross-reference against Mantha's cell phone records by any other means besides from Mantha directly. QuoteWizard is simply asking Mantha to produce the names and phone numbers for any employee, agent, or contractor of Perkins who called in his cell phone in 2019, not just administrators.

**Plaintiff's Position:** As noted above, QuoteWizard's interrogatory 36 is well in excess of the limit of 25 interrogatories set by Local Rule 26.1(c), and for this reason alone, QuoteWizard's motion to compel a further response should be denied. Mr. Mantha produced the Residential On Call Schedules for January-October of 2019 at MANTHA 549-552, which include cell phone numbers of administrators who might call him after work hours in the event of an emergency. Nothing more should be required.

**(2) Interrogatory No. 37:** Identify the telephone numbers used for the "on call" system at Dr. Franklin Perkins School in 2019.

**QuoteWizard's Position:** Because Mantha and his employer both testified that Mantha is "on call" at Perkins on nights and weekends throughout the year, with his cell phone number being his designated number to call (and he has no home phone), QuoteWizard seeks to learn the number(s) that his employer uses as the "on call" number(s). If there was an emergency, Mantha would likely have called the on call number(s) or it would have called him. This is relevant to Mantha's business/employment use of his cell phone, which is a defense to his Count 2 claim that assumes his cell phone was a residential line. Plaintiff has not answered this interrogatory to date, and therefore QuoteWizard moves to compel a response. (Plaintiff has only produced on call schedules for certain parts of 2019, but this does not address whether Perkins maintains on call numbers not identified in the schedules.)

10

**Plaintiff's Position:**

As noted above, QuoteWizard's interrogatory 36 is well in excess of the limit of 25 interrogatories set by Local Rule 26.1(c), and for this reason alone, QuoteWizard's motion to compel a further response should be denied. Contrary to Defendant's claim, Mr. Mantha produced the Residential On Call Schedules for January-October of 2019, which include cell phone numbers of administrators who might call him after work hours in the event of an emergency at MANTHA 549-552. These documents give QuoteWizard on call schedules well before and after after Mr. Mantha received an unsolicited text promoting QuoteWizard. Nothing more should be required.

(3) **RPD No. 45:** Any and all documents showing credits or payments requested by you and/or given to you by Dr. Franklin Perkins School in 2019 for your use of your cell phone and/or cell phone data in connection with or related to your employment.

**QuoteWizard's Position:** Perkins's Rule 30(b)(6) deponent testified that Mantha receives a monthly credit for his cell phone usage in connection with his employment. QuoteWizard seeks these documents reflecting these credits (not provide by Perkins) to support its argument that Mantha uses his cell phone primarily or substantially for employment. Plaintiff has not responded to this request. Therefore, QuoteWizard moves to compel Plaintiff to respond.

**Plaintiff's Position:**

Plaintiff testified in his deposition that he received $30 per month towards his cell phone bill, which was confirmed by his employer, the Dr. Franklin Perkins School in deposition. Mr. Mantha has offered to stipulate that this was the amount of the reimbursement throughout 2019. No other discovery is needed or should be ordered as to this limited factual point.

(4) **RPD No. 49:** A copy of the imaging of Plaintiff's electronic devices made by Phil DePue.

**QuoteWizard's Position:** Plaintiff has refused to produce the imaging to date. QuoteWizard requires the imaging because it believes that the imaging will contain proof that Mantha provided his personal information and solicited contact that led to QuoteWizard contacting him, even if this was not done on the exact date range in June or August 2019 that records suggest it may have occurred.

QuoteWizard initially requested browser and search history for Mantha's electronic devices for periods in which it was suspected that he provided the consent at issue—in June or August 2019. Mantha has claimed that he has no browser or search history for those very specific time periods. Given that it is possible that Mantha provided the consent outside of the limited time periods previously requested, QuoteWizard has asked Plaintiff's counsel to identify what of his browser and search history *have been* preserved and are on the extracted data from his withdrawn expert. Plaintiff's counsel has curiously refused to make this known. QuoteWizard is seeking the imaging because it cannot simply take Plaintiff's counsel's word for it that the extracted data does not contain browser and search history relevant to this case.[2]

For example, if Mantha actually provided the consent on July 31, 2019 (rather than the time period identified in QuoteWizard's RPD No. 17 based on limited knowledge of the *exact* date when consent was provided – August 1 through 5, 2019), then Mantha could be withholding proof of the same on the basis that QuoteWizard did not request that *exact* date. But because this information is within Mantha's knowledge and possession, QuoteWizard should not be forced to guess on what day Mantha may have provided the consent or take Mantha's word for it that his extracted data is not relevant to this case. It is only if QuoteWizard obtains the imaging of Plaintiff's devices that QuoteWizard can review the same for proof that he consented. Production of the imaging does not harm Mantha whatsoever. The imaging has already been created and merely needs to be served on QuoteWizard's counsel by email through a single click of a button. If Mantha fears that his imaging contains personal information categorically irrelevant to this case, then counsel can confer and agree for that to be redacted or otherwise protected prior to discovery.

**Plaintiff's Position:**

QuoteWizard's request for unfettered access to Defendant's computers, simply because he has no responsive documents to produce, is particularly outrageous as it has sought Court

---

[2] Throughout discovery in this case, Plaintiff has indicated that no responsive documents exist or otherwise fails to produce responsive documents, which later requires QuoteWizard to follow up and serve a specific document request as to a specific document to obtain it. For example, in QuoteWizard's first set of requests for production of documents, QuoteWizard sought "[a]ny and all documents evidencing that you used [your cell phone number] for business or employment purposes." Plaintiff produced no documents in response, initially or ever. At Plaintiff's deposition, he revealed for the first time that he gets a credit each and every month from his employer for his cell phone usage at work. QuoteWizard thereafter had to serve a specific document request seeking documents about the credit (which have not been received to date), despite that these documents should have been provided in response to the original document request. In short, QuoteWizard cannot take Plaintiff's word for it as to whether he has responsive documents because Plaintiff has withheld documents during the course of this case.

intervention for these records three times, and has been rejected each time. First, QuoteWizard moved before Judge Sorokin for access to Mr. Mantha's computers; this request was denied. ECF 75. Not content with this ruling, QuoteWizard then brought a "Motion to Enforce an Order of the Court and for Sanctions. ECF 82. This motion was denied by the Magistrate Judge Kelley, noting that Defendant "misconstrues Judge Sorokin's order." ECF 100. Again, not content with that ruling, QuoteWizard filed an Objection to ECF 100. The request for unfettered access to the imaging of Mr. Mantha's computer was again denied by Judge Sorokin. ECF 109. A fourth request for the same thing should meet with the same answer.

The request for unfettered access to a complete image of Mr. Mantha's computer for the supposed purpose of searching for evidence of consent (which Mr. Mantha has denied and for which there is no supporting evidence, is meritless given the burden placed on telemarketers to prove that they had the telemarketing recipient's "prior express written consent" *before* sending a text message.

Before a telemarketer can send spam texts to a consumer, it must first have the consumers' prior express signed consent to receive such telemarketing texts from a specific seller. Such consent must be signed and be sufficient to show that the consumer received "clear and conspicuous disclosure" of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver telemarketing solicitations by or on behalf of a specific seller; and having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service." *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted).

13

A telemarketer who claims it had consent to telemarket to a particular consumer bears the burden of proof, and must maintain records that prove such a claim. The FCC has cautioned that a telemarketer claiming consent "must be prepared to provide clear and convincing evidence of the existence of such a relationship." In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC 03-153 at ¶112, -- FCC Rcd. --, 2003 WL 2157853, 2003 FCC LEXIS 3673 (July 3, 2003) (emphasis added). The FCC has also noted: In the event a complaint is filed, the burden of proof [as to whether prior express consent was obtained] rests on the sender to demonstrate that permission was given. We strongly suggest that senders take steps to promptly document that they received such permission. Id. at ¶46. The FCC has warned telemarketers, specifically in the context of pre-record message telemarketing:

> Finally, should any question about the consent arise, the seller will bear the burden of demonstrating that a clear and conspicuous disclosure was provided and that unambiguous consent was obtained.

See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 27 FCC Rcd 1830 at ¶112; 2012 FCC LEXIS 794 (Feb. 12, 2012).

QuoteWizard's position that it is entitled to unfettered access to Mr. Mantha's computers and iPhone has a through the looking glass quality. Imagine a breach of contract Plaintiff asserting that it had a signed contract by a defendant, having that signature being proven not to belong to defendant (who denies under oath having ever signed, and who of course does not have a copy of the non-existent contract), pivoting and telling a court that it needed to search the defendant's files and computers for a copy of the purportedly signed contract.

Dated: December 21, 2020

Respectfully submitted,                            Respectfully submitted,

Joseph Mantha,

14

by his attorneys,

*/s/ Edward A. Broderick*
Edward A. Broderick
176 Federal Street, Fifth Floor
Boston, MA 02110
(t) (617) 738-7080
(f) (617) 830-0327
ted@broderick-law.com

QuoteWizard.com, LLC,

By its attorneys,

*/s/ Christine M. Kingston*
Kevin P. Polansky, BBO (BBO #667229)
Christine M. Kingston (BBO #682962)
Nelson Mullins Riley & Scarborough LLP
One Post Office Square, 30th Floor
Boston, MA 02109
(t) (617)-217-4700
(f) (617) 217-4710
kevin.polansky@nelsonmullins.com
christine.kingston@nelsonmullins.com

CERTIFICATE OF SERVICE

I, Christine M. Kingston, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: December 21, 2020                                    */s/ Christine M. Kingston*