UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH MANTHA, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>QUOTEWIZARD.COM, LLC,<br><br>Defendant. | Civil Action No. 1:19-cv-12235-LTS |

**DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER REQUIRING PRODUCTION OF CERTAIN RECORDS NOT IN ITS POSSESSION, CUSTODY, OR CONTROL**
**[ECF No. 132]**

Now Comes Defendant QuoteWizard.com, LLC ("QuoteWizard"), pursuant to Federal Rule of Civil Procedure 72(a),[1] and hereby respectfully files its Objections to the portion of the Order of Chief Magistrate Judge M. Page Kelley [ECF No. 132] requiring QuoteWizard to produce "to plaintiff, by February 1, 2021, all comments by consumers related to the 46,000 Do Not Call requests, whether pertaining to 'complaints' about the texts received or simply 'opt-outs,' made by consumers who received telemarking texts from QuoteWizard (including those made on behalf of QuoteWizard by Drips)." ECF No. 132. *These records are not and never have been in QuoteWizard's possession, custody, or control.* Those records are in the possession, custody, or control of Drips Holdings, LLC ("Drips"), an unaffiliated non-party, which has refused/declined

---

[1] Rule 72(a), which applies to nondispositive orders issued by Magistrate Judges, provides that "[a] party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

to produce them to QuoteWizard upon demand. Therefore, it is both clearly erroneous and contrary to law to require QuoteWizard to produce records it does not have and never had, and which it cannot obtain on demand and over which it has no control.

On this point, the challenged portion of ECF No. 132 was both procedurally and substantively erroneous; the correct standard and inquiry were not applied (it was Plaintiff's burden to show that QuoteWizard had control over documents in another entity's possession, but no attempt to make that showing was made nor was this standard applied), and even if the correct standard and burden had been applied, the undisputed facts clearly show that QuoteWizard has no control over these records. For these reasons alone, this challenged portion of the Order must be set aside. QuoteWizard cannot physically or legally comply with the Order where it does not have the records and where Drips has refused to produce them to QuoteWizard.

QuoteWizard also objects to the ruling on four additional grounds: lack of relevance/proportionality in Phase I individual discovery; beyond the scope of the dispute and record before the Court; undue burden on a non-party; and because Plaintiff is actively evading Fed. R. Civ. P. 45 limitations by seeking the documents from QuoteWizard directly after being rebuffed under Rule 45 by the entity in possession of them, Drips.[2]

## BACKGROUND

QuoteWizard was previously required to produce "do not call" records that were made by consumers to Drips, which texted consumers on QuoteWizard's behalf, despite that Plaintiff Joseph Mantha ("Mantha") never made such a request to Drips. *See* ECF No. 112 ("Concerning

---

[2] QuoteWizard does not object to the portion of ECF No. 132 that requires QuoteWizard to "provide to plaintiff documents which discuss the Do Not Call requests," as it merely requires QuoteWizard to produce what is in its possession, custody, or control—no more and no less. QuoteWizard is in the process of searching for any responsive documents and will produce the same, if any exist, by the February 1, 2021 deadline.

2

RPD #25, defendant shall produce all 'Do Not Call' requests relating to telemarketing conducted on behalf of QuoteWizard by Drips."). As such, QuoteWizard produced the only documents in its possession, custody, or control concerning "do not call" requests—which is a list of consumers, identified by telephone number (the numbers were redacted for privacy), who had made such requests to Drips. *See* January 22, 2021 Declaration of Tricia Winkler ("Winkler Dec."), ¶ 4.

These "do not call" lists were only in QuoteWizard's possession because they were sent to QuoteWizard in the ordinary course of business by Drips, who received the requests and compiled the data in the first place. *See id*. ("The 'do not call' list reflects that certain consumers made 'do not call' requests to Drips directly. Drips then sends to QuoteWizard an electronic notification with the consumer's telephone number signaling that a particular consumer wants to opt out of future text messages."). *See also id*., ¶ 5 ("QuoteWizard did not create the 'do not call' list. Rather, QuoteWizard has this list in its possession, custody, and control only because Drips sent these 'do not call' requests to QuoteWizard for QuoteWizard's records.").

Critically, the "do not call" lists contain only the consumer's telephone number and four other descriptive data points (such as date of the request), but ***do not contain the underlying consumer communications that triggered Drips to designate them as "do not call" requests***. *See id*., ¶ 4. The underlying communications that the consumers made to Drips, such to trigger Drips to mark them as "do not call" requests, are not sent to QuoteWizard by Drips in the ordinary course of business or otherwise. *See id*., ¶ 6 ("Drips does not send to QuoteWizard copies of the communications made to Drips that leads Drips to classify them as 'do not call' requests."). Accordingly, "QuoteWizard does not have these records in its possession, custody, or control and never has," nor does QuoteWizard have any "knowledge of the existence or nature of such records that may be in Drips' possession." *Id*., ¶¶ 6-7.

3

By producing the "do not call" lists to Mantha, QuoteWizard had fully satisfied Request No. 25, which requested all "do not call" requests made to Drips over the course of the relationship between Drips and QuoteWizard, and which were the only documents in QuoteWizard's possession, custody, or control. *See* ECF No. 104-1, p. 9, No. 25 (seeking "all consumer requests that future telemarketing calls cease ("Do Not Call") provided to you by anyone in any way relating to text telemarketing conducted on your behalf by Drips.").

QuoteWizard also unequivocally informed Mantha's counsel that QuoteWizard does not have in its possession, custody, or control the underlying communications made by consumers to Drips. *See*, *e.g.*, ECF No. 126-1, Dec. 16, 2020 E-mails (informing Mantha's counsel that QuoteWizard does not have these communications that would have been sent to Drips; "That information was not redacted from the DNC list and is not provided from Drips to [QuoteWizard], unless there is a specific request for that information like in the case of Mantha."). Mantha's counsel acknowledged that QuoteWizard does not have these communications in its possession, but appeared to be suggest that QuoteWizard could obtain them from Drips on request. *See id*.

Mantha's counsel then prepared a joint discovery dispute report for filing,[3] seeking additional documents relating to the "do not call" requests, but did <u>not</u> designate the 46,000 communications sent by the consumers to Drips as documents he was seeking (which QuoteWizard already told Mantha's counsel it did not have). *See* ECF No. 124, pp. 8-9. QuoteWizard responded to Mantha's arguments therein. *See id*., pp. 9-11. After the parties filed their joint report, which controlled the scope of the dispute, and without any notice to QuoteWizard or explanation or leave of Court, Mantha's counsel filed an additional document on the weekend,

---

[3] The Court has instructed the Parties to present all discovery disputes (motions to compel, etc.) via a joint filing between the Parties, *see* ECF No. 39, and the Parties completed this process many times. The obvious point of this joint filing procedure was that the entirety of the dispute, complete with necessary exhibits, would be submitted in one filing for the Court's review.

whereby he appeared to request for the first time the 46,000 communications themselves. *See* ECF No. 126, p. 5 (Prayer for Relief) (seeking "[t]he substantive comments relating to the 46,000 Do Not Call requests made by consumers who received telemarketing texts from Drips on behalf of QuoteWizard"). QuoteWizard did not respond to this unauthorized, extraneous filing since the parties had already set forth their requests and positions in the joint report and the filing was not a proper motion under the Local Rules. *See* ECF No. 124.

After hearing, at which QuoteWizard again stated that the 46,000 communications between other consumers and Drips are not in its possession, custody, and control and never have been, the Magistrate Judge ordered QuoteWizard to produce them, apparently relying both on the parties' joint report (ECF No. 124) but also the extraneous, unauthorized filing by Mantha (ECF No. 126). *See* ECF No. 132. Those communications, which are not in QuoteWizard's possession, custody, or control, were also required to be produced in extremely short order—by February 1, 2021 (or in three weeks)—despite that QuoteWizard does not have them; despite that it was an order to produce communications with approximately 46,000 consumers; and despite that, even if QuoteWizard could obtain them from Drips, a non-party, they would also have to be redacted. *See id*.

The only possible way that QuoteWizard could comply with this portion of ECF No. 132, therefore, is if Drips voluntarily agreed to produce the communications to it. To this end, QuoteWizard promptly contacted Drips's outside counsel who has appeared in this case via responding to prior subpoenas and defending a deposition, informing Drips's counsel of ECF No. 132 and requesting that Drips produce the documents forthwith.

Drips's counsel informed QuoteWizard's counsel that Drips refused/declined to produce the records to QuoteWizard because (1) ECF No. 132 did not apply to or bind Drips, and (2) the

contract between QuoteWizard and Drips did not require production or otherwise entitle QuoteWizard to the documents. Drips's counsel also stated that production would be extremely burdensome, and Mantha's counsel had already sought similar documents from Drips, but failed to follow up when Drips objected. *See* Affidavit of Counsel, ¶¶ 3-5; *see also id*., Exhibit 1 (E-mail from Drips's Counsel).[4] Drips has therefore "declined" to produce the documents to date and QuoteWizard is unable to obtain them despite its requests and demands for the same. *Id*.

## OBJECTIONS

Based on the foregoing, QuoteWizard lodges five objections to the portion of ECF No. 132 requiring it to produce "all comments by consumers related to the 46,000 Do Not Call requests, whether pertaining to 'complaints' about the texts received or simply 'opt-outs,' made by consumers who received telemarking texts from QuoteWizard (including those made on behalf of QuoteWizard by Drips)." ECF No. 132.

A. <u>The Documents Are Not in QuoteWizard's Possession, Custody, or Control</u>

First, and fundamentally, these documents are not in QuoteWizard's possession, custody, or control and never have been. QuoteWizard has no knowledge of the nature or even existence of such records because they are, or would be, in the sole possession, custody, or control of non-party Drips. *See* Winkler Dec., ¶¶ 6-7. QuoteWizard has made a demand on Drips to produce the records to it, but Drips has "declined," taking the position that the Order does not directly apply to it, and the Parties' contract does not require it. *See* Affidavit of Counsel, ¶¶ 3-5; Ex. 1 thereto. It is physically and legally impossible for QuoteWizard to comply with the Order because it cannot

---

[4] QuoteWizard reports Drips's position solely to establish that QuoteWizard has not been able to obtain the records upon request and does not control the records within the meaning of Rule 34.

QuoteWizard's contract with Drips has been produced in discovery but marked as confidential; QuoteWizard can submit a courtesy copy to the Court via hand delivery or file one under seal if the Court deems it relevant to these Objections.

produce documents that are not in its possession, custody, or control, but rather are in the possession of a non-party who refuses to produce them absent a court order binding the non-party.

It is axiomatic that a party can only be required to produce documents in its possession, custody, or control. *See* Fed. R. Civ. P. 34(a)(1) (a party may request production of documents "in the responding party's possession, custody, or control."). Where documents are not in a party's possession or custody, courts focus on "control," defined as having "the legal right or ability to obtain the information from another source upon demand." *Tyler v. Suffolk County*, 256 F.R.D. 34, 37 (D. Mass. 2009) (citation and quotation omitted).

In ordering QuoteWizard to produce these records, the Magistrate Judge either made an implicit finding that they were in its possession, custody, or control as required for production under Rule 34, or found that possession, custody, or control is irrelevant. Either position is clearly erroneous and contrary to law. It is undisputed that QuoteWizard is not in physical possession or custody of these documents, as Mantha's own counsel has acknowledged. As to control, the Magistrate Judge made no findings of fact that QuoteWizard has control over the documents in Drips's possession—*i.e.*, the legal right or ability to obtain the records from Drips upon demand. The burden is on Mantha to show that QuoteWizard has the right to control these documents, a showing he did not even attempt to make. *See*, *e.g.*, *SEC v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 472 (S.D.N.Y. 2000) ("[T]he burden is on the party seeking discovery to make a showing that the other party has control over the materials sought."); *United States v. International Union of Petroleum and Industrial Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989) (same).

Nor could Mantha ever make that showing. A showing of control typically requires proof of a (1) corporate relationship between the party from whom discovery is requested and the entity holding the documents (*i.e.*, parent or sister company, subsidiary, or other affiliation) and (2) the

7

legal <u>right</u> or ability from the former to obtain the documents from the latter.  *See*, *e.g.*, *Credit Bancorp Ltd.*, 194 F.R.D. at 472-73; *Dietrich v. Bauer*, 2000 U.S. Dist. LEXIS 11729, 2000 WL 1171132, at *3 (S.D.N.Y. Aug. 16, 2000) (principle of "control" under Rule 34 "applies where discovery is sought from one corporation regarding materials which are in the physical possession of another, affiliated corporation.").  Given the two general requirements, courts have refused to find control even in the case of sister corporations where there is a lack of legal right or ability to obtain the documents at issue.  *See Credit Bancorp Ltd.*, 194 F.R.D. at 473-76.  *See also Seifi v. Mercedes-Benz U.S.A., LLC*, 2014 U.S. Dist. LEXIS 173745, at *11-12, 2014 WL 7187111 (N.D. Cal. Dec. 16, 2014) (defendant had no duty under Rule 34 to produce documents in possession of its parent company because plaintiffs failed to meet burden of showing custody or control).

      Here, both factors are absent.  It is undisputed that QuoteWizard and Drips are unaffiliated entities who merely entered into a contractual relationship.  Therefore, Mantha necessarily cannot satisfy his burden of showing control.  Even assuming a corporate affiliation that does not exist, Mantha would still have to show that QuoteWizard had a right or ability to demand and receive these documents from Drips, but the undisputed evidence is that (1) QuoteWizard never received the underlying communications in the ordinary course of business, (2) the subject contract does not require Drips to produce them to QuoteWizard, and (3) Drips has declined/refused to produce the documents to QuoteWizard on the basis that no such right or ability exists.

      Thus, respectfully, there are two primary errors at issue here.  First, the Magistrate Judge appeared to assume that the documents were within QuoteWizard's possession, custody, or control despite QuoteWizard's unchallenged position that they were not.  This is contrary to law because the burden is on Mantha to show control, and not QuoteWizard's burden to disprove control, and this factor was not even considered much less decided.  Mantha produced no evidence to show

control and has none. This alone is enough to sustain QuoteWizard's objections. *See*, *e.g.*, *Maniscalco v. Brother Int'l Corp. (USA)*, 2010 U.S. Dist. LEXIS 20212, at *33-34, 2010 WL 762194 (D.N.J. March 4, 2010) (reversing order of magistrate judge) ("[T]he Magistrate Judge indeed misapplied the law by placing the burden on [the party from whom discovery was sought] to disprove control over the requested documents."); *Lopez v. Flores*, 2013 U.S. Dist. LEXIS 76237, 2013 WL 2385240, at *6 (E.D. Cal. May 30, 2013) (motion to compel must be denied where moving party failed to provide "factual support for [their] conclusion that the requested documents are within Defendants' custody or control").[5]

Second, even if the correct burden and standard had been applied, Mantha clearly failed to satisfy his burden, therefore rendering the decision also clearly erroneous. It is undisputed that QuoteWizard does not receive the underlying consumer communications in the ordinary course of business; that QuoteWizard has never had these documents in its possession; that Drips has refused to produce them to QuoteWizard as beyond the scope of the contract; and that there is no other apparent legal ground for QuoteWizard to obtain them from Drips. The absence of evidence that QuoteWizard controls these documents, where Mantha "bore the burden" to produce such evidence, is "fatal" to Mantha's pursuit of these documents from QuoteWizard. *See Maniscalco*, 2010 U.S. Dist. LEXIS 20212, at *36-37 ("The absence of such evidence, where Plaintiffs bore the burden, is fatal to their assertion that BIC had control over requested design and engineering related documents.").

---

[5] Relatedly, because this was actually discovery sought from a non-party, and the documents were not in the control of QuoteWizard, the Court was required but did not consider the burden on the non-party Drips, which is another error of law. *See Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing [discovery] needs.").

9

In a similar context in a Telephone Consumer Protection Act case, the court ruled that the defendant could not be ordered to produce records within the possession of a separate company, even where that company had acted as its agent and the two entities had a contractual relationship. *See Abante Rooter & Plumbing v. Total Merch. Servs.*, 2020 U.S. Dist. LEXIS 127496, at *3-5 (N.D. Cal. July 17, 2020) (seller cannot be compelled to produce vendor call records that are not within the possession or control of the seller). There, as here, plaintiff "present[ed] no reason to think that [defendant] has sufficient control or legal rights over the third parties such that their knowledge is available to [defendant] or their documents are within [defendant's] ability to obtain. … The Court really has no basis to think that [defendant's] obligations under Rules 33 and 34 extend to information known only to or documents possessed only by the third parties that [defendant] had a business relationship with." *Id*. at *4-5.

Mantha cannot seek the records from QuoteWizard because it does not possess them, does not have custody over them, and does not control them. Rather, Mantha must seek the documents via a subpoena to Drips, which he apparently has already done and then abandoned after Drips lodged objections (*see* Ex. 1 to Affidavit of Counsel).

To the extent *that* dispute between Mantha and Drips is ultimately presented to the Court at a later date, it must be viewed under the lens of non-party discovery, which is more circumscribed, and would allow Drips to be heard. *See*, *e.g.*, *Rockstar Consortium US LP & Netstar Techs. LLC v. Google Inc.*, 2015 U.S. Dist. LEXIS 139770, at *12-14, 2015 WL 5972422 (D. Mass. Oct. 14, 2015) (Rule 45 provides "special protections for non-parties," as party seeking discovery must avoid "imposing undue burden or expense on a [non-party]"). *See also Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing

10

[discovery] needs."); *LSI Corp. v. Vizio, Inc.*, 2012 U.S. Dist. LEXIS 83657, 2012 WL 1926924, at *3 (D. Mass. May 24, 2012) (discussing relevant factors to apply in determining undue burden on non-party).  The Magistrate Judge further erred, therefore, in considering the request for these documents under Fed. R. Civ. P. 26 only, where additional considerations under Rule 45 applied.  Drips, the entity who holds the records, also was required to be heard but did not get that opportunity.

In short, "[a] party is not obliged to produce, at the risk of sanctions, documents that it does not possess or cannot obtain."  *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007); *see also In re New Eng. Compounding Pharm., Inc.*, 2013 U.S. Dist. LEXIS 161652, at *35, 2013 WL 6058483 (D. Mass. Nov. 13, 2013) ("[R]espondents need only produce responsive documents within their possession, custody, or control. To the extent that a respondent does not have responsive documents within its possession, custody, or control, it may simply state so.").  The contested portion of the order, ECF No. 132, should be vacated on this basis alone.  It is undisputed that QuoteWizard is not in possession, or custody, or control of the 46,000 consumer communications that the Court ordered it to produce.

This is not only the correct decision based on the undisputed facts and the law, but is also necessary to protect Drips's interests and allow the Court to rule on an informed record.  As QuoteWizard has no knowledge of the nature or existence of these documents that may be in Drips's possession (*see* Winkler Dec., ¶ 6), Drips should be heard on this issue (if the dispute later properly reaches the Court), particularly because Drips's counsel has informed QuoteWizard's counsel that production of these documents would be extremely burdensome and is subject to pre-existing objections that Mantha never contested (*see* Ex. 1).

B.  <u>The Order Goes Beyond the Scope of the Dispute Between the Parties</u>

The documents that were required to be produced by ECF No. 132 are also beyond the scope of what Mantha requested in discovery and the dispute that was before the Court. The two written discovery requests at issue were Requests No. 25 and 26. *See* ECF No. 124, p. 9. Request No. 25 was to "Produce all consumer requests that future telemarketing calls cease ("Do Not Call") provided to you by anyone in any way relating to text telemarketing conducted on your behalf by Drips." ECF No. 124-2, p. 9. QuoteWizard complied by producing the "do not call" list; QuoteWizard was never "provided" any other "consumer requests that future telemarketing calls cease" besides the "do not call" lists already produced. Request No. 26 was to "Produce all documents referring or relating to Do Not Call requests made by consumers in any way relating to text telemarketing conducted on your behalf by Drips." *Id*. Again, QuoteWizard complied by producing the "do not call" list.

Notably, Mantha <u>never</u> requested that QuoteWizard produce each communication made by a consumer to Drips in relation to text messages sent on QuoteWizard's behalf. *See* ECF No. 124-2, p. 9. Even in Mantha's portion of the parties' joint discovery dispute filing, Mantha *still* did not request that QuoteWizard produce these 46,000 communications, instead asking for:

> As to RPD #26, QuoteWizard should be compelled to produce all documents referring or relating in any way to the DNC requests made by consumers who had received QuoteWizard telemarketing texts delivered Drips.
>
> As to RPD #25, QuoteWizard should be compelled to produce the DNC lists without redaction, disclosing the phone numbers of the consumers who took the time to complain to QuoteWizard as to their receipt of QuoteWizard telemarketing texts. These consumers are witnesses, as well as potential class members, who can confirm whether or not they consented as alleged to receive telemarketing texts from QuoteWizard.
>
> Further, as to RPD #25, QuoteWizard should be compelled to explain the meaning of the headers listed on the DNC lists, and the data contained therein, or produce documents that would do the same.

ECF No. 124, p. 9. Mantha first appeared to request the 46,000 communications in the unauthorized document filed *after* the parties submitted their joint positions on the dispute with the Court. *See* ECF No. 126, p. 5. The document was filed essentially *ex parte*, as Mantha's counsel did not request or receive permission to file the document outside of the parties' prior joint filing or provide a meaningful opportunity for QuoteWizard to respond. In doing so, Mantha clearly intended to circumvent the earlier joint filing and create an additional issue beyond the scope of the parties' dispute.

Thus, the Order requiring production of the 46,000 communications between consumers and Drips went beyond (1) the scope of the written discovery requests by Mantha, and (2) Mantha's motion to compel set forth in the joint filing. It was beyond the scope of the dispute before the Court and the record before it. Mantha was required to subpoena Drips for these documents and allow Drips an opportunity to be heard before the Court ruled. This is not a mere technical error but a seriously prejudicial one; Drips is the entity that would be required to compile and produce these voluminous documents but has had no opportunity to be heard. To the extent Mantha intends to seek the same documents from Drips, then Drips should be allowed the opportunity to lodge objections and, if necessary, produce evidence of and arguments concerning undue burden, etc. before the Court makes an informed ruling on the issue.

C. The Documents Are Not Relevant or Proportional to the Needs of the Case

QuoteWizard also lodges two additional objections, although its ability to present these objections is limited by the fact that it does not have specific knowledge of the documents at issue. In addition to the fact that these documents are not in QuoteWizard's possession, custody, or control, the sought-after discovery is clearly not relevant to the issues in Phase I discovery (relating only to Mantha's individual claims) or proportional to the needs of the case.

The Order would require Drips to produce communications between Drips and almost 50,000 consumers. The discovery was ordered in Phase I discovery relating only to Mantha's individual claims, in which he seeks only statutory damages of $500, trebled. It is not clear why these documents have been deemed relevant to Mantha's individual claims, as no express findings were made on that point. *See* ECF No. 132. Mantha's proffered reason for seeking the documents was: "[w]hether or not QuoteWizard took any action whatsoever in response to its receipt of over 46,000 DNC demands goes directly to the viability of its consent defense, its claim of good faith and safe harbor, and whether its massive and repeated violation of the TCPA was knowing or willful." ECF No. 124, p. 9.

But Mantha's theory of relevancy apparently assumes that QuoteWizard is on notice that some consumers may be complaining that QuoteWizard lacked consent to contact them. This theory is false. While undisputed that QuoteWizard receives notification from Drips when a consumer makes a "do not call" request or opts out of future communications, the undisputed evidence is that such a request is not a complaint that QuoteWizard lacked consent to contact them in the first place. *See* ECF No. 124-5, Dec. 14, 2020 Declaration of Tricia Winkler, ¶¶ 5-7 (describing do not call requests as "functional equivalent of an 'opt out'"; requests are "not complaints from those consumers and do not indicate that the consumer did not originally consent to be contacted"). Rather, the requests themselves reflect only a "consumer's choice not to receive further communications." *Id*., ¶ 6. Thus, the fact that QuoteWizard receives notification that a consumer has made a "do not call" request does not prove at all, in any respect, that QuoteWizard is on notice of a lack of valid consent to have contacted the consumer in the first place.

Moreover, regardless of what the consumer says *to Drips*, it is further undisputed that QuoteWizard has never received or seen these communications sent by other consumers to Drips.

14

Therefore, QuoteWizard has no way of knowing what the consumers have said. Mantha's theory that the 46,000 communications will prove that QuoteWizard was on notice of certain issues therefore stumbles out of the gate—QuoteWizard has no knowledge of the 46,000 communications, has never seen them, and cannot respond to information it does not have.

The production of these communications is clearly not proportional to the needs of Mantha's individual claims, either.[6] Even if somehow relevant, requiring a non-party to produce, and QuoteWizard to redact, communications with 46,000 other consumers is a futile attempt to find a proverbial needle in a haystack—*i.e.* the possibility that other consumers may have complained that they never consented to receive messages from QuoteWizard. But even if Mantha is able to find, for example, ten consumers out of 46,000 who told Drips to stop contacting them because they never consented, this is still not relevant or proportional in any respect to Mantha's individual claim, which carries a statutory damage award of $500, which can be trebled.

D. <u>Production of the Documents Would Clearly Place an Undue Burden on a Non-Party</u>[7]

This production would be extremely and unduly burdensome on a non-party, Drips. Although Drips should be allowed to present this evidence to the Court, as QuoteWizard has no knowledge of the nature of these documents, the sheer fact that the Order would require the production of nearly 50,000 communications is *per se* unduly burdensome. *See* Fed. R. Civ. P.

---

[6] Discovery must also be proportionate to the needs of the case. Rule 26 identifies six factors the Court should consider in assessing the proportionality of discovery: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to the relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). It does not appear that a proportionality analysis was conducted before ECF No. 132 was issued.

[7] By making these two final objections, QuoteWizard is not advancing any objections that Drips may have to production should Drips be subpoenaed or ordered to produce the records directly. QuoteWizard, as noted, does not have knowledge of the nature or existence of the records. QuoteWizard lodges the objections on its own behalf under Rule 72(a) to preserve the objections in relation to ECF No. 132.

45(d)(1) (a party or attorney issuing a subpoena to a non-party must take reasonable steps to avoid imposing undue burden or expense on non-party subject to subpoena); *Rockstar Consortium US LP*, 2015 U.S. Dist. LEXIS 139770, at *13 (in determining whether a subpoena imposes an 'undue burden' on a non-party, courts consider "(1) the relevance of the information requested; (2) the need of the . . . party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; (6) the burden imposed; and (7) the expense and inconvenience to the non-party" (citation omitted)).

As noted, "do not call" requests are the functional equivalent of opt-outs and have no necessary connection to an alleged lack of consent. Moreover, a consumer can claim to have not given consent but never opted out at all, as Mantha here. To require 46,000 communications to be produced by a non-party on the off chance that a few communications may relate to lack of alleged consent is the very definition of undue burden. This would clearly be an inappropriate Rule 45 subpoena request if ever properly presented to the Court in that context.

E.  Mantha Intentionally Attempted to Evade Rule 45's Limitations

Lastly, QuoteWizard notes that Mantha apparently attempted to seek similar documents from Drips previously via a Rule 45 subpoena; after Drips objected, Mantha never sought to enforce the subpoena in court. *See* Ex. 1 to Affidavit of Counsel. Mantha knew that this dispute should have been presented, if ever, in the context of a Rule 45 dispute, thereby allowing Drips to be heard and allowing the Court to rule on an informed record, not on an *ex parte* request on an undeveloped record. Mantha's recourse was to pursue the documents from Drips. Upon Drips's objections. Mantha was required to bring *that* dispute to the Court's attention and allow Drips an opportunity to be heard on the same.

In apparent recognition that the request was clearly beyond the scope of more limited non-party discovery under Rule 45, Mantha then later turned around and requested the same documents outside of discovery from QuoteWizard. This was a clear attempted circumvention of discovery rules, protocols, and procedures. This is just another ground on which the Court should set aside the portion of the Order at issue.

## CONCLUSION

For any or all of the foregoing reasons, but particularly because the documents ordered to be produced are indisputably not in the possession, custody, or control of QuoteWizard, and where QuoteWizard has requested but been denied the same from the non-party that holds them, QuoteWizard's objections to the portion of ECF No. 132 requiring it to produce the 46,000 consumer communications should be sustained and that portion of the Order set aside.

Respectfully submitted,

QuoteWizard.com, LLC,
By its attorneys,


*/s/ Christine M. Kingston*
Kevin P. Polansky (BBO #667229)
kevin.polansky@nelsonmullins.com
Christine M. Kingston (BBO #682962)
christine.kingston@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
One Financial Center, Suite 3500
Boston, MA 02111
(t) (617)-217-4700
(f) (617) 217-4710

Dated: January 25, 2021

<u>CERTIFICATE OF SERVICE</u>

   I, Christine M. Kingston, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: January 25, 2021              */s/ Christine M. Kingston*