# EXHIBIT 1

**From:** Troutman, Eric J. <eric.troutman@squirepb.com>
**Sent:** Saturday, January 23, 2021 3:46 PM
**To:** Christine Kingston <christine.kingston@nelsonmullins.com>
**Cc:** Quinn, Meghan <meghan.quinn@squirepb.com>; Kevin Polansky <kevin.polansky@nelsonmullins.com>
**Subject:** RE: Mantha - DNC Records

Hi Christine,

As you know, Drips has not been ordered to produce any records in this case and has already fully complied with the subpoenas served upon it earlier in this action—including by providing deposition testimony.

In the spirit of cooperation and efficiency, however, we have been working to confirm whether it would be feasible for Drips to produce the records QuoteWizard has now been ordered to produce. Unfortunately, our investigation has confirmed that the records requested cannot be produced without substantial burden. As no contract between the parties requires Drips to produce records on Quote Wizard's request, and given the substantial and undue burden that would be imposed upon Drips in attempting to compile the records requested, Drips must respectfully decline to produce the requested records at this time.

Backing up, to our knowledge, Drips has been served with two subpoenas seeking the production of records in this case. Drips has made full appropriate productions of responsive records and has also asserted appropriate objections related to burden with respect to certain categories. Plaintiff has made no effort to move to compel or otherwise meet and confer with Drips regarding any purportedly insufficient production. As far as Drips is concerned, therefore, its entire production related to, and involvement with, this litigation is complete.

Notably, Plaintiff's subpoenas to Drips did not actually seek the third-party communications Quote Wizard has been ordered to produce. The closest request is found in the second subpoena issued to Drips on October 26, 2020, which requested that Drips:

*"Produce all consumer do not call requests provided to you in any way relating to text telemarketing conducted on QuoteWizard's behalf. that [sic] are not communications with QuoteWizard directly."*

In response, Drips asserted the following objections, which included an explanation regarding the burden Drips would have to undertake to identify these records:

> *Once again, this demand category imposes a burden on non-party Drips far in excess of what is reasonable given the needs of this case and the fact that the information can be obtained from alternate sources and using alternate means. Plaintiff's counsel has failed to account for the need to protect Drips from undue burden in serving this demand. To the extent the "do not call requests" came from class member they fall outside the scope of permissible discovery in the case. To the extent the "do not call requests" came from non class members they are classically unrelated to the subject matter of this case—and this is especially so since the information sought was never communicated to Defendant and could not, therefore, bear on issues such as willfulness.*
>
> *Moreover, even if the do not call requests themselves had some limited pertinence to the case—for instance allowing identification of class members at a later stage in the litigation—these requests could be more readily obtained from Defendant, a party in this matter, and it is Drips' understanding that Defendant has in fact produced the do not call requests to Plaintiff. Requiring Drips to respond to this demand would be make-work, and would require Drips, a non-party, to spend unnecessary time and potentially hundreds of hours in order to to: i) identify all DNCs regarding Defendant (a burdensome task in and of itself); and ii) review each to determine whether it was communicated to Defendant (requiring a request by request review and comparison with Defendant's request list). Given that Plaintiff already has a copy of the DNC request it seeks, and because these records seemingly have no relevance at this stage of the case, the burden associated with this production is plainly vastly out of step with the proportionality analysis required under Rule 26.*
>
> *Drips also objects to this request to the extent it seeks confidential, proprietary, and trade secret information that may jeopardize Drips' competitive advantage. Requiting the production of such materials from a non-party is particularly inappropriate and disproportionate to the needs of the case given that, as noted above, Plaintiff has received the actual do not call requests from QuoteWizard as a party to the litigation, and because it seeks information relating to calls and texts that are not currently at issue.*
>
> *Additionally, Drips further objects to this request on the ground that it improperly seeks confidential information concerning other consumers. And, to the extent this demand seeks records containing do not call requests stemming from messages or calls Drips may have on behalf of its other clients, this demand is plainly overly broad and seeks information outside of the scope of discovery and in a manner that is unduly burdensome and disproportionate to the needs of the case.*
>
> *As written, moreover, this request seeks "all documents and communications" relating to consumers' do not call requests involving QuoteWizard, which, interpreted broadly, seeks documents covered by the work-product doctrine and communications between Drips and its attorneys related to any do not call request. For instance, read broadly, the entire file of Drips' outside counsel is theoretically responsive to Plaintiff's overly broad and vague demand. Obviously any demand designed to elicit a production of such records—or a log of each such correspondence—would run afoul of ethical rules and be impermissible, unlawful, and beyond the permissible scope of discovery under the Federal Rules of Civil Procedure. Drips interprets this demand, therefore, to seek only business records and not to knowingly seek attorney-client privileged or attorney work product records.*
>
> *On the basis of these objections no responsive records will be produced, and Drips requests that Plaintiff withdraw this request to avoid burdening a non-party when Defendant has already produced the records Plaintiff seeks.*

Drips served these objections on November 11, 2020, and Plaintiff's counsel never followed up on the subject. Again, our recent additional investigations into the feasibility of isolating the communications underlying the do-not call notifications has only confirmed the significant burden that Drips would have to take to produce responsive records. Unsurprisingly, therefore, Plaintiff's counsel has made no effort to request a further production from Drips.

We understand that QuoteWizard has been compelled to produce certain records related to third-party communications leading to DNC reports. Obviously to the extent QuoteWizard is in possession of such records, it ought to produce them or take such further steps as are appropriate to protect itself from the applicable order. To the extent QuoteWizard is not in possession of such records, of course, it cannot be compelled to produce what it does not have. *See, e.g.*, *Abante Rooter & Plumbing v. Total Merch. Servs.*, No. 19-cv-05711-EMC (TSH), 2020 U.S. Dist. LEXIS 127496, at *3-5 (N.D. Cal. July 17, 2020)(seller cannot be compelled to produce vendor call records that are not within the possession or control of the seller.)

Importantly, the contract between the parties do not put data Drips may house within QuoteWizard's possession or control. The records at issue are Drips records, not Quote Wizard records, and nothing in the parties' contracts suggests otherwise. Unless QuoteWizard has a different view of these contract terms or the ownership of data created by virtue of the relationship between Drips and QuoteWizard—which we remain happy to discuss— we trust this explanation resolves matters.

Finally, as laid out in Drips' objections to Plaintiff's second subpoena and subject to further explanation by affidavit at the appropriate time, we reiterate that the burden of producing the demanded records would be extraordinarily high. Drips-as a third party to this action-is absolutely entitled to protection from such undue burden in the context of this litigation as set forth in Rule 45. To the extent Plaintiff seeks to require a further production from Drips—an event that has not yet occurred— Drips will present its properly-supported burden objections to the court and seek appropriate protections and cost shifting.

Always happy to discuss further.



**Eric J. Troutman**
Partner
Squire Patton Boggs (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071
T  +1 213 689 6510
O  +1 213 624 2500
F  +1 213 623 4581
eric.troutman@squirepb.com | squirepattonboggs.com
*Do Better*: tcpaworld.com

---

**From:** Christine Kingston <christine.kingston@nelsonmullins.com>
**Sent:** Friday, January 22, 2021 11:34 AM
**To:** Troutman, Eric J. <eric.troutman@squirepb.com>
**Cc:** Quinn, Meghan <meghan.quinn@squirepb.com>; Kevin Polansky <kevin.polansky@nelsonmullins.com>
**Subject:** [EXT] RE: Mantha - DNC Records

Eric,

Wanted to try to follow up with you one more time before we file our objections on Monday. Right now we understand your position to be that Drips will not produce the records to QuoteWizard because the Magistrate Judge's order does not directly apply to Drips and because Drips believes it is outside of its contractual obligations to QuoteWizard. We will

3

relay this to the court via our objections. If you have a different or changed position, just let us know by Monday earlier in the day EST. We're also available to discuss further if needed.

Thanks,
Christine