IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH MANTHA on behalf of themselves and others similarly situated,<br><br>　　　Plaintiff,<br><br>v.<br><br>QUOTEWIZARD.COM, LLC<br><br>　　　Defendant. | Case No. 1:19-cv-12235-LTS-PK<br><br>*Leave To File Under Seal Granted On 2.8.21* |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER COMPELLING QUOTEWIZARD TO <u>PRODUCE DO NOT CALL COMPLAINTS</u>**

QuoteWizard's Objections to Chief Magistrate Judge Kelley's Order ECF #132 falls far short of establishing that the Order was "clearly erroneous." For the reasons set forth below, the objection should be DENIED and QuoteWizard should be compelled to comply with Judge Kelley's prior Orders as detailed below.

**I.　　BACKGROUND**

Plaintiff, Joseph Mantha ("Mr. Mantha") initiated this consumer class action against QuoteWizard, under the Telephone Consumer Protection Act ("TCPA"), after he received unsolicited text telemarketing messages on his personal cell phone which long had been listed on the National Do Not Call Registry. S*ee* ECF #1. The TCPA strictly regulates telemarketing to consumers via text message via an automatic telephone dialing system, or to consumers whose cell phones are listed on the National Do Not Call Registry. *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 U.S.C. § 227(b)(3); 47 U.S.C. § 227(c)(1). Telemarketing in this manner is only permissible if the telemarketer (QuoteWizard) has first obtained the recipient's (Mr. Mantha) prior express

consent signed in writing explicitly consenting to receive telemarketing texts from the specific entity (QuoteWizard) whose goods or services are being offered and that such a disclosure be "clear and conspicuous". *See e.g.*, *Sullivan v. All Web Leads, Inc.*, 2017 U.S. Dist. LEXIS 84232 *6 (N.D. Ill. June 1, 2017) ("Prior express written consent means: an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages. . .") *and Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) (denying defendant's motion for summary judgment as consent had to be specific to the entity whose goods or services were being promoted). The TCPA provides for statutory damages of $500 for a negligent violation and $1,500 where the violation at issue was "knowing or willful." *See* 47 U.S.C. § 227(b)(c)

QuoteWizard claims that not only did consumers consent to receive text telemarketing messages, but they *all* previously provided to QuoteWizard their prior express consent signed and in writing to receive telemarketing texts *specifically from QuoteWizard itself.* QuoteWizard also claims it is immune from liability in this case due to a purported "safe harbor" or "good faith" defense. In other words, QuoteWizard claims it is not liable for any alleged TCPA violations to Mr. Mantha or the class, because it in good faith thought consumers had consented to receive such texts. Accordingly, what QuoteWizard knew about consumers' complaints and DNC requests as to their telemarketing texts, and when it knew it, is relevant on multiple issues relating to consent, willfulness, good faith and safe harbor.

For the first nine months of discovery in this case, the parties focused the litigation on QuoteWizard's claim that Mr. Mantha consented to receive the telemarketing texts at issue. As detailed in prior submissions, discovery has revealed that QuoteWizard's claim that Mr. Mantha consented to the telemarketing texts at issue was false and will move for summary judgment on

this issue in the near future. *See ECF #90, #104, #107.*

After debunking QuoteWizard's consent defense, Plaintiff then turned his focus to whether QuoteWizard's violation of the TCPA was knowing or willful, as well as to QuoteWizard's assertion that any error made was in "good faith," or whether QuoteWizard was entitled to a defense of "safe harbor." To explore these issues, Plaintiff sought from QuoteWizard any telemarketing complaints and Do Not Call requests made by consumers who received telemarketing texts via Drips on behalf of QuoteWizard, as well as documents relating or referring to these DNC requests. If consumers did in fact consent to receive text telemarketing messages directly from QuoteWizard itself, presumably no one would complain or request that such calls cease. Alternatively, if many consumers did, in fact, complain, such would belie QuoteWizard's contention that it only sent to texts to consumers who explicitly requested such texts, and that it otherwise acted in good faith or without any reason to doubt the veracity or authenticity of consent data it purchased from third parties. Evidence that QuoteWizard was aware of consumers objecting to or complaining as to their receipt of telemarketing texts from QuoteWizard would also evidence that QuoteWizard's violation of the TCPA was knowing or willful.

To explore these issues, Plaintiff served discovery requests on QuoteWizard to which QuoteWizard objected and otherwise refused to answer. Plaintiff thereafter moved to compel QuoteWizard to produce complaints and do not call related documents submitted by recipients of QuoteWizard's telemarketing texts. *See* ECF #104 at pp 13-19. In opposition, QuoteWizard asserted a myriad list of objections in support of its refusal to produce the requested documents. *Id.* **QuoteWizard did not claim that the requested documents were not within its possession or control or that production would be burdensome.**

On October 19, 2020, this Court, after briefing, heard argument and ordered QuoteWizard to:

> ***Produce all "Do Not Call" requests relating to telemarketing conducted on behalf of QuoteWizard by Drips.***

*See* ECF #112 (the "10.19.20 DNC Order").

QuoteWizard did not appeal to this Court the 10.19.20 DNC Order of Judge Kelley compelling QuoteWizard to produce consumer Do Not Call requests.

On November 9, 2020, QuoteWizard responded to the 10.19.20 DNC Order by producing three excel spread sheets evidencing approximately 46,000 Do Not Call complaints submitted by consumers in response to their receipt of QuoteWizard telemarketing texts delivered via Drips. A pdf copy of one these spread sheets is attached at Exhibit 1. Despite the explicit instruction of the Court in its 10.19.20 Order, QuoteWizard ***did not*** produce the substantive Do Not Call complaints themselves. Rather, QuoteWizard produced only the phone numbers of complaining consumers and then, without Court order, redacted the numbers claiming (ironically) that QuoteWizard was doing so to protect consumers' privacy. *Id.* Plaintiff's counsel were left then with three excel spreadsheets evidencing 46,000 do not call complaints submitted by consumers wholly devoid of any substance whatsoever in blatant defiance of the 10.19.20 Order of the Court.

Mr. Mantha then returned to Judge Kelley, noting QuoteWizard's refusal to comply with the 10.19.20 Order. (ECF #124 and #126). On January 11, 2021, after more briefing and a second hearing, Judge Kelley ***again*** ordered QuoteWizard to produce the substantive responses of the 46,000 consumers who took the time to text to QuoteWizard and to demand that the telemarketing texts at issue cease. ECF #132 (1.11.21 Order"). Again, QuoteWizard did not argue in its briefing to Judge Kelley that the requested documents were not within its possession

or control, or that production would be burdensome. *See ECF #124.*

Still, QuoteWizard failed to produce the compelled documents. Instead, on January 25, 2021, QuoteWizard filed the current objection to this Court arguing for the first time that the documents ordered to be produced by Judge Kelley are not in its possession or control, and that such production would be burdensome. *See ECF #133.* Notably, QuoteWizard offers no explanation whatsoever why it did not comply with the 10.19.20 Order of Judge Kelly, and why it did not appeal the 10.19.20 Order.

## II.     STANDARD OF REVIEW

### A. Standard of Review

A Magistrate Judge's authority to rule on a non-dispositive pretrial matter emanates from 28 U.S.C. § 636(b)(1)(A), which provides that a district judge may designate a magistrate judge "to hear and determine any pretrial matter pending before the court." After a party files a timely objection to the Magistrate Judge's order on a non-dispositive matter, the District Court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." FED. R. CIV. PRO. 72(a); 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter . . . where it has been shown that the magistrate's [magistrate judge's] order is clearly erroneous or contrary to law"). The discovery issues addressed in the Magistrate Judge's Order are "pretrial matter[s] not dispositive of a party's claim or defense" within the purview of Federal Rule of Civil Procedure 72(a). FED. R. CIV. PRO. 72(a).

Under the "clearly erroneous standard", the Court "must accept both the trier's findings of fact and conclusions drawn therefrom unless, after scrutinizing the entire record, [it] 'form[s] a strong, unyielding belief that a mistake has been made.'" *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999) (citing *Cumpiano v. Banco Santander P.R.*, 902 F.2d 148, 152 (1st

Cir. 1990)). "[S]anctions pursuant to Rule 37 . . . are [also] generally reviewed under the 'clearly erroneous or contrary to law' standard." *Russo v. Baxter Healthcare Corp*., 51 F. Supp. 2d 70, 75 (D.R.I. 1999); *see also In re. Subpoena to TD Bank, N.A*., No-8-101-P-S, 2008 U.S. Dist. LEXIS 99888, at * 2-3 (D. Me. Dec. 1, 2008).

This standard makes it "extremely difficult to justify alteration of the magistrate judge's non-dispositive actions by the district judge." C. WRIGHT, A. MILLER, & M. KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 3069, at 350-351 (3d ed. 1998).; *Phinney v. Wentworth Douglas Hospital*, 199 F.3d 1, 4 (1st Cir. 1999) (explaining that the magistrate judge's ruling on a non-dispositive matter must be upheld unless, "after scrutinizing the entire record, [the district judge] form[s] a strong, unyielding belief that a mistake has been made") (citations omitted); *United States v. Mehta*, 236 F. Supp. 2d 150, 154 (D. Mass. 2002) ("district court should only overturn a magistrate's order when left with the definite and firm conviction that a mistake has been made").

The First Circuit has held unequivocally that even an appellant objecting to a Magistrate Judge's order under Fed. R. Civ. P. 72(b) which is applicable to *dispositive* motions is not entitled to an entirely new review—but rather is entitled to a review of arguments actually presented to the magistrate judge:

> Appellant tells us that Rule 72(b)'s requirement of a "de novo determination" by the district judge means that an entirely new hand is dealt when objection is lodged to a recommendation. That is not so. At most, the party aggrieved is entitled to a review of the bidding rather than to a fresh deal. The rule does not permit a litigant to present new initiatives to the district judge. We hold categorically that an unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate. *Accord Borden v. Secretary of HHS*, 836 F.2d 4, slip op. at 4 (1st Cir. 1987).

*Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir. 1988).

Finally, any objections to a non-dispositive ruling made by a Magistrate Judge are to be submitted to the District Court within fourteen days. *See* Fed.R.Civ.P. 72(a). A party may not assign as error a defect in tan order not timely objected to. *Id.*

### III.     ARGUMENT

#### A. QuoteWizard's Objection Is Untimely

On October 19, 2020, after briefing and argument, Judge Kelley ordered QuoteWizard to produce all telemarketing complaints including "Do Not Call Requests" relating to telemarketing conducted on behalf of QuoteWizard by Drips. *See* ECF #112. QuoteWizard did not appeal the 10.19.20 Order within fourteen days. *See* Fed.R.Civ.P. 72(a) (objections to a magistrate's recommended disposition to be filed within 14 days).

In response to this 10.19.20 Order, QuoteWizard merely produced three excel spread sheets purportedly evidencing the 46,000 consumers who made do not call requests after receiving QuoteWizard telemarketing texts from Drips. *See* Exhibit 1. In defiance of Judge Kelley's 10.19.20 Order, QuoteWizard did not produce the substantive complaints themselves. *Id.* It just provided excel spread sheets containing phone numbers- which it then redacted- rendering the production wholly worthless. *Id.*

In response to QuoteWizard's defiance of the 10.19.20 Order, Mr. Mantha again moved to compel the production of the do not call requests themselves. *See* ECF #124 and #126. Again, QuoteWizard was ordered to produce the do not call complaints themselves, as well as documents relating or referring to the do not call complaints. *See* ECF #132. QuoteWizard still did not produce the compelled documents. Instead, it appealed to this Court claiming it should not have to produce the do not call requests themselves because they are not in possession or control of such documents, and such production would be burdensome.

If QuoteWizard had any issue with Judge Kelley's 10.19.20 Order, it was free to submit its objections on appeal to this Court, or to seek reconsideration from Judge Kelley. It did not. Instead, it chose to defy the 10.19.20 Order and produced worthless excel spread sheets redacted of all meaningful information purportedly to protect the "privacy" rights of consumers whose rights QuoteWizard violated by sending them text spam in violation of the TCPA. Having failed to appeal the 10.19.20 Order, which explicitly ordered QuoteWizard to produce the do not call *requests* themselves, the appeal of plaintiff's efforts to enforce the 10.19.20 Order is untimely and should be rejected outright for this reason alone. *See* Fed.R.Civ.P. 72(a).

### B. QuoteWizard's Arguments Relating To Possession Or Control Were Not Raised Before the Magistrate and Are Waived

In its objection to this Court, QuoteWizard argues- now for the first time- that the consumer do not call requests ordered to be produced by the Court in its 10.19.20 Order, and its 1.11.21 Order, are not in its possession or control, and that production of such a voluminous number of consumer complaints constitutes a burden. QuoteWizard, however, never made these arguments before Judge Kelley. Accordingly, these arguments have been waived. As the First Circuit has instructed, "[w]e hold categorically that an unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate" *Paterson-Leitch Co.,* 840 F.2d at 990-91 (1st Cir. 1988).

### C. The Do Not Call Requests Of Consumers Are Within QuoteWizard's Possession Or Control

It is well established that 'control' under Fed. R. Civ. P. 34 is to be broadly construed so that a party may be obligated to produce documents requested even though it may not actually possess the documents. *Merchia v. Kautter,* No. 18-10424-PBS, 2020 U.S. Dist. LEXIS 139608,

8

at *8 (D. Mass. Aug. 5, 2020). The crucial determination is whether the defendant has the right, authority or ability to obtain the document upon demand. *Id.*

QuoteWizard claims that the 46,000 consumer do not call requests that Judge Kelley repeatedly ordered it to produce are in the possession or control of Drips, the entity who QuoteWizard hired to transmit the text bots at issue in this litigation. QuoteWizard conveniently claims it is simply then unable to comply with either the 10.29.20 Order that it never appealed, or the more recent 1.11.21 Order of the Court.

Notably, however, during the course of this litigation, and in support of its defense, QuoteWizard has submitted to the Court the substantive text messages relating to Mr. Mantha. *See* ECF #51-2. QuoteWizard, of course, obtained these text messages from Drips. Now, when faced with an effort to obtain evidence harmful to its case (46,000 consumer do not call requests from complaining consumers) QuoteWizard claims it simply cannot obtain the text do not call messages submitted by these consumers because they are in the possession of Drips and not in its control. QuoteWizard- by its own conduct during the course of this litigation- has demonstrated a practical ability to obtain evidence from Drips when it chooses to do so. Having demonstrated its ability to obtain evidence from Drips, QuoteWizard cannot now use Drips as a shield to obstruct the production of evidence harmful to its interests.

Second, QuoteWizard's claim that the 46,000 do not call requests made by consumers in response to their receipt of QuoteWizard spam telemarketing texts are not within its possession or control is simply false. Just recently, and in response to the 1.11.21 Order of the Court, QuoteWizard produced correspondence between Drips and QuoteWizard evidencing that beginning in October of 2019, QuoteWizard had the ability to access Do Not Call complaints received by Drips, via an internet link, and to "audit" the complaints. *See* Exhibit 2,

9

email exchange between Drips and QuoteWizard providing the internet links QuoteWizard can use to access and audit Do Not Call requests for all campaigns. QuoteWizard has the ability itself to obtain DNC documents directly from Drips. It simply does not want to.

Third, pursuant to the contract governing the relationship between QuoteWizard and



Finally, Drips testified during its deposition that it

See Exhibit 4, highlighted excerpts from deposition of Drips. Accordingly, the sworn testimony of Drips evidences a cooperative relationship between Drips and QuoteWizard, and a frequent and common exchange of information relating to consumer do not call requests. This evidence defies QuoteWizard's boilerplate claim that the documents at issue are not in its possession or control.

For all of these reasons, QuoteWizard's claim that it is not in possession or control of the 46,000 complaints of consumers demanding that they no longer continue to receive QuoteWizard telemarketing text spam is false.

10

D.  **The Compelled Complaints Are Relevant and Proportional To The Needs Of The Case**

QuoteWizard next claims that since discovery at this stage must relate to Mr. Mantha's individual claim, the 46,000 consumer do not call complaints at issue, are not relevant or proportional to the needs of this case. *See* ECF #133 at pg. 12. In support, Wizard notes that the size of Mr. Mantha's statutory claim is $500, or $1,500 if trebled. Therefore, QuoteWizard reasons the monetary size of Mr. Mantha's claim should be considered by the Court in assessing the scope of discovery in this case. Given the vast resources QuoteWizard has spent to date litigating this case, this position is meritless.[1]

The TCPA, of course, provides for statutory damages that may be trebled if the conduct at issue was "knowing or willful." *See* 47 U.S.C. § 227(b)(c). While a finding of willfulness under the TCPA does not require bad faith, it does require that the caller "have reason to know, or should have known, that his conduct would violate the statute. *See Krakauer v. Dish Network L.L.C.*, No. 1:14-CV-333, 2017 U.S. Dist. LEXIS 77163 at *26 (M.D.N.C. May 22, 2017) (trebling a $20 million jury award against Dish Network for illegal telemarketing calls made by an agent and recounting Dish's knowledge of prior complaints against its dealer for TCPA violations as a basis for trebling). Further, QuoteWizard has asserted a "good faith"

---

[1] To date, Mr. Mantha has been deposed twice. QuoteWizard also deposed his wife, his friend who advised him as his rights under the TCPA, and his employer. QuoteWizard has deposed its vendors associated with the data purchased to call Mr. Mantha, including RevPoint, Plural and Jornaya- some of these entities have been deposed twice. QuoteWizard also deposed the principal of the web site purportedly used to obtain Mr. Mantha's consent- who denied such consent ever came from his web site. QuoteWizard also deposed witnesses who it claimed were associated with the IP addresses used to consent to receive the telemarketing texts at issue (they were not). Seemingly, then when discovery is to its perceived benefit, QuoteWizard will spare no expense without regard to the burden incurred by Mr. Mantha, his family, friends or his employer. When faced with the compelled production of 46,000 consumer complaints, however, QuoteWizard suddenly is concerned as to proportionality.

11

defense. *See* Answer of QuoteWizard, ECF 89, 13th and 15th affirmative defenses and 47 C.F.R. §1200 (c)(2)(i)-(iii). Good faith and safe harbor defenses, however, cannot be used as a sword and shield. A defendant who claims 'safe harbor" cannot withhold from discovery documents, for example, relating to Do Not Call requests, TCPA complaints, investigations as to telemarketing complaints and responses to telemarketing complaints under a claim of attorney client or work product privilege. *See United States v. Dish Network, LLC*, 283 F.R.D. 420, 424 (C.D. Ill. 2012); *see also United States v. Dish Network, LLC*, No. 09-3073, --- F. Supp. 3d ---, 2014 WL 7013223, at *16–17 (C.D. Ill. Dec. 11, 2014) (adopting magistrate judge's reasoning and conclusions regarding waiver of privileges in context of a safe harbor claim).

The requested documents are clearly relevant to Mr. Mantha's individual claim and his assertion that QuoteWizard's violation of the TCPA was knowing or willful. The documents are also relevant as to QuoteWizard's defense of safe harbor and good faith.

In a creative effort to dodge the clear relevance of consumer telemarketing complaints to Mr. Mantha's individual claim, QuoteWizard argues for the first time on appeal that because Drips never sent the actual consumer complaints themselves to QuoteWizard- and only forwarded to QuoteWizard phone numbers to be removed from the calling list- the do not call requests cannot be used as evidence of willfulness against QuoteWizard because QuoteWizard was allegedly unaware of the specific nature of the do not call requests. *See* ECF #133 at pg. 14-15.

This new position is, again, defied by QuoteWizard's own document production. In response to Judge Kelley's Order that QuoteWizard produce internal documents at QuoteWizard relating to consumers do not call requests (ECF #132), QuoteWizard produced a document, obtained from Drips, detailing the manner in which consumer do not call requests would be

handled. *See* <u>Exhibit 5.</u> The document, entitled "Tiered Opt Out Logic," ███

███

███

███

███

███

███

██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████



### E. QuoteWizard Has Failed To Demonstrate Why Production Would Constitute a Burden.

QuoteWizard next claims that compelling the production of 46,000 do not call complaints would be burdensome. QuoteWizard failed to argue burden at any time before Judge Kelley. Curiously, even now, QuoteWizard makes no substantive argument in this regard. As the party resisting discovery, QuoteWizard bears the burden to show some sufficient reasons why discovery should not be allowed. *See Katz v. Liberty Power Corp., LLC*, 2020 U.S. Dist. LEXIS 112969 *5 (D. Mass., June 26, 2020). Merely because compliance with a document request would be costly or time-consuming is not ordinarily sufficient reason to resist production where the requested material is relevant and necessary to the discovery of evidence. *Id.* And, a resisting party's boilerplate assertion as to burden is insufficient. *Id.* at *18. Rather, a resisting party must show specifically, by affidavit or otherwise, that discovery would be unduly burdensome. *Id., citing to Cooper v. Charter Commc'ns, Inc.*, No. 12-cv 10530, 2016 U.S. Dist. LEXIS 3651, 2016 WL 128099, at *2 (D. Mass. Jan. 12, 2016) (mere statement that a request is burdensome is not adequate to voice a successful objection).

Here, QuoteWizard makes no such showing whatsoever and merely claims that the compelled production is *per se* unduly burdensome. Such a self-serving assertion falls far short of establishing the necessary undue burden so as to resist discovery.

And, further, like several of its prior arguments, the claim that it would be burdensome for Drips to produce do not call complaints is belied by the fact that in similar TCPA litigation, Drips produced do not call complaints far greater in volume than at issue here, did so electronically, and made no claim of burden whatsoever. *See Berman v. Freedom Fin. Network,*

*LLC,* 400 F. Supp. 3d 964, 977 (N.D. Cal. 2019) (discussing the 226,434 opt out requests received from consumers in response to debt-relief telemarketing calls).[2]

Finally, and as detailed above, pursuant to the operative contract governing the relationship between Drips and QuoteWizard, Drips agreed that QuoteWizard would take the lead and be responsible to respond to all telemarketing related subpoenas or litigation arising out of the relationship between Drips and QuoteWizard. Having agreed that QuoteWizard will take the lead, Drips cannot obstruct discovery by claiming some imaginary burden.

### F. Mr. Mantha Appropriately Sought The Do Not Call Complaints From QuoteWizard.

QuoteWizard's last argument is similarly specious. QuoteWizard claims that Mr. Mantha should have sought the do not call requests directly from Drips itself, and that by seeking these documents from QuoteWizard seeks to "intentionally evade Rule 45's limitations."

In fact, Mr. Mantha did seek the do not call requests directly from Drips who objected to their production. Having also sought the same documents from QuoteWizard, and mindful of its obligation to first pursue discovery directly from a defendant before seeking the same from a third party via subpoena, Mr. Mantha commenced enforcement actions against QuoteWizard directly. "If the material sought by subpoena is readily available, either from a party to the action or from a public source, obtaining it through subpoena on a nonparty often will create an undue burden." *In re New Eng. Compounding Pharmacy, Inc.,* No. MDL No. 13-2419-FDS, 2013 U.S. Dist. LEXIS 161652, at *35 (D. Mass. Nov. 13, 2013). QuoteWizard's claim that by doing so, Mr. Mantha "intentionally" evaded Rule 45 is groundless.

---

[2] *See* Exhibit 6, *Berman v. Freedom Financial Network, LLC, et al,* 4:18-cv-01060-YGR (NDCA) ECF #144 and 144-1 (counsel notes that Drips produced 226,434 DNC requests, the substance of which is then recounted at ECF # 144-1). Counsel for Ms. Mantha is also counsel for plaintiff in the *Berman* action.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that *Defendant's Objections to Magistrate Judge's Order* (ECF No. 132) should be overruled.

PLAINTIFF,

By their attorneys

*/s/ Matthew P. McCue*
Matthew P. McCue
THE LAW OFFICE OF MATTHEW P. MCCUE
1 South Avenue, Suite 3
Natick, MA 01760
Telephone: (508) 655-1415
mmccue@massattorneys.net

Edward A. Broderick
BRODERICK LAW, P.C.
176 Federal Street, Fifth Floor
Boston, MA 02110
Telephone: (617) 738-7080
ted@broderick-law.com

Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Alex M. Washkowitz
Jeremy Cohen
CW LAW GROUP, P.C.
188 Oaks Road Framingham, MA 01701
alex@cwlawgrouppc.com

Date: February 8, 2021

CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2021, I electronically transmitted the foregoing to all counsel of record via the electronic filing system.

By: /s/ Matthew P. McCue<br>Matthew P. McCue