IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOSEPH MANTHA on behalf of themselves and others similarly situated, | |
| Plaintiff, | Case No. 1:19-cv-12235-LTS-PK |
| v. | |
| QUOTEWIZARD.COM, LLC | |
| Defendant. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO ENFORCE THE PORTION OF ECF NO. 132 REQUIRING THE PRODUCTION OF DOCUMENTS BY PLAINITFF TO REQUIRE PLAINTIFF TO PRODUCE UNREDACTED DOCUMENTS**

Defendant QuoteWizard.com, LLC ("QuoteWizard" or "Defendant") has moved to compel production of documents that it did not request, and that in any event are irrelevant to this litigation. Because QuoteWizard asked for "Any and all communications between Plaintiff and Steven Novia that relate to this Lawsuit, the Telephone Consumer Protection Act, and/or the text messages at issue" Plaintiff produced the his text messages, which continued over a month-long period, that were actually requested, *i.e.* the portion that related to this lawsuit.[1] QuoteWizard's baseless attack on Mr. Mantha's motives for bringing this lawsuit is a cynical continuation of their overreaching approach to discovery—indeed QuoteWizard repeats its position, now rejected by this Court and Judge Sorokin a total of four times that QuoteWizard should be granted unfettered access to Mr. Mantha's computer and cell phone. ECF 75, 100, 109 and 132. For the reasons set forth

---

[1] The texts were produced in redacted form, as Plaintiff's counsel explained to defense counsel in the meet and confer, only to provide an accurate view of the source of the recovered texts.

below, QuoteWizard's motion should be **DENIED.** In the alternative, Plaintiff respectfully submits that an *in camera* inspection of the unredacted text thread by the Court would confirm that the redacted texts are in fact irrelevant.

## ARGUMENT

The narrow issue before the Court is whether QuoteWizard is entitled texts *that QuoteWizard did not request.* Conspicuously absent from QuoteWizard's motion is the actual request regarding communications between Plaintiff and his friend Steven Novia. That request seeks: "Any and all communications between Plaintiff and Steven Novia that relate to this Lawsuit, the Telephone Consumer Protection Act, and/or the text messages at issue." That request was propounded in Defendant's Fourth Set of Requests for Production of Documents in violation of Local Rule 26.1(c).[2] In response to this Court's Order No. 132, counsel for the Plaintiff personally reviewed both the imaging of the laptop and iPhone and provided *Plaintiff's Response to Order ECF 132,* with the representation "Plaintiff has no additional responsive documents to all or any of the discovery requests from QuoteWizard to produce from that extracted data" producing 24 documents located, including the texts at issue here. *See* Exhibit 1 hereto.

When Plaintiff's counsel conferred with counsel for QuoteWizard on the redaction, Plaintiff's counsel represented that the redacted portions of the texts had nothing to do with the case, to which counsel for QuoteWizard responded: "then what is the harm of producing. If they

---

[2] QuoteWizard's passing reference that Plaintiff's counsel should be ordered to produce all responsive documents or turn over the laptop and iPhone imaging (a demand that has been rejected four times) is nothing short of harassment. ECF 139 at 9, fn 3. Plaintiff's counsel has produced the responsive documents. QuoteWizard's request, however, goes well beyond the subject of the meet and confer which was limited to obtaining an unredacted copy of the non-responsive and irrelevant texts. For this reason alone, QuoteWizard's demand should be rejected.

2

are just talking about golf, then it won't matter." Given that the texts they were seeking are not responsive to Defendant's request, and in any event are irrelevant, Plaintiff's counsel refused to produce. QuoteWizard nevertheless proceeded with its motion to compel.

In its motion, QuoteWizard makes the assertion that the text thread "may be fairly characterized as bombshells" that evidence that Mr. Mantha may be unfit as a class representative if he is treating the "TCPA as a money-generating scheme." ECF 139 at 5. This claim is baseless. Rather than treating his representation as a "game" (a statement by Mr. Novia in the thread, not Mr. Mantha), Mr. Mantha has endured more than his share of a burden in seeking to represent a class of unsolicited text recipients. Mr. Mantha has been deposed twice, his wife Melisa has been deposed, his employer, the Doctor Franklin Perkins School has been deposed, as has his friend Mr. Novia. As far as "games" go, this is one that few would play on behalf of a class of strangers. Mr. Mantha is well aware as to his obligations to the class and, by his conduct, has demonstrated he will be an excellent class representative.

QuoteWizard's claim that Mr. Mantha's texts are "evidence [that] is extremely relevant not only to whether Mantha consented to receive the messages from QuoteWizard in order to set QuoteWizard up for liability" is equally troubling. As has been detailed in prior submissions, for the first nine months of discovery in this case, the parties focused the litigation on QuoteWizard's claim that Mr. Mantha consented to receive the telemarketing texts at issue. At the Case Management Conference, QuoteWizard represented to the Court that it was prepared to *immediately* move for summary judgment on the consent claim. It was so confident in its consent defense that it even threatened Plaintiff's counsel with Rule 11 sanctions for having filed a frivolous lawsuit in light of the consent it purportedly possessed. The document that QuoteWizard claimed evidenced Mr. Mantha's consent to receive telemarketing texts is referred to herein as the "QuoteWizard Opt In." The QuoteWizard Opt In was originally produced to Mr.

3

Mantha as an attachment to the January 10, 2020, letter of Kevin Polansky, Esq., counsel to QuoteWizard, that threatened to seek Rule 11 sanctions against Mr. Mantha's counsel for filing a frivolous lawsuit. *See* Exhibit 2, January 10, 2020, Letter of Counsel, with QuoteWizard Opt.

Given the gravity of defense counsel's Rule 11 allegation, and although it is QuoteWizard who bears the burden of proof to prove consent in a TCPA case by clear and convincing evidence, Plaintiff's counsel immediately commenced discovery to explore QuoteWizard's consent defense, and to disprove the information on the QuoteWizard Opt In. Discovery obtained to date has been devastating to QuoteWizard's consent defense.

First, in reliance on the QuoteWizard Opt In, QuoteWizard claimed that Mr. Mantha utilized a computer assigned the IP address 96.242.xxxxxx to consent to receive telemarketing texts on a web site called www.snappyautoinsurance.com. *Id.* Mr. Mantha denied under oath any connection to this web-site or to this IP address. A subpoena to the telecommunications carrier for the IP address confirmed it was assigned to someone in New Jersey. QuoteWizard deposed this individual who confirmed that he never met Mr. Mantha and never visited www.snappyautoinsurance.com. QuoteWizard then changed its story and claimed that Mr. Mantha actually visited www.snappyautoinsurance.com on a different date from a different IP address. Again, Mr. Mantha denied any visit to this website and any connection to the new IP address offered by QuoteWizard as proof of his consent. Similarly, a telecommunications subpoena confirmed the IP address was not assigned to Mr. Mantha. Rather, it was assigned to a woman in Worcester, who QuoteWizard then deposed and who, similarly, confirmed no connection to Mr. Mantha and that she had never visited the web site www.snappyautoinsurance.com. Further, in support of its consent defense, QuoteWizard noted that the QuoteWizard Opt In contained a Jornaya Lead ID that purportedly confirmed Mr.

Mantha's visit to www.snappyautoinsurance.com.

At its deposition, however, Jornaya confirmed that the Lead ID contained on the QuoteWizard Opt In had nothing to do with Mr. Mantha or to the visit of anyone to www.snappyautoinsurance.com. Jornaya could offer no explanation as to why such Lead ID was assigned to the QuoteWizard Opt In. Finally, during discovery, QuoteWizard's lead vendors confirmed that Mr. Mantha's data originated with a lead broker named Adam Brown, the individual who owns the web site www.snappyautoinsurance.com. After being subpoenaed by Plaintiff's counsel, Mr. Brown wrote to counsel, informed them that the web site www.snappyautoinsurance.com had not been used for seven years, and stated that he was not in the possession of any documents relating to Mr. Mantha. And, as if the above was not enough to discredit QuoteWizard's consent defense, and its Rule 11 threat against Plaintiff's counsel, at its recent 30(b)(6) deposition, QuoteWizard ***admitted*** that the QuoteWizard Opt In was ***not*** created before it was placed on notice of Mr. Mantha's claim. Rather QuoteWizard admitted that the document upon which it has threatened counsel with Rule 11 sanctions was created ***after*** QuoteWizard received the litigation notice letter of plaintiff's counsel dated September 4, 2019.

Simply put, discovery has revealed that QuoteWizard's claim that Mr. Mantha consented to the telemarketing texts at issue was false. *See ECF #90, #104, #107*. For QuoteWizard to brazenly continue to assert that it texted Mr. Mantha because of something Mr. Mantha did, and that QuoteWizard must be allowed access to his irrelevant text messages with a friend is meritless and should be rejected.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully submits that *Defendant's Objections to Magistrate Judge's Order* (ECF No. 139) should be denied. In the alternative, Plaintiff respectfully submits that an *in camera* inspection of the unredacted text thread by the Court would confirm that the redacted texts are in fact irrelevant.

    PLAINTIFF,

    By their attorneys

    */s/ Edward A. Broderick*
    Edward A. Broderick
    BRODERICK LAW, P.C.
    176 Federal Street, Fifth Floor
    Boston, MA 02110
    Telephone: (617) 738-7080
    ted@broderick-law.com

    Matthew P. McCue
    THE LAW OFFICE OF MATTHEW P. MCCUE
    1 South Avenue, Suite 3
    Natick, MA 01760
    Telephone: (508) 655-1415
    mmccue@massattorneys.net

    Anthony I. Paronich
    PARONICH LAW, P.C.
    350 Lincoln Street, Suite 2400
    Hingham, MA 02043
    (508) 221-1510
    anthony@paronichlaw.com

    Alex M. Washkowitz
    Jeremy Cohen
    CW LAW GROUP, P.C.
    188 Oaks Road Framingham, MA 01701
    alex@cwlawgrouppc.com

Date: March 3, 2021

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 3, 2021, I electronically transmitted the foregoing to all counsel of record via the electronic filing system.

By:  <u>*/s/ Edward A. Broderick*</u>
Edward A. Broderick