UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH MANTHA, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>QUOTEWIZARD.COM, LLC,<br><br>Defendant. | Civil Action No. 1:19-cv-12235-LTS<br><br>**HEARING REQUESTED** |

**DEFENDANT'S MOTION FOR RECONSIDERATION OF ECF NO. 144**
**(Memorandum Incorporated)**

Now Comes Defendant QuoteWizard.com, LLC ("QuoteWizard") and respectfully moves the Court for reconsideration of its Order dated February 24, 2021 [ECF No. 144], specifically the portion thereof that found that the subject records "are within the custody or control of QuoteWizard (even if not currently within its possession)." *See* ECF No. 144 (citing ECF No. 136-9). QuoteWizard respectfully requests that the Court hold a hearing on this Motion as would be helpful to its resolution, and require the attendance of counsel for all parties and for non-party Drips Holdings, LLC ("Drips"), which possesses the subject records.

The subject records are not (and have never been) in QuoteWizard's possession, and are also beyond its custody or control, because non-party and unaffiliated company Drips has the records in its databases but refuses, even after issuance of ECF No. 144, to collect the data and send the records to QuoteWizard or Plaintiff Joseph Mantha ("Plaintiff"). According to Drips's counsel, Plaintiff's counsel has indicated that Drips is not required to produce the records to QuoteWizard, which is driving at least in part Drips's refusal to produce them.

It is physically and legally impossible for QuoteWizard, therefore, to comply with a Court Order requiring it to produce records in the hands of a third-party that refuses to turn them over to QuoteWizard or to Plaintiff. QuoteWizard has made every effort within the bounds of the law to obtain these records from Drips pursuant to Plaintiff's pursuit of them, and has now even served a subpoena on Drips for the same, but Drips has stated that it will not produce the records without Court Order. QuoteWizard cannot produce records it does not have and cannot obtain.

On the basis of these undisputed facts, QuoteWizard respectfully asks that the Court reconsider ECF No. 144, vacate that Order, and find that the records are not within the possession, custody, or control of QuoteWizard where Drips has still refused to date to produce them and it is physically and legally impossible for QuoteWizard to produce them and comply. Alternatively, QuoteWizard asks the Court to vacate or at least suspend ECF No. 144 until such time that QuoteWizard's subpoena to Drips for these records can be resolved (via Court Order or otherwise), as a response to the subpoena by Drips is the only way that QuoteWizard can obtain the records at issue. In the event the Court rejects these two requests, then QuoteWizard alternatively requests that the Court order Drips to produce the records to QuoteWizard to effectuate ECF No. 144, as Drips has refused to produce the records absent a Court Order that directly applies to it.

**FACTUAL EVIDENCE**

It is undisputed that the records at issue (the 46,000 consumer communications that led to Drips classifying such communications as "do not call" requests) are not in QuoteWizard's possession and have never been in its possession. *See* Declaration of Tricia Winkler Dec., ¶¶ 5, 9.

Before the Court issued the challenged Order, Drips had already stated in writing that it refused to produce these subject records to QuoteWizard. *See* ECF No. 133-3 (January 23, 2021

e-mail from Drips's counsel stating "Drips must respectfully decline to produce the requested records at this time").

After issuance of ECF No. 144, QuoteWizard's counsel immediately again demanded that Drips produce the records at issue to QuoteWizard. Drips through counsel has again refused to produce the records. *See* Affidavit of Counsel, ¶¶ 3-5. Drips continues to takes the position that the contract between Drips and QuoteWizard does not require production, and also that production would be burdensome (requiring, according to Drips, 1,000 hours of work to collect the data from six databases). *See id*. <u>Drips's counsel has stated that without a Court Order that directly compels Drips to produce the records, it will not produce the records to QuoteWizard or at all</u>. *See id*., ¶ 5. QuoteWizard, therefore, does not have the records and has no legal means to obtain them. *See* Winkler Dec., ¶ 5.

Drips's counsel has also stated that, after the issuance of ECF No. 144, Plaintiff's counsel informed him that Plaintiff did not believe or take the position that the Order required Drips to produce the records to QuoteWizard. According to Drips's counsel, this stated position from Plaintiff's counsel informed Drips's continued refusal to produce the records to QuoteWizard even after the issuance of ECF No. 144. *See* Counsel Aff., ¶ 6.

In a further effort to force Drips to produce the records, QuoteWizard has now subpoenaed Drips for the records, with a compliance deadline of March 15, 2021. *See* Counsel Aff., ¶ 8 & Ex. 1. Drips's counsel has indicated that Drips will object to the subpoena, meaning that Drips will still not produce the records and this will require Court resolution. *Id.* Therefore, absent an Order either requiring Drips to produce the records outright or requiring it to comply with QuoteWizard's subpoena, Drips will not produce the records and QuoteWizard cannot obtain them. *See id*.

The e-mail to which the Court cited, filed at ECF No. 136-9 and dated October 9, 2019, contains a series of links that are no longer active or accessible. *See* Winkler Dec., ¶ 6. Moreover, the links did not provide QuoteWizard access to any of the records at issue (the 46,000 consumer communications to Drips), but only to consumer telephone numbers and the tier level that Drips had assigned to a "do not call" request. *See* Counsel Aff., ¶ 7; *see also* Winkler Dec., ¶ 7.

## ARGUMENT

### (1) QuoteWizard Cannot Physically or Legally Comply with an Order Requiring it to Produce Records in the Possession of Non-Party Drips where Drips Refuses to Produce the Records to QuoteWizard

Both before the Court issued ECF No. 144 and after, QuoteWizard has demanded that Drips produce the records (the 46,000 consumer communications that led to Drips classifying such communications as "do not call" requests), and Drips has refused to produce the same. Drips has stated that, absent a Court Order that directly applies to and requires it to produce the records, it will not make the records available to QuoteWizard (or anyone else). *See* Counsel Aff., ¶¶ 4-5. Drips's counsel has stated that this continued refusal is premised in part on Plaintiff's counsel's position that Drips is not presently required to produce the documents to QuoteWizard. *Id.*, ¶ 6.

The records are not in QuoteWizard's possession, custody, or control. More to the point, it is physically and legally impossible for QuoteWizard to produce the records to Plaintiff because QuoteWizard cannot obtain them from Drips.

Courts have uniformly held that, where a party has no legal means to obtain documents, the documents are not in its possession, custody, or control such that it can be required to produce them or face sanctions or other consequences for not producing them. *See, e.g., Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007) ("[A] party is not obliged to produce, at the risk of sanctions, documents that it does not possess or cannot obtain."); *Cont'l W. Ins. Co.*

*v. Opechee Constr. Corp.*, 2016 U.S. Dist. LEXIS 54716, at *9-10 (D.N.H. April 25, 2016) ("[T]he Federal Rules of Civil Procedure do not require a party to obtain and produce information that it neither possesses nor controls. Because Linx represents, and Opechee does not dispute, that it does not possess and cannot obtain the requested discovery, it does not have possession or control for the purposes of this motion to compel. Therefore, Linx cannot be compelled to produce what it does not have."); *United States v. International Union of Petroleum & Industrial Workers*, 870 F.2d 1450, 1453 (9th Cir. 1989) ("Control must be firmly placed in reality, … not … esoteric concept[s]"; "We do not look to whether the International theoretically controlled the local; rather, we inquire whether actual control existed."); *Banga v. Ameriprise Auto Home Ins. Agency*, 2021 U.S. Dist. LEXIS 33869, at *11 (E.D. Cal. February 22, 2021) ("A party cannot be ordered to produce documents it does not control such that it can obtain the documents on demand."); *Baadhio v. Lanigan*, 2014 U.S. Dist. LEXIS 60500, at *3, 2014 WL 1744767 (D.N.J. May 1, 2014) ("Of course, the responding party is not obliged to produce documents that it does not possess or cannot obtain.").

Where, as here, a party has exercised all legal means to obtain documents in another entity's possession but cannot obtain those documents, there can be no recourse against that party. *See In re Potanina*, 2015 U.S. Dist. LEXIS 96340, at *8, 11-12, 2015 WL 4476612 (S.D.N.Y. June 30, 2015) (finding that party "has no practical ability to obtain the requested materials and, accordingly, cannot be compelled to produce them") ("Because the record shows that [the party] in fact did attempt to obtain the requested documents in order to produce them, that he was denied access when [the custodian of the documents] determined that his position 'd[id] not confer upon [him] the right to obtain documents and information,' and that [the party] does not have the

practical ability to obtain the documents which are presently beyond his control, any further coercion would serve no rational coercive purpose and could only be viewed as punitive.").

As the Court noted in *In re Potanina*, where there was no dispute that the party "attempted to obtain the documents from" the entity that held them, and "was refused," and the record was clear that the entity "ha[d] no plans to comply with [the party's] requests" for the documents, it is "apparent … as a factual matter [that] [the party] does not have the practical ability" to obtain the documents. *Id*. at *8 (finding "unrealistic to think that attempts to circumvent the [custodian's] official position will be fruitful."). Thus, in determining custody or control, the essential question is whether a party has the ability within the bounds of the law to obtain the documents from the entity holding them; the answer here is a resounding no based on the undisputed factual evidence. *Id*. at *5 ("As a matter both of logic and of law, the ability to obtain or access documents must be the sine qua non of 'control'; a clearer statement of the rule therefore might read: 'control can be found where a party has the practical ability to acquire or access documents by (1) legal entitlement or (2) any other means.'").

As the Ninth Circuit has aptly noted, a ruling requiring an entity to produce records that it does not possess and has no ability to obtain from another entity that does possess them would essentially be meaningless (and also an incorrect interpretation of custody and control):

> [T]here is no dispute that C&L-US lacks the legal ability to obtain documents from C&L-Switzerland. …
>
> Ordering a party to produce documents that it does not have the legal right to obtain will oftentimes be futile, precisely because the party has no certain way of getting those documents. Varni claims that C&L-US has the practical ability to obtain documents from C&L-Switzerland because C&L-Switzerland has voluntarily furnished C&L-US with documents and information in the past. With respect to the ECAMA documents, however, C&L-US asked C&L-Switzerland to produce those documents, but C&L-Switzerland refused. There is no mechanism for C&L-US to compel C&L-Switzerland to produce those documents, and it is not clear how Varni wants C&L-US to go about getting the ECAMA documents, since C&L-Switzerland could legally - and without breaching any contract -

6

>continue to refuse to turn over such documents. Because C&L-US does not have legal control over C&L-Switzerland's documents, Varni could not compel C&L-US to produce those documents.

*In re Citric Acid Litig.*, 191 F.3d 1090, 1107-1108 (9th Cir. 1999).

Thus, whether applying a standard of custody/control based on a legal right to obtain documents or a practical ability, the question of custody and control has been clearly resolved in favor of QuoteWizard because QuoteWizard has no means to obtain the records from Drips, absent a Court Order requiring Drips to produce them. Drips's continued refusal to produce the documents even in the face of ECF No. 144 renders the record clear on this point.

Under the usual circumstances, interpreting custody or control in this setting is generally a predictive exercise focusing on whether, if ordered to obtain the documents, the party will likely be able to do so. *In re Nortel Networks Corp. Sec. Litig.*, 2004 U.S. Dist. LEXIS 19129, at *9, 2004 WL 2149111 (S.D.N.Y. September 21, 2004) (courts use predictive exercise to determine if party can obtain documents at issue from another entity). Moreover, courts do not "judge" or resolve the "propriety" of the possessing entity's refusal to produce the documents; for the purposes of custody and control, the court merely predicts how the possessing entity will respond to a demand for the documents. *Id*. ("If we conclude that the custodian is not likely to honor the subpoenaed party's request, our analysis does not then seek to judge the propriety of the custodian's anticipated refusal.").

Here, the "predictive" exercise has been rendered moot because Drips has unequivocally stated, and the undisputed evidence shows, that it refuses to produce the records to QuoteWizard or anyone else in this litigation absent Court Order, thus meaning that QuoteWizard does not have custody or control over those records held by Drips. Under any standard of custody or control, whether considering a legal right to obtain records, a practical ability, or otherwise, QuoteWizard

does not have custody or control over these records in Drips's possession and has no means to obtain them.

As a practical matter, therefore, QuoteWizard cannot obtain the records being held by Drips, although it has made numerous attempts through demand and now a subpoena directly to Drips.[1]  It is physically and legally impossible for QuoteWizard to comply with an Order requiring it to produce the records held by Drips.[2]  At this juncture, the only way that the records can be obtained or produced is if the Court directs an Order at Drips.

### (2) The Records Have Never Been in QuoteWizard's Custody or Control; Plaintiff's Reliance on ECF No. 136-9 Should Be Rejected

This Court found that the records at issue (the 46,000 consumer communications that led to Drips classifying such communications as "do not call" requests) were within the custody or control of QuoteWizard, citing to ECF No. 136-9.  However, the document filed at ECF No. 136-9 does not establish custody or control.  In that October 9, 2019 e-mail, Drips invited QuoteWizard to audit "do not call" requests and provided a series of links for QuoteWizard's campaigns for which it had hired Drips to send the text messages to consumers.

---

[1] Courts have noted that, where a party does not have documents in its possession, custody, or control, it need not subpoena the entity that does have those records in order to satisfy a request to produce from another party.  Rather, the party seeking the documents (here, Plaintiff) should itself serve the subpoena on the entity that holds the records.  *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007) (it is "fairly obvious" that a party need not seek documents from third parties if compulsory process against the third parties is available to the party seeking the documents).  Nevertheless, to make every effort within the bounds of the law to obtain the records from Drips, QuoteWizard has served the subpoena on Drips.  *See* Ex. 1.

[2] This is analogous to situations where parties are asked or required to produce documents that do not exist; the principle is the same—parties cannot comply with orders that require something that is physically impossible, whether because the sought-after documents do not exist or because the party has no ability to obtain them.  *See, e.g., Payless Shoesource Worldwide, Inc. v. Target Corp.*, 2008 U.S. Dist. LEXIS 28878, 2008 WL 973118, at *4 (D. Kan. Apr. 8, 2008) ("Fed. R. Civ. P. 34 does not require a party to create responsive documents if they do not exist in the first instance" and "the Court cannot compel a party to produce documents that do not exist.").

QuoteWizard submits sworn evidence herewith that the links are no longer active or accessible (and were not active or accessible before such time that QuoteWizard produced a copy of the e-mail). *See* Winkler Dec., ¶¶ 6-7. More importantly, the links did not give QuoteWizard access to any of the underlying consumer communications that led to Drips classifying the communications as "do not call" requests. *Id*., ¶ 7. Rather, the links gave QuoteWizard temporary access that is no longer available to consumer telephone numbers and the tiers that Drips had assigned to the "do not call" requests, but did not include the communications that the consumers had made to Drips. *Id*.

The Court's decision at ECF No. 144 appeared to credit Plaintiff's argument that this e-mail proved that QuoteWizard had a practical ability to obtain consumer communications from Drips. But Plaintiff's argument was based on speculation that is false in light of the above sworn evidence. For example, Plaintiff speculated that the e-mail proved that "QuoteWizard had the ability to access Do Not Call complaints received by Drips, via an internet link, and to 'audit' the complaints." ECF No. 136, pp. 9-10. But this is simply not true; the sworn evidence establishes that the links did <u>not</u> provide access to any of the consumer communications that QuoteWizard has been ordered to produce and which are solely in the possession of Drips.

Finally, the fact that Drips voluntarily produced the text messages to and from Plaintiff in this case does not show that QuoteWizard has a practical ability to obtain the 46,000 consumer communications underlying the "do not call" requests as defined by Drips. *See Linde v. Arab Bank, PLC*, 262 F.R.D. 136, 142 (E.D.N.Y. 2009) ("The exchange of the very limited information …, even if done routinely, is not evidence of a free flow of documents between the two entities") (discussing concept of control of requested documents). In fact, any claim of practical ability to

9

obtain the 46,000 communications is foreclosed in light of the fact that Drips has refused to produce them to QuoteWizard despite the issuance of the ECF No. 144.

### (3) The Hearing Transcripts from the Discovery Conferences Establish that Plaintiff Sought, and Received, the "Do Not Call" Lists from QuoteWizard

As noted in QuoteWizard's objections to ECF No. 132, the only records that Plaintiff requested, and has since received from QuoteWizard, is the list of "do not call" requests made by consumers to Drips for QuoteWizard's campaigns, not the underlying consumer communications that the consumers sent to Drips that Drips classified as a "do not call" request. QuoteWizard submits herewith a copy of the transcript from the hearing on this discovery matter from October 20, 2020, which it received after filing its Objections and Reply, which further elucidates this point.

> For example, Plaintiff's counsel states:
>
> MR. MCCUE: … Very often telemarketers have taken the position that a do not call request is not a complaint. So that's what I have dealt with in the past. A DNC request is very specific. Because under the do not call provision of the statute, a company like Drips or QuoteWizard has to maintain *a list of anyone who says do not call me*. So in a text perspective, it could be even a reply to the text saying, "Do not call," and by statute, *those numbers then need to be added to a list, on a daily basis*, and then future calls or texts have to be scrubbed against that list. So it's a little different than complaints. It's not like I'm writing to the CEO, saying, "Please stop calling me." It's in the ordinary course. If, on the phone call, if someone gets a live phone call, they say, "Why are you calling me? Stop calling me," by statute, that number has to be added to *the do not call list. So what I anticipate is that there is a daily list that is probably maintained by Drips and sent to QuoteWizard every day*, saying, "Here is the text run we did today. Here is the DNC, the do not call response," and then that has to be used as a scrub going forward. So similar to formal complaints or lawsuits, a consumers's request to do not call me puts QuoteWizard on notice that its leads are bad. And I anticipate that, well prior upon to Mr. Mantha, they were aware that any time they did a text and they got a whole host of do not call requests, those should be stored electronically, no burden at all to produce them, and they're probably sent by Drips to QuoteWizard on a daily basis."

Ex. 2, pp. 28-29 (emphasis added).

Thus, when the Magistate Judge allowed this request, it was limited to the "do not call" list. *See* Ex. 2, p. 32 ("THE COURT: Okay. So I'm going to allow Number 25. And since we don't know anything about how long QuoteWizard has used Drips, ***or how these do not call lists are stored***, and that type of thing, if Ms. Kingston has follow-up concerns about the production, I'm going to ask the parties to negotiate that." (emphasis added)). QuoteWizard produced exactly that to Plaintiff: the "do not call" lists, which were in its possession. The lists do not contain the underlying consumer communications and QuoteWizard was not required to produce those at that time. In fact, QuoteWizard was unequivocal in informing Plaintiff's counsel that it did not have those communications. *See* Winkler Dec., ¶¶ 4-5, 8-9. *See also* ECF No. 126-1, Dec. 16, 2020 E-mails (informing Plaintiff's counsel that QuoteWizard does not have these communications that would have been sent to Drips; "That information was not redacted from the DNC list and is not provided from Drips to [QuoteWizard], unless there is a specific request for that information like in the case of Mantha.").

The subsequent hearing concerning the underlying consumer communications also makes clear that all parties and the Court appeared to understand and agree that the communications are in the possession of Drips. *See* Ex. 3, p. 10 ("MR. POLANSKY: … [T]hey want 46,000 emails, or text messages, that Drips has, to comb through to make a class discovery or a class certification argument at this point.); *id*., p. 14 (whereby Plaintiff's counsel characterizes documents as "text messages that Drips has in its possession"); *id*., p. 17 ("THE COURT: Okay. So here's what I'm going to do with regard to this issue about the Do Not Call list. I am going to require QuoteWizard to provide all the text messages either in Dri[p]s['] or QuoteWizard's possession concerning the approximately 48,000 calls. And that just means what I say. All the text messages that are associated with those.").

Based on the transcripts, along with the other portions of the records, QuoteWizard again notes that all of its objections, including its objection that the 46,000 communications are not in its possession, custody, or control (which were ordered to be produced for the first time after the January 11, 2021 hearing) have been preserved.

QuoteWizard also submits the transcripts to show that the issue of custody or control was not an issue that Plaintiff satisfied with any evidence as was his burden; in other words, although understanding that the 46,000 communications are in the possession of Drips, Plaintiff never showed (as is his burden) nor did the Court find that QuoteWizard could be legally ordered to produce Drips's records under a custody or control theory. *See*, *e.g.*, *SEC v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 472 (S.D.N.Y. 2000) ("[T]he burden is on the party seeking discovery to make a showing that the other party has control over the materials sought.").

## RELIEF REQUESTED

Based on the foregoing, and on its initial Objections and Reply [ECF Nos. 133 and 143], QuoteWizard asks this Court to reconsider ECF No. 144 and find that the records at issue are not in QuoteWizard's possession, custody, or control within the meaning of Fed. R. Civ. P. 34. QuoteWizard requests that the Court vacate the portion of ECF No. 132 requiring QuoteWizard to produce the records it does not have and cannot obtain.

In the alternative, QuoteWizard asks this Court to vacate ECF No. 144 and hold a further decision on these matters in abeyance pending Drips's response to QuoteWizard's pending subpoena for these records. If Drips refuses to produce the records in response to the subpoena, this would require a motion to compel. An order granting such a motion to compel Drips to produce the records is the only manner by which QuoteWizard can obtain the records.

If the Court is not willing to grant the aforementioned relief, then QuoteWizard alternatively requests that the Court make expressly clear that Drips is required, under ECF No. 144, to produce the records at issue to QuoteWizard.

WHEREFORE, QuoteWizard respectfully requests that the Court grant its Motion and vacate the portion of ECF No. 144 finding that the 46,000 consumer communications are in the custody or control of QuoteWizard even though not in its possession, and overrule the portion of ECF No. 132 requiring QuoteWizard to produce those records.

Respectfully submitted,

QuoteWizard.com, LLC,
By its attorneys,

/s/ Kevin P. Polansky
Kevin P. Polansky (BBO #667229)
kevin.polansky@nelsonmullins.com
Christine M. Kingston (BBO #682962)
christine.kingston@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
One Financial Center, Suite 3500
Boston, MA 02111
(t) (617)-217-4700
(f) (617) 217-4710

Dated: March 5, 2021

## LR 7.1 CERTIFICATE OF COMPLIANCE

I, Kevin P. Polansky, hereby certify that, by e-mail on March 4, 2021, I contacted Plaintiff's counsel in a good faith effort to narrow or resolve the issues raised by this Motion. Specifically, I reiterated to Plaintiff's counsel that QuoteWizard does not have the records at issue and that Drips, which does have the records, refuses to produce them to QuoteWizard upon demand. However, we were unable to narrow or resolve the issues raised by this Motion.

Dated: March 5, 2021                              /s/ Kevin P. Polansky

CERTIFICATE OF SERVICE

    I, Kevin P. Polansky, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: March 5, 2021    /s/ Kevin P. Polansky