IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
MASSACHUSETTS

JOSEPH MANTHA on behalf of
themselves and others similarly situated,

    Plaintiff,

v.

QUOTEWIZARD.COM, LLC

    Defendant.

Case No. 1:19-cv-12235-LTS-PK

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR RECONSIDERATION**

Six months ago, Joseph Mantha ("Plaintiff") sought to discover from QuoteWizard.com, LLC ("QuoteWizard" or "Defendant") the Do Not Call complaints submitted by 46,000 consumers who objected to their receipt of QuoteWizard telemarketing spam texts, a subject relevant to the validity of Mr. Mantha's purported consent and whether QuoteWizard's violation of the TCPA was "knowing and willful." Three times now this Court compelled the production of these documents. QuoteWizard, however, continues to refuse to produce these records and now moves this Court to reconsider its prior Order, ECF #144. QuoteWizard's Motion for Reconsideration in this regard offers nothing new but recycled arguments previously made and soundly rejected. QuoteWizard's Motion for Reconsideration should be DENIED.

    **I.**    **RELEVANT BACKGROUND**

On October 19, 2020, Chief Magistrate Judge Kelley, after briefing (ECF #104) and argument, conducted a discovery hearing, in relevant part, relating to Mr. Mantha's request that QuoteWizard be compelled to produce any telemarketing complaints arising from its text

telemarketing campaign, as well as any requests received from recipients of its spam texts demanding that such texts cease ("Do Not Call Requests"). In opposition, QuoteWizard did not argue before Judge Kelley that the substantive complaints or Do Not Call requests were not within its possession or control, or that their production by any third party would be burdensome. Rather, QuoteWizard argued these records were irrelevant to the instant litigation. Specifically, QuoteWizard represented to this Court that:

- The "do not call records" reflect consumers who have consented to receive communications from QuoteWizard but who then requested no further contact. It is the functional equivalent of an "opt out."

*See* ECF#124-5 at ¶5, Declaration of QuoteWizard Call Center Manager Tricia Winkler.

QuoteWizard further attested:

- The "do not call" requests ***are not complaints*** from those consumers and do not indicate that the consumers did not originally consent to be contacted. The records reflect a consumer's choice not to receive further communications."

*Id.* at ¶6 (emphasis added).

Judge Kelley, however, rejected QuoteWizard's relevance argument and ordered QuoteWizard to produce all telemarketing complaints relating to QuoteWizard's text telemarketing, as well as all "Do Not Call" requests relating to telemarketing conducted on behalf of QuoteWizard by Drips." *See* ECF #112. Notably, Judge Kelley did not Order QuoteWizard to produce merely the phone numbers of complaining consumers, she ordered the production of the substantive complaints themselves. *Id.* QuoteWizard did not appeal ECF #112 to this Court.

On November 9, 2020, QuoteWizard responded to ECF #112. As to Judge Kelley's Order that QuoteWizard produce all telemarketing complaints submitted by recipients of QuoteWizard telemarketing texts, QuoteWizard claimed it ***"has no responsive documents."*** *See* <u>Exhibit 1</u>, QuoteWizard's Second Supplemental Responses to Plaintiff's Second Request for Production of Documents at #17. In response to Judge Kelley's Order that QuoteWizard produce all Do Not Call

2

requests, QuoteWizard produced three excel spread sheets evidencing approximately 46,000 Do Not Call requests. *See* ECF #136, Plaintiff's Opposition to QuoteWizard's Objections to ECF #132 at pg. 4 and ECF #136-1, PDF of Redacted Excel Spreadsheet. Despite the explicit instruction of the Court at ECF #112, QuoteWizard ***did not*** produce the substantive Do Not Call requests themselves. Rather, QuoteWizard produced only the phone numbers of complaining consumers and then, without Court order, redacted the numbers claiming that QuoteWizard was doing so to protect consumers' privacy rights. *Id.* Plaintiff's counsel were left then with three excel spreadsheets evidencing 46,000 do not call complaints submitted by consumers wholly devoid of any substance whatsoever in defiance of ECF #112.

Mr. Mantha then returned to Judge Kelley, noting QuoteWizard's refusal to comply with ECF #112. *See* ECF #124 and #126. On January 11, 2021, after a second hearing, Judge Kelley ***again*** ordered QuoteWizard to produce the substantive responses of the 46,000 consumers who took the time to text QuoteWizard and to demand that the telemarketing texts at issue cease. *See* ECF #132. In addition, Judge Kelley ordered QuoteWizard to produce internal documents discussing the Do Not Call requests. *Id.* Again, QuoteWizard did not argue in its briefing to Judge Kelley that the requested documents were not within its possession or control, or that production would be burdensome. *See* ECF #124.

Thereafter, QuoteWizard supplemented its discovery production in response to Judge Kelley's Order that QuoteWizard produce internal documents discussing the Do Not Call requests, producing one document entitled "Tiered Opt Out Logic." *See* ECF #136, Plaintiff's Opposition to QuoteWizard's Objections to ECF #132 at pg. 11-2, and ECF #136-5. This document detailed the manner in which consumer Do Not Call requests would be processed by handled by Drips and QuoteWizard. The document also explained that Drips would assess each Do Not Call complaint and assign it a "tier" based on the severity of the complaint. Notably, complaints described by

3

Drips as "***the screamers***" and others who were ***"upset that they are being called or texted"*** were to be assigned a "Tier 1." *Id.* Do Not Call requests, that for example, informed QuoteWizard that the recipient of the spam text was ***"only 11"*** were assigned a Tier 2. These tier assignments were then shared by Drips with QuoteWizard. *Id.* [1]

As to the 46,000 Do Not Call requests themselves, however, QuoteWizard still refused to produce the compelled documents. Instead, and even though it never appealed ECF #112, Judge Kelley's initial Order compelling QuoteWizard to produce all Do Not Call requests, on January 25, 2021, QuoteWizard appealed to this Court arguing *for the first time* that the substantive 46,000 Do Not Call requests at issue were not in its possession or control, and that such production would be burdensome. *See* ECF #133.

Again, in support, QuoteWizard offered the sworn testimony of Ms. Winkler. *See* ECF 133-1, Declaration of Tricia Winkler at ¶6-7. This time, however, Ms. Winkler offered starkly different testimony. Previously, as detailed above, Ms. Winkler attested under oath that the substance of the Do Not Call requests themselves indicated the requests were not complaints, but were mere "opt out" requests submitted by consumers who had previously consented to receive text solicitations from QuoteWizard. *See* ECF#124-5 at ¶5-6. One would logically assume then that for Ms. Winkler to make such a statement under oath, she actually reviewed the Do Not Call requests themselves. Apparently, however, this was not the case. On appeal to this Court, Ms. Winkler claimed that the substantive requests of 46,000 for QuoteWizard to Do Not Call were, in

---

[1] This document directly contradicts Ms. Winkler's prior sworn testimony that the recipient of QuoteWizard's texts all consented to receive such texts, and that all Do Not Call requests were not complaints but were merely opt out requests. This document also directly contradicts QuoteWizard's representation that it had no "responsive documents" to produce in response to Judge Kelley's Order that QuoteWizard produce all telemarketing complaints relating to its text telemarketing campaigns. *See* <u>Exhibit 1</u>, QuoteWizard's Second Supplemental Responses to Plaintiff's Second Request for Production of Documents at #17.

4

fact, not in QuoteWizard's possession or control and "never" were in its possession or control. *See* ECF *133-1,* at ¶5-7.

On February 24, 2021, this Court rejected all of QuoteWizard's arguments finding:

*One might reasonably conclude that Judge Kelley's October 2020 Order required production of the DNC requests received by Drips on QuoteWizard's behalf and that any ambiguity or objection ought have been timely raised in response to that unchallenged Order. But the Court need not consider any such issues because Judge Kelley's January 2021 Order withstands challenge regardless. The record before the Court establishes that, under any standard of review, the relevant documents are within the custody or control of QuoteWizard (even if not currently within its possession). See e.g., Doc. No. 136-9.*

*See* ECF #144.

Still, QuoteWizard refused to comply with now *three* Orders of this Court compelling QuoteWizard to produce the 46,000 Do Not Call requests of recipients of its spam texts. QuoteWizard now moves this Court to reconsider ECF #144. In purported support, QuoteWizard continues to argue that the substantive Do Not Call requests of the 46,000 consumers at issue are not in its possession or control; that such production by Drips would be burdensome; that Mr. Mantha's counsel allegedly informed Drips that it need not produce the Do Not Call requests, and that, despite a clear record exactly to the contrary, Mr. Mantha never actually requested the substance of consumer complaints, but merely requested the phone numbers of complaining consumers. *See* ECF #149. None of these arguments warrant reconsideration of ECF #144.

## II.  STANDARD OF REVIEW

As previously recognized by the Court "[g]enerally, a motion for reconsideration is not a vehicle for giving an unhappy litigant an additional chance to sway the judge, nor is it intended to allow a party to make arguments already presented to, and rejected by, the court." *See Wilks v. Ocwen Fin. Corp.*, 2019 U.S. Dist. LEXIS 157170, at *1-2 (D. Mass. Sep. 13, 2019) (Sorokin, J.), citing *Davis v. Lehane*, 89 F. Supp. 2d 142, 148 (D. Mass. 2000).

5

### III.  ARGUMENT

**A.  QuoteWizard's Claim That The Do Not Call Records Are Not In Its Possession Has Been Previously Considered and Rejected By This Court.**

In its original appeal to this Court, QuoteWizard claimed the substantive Do Not Call Requests of the 46,000 complaining consumers were not in its possession or control, that Drips was refusing to produce the records, and that requiring Drips to produce these records would be burdensome. *See* ECF #133, Defendant's Objections to Judge Kelley's Order ECF #132. In response, Mr. Mantha explained in detail exactly why this representation was not true. *See* ECF #136. In a nutshell, Mr. Mantha noted that QuoteWizard had no apparent issue obtaining evidence from Drips when it has purportedly helpful to QuoteWizard's defense, but was now conveniently unable to obtain evidence from Drips (complaints from 46,000 consumers) devastating to its defenses. *Id.* Mr. Mantha also offered the contract between Drips and QuoteWizard pursuant to which Drips agreed that QuoteWizard would take the lead responding to any TCPA related litigations or subpoenas- thereby evidencing an agreement between Drips and QuoteWizard to cooperate with one another in regards to TCPA litigation. *Id.* Mr. Mantha also offered evidence that Drips had provided QuoteWizard with an internet link so that QuoteWizard could "audit" DNC requests. *Id.* Mr. Mantha also offered sworn deposition from Drips indicating that in the ordinary course, Drips commonly shares Do Not Call information with its clients. *Id.* Finally, as to Drips' convenient claim of burden, Mr. Mantha also referred the Court to TCPA litigation filed in another federal court that involved a massive number of Do Not Call complaints, the substantive responses of which were produced by Drips in response to subpoena with no claim of burden, evidencing that Drips' claim of burden here, in a case involving far less Do Not Call complaints, was particularly suspect. *Id*.

Now, here on reconsideration, QuoteWizard continues to claim that the 46,000 Do Not

6

Call requests submitted by consumers in response to their receipt of QuoteWizard text spam are not in its possession or control, and that the production of the same by Drips would be burdensome. These are the exact same arguments QuoteWizard made previously and have already been rejected.

### B. Ms. Winkler's Declaration Contradicts Her Prior Sworn Testimony And Offers No New Grounds To Reconsider ECF #144.

In support of its claim that the 46,000 Do Not Call requests submitted by complaining consumers are not in its possession or control, QuoteWizard has provided the Court with yet another sworn declaration of its Call Center Manager Tricia Winkler, who again claims the substantive Do Not Call requests of the 46,000 consumers at issue are not and have "never" been in QuoteWizard's possession. *See* ECF 151, Declaration of Tricia Winkler. This exact claim was made previously by Ms. Winkler at the objection stage. *See* ECF#133-1 at ¶5-7. Ms. Winkler's declaration on reconsideration offers nothing new in this regard and simply repeats her prior testimony. And, as noted above, Ms. Winkler's most recent attestation that she never reviewed the 46,000 Do Not Call requests at issue stands in contrast to her prior testimony that these 46,000 Do Not Call requests, in fact, were "not complaints" but were merely "opt outs" submitted by consumers who had consented to receive QuoteWizard's spam texts.[2]

The only arguably new argument offered by Ms. Winkler for this Court's reconsideration is her new claim that the internet link provided by Drips that allowed QuoteWizard to audit Do Not

---

[2] If all recipients of QuoteWizard texts consented to receive such texts- as Ms. Winkler and QuoteWizard contend- why then would consumers be labelled as a "screamer" "upset" that they had received the text spam at issue? Similarly, how can QuoteWizard attest in response to an Order of the Court (ECF #112) that there are no documents evidencing consumer complaints, when consumers who object to the receipt of QuoteWizard spam texts are labelled by QuoteWizard as "screamers"? *See* Exhibit 1, QuoteWizard's Second Supplemental Responses to Plaintiff's Second Request for Production of Documents at #17 (in response to an Order compelling QuoteWizard to produce telemarketing complaints relating to its text campaigns, QuoteWizard claims it has "no responsive documents."

7

Call requests, in fact, never worked. *See* ECF 151. Mr. Mantha, however, offered this evidence, in addition to many other independent sources of evidence, including the contract between Drips and QuoteWizard, to show that QuoteWizard had the *ability* to obtain evidence from Drips when it chose to do so. That the link did not work, or no longer works, is not the point. In fact, that QuoteWizard had the ability to audit consumer Do Not Call requests but apparently never took steps to ensure that the internet links provided to it by Drips even functioned, is even more evidence that QuoteWizard had no regard whatsoever for the complaints of consumers who received its spam text messages, and that its violation of the TCPA, even solely as to Mr. Mantha's individual claim, was knowing or willful. Further, even as to this new claim, Ms. Winkler's sworn testimony is internally inconsistent. Ms. Winkler attests that the audit links do not currently work, and did not work in the past when she attempted to access the links previously. *See* ECF 151. Ms. Winkler, however, then goes on to attest that the links did not contain the substantive Do Not Call requests of consumers, but merely contained their phone numbers, and the tier assigned to the complaint based on its severity. How could Ms. Winkler know what the audit links substantively led to if the links do not work currently and did not work previously? In any event, Ms. Winkler's redundant and inconsistent declaration offers no basis for this Court's reconsideration of ECF #144.

        C.    **The Claim That Mr. Mantha's Counsel Informed Drips That It Need Not Produce The Compelled Records Is False**

In support of reconsideration, QuoteWizard also claims that counsel for Mr. Mantha informed Drips that it need not produce the substantive Do Not Call requests the production of which has repeatedly been compelled by three Orders of this Court. *See* ECF #150, Declaration of Counsel. Specifically, in his declaration, counsel for QuoteWizard quotes counsel for Drips, allegedly quoting counsel for Mr. Mantha as having:

8

> *"taken the position that Drips was not required to produce the Do Not Call requests to QuoteWizard, and that Plaintiff's position had informed Drips' continued refusal to produce the records to QuoteWizard even after the issuance of ECF #144."*

*Id.*

Shortly after the submission of QuoteWizard's Declaration of Counsel containing this allegation, counsel for Mr. Mantha contacted via e-mail both Mr. Polansky, counsel for QuoteWizard, and Mr. Troutman, counsel for Drips, and informed both that the above representation was not true, and such was confirmed in a response e-mail from Mr. Troutman. *See* ECF 153-1 (email exchange between counsel of records as to the representation of counsel for QuoteWizard). Thereafter, counsel for QuoteWizard did not withdraw his Declaration, but instead submitted ECF #153 to "clarify" his prior statements.

The suggestion that counsel for Mr. Mantha would fight for these records for six months and then, as an aside, inform Drips that it need not bother to produce these records makes no sense. In any event, nothing within the Declaration of QuoteWizard's counsel warrants the reconsideration of ECF #144.

    D.    **The Prior Orders of This Court and The Discovery Transcripts Submitted By QuoteWizard Make Clear that Mr. Mantha Has Long Sought The Substance of Consumers' Telemarketing Complaints - Not Just Their Phone Numbers**

In its last argument in support of reconsideration, QuoteWizard claims that Mr. Mantha actually never sought the substance of consumer telemarketing complaints, but rather only sought the phone numbers of consumers who made a Do Not Call request. *See* ECF #149 at pg. 10. QuoteWizard then claims that since it did produce the phone numbers of complaining consumers (numbers that it then redacted due to its new found concern for consumer privacy rights) it should not be compelled to produce the Do Not Call requests of 46,000 complaining consumers. *Id.*

QuoteWizard's argument ignores the fact that it was *compelled* by Judge Kelley to produce

9

all documents evidencing complaints submitted by consumers regarding text messages sent by QuoteWizard using Drips' technology. *See* ECF #112. In its compelled response to ECF #112, QuoteWizard claimed it **"has no responsive documents."** *See* Exhibit 1, QuoteWizard's Second Supplemental Responses to Plaintiff's Second Request for Production of Documents at #17.

We now know from Ms. Winkler's various declarations that these complaints ***do in fact exist-*** but were conveniently and self-servingly deemed *en masse by* QuoteWizard to be mere opt out requests and not "complaints" that needed to be produced in response to Judge Kelley's Order (ECF #112).  By conveniently re-labelling the 46,000 Do Not Call requests as "opt outs" rather than "complaints," QuoteWizard attempted to avoid complying with ECF #112. That QuoteWizard now admits it classified all Do Not Call requests as "opt outs" rather complaints and did so without even reviewing the substance of the requests is troubling. That QuoteWizard persists before this Court on reconsideration claiming that Mr. Mantha never sought complaints but merely sought lists of phone numbers of those who submitted DNC requests is gamesmanship- pure and simple- that should not be countenanced by this Court.

Finally, in purported support of its contention that Mr. Mantha merely sought the phone numbers of complaining consumers, and not the substance of the Do Not Call requests themselves, QuoteWizard submits hearing transcripts from discovery hearings conducted before Judge Kelley (ECF #150-2 and 150-3) and selectively quotes sections of those transcripts where counsel for Mr. Mantha refers to QuoteWizard's obligation to maintain a Do Not Call "list" and to produce that Do Not Call "list." QuoteWizard ignores, however, the extensive portions from the transcripts of both discovery hearings where counsel for Mr. Mantha repeatedly pressed the Court to compel QuoteWizard to produce not just the DNC "list" but also the 'complaints' made by consumers who were the recipients of QuoteWizard telemarketing texts. *See* ECF 150-2, Transcript of October 19, 2021 Discovery Hearing at 15:18-25; 16:1-25; 17:1-25; 21:5-25; 22:1-25; 24:1-10; 29:16-25; 30:1-

25. *See also* ECF 150-3, Transcript of January 11, 2021 Discovery Hearing at 6:4-25; 7:1-25; 8:1-25. Plaintiff's counsel also made it clear during this hearing that he sought Do Not Call "requests" and not just lists of phone numbers as now alleged. *Id.* at 17:11-19; 29:15-25; 30:16-23. *See also* ECF 150-3, Transcript of January 11, 2021 Discovery Hearing at 7:1-25; 9:1-10.

Given the record, it simply defies credulity to now suggest that counsel for Mr. Mantha solely sought the phone numbers of consumers who submitted Do Not Call complaints after receiving text solicitations from QuoteWizard and not the substance of the complaints themselves. QuoteWizard's frivolous contention to the contrary offers no basis for this Court to reconsider ECF #144.

## IV.    CONCLUSION[3]

QuoteWizard is nothing more than an "unhappy litigant" recycling arguments previously considered and rejected by the Court. It quite obviously does not want to produce the Do Not Call requests submitted, for example, by the "screamers" who received their spam texts- and has now defied three Orders of this Court in an effort to do so. QuoteWizard has claimed since the outset of this case that it only sent text solicitations to millions of consumers who explicitly agreed to receive such texts from QuoteWizard itself. QuoteWizard knows that these Do Not Call requests will prove to the contrary, a fact that will support Mr. Mantha's individual claim that he never

---

[3] The Court may recall that Drips is the entity used by QuoteWizard to transmit the millions of spam text telemarketing calls at issue in this case. Drips is the sole entity in possession of the calling records that identify the phone numbers of the recipients of QuoteWizard's text spam, and the number of texts received by each consumer. These calling records identify the class and quantify their damages. At the outset of this case, Plaintiff's counsel moved to ensure that these crucial records were preserved and produced. In response, QuoteWizard claimed that Mr. Mantha's claim was frivolous, that he and his counsel had engaged in sanctionable conduct, and that QuoteWizard was prepared to move for summary judgment *immediately* as to Mr. Mantha's claim. In apparent reliance on this representation, this Court limited discovery, including the production of call records, to Mr. Mantha's individual claim. One year has now passed, and QuoteWizard still has yet to move for summary judgment. Yet, the call records are still in the sole possession of Drips who has now taken a position of obstruction in support of QuoteWizard by refusing to produce the 46,000 Do Not Call requests at issue.

consented to receive QuoteWizard spam texts, and his contention that QuoteWizard's violation of the TCPA was knowing and willful. QuoteWizard's Motion for Reconsideration presents nothing new and certainly constitutes no basis for this Court to reconsider ECF #144. The Motion to Reconsider should be DENIED.

                PLAINTIFF,

                By his attorneys

                */s/ Matthew P. McCue*
                Matthew P. McCue
                THE LAW OFFICE OF MATTHEW P. MCCUE
                1 South Avenue, Suite 3
                Natick, MA 01760
                Telephone: (508) 655-1415
                mmccue@massattorneys.net

                Edward A. Broderick
                BRODERICK LAW, P.C.
                176 Federal Street, Fifth Floor
                Boston, MA 02110
                Telephone: (617) 738-7080
                ted@broderick-law.com

                Anthony I. Paronich
                PARONICH LAW, P.C.
                350 Lincoln Street, Suite 2400
                Hingham, MA 02043
                (508) 221-1510
                anthony@paronichlaw.com

                Alex M. Washkowitz
                Jeremy Cohen
                CW LAW GROUP, P.C.
                188 Oaks Road Framingham, MA 01701
                alex@cwlawgrouppc.com

Date: March 10, 2021

CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2021, I electronically transmitted the foregoing to all counsel of record via the electronic filing system.

By: */s/ Matthew P. McCue*
Matthew P. McCue