# EXHIBIT 3

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OHIO
### Akron Division

DRIPS HOLDINGS, LLC,

                  *Petitioner*,

v.

QUOTEWIZARD.COM, LLC,

                  *Respondent*.

Misc. Action No. ____

Arising from Civil Action No. 1:19-cv-12235-LTS, pending in the United States District Court for the District of Massachusetts

### DECLARATION OF ERIC J. TROUTMAN IN SUPPORT OF DRIPS HOLDINGS, LLC'S MOTION TO QUASH SUBPOENA

I, Eric J. Troutman, declare as follows:

1.     I am over the age of eighteen and have personal knowledge of all facts set forth in this Declaration. If called as a witness, I could competently testify to such facts under oath.

2.     I represent Drips Holdings, LLC ("Drips"), a nonparty in *Mantha v. Quotewizard.com, LLC*, No. 1:19-cv-12235-LTS (D. Mass) ("*Mantha*" or the "underlying action").

3.     The Plaintiff in the *Mantha v. Quotewizard.com, LLC*, No. 1:19-cv-12235-LTS (D. Mass) case served two subpoenas for documents and one for testimony. In response to the document subpoenas, Drips prepared productions of responsive records and asserted objections, explaining the burden that Drips—a nonparty—would have to undertake to identify some of the requested records. Specifically:

a. In June 2020, the plaintiff in the underlying action issued a subpoena to Drips produce documents. A true and correct copy of this subpoena can be found on the *Mantha* docket [ECF No. 51-3].

b. By agreement of the requesting party, Drips served appropriate objections and produced responsive records in August 2020. A true and correct copy of Drips' objections to the initial subpoena is attached as Exhibit 1.

c. In October 2020, the plaintiff in the *Mantha* served Drips a second subpoena to produce documents. A true and correct copy of this subpoena is attached as Exhibit 2.

d. Drips served appropriate objections and produced responsive records in November 2020. A true and correct copy of Drips' objections to the initial subpoena is attached as Exhibit 3.

e. On November 5, 2020, the plaintiff in *Mantha* served Drips a subpoena to testify a deposition. A true and correct copy of this subpoena is attached as Exhibit 4

f. Drips served appropriate objections on December 16, 2020 and produced a 30(b)(6) deponent to testify at a deposition on December 17, 2020. A true and correct copy of Drips' objections to the deposition subpoena is attached as Exhibit 5.

4. Importantly, while plaintiff's requests arguably covered the third-party communications QuoteWizard has now been compelled to produce, plaintiff stood down on that demand following receipt of Drips' objection the demand.

5. Indeed, the second documents subpoena requested that Drips "Produce all consumer do not call requests provided to you in any way relating to text telemarketing conducted on QuoteWizard's behalf. that [sic] are not communications with QuoteWizard directly." Exhibit 2, Request No. 9.

6. In response, Drips asserted objections explaining some of the extreme burden Drips would have to undertake to identify these records and stating: "On the basis of these objections no responsive records will be produced, and Drips requests that Plaintiff withdraw this request to avoid burdening a non-party when Defendant has already produced the records Plaintiff seeks." *See* Exhibit 3, Objections to Request No. 9.

7.     Drips served these objections on November 11, 2020, and the *Mantha* plaintiff did not follow up on the subject nor move to compel. Drips' objections thus have not been heard by any court.

8.     I also represented Drips' corporate representative, who provided deposition testimony on December 17, 2020. Following this deposition, there were no follow ups to Drips from either party regarding the records QuoteWizard now seeks. Thus, I (and Drips) presumed the issue was resolved.

9.     Nevertheless, in January 2021, I received an email from QuoteWizard's counsel informing me that on January 11, 2021, the Magistrate Judge in the *Mantha* case had issued an order stating, in relevant part, that "*QuoteWizard* shall provide to plaintiff, by February 1, 2021, all comments by consumers related to the 46,000 Do Not Call requests, whether pertaining to 'complaints' about the texts received or simply 'opt-outs,' made by consumers who received telemarking texts from QuoteWizard (including those made on behalf of QuoteWizard by Drips)," and "*QuoteWizard* shall also provide to plaintiff documents which discuss the Do Not Call requests." [ECF No. 132] (emphasis added). QuoteWizard requested that Drips provide these documents to QuoteWizard so that QuoteWizard could produce.

10.     Although Drips had not been compelled to produce any records, and Drips had already fully complied with the subpoenas served upon it in the underlying action, in the spirit of cooperation and efficiency, Drips worked to confirm whether it would be feasible for Drips to produce the records that QuoteWizard had been ordered to produce.

11.     However, as detailed more fully in the accompanying declaration of Drips' Partner and Chief Strategy Officer, Tom Martindale, our investigation confirmed that the requested records could not be produced without subjecting Drips to substantial burden. As such, Drips— as nonparty to the litigation that (1) was under no contractual obligation to produce records to

QuoteWizard upon request, and (2) had not been afforded the opportunity to present and have its burden and proportionality objections heard and considered under Rule 45—respectfully declined to produce the requested records to QuoteWizard.

I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct.

Executed on March 12, 2021.

_____
Eric J. Troutman

# EXHIBIT 1

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JOSEPH MANTHA, *on behalf of himself and all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>QUOTEWIZARD.COM, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civ. No. 1:19-cv-12235-LTS |

**NON-PARTY DRIPS HOLDING, LLC'S**
**OBJECTIONS TO SUBPOENA TO PRODUCE DOCUMENTS**

Non-Party Drips Holdings, LLC ("Drips") responds to Plaintiff Joseph Mantha's subpoena dated June 3, 2012 as follows:

**GENERAL OBJECTIONS**

1.      Drips objects to the Subpoena because it was sent by email, and was not personally served as required by federal law. See Fed. R. Civ. P. 45(b)(1). Failure to properly serve the Subpoena renders it null and void.

2.      Drips objects to the Subpoena as failing to show that prior notice has been provided to other parties to the litigation, as required by Fed. R. Civ. P. 45(a)(4). Failure to comply with this requirement renders the Subpoena void.

3.      Drips objects to the Subpoena for failing to take reasonable efforts to reduce the burden and expense on nonparty Drips. *See* Fed. R. Civ. P. 45(d)(1). In particular, without limiting the foregoing, Drips objects to the Subpoena to the extent certain information sought is in the possession, custody, or control of a party to the litigation.

- 1 -

4.      Drips objects to the Subpoena to the extent it seeks documents and information not within Drip's possession, custody, or control. *See* Fed. R. Civ. P. 45(a)(1)(A)(iii).

5.      Drips objects to the Instructions and Definitions of the Subpoena to the extent they attempt to impose obligations beyond those required under the Federal Rules of Civil Procedure.

6.      Drips objects to the Subpoena to the extent it seeks information that is protected from disclosure by the attorney-client privilege, work product doctrine, or any other applicable privilege or protection.

7.      Drips objects to the Subpoena because it seeks documents containing confidential, proprietary, or trade secret information. Drips will not produce such sensitive information absent entry of an appropriate protective order, and expressly reserves all rights with respect to any protective order entered in the case and all rights to move to quash the Subpoena or to move for a protective order pertaining to the production of information or documents containing any confidential, proprietary, or trade secret information.

8.      Drips objects to the Subpoena because it seeks confidential, proprietary, or trade secret information, without making a showing of relevance to any issue in the litigation involving the parties, or any showing of proportionality to the needs of the case. Fed. R. Civ. P. 26(b)(1).

9.      Drips objects to the Subpoena as overly broad, disproportionate to the needs of the case, and irrelevant to any party's claim or defense, particularly in light of the expense and undue burden imposed on nonparty Drips, as it seeks information relating to Plaintiff's putative class, rather than individual claims, and exceeds the Court's Order limiting the scope of discovery "to the two text messages at issue" in the Plaintiff's First Amended Complaint. *See* Fed. R. Civ. P. 26(b)(1); *see also* Order on Pending Motions and Discovery Disputes at 5-6 [ECF No. 75] (July 31, 2020) ("Order") (concluding that "Phase I of discovery should address all issues related to

Plaintiff's individual claims and that class discovery occur in Phase II," and allowing certain subpoena requests only "to the extent [they are] limited to the two text messages at issue").

10.     Drips objects to the Subpoena as overly broad, unduly burdensome, disproportionate to the needs of the case, and irrelevant to the parties' claims and defenses in that it seeks information outside the time period relevant to Plaintiff's individual claims and therefore unrelated to the two text messages at issue in this case. *See* General Objection No. 9.

11.     Drips objects to the use of vague and ambiguous terms and phrases in the Subpoena, including but not limited to, "relationship," "contract," "loaded," "worked," "legal name," "initiate(d)," "transmit(ted)," "deliver(ed)," "manually," "automated," "human intervention," "equipment," "telemarketing law," and "automatic telephone dialing systems," without providing clarifying definitions or additional information to reasonably limit the scope of the Subpoena and reduce the burden and expense on nonparty Drips.

12.     Drips objects to the definition of "System" as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case, as it purports to include "all equipment used in any way relating to the initiation and transmission of the Texts," without defining or otherwise limiting "equipment," "initiation," or "transmission" to reasonably limit the scope of the Subpoena and reduce the burden and expense on nonparty Drips. Drips further objects to the definition to the extent it seeks confidential, proprietary, or trade secret information, without making a showing of relevance to any issue in the litigation involving the parties, or any showing of proportionality to the needs of the case. Fed. R. Civ. P. 26(b)(1).

13.     Drips objects to the deadline for production, as specified in the Subpoena, as unduly burdensome. Any documents Drips may produce will be produced on a mutually agreeable date.

14.     Drips objects to the Subpoena as it seeks to impose an undue burden on Drips as a nonparty to the litigation and seeks information that is not relevant to the claims and defenses in this case and not calculated to lead to the discovery of relevant or admissible evidence. Drips' responses are based on a good faith, reasonable search and inquiry to locate and identify responsive, non-privileged documents, consistent with the Court's Order narrowing the scope of the Subpoena, in Drips' possession, custody, or control. Drips expressly reserves all rights to move to quash the Subpoena, to move for a protective order, or to make any other motion with regard to the Subpoena.

15.     Drips reserves the right to amend and supplement these objections. These general objections are in addition to the objections to individual requests set forth below.

## SPECIFIC OBJECTIONS TO REQUESTS

In addition to its general objections above, incorporated into each of the responses below, Drips makes the following specific objections to Plaintiff's document requests

**Request No. 1.**     Produce documents sufficient to identify and describe your relationship with the Defendant.

**Response:**

This demand does not set forth a reasonably particularized category of documents to be produced. There is no way for Drips to know what documents are or are not "sufficient" to identify the nature of any relationship between it and Defendant. Indeed, the request is not a document demand category at all but merely an interrogatory seeking information regarding the relationship between Drips and Defendant.

To the extent the demand is read to mean Drips must produce *any* document identifying or describing its relationship with Defendant, then the demand is massively over broad and unduly burdensome, and it is unclear how such a vague and mushy category could possibly be

proportionate to the needs of the case. Drips should not be required to perform an all-out search of every possible record source for every document conceivably weighing on its relationship with Defendant. Moreover, Defendant would be in possession of all material records and Drips objects that it—as a non-party—should be made to bear the burden of production rather than Defendant.

Finally, it is Drips' understanding that discovery in this suit is limited, currently, only to the claims of the named Plaintiff. *See* Order at 6. It is unclear how the vague—and possibly extremely expansive and burdensome—search and production requested of this demand is limited, if at all, to the two text messages at issue.

On the basis of these objections Drips asserts that it has not searched for and will not produce all responsive records—since the demand is unintelligible and does not set forth a defined document category to be produced. Nonetheless, subject to its objections, Drips will produce records of the two text messages at issue.

**Request No. 2.**    Produce all documents relating to the Plaintiff

    **Response:**

As written, this request seeks "all documents" relating to Plaintiff which, interpreted broadly, would include every record of communication between Drips and its counsel—Squire Patton Boggs—related to this litigation. Obviously any demand designed to elicit a production of such records—or a log of each such correspondence—would run afoul of ethical rules and be impermissible, unlawful, and beyond the permissible scope of discovery under the Federal Rules of Civil Procedure. As such Drips interprets the demand narrowly to call for business records in its possession "relating to" Plaintiff.

Even interpreted to seek only business records, however, the category is problematic in that it is unclear what it means to "relate" to Plaintiff, and Plaintiff has not supplied any identifying

information to assist Drips in locating records. For instance, it is unclear whether Plaintiff expects Drips to identify all phone numbers Plaintiff might own, or otherwise identify records using his full name or social security number. Moreover, since the demand seeks "all documents" related to Plaintiff, the demand is not narrowed to the two text messages at issue in this suit. Yet it is Drips' understanding that discovery is presently closed for purposes other than the two texts at issue. Moreover, to the extent this demand seeks records regarding messages Drips may have sent to Plaintiff on behalf of its other clients this demand is plainly overly broad and seeks information outside of the scope of discovery and in a manner that is unduly burdensome and disproportionate to the needs of the case.

On the basis of these objections, Drips asserts that it will produce records pertaining to the two texts at issue.

**Request No. 3.**    Produce all documents relating to the Number.

      **Response:**

As written the category seeks "all documents" relating to the Number which, interpreted broadly, would include every record of communication between Drips and its counsel—Squire Patton Boggs—related to this litigation. Obviously any demand designed to elicit a production of such records—or a log of each such correspondence—would run afoul of ethical rules and be impermissible, unlawful, and beyond the permissible scope of discovery under the Federal Rules of Civil Procedure. As such Drips interprets the demand narrowly to call for business records in its possession "relating to" the Number.

Even interpreted to seek only business records, however, the category is problematic in that it is unclear what it means to "relate" to the Number. Moreover, since the demand seeks "all documents" related to the Number the demand is not narrowed to the two text messages at issue

in this suit. Yet it is Drips' understanding that discovery is presently closed for purposes other than the two texts at issue. Moreover, to the extent this demand seeks records regarding messages Drips may have sent to the Number on behalf of its other clients—or to texts sent to the Number during timeframes that it was not owned by the Plaintiff—this demand is plainly overly broad and seeks information outside of the scope of discovery and in a manner that is unduly burdensome and disproportionate to the needs of the case.

On the basis of these objections, Drips asserts that it will produce records pertaining to the two texts at issue.

**Request No. 4.**    Produce any contract you may have with the Defendant.

   **Response:**

The requested information is equally available from a party to the litigation, the Defendant. The agreements, if any, contain confidential and proprietary information that may jeopardize Drips' competitive advantage, and Drips should be bear the cost of defending its confidential nature or producing records when a party to the action is in the position to do both or either. Moreover, Drips objects that the demanded records are not related to the two text messages at issue in the underlying litigation and exceeds the permissible scope of the request set by the Court. This is especially true as Drips did not have a contract with Defendant specific to the two text messages at issue in this case.

**Request No. 5.**    Produce any manuals that describe how the System initiated and transmitted the Texts.

   **Response:**

This demand assumes that any "system" initiated and "transmitted" texts. That is not technically accurate and by responding to this demand Drips does not adopt that categorization.

Moreover, since the demand seeks documents regarding the "Texts," which Plaintiff defines to include all texts attached to the Subpoena (*see* Subpoena ¶ 5, Schedule A), this request is not narrowed to the two text messages at issue in this suit, yet it is Drips' understanding that discovery is presently closed for purposes other than the two texts at issue. *See* Order at 6.

Drips further objects to this request as it seeks confidential, proprietary, and trade secret information, that may jeopardize Drips' competitive advantage.

Further the demand is vague and ambiguous and may not set forth a reasonably particularized category of documents to be produced, depending on what it is seeking. To the extent the demand is limited to "manuals" it is unclear what Plaintiff considers to be a manual. Drips contends that it does not maintain a manual for its platform. To the extent Plaintiff seeks something broader by this demand, however, it is unclear what records it is seeking, and due to the request's failure to define the term "manual," responding would require Drips to spend what would likely amount to hundreds of hours to gather and review all documents relating to the System, which Plaintiff broadly defines as "all equipment used in any way relating to the initiation and transmission of the Texts" (*see* General Objection No. 12) to determine whether they constitute a "manual." There is simply no reason to burden Drips—a third party to this litigation—with such an enormous expense, particularly given the needs of the litigation and the Court's directive that discovery is limited to the two texts at issue. *See* Order at 6.

**Request No. 6.**  Produce all documents that describe how the Number was loaded into the System.

   **Response:**

This demand is vague and is subject to at least two readings.

To the extent the demand is limited to seeking records in Drips' possession that specifically relate to how the Number itself was "loaded" into Drips' System—which is how the demand is phrased—then Drips responds that no responsive records are ever believed to have existed.

To the extent, however, the demand is to be read to seek "all" records describing how *numbers* generally can be loaded into Drips' system, then the demand is overly broad and overly burdensome. As noted above, Drips' does not maintain a manual describing the functionalities of its system. Fashioning a search for all records maintained by any Drips custodian describing how phone numbers might be loaded across clients and platforms is a massively expensive and burdensome exercise. Drips estimates it would take hundreds of hours to identify proper custodians and search electronic and written records and schematics to produce all responsive records. There is simply no reason to burden Drips—a third party to this litigation—with such an enormous expense, particularly given the needs of the litigation and the Court's directive that discovery is limited to the two texts at issue.

Moreover any technical renderings, schematics, or descriptions of the Drips platform and its functionalities are highly confidential and proprietary trade secret records that must be protected from disclosure.

At bottom this demand does not set forth a reasonably particularized category of documents to be produced and, instead, is an interrogatory masquerading as a document demand. What Plaintiff seemingly wants to know is *how* the number at issue was loaded into Drips' platform; but records supplying that specific information do not exist, and demanding "every" record showing how numbers might be uploaded is an overly burdensome demand to get to the narrow point. Drips is willing to meet and confer with Plaintiff regarding what information will suffice but declines to produce any records at this time on the basis of the forgoing objections.

**Request No. 7.**     Produce documents that describe how the System worked on the day the Texts were sent to Plaintiff.

**Response:**

This demand is vague and is susceptible to at least three readings.

To the extent the demand seeks documents regarding text messages other than the two texts referenced in the First Amended Complaint, is not narrowed to the two text messages at issue in this suit. *See* Order at 6.

On the other hand, to the extent the demand is limited to seeking records in Drips' possession that specifically relate to how the System specifically operated the day the Texts were sent—which is how the demand is phrased—then Drips responds that no responsive records are ever believed to have existed.

To the extent, however, the demand is to be read to seek "all" records describing how the System functioned generally—i.e., including but not limited to the day the two texts at issue (and even the days the Texts as defined in the Subpoena) were sent—then the demand is wildly overly broad and overly burdensome. As noted above, Drips' does not maintain a manual describing the functionalities of its system. Fashioning a search for all records maintained by any Drips custodian describing how its System works across clients and platforms is a massively expensive and burdensome exercise. Drips estimates it would take hundreds of hours to identify proper custodians and search electronic and written records and schematics to produce all responsive records. There is simply no reason to burden Drips—a third party to this litigation—with such an enormous expense, particularly given the needs of the litigation and the Court's directive that discovery is limited to the two texts at issue.

Moreover any technical renderings, schematics, or descriptions of the Drips platform and its functionalities are highly confidential and proprietary trade secret records that must be protected from disclosure.

At bottom this demand does not set forth a reasonably particularized category of documents to be produced and, instead, is an interrogatory masquerading as a document demand. What Plaintiff seemingly wants to know is *how* the System functioned at the time the Texts were sent to Plaintiff, but records supplying that specific information do not exist and demanding "every" record showing how numbers might have been sent is an overly burdensome demand to get to the narrow point. Drips is willing to meet and confer with Plaintiff regarding what information will suffice but declines to produce any records at this time on the basis of the forgoing objections.

**Request No. 8.**   Produce documents that fully identify the legal name of "Amanda" as referred to in the Texts.

   **Response:**

Once again this demand appears to be an interrogatory masquerading as a document demand. Plaintiff seeks the full name of "Amanda" but—rather than simply ask Defendant for it— imposes an undue and unnecessary burden on Drips by compelling it to locate and produce any records showing Amanda's full name. This is a flat misuse of the subpoena process, and imposes an undue burden upon a third party that is disproportionate to the needs of the case given that the information can easily be obtained using a different discovery method from a party to the suit.

Additionally, this request seeks documents regarding the "Texts," which Plaintiff defines to include all texts attached to the Subpoena (*see* Subpoena ¶ 5, Schedule A). Thus, this request is not narrowed to the two text messages at issue in this suit, yet it is Drips' understanding that discovery is presently closed for purposes other than the two texts at issue.

The category also does not set forth a reasonably particularized category of documents to be produced since it does not specify whether Drips is to produce all, some, or any records reciting Amanda's full name and what criteria it is to use to determine between those that must be produced and must not be produced. Depending on the intended parameters of this demand it may be overly broad and overly burdensome as the search to be fashioned might impose an undue burden given the narrow call of the demand and the needs of the litigation. Given the incomplete nature of the demand, however, it is impossible to tell precisely what objections are appropriate and Drips preserves all objections related to burden and proportionality until the demand is better refined.

**Request No. 9.**     Produce documents sufficient to identify whether the Texts were initiated, transmitted or delivered to Plaintiff using Conversational Messaging, Conversational Texting or Conversational AI technology as referred to on www.drips.com.

   **Response:**

Once again this demand does not set forth a reasonably particularized category of documents because it is unclear what it records will be "sufficient" for Plaintiff to identify the manner in which texts were "initiated, transmitted or delivered." Indeed, this demand is another example of an interrogatory masquerading as a document demand in violation of the Federal Rules. Plaintiff desires to know *how* the texts were sent. But rather than obtain that information through the use of a simple interrogatory to the Defendant, it imposes the undue burden of searching for and producing records that might bear on the inquiry to Drips, a third party in this action. As such the demand is *per se* unduly burdensome and disproportionate to the needs of the case.

Additionally, since the demand seeks documents regarding texts beyond the two text messages referenced in the First Amended Complaint, is not narrowed to the two text messages at issue in this suit. *See* Order at 6.

Diving deeper, the request is vague and can be read in at least three ways.

To the extent the demand seeks documents regarding text messages other than the two texts referenced in the First Amended Complaint, is not narrowed to the two text messages at issue in this suit. *See* Order at 6.

To the extent the demand seeks only specific records related to the manner in which the specific two texts at issue were sent, the only responsive records are those related to the transmission of those two text messages, which Drips will produce subject to its objections.

To the extent, however, the Plaintiff seeks records regarding whether and which texts generally (i.e., including but not limited to the two texts at issue and any other Texts as defined in the Subpoena) are sent using Conversational Messaging, Conversational Texting, or Conversational AI technology, then the demand imposes an extreme and unnecessary burden on Drips, which would have to fashion an extensive search and production effort to comply with this request. Not only would such a demand be inappropriate at this stage of the case (*see* Order at 5-6) imposing such an extraordinary demand on Drips would always be disproportionate to the needs of this case and would always result in the needless production of records outside the permissible and necessary scope of discovery in this suit.

Moreover any technical renderings, schematics, or descriptions of the Drips platform and its functionalities are highly confidential and proprietary trade secret records that must be protected from disclosure.

At bottom, Drips will produce, subject to its objections, its records of the two texts at issue, and will meet and confer with Plaintiff regarding any further records it may be seeking that it contends are within the scope of discovery at this time.

**Request No. 10.**  Produce the manual or other documents sufficient to describe how the technology known as Conversational Messaging, Conversational Texting, or Conversational AI worked on the date the Texts were sent to Plaintiff.

**Response:**

This request appears to assume that the Texts were sent using the technology known as Conversational Messaging, Conversational Texting, or Conversational AI. By responding to this demand, Drips does not adopt that categorization.

Further the demand is vague and ambiguous and may not set forth a reasonably particularized category of documents to be produced, depending on what it is seeking. To the extent the demand is limited to a "manual" it is unclear what Plaintiff considers to be a manual. As noted above, Drips contends that it does not maintain a manual for its platform or technology. To the extent Plaintiff seeks broader "documents" by this demand, moreover, it is unclear what records it is seeking.

Specifically, and once again, this demand does not set forth a reasonably particularized category of documents because it is unclear what it records will be "sufficient" for Plaintiff to "describe how technology known as Conversational Messaging, Conversational Texting, or Conversational AI worked on the date the Texts were sent to Plaintiff." Indeed, this demand is another example of an interrogatory masquerading as a document demand in violation of the Federal Rules. Plaintiff, yet again, desires to know *how* the texts were sent. But rather than obtain that information through the use of a simple interrogatory to the Defendant, it imposes the undue burden of searching for and producing records that might bear on the inquiry to Drips, a third party in this action. As such the demand is *per se* unduly burdensome and disproportionate to the needs of the case.

Going further, the request is vague and can be read in at least three ways.

To the extent the demand seeks documents regarding text messages other than the two texts referenced in the First Amended Complaint, is not narrowed to the two text messages at issue in this suit. *See* Order at 6.

To the extent the demand seeks only specific records related to the manner in which the specific two texts at issue were sent, the only responsive records are those related to the transmission of those two text messages, which Drips will produce subject to its objections.

To the extent, however, the Plaintiff seeks records regarding whether and which texts generally (i.e., including but not limited to the two texts at issue and any other Texts as defined in the Subpoena) are sent using Conversational Messaging, Conversational Texting, or Conversational AI technology, then the demand imposes an extreme and unnecessary burden on Drips, which would have to fashion an extensive search and production effort to comply with this request. Not only would such a demand be inappropriate at this stage of the case (*see* Order at 5-6) imposing such an extraordinary demand on Drips would always be disproportionate to the needs of this case and would always result in the needless production of records outside the permissible and necessary scope of discovery in this suit.

Moreover any technical renderings, schematics, or descriptions of the Drips platform and its functionalities are highly confidential and proprietary trade secret records that must be protected from disclosure.

As noted above, Drips will produce, subject to its objections, its records of the two texts at issue, and will meet and confer with Plaintiff regarding any further records it may be seeking that it contends are within the scope of discovery at this time.

**Request No. 11.** Produce documents sufficient to confirm or deny whether the Texts sent to the Plaintiff utilized in any way the "Conversational Engine" referred to on www.drips.com.

**Response:**

This request appears to assume that the Texts were sent using the "Conversational Engine." By responding to this demand, Drips does not adopt that categorization.

Moreover, this demand does not set forth a reasonably particularized category of documents because there is no way for Drips to know what documents are or are not "sufficient" for Plaintiff to "confirm or deny whether the Texts sent to the Plaintiff utilized in any way the 'Conversational Engine.'" This request is another example of an interrogatory masquerading as a document demand in violation of the Federal Rules. Plaintiff seeks to determine *how* the texts were sent. But rather than obtain that information through the use of a simple interrogatory to the Defendant, it imposes the undue burden of searching for and producing records that might bear on the inquiry to Drips, a third party in this action. As such the demand is *per se* unduly burdensome and disproportionate to the needs of the case.

Diving deeper, the request is vague and can be read in at least three ways.

To the extent the demand seeks documents regarding text messages other than the two texts referenced in the First Amended Complaint, is not narrowed to the two text messages at issue in this suit. *See* Order at 6.

To the extent the demand seeks only specific records related to the manner in which the specific two texts at issue were sent, the only responsive records are those related to the transmission of those two text messages, which Drips will produce subject to its objections.

To the extent, however, the Plaintiff seeks records regarding whether and which texts generally (i.e., including but not limited to the two texts at issue and any other Texts as defined in the Subpoena) are sent using Conversational Engine, then the demand imposes an extreme and

unnecessary burden on Drips, which would have to fashion an extensive search and production effort to comply with this request. Not only would such a demand be inappropriate at this stage of the case (*see* Order at 5-6) imposing such an extraordinary demand on Drips would always be disproportionate to the needs of this case and would always result in the needless production of records outside the permissible and necessary scope of discovery in this suit.

Moreover any technical renderings, schematics, or descriptions of the Drips platform and its functionalities are highly confidential and proprietary trade secret records that must be protected from disclosure.

As noted above, Drips will produce, subject to its objections, its records of the two texts at issue, and will meet and confer with Plaintiff regarding any further records it may be seeking that it contends are within the scope of discovery at this time.

**Request No. 12.**   Produce all documents sufficient to confirm or deny whether the Texts sent to the Plaintiff were initiated manually one text at a time.

   **Response:**

Yet again this request not set forth a reasonably particularized category of documents because it is unclear what it records will be "sufficient" for Plaintiff to "confirm or deny whether the Texts sent to the Plaintiff were initiated manually one text at a time." And, it is not clear what documents this request seeks given its failure to define "initiated manually." This request is yet another example of an interrogatory masquerading as a document demand in violation of the Federal Rules. Plaintiff desires to know *how* the texts were sent. But rather than obtain that information through the use of a simple interrogatory to the Defendant, it imposes the undue burden of searching for and producing records that might bear on the inquiry to Drips, a third party in this action. As such the demand is *per se* unduly burdensome and disproportionate to the needs of the case.

This request, moreover, is vague and can be read in at least three ways.

To the extent the demand seeks documents regarding text messages other than the two texts referenced in the First Amended Complaint, is not narrowed to the two text messages at issue in this suit. *See* Order at 6.

To the extent the demand seeks only specific records related to the manner in which the specific two texts at issue were sent, the only responsive records are those related to the transmission of those two text messages, which Drips will produce subject to its objections.

To the extent, however, the Plaintiff seeks records regarding whether and which texts generally (i.e., including but not limited to the two texts at issue and any other Texts as defined in the Subpoena) are "initiated manually one text at a time," then the demand imposes an extreme and unnecessary burden on Drips, which would have to fashion an extensive search and production effort to comply with this request. Not only would such a demand be inappropriate at this stage of the case (*see* Order at 5-6) imposing such an extraordinary demand on Drips would always be disproportionate to the needs of this case and would always result in the needless production of records outside the permissible and necessary scope of discovery in this suit.

Drips further objects to this request as it seeks confidential, proprietary, and trade secret information, that may jeopardize Drips' competitive advantage.

As noted above, Drips will produce, subject to its objections, its records of the two texts at issue, and will meet and confer with Plaintiff regarding any further records it may be seeking that it contends are within the scope of discovery at this time.

**Request No. 13.**   Produce all documents sufficient to confirm or deny whether the Texts sent to the Plaintiff were sent in an automated manner without human intervention in regards to each individual text.

**Response:**

This request does not set forth a reasonably particularized category of documents because it is unclear what it records will be "sufficient" for Plaintiff to "confirm or deny whether the Texts sent to the Plaintiff were sent in an automated manner without human intervention in regards to each individual text." First, it is not clear what documents this request seeks given its failure to define "automated manner," or to specify what it considers to qualify as "human intervention." Second, this request is yet another example of an interrogatory masquerading as a document demand in violation of the Federal Rules. Plaintiff desires to know *how* the texts were sent. But rather than obtain that information through the use of a simple interrogatory to the Defendant, it imposes the undue burden of searching for and producing records that might bear on the inquiry to Drips, a third party in this action. Accordingly, this demand is *per se* unduly burdensome and disproportionate to the needs of the case.

Going further, the request is vague and is susceptible to at least three readings.

To the extent the demand seeks documents regarding text messages other than the two texts referenced in the First Amended Complaint, is not narrowed to the two text messages at issue in this suit. *See* Order at 6.

To the extent the demand seeks only specific records related to the manner in which the specific two texts at issue were sent, the only responsive records are those related to the transmission of those two text messages, which Drips will produce subject to its objections.

To the extent, however, the Plaintiff seeks records regarding whether and which texts generally (i.e., including but not limited to the two texts at issue and any other Texts as defined in the Subpoena) are "sent in an automated manner without human intervention in regards to each

individual text," then the demand imposes an extreme and unnecessary burden on Drips, which would have to fashion an extensive search and production effort to comply with this request. Not only would such a demand be inappropriate at this stage of the case (*see* Order at 5-6) imposing such an extraordinary demand on Drips would always be disproportionate to the needs of this case and would always result in the needless production of records outside the permissible and necessary scope of discovery in this suit.

Drips further objects to this request as it seeks confidential, proprietary, and trade secret information, that may jeopardize Drips' competitive advantage.

As noted above, Drips will produce, subject to its objections, its records of the two texts at issue, and will meet and confer with Plaintiff regarding any further records it may be seeking that it contends are within the scope of discovery at this time.

**Request No. 14.** If you claim that the System or the equipment that was used to initiate, transmit or deliver the Texts to the Plaintiff are not subject to the Telephone Consumer Protection Act, please produce all documents that support this contention.

**Response:**

This demand assumes that any "system" or equipment initiated, transmitted, or delivered texts. That is not technically accurate and by responding to this demand Drips does not adopt that categorization.

This request seeks documents that appear to be wholly unrelated to the two text messages referenced in the First Amended Complaint, and is thus not narrowed to the two text messages at issue in this suit. *See* Order at 6. Indeed, it is not clear how this request relates to the lawsuit at all.

Once again this demand appears to be an interrogatory—this time improperly seeking a legal conclusion—masquerading as a document demand. Plaintiff seeks to know whether Drips' claims its platform is "subject to" the Telephone Consumer Protection Act ("TCPA"). Plaintiff

does not define what it means for a system to be "subject to" the TCPA, and regardless, it is unclear how Drips' legal conclusions have any bearing on the two texts at issue in this case. At bottom, Plaintiff seems to be trying to determine whether the TCPA applies, not Drips' opinions on the matter. But rather than obtain that information through the use of a interrogatory to the Defendant, it imposes the undue burden of searching for and producing records that might bear on the inquiry to Drips, a non-party. This demand, in short, is *per se* unduly burdensome and disproportionate to the needs of the case.

Additionally, as written, this request seeks "all documents" relating to a purported claim regarding whether Drips' technology is "subject to" the TCPA.

Plaintiff does not define what it means for a system to be "subject to" the TCPA, and does not clarify the provisions of the TCPA (many of which do not appear to be involved in the underlying lawsuit at all) to which it refers. Responding to this ambiguous request would require Drips to gather and review, at great expense, all documents that in any way mention any provision of the TCPA, then assess whether they support or deny a purported allegation—which Drips does not adopt or weigh in on in any way—as to whether the Drips' technology is "subject to" the TCPA. There is simply no reason to burden Drips, a third party to this litigation, with such an enormous expense, particularly given the needs of the litigation and the Court's directive that discovery is limited to the two texts at issue. *See* Order at 6.

Moreover, this request for "all documents," interpreted broadly, would include every record of communication between Drips and its counsel regarding the TCPA. Any demand designed to elicit a production of such privileged records—or a log of each such correspondence— would run afoul of ethical rules and be impermissible, unlawful, and beyond the scope of discovery under the Federal Rules.

**Request No. 15.**   If you have claimed in any litigation, or to any state or federal law enforcement agency, or in response to an state or federal law enforcement inquiry, that the System or the equipment used to send the Texts was not subject to telemarketing law relating to the use of automatic telephone dialing systems, please produce all documents that so evidence.

**Response:**

This demand assumes that any "system" or equipment initiated, transmitted, or delivered texts. That is not technically accurate and by responding to this demand Drips does not adopt that categorization.

This request seeks documents regarding "any litigation," wholly unrelated to the two text messages referenced in the First Amended Complaint, and is thus not narrowed to the two text messages at issue in this suit. *See* Order at 6. Indeed, it is not clear how this request relates to the lawsuit at all.

Once again this demand appears to be an interrogatory—this time improperly seeking a legal conclusion—masquerading as a document demand. Plaintiff, again, seeks to know whether Drips' claims its platform is subject to "telemarketing law relating to the use of automatic telephone dialing systems" (ATDS), but does not provide any clarity regarding the laws to which it refers and does not define what it considers to qualify as an ATDS. It is unclear, moreover, how Drips' legal conclusions have any bearing on the two texts at issue in this case. At bottom, Plaintiff really seeks to know whether the platform is "subject to" the "telemarketing law relating to the use of automatic telephone dialing systems," not Drips' opinions on the matter. But rather than obtain that information through the use of an interrogatory to the Defendant, it imposes the undue burden of searching for and producing records that might bear on the inquiry to Drips, a nonparty. As such, this is a clear misuse of the subpoena process, and is *per se* unduly burdensome and disproportionate to the needs of the case.

Additionally, as written, this request seeks "all documents" from "any litigation" regarding "any" undefined "telemarketing law relating to the use of automatic telephone dialing systems." Plaintiff fails to define "telemarketing law," does not clarify what "relating to the use of" an ATDS means, and does not even provide any parameters as to what it considers to qualify as an ATDS. Responding to this request would require Drips to gather and review, at great expense, all documents that in any way mention any sort of telemarketing law, regulation, or guidance; assess whether the law discussed qualifies as a "telemarketing law" relating to the use of any definition of an ATDS; assess whether the document pertains to claims in any litigation or to any undefined "federal or state law enforcement agency"; then assess whether the document supports a purported allegation—which Drips does not adopt or weigh in on in any way—as to whether Drips' platform and technologies are "subject to" the undefined "telemarketing law" relating to an ATDS. There is simply no reason to burden Drips, a third party to this litigation, with such an enormous expense, particularly given the needs of the litigation and the Court's directive that discovery is limited to the two texts at issue. *See* Order at 6.

Moreover, this request for "all documents," interpreted broadly, would include every record of communication between Drips and its counsel regarding any telecommunications law in any other litigation, to the extent there is any. Any demand designed to elicit a production of such records—or a log of each such correspondence—would run afoul of ethical rules and be impermissible, unlawful, and beyond the permissible scope of discovery under the Federal Rules of Civil Procedure.

**Request No. 16.**   Produce all communications with any third party concerning the litigation captioned on the subpoena.

**Response:**

Drips understands that the Court has denied this request given Plaintiff's failure to explain the purpose or basis for the request. *See* Order at 6.

Drips further objects to this request as overly broad because, as written, this request seeks "all communications" concerning this litigation, which interpreted broadly, would include every record of communication between Drips and its counsel—Squire Patton Boggs—related to this litigation, as well as records reflecting its counsel's work product. For this reason, it would invade Drips' attorney-client privilege and infringe on work-product protections or require Drips, as a third party to this litigation, to undertake the unduly burdensome step of logging every communication it has relating to this case. Such an undertaking is disproportionate to the needs of the case, particularly given the Court's directive that discovery is limited to the two texts at issue, not to mention its Order denying Plaintiff's request to seek these documents. *See* Order at 6.

Even if this request could somehow be interpreted to seek only business records (which is dubious), it remains problematic in that it is unclear what it means to for records to "concern" this litigation, and Plaintiff has not supplied any identifying information to assist Drips in locating records. For instance, Drips would have to comb through all communications of each of its employees to determine whether any documents in any way reference this lawsuit, and then assess whether such communications were made at the request of counsel and whether such communications were made in or in anticipation of litigation, which would take significant resources and impose a burden beyond that which is permissible for a nonparty such as Drips. Moreover, since the demand seeks "all documents" related to the litigation, the demand is not narrowed to the two text messages at issue in this suit. *See* Order at 6.

Date: August 25, 2020

/s/Eric J. Troutman
Eric J. Troutman
Squire Patton Boggs (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, CA 90071
Telephone: (213) 689-6510
Facsimile: (213) 623-4581
Email: eric.troutman@squirepb.com

*Counsel for Non-Party Drips Holdings, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 25, 2020, the foregoing was served via email to the following:


Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, MA 01760
mmccue@massattorneys.net

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
anthony@paronichlaw.com

Alex M. Washkowitz
Jeremy Cohen
CW Law Group, P.C.
188 Oaks Road
Framingham, MA 01701
alex@cwlawgrouppc.com

Edward A. Broderick
Broderick Law, P.C.
99 High St., Suite 304
Boston, MA 02110
Telephone: (617) 738-7080
ted@broderick-law.com

*Counsel for Plaintiff Joseph Mantha*

Kevin P. Polansky
Christine M. Kingston
Nelson Mullins Riley & Scarborough LLP
One Post Office Square, 30th Floor
Boston, MA 02109
kevin.polansky@nelsonmullins.com
christine.kingston@nelsonmullins.com

*Counsel for Defendant QuoteWizard.com, LLC*


*/s/Eric J. Troutman*_____
Eric J. Troutman

EXHIBIT 2

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Massachusetts

| | | |
|---|---|---|
| MANTHA | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 1:19-cv-12235-LTS |
| | ) | |
| QUOTEWIZARD.COM, LLC | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: DRIPS Holdings, LLC

*(Name of person to whom this subpoena is directed)*

✔ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See the attached Schedule A.

| Place: ELECTRONICALLY TO THE UNDERSIGNED COUNSEL or to KSD Process Service Cuyahoga Falls, OH | Date and Time: 11/11/2020 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 10/26/2020

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| | | /s/ Anthony I. Paronich |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Plaintiff , who issues or requests this subpoena, are:

Paronich Law, 350 Lincoln Street, Suite 2400, Hingham, MA 02043, anthony@paronichlaw.com, (508) 221-1510

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
       **(i)** is a party or a party's officer; or
       **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) For Other Discovery.** A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) Command to Produce Materials or Permit Inspection.**
    **(A)** Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
       **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
       **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) Quashing or Modifying a Subpoena.**
    **(A)** When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
       **(i)** fails to allow a reasonable time to comply;
       **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
       **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
       **(iv)** subjects a person to undue burden.
    **(B)** When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
       **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

       **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
       **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
       **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
    **(A)** Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
    **(D)** Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) Claiming Privilege or Protection.**
    **(A)** Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
       **(i)** expressly make the claim; and
       **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## INSTRUCTIONS

1.      You are required to search not only for hard copy documents, but for electronically generated, maintained or stored information, including data that exist on your computers' hard drives, on computer servers to which you have access, in email accounts, in text messaging accounts, and all other places in which responsive electronic data may be stored.

2.      Where possible, all electronically generated, maintained or stored information should be produced in its native format and in a format compatible to litigation-support databases and review systems. Where possible, such documents should contain searchable text and searchable metadata in a load file format. File fidelity and resolution should not be downgraded; for instance, electronic files should not be printed and then scanned.

## DEFINITIONS

1.      When used in these Requests, "Defendant" means Quotewizard.com, LLC, including any subsidiaries or affiliated enterprises, and its officers, directors and employees.

2.      When used in these Requests, "Plaintiff" means Joseph Mantha.

3.      When used in these Requests, "you" or "your" (or synonyms thereof) means DRIPS Holdings, LLC, including any subsidiaries or affiliated enterprises, and its officers, directors and employees.

4.      Unless otherwise instructed, the requests are seeking documents from January 1, 2018 to the present.

336354

## REQUESTS

**Request No. 1:** Produce any internal correspondence regarding the contract you have with the defendant that mention the dialing system used by you as part of your relationship with the defendant.

**Request No. 2:** If you contend the Plaintiff consented to receive telemarketing texts or calls from the Defendant, produce all documents that evidence such claim.

**Request No. 3:** Produce all internal communications relating in any way to complaints submitted by consumers or state or federal law enforcement agencies in regards to QuoteWizard's telemarketing practices.

**Request No. 4:** Produce all communications between relating to any consumers' claim that they did not consent to receive telemarketing calls or texts from QuoteWizard that are not communications with QuoteWizard directly.

**Request No. 5:** Produce all documents relating to QuoteWizard's telemarketing policies that are not communications with QuoteWizard directly.

**Request No. 6:** Produce all documents and communications regarding QuoteWizard relating to consumers do not call requests that are not communications with QuoteWizard directly.

**Request No. 7:** Produce all documents evidencing any complaints, formal or informal, submitted by consumers, or any government agency, in regards to QuoteWizard's telemarketing calls or practices. This request does not include communications that are exchanged with QuoteWizard directly.

**Request No. 8:** Produce all documents evidencing any investigation and response to complaints submitted by consumers, or any government agency, in regards to QuoteWizard's

telemarketing calls or practices. This request does not include communications that are exchanged with QuoteWizard directly.

**Request No. 9:** Produce all consumer do not call requests provided to you in any way relating to text telemarketing conducted on QuoteWizard's behalf. that are not communications with QuoteWizard directly.

**Request No. 10:** Produce all documents that refer to the text technology employed by You as using "chatbots", "humanized engagements," "human approved auto responders," and/or "zero client side operators."

**Request No. 11:** Produce all marketing materials relating to the dialing technology used to send the texts at issue to Plaintiff.

**Request No. 12:** Produce all documents that refer to, relate, or support your claim that the dialing technology used to send the texts at issue to the Plaintiff was not an automatic telephone dialing system as that term is defined by the Telephone Consumer Protection Act.

**Request No. 13:** Produce all internal documents or communications in any way relating to Your contractual requirement that QuoteWizard produce to You "copies of all written consents within two (2) business days notice.

**Request No. 14:** Produce a list of other lawsuits in which it is alleged that You sent texts to consumers using an automatic telephone dialing system.

**Request No. 15:** Produce all documents referring to Adam Brown.

**Request No. 16:** Produce all documents referring to Justin Cohen or BlueFlame Marketing.

**Request No. 17:** Produce all e-mails between Matthew Weeks and anyone at RevPoint Media relating in any way to this litigation.

**<u>Request No. 18:</u>** Produce all e-mails between Matthew Weeks and anyone at RevPoint Media relating in any way to telemarketing complaints or TCPA compliance.

**<u>Request No. 19:</u>** Produce all internal e-mails referring to Plaintiff.

EXHIBIT 3

# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH MANTHA, *on behalf of himself and all others similarly situated,* )<br>)<br>) | |
| ) | Civ. No. 1:19-cv-12235-LTS |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| QUOTEWIZARD.COM, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## NON-PARTY DRIPS HOLDING, LLC'S
## OBJECTIONS TO SUBPOENA TO PRODUCE DOCUMENTS

Non-Party Drips Holdings, LLC ("Drips") responds to Plaintiff Joseph Mantha's second subpoena, dated October 26, 2020 as follows:

## GENERAL OBJECTIONS

1.     Drips objects to the Subpoena because it was sent by email, and was not personally served as required by federal law. See Fed. R. Civ. P. 45(b)(1). Failure to properly serve the Subpoena renders it null and void.

2.     Drips objects to the Subpoena as failing to show that prior notice has been provided to other parties to the litigation, as required by Fed. R. Civ. P. 45(a)(4). Failure to comply with this requirement renders the Subpoena void.

3.     Drips objects to the Subpoena for failing to take reasonable efforts to reduce the burden and expense on nonparty Drips. *See* Fed. R. Civ. P. 45(d)(1). In particular, without limiting the foregoing, Drips objects to the Subpoena to the extent certain information sought is in the

possession, custody, or control of a party to the litigation, and/or has already been produced to Plaintiff.

4.   Drips objects to the Subpoena to the extent it seeks documents and information not within Drip's possession, custody, or control. *See* Fed. R. Civ. P. 45(a)(1)(A)(iii).

5.   Drips objects to the Instructions and Definitions of the Subpoena to the extent they attempt to impose obligations beyond those required under the Federal Rules of Civil Procedure.

6.   Drips objects to the Subpoena to the extent it seeks information that is protected from disclosure by the attorney-client privilege, work product doctrine, or any other applicable privilege or protection.

7.   Drips objects to the Subpoena because it seeks documents containing confidential, proprietary, or trade secret information. Drips will not produce such sensitive information absent entry of an appropriate protective order, and expressly reserves all rights with respect to any protective order entered in the case and all rights to move to quash the Subpoena or for a protective order pertaining to the production of information or documents containing any confidential, proprietary, or trade secret information.

8.   Drips objects to the Subpoena because it seeks confidential, proprietary, or trade secret information, without making a showing of relevance to any issue in the litigation involving the parties, or any showing of proportionality to the needs of the case. Fed. R. Civ. P. 26(b)(1).

9.   Drips objects to the Subpoena as overly broad, disproportionate to the needs of the case, and irrelevant to any party's claim or defense, particularly in light of the expense and undue burden imposed on nonparty Drips, as it seeks information relating to Plaintiff's putative class, rather than individual claims, and exceeds the Court's Order limiting the scope of discovery to Plaintiff's ATDS claims, "to the two text messages at issue" in the Plaintiff's First Amended

Complaint, and to consent. *See* Fed. R. Civ. P. 26(b)(1); *see also* ECF No. 75; ECF No. 104; ECF No. 112.

10. Drips objects to the use of vague and ambiguous terms and phrases in the Subpoena, including but not limited to, "relationship," "contract," "dialing system," "used by," "complaints," "state or federal law enforcement agencies," "QuoteWizard's telemarking calls/practices/policies," "investigation and response," "evidencing," "government agency," "automatic telephone dialing system," "contractual requirement," "Adam Brown," "Justin Cohen," "BlueFlame Marketing," "Matthew Weeks," "RevPoint Media," "TCPA compliance," and "telemarketing complaints," without providing clarifying definitions or additional information to reasonably limit the scope of the Subpoena and reduce the burden and expense on nonparty Drips.

11. Drips objects to the deadline for production, as specified in the Subpoena, as unduly burdensome. Any additional documents Drips may produce will be produced on a mutually agreeable date once objections are resolved.

12. Drips objects to the Subpoena as it seeks to impose an undue burden on Drips as a nonparty to the litigation and seeks information that is not relevant to the claims and defenses in this case and not calculated to lead to the discovery of relevant or admissible evidence. Drips' responses are based on a good faith, reasonable search and inquiry to locate and identify responsive, non-privileged documents, consistent with the Court's orders narrowing the scope of discovery, in Drips' possession, custody, or control. Drips expressly reserves all rights to move to quash the Subpoena, to move for a protective order, or to make any other motion with regard to the Subpoena.

13.     Drips reserves the right to amend and supplement these objections. These general objections are in addition to the objections to individual requests set forth below.

## SPECIFIC OBJECTIONS TO REQUESTS

In addition to its general objections above, incorporated into each of the responses below, Drips makes the following specific objections to Plaintiff's document requests

**Request No. 1.**     Produce any internal correspondence regarding the contract you have with the defendant that mention the dialing system used by you as part of your relationship with the defendant.

**Response:**

The burden associated with forcing Drips to review the records of every one of its employees to identify potential correspondence with any agent of Defendant is excessive given the seemingly minimal need for such an expansive search in this case, especially given that Drips is a third party. Indeed, the broadly worded demand does not take into account Counsel's obligation to limit the burden on a non-party. At bottom this demand does not set forth a reasonably particularized category of documents to be produced and, instead, is an interrogatory masquerading as a document demand. What Plaintiff seemingly wants to know is *how* texts involving Defendant were sent, but records supplying that specific information do not exist, and demanding "any" internal correspondence regarding "the contract" with Defendant that mention "the dialing system" purportedly used by Drips "as part of [its] relationship with the defendant" is a roundabout, unclear, and overly burdensome demand to get to the narrow point. The search and production demanded by this demand category might consume hundreds of hours when the information sought can plainly be obtained from alternate sources and in less burdensome manners.

- 4 -

Moreover, this demand assumes that any "system" or equipment initiated, transmitted, or delivered texts. That is not technically accurate and by responding to this demand Drips does not adopt that categorization.

Drips objects to this Request as Plaintiff does not specify which "contract" it is referring to, assumes that an undefined "dialing system" was used as part of Drips' undefined "relationship" with the defendant, and does not explain what it means for a dialing system to be used by Drips "as part of part of [its] relationship with the defendant." Plaintiff's failure to define these terms and to specify what it means for a dialing system to be "used by you as part of your relationship with the defendant" render this Request vague and ambiguous, leaving Drips to speculate as to Plaintiff's intended meaning. Responding to this ambiguous request would require Drips to gather and review, at great expense, all communications that in any way mention Defendant, then try to guess whether they relate to anything that could qualify as a "contract" with Defendant, whether they mention an undefined "dialing system," and whether that "dialing system" was used by Drips as part of its undefined "relationship" with Defendant. There is no reason to burden Drips, a third party to this litigation, with such an expense, particularly given the needs of the litigation and the Court's directive that discovery is limited to Plaintiff's individual claims.

This request is also overbroad, not tailored to the current phase of discovery, and premature, in that it seeks information not tied Plaintiff's individual ATDS claims. Given that in the current phase of discovery, the only discovery permitted is that relating to Plaintiff's individual ATDS claim, it would be disproportionate to the needs of the case at this time to require Drips to gather and produce information relating to anything other than the texts to Plaintiff.

Moreover, this request for "all internal communications," interpreted broadly, would encompass all work product in Drips' records, as well as records between Drips and its in-house

counsel relating to any "contract" with Defendant that mention the "dialing system" that was purportedly used, to the extent there are any. Additionally, Drips objects to the request in that it seeks documents that are protected by the work-product doctrine. Any demand designed to elicit a production of such records—or a log of each such correspondence—would run afoul of ethical rules and be impermissible, unlawful, and beyond the permissible scope of discovery under the Federal Rules of Civil Procedure.

Subject to and without waiving these objections, Drips will produce its contracts with Defendant, subject to the entry of an appropriate protective order. Drips is willing to meet and confer with Plaintiff regarding what additional information will suffice but declines to produce any additional records at this time on the basis of the forgoing objections. Should Plaintiff decide to pursue this demand as written, at a minimum Plaintiff should withdraw or hold this request until the Court resolves Defendant's objections to this demand.

**Request No. 2.**    If you contend the Plaintiff consented to receive telemarketing texts or calls from the Defendant, produce all documents that evidence such claim.

   **Response:**

Drips is a non-party in this litigation. It does not "contend" anything.

Moreover, this request for "all documents," interpreted broadly, would encompass records protected by the work-product doctrine, as well as records between Drips and its counsel relating to this litigation, to the extent there are any. Any demand designed to elicit a production of such records—or a log of each such correspondence—would run afoul of ethical rules and be impermissible, unlawful, and beyond the permissible scope of discovery under the Federal Rules of Civil Procedure.

Subject to and without waiving these objections, Drips directs Plaintiff toward ECF No. 43-5, as well as section 2.1 of the October 5, 2016 contract between Drips and Defendant, which

Drips will produce subject to the entry of an appropriate protective order and without waiving these objections.

**Request No. 3.**    Produce all internal communications relating in any way to complaints submitted by consumers or state or federal law enforcement agencies in regards to QuoteWizard's telemarketing practices.

**Response:**

Once again, this demand category imposes a burden on non-party Drips far in excess of what is reasonable given the needs of this case and the fact that the information can be obtained from alternate sources and using alternate means. Plaintiff's counsel has failed to account for the need to protect Drips from undue burden in serving this demand. To the extent this demand category seeks information regarding the merits of class member claims it is outside the current and permissible scope of discovery in this suit. To the extent it seeks information regarding non-parties it plainly seeks information that is outside the scope of discovery as it is unrelated to the claims and defenses in this suit. Searching for and locating documents responsive to this vague and unwieldy demand might consume hundreds of hours (or more) as records are individually reviewed to determine whether consumer responses might constitute a "complaint" and then a cross-reference effort against databases and employee-specific records of "communications" regarding those "complaints" is undertaken. Indeed the demand does not describe a reasonably particularized category of documents to be produced as Drips would need to assess the both the content of the underlying "complaint" to assume it is about telemarketing and then identify correspondence addressing each of those complaints—plainly not a set of records that exists in the ordinary course of Drips' business.

More basically, the request is overly broad, vague, and ambiguous, as it does not define "complaints," does not narrow "consumers" to Plaintiff, does not narrow any state or federal law

enforcement agency complaints to those involving Plaintiff, does not specify the "state or federal law enforcement agencies" to which it refers, and does not provide any guidance regarding what would qualify as QuoteWizard's "telemarketing practices." Given the breadth and ambiguity in this request, responding would require Drips to gather and review, at great expense, all communications that in any way mention QuoteWizard, assess whether the communication qualifies as internal, whether it relates to what would qualify as an undefined "complaint" from a consumer, whether that complaint was submitted to any state or federal law enforcement agencies, and whether the complaint related to QuoteWizard's telemarketing practices. There is simply no reason to burden Drips, a third party to this litigation, with such an enormous expense, particularly given that information regarding consumer complaints can be obtained through discovery from a party to the litigation.

This request is also overbroad; is not tailored to the needs of the case, any party's claim or defense, or the current phase of discovery; and is premature, in that it seeks information not tied Plaintiff's individual ATDS claims. Drips further objects to this request on the ground that it improperly seeks confidential information concerning other consumers. Given that in the current phase of discovery, the only discovery permitted is that relating to Plaintiff's individual ATDS claim, it would be disproportionate to the needs of the case at this time to require Drips to produce information relating to anything other than the texts to Plaintiff.

Drips also objects to this request in that it exceeds the scope of discovery that the Court has permitted even from Defendant as a named party in this matter. For example, the Court limited Plaintiff's requests for emails between QuoteWizard and RevPoint relating to any consumer "telemarketing complaints" to those pertaining to consent. *See* ECF Nos. 104, 112. Requiring Drips, as a non-party, to search for such records would be overly burdensome. In addition to the

multiple steps listed in the prior paragraph that Drips would have to undertake to identify any communications relating to any consumer complaints, Drips would also have to assess whether any such consumer communications could possibly be related to the consumers' consent. Drips has never sold any lead to QuoteWizard, and is not the proper party from which to seek this discovery. Again, there is no reason to burden a nonparty with such an enormous expense here, and Plaintiff can more readily obtained the information it seeks from a party to the litigation, or from a more appropriate nonparty.

Drips further objects to this request on the ground that it improperly seeks confidential information concerning other consumers. Drips also objects to this request to the extent it seeks records that include complaints involving messages or calls Drips may have on behalf of its other clients. Any such demand is plainly overly broad and seeks information outside of the scope of discovery and in a manner that is unduly burdensome and disproportionate to the needs of the case.

Moreover, this request for "all internal communications," interpreted broadly, would encompass Drips' work product as well as records between Drips and its in-house counsel relating to any "complaints submitted by consumers or state or federal law enforcement agencies in regards to QuoteWizard's telemarketing practices," to the extent there are any. Any demand designed to elicit a production of such records—or a log of each such correspondence—would run afoul of ethical rules and be impermissible, unlawful, and beyond the permissible scope of discovery under the Federal Rules of Civil Procedure.

Drips declines to produce any records at this time on the basis of the forgoing objections, but remains willing to meet and confer with Plaintiff regarding what information will suffice. To the extent we are not able to narrow or resolve these issues, should Plaintiff decide to pursue this

demand as written, Plaintiff at a minimum should withdraw or hold this request until the Court resolves Defendant's objections to this demand.

**Request No. 4.**     Produce all communications between relating [sic] to any consumers' claim that they did not consent to receive telemarketing calls or texts from QuoteWizard that are not communications with QuoteWizard directly.

**Response:**

Once again, this demand category imposes a burden on non-party Drips far in excess of what is reasonable given the needs of this case and the fact that the information can be obtained from alternate sources and using alternate means. Plaintiff's counsel has failed to account for the need to protect Drips from undue burden in serving this demand. To the extent this demand category seeks information regarding the merits of class member claims it is outside the current and permissible scope of discovery in this suit. To the extent it seeks information regarding non-parties it plainly seeks information that is outside the scope of discovery as it is unrelated to the claims and defenses in this suit. Searching for and locating documents responsive to this vague and unwieldy demand might consumer hundreds of hours (or more) as records are individually reviewed to determine whether consumer responses might constitute a "claim" related to a lack of consent and then a cross-reference effort against databases and employee-specific records of "communications" regarding those "complaints" is undertaken. Indeed the demand does not describe a reasonably particularized category of documents to be produced as Drips would need to assess the both the content of the underlying "claim" to assume it is about a lack of consent and then identify correspondence addressing each of those complaints—plainly not a set of records that exists in the ordinary course of Drips' business.

This request is overly broad, vague, and ambiguous, as it does not specify the parties involved in the communications it seeks. This request is also overbroad; is not tailored to the needs

of the case, any party's claim or defense, or the current phase of discovery; and is premature, in that it seeks information not tied Plaintiff's individual ATDS claims. Drips further objects to this request on the ground that it improperly seeks confidential information concerning other consumers. Given that in the current phase of discovery, the only discovery permitted is that relating to Plaintiff's individual ATDS claim, it would be disproportionate to the needs of the case at this time to require Drips to produce information relating to anything other than the texts to Plaintiff.

Given that in the current phase of discovery, the only discovery permitted is that relating to Plaintiff's individual claims, it would be disproportionate to the needs of the case at this time to require Drips—a non-party—to produce information relating to anything other than the texts to Plaintiff.

Moreover, this request for "all communications," interpreted broadly, would encompass work-product, as well as records between Drips and its counsel relating to any consumers' claim that they did not consent to receive telemarketing calls or texts from QuoteWizard, to the extent there are any. Any demand designed to elicit a production of such records—or a log of each such correspondence—would run afoul of ethical rules and be impermissible, unlawful, and beyond the permissible scope of discovery under the Federal Rules of Civil Procedure.

Drips further objects to this request on the ground that it improperly seeks confidential information concerning other consumers. Drips also objects to this request to the extent it seeks records that include complaints involving messages or calls Drips may have on behalf of its other clients. Any such demand is plainly overly broad and seeks information outside of the scope of discovery and in a manner that is unduly burdensome and disproportionate to the needs of the case.

Finally, Drips objects because the information Plaintiff seeks—information regarding consumer complaints that pertains to consumers' consent—can be more easily obtained from a named party in this matter (Defendant). Indeed, it is Drips' understanding that Plaintiff has sought from Defendant all documents evidencing any complaints received by the QuoteWizard from anyone, including any governmental agency, regarding text messages sent by QuoteWizard or on QuoteWizard's behalf using Drips technology. *See* ECF Nos. 104, 112. There is no need to burden a non-party with the significant expense of searching for records when Plaintiff can more readily obtain records going to the crux of its requests from a named party.

Drips declines to produce any records at this time on the basis of the forgoing objections, but remains willing to meet and confer with Plaintiff regarding what information will suffice.

**Request No. 5.** Produce all documents relating to QuoteWizard's telemarketing policies that are not communications with QuoteWizard directly.

**Response:**

Once again, this demand category imposes a burden on non-party Drips far in excess of what is reasonable given the needs of this case and the fact that the information can be obtained from alternate sources and using alternate means. Plaintiff's counsel has failed to account for the need to protect Drips from undue burden in serving this demand. Searching for and locating documents responsive to this vague and unwieldy demand might consume hundreds of hours (or more) as the limitless demand seemingly requires Drips to search every record it has in its possession of any sort that in any way touches on Defendant's telemarketing practices. This is a completely shapeless demand that would require Drips to search every record depository it owns for a completely uncertain set of records. Indeed the demand plainly does not set forth a 'reasonably particularized category" of documents to be produced—it doesn't specify any particular type of record to be produced at all.

- 12 -

This request is vague and ambiguous and may not set forth a reasonably particularized category of documents to be produced, depending on what it is seeking. To the extent the demand is limited to communications regarding "telemarketing policies," it is unclear what Plaintiff considers to be a policy, and which policies qualify as telemarketing policies. To the extent Plaintiff seeks something broader by this request, it is unclear what records it is seeking. Due to Plaintiff's failure to define the terms "telemarketing" and "policies," responding would require Drips, at great expense, to gather every document pertaining to QuoteWizard, review the document in detail to assess whether it arguably relates to a "policy," conduct an analysis to determine whether that policy relates to "telemarketing," and assess whether it qualifies as a communication with QuoteWizard. In short, there is simply no reason to burden Drips—a third party to this litigation—with such an expense, particularly given the needs of the litigation and the fact that any information regarding QuoteWizard's telemarketing policies can more easily be obtained directly from QuoteWizard.

Drips further objects because the information Plaintiff seeks—information regarding Defendant's telemarketing policies—can be more easily obtained from a named party in this matter (Defendant). Drips should not have to review its documents to assess whether they relate to a named Defendant's "telemarketing policies."

This request is also overbroad; is not tailored to the needs of the case, any party's claim or defense, or the current phase of discovery; and is premature, in that it seeks information not tied Plaintiff's individual ATDS claims. Given that in the current phase of discovery, the only discovery permitted is that relating to Plaintiff's individual ATDS claim, it would be disproportionate to the needs of the case at this time to require Drips to produce information relating to anything other than the texts to Plaintiff.

Additionally, Drips further objects to the overbreadth of this request, which exceeds the discovery the Court has permitted from the named Defendant in this matter. For example, the Court limited Plaintiff's requests for emails between QuoteWizard and RevPoint relating to any consumer "telemarketing complaints" to those pertaining to consent. *See* ECF Nos. 104, 112. Plaintiff seeks "all documents" relating to any of "QuoteWizard's telemarketing policies," not just those relating to consent. Even if limited to records touching on consent, requiring Drips, as a non-party, to search for such records would be overly burdensome. To respond to this request, Drips—in addition to the multiple steps listed above—would have to assess whether any such "telemarketing policies" could possibly be related to the consumers' consent. Again, there is no reason to burden a nonparty with such an enormous expense here, and Plaintiff can more readily obtained the information it seeks from a party to the litigation.

Drips also objects to this request because as written, it seeks "all documents" relating to QuoteWizard's telemarketing policies that are not communications with QuoteWizard, which interpreted broadly would cover Drips' work product as well as documents between Drips and its attorneys related to this litigation. Obviously any demand designed to elicit a production of such records—or a log of each such correspondence—would run afoul of ethical rules and be impermissible, unlawful, and beyond the permissible scope of discovery under the Federal Rules of Civil Procedure.

Drips declines to produce any records at this time on the basis of the forgoing objections, but remains willing to meet and confer with Plaintiff regarding what information will suffice. To the extent we are not able to narrow or resolve these issues, should Plaintiff decide to pursue this demand as written, Plaintiff at a minimum should withdraw or hold this request until the Court resolves Defendant's objections to this demand.

**Request No. 6.**   Produce all documents and communications regarding QuoteWizard relating to consumers do not call requests that are not communications with QuoteWizard directly.

   **Response:**

   Once again, this demand category imposes a burden on non-party Drips far in excess of what is reasonable given the needs of this case and the fact that the information can be obtained from alternate sources and using alternate means. Plaintiff's counsel has failed to account for the need to protect Drips from undue burden in serving this demand. To the extent the "do not call requests" came from class member they fall outside the scope of permissible discovery in the case. To the extent the "do not call requests" came from non class members they are classically unrelated to the subject matter of this case—and this is especially so since the information sought was never communicated to Defendant and could not, therefore, bear on issues such as willfulness.

   Moreover, even if the do not call requests themselves had some limited pertinence to the case—for instance allowing identification of class members at a later stage in the litigation—the demand is far over broad and imposes an excessive burden to the extent it requires identification of documents and communications "related" to any such do not call request. To respond to this demand Drips would need to: i) identify all DNCs regarding Defendant (a burdensome task in and of itself); ii) review each to determine whether it was communicated to Defendant (requiring a request by request review); then iii) search every record depository in its possession for any "document" that might relate to any one of those DNCs and every "communication" for each and every such DNC. The search required by iii) is monumental in nature and would require as many separate searches as there are DNCs identified following steps i) and ii) of the process. While it is impossible to estimate the time needed to conduct these searches—since Drips does not know how many searches would be needed—this step alone may conceivably take thousands of hours to complete. Given that these records seemingly have no relevance at this stage of the case the burden

associated with this production is plainly vastly out of step with the proportionality analysis required under Rule 26.

Drips objects to this request as the information that potentially could be pertinent to this matter can be more easily obtained from a named party in this litigation (Defendant), and it is Drips' understanding that Defendant in fact has produced its Do Not Call lists as provided by Drips. Thus, Plaintiff has already received the actual do not call requests it seeks, and there is no reason to burden Drips, as a non-party to the litigation, with searching for and producing documents and communications related to those requests, which have no bearing on the case at all.

Drips also objects to this request to the extent it seeks confidential, proprietary, and trade secret information that may jeopardize Drips' competitive advantage. Requiting the production of such materials from a non-party is particularly inappropriate and disproportionate to the needs of the case given that, as noted above, Plaintiff has received the actual do not call requests from QuoteWizard as a party to the litigation, and because it seeks information relating to calls and texts that are not currently at issue.

Additionally, Drips further objects to this request on the ground that it improperly seeks confidential information concerning other consumers. And, to the extent this demand seeks records containing do not call requests stemming from messages or calls Drips may have on behalf of its other clients, this demand is plainly overly broad and seeks information outside of the scope of discovery and in a manner that is unduly burdensome and disproportionate to the needs of the case.

As written, moreover, this request seeks "all documents and communications" relating to consumers' do not call requests involving QuoteWizard, which, interpreted broadly, seeks documents covered by the work-product doctrine and communications between Drips and its attorneys related to any do not call request. For instance, read broadly, the entire file of Drips'

outside counsel is theoretically responsive to Plaintiff's overly broad and vague demand. Obviously any demand designed to elicit a production of such records—or a log of each such correspondence—would run afoul of ethical rules and be impermissible, unlawful, and beyond the permissible scope of discovery under the Federal Rules of Civil Procedure. Drips interprets this demand, therefore, to seek only business records and not to knowingly seek attorney-client privileged or attorney work product records.

On the basis of these objections no responsive records will be produced. Drips is willing to discuss a reasonable production if Plaintiff better specifies what it is he is actually after.

**Request No. 7.**     Produce all documents evidencing any complaints, formal or informal, submitted by consumers, or any government agency, in regards to QuoteWizard's telemarketing calls or practices. This request does not include communications that are exchanged with QuoteWizard directly.

**Response:**

Once again, this demand category imposes a burden on non-party Drips far in excess of what is reasonable given the needs of this case and the fact that the information can be obtained from alternate sources and using alternate means. Plaintiff's counsel has failed to account for the need to protect Drips from undue burden in serving this demand. To the extent this demand category seeks information regarding the merits of class member claims it is outside the current and permissible scope of discovery in this suit. To the extent it seeks information regarding non-parties it plainly seeks information that is outside the scope of discovery as it is unrelated to the claims and defenses in this suit. Searching for and locating documents responsive to this vague and unwieldy demand might consume hundreds of hours (or more) as records are individually reviewed to determine whether consumer responses might "evidence" a "complaint." Further, rather than articulate a reasonable category of documents to be produced, Plaintiff requires Drips to undertake a search of every record in its possession for any scrap of paper or ESI referencing

anything that could potentially "evidence" a "complaint." The search required of this demand would take thousands of hours as every Drips employee would need to be approached for records in their possession and every document in Drips' possession would need to be individually reviewed and assessed to determine whether it evidenced a complaint regarding QuoteWizard's "telemarketing calls or policies."

More basically, the request is overly broad, vague, and ambiguous, as it does not define "complaints," does not narrow "consumers" to Plaintiff, does not narrow any government agency complaints to those involving Plaintiff, does not specify the "government agencies" to which it refers, and does not provide any guidance regarding what would qualify as QuoteWizard's "telemarketing calls or practices." Given the breadth and ambiguity in this request, responding would require Drips to gather and review, at great expense, all communications that in any way mention QuoteWizard, assess whether the communication qualifies as internal, whether it relates to what would qualify as an undefined "complaint" from a consumer, whether that complaint was submitted to any state or federal law enforcement agencies, and whether the complaint related to QuoteWizard's telemarketing practices. There is simply no reason to burden Drips, a third party to this litigation, with such an enormous expense, particularly given that information regarding consumer complaints can be obtained through discovery from a party to the litigation.

Moreover, even if the complaints themselves had some limited pertinence to the case—for instance allowing identification of class members at a later stage in the litigation—the demand is far over broad and imposes an excessive burden to the extent it requires identification of documents and communications "related" to any such do not call request. To respond to this demand Drips would need to: i) identify all "complaints"—whatever that means— regarding Defendant (a

burdensome task in and of itself for the reasons described in response to Interrogatory No. 3); ii) review each to determine whether it was communicated to Defendant (requiring a request by request review); then iii) search every record depository in its possession for any "documents" "evidencing"—whatever that means— such complaints. The search required by iii) is monumental in nature and would require as many separate searches as there are complaints identified following steps i) and ii) of the process. Given that these records seemingly have no relevance at this stage of the case the burden associated with this production is plainly vastly out of step with the proportionality analysis required under Rule 26.

Like Request No. 3, this request is overly broad, vague, and ambiguous; it does not define "complaints," does not clarify what would qualify as a "formal" or "informal" complaint, does not explain how a document would "evidence" any such complaint, and does not provide any guidance regarding what would qualify as QuoteWizard's "telemarketing calls practices" or which complaints will be "in regards to" these practices.

Searching for and locating documents responsive to this vague and unwieldy demand might consumer hundreds of hours (or more) as the limitless demand seemingly requires Drips to search every record it has in its possession of any sort that in any way touches on Defendant's telemarketing calls or practices. Specifically, Responding to this request would require Drips to gather and review, at great expense, all documents that in any way mention QuoteWizard, assess whether the document somehow evidences an undefined "complaint" from any consumer or government agency, determine whether that complaint is "in regards to" QuoteWizard's undefined "telemarketing calls or practices," and confirm that the document is not a communication with QuoteWizard. There is simply no reason to burden Drips, a third party to this litigation, with such an enormous expense in trying to decode what Plaintiff seeks here, particularly given that

- 19 -

information regarding consumer or agency complaints can be obtained through discovery from a party to the litigation.

This request is also overbroad; is not tailored to the needs of the case, any party's claim or defense, or the current phase of discovery; and is premature, in that it seeks information not tied Plaintiff's individual ATDS claims. Given that in the current phase of discovery, the only discovery permitted is that relating to Plaintiff's individual ATDS claim, it would be disproportionate to the needs of the case at this time to require Drips to produce information relating to anything other than the texts to Plaintiff.

Drips also objects because this request exceeds the scope of discovery that the court has permitted even from Defendant as a named party in this matter. For example, the Court limited Plaintiff's requests for emails between QuoteWizard and RevPoint relating to any consumer "telemarketing complaints" to those pertaining to consent. *See* ECF Nos. 104, 112. Plaintiff seeks not just those documents pertaining to consent, but "all documents evidencing any complaints, formal or informal" regarding "QuoteWizard's telemarketing calls or practices." And even if limited to complaints pertaining to consent, requiring Drips, as a non-party, to search for such records would be overly burdensome. To respond to this request, Drips—in addition to the multiple steps listed above—would have to assess whether any such complaints could possibly be related to consent. Again, there is no reason to burden a nonparty with such an enormous expense here, particularly when the records Plaintiff seeks can be more readily obtained from QuoteWizard or a more appropriate nonparty.

Drips further objects to this request on the ground that it improperly seeks confidential information concerning other consumers. And, to the extent this demand seeks records containing do not call requests stemming from messages or calls Drips may have on behalf of its other clients,

this demand is plainly overly broad and seeks information outside of the scope of discovery and in a manner that is unduly burdensome and disproportionate to the needs of the case.

Moreover, this request for "all documents," interpreted broadly, would encompass Drips' work product and records between Drips and its counsel "evidencing any complaints, formal or informal, submitted by consumers, or any government agency, in regards to QuoteWizard's telemarketing calls or practices," to the extent there are any. For instance, read broadly, the entire file of Drips' outside counsel is theoretically responsive to Plaintiff's overly broad and vague demand. Any demand designed to elicit a production of such records—or a log of each such correspondence—would run afoul of ethical rules and be impermissible, unlawful, and beyond the permissible scope of discovery under the Federal Rules of Civil Procedure.

Drips declines to produce any records at this time on the basis of the forgoing objections, but remains willing to meet and confer with Plaintiff regarding what information will suffice. To the extent we are not able to narrow or resolve these issues, should Plaintiff decide to pursue this demand as written, Plaintiff at a minimum should withdraw or hold this request until the Court resolves Defendant's objections to this demand.

**Request No. 8.**    Produce all documents evidencing any investigation and response to complaints submitted by consumers, or any government agency, in regards to QuoteWizard's telemarketing calls or practices. This request does not include communications that are exchanged with QuoteWizard directly.

**Response:**

Once again, this demand category imposes a burden on non-party Drips far in excess of what is reasonable given the needs of this case and the fact that the information can be obtained from alternate sources and using alternate means. Plaintiff's counsel has failed to account for the need to protect Drips from undue burden in serving this demand. To the extent the "complaints" came from class member they fall outside the scope of permissible discovery in the case. To the

extent the "complaints" came from non class members they are classically unrelated to the subject matter of this case—and this is especially so since the information sought was never communicated to Defendant and could not, therefore, bear on issues such as willfulness.

Moreover, even if the complaints themselves had some limited pertinence to the case—for instance allowing identification of class members at a later stage in the litigation—the demand is far over broad and imposes an excessive burden to the extent it requires identification of documents related to any "investigation" into the complaints. To respond to this demand Drips would need to spend hundreds of hours if not more in order to: i) identify all "complaints"—whatever that means— regarding Defendant (a burdensome task in and of itself for the reasons described in response to Interrogatory No. 3); ii) review each to determine whether it was communicated to Defendant (requiring a request by request review); then iii) search every record depository in its possession for any "documents" regarding any investigation into such complaints. The search required by iii) is monumental in nature and would require as many separate searches as there are complaints identified following steps i) and ii) of the process.. Given that these records seemingly have no relevance at this stage of the case the burden associated with this production is plainly vastly out of step with the proportionality analysis required under Rule 26.

This request is overly broad, vague, and ambiguous, as it does not define "complaints," "investigation," or "response"; does not clarify what would qualify as a "formal" or "informal" complaint; does not explain how a document would "evidence" any such complaint; and does not provide any guidance regarding what would qualify as QuoteWizard's "telemarketing calls practices" or which complaints will be "in regards to" these practices. Responding to this request would require Drips to gather and review, at great expense, all documents that in any way mention QuoteWizard, assess whether the document somehow evidences a "complaint" from any consumer

or government agency, determine whether that complaint is "in regards to" QuoteWizard's undefined "telemarketing calls or practices," decide whether anything was done as a result that would qualify as an "investigation" or "response," and confirm that the document is not a communication with QuoteWizard. There is simply no reason to burden Drips, a third party to this litigation, with such an enormous expense, particularly given that information regarding consumer or agency complaints can be obtained through discovery from a party to the litigation.

This request is also overbroad; is not tailored to the needs of the case, any party's claim or defense, or the current phase of discovery; and is premature, in that it seeks information not tied Plaintiff's individual ATDS claims. Given that in the current phase of discovery, the only discovery permitted is that relating to Plaintiff's individual ATDS claim, it would be disproportionate to the needs of the case at this time to require Drips to produce information relating to anything other than the texts to Plaintiff.

Drips also objects because this request exceeds the scope of discovery that the court has permitted even from Defendant as a named party in this matter. For example, the Court limited Plaintiff's requests for emails between QuoteWizard and RevPoint relating to any consumer "telemarketing complaints" to those pertaining to consent. *See* ECF Nos. 104, 112. Plaintiff seeks not just those documents pertaining to consent, but "all documents evidencing any complaints, formal or informal" regarding "QuoteWizard's telemarketing calls or practices." And even if limited to complaints pertaining to consent, requiring Drips, as a non-party, to search for such records would be overly burdensome. To respond to this request, Drips—in addition to the multiple steps listed above—would have to assess whether any such complaints could possibly be related to consent. Again, there is no reason to burden a nonparty with such an enormous expense here, particularly when the records Plaintiff seeks can be more readily obtained from QuoteWizard or a

more appropriate nonparty. Indeed, it is Drips' understanding that Plaintiff has sought from Defendant all documents evidencing any complaints received by the QuoteWizard from anyone, including any governmental agency, regarding text messages sent by QuoteWizard or on QuoteWizard's behalf using Drips technology. There is no need to burden a non-party with the significant expense of searching for records when Plaintiff can more readily obtain records going to the crux of its request from a named party.

Drips further objects to this request on the ground that it improperly seeks confidential information concerning other consumers. And, to the extent this demand seeks records containing do not call requests stemming from messages or calls Drips may have on behalf of its other clients, this demand is plainly overly broad and seeks information outside of the scope of discovery and in a manner that is unduly burdensome and disproportionate to the needs of the case.

Moreover, this request for "all documents," interpreted broadly, would encompass work-product and records between Drips and its counsel regarding anything done in response to a complaint involving QuoteWizard, to the extent there are any. For instance, read broadly, the entire file of Drips' outside counsel is theoretically responsive to Plaintiff's overly broad and vague demand.  Any demand designed to elicit a production of such records—or a log of each such correspondence—would run afoul of ethical rules and be impermissible, unlawful, and beyond the permissible scope of discovery under the Federal Rules of Civil Procedure. Drips interprets this demand to seek business records and not attorney client or attorney work product information.

Drips is willing to meet and confer with Plaintiff regarding what information will suffice but declines to produce any records at this time on the basis of the forgoing objections, at least until the Court resolves Defendant's objections.

**Request No. 9.**     Produce all consumer do not call requests provided to you in any way relating to text telemarketing conducted on QuoteWizard's behalf. that are not communications with QuoteWizard directly.

**Response:**

Once again, this demand category imposes a burden on non-party Drips far in excess of what is reasonable given the needs of this case and the fact that the information can be obtained from alternate sources and using alternate means. Plaintiff's counsel has failed to account for the need to protect Drips from undue burden in serving this demand. To the extent the "do not call requests" came from class member they fall outside the scope of permissible discovery in the case. To the extent the "do not call requests" came from non class members they are classically unrelated to the subject matter of this case—and this is especially so since the information sought was never communicated to Defendant and could not, therefore, bear on issues such as willfulness.

Moreover, even if the do not call requests themselves had some limited pertinence to the case—for instance allowing identification of class members at a later stage in the litigation—these requests could be more readily obtained from Defendant, a party in this matter, and it is Drips' understanding that Defendant has in fact produced the do not call requests to Plaintiff. Requiring Drips to respond to this demand would be make-work, and would require Drips, a non-party, to spend unnecessary time and potentially hundreds of hours in order to to: i) identify all DNCs regarding Defendant (a burdensome task in and of itself); and ii) review each to determine whether it was communicated to Defendant (requiring a request by request review and comparison with Defendant's request list). Given that Plaintiff already has a copy of the DNC request it seeks, and because these records seemingly have no relevance at this stage of the case, the burden associated with this production is plainly vastly out of step with the proportionality analysis required under Rule 26.

Drips also objects to this request to the extent it seeks confidential, proprietary, and trade secret information that may jeopardize Drips' competitive advantage. Requiting the production of such materials from a non-party is particularly inappropriate and disproportionate to the needs of the case given that, as noted above, Plaintiff has received the actual do not call requests from QuoteWizard as a party to the litigation, and because it seeks information relating to calls and texts that are not currently at issue.

Additionally, Drips further objects to this request on the ground that it improperly seeks confidential information concerning other consumers. And, to the extent this demand seeks records containing do not call requests stemming from messages or calls Drips may have on behalf of its other clients, this demand is plainly overly broad and seeks information outside of the scope of discovery and in a manner that is unduly burdensome and disproportionate to the needs of the case.

As written, moreover, this request seeks "all documents and communications" relating to consumers' do not call requests involving QuoteWizard, which, interpreted broadly, seeks documents covered by the work-product doctrine and communications between Drips and its attorneys related to any do not call request. For instance, read broadly, the entire file of Drips' outside counsel is theoretically responsive to Plaintiff's overly broad and vague demand. Obviously any demand designed to elicit a production of such records—or a log of each such correspondence—would run afoul of ethical rules and be impermissible, unlawful, and beyond the permissible scope of discovery under the Federal Rules of Civil Procedure. Drips interprets this demand, therefore, to seek only business records and not to knowingly seek attorney-client privileged or attorney work product records.

On the basis of these objections no responsive records will be produced, and Drips requests that Plaintiff withdraw this request to avoid burdening a non-party when Defendant has already

produced the records Plaintiff seeks.

**Request No. 10.**   Produce all documents that refer to the text technology employed by You as using "chatbots", "humanized engagements," "human approved auto responders," and/or "zero client side operators."

   **Response:**

   Once again, this demand category imposes a burden on non-party Drips far in excess of what is reasonable given the needs of this case and the fact that the information can be obtained from alternate sources and using alternate means. Plaintiff's counsel has failed to account for the need to protect Drips from undue burden in serving this demand. Rather than articulate a reasonable category of documents to be produced Plaintiff requires Drips to undertake a search of every record in its possession for any scrap of paper or ESI referencing several phrases of dubious relevance to the case. The search required of this demand would take thousands of hours as every Drips employee would need to be approached for records in their possession and every document in Drips' possession would need to be individually reviewed for reference to these phrases.

   The needs of this case cannot possibly justify this expansive search. This is especially true when the information Plaintiff is actually after—i.e. how the system operates—can more easily be obtained through other means and methods (like the deposition that Plaintiff has already demanded of Drips). Moreover the plaintiff's case has nothing to do with "chatbots" or the like and is a simple clear cut TCPA case, that looks at the capacity of the system to dial automatically from a stored list of numbers or to dial randomly or sequentially. The use of "chatbots" does not, in any way, weigh on those issues. So there is simply no need for the massive and expensive search the Plaintiff demands.

   Moreover, the demand plainly does not set forth a reasonably particularized category of documents to be produced—it is unclear what Plaintiff is even after other than a stack of documents

of any kind/sort referencing certain key words. That is not what the Rules contemplate when it requires the serve of a subpoena to specify precisely what sorts of documents need to be produced.

This request appears to assume that the texts sent to Plaintiff were sent using the technology known as "chatbots," "humanized engagements," "human approved auto responders," and/or "zero client side operators." By responding to this demand, Drips does not adopt that categorization.

Further the demand is vague and ambiguous and may not set forth a reasonably particularized category of documents to be produced, depending on what it is seeking. To the extent the request seeks documents regarding text messages other than the text messages to Plaintiff, it is overbroad, is not tailored to the needs of the case, any party's claim or defense, or the current phase of discovery; and is premature, in that it seeks information not tied Plaintiff's individual ATDS claims. Given that in the current phase of discovery, the only discovery permitted is that relating to Plaintiff's individual ATDS claim, it would be disproportionate to the needs of the case at this time to require Drips to produce information relating to anything other than the texts to Plaintiff.

To the extent the demand seeks only specific records related to the manner in which texts were sent to Plaintiff, Drips has already produced its records related to the transmission of the two text messages at issue in the First Amended Complaint, and without waiving and subject to these objections, Drips will produce remaining records relating to the transmission of relevant texts to Plaintiff.

To the extent, however, Plaintiff seeks records regarding whether and which texts generally (i.e., including but not limited to texts to Plaintiff) involved any "chatbots," "humanized engagements," "human approved auto responders," and/or "zero client side operators," then the demand imposes an extreme and unnecessary burden on Drips, which would have to fashion an

extensive search and production effort to comply with this request. Not only would such a demand be inappropriate at this stage of the case given the current phase of discovery, such an extraordinary demand on Drips would always be disproportionate to the needs of this case and would always result in the needless production of records outside the permissible and necessary scope of discovery in this suit. Any technical renderings, schematics, or descriptions of the Drips platform and its functionalities are highly confidential and proprietary trade secret records that must be protected from disclosure.

Further, to the extent this demand seeks records that do not relate to communications involving QuoteWizard or this litigation and instead relate to other accounts or clients, this demand is plainly overly broad and seeks information outside of the scope of discovery and in a manner that is unduly burdensome and disproportionate to the needs of the case. Drips further objects to this request to the extent it would encompass confidential information concerning other consumers or campaigns regardless of whether they have any relevance in this case.

This request appears to be another interrogatory in the form of a document request; Plaintiff seeks to know how the texts were sent, but rather than obtain that information through the use of a simple interrogatory to the Defendant, it imposes the undue burden of searching for and producing records that might bear on the inquiry to Drips, a third party in this action. As such the demand is *per se* unduly burdensome and disproportionate to the needs of the case.

Moreover, this request for "all documents," interpreted broadly, would encompass Drips' work product and records between Drips and its counsel regarding these technologies, to the extent there are any. Any demand designed to elicit a production of such records—or a log of each such correspondence—would run afoul of ethical rules and be impermissible, unlawful, and beyond the permissible scope of discovery under the Federal Rules of Civil Procedure.

Drips remains willing to meet and confer with Plaintiff regarding any further records it may be seeking that it contends are within the scope of discovery at this time.

**Request No. 11.**   Produce all marketing materials relating to the dialing technology used to send the texts at issue to Plaintiff.

**Response:**

Once again, this demand category imposes a burden on non-party Drips far in excess of what is reasonable given the needs of this case and the fact that the information can be obtained from alternate sources and using alternate means. Plaintiff's counsel has failed to account for the need to protect Drips from undue burden in serving this demand. This is yet another shapeless demand for "all marketing material" related to Drips' system, unlimited in time or scope. To respond Drips would need to search every record in its possession to determine whether any might be considered "marketing material" and speak with every employee regarding possession of any responsive records back to the beginning of time. Such a search is extremely burdensome and would impose hundreds of hours (or more) to properly conduct.

On the other hand the need for such records is zero. Marketing materials have nothing whatsoever to do with Plaintiff's case—which must be proven based upon the actual capacity of the system rather than any advertised capacity. Even if advertising material had some minimal relevance, however, thoughtlessly demanding that Drips produce every piece of marketing it has ever had respecting the system is plainly the sort of "shotgun" discovery that a third-party is entitled to be protected from under the rules.

Further the demand is vague and ambiguous and may not set forth a reasonably particularized category of documents to be produced, depending on what it is seeking. To the extent the request is limited to "marketing materials," it is unclear what Plaintiff considers to

qualify as "marketing materials," and which materials would "relate to" the technology used to send text messages to Plaintiff.

To the extent the request seeks marketing materials specifically related to the manner in which the texts at issue were sent to Plaintiff, Drips states that no such records exist, and that Drips, in response to the first subpoena and subject to its objections to that subpoena, has already produced its records regarding the transmission of the two text messages at issue in the First Amended Complaint, and will produce its records regarding the transmission of the remaining texts to Plaintiff here, subject to and without waiving any objections.

To the extent the request seeks documents regarding text messages other than those sent to Plaintiff, it is overbroad; is not tailored to the needs of the case, any party's claim or defense, or the current phase of discovery; and is premature, in that it seeks information not tied Plaintiff's individual ATDS claims. Given that in the current phase of discovery, the only discovery permitted is that relating to Plaintiff's individual ATDS claim, it would be disproportionate to the needs of the case at this time to require Drips to produce information relating to anything other than the texts to Plaintiff.

Additionally, this request imposes an extreme and unnecessary burden on Drips, which would have to fashion an extensive search and production effort to respond. Drips would have to comb through all of the marketing materials it has prepared and used over the course of the last several years, then figure out whether the material relates to the specific dialing technology used to send the texts to Plaintiff. Not only would such a demand be inappropriate at this stage of the case given the current phase of discovery, such an extraordinary demand on Drips would always be disproportionate to the needs of this case and would always result in the needless production of records outside the permissible and necessary scope of discovery in this suit. Any technical

renderings, schematics, or descriptions of the Drips platform and its functionalities, moreover, are highly confidential and proprietary trade secret records that must be protected from disclosure.

Additionally, to the extent Plaintiff seeks any marketing materials sent to or used by QuoteWizard, those records can be obtained from QuoteWizard as a party in this action.

Moreover, this request for "all documents," interpreted broadly, seeks Drips' work product and records between Drips and its counsel regarding any of Drips' marketing materials. Any demand designed to elicit a production of such records—or a log of each such correspondence— would run afoul of ethical rules and be impermissible, unlawful, and beyond the permissible scope of discovery under the Federal Rules of Civil Procedure.

Drips declines to produce any records at this time on the basis of the forgoing objections, but remains willing to meet and confer with Plaintiff regarding what information will suffice.

**Request No. 12.** Produce all documents that refer to, relate, or support your claim that the dialing technology used to send the texts at issue to the Plaintiff was not an automatic telephone dialing system as that term is defined by the Telephone Consumer Protection Act.

**Response:**

Drips is not a party to this action. It is not making any "claims" in this case. Hence no responsive records will exist.

This request is another interrogatory—this time improperly seeking a legal conclusion— masquerading as a document demand. Plaintiff is trying to ferret out whether Drips claims its dialing technology is automatic telephone dialing system ("ATDS") as defined by the TCPA. Plaintiff, though, does not provide any parameters as to what it considers to qualify as an ATDS, nor any clarity as to which court-interpreted definition of an ATDS Plaintiff subscribes, impermissibly leaving Drips to try to guess.

To the extent the demand requires Drips to assess every record in its possession and apply a legal analysis to determine whether that record might support or refute the supposition that its system is an ATDS the demand is extremely burdensome and plainly does not set forth a reasonably particularized category of documents to be produced. Rather only a review by a trained legal professional of each and every record, and a legal determination of the significance of each, would produce a meaningful response—and even then the response would be purely subjective and not based on any objective criteria. As it is impossible to ascertain any responsive category of documents, the demand is plainly not reasonably particularized.

Additionally, it is unclear how Drips' legal conclusions have any bearing on this matter. At bottom, Plaintiff seems to be trying to determine whether the text messages were sent using an ATDS, not Drips' opinions on the matter. But rather than obtain that information through the use of a interrogatory to the Defendant, it imposes the undue burden of searching for and producing records that might bear on the inquiry to Drips, a non-party. Responding to this request would require Drips, to sift through all of its records regarding its technology, interpret the various legal precedent regarding the definition of an ATDS, and assess whether the document supports a purported allegation—which Drips as a non-party does not adopt or weigh in on in any way—as to whether Drips' technology qualifies as an ATDS under the various court-applied definitions of that term. The burden in gathering and subjecting every record in Drips' possession to a legal analysis would be astronomical, requiring thousands of hours at best. There is simply no reason to burden Drips with such an enormous expense, particularly given the needs of the litigation and the current phase of discovery.

- 33 -

Drips also objects to this request to the extent it seeks any technical renderings, schematics, or descriptions of the Drips platform and its functionalities, which are highly confidential and proprietary trade secret records that must be protected from disclosure.

Moreover, this request for "all documents," interpreted broadly, would cover Drips' work product and all records between Drips and its counsel regarding any analysis in this litigation or otherwise regarding the whether its technology qualifies as an ATDS, to the extent there are any. Any demand designed to elicit a production of such records—or a log of each such correspondence—would run afoul of ethical rules and be impermissible, unlawful, and beyond the permissible scope of discovery under the Federal Rules of Civil Procedure.

Therefore, this request, as phrased, seeks the production of an impermissible set of discovery.

**Request No. 13.** Produce all internal documents or communications in any way relating to Your contractual requirement that QuoteWizard produce to You "copies of all written consents within two (2) business days notice.

**Response:**

First, this demand assumes that Drips was under some sort of "contractual requirement that QuoteWizard produce to [Drips] 'copies of all written consents within two (2) business days notice," but characterizing the provision at issue as a Drips' "contractual requirement" is not technically accurate, and by responding to this demand Drips does not adopt that categorization.

The burden associated with forcing Drips to review the records of every one of its employees to identify potential correspondence that in any way relates to a contractual requirement that QuoteWizard provide copies of written consent to Drips if Drips, at its discretion, so requests is excessive given the seemingly minimal need for such an expansive search in this case, especially

given that Drips is a third party. Indeed, the broadly worded demand does not take into account Counsel's obligation to limit the burden on a non-party.

At bottom this demand does not set forth a reasonably particularized category of documents to be produced and, instead, is an interrogatory masquerading as a document demand. What Plaintiff seemingly wants to know is whether Drips regularly seeks such consents, or potentially whether it sought such consent from Defendant here. Plaintiff can more easily obtain this information directly from Defendant as a named party in this matter who would have been involved in such communications, rather than from Drips, a non-party. The search and production demanded by this demand category might consume hundreds of hours when the relevant information can plainly be obtained from alternate sources and in less burdensome manners.

Once again, this demand category imposes a burden on non-party Drips far in excess of what is reasonable given the needs of this case and the fact that the information can be obtained from alternate sources and using alternate means. Plaintiff's counsel has failed to account for the need to protect Drips from undue burden in serving this demand. Searching for and locating documents responsive to this vague and unwieldy demand might consume hundreds of hours (or more) as the limitless demand seemingly requires Drips to search every record it has in its possession of any sort that in any way  telemarketing practices. This is a completely shapeless demand that would require Drips to search every record depository it owns for a completely uncertain set of records. Indeed the demand plainly does not set forth a "reasonably particularized category" of documents to be produced—it doesn't specify any particular type of record to be produced at all.  At minimum, To the extent Plaintiff seeks internal communications regarding this provision, responding would require Drips to sift through all documents pertaining to

QuoteWizard, assess whether it qualifies as an internal communication, and engage in a legal analysis to determine whether it relates to a misstated "contractual requirement."

To the extent Plaintiff seeks information that does not relate to Plaintiff or the text messages at issue, then this request is overbroad; is not tailored to the needs of the case, any party's claim or defense, or the current phase of discovery; and is premature, in that it seeks information not tied Plaintiff's individual ATDS claims. Given that in the current phase of discovery, the only discovery permitted is that relating to Plaintiff's individual ATDS claim, it would be disproportionate to the needs of the case at this time to require Drips to produce information relating to anything other than the texts to Plaintiff. To the extent Plaintiff seeks information regarding Drips' and Defendant's business practices and communications, that discovery in addition to being premature, can be more easily obtained from a named party in this matter (Defendant).

Similarly, To the extent Plaintiff seeks information regarding whether there were any communications regarding Plaintiff's written consents stemming from this provision, any such communications can be more easily obtained from QuoteWizard, rather than through a request to a non-party. Moreover, this request for "all internal documents or communications," interpreted broadly, would encompass records covered by the work-product doctrine, as well as communications between Drips and its in-house counsel relating to this contractual provision, etc., to the extent there are any. Any demand designed to elicit a production of such records—or a log of each such correspondence—would run afoul of ethical rules and be impermissible, unlawful, and beyond the permissible scope of discovery under the Federal Rules of Civil Procedure.

Subject to and without waiving these objections and the entry of an appropriate protective order, Drips will produce the relevant contract between Drips and Defendant. Drips declines to

produce further records at this time on the basis of the forgoing objections, but remains willing to meet and confer with Plaintiff regarding what information will suffice.

**Request No. 14.** Produce a list of other lawsuits in which it is alleged that You sent texts to consumers using an automatic telephone dialing system.

**Response:**

This is an interrogatory masquerading as a document demand. Drips is under no obligation to produce records in responding to this subpoena. No such "list" of lawsuits is ever believed to have existed and, even if one did, it is plainly irrelevant to the allegations of this case. Indeed demanding that a third-party produce a list of cases it has been involved with (if any) is a plain abuse of the discovery process.

This demand assumes that any "system" or equipment initiates, transmits, or delivers texts to consumers. That is not technically accurate and by responding to this demand Drips does not adopt that categorization.

To the extent Plaintiff's request demands that Drips fashion a responsive document, this request imposes an extreme and unnecessary burden on Drips, which would have to fashion an extensive search and production effort to comply with this request. For example, Drips would have to, among other things, search nationwide dockets for any case involving any of its clients, review the pleadings to assess whether the claims relate to any texts sent using the Drips platform, sift through the pleadings to figure out whether a party has that Drips has used an automatic telephone dialing system, and then create a list of the lawsuit to produce. Imposing such an extraordinary, undue demand on Drips, a nonparty, would require hundreds if not thousands of hours of work, and would always be disproportionate to the needs of this case, even if the allegations in unrelated lawsuits somehow had any bearing on this litigation (which they do not).

Indeed, it is unclear how allegations from third parties regarding a legal conclusion in unrelated lawsuits have any bearing in this case. This request seeks a "list" of "other lawsuits" that, to the extent they exist, are wholly unrelated to the litigation at hand.  At bottom, Plaintiff really seeks to know whether the platform qualifies as an ATDS, not whether others have claimed that it does. But rather than obtain that information through the use of an interrogatory to the Defendant, it imposes the undue burden of searching for and producing records that might bear on the inquiry to Drips, a nonparty. As such, this is a clear misuse of the subpoena process, and is *per se* unduly burdensome and disproportionate to the needs of the case.

Additionally, Drips objects to this request in that it exceeds the scope of discovery that the Court has permitted even from Defendant as a named party in this matter. It is Drips' understanding that the Court limited Plaintiff's broad requests to Defendant to the subject matter of this lawsuit which is consent. *See* ECF No. 112. Plaintiff's request that Drips create a list of all lawsuits in which it has been alleged that Drips sent text messages using an ATDS has no bearing on consumers' consent in this case.

This request is also overbroad; is not tailored to the needs of the case, any party's claim or defense, or the current phase of discovery; and is premature, in that it seeks information not tied Plaintiff's individual ATDS claims. Given that in the current phase of discovery, the only discovery permitted is that relating to Plaintiff's individual ATDS claim, it would be disproportionate to the needs of the case at this time to require Drips to produce information relating to anything other than the texts to Plaintiff.

Finally, Drips objects to this request to the extent it seeks records covered by the work-product doctrine or attorney-client privilege. Any demand designed to elicit a production of such records—or a log of each such correspondence—would run afoul of ethical rules and be

- 38 -

impermissible, unlawful, and beyond the permissible scope of discovery under the Federal Rules of Civil Procedure.

Therefore, this request, as phrased, seeks the production of an impermissible set of discovery.

**Request No. 15.** Produce all documents referring to Adam Brown.

**Response:**

Once again, this demand category imposes a burden on non-party Drips far in excess of what is reasonable given the needs of this case and the fact that the information can be obtained from alternate sources and using alternate means. Plaintiff's counsel has failed to account for the need to protect Drips from undue burden in serving this demand. Plaintiff thoughtlessly demands that Drips search all of its records, no matter how stored or in what form, to find any scrap of paper or ESI mentioning an individual named Adam Brown. The burden associated with such an all-encompassing search would be incredibly high, requiring an interview with virtually every Drips employee to determine who might house responsive records followed by an exhaustive review of every physical or electronic record in Drips' possession. Such a search might take hundreds or thousands of hours.

Moreover the demand plainly does not set forth a reasonably particularized category of documents to be produced and the shapeless demand just seeks every record that mentions a man's name. This is not a "category" of documents in any meaningful sense—it is a request that Drips search *every* category of documents in its possession for *any* record that might include one piece of information, without any provision as to how that information might be useful in the form or context being searched. Stated plainly—this is another shotgun style demand that should never be

directed to a non-party to litigation. If Plaintiff has any specific set of documents he would like Drips to review or consider he must specify that set with reasonable particularity.

Further it is unclear how every record mentioning a common man's name might have any conceivable relevance to this case. The demand is overly burdensome to the extent it seeks information outside the scope of the case—i.e., mentions of a different Adam Brown then whoever it is that Plaintiff wants to know about or mentions of Adam Brown in contexts unrelated to whatever context is pertinent in this case. The shapeless demand simply provides no limits or context by which potentially pertinent records (if there are any) might be identified from those which are simply unrelated to the subject matter of the case.

Moreover, to the extent this demand seeks records referring to Adam Brown that do not relate to communications involving QuoteWizard and instead relate to other accounts or clients, this demand is plainly overly broad and seeks information outside of the scope of discovery and in a manner that is unduly burdensome and disproportionate to the needs of the case. Drips further objects to this request to the extent it would encompass confidential information concerning other consumers, including for example any consumers named Adam Brown, regardless of whether they have any relevance in this case.

Drips objects to this request as Defendant or a more appropriate third party would be in possession of all material records referring to Adam Brown, and Drips—as a non-party which has never sold any leads to QuoteWizard—should not be made to bear the burden of production rather than Defendant.

This request is also overbroad; is not tailored to the needs of the case, any party's claim or defense, or the current phase of discovery; and is premature, in that it seeks information not tied Plaintiff's individual ATDS claim. Given that in the current phase of discovery, the only discovery

permitted is that relating to Plaintiff's individual ATDS claim, it would be disproportionate to the needs of the case at this time to require Drips to produce information relating to anything other than the texts to Plaintiff.

Drips also objects to this request in that it exceeds the scope of discovery that the Court has permitted even from Defendant as a named party in this matter. It is Drips' understanding that the Court limited Plaintiff's broad requests to Defendant to the subject matter of this lawsuit which is consent. *See* ECF No. 112. Plaintiff's request that Drips produce all documents referring to "Adam Brown" goes well beyond any consent issue, and Drips as a non-party should not bear a greater burden than a named party.

Additionally, this request for "all documents," interpreted broadly, would encompass work-product and records between Drips and its in-house counsel relating to Adam Brown, to the extent there are any. Any demand designed to elicit a production of such records—or a log of each such correspondence—would run afoul of ethical rules and be impermissible, unlawful, and beyond the permissible scope of discovery under the Federal Rules of Civil Procedure.

Therefore, this request, as phrased, seeks the production of an impermissible set of discovery.

**Request No. 16.**  Produce all documents referring to Justin Cohen or BlueFlame Marketing.

      **Response:**

Once again, this demand category imposes a burden on non-party Drips far in excess of what is reasonable given the needs of this case and the fact that the information can be obtained from alternate sources and using alternate means. Plaintiff's counsel has failed to account for the need to protect Drips from undue burden in serving this demand. Plaintiff thoughtlessly demands that Drips search all of its records, no matter how stored or in what form, to find any scrap of paper

or ESI mentioning the individual or entity specified in the demand. The burden associated with such an all-encompassing search would be incredibly high, requiring an interview with virtually every Drips employee to determine who might house responsive records followed by an exhaustive review of every physical or electronic record in Drips' possession. Such a search might take hundreds or thousands of hours.

Moreover the demand plainly does not set forth a reasonably particularized category of documents to be produced and the shapeless demand just seeks every record that mentions the individual or entity specified in the demand. This is not a "category" of documents in any meaningful sense—it is a request that Drips search *every* category of documents in its possession for *any* record that might include one piece of information, without any provision as to how that information might be useful in the form or context being searched. Stated plainly—this is another shotgun style demand that should never be directed to a non-party to litigation. If Plaintiff has any specific set of documents he would like Drips to review or consider he must specify that set with reasonable particularity.

Further it is unclear how every record mentioning a common man's name might have any conceivable relevance to this case. The demand is overly burdensome to the extent it seeks information outside the scope of the case—i.e. mentions of a different Justin Cohen than whoever it is that Plaintiff wants to know about or mentions of Justin Cohen in contexts unrelated to whatever context is pertinent in this case. The shapeless demand simply provides no limits or context by which potentially pertinent records (if there are any) might be identified from those which are simply unrelated to the subject matter of the case.

This demand further does not set forth a reasonably particularized category of documents because it fails to provide any limiting information that would enable Drips to identify the "Justin

Cohen" or "BlueFlame Marketing" to which Plaintiff refers. For example, given that "Justin Cohen" is a common name, Drips likely would have to sift through records in detail to segregate mishits from documents referring to the unidentified Justin Cohen here, and given the lack of identifying information, it is unclear how Drips is expected to do so. There is no reason Drips, as a third party, should have to bear such an unreasonable burden and expense.

Moreover, to the extent this demand seeks records referring to Justin Cohen or BlueFlame Marketing that do not relate to communications involving QuoteWizard and instead relate to other accounts or clients, this demand is plainly overly broad and seeks information outside of the scope of discovery and in a manner that is unduly burdensome and disproportionate to the needs of the case. Drips further objects to this request to the extent it would encompass confidential information concerning other consumers or campaigns regardless of whether they have any relevance in this case.

Drips objects to this request as Plaintiff could likely more readily obtain records relating to Justin Cohen or BlueFlame Marketing from a party (Defendant) or from a more appropriate nonparty. Drips—as a non-party which has never sold any leads to QuoteWizard—should not be made to bear the burden of production rather than Defendant.

This request is also overbroad; is not tailored to the needs of the case, any party's claim or defense, or the current phase of discovery; and is premature, in that it seeks information not tied Plaintiff's individual ATDS claims. Given that in the current phase of discovery, the only discovery permitted is that relating to Plaintiff's individual ATDS claim, it would be disproportionate to the needs of the case at this time to require Drips to produce information relating to anything other than the texts to Plaintiff.

Additionally, Drips objects to this request in that it exceeds the scope of discovery that the Court has permitted even from Defendant as a named party in this matter. It is Drips' understanding that the Court limited Plaintiff's broad requests to Defendant to the subject matter of this lawsuit which is consent. *See* ECF No. 112. Plaintiff's request that Drips produce all emails referring to Justin Cohen or BlueFlame Media clearly goes well beyond any consent issue, and Drips as a non-party should not bear a greater burden than a named party.

Moreover, this request for "all documents," interpreted broadly, seeks Drips' work product as well as records between Drips and its in-house counsel relating to Justin Cohen or BlueFlame Marketing, to the extent there are any. Any demand designed to elicit a production of such records—or a log of each such correspondence—would run afoul of ethical rules and be impermissible, unlawful, and beyond the permissible scope of discovery under the Federal Rules of Civil Procedure.

Therefore, this request, as phrased, seeks the production of an impermissible set of discovery.

**Request No. 17.**  Produce all e-mails between Matthew Weeks and anyone at RevPoint Media relating in any way to this litigation.

**Response:**

In this Request, Plaintiff seeks communications between a QuoteWizard employee Matthew Weeks) and "anyone at RevPoint Media." Given that this request seeks emails involving a QuoteWizard employee, Plaintiff *clearly* could more readily obtain these documents from Defendant, or even from a more appropriate nonparty, such as the nonparty involved in the communications at issue. Indeed, it is Drips' understanding that QuoteWizard has already produced emails between Matthew Weeks and "anyone at RevPoint Media relating in any way to telemarketing complaints or TCPA compliance." Drips—as a non-party which has never sold any

leads to QuoteWizard—should not be made to bear the burden of production of producing records of a named party's employee.

Once again, this demand category imposes a burden on non-party Drips far in excess of what is reasonable given the needs of this case and the fact that the information can be obtained from alternate sources and using alternate means. Plaintiff's counsel has failed to account for the need to protect Drips from undue burden in serving this demand. Plaintiff thoughtlessly demands that Drips search all of its employee records to find any emails between Matthew Weeks (again, a QuoteWizard employee) and anyone at RevPoint Media, and then assess whether they relate "in any way to this litigation." The burden associated with this search would be high, requiring an interview with virtually every Drips employee to determine who might house responsive records followed by a review of all emails in Drips' possession, which might add up to hundreds of hours. There is no reason to submit a non-party to this unnecessary burden, particularly given that Plaintiff could (and seemingly already has) received the requested communications from QuoteWizard.

The improper breadth of the demand is particularly apparent since the demand seeks records regarding "anyone" at RevPoint Media, no matter what the context.

Moreover, to the extent this demand seeks records referring to Matthew Weeks and anyone else at RevPoint Media that do not relate to communications involving QuoteWizard and instead relate to other accounts or clients, this demand is plainly overly broad and seeks information outside of the scope of discovery and in a manner that is unduly burdensome and disproportionate to the needs of the case. Drips further objects to this request to the extent it would encompass confidential information concerning other consumers or campaigns regardless of whether they have any relevance in this case.

This request is also overbroad; is not tailored to the needs of the case, any party's claim or defense, or the current phase of discovery; and is premature, in that it seeks information not tied to Plaintiff's individual ATDS claims. Given that in the current phase of discovery, the only discovery permitted is that relating to Plaintiff's individual ATDS claim, it would be disproportionate to the needs of the case at this time to require Drips to produce information relating to anything other than the texts to Plaintiff.

Finally, to the extent any such records exist, they would qualify as work-product and be protected by the attorney-client privilege. Any demand designed to elicit a production of such records—or a log of each such correspondence—would run afoul of ethical rules and be impermissible, unlawful, and beyond the permissible scope of discovery under the Federal Rules of Civil Procedure.

Therefore, this request, as phrased, seeks the production of an impermissible set of discovery.

**Request No. 18.** Produce all e-mails between Matthew Weeks and anyone at RevPoint Media relating in any way to telemarketing complaints or TCPA compliance.

    **Response:**

In this Request, Plaintiff seeks communications between a QuoteWizard employee Matthew Weeks) and "anyone at RevPoint Media." Given that this request seeks emails involving a QuoteWizard employee, Plaintiff *clearly* could more readily obtain these documents from Defendant, or even from a more appropriate nonparty, such as the nonparty involved in the communications at issue. Indeed, it is Drips' understanding that QuoteWizard has already produced emails between Matthew Weeks and "anyone at RevPoint Media relating in any way to telemarketing complaints or TCPA compliance." Drips—as a non-party which has never sold any

- 46 -

leads to QuoteWizard—should not be made to bear the burden of production of producing records of a named party's employee.

Once again, this demand category imposes a burden on non-party Drips far in excess of what is reasonable given the needs of this case and the fact that the information can be obtained from alternate sources and using alternate means. Plaintiff's counsel has failed to account for the need to protect Drips from undue burden in serving this demand. Plaintiff thoughtlessly demands that Drips search all of its employee records to find any emails between Matthew Weeks (again, a QuoteWizard employee) and anyone at RevPoint Media, and then assess whether they relate "in any way to this litigation." The burden associated with this search would be high, requiring an interview with virtually every Drips employee to determine who might house responsive records followed by a review of all emails in Drips' possession, which might add up to hundreds of hours. There is no reason to submit a non-party to this unnecessary burden, particularly given that Plaintiff could (and seemingly already has) received the requested communications from QuoteWizard.

The improper breadth of the demand is particularly apparent since the demand seeks records regarding "anyone" at RevPoint Media, no matter what the context.

Moreover, to the extent this demand seeks records referring to Matthew Weeks and anyone else at RevPoint Media that do not relate to communications involving QuoteWizard and instead relate to other accounts or clients, this demand is plainly overly broad and seeks information outside of the scope of discovery and in a manner that is unduly burdensome and disproportionate to the needs of the case. Drips further objects to this request to the extent it would encompass confidential information concerning other consumers or campaigns regardless of whether they have any relevance in this case.

This request is also overbroad; is not tailored to the needs of the case, any party's claim or defense, or the current phase of discovery; and is premature, in that it seeks information not tied Plaintiff's individual ATDS claims. Given that in the current phase of discovery, the only discovery permitted is that relating to Plaintiff's individual ATDS claim, it would be disproportionate to the needs of the case at this time to require Drips to produce information relating to anything other than the texts to Plaintiff.

Finally, to the extent any such records exist, they would qualify as work-product and be protected by the attorney-client privilege. Any demand designed to elicit a production of such records—or a log of each such correspondence—would run afoul of ethical rules and be impermissible, unlawful, and beyond the permissible scope of discovery under the Federal Rules of Civil Procedure.

Therefore, this request, as phrased, seeks the production of an impermissible set of discovery. The request makes no effort to limit the documents it seeks to those involving this litigation, and instead broadly seeks all communications involving two individuals "relating in any way" to undefined "telemarketing complaints" or "TCPA compliance." Drips further objects because this request goes even further than Request No. 17 and seeks—in addition to emails between Matthew Weeks and anyone at RevPoint Media relating to this litigation—all emails "relating in any way to telemarketing complaints or TCPA compliance." What qualifies as a "telemarketing complaint" or "TCPA compliance" here, and whose telemarketing complaints or TCPA compliance does this request refer to?

No matter how interpreted, this request is overbroad, vague, ambiguous, and not tailored to the needs of this case due to the failure to define "telemarketing complaints" or "TCPA compliance." Even if it refers somewhat narrowly, for example, to RevPoint Media's

- 48 -

"telemarketing complaints" or "TCPA compliance," it remains unclear what qualifies as a "telemarketing complaint" or "TCPA compliance" and why Plaintiff could not more readily obtain this information directly from RevPoint Media (or Defendant as a party in this matter whom Drips understands purchased the lead from RevPoint).

And once again, this demand category imposes a burden on non-party Drips far in excess of what is reasonable given the needs of this case and the fact that the information can be obtained from alternate sources and using alternate means. Plaintiff's counsel has failed to account for the need to protect Drips from undue burden in serving this demand. Plaintiff thoughtlessly demands that Drips search all of its employee records to find any emails between Matthew Weeks (again, a QuoteWizard employee) and anyone at RevPoint Media, and then assess whether they relate "in any way" to undefined "telemarketing complaints" or "TCPA compliance." The burden associated with this search would be high, requiring an interview with virtually every Drips employee to determine who might house responsive records followed by a review of all emails in Drips' possession, which might add up to hundreds of hours. There is no reason to submit a non-party to this unnecessary burden, particularly given that Plaintiff could (and seemingly already has) received the requested communications from QuoteWizard. Indeed, it is Drips' understanding that QuoteWizard has already produced emails between Matthew Weeks (a QuoteWizard employee) and "anyone at RevPoint Media relating in any way to telemarketing complaints or TCPA compliance." Drips—as a non-party which has never sold any leads to QuoteWizard—should not be made to bear the burden of production rather than Defendant.

This request also is overbroad; is not tailored to the needs of the case, any party's claim or defense, or the current phase of discovery; and is premature, in that it seeks information not tied Plaintiff's individual ATDS claims. Given that in the current phase of discovery, the only

discovery permitted is that relating to Plaintiff's individual ATDS claim, it would be disproportionate to the needs of the case at this time to require Drips to produce information relating to anything other than the texts to Plaintiff.

Moreover, to the extent this demand seeks records referring to Matthew Weeks and anyone else at RevPoint Media that do not relate to communications involving QuoteWizard and instead relate to other accounts or clients, this demand is plainly overly broad and seeks information outside of the scope of discovery and in a manner that is unduly burdensome and disproportionate to the needs of the case. Drips further objects to this request to the extent it would encompass confidential information concerning other consumers or campaigns regardless of whether they have any relevance in this case.

Finally, to the extent any such records exist, they would qualify as work-product and be protected by the attorney-client privilege. Any demand designed to elicit a production of such records—or a log of each such correspondence—would run afoul of ethical rules and be impermissible, unlawful, and beyond the permissible scope of discovery under the Federal Rules of Civil Procedure.

Therefore, this request, as phrased, seeks the production of an impermissible set of discovery.

**Request No. 19.**   Produce all internal e-mails referring to Plaintiff.

**Response:**

As written, this request seeks "all internal e-mails" relating to Plaintiff which, interpreted broadly, would encompass all work product and every record of communication between Drips and its in-house counsel related to this litigation. Obviously any demand designed to elicit a production of such records—or a log of each such correspondence—would run afoul of ethical

rules and be impermissible, unlawful, and beyond the permissible scope of discovery under the Federal Rules of Civil Procedure. As such Drips interprets the demand narrowly to call for internal emails reflecting business records "referring to" Plaintiff.

Even interpreted to seek only business records, however, the category is problematic in that it is unclear what it means to "refer" to Plaintiff, and Plaintiff has not supplied any identifying information to assist Drips in locating records. For instance, it is unclear whether Plaintiff expects Drips to identify all phone numbers Plaintiff might own, or otherwise identify records using his full name or social security number. Moreover, to the extent this demand seeks records regarding messages Drips may have sent to Plaintiff on behalf of its other clients, this demand is plainly overly broad and seeks information outside of the scope of discovery and in a manner that is unduly burdensome and disproportionate to the needs of the case.

Subject to and without waiving these objections, although not emails, Drips asserts it has already produced records pertaining to the two texts at issue in Plaintiff's First Amended Complaint in response to the first subpoena, and subject and without waiving its objections, will produce records of the remaining texts to Plaintiff.

Date: November 11, 2020

*/s/Eric J. Troutman*
Eric J. Troutman
Squire Patton Boggs (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, CA 90071
Telephone: (213) 689-6510
Facsimile: (213) 623-4581
Email: eric.troutman@squirepb.com

*Counsel for Non-Party Drips Holdings, LLC*

## CERTIFICATE OF SERVICE

I certify that on November 11, 2020, the foregoing was served via email to the following:

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, MA 01760
mmccue@massattorneys.net

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
anthony@paronichlaw.com

Alex M. Washkowitz
Jeremy Cohen
CW Law Group, P.C.
188 Oaks Road
Framingham, MA 01701
alex@cwlawgrouppc.com

Edward A. Broderick
Broderick Law, P.C.
99 High St., Suite 304
Boston, MA 02110
Telephone: (617) 738-7080
ted@broderick-law.com

*Counsel for Plaintiff Joseph Mantha*

Kevin P. Polansky
Christine M. Kingston
Nelson Mullins Riley & Scarborough LLP
One Post Office Square, 30th Floor
Boston, MA 02109
kevin.polansky@nelsonmullins.com
christine.kingston@nelsonmullins.com

*Counsel for Defendant QuoteWizard.com, LLC*

*/s/Eric J. Troutman*
Eric J. Troutman

E<span>XHIBIT</span> 4

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Massachusetts

| | | |
|---|---|---|
| MANTHA | ) | |
| _Plaintiff_ | ) | |
| v. | ) | Civil Action No. 1:19-cv-12235 |
| | ) | |
| QUOTEWIZARD.COM, LLC | ) | |
| _Defendant_ | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                DRIPS Holdings, LLC

_____
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
See attached Schedule A.

| Place: Magna Legal Services via remote means | Date and Time: |
|---|---|
| | 11/11/2020 5:00 pm |

The deposition will be recorded by this method:     Videographer and/or Stenographer

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:
          Any responsive materials to the previoulsy issued document subpoenas.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     11/05/2020

                    *CLERK OF COURT*
                                                          OR
                                                                    /s/ Anthony I. Paronich
_____          _____
     _Signature of Clerk or Deputy Clerk_                      _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Plaintiff
_____, who issues or requests this subpoena, are:

Paronich Law, P.C., 350 Lincoln Street, Suite 2400, Hingham, MA 02043, anthony@paronichlaw.com, (617) 485-0018

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## DEFINITIONS

1.      When used in these Requests, "Defendant" means Quotewizard.com, LLC, including any subsidiaries or affiliated enterprises, and its officers, directors and employees.

2.      When used in these Requests, "Plaintiff" means Joseph Mantha.

3.      When used in these Requests, "you" or "your" (or synonyms thereof) means DRIPS Holdings, LLC, including any subsidiaries or affiliated enterprises, and its officers, directors and employees.

4.      Unless otherwise identified in these requests, the topics intend to cover the four years prior to the filing of this lawsuit.

Produce individuals that will testify regarding the following topics:

## TOPICS

**Request No. 1:** The dialing system used by you as part of your relationship with the Defendant.

**Request No. 2:** Any contention that the Plaintiff consented to receive telemarketing texts or calls from Quotewizard.

**Request No. 3:** Complaints submitted by consumers or state or federal law enforcement agencies in regards to QuoteWizard's telemarketing practices.

**Request No. 4:** Your implementation of QuoteWizard's telemarketing policies.

**Request No. 5:** The do not call requests of consumers as part of your relationship with the Defendant.

**Request No. 6:** Any investigation and response to complaints submitted by consumers, or any government agency, regarding QuoteWizard's telemarketing calls or practices.

336354

**Request No. 7:** Your dialing system's use of "chatbots", "humanized engagements," "human approved auto responders," and/or "zero client side operators."

**Request No. 8:** Marketing materials relating to the dialing technology used to send the texts at issue to Plaintiff.

**Request No. 9:** Your relationship with the Defendant, including all contracts.

**Request No. 10:** Any lawsuits in which it is alleged that You sent texts to consumers using an automatic telephone dialing system.

**Request No. 11:** Your communications or relationship with Adam Brown, Justin Cohen or BlueFlame Marketing.

**Request No. 12:** Your communications or relationship with RevPoint Media relating to the Defendant.

**Request No. 13:** This litigation and the Plaintiff.

E<span>XHIBIT</span> 5

**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JOSEPH MANTHA, *on behalf of himself and all others similarly situated,* <br><br> Plaintiff, <br><br> v. <br><br> QUOTEWIZARD.COM, LLC, <br><br> Defendant. | ) <br> ) <br> ) <br> )   Civ. No. 1:19-cv-12235-LTS <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**NON-PARTY DRIPS HOLDING, LLC'S**
**OBJECTIONS TO SUBPOENA TO TESTIFY AT A DEPOSITION**

Non-Party Drips Holdings, LLC ("Drips") responds to Plaintiff Joseph Mantha's Subpoena to Testify at a Deposition in a Civil Action dated November 11, 2020, and corresponding Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) dated December 14, 2020 (collectively, the "Subpoena"), as follows:

**GENERAL OBJECTIONS**

Drips makes the following General Objections to the Subpoena, all of which are incorporated into each of the Specific Objections and Responses to Topics for Examination below by reference, whether or not specifically stated therein.

No waiver of any General Objection is made notwithstanding anything set forth in any Response to any Topic for Examination, and notwithstanding any substantive response given by any representative of Drips any question at the Deposition.

1. On November 19, 2020, Plaintiff's counsel agreed to limit the scope of examination and Topics to high-level process-style questions as well as questions about the formal contract between Drips and Defendant QuoteWizard. Drips agreed not to quash the Subpoena based on,

- 1 -

and subject to, this agreed limited scope of testimony, and Drips expressly reserves all rights to move to quash the Subpoena, to move for a protective order, or to make any other motion with regard to the Subpoena.

2.     Although the Subpoena failed to advise Drips of the duty to confer with Plaintiff in good faith about the matters for examination as required by Fed. R. Civ. P. 30(b)(6), the parties conferred in good faith about the matters for examination and reached good-faith agreements limiting the scope of intended Topics on November 19, 2020, December 14, 2020, and December 16, 2020.

3.     Drips objects to the Subpoena and the Topics in their entirety as they are overbroad, vague, and ambiguous, and unduly burdensome, and they do not delineate a reasonably particularized category of testimony. Among other things, the Subpoena is vague, ambiguous, overly broad, and unduly burdensome because it is not limited to a specific time period, it uses undefined terms, and it does not specify or describe any specific instances or items about which it seeks testimony. The overbreadth and ambiguity of these Topics makes it impossible for Drips to adequately prepare a witness to respond. Thus, pursuant representations Plaintiff's counsel made on November 19, 2020 that it would limit the scope of testimony and Topics to high-level process-style questions as well as questions about the formal contract between Drips and Defendant QuoteWizard, as well as Plaintiff's counsel's further representations on December 14 and December 16, 2020 further limiting the scope of its testimony to general questions, Drips is designating and preparing a witness to testify on this agreed limited scope, and not the Subpoena's as-written Topics, none of which delineate a particularized category of testimony.

4.     Drips objects to the Subpoena to the extent that it seeks information or testimony beyond the scope of discovery the Court the Court has permitted in the current phase or beyond

the scope of discovery the Court has permitted from Defendant QuoteWizard. *See, e.g.*, Orders [ECF Nos. 104, 112].

5.       Drips objects to the Subpoena for failing to take reasonable efforts to reduce the burden and expense on nonparty Drips. *See* Fed. R. Civ. P. 45(d)(1). Without limiting the foregoing, Drips objects to the Subpoena to the extent it seeks broad testimony on Topics outside of the knowledge of Drips, because certain testimony sought can be more easily obtained from a party to the litigation, because the information sought exceeds the current scope of permissible discovery pursuant to prior Court orders, and because it fails to delineate reasonable categories of testimony.

6.       Drips objects to the Subpoena to the extent that the information sought is beyond that which is relevant or reasonably calculated to lead to the discovery of admissible evidence and is disproportionate to the needs of the case at this time. In particular, without limiting the foregoing, the Subpoena is overbroad, not tailored to the current phase of discovery, and premature, in that it seeks testimony that does not appear to be tied to Plaintiff's individual ATDS claims.

7.        Drips objects to the Subpoena to the extent it seeks testimony and information not in the possession, custody, or control of Drips, or not available to Drips' management personnel through customary and reasonable internal business procedures.

8.       Drips objects to the Subpoena to the extent it attempts to impose obligations beyond those required by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Massachusetts, or any other applicable Orders of the Court.

9.       Drips objects to the Subpoena to the extent it seeks information that is protected from disclosure by the attorney-client privilege, work product doctrine, or any other applicable privilege or protection.

10.     Drips objects to the Subpoena to the extent that it seeks the disclosure and/or production of confidential, financial, or business information without the protection of a stipulation, confidentiality agreement, or protective order adequate to preserve the confidentiality of such information. Respondent further objects to the Subpoena Requests to the extent that they seek the disclosure of information that is commercially sensitive, constitutes trade secrets, or calls for the production or disclosure of proprietary or confidential information that would not be appropriate until the parties enter, or the Court orders, a suitable confidentiality agreement or protective order, and/or other appropriate measures are taken to comply with the applicable privacy laws.

11.     Drips objects use of vague and ambiguous terms and phrases in the Subpoena, including but not limited to, "dialing system," "relationship," "consent," "telemarketing texts," "complaints," "telemarketing practices," "telemarketing policies," "investigation," "response," "telemarketing calls or practices," "marketing materials," "contracts," and "automatic telephone dialing system,  "Adam Brown," "Justin Cohen," "BlueFlame Marketing," and "RevPoint Media," without providing clarifying definitions or additional information to reasonably limit the scope of the Subpoena, reduce the burden and expense on nonparty Drips, or enable Drips to adequately prepare a witness to respond.

12.     The Court lacks subject matter jurisdiction over this matter, and the Subpoena is therefore invalid and unenforceable, because the TCPA was constitutional when the texts at issue were sent. *See, e.g.*, *H*ussain v. Synergy, Case No. 5:20-cv-00038-JSM-PRL, Doc. 74 (M.D. Fl. Dec. 11, 2020) ("[F]ederal courts lack subject matter jurisdiction over alleged violations from the enactment of the 2015 amendment to the July 6, 2020 decision in *AAPC*."); *accord Lindenbaum*

*v. Realgy*, No. 1:19 CV 2862, 2020 U.S. Dist. LEXIS 201572 (N.D. Ohio Oct. 29, 2020); *Creasy*

*v. Charter Communs., Inc.*, No. 20-1199, 2020 U.S. Dist. LEXIS 177798 (E.D. La. Sep. 28, 2020).

13. Drips objects to the Subpoena to the extent it seeks seek legal conclusions or legal

analyses.

14. These responses are made solely for purposes of the above-referenced litigation.

Each response is subject to all objections as to competency, relevancy, materiality, admissibility,

and any and all other objections that would require the exclusion of any statement contained herein

if such statement were made by a witness present and testifying in court. All such objections and

grounds are reserved and may be interposed at the time of trial.

15. Drips reserves the right to amend and supplement these objections. These general

objections are in addition to the objections to individual requests set forth below.

**SPECIFIC OBJECTIONS TO REQUESTS**

In addition to its General Objections, which Drips incorporates into each of the responses

below, Drips makes the following specific objections to the Subpoena Topics

**Request No. 1.** The dialing system used by you as part of your relationship with the Defendant.

As a preliminary matter, Drips objects to this Topic as it assumes that an undefined "dialing

system" was used as part of Drips' undefined "relationship" with Defendant, and does not explain

what it means for a dialing system to be used by Drips "as part of part of [its] relationship with the

defendant." Plaintiff's failure to define these terms and to specify what it means for a dialing

system to be "used by you as part of your relationship with the defendant" render this Topic vague

and ambiguous, leaving Drips to speculate as to Plaintiff's intended meaning.

Furthermore, Drips objects to this Topic as it is not a reasonably particularized category of

testimony. In addition to the above defects, the Topic does not specify what it seeks to learn about

the "dialing system." Plaintiff's failure to reasonably limit the scope of this Topic makes it impossible for Drips to adequately prepare a witness to respond, as it would be impossible to prepare a witness to know absolutely everything about a "dialing system" without any guidance or specificity as to what the Topic seeks.

Drips also objects to this Topic as it is overbroad and not appropriately tailored to whether an ATDS was used to contact Plaintiff, and because it seeks information covered by the work product doctrine and attorney-client privilege. Drips further objects to this Topic to the extent it seeks confidential, proprietary, and trade secret information, such as any highly confidential technical renderings, schematics, or descriptions of the Drips platform and its functionalities, which may jeopardize Drips' competitive advantage an must be protected from disclosure.

Subject to and without waiving these objections, and subject to and consistent with Plaintiff's counsel's representations regarding the limited scope of examination and Topics notwithstanding the broad Topics as-written, Drips will produce a Deponent (Tom Martindale) to testify concerning the system used to contact Plaintiff.

**Request No. 2.**   Any contention that the Plaintiff consented to receive telemarketing texts or calls from QuoteWizard.

Drips objects to this Topic as it is not a reasonably particularized category of testimony. Drips is a non-party in this litigation. It does not make any "contentions." The Topic is vague, ambiguous, and does not set forth a reasonably particularized category of testimony because it does not, for example, specify whether it seeks testimony regarding a certain record of consent, or whether it is asking Drips to review its records to assess whether consent was provided. Drips further objects to this request in that it seeks information concerning matters beyond those known or reasonably available to Drips, because it seeks information not within Drips' possession, custody, or control which can more readily be obtained from a party to the litigation or from a

more appropriate nonparty. Drips also objects to this Topic as it seeks information covered by the work product doctrine and attorney-client privilege.

Subject to and without waiving these objections, and subject to and consistent with Plaintiff's counsel's representations regarding the limited scope of examination and Topics notwithstanding the broad Topics as-written, Drips will produce a Deponent (Tom Martindale) to testify regarding whether Drips has any knowledge or records regarding Plaintiff's consent.

**Request No. 3.**      Complaints submitted by consumers or state or federal law enforcement agencies in regards to QuoteWizard's telemarketing practices.

Drips objects to this Topic as it is not a reasonably particularized category of testimony. This Topic is facially overbroad and improper, as it seeks information from Drips, a non-party, regarding information that does not relate to the subject matter of this lawsuit. The Topic seeks information that does not relate to Plaintiff or the text messages at issue, and it is thus not tailored to the needs of the case, any party's claim or defense, or the current phase of discovery, and is premature, in that it seeks information not tied Plaintiff's individual ATDS claims. This Topic exceeds even the scope of discovery that the Court has permitted against Defendants in this matter, which is limited to complaints related to consent only. *See* Orders [ECF Nos. 104, 112]. Drips also objects to this Topic as it seeks information covered by the work product doctrine and attorney-client privilege.

The Topic also not reasonably particularized, overly broad, vague, and ambiguous, as it does not define "complaints," does not narrow "consumers" to Plaintiff, does not narrow any state or federal law enforcement agency complaints to those involving Plaintiff, does not specify the "state or federal law enforcement agencies" to which it refers, and does not provide any guidance regarding what would qualify as QuoteWizard's "telemarketing practices." The breadth and ambiguity of this Topic render it impossible for Drips to adequately prepare a witness to respond,

as Drips would presumably have to gather and review, at great expense, all communications that in any way mention QuoteWizard, assess whether the communication qualifies as internal, whether it relates to what would qualify as an undefined "complaint" from a consumer, whether that complaint was submitted to any state or federal law enforcement agencies, and whether the complaint related to QuoteWizard's telemarketing practices, and the deponent would then have to study and memorize this information.

Furthermore, this Topic seeks information regarding complaints against QuoteWizard, and this information is more readily available from QuoteWizard itself, a party to this litigation, not Drips as a non-party. There is simply no reason to burden Drips, a third party to this litigation, with such an enormous expense, particularly given that information regarding complaints can be obtained through discovery from a party to the litigation.

Subject to and without waiving these objections, and subject to and consistent with Plaintiff's counsel's representations regarding the limited scope of examination and Topics notwithstanding the broad Topics as-written, Drips will produce a Deponent (Tom Martindale) to testify as to whether Drips has received any formal complaints regarding QuoteWizard relating to Plaintiff's consent.

**Request No. 4.**    Your implementation of QuoteWizard's telemarketing policies.

Drips objects to this Topic as it is not a reasonably particularized category of testimony. This Topic is facially overbroad and improper, as it seeks information from Drips, a non-party, regarding information that does not relate to the subject matter of this lawsuit. The Topic seeks information that does not relate to Plaintiff or the text messages at issue, and it is thus not tailored to the needs of the case, any party's claim or defense, or the current phase of discovery, and is premature, in that it seeks information not tied Plaintiff's individual ATDS claims.

- 8 -

More fundamentally, this Topic seeks information from Drips, a non-party, regarding "implementation of QuoteWizard's telemarketing policies." This information is obviously more readily obtainable from QuoteWizard as a party to the litigation. To the extent this Topic seeks information regarding instructions QuoteWizard gave to Drips, no such documents have been specified for Drips' examination, and this information is, again, more readily available from QuoteWizard. Given that the Topic does not provide any guidance regarding what would qualify as QuoteWizard's "telemarketing practices," or any communications it seeks to ask about, adequately preparing a witness to respond to this Topic would be impossible. Specifically, responding would require Drips to gather and review, at great expense, all communications that in any way mention QuoteWizard and assess whether it relates to the "implementation" of QuoteWizard's undefined "telemarketing policies." And the Deponent would then have to memorize this information. There is simply no reason to burden Drips, a third party to this litigation, with such an enormous expense, particularly given that information regarding consumer complaints can be obtained through discovery from a party to the litigation.

Subject to and without waiving these objections, and subject to and consistent with Plaintiff's counsel's representations regarding the limited scope of examination and Topics notwithstanding the broad Topics as-written, Drips will produce a Deponent (Tom Martindale) to testify regarding the high-level processes and the October 5, 2016 contract.

**Request No. 5.**     The do not call requests of consumers as part of your relationship with the Defendant.

Drips objects to this Topic as it is not a reasonably particularized category of testimony. This Topic is facially overbroad and improper, as it seeks information from Drips, a non-party, regarding information that does not relate to the subject matter of this lawsuit. The Topic seeks information that does not relate to Plaintiff or the text messages at issue, and it is thus not tailored

to the needs of the case, any party's claim or defense, or the current phase of discovery, and is premature, in that it seeks information not tied Plaintiff's individual ATDS claims.

Drips further objects because this Topic imposes a burden on non-party Drips far in excess of what is reasonable given the needs of this case and the fact that the information can be obtained—and indeed has been obtained—from alternate sources and using alternate means. *See* QuoteWizard's Nov. 11, 2020 Objections to Plaintiff's Second Document Subpoena to Drips ("QuoteWizard has produced its Do Not Call lists as provided by Drips."). Drips understands that Plaintiff already has the do not call requests, and to the extent it seeks additional information about them, it may seek that information from a party to the litigation, not Drips, and raise that issue with the Court, as it is Drips' understanding that the Court has allowed nothing more relating to the Do Not Call requests beyond the lists already produced. *See id.*; *see also* Order [ECF No. 112].

Plaintiff, however, has not specified or provided Drips with any records about which it intends to seek testimony, and has provided no limiting information or otherwise made any attempt to make this a reasonably particularized category of testimony. For example, the Topic does not provide any time limitation on the do not call requests about which it seeks information, does not limit the do not call requests to those received to any particular campaign (e.g., any campaign involving Plaintiff or the text messages at issue) campaign at issue, and does not limit the do not call requests to those received by class members. Gathering all do not call requests involving QuoteWizard in and of itself would be an unduly burdensome task, requiring Drips to gather the data that has been archived in various locations. To prepare a witness to testify regarding these records, the witness would essentially have to memorize the details of these requests. Furthermore, because the Topic does not limit itself to the do not call requests themselves and does not specify what Plaintiff actually seeks to know about do not call requests, a deponent would have to, after

identifying all DNCs regarding Defendant (a burdensome task in and of itself) and memorizing the information, search every record depository in its possession for any other information that arguably relates to each DNC and memorize that information as well. Given the lack of specificity, breadth, and impossible burden this Topic would impose as written, Drips cannot reasonably prepare a deponent to testify to this Topic as written.

The Topic also not reasonably particularized, overly broad, vague, and ambiguous, as it does not define "complaints," does not narrow "consumers" to Plaintiff, does not narrow any state or federal law enforcement agency complaints to those involving Plaintiff, does not specify the "state or federal law enforcement agencies" to which it refers, and does not provide any guidance regarding what would qualify as QuoteWizard's "telemarketing practices." The breadth and ambiguity of this Topic render it impossible for Drips to adequately prepare a witness to respond, as Drips would presumably have to gather and review, at great expense, all communications that in any way mention QuoteWizard, assess whether the communication qualifies as internal, whether it relates to what would qualify as an undefined "complaint" from a consumer, whether that complaint was submitted to any state or federal law enforcement agencies, and whether the complaint related to QuoteWizard's telemarketing practices, and the deponent would then have to study and memorize this information.

This Topic fails to specify whether it seeks testimony regarding these Do Not Call lists, or whether it seeks testimony on the general processes (i.e., what happens if a consumer asks for calls to stop and how those requests are tracked). To the extent it is the former, Drips further objects to this Topic as it improperly seeks confidential information concerning other consumers. However, given the November 19, 2020 agreement Drips and Plaintiff's counsel reached regarding the limited scope of testimony, coupled with the fact that Plaintiff has not provided Drips with any

records about which it seeks testimony, Drips interprets this request to seek the latter (i.e.,
testimony regarding general processes).

Subject to and without waiving these objections, and subject to and consistent with
Plaintiff's counsel's representations regarding the limited scope of examination and Topics
notwithstanding the broad Topics as-written, Drips will produce a Deponent (Tom Martindale) to
testify regarding the high-level do-not-call processes involving QuoteWizard.

**Request No. 6.**    Any investigation and response to complaints submitted by consumers, or any
government agency, regarding QuoteWizard's telemarketing calls or practices.

Drips objects to this Topic as it is not a reasonably particularized category of testimony.
This Topic is facially overbroad and improper, as it seeks information from Drips, a non-party,
regarding information that does not relate to the subject matter of this lawsuit. The Topic seeks
information that does not relate to Plaintiff or the text messages at issue, and it is thus not tailored
to the needs of the case, any party's claim or defense, or the current phase of discovery, and is
premature, in that it seeks information not tied Plaintiff's individual ATDS claims. This Topic
exceeds even the scope of discovery that the Court has permitted against Defendants in this matter,
which is limited to complaints related to consent only. *See* Orders [ECF Nos. 104, 112]. Drips also
objects to this Topic as it seeks information covered by the work product doctrine and attorney-
client privilege.

More fundamentally, it is unclear what information Plaintiff is seeking here, and whether
it seeks information regarding complaints against QuoteWizard or QuoteWizard's telemarking
calls or practices, or whether it is asking if and how *Drips* ever responded to any complaints on
QuoteWizard's behalf. This Topic seeks information from Drips, a non-party, regarding any
undefined "investigation and response" to any undefined "complaints" regarding any of
QuoteWizard's undefined "telemarketing calls or practices." To the extent this Topic seeks

testimony regarding complaints against QuoteWizard or QuoteWizard's telemarking calls or practices, this information is more readily obtainable from QuoteWizard as a party to the litigation.

To the extent it seeks any information regarding any specific complaints, those records should be provided. To the extent this Topic seeks information about whether and how *Drips* ever responded to any complaints on QuoteWizard's behalf, the Topic does not provide any guidance regarding what would qualify as an "investigation" or "response," "complaints" or QuoteWizard's "telemarketing practices," or any communications it seeks to ask about, and thus adequately preparing a witness to respond to this Topic as written would be impossible. To prepare a deponent to respond to this Topic,

Plaintiff, however, has not specified or provided Drips with any complaints or records about which it seeks information, and has provided no limiting information or otherwise made any attempt to make this a reasonably particularized category of testimony. For example, because the Topic does not define "complaints," "investigation," or "response," to respond to this vague and unwieldy request, a deponent would have to spend hundreds of hours to find every record involving QuoteWizard, review it individually to determine whether it involves a "complaint," and whether it relates to any unspecified "investigation" or "response" to that complaint. The deponent, after reviewing this copious amount of information, would then have to memorize anything that arguably related to a complaint and an investigation or response to that complaint. A deponent cannot reasonably be expected to review (let alone memorize) every single document that in any way mentions QuoteWizard, assess whether it relates to what would qualify as an undefined "complaint," whether the complaint related to QuoteWizard's telemarketing practices, and whether any action taken qualifies as an undefined "investigation" or "response." The lack of

specificity, breadth, and impossible burden this Topic would impose make it impossible to prepare a witness to meaningfully testify to the Topic as written.

Subject to and without waiving these objections, and subject to and consistent with Plaintiff's counsel's representations regarding the limited scope of examination and Topics notwithstanding the broad Topics as-written, Drips will produce a Deponent (Tom Martindale) to testify as to whether Drips has received any formal complaints regarding QuoteWizard relating to Plaintiff's consent.

**Request No. 7.**    Your dialing system's use of "chatbots", "humanized engagements," "human approved auto responders," and/or "zero client side operators."

Drips objects to this Topic as it is not a reasonably particularized category of testimony. In particular, this Topic imposes a burden on non-party Drips far in excess of what is reasonable given the needs of this case. This request appears to assume that the texts sent to Plaintiff were sent using the technology known as "chatbots," "humanized engagements," "human approved auto responders," and/or "zero client side operators." Drips does not adopt that categorization.

This Topic is vague and ambiguous and does not set forth a reasonably particularized category of testimony, as Plaintiff does not refer Drips to any definition of these terms, or to any specific document that would provide some sort of context. To prepare a witness to respond to this topic, Drips would have to search, at great time and expense, through every record in its possession for any scrap of paper or ESI referencing several phrases of dubious relevance to the case in order to begin to guess what Plaintiff is referring to. The needs of this case cannot possibly justify this expansive search. This is especially true given that Plaintiff's case has nothing to do with "chatbots" or the like and is a simple clear-cut TCPA case, that looks at the capacity of the system to dial automatically from a stored list of numbers or to dial randomly or sequentially. The use of

"chatbots," for example, does not, in any way, weigh on those issues. So there is simply no need for the massive and expensive search the Plaintiff demands.

The Topic is also not reasonably particularized in that it is unclear what information Plaintiff seeks. To the extent the request seeks documents regarding text messages other than the text messages to Plaintiff, it is overbroad; is not tailored to the needs of the case, any party's claim or defense, or the current phase of discovery; and does not set forth a particularized category of testimony in in that it seeks information not tied Plaintiff's individual ATDS claims. Given that in the current phase of discovery, the only discovery permitted is that relating to Plaintiff's individual ATDS claim, it would be disproportionate to the needs of the case at this time to require Drips to produce information relating to anything other than the texts to Plaintiff.

To the extent this Topic seeks information that does not relate to communications involving QuoteWizard or this litigation and instead relates to other accounts or clients, this Topic is plainly overly broad and seeks information outside of the scope of discovery and in a manner that is unduly burdensome and disproportionate to the needs of the case. Drips further objects to this request to the extent it would encompass confidential information concerning other consumers or campaigns regardless of whether they have any relevance in this case.

To the extent the Topic seeks information related to the manner in which texts were sent to Plaintiff, this information can be provided without reference to these ambiguous, undefined terms, which are not relevant to that inquiry.

Drips further objects to this Topic to the extent it seeks privileged attorney-client communications and work product, as well as confidential, proprietary, and trade secret information, such as any highly confidential technical renderings, schematics, or descriptions of

the Drips platform and its functionalities, which may jeopardize Drips' competitive advantage an must be protected from disclosure.

Subject to and without waiving these objections, and subject to and consistent with Plaintiff's counsel's representations regarding the limited scope of examination and Topics notwithstanding the broad Topics as-written, Drips will produce a Deponent (Tom Martindale) to testify regarding the platform used to text Plaintiff.

**Request No. 8.**     Marketing materials relating to the dialing technology used to send the texts at issue to Plaintiff.

Once again, this Topic does not set forth a reasonably particularized category of testimony. First, it clearly imposes a burden on non-party Drips far in excess of what is reasonable given the needs of this case and the fact that the information can be obtained from alternate sources and using alternate means. Plaintiff's counsel has failed to account for the need to protect Drips from undue burden in seeking this broad Topic of testimony. This is yet another shapeless Topic for "all marketing material" related to Drips' platform, unlimited in time or scope. To respond, a deponent would have to search every record in its possession to determine whether any might be considered "marketing material" and speak with every employee regarding possession of any responsive records back to the beginning of time. Such a search is extremely burdensome and would impose hundreds of hours (or more) to properly conduct.

Drips' marketing materials has nothing whatsoever to do with Plaintiff's case—which must be proven based upon the actual capacity of the system rather than any advertised capacity. Even if advertising material had some minimal relevance, however, demanding that Drips produce a deponent to testify regarding every piece of marketing it has ever had respecting the system is plainly the sort of "shotgun" discovery that a third-party is entitled to be protected from under the rules.

- 16 -

Further the Topic is vague and ambiguous and does not set forth a reasonably particularized category of testimony, as it is unclear what it information it is seeking. To the extent the Topic is limited to "marketing materials," it is unclear what Plaintiff considers to qualify as "marketing materials," and which materials would "relate to" the technology used to send text messages to Plaintiff.

To the extent the Topic seeks information regarding marketing materials specifically related to the manner in which the texts at issue were sent to Plaintiff, Drips states that no such materials exist. Furthermore, to the extent the Topic seeks marketing information provided to QuoteWizard, to the extent there is any, this could be more readily obtained from QuoteWizard as a party to the litigation.

Additionally, Drips objects to this Topic to the extent it seeks information about privileged and protected work-product, and to the extent it encompasses technical renderings, schematics, or descriptions of the Drips platform and its functionalities, moreover, are highly confidential and proprietary trade secrets that must be protected from disclosure.

Subject to and without waiving these objections, and subject to and consistent with Plaintiff's counsel's representations regarding the limited scope of examination and Topics notwithstanding the broad Topics as-written, Drips will produce a Deponent (Tom Martindale) to testify regarding the platform and general technology used to text Plaintiff but declines to designate a witness to testify specifically regarding this amorphous and irrelevant topic.

**Request No. 9.**     Your relationship with the Defendant, including all contracts.

Drips objects to this Topic as it does not set forth a reasonably particularized category of testimony. Plaintiff does not define "relationship" or explain what aspects of Drips' "relationship" with Defendant about which it seeks information and does not specify what "contracts" it is

referring to. Plaintiff's failure to define these terms or to specify what it is seeking leaves Drips to speculate as to Plaintiff's intended meaning and renders it impossible to adequately prepare a deponent to respond to this Topic as written. Responding to this ambiguous request as written would require a deponent to gather and review, at great expense, all communications and documents that in any way mention Defendant and then memorize all details. To the extent Plaintiff has questions about Drips' "relationship" with Defendant, this information is more readily available from Defendant itself. It is also unclear how all contracts and the entire QuoteWizard-Drips "relationship" could possibly relate to whether an ATDS was used to contact Plaintiff. There is simply no reason to burden Drips, a third party to this litigation, with such an expense, particularly given the needs of the litigation and the Court's directive that discovery is limited to Plaintiff's individual claims.

Furthermore, to the extent this Topic seeks information that does not relate to this litigation and instead relates to other accounts or clients, this Topic is plainly overly broad and seeks information outside of the scope of discovery and in a manner that is unduly burdensome and disproportionate to the needs of the case. Drips further objects to this request to the extent it would encompass confidential information concerning other consumers or campaigns regardless of whether they have any relevance in this case. Additionally, Drips objects to this Topic to the extent it seeks information about privileged and protected work-product.

Subject to and without waiving these objections, and subject to and consistent with Plaintiff's counsel's representations regarding the limited scope of examination and Topics notwithstanding the broad Topics as-written, Drips will produce a Deponent (Tom Martindale) to testify generally regarding Drips' formal contractual relationship with QuoteWizard and scope and details of this relationship.

**Request No. 10.**  Any lawsuits in which it is alleged that You sent texts to consumers using an automatic telephone dialing system.

Drips objects to this Topic as it does not set forth a reasonably particularized category of testimony. Drips would have to fashion an extensive search and production effort to fully comply with this request by, among other things, searching nationwide dockets for any case involving any of its clients, reviewing the pleadings to assess whether the claims relate to any texts sent using the Drips platform, sifting through the pleadings to figure out whether a party has that Drips has used an automatic telephone dialing system, and then creating a list of the lawsuit to memorize for the deposition. Imposing such an extraordinary, undue demand on Drips, a nonparty, would require hundreds if not thousands of hours of work, and would always be disproportionate to the needs of this case, even if the allegations in unrelated lawsuits somehow had any bearing on this litigation (which they do not).

Indeed, it remains unclear how allegations from third parties regarding a legal conclusion in unrelated lawsuits have any bearing in this case. This request is also overbroad; is not tailored to the needs of the case, any party's claim or defense, or the current phase of discovery; and is premature, in that it seeks information not tied Plaintiff's individual ATDS claims, or even to lawsuits involving Defendant. Given that in the current phase of discovery, the only discovery permitted is that relating to Plaintiff's individual ATDS claim—and specifically consent—it would be disproportionate to the needs of the case at this time to require Drips to produce information relating to anything other than the texts to Plaintiff.

Preparing a witness to testify on the Topic as written would impose an extreme and unnecessary burden on Drips and the deponent, who would have to fashion an extensive nationwide search of state and federal dockets for any case involving any of its clients, review the pleadings to assess whether the claims relate to any texts sent using the Drips platform, sift through

the pleadings to figure out whether a party has alleged that Drips has used an automatic telephone dialing system, and then memorize this information for the deposition. The man-hours and burden that would be required to respond to this Topic as written render it impossible to meaningfully prepare a witness.

Furthermore, to the extent this Topic seeks information that does not relate to QuoteWizard or this litigation and instead relates to other accounts or clients, this Topic is plainly overly broad and seeks information outside of the scope of discovery and in a manner that is unduly burdensome and disproportionate to the needs of the case. Drips further objects to this request to the extent it would encompass confidential information concerning other consumers or campaigns regardless of whether they have any relevance in this case. Finally, Drips objects to this request to the extent it seeks records covered by the work-product doctrine or attorney-client privilege.

Subject to and without waiving these objections, and subject to and consistent with Plaintiff's counsel's representations regarding the limited scope of examination and Topics notwithstanding the broad Topics as-written, Drips will produce a Deponent (Tom Martindale) to testify generally regarding this topic based on the information reasonably available to Drips through a search of its readily available and regularly maintained business records.

**Request No. 11.**  Your communications or relationship with Adam Brown, Justin Cohen or BlueFlame Marketing.

Drips objects to this Topic as it does not set forth a reasonably particularized category of testimony. These are common names, and Plaintiff does not explain how they are allegedly involved in this case, or what sort of communications Drips should be looking for. Preparing a deponent to respond to this Topic would impose an undue and unnecessary burden. Responding would require a deponent search all of its records, no matter how stored or in what form, to find any scrap of paper or ESI mentioning an individual named Adam Brown, Justin Cohen, or

- 20 -

BlueFlame Marketing ad interview virtually every Drips employee to determine who might house responsive records. Then, the deponent would have to conduct an exhaustive review of every record that mentions any Adam Brown, Justin Cohen, or BlueFlame Marketing, and them memorize that information, even if it has absolutely nothing to do with QuoteWizard or Plaintiff case, and even if it pertains to a different Adam Brown or Justin Cohen than those about which Plaintiff seeks testimony, for example. The man-hours and burden that would be required to respond to this Topic as written render it impossible to meaningfully prepare a witness, and there is no reason for this burden given the lack of relevance to this case.

It is unclear how every record mentioning a common man's name might have any conceivable relevance to this case. The demand is overly burdensome to the extent it seeks information outside the scope of the case—i.e., mentions of a different Adam Brown or different Justin Cohen then whoever it is that Plaintiff wants to know about or mentions of Adam Brown or Justin Cohen in contexts unrelated to whatever context is pertinent in this case. The shapeless demand provides no limits or context that would enable a witness to prepare in any meaningful way.

This is not a "category" of testimony in any real sense—it is a request that Drips search *every* category of documents in its possession for *any* record that might include one piece of information, without any provision as to how that information might be useful in the form or context being searched, and then have a deponent review any documents hitting on these broad names, assess whether they somehow relate to this litigation, and memorize any information found. Stated plainly—this is another shotgun style Topic that should never be directed to a non-party to litigation. If Plaintiff has any specific information or documents he would like Drips to testify about, he should specify that with reasonable particularity.

Moreover, to the extent this Topic as it seeks records referring to Adam Brown, Justin Cohen, or BlueFlame Marketing that do not relate to QuoteWizard and instead relate to other accounts or clients, this Topic is plainly overly broad and seeks information outside of the scope of discovery and in a manner that is unduly burdensome and disproportionate to the needs of the case. Drips further objects to this request to the extent it would encompass confidential information concerning other consumers or campaigns regardless of whether they have any relevance in this case. Drips objects to this Topic as Plaintiff could likely more readily obtain relevant information relating to Adam Brown, Justin Cohen, or BlueFlame Marketing from a party (Defendant) or from a more appropriate nonparty.

Subject to and without waiving these objections, and subject to and consistent with Plaintiff's counsel's representations regarding the limited scope of examination and Topics notwithstanding the broad Topics as-written, Drips will produce a Deponent (Tom Martindale) to testify generally regarding whether Drips has any communications with these individuals and company that relate to Plaintiff's case or to QuoteWizard.

**Request No. 12.**   Your communications or relationship with RevPoint Media relating to the Defendant.

Drips objects to this Topic as it does not set forth a reasonably particularized category of testimony. This is not a "category" of testimony in any meaningful sense—it is a request that Drips search *every* category of documents in its possession for *any* record that might include one piece of information, without any provision as to how that information might be useful in the form or context being searched, and then have a deponent review any documents hitting RevPoint Media, assess whether they somehow relate to this litigation, and memorize any information found. Stated plainly—this is another shotgun style Topic that should never be directed to a non-party to

litigation. If Plaintiff has any specific information or documents he would like Drips to testify about, he should specify that with reasonable particularity.

Any information regarding RevPoint Media that is relevant to this matter can be obtained from QuoteWizard or from RevPoint Media; Drips has never sold any lead to QuoteWizard, and is not the proper party from which to seek this discovery. Drips also objects to this request in that it exceeds the scope of discovery that the Court has permitted even from Defendant as a named party in this matter. For example, the Court limited Plaintiff's requests for emails between QuoteWizard and RevPoint relating to any consumer "telemarketing complaints" to those pertaining to consent. *See* ECF Nos. 104, 112. Requiring Drips, as a non-party, to prepare a deponent to testify regarding any undefined relationship with RevPoint or all communications with RevPoint records would be overly burdensome. In addition to the multiple steps listed in the prior paragraph that Drips would have to undertake to identify any communications relating to any consumer complaints, a deponent would also have to assess whether any such consumer communications could possibly be related to the consumers' consent.

Moreover, to the extent this Topic as it seeks records referring to RevPoint Media that do not relate to communications involving QuoteWizard and instead relate to other accounts or clients, this Topic is plainly overly broad and seeks information outside of the scope of discovery and in a manner that is unduly burdensome and disproportionate to the needs of the case. Drips further objects to this request to the extent it would encompass privileged materials and confidential information concerning other consumers or campaigns regardless of whether they have any relevance in this case.

Preparing testimony on this Topic would be unduly burdensome. The burden associated with this search would be high, requiring an interview with virtually every Drips employee to

determine who might house responsive records followed by a review of all emails in Drips'
possession that reference RevPoint to assess whether they qualify as a "communication" with
RevPoint and whether the communication relates to Defendant. The deponent would then have to
memorize these communications for the deposition. There is no reason to submit a non-party to
this unnecessary burden.

Subject to and without waiving these objections, and subject to and consistent with
Plaintiff's counsel's representations regarding the limited scope of examination and Topics
notwithstanding the broad Topics as-written, Drips will produce a Deponent (Tom Martindale) to
testify generally regarding whether Drips has any communications with or relationship with
RevPoint that relates to Plaintiff's case or to QuoteWizard.

**Request No. 13.**   This litigation and the Plaintiff.

Drips objects to this Topic as it does not set forth a reasonably particularized category of
testimony. Seeking all information regarding this litigation and Plaintiff clearly would encompass
privileged communications and protected work-product.

Even interpreted to seek only business records, however, the category is problematic in
that it is unclear what information it seeks about Plaintiff, and Plaintiff has not supplied any
identifying information to assist Drips in locating records. For instance, it is unclear whether
Plaintiff expects Drips to identify and testify regarding all phone numbers Plaintiff might own.
Furthermore,

Moreover, to the extent this Topic as it seeks records referring to Plaintiff that do not relate
to communications involving QuoteWizard and instead relate to other accounts or clients, this
Topic is plainly overly broad and seeks information outside of the scope of discovery and in a
manner that is unduly burdensome and disproportionate to the needs of the case. Drips further

objects to this request to the extent it would encompass confidential information concerning other consumers or campaigns regardless of whether they have any relevance in this case.

Subject to and without waiving these objections, and subject to and consistent with Plaintiff's counsel's representations regarding the limited scope of examination and Topics notwithstanding the broad Topics as-written, Drips will produce a Deponent (Tom Martindale) to testify generally regarding communications with Plaintiff set forth in DRIPS000001-DRIPS000004.

Date: December 16, 2020

*/s/Eric J. Troutman*
Eric J. Troutman
Squire Patton Boggs (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, CA 90071
Telephone: (213) 689-6510
Facsimile: (213) 623-4581
Email: eric.troutman@squirepb.com

*Counsel for Non-Party Drips Holdings, LLC*

## CERTIFICATE OF SERVICE

I certify that on December 16, 2020, the foregoing was served via email to the following:

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, MA 01760
mmccue@massattorneys.net

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
anthony@paronichlaw.com

Alex M. Washkowitz
Jeremy Cohen
CW Law Group, P.C.
188 Oaks Road
Framingham, MA 01701
alex@cwlawgrouppc.com

Edward A. Broderick
Broderick Law, P.C.
99 High St., Suite 304
Boston, MA 02110
Telephone: (617) 738-7080
ted@broderick-law.com

*Counsel for Plaintiff Joseph Mantha*

Kevin P. Polansky
Christine M. Kingston
Nelson Mullins Riley & Scarborough LLP
One Post Office Square, 30th Floor
Boston, MA 02109
kevin.polansky@nelsonmullins.com
christine.kingston@nelsonmullins.com

*Counsel for Defendant QuoteWizard.com, LLC*

*/s/Eric J. Troutman*
Eric J. Troutman

- 26 -