UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH MANTHA, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>QUOTEWIZARD.COM, LLC,<br><br>Defendant. | Civil Action No. 1:19-cv-12235-LTS |

**DEFENDANT'S SUPPLEMENTAL BRIEFING PURSUANT TO ECF NO. 162**

Defendant QuoteWizard.com, LLC ("QuoteWizard") respectfully submits its Supplemental Briefing pursuant to ECF No. 162. Non-party Drips Holdings, LLC ("Drips") submitted sworn evidence that the electronically stored information ("ESI") is not reasonably accessible and would require thousands of hours of manpower that could threaten its continued existence. Relative to the (at best) minimal, tangential relevance of this information to Plaintiff's individual claims capped at $12,000 at most, the Court should not require production.

A.  Applicable Standard

QuoteWizard agrees with Plaintiff Joseph Mantha ("Mantha") that the applicable standard in considering the burden to Drips is Fed. R. Civ. P. 45's "undue burden" test. *See* ECF No. 163, pp. 1-2. "[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Cusumano v. Microsoft Corp*., 162 F.3d 708, 717 (1st Cir. 1998). Rule 45 protects non-parties against "undue burden or expense" and "significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(1), (d)(2)(B)(ii). Courts consider such factors as "the relevance of the documents sought, the necessity of the documents

sought, the breadth of the request … [and] expense and inconvenience." *Behrend v. Comcast Corp.*, 248 F.R.D. 84, 86 (D. Mass. 2008) (quotation and citation omitted).

Based on Drips's sworn representations that the ESI is not reasonably accessible, a further limitation applies: a non-party need not "provide discovery of [ESI] from sources that the person identifies as not reasonably accessible because of undue burden or cost" absent a showing of good cause by the requesting party, "considering the limitations of Rule 26(b)(2)(C)," and on such conditions that the court orders. Fed. R. Civ. P. 45(e)(1)(D).

B. Burden on Drips

QuoteWizard relies on and incorporates (1) Drips's Motion to Quash and (2) the unredacted Declaration of Tom Martindale in support. *See* Exhibit A –*Motion to Quash*; Exhibit B – *Unredacted Dec. of Tom Martindale*.[1] Drips's sworn declaration describes the four-step process to extract the otherwise inaccessible ESI. *See* Ex. B. The declarant estimates that assembling the records would require "585 hours of time by Drips' development team and between 700-3,500 hours or processing time to complete." Ex. B, ¶ 38. Further, "if Drips needs to dedicate the hundreds of hours required to produce [the] records … it simply will not have the manpower necessary to maintain its contractual obligations to its client base and assure a steady and reliable communications platform to the numerous companies that rely on it. This will be highly disruptive

---

[1] QuoteWizard does not have knowledge of Drips's records and systems such that it could articulate the specific burden in producing these records that Drips has now articulated for the first time in objecting to QuoteWizard's subpoena. *See* Ex. B. QuoteWizard is not in a position to raise, or waive, Drips's objections. Moreover, at no point in time has QuoteWizard ever waived the fact that these records are not within its possession, custody, or control; this is not an "objection" subject to being waived but rather a fact controlling the scope of discovery. *See*, *e.g.*, *Duarte v. St. Paul Fire & Marine Ins. Co.*, 2015 U.S. Dist. LEXIS 161254, at *14-15, 2015 WL 7709433 (W.D. Tex. Sep. 25, 2015) (argument that a party is not in possession, custody, or control of documents is not an objection that can be waived; rather, it defines the scope of a party's obligation to respond in the first instance).

to its business and may cause it to lose clients and—in a worst case scenario—may result in the company having to shut down altogether." *Id.*, ¶ 39.

      C. <u>Viewing Burden Relative to Relevance</u>

      i.      *Records Are Not Relevant to Individual Claims*. Weighing the burdens identified by Drips (*see* Ex. B), including the possibility that production of these records "may result in the company having to shut down altogether," against the claimed relevance of the records to Phase I discovery on Mantha's individual claims only, any relevance is so extremely minimal such as not to justify the staggering burden Drips has identified. With respect to consent, comments made by other consumers to Drips, *which were never shared with QuoteWizard* (*see* Ex. B, ¶ 11), are not relevant to whether <u>Mantha</u> consented to be contacted within the meaning of the TCPA. The Court will determine whether or not Mantha consented with reference to *his* words and actions only.

Moreover, there is no common source of consent underlying the 46,000 consumers who opted out, or QuoteWizard's campaigns more generally. QuoteWizard purchases leads from a variety of lead sellers (in this case, it was RevPoint Media, LLC), and those leads in turn are generated from various sources (here, records indicate www.snappyautoinsurance.com). Where there is no common source of consent (such as a single campaign or specific websites), as here, a court cannot draw any conclusions across a group of consumers but must make *individualized determinations* as to consent. *See*, *e.g.*, *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 328-29 (5th Cir. 2008) (because class members' numbers "were collected over time and from a variety of sources," individual inquiries would be necessary as there was "no class-wide proof available to decide consent and only mini-trials [could] determine this issue").[2]

---

[2] And because the TCPA is essentially a strict liability statute, *see Davis v. Diversified Consultants, Inc.*, 36 F. Supp. 3d 217, 223 (D. Mass. 2014), what QuoteWizard knew or should have suspected based on the 46,000 opt-outs is immaterial to whether or not it contacted Mantha in violation of the TCPA.

With respect to treble damages, the records are likewise not relevant. The court has discretion to impose treble damages if the defendant's violation was "willful[] or knowing[]." *See* 47 U.S.C. § 227(b)(3)(C). Courts disagree on the state of mind necessary to establish willful or knowing. One line of cases provide that "willful[] or knowing[]" simply means that the violative actions were intentional, not accidental. *See, e.g.*, *Sengenberger v. Credit Control Servs., Inc.*, 2010 WL 1791270, at *6 (N.D. Ill. May 5, 2010). Another line of cases counter that "willful[] or knowing[]" requires a showing that the defendant "knew their conduct in fact did violate the TCPA." *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 899 (W.D. Tex. 2001).

Mantha, however, urges an interpretation of "willful[] or knowing[]" that simply does not exist—essentially, a negligence standard—that a defendant should infer that <u>none</u> of its individual consents are valid if it has purported evidence that <u>some</u> consents are allegedly invalid. No court has interpreted "knowing" or "willful" in this manner such to treble damages based on purported negligence. And, in any event, because QuoteWizard has not seen the 46,000 communications, those communications cannot bear on QuoteWizard's state of mind, regardless.

  ii. *Mantha's Relevancy Arguments Are Further Fundamentally Flawed*. Mantha's arguments are fundamentally flawed for two additional reasons. First, it is undisputed that QuoteWizard has not seen the 46,000 communications. Thus, Mantha's argument for relevancy—that the records will prove what QuoteWizard knew or should have known—inherently fails because QuoteWizard simply has never seen the communications and thus they could not possibly affect QuoteWizard's state of mind. If Mantha wants to argue that the sheer number of opt-outs is proof of something, he is free to do that without threatening Drips's existence.

Second, an opt-out is not defined as a "complaint" evidencing a lack of consent. In fact, Drips's tier systems indicates that, even for the "highest" tier—Tier 1—the "screamers"—these

are people who actually may have requested a free quote. *See* ECF No. 136, Ex. 5, p. 2 (noting that consumers may be upset at being contacted by multiple companies after soliciting free quote).

        iii.     *The Expense of Production is Infinitely Greater than the Damages at Issue.* If Mantha were to prevail on his individual claims seeking statutory damages only, and assuming *arguendo* he could recover $500 for each of the allegedly "unsolicited" 8 text messages and such amounts would be trebled, that totals $12,000 in individual damages at most. The expense of production as laid out by Drips—the potential to impact the financial viability of the company or its continued existence—cannot possibly justify the production of records that Mantha claims is somehow tangentially relevant at best to his individual claims worth $12,000 at most.

        D.  <u>The Court Should Restrict Production to a Random Sampling at Most</u>

There are middle ground approaches that the Court can order, if anything. For example, the Court could limit production to a random sampling of leads that were sold to QuoteWizard by RevPoint (which QuoteWizard could determine by reference to phone numbers and inform Drips), which are arguably the only relevant leads. Or, the Court could require Drips to produce a random sampling of consumer comments (for example, 50), regardless from whom QuoteWizard purchased the leads (although QuoteWizard maintains its argument that those leads are irrelevant), at or around the time that the text messages were sent to Mantha in 2019. These would be far more reasonable requests of Drips that could satisfy its concerns over undue burden, while also allowing Mantha the opportunity to probe what consumers were telling Drips at the time with respect to leads sold by RevPoint to QuoteWizard.

Finally, the Court should order Mantha, as the party seeking this information, to pay for the cost of production. *See*, *e.g.*, *Levy v. Gutierrez*, 2019 WL 1405850, at *4 (D.N.H. March 28,

2019) (cost-shifting is mandatory under Rule 45 where a non-party's compliance with a court order would result in significant expense).

                          Respectfully submitted,

                          QuoteWizard.com, LLC,
                          By its attorneys,

                          */s/ Kevin P. Polansky*
                          Kevin P. Polansky (BBO #667229)
                          kevin.polansky@nelsonmullins.com
                          Christine M. Kingston (BBO #682962)
                          christine.kingston@nelsonmullins.com
                          Nelson Mullins Riley & Scarborough LLP
                          One Financial Center, Suite 3500
                          Boston, MA 02111
                          (t) (617)-217-4700
Dated: March 25, 2021            (f) (617) 217-4710

## CERTIFICATE OF SERVICE

     I, Kevin P. Polansky, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: March 25, 2021                                     */s/ Kevin P. Polansky*