UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH MANTHA, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>QUOTEWIZARD.COM, LLC,<br><br>Defendant. | Civil Action No. 1:19-cv-12235-LTS |

**DEFENDANT'S RESPONSE TO THE COURT'S SHOW CAUSE ORDER [ECF NO. 162]**

Defendant QuoteWizard.com, LLC ("QuoteWizard") hereby respectfully submits its Response to the Court's show cause Order, *see* ECF No. 162, p. 13 ("Given the Court's conclusion that these consumer communications are within QuoteWizard's control and given the unwieldly archiving system employed by Drips, QuoteWizard shall show cause why the Court should not require it, going forward, to ensure preservation of all communications (sent and received) regarding all marketing campaigns conducted by Drips on its behalf in a more easily accessible format.").

**FACTS RELEVANT TO SHOW CAUSE RESPONSE**

QuoteWizard does not currently receive from Drips in the ordinary course of business any text messages or other communications sent to or by Drips with consumers on QuoteWizard's behalf. *See* Dec. of Jason Krevitsky, ¶ 4. While QuoteWizard does know the messaging that has been approved by QuoteWizard to send to consumers, it does not have in its possession, custody or control the actual communications sent by Drips to consumers or sent to Drips by consumers. *Id*.

In response to ECF No. 162, QuoteWizard has explored building a database that will store all SMS communications between Drips and consumers for QuoteWizard's campaigns. *Id*., ¶ 5. QuoteWizard does not have any systems currently online to consume such messages and communications, nor a dedicated space in any of its databases to store them. *Id*. QuoteWizard estimates that it would take approximately two to three weeks, at the earliest, to build such processes/database and make it operational. *Id*., ¶ 6.

Moreover, QuoteWizard does not have, and will not have, any control over whether Drips complies with any request to start transferring this data, or how quickly it complies, or whether the data being shared by Drips is complete and in its original format. *Id*., ¶ 7.

## APPLICABLE LEGAL PRINCIPLES

"Federal courts have the implied or inherent power to issue preservation orders as part of their general authority to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1071 (C.D. Cal. 2009) (quotation and citation omitted). However, this power "must be exercised with restraint and discretion." *Id*. (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)); *see also* Fed. R. Civ. P. 26(f) advisory committee's note (2006) ("The requirement that the parties discuss preservation does not imply that courts should routinely enter preservation orders.").

When considering a motion seeking entry of a preservation order, courts generally consider the following three factors: (1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; (2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and (3) the capability of an

individual, entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition or contents, but also the physical, spatial and financial burdens created by ordering evidence preservation. *See Cognate BioServices, Inc. v. Smith*, 2014 U.S. Dist. LEXIS 32190, at *21-22, 2014 WL 988857, at *6-7 (D. Md. Mar. 12, 2014).

Generally, a preservation order requires a showing that, "absent a court order, there is significant risk that relevant evidence will be lost or destroyed — a burden often met by demonstrating that the opposing party has lost or destroyed evidence in the past." *Id*. at *21.

## ARGUMENT & AUTHORITIES

### A. QuoteWizard is Appealing the Court's "Control" Determination; Any Further Orders Dependent on this Determination Should be Deferred Pending Appeal

QuoteWizard has filed a notice of appeal from the Orders determining that certain of Drips's data relating to its communications with consumers on QuoteWizard's campaigns is within QuoteWizard's "control" for the purposes of Fed. R. Civ. P. 34. *See* ECF No. 169. QuoteWizard herein restates its argument that it does not have "control" over Drips's records, as evidenced by Drips's continued refusal to produce the records even in the face of a subpoena, and incorporates its prior briefing on this topic, including ECF No. 149. If the data is not deemed to be within QuoteWizard's control, and given that it is not in QuoteWizard's possession or custody, then QuoteWizard would not have any obligation to preserve the data at its own cost. *See MacSteel, Inc. v. Eramet N. Am.*, 2006 U.S. Dist. LEXIS 83338, at *4 (E.D. Mich. Nov. 16, 2006). ("[T]he duty to preserve evidence does not extend to evidence which is not in a litigant's possession or custody and over which the litigant has no control."); *In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 430 (M.D. Fla. 2018) ("Generally, a party's preservation duties attach only to evidence within that party's possession, custody, or control.").

3

QuoteWizard respectfully submits that, while its appeal on the Court's "control" determination is pending, the Court should defer entering any further order requiring QuoteWizard to take possession of any of Drips's records in the meantime, as such order would necessarily be dependent on the Court's determination that QuoteWizard controls the records in Drips's possession.  In the event that the United States Court of Appeals for the First Circuit determines on appeal or otherwise that the records are not within QuoteWizard's control, then QuoteWizard would have no separate duty to incur any cost to store Drips's data, where QuoteWizard has fully complied with its preservation duties by informing Drips of a required litigation hold and receiving assurances that all data was being preserved as required.

There is no substantial prejudice that would result from the Court deferring such an order pending the appeal.  As explained *supra* Section B, and as appears to be undisputed between the Parties, Drips is fully preserving all potentially relevant data to the putative classes.

B. <u>Drips is Preserving the Data</u>

Notwithstanding that QuoteWizard maintains that this data is beyond its possession, custody, or control, even assuming it is within its "control" under the theory that it has a practical ability to obtain such data, QuoteWizard still should not be ordered to preserve it in a more accessible format at its own expense on a going forward basis.

Although Drips's archiving system may be "unwieldy," Drips's sworn declaration confirms that all consumer communications that it sends/receives for QuoteWizard campaigns is in fact being preserved as previously represented by Drips's counsel.[1]  *See*, *e.g.*, ECF No. 165, Ex.

---

[1] Drips's counsel represented that data relevant to the putative class was being preserved, although did not offer details on how except as to say that it was being sufficiently preserved such as not to raise the possibility of accidental deletion, etc.  Plaintiff's counsel has not objected to Drips's preservation and this was a topic of discussion on a telephonic conference with all counsel on or around November 6, 2020. Indeed, Plaintiff's counsel had indicated an intent to file a motion for production of "class records" (however defined by Plaintiff) on the basis of generic preservation concerns (*i.e.* that this data had been lost

B (Martindale Dec.), ¶¶ 12-13 (describing how data is initially saved on cloud-based servers, and then moved to "cold storage servers in a data warehouse"). Drips has never indicated, nor has Plaintiff Joseph Mantha's ("Plaintiff") counsel claimed, that any of this data is at risk of being lost or destroyed. Rather, the only concern appears to be how difficult or expensive it might be to pull such data from the "cold storage servers" once placed there.

  Generally, parties have an obligation to preserve potentially relevant evidence, such as electronically stored information (ESI); the duty to preserve, however, does not impose additional requirements that parties modify the procedures used by them in the ordinary course of business to render such ESI "accessible." *See*, *e.g.*, *United States ex rel. Sanchez v. AHS Tulsa Regional Medical Center, L.L.C.*, 2010 U.S. Dist. LEXIS 155431, at *12 (N.D. Okla. Aug. 6, 2010) ("Preserving data in a format that is less accessible than its original form is not, without more, a violation of the duty to preserve evidence. A different result might obtain if there were evidence that the change to an inaccessible format was done with the intention of hiding or impeding a party's access to relevant information, but no such motive or intent has even been suggested here."); *Quinby v. WestLB AG*, 2005 U.S. Dist. LEXIS 35583, 2005 WL 3453908 at *8 n.10 (S.D.N.Y. Dec. 15, 2005) ("Plaintiff fails to cite, and I am unaware of any case, that states that the duty to preserve electronic data includes a duty to keep the data in an accessible format. The cases plaintiff cites speak to the general proposition that a defendant has a duty to preserve evidence, but do not state that the evidence must be kept in a particular form."); *Best Buy Stores L.P. v. Developers Diversified Realty Corp.*, 247 F.R.D. 567, 570-71 (D. Minn. 2007) ("[B]y downgrading the database, Best Buy did not destroy the information it contained but rather removed it from a searchable format. Therefore, Best Buy … need not restore the information to

---

or not preserved in other cases that Plaintiff's counsel had prosecuted), but Plaintiff's counsel ultimately never filed such motion after such time that counsel received assurances from Drips's counsel.

searchable format unless defendants establish good cause."); *Peterson v. Seagate US LLC*, 2011 U.S. Dist. LEXIS 12423, at *13, 2011 WL 861488 (D. Minn. Jan. 27, 2011) ("Seagate was not under any duty to preserve the evidence in a readily accessible format at the time it was deleted or stored on backup tapes"). *But see United States ex rel. Sanchez v. AHS Tulsa Regional Medical Center, L.L.C.*, 2010 U.S. Dist. LEXIS 155431, at *12 ("Courts have offered differing views on the duty to preserve evidence in accessible form"; but noting that "the majority view is that duty to preserve evidence does not include a duty to keep the data in an accessible format" (quotation and citation omitted)).[2]

As Drips is actively preserving this data, this does not warrant an order requiring QuoteWizard to bear the considerable time and expense of preserving it separately in a database that QuoteWizard would have to create, particularly where QuoteWizard will still have no control over if, when, and how Drips actually shares this data with QuoteWizard in the absence of a Court Order.

### C. The Data Would be Subject to Cost-Shifting and Other Considerations if Subject to Production; Such Issues are Premature Where No Class Has Been Certified

Because the data at issue is being preserved or will be preserved by Drips on a going forward basis, the only potential concern is how expensive/time-consuming production would be if this prospective data is later subject to production in discovery and if the data is maintained pursuant to Drips's ordinary business practices, and who should bear the cost of such production. Such determinations are premature where the data is arguably only relevant *after* a class if certified (if ever).

---

[2] The Advisory Committee Notes on the 2015 Amendments to Fed. R. Civ. P. 37 indicate that "[a] party may act reasonably by choosing a less costly form of information preservation, if it is substantially as effective as more costly forms." *See also Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("In recognition of the fact that there are many ways to manage electronic data, litigants are free to choose how this task is accomplished.").

The Federal Rules of Civil Procedure provide that ESI that is not reasonably accessible because of undue burden or cost (*see* Martindale Dec.) can be ordered to be produced upon good cause and considering the factors under Rule 26(b)(2)(C). *See* Fed. R. Civ. P. 26(b)(2)(B) ("A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery."); Fed. R. Civ. P. 45(e)(1)(D) (same standard for non-party discovery). *See also United States ex rel. Sanchez v. AHS Tulsa Regional Medical Center, L.L.C.*, 2010 U.S. Dist. LEXIS 155431, at \*13 ("Relators must establish that the likely benefit of the requested emails outweighs the burden or expense of restoration 'considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.' Rule 26(b)(2)(C). (The same essential factors are considered in deciding whether the cost of producing inaccessible data should be shifted in whole or in part to the requesting party.)" (internal citation omitted)).

An order that requires QuoteWizard to bear the time and expense of building a database to store Drips's ESI on a going forward basis is essentially equivalent to an order that this data is or will be discoverable in this case for good cause. In other words, because the data is being preserved, forcing QuoteWizard to bear the time and expense of storing the data in a more accessible format is essentially a pre-determination that Drips would be ultimately required to produce this data.

But courts have been cautious to make a pre-determination of who should bear the costs of certain discovery before any such discovery has taken place. *See, e.g.*, *W Holding Co. v. Chartis Ins. Co.*, 293 F.R.D. 68, 74 (D.P.R. 2013) ("Until the parties take affirmative steps to conduct discovery—perhaps after test runs, for instance—there is no ground for the court to dramatically alter the defaults under the Federal Rules of Civil Procedure.").

Here, Drips's communications with consumers ongoing during this case is not potentially relevant unless and until a class is certified. Such communications are not relevant to any of the Fed. R. Civ. P. 23 factors such that Plaintiff would be entitled to them before a motion for class certification is made, much less granted. *See, e.g.*, *Gusman v. Comcast Corp.*, 298 F.R.D. 592, 595 (S.D. Cal. 2014) (pre-certification discovery is generally initially limited to "certification issues such as the number of class members, the existence of common questions, typicality of claims, and the representative's ability to represent the class."). Factors relevant to the proposed classes, such as the number of consumers contacted by Drips on QuoteWizard's behalf in the same campaign, could be determined already with reference to QuoteWizard's records.

Therefore, QuoteWizard submits that, at a minimum, it is premature to consider whether this data would be discoverable herein and who should bear the cost of producing it. Unless and until such data becomes relevant to a discoverable issue and is subject to discovery, and while such data is being actively preserved, QuoteWizard should not bear the cost of storing the data for Drips in a more accessible format.

### D. Any Order Requiring QuoteWizard to Store this Data Should Include Sufficient Safeguards for QuoteWizard

As noted in QuoteWizard's Declaration filed herewith and as made abundantly clear by the recent procedural background of this case, although this Court may have determined that Drips's records are within QuoteWizard's control, as a practical matter, Drips has to date refused to

produce any of its records to QuoteWizard even in the face of a subpoena. Absent a Court Order directly binding Drips, Drips will not provide the records to QuoteWizard.

An Order that requires QuoteWizard to store, on a going forward basis, any consumer communications that Drips has for QuoteWizard's campaigns requires, in the first instance, for Drips to send this data to QuoteWizard. But Drips has given no indication that it will share any of its data with QuoteWizard in the absence of a Court Order requiring it to do so, no matter how hard QuoteWizard tries within the bounds of the law to obtain such data. If the Court enters an unqualified Order requiring QuoteWizard to store this data, therefore, this would come with the very real risk that QuoteWizard would never obtain the data that it was required to preserve. It would be patently unreasonable, and unworkable, to expose QuoteWizard to the risk of spoliation sanctions for not complying with an order requiring it to store data that it never receives.

Thus, in the event the Court orders QuoteWizard to store Drips's data on a going forward basis, QuoteWizard submits that the order should contain reasonable safeguards for QuoteWizard. Specifically, the order should recognize that QuoteWizard can demand this data from Drips but that Drips could refuse to share it, and thus QuoteWizard should (at most) be responsible *only* for the data that Drips voluntarily agrees to share with QuoteWizard and therefore comes to be in the actual possession of QuoteWizard. QuoteWizard would plainly be constrained to store only what it actually receives from Drips, and any order should expressly recognize the same and go no further than requiring only that category of data. Further, as Drips conducts many different campaigns for QuoteWizard, QuoteWizard submits that any such order should be limited only to auto insurance campaigns similar to the text messages sent to the Plaintiff herein.

Finally, as QuoteWizard's Declaration reflects, QuoteWizard would need <u>at least</u> two to three weeks to build the processes/database to store such data (assuming Drips would send such

data). QuoteWizard further requests that any order allows QuoteWizard this time period to build a database such to store the data on a going forward basis.

## CONCLUSION

Because Drips is preserving its data as might be relevant to the putative classes herein, and there is no particular format in which that data must be stored, the Court should not order QuoteWizard to take possession of the same data on a going forward basis at its expense.

Respectfully submitted,

QuoteWizard.com, LLC,
By its attorneys,

*/s/ Kevin P. Polansky*
Kevin P. Polansky (BBO #667229)
kevin.polansky@nelsonmullins.com
Christine M. Kingston (BBO #682962)
christine.kingston@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
One Financial Center, Suite 3500
Boston, MA 02111
(t) (617)-217-4700
(f) (617) 217-4710

Dated: March 30, 2021

## CERTIFICATE OF SERVICE

I, Kevin P. Polansky, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: March 30, 2021                                    */s/ Kevin P. Polansky*