**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| |
|---|
| JOSEPH MANTHA, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>QUOTEWIZARD.COM, LLC,<br><br>Defendant. |

Civil Action No. 1:19-cv-12235-LTS

**DEFENDANT'S RESPONSE TO ECF NO. 175**

Defendant QuoteWizard.com, LLC ("QuoteWizard") hereby respectfully submits its Response to ECF No. 175.  *See* ECF No. 175, pp. 3-5 ("The Court shall allow QuoteWizard to submit a supplemental filing explaining why production of the documents at issue would constitute undue burden, in light of the evidence [from *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 977 (N.D. Cal. 2019)].").

QuoteWizard submits herewith its Affidavit of Counsel, and an April 6, 2021 e-mail from Drips Holdings, LLC's ("Drips") counsel, Eric Troutman, Esq., attached thereto as Exhibit 1. Neither QuoteWizard nor its counsel has or had personal knowledge of Drips's production in the Berman Case (to which QuoteWizard was not a party and not otherwise involved) or Drips's systems (then or now), and therefore counsel has repeatedly asked Drips's counsel to explain any difference between that production and the production at issue herein.  *See* Counsel Aff., ¶¶ 3, 6.

In response, Attorney Troutman has reduced Drips's position to writing that the two productions are materially different, including for reasons related to Drips's system changes over

time. *See id*., ¶ 7. *See also* Ex. 1. Drips maintains that, regardless of the production in the Berman

Case, production here would be unduly burdensome. *See* Ex. 1.

Attorney Troutman set forth the below explanations as to why the production in the Berman

Case was materially different:

(1) The production in the Berman Case "was *not* the same as the production being requested in the subject subpoena. That production entailed a wholesale extraction of communications from a certain set of consumers, it did not entail an analysis of the 'trigger' for DNC reports.";

(2) The production in the Berman Case "pertained to a more limited set of campaigns than the work at issue here";

(3) Drips's systems have since changed; "[a]t the time of the *Berman* production inbound communications from consumers resided on separate tables segregated by client and campaign. Extracting the data was, therefore, a relatively simple table extract process. … That table structure simply does not exist within Drips' archive system for this data. … [I] t is certain that whatever process was used at the time would simply not work owing to the different table structure and database environment.";

(4) For this reason, "Drips' counsel in *Berman* did not even object to the production as the data was stored in a manner that made identification and extraction relatively simple.";

(5) In addition, "Drips now possesses much more data and many more clients, meaning that the day-to-day demands on its production server resources are much higher than at the time of the *Berman* extraction and that the processing time needed to pull the bulk records today is much higher than it was at the time of *Berman*.";

(6) For that reason, "[w]hereas the *Berman* production was extracted in a relatively short timeframe—no one I have spoken to has been able to tell me precisely how long it took—the toll on Drips' production server today would be much higher and is expected to take ~700 hours, as laid out in Mr. Martindale's declaration.";

(7) "While the server capabilities have not changed since *Berman,* as just explained the *Mantha* production will put far more strain on the production server resources because: i) the coding to search for the records at issue will need to be more extensive (as explained in Mr. Martindale's declaration); ii) the table structure of the archive is not optimized for the extraction as it fortuitously was for the *Berman* extraction; iii) the additional processing burden on the servers occasioned by Drips new clients and business workflows that did not exist at the time of *Berman*; and iv) the far greater amount of data that needs to be searched in the archive system than existed in the table at issue in *Mantha.*";

(8) "Drips only has production server resources. Tying up those servers for 700 hours of computations related to the *Mantha* production means that Drips' core communications platform product will be in jeopardy of significant delays and possible failure during that lengthy timeframe."; and

(9) "[T]he *Berman* data was not audited by Drips. It was simply produced out of a table and transferred to counsel. That was reasonable in *Berman* given the simplicity of the pull. But it would not be reasonable here when the search requires multiple parameters to identify potentially responsive data across a greater number of campaigns and in a data environment when unrelated data—i.e., records belonging to other Drips customers—might be easily ensnared in common coding efforts. Drips contemplates auditing any production in response to the subpoena to make sure the custom code written to identify and extract responsive data elements from the archive actually worked as it was supposed. This too adds time."

*See* Ex. 1.

Attorney Troutman has also noted that, while QuoteWizard has offered "resources" to assist Drips with the production,[1] even with this offer, this would require "additional work by [Drips's] system architects and developers above and beyond the ~500 hours of development time already contemplated by the project. Additionally, Drips relates that it would build a more complex system that allows 'multi-threading' to take advantage of the upgraded server capabilities. That would speed up the processing but, again, would add development time."  Ex. 1.

Attorney Troutman also noted that Drips has offered to "extract a sampling of data" using "whatever criteria [the Parties herein] choose … for Drips to research and provide information on as quickly as possible."  Ex 1.  QuoteWizard notes that it would freely agree to this proposal, but understands that Plaintiff's counsel has flatly refused it.

---

[1] Although QuoteWizard maintains that the records at issue are not within its control and it should not be forced to subpoena the records and possibly pay for cost-shifting to try to obtain them where Plaintiff has requested them, QuoteWizard has explored every possible avenue to get Drips to cooperate, including offering to provide substantial resources to assist in the production.  But to date, Drips has not agreed to produce the records at issue even with this offer; QuoteWizard will continue in good faith to negotiate this point with Drips while preserving all rights in litigation.

In closing, QuoteWizard notes that Attorney Troutman in his e-mail stated that "Drips reserves its right to present all applicable facts, and in an admissible manner, when procedurally appropriate to do so." Ex 1. It is QuoteWizard's understanding that Drips is choosing not to file anything directly in this case in response to ECF No. 175. It is likely that Drips will choose to present briefing and/or factual evidence relating to undue burden and specifically the production in the Berman Case in *Drips Holdings, LLC v. QuoteWizard.com, LLC*, Case No. 5:21-mc-00017-PAB (N.D. Ohio) (Drips's motion to quash QuoteWizard subpoena seeking the 46,000 consumer communications in the exclusive possession of Drips).

Plaintiff has moved to intervene and transfer the N.D. Ohio matter to this Court. Although Drips has opposed that request, QuoteWizard has assented to transfer to avoid the serious possibility of that Court ruling differently than this Court on the same issues (relevance, proportionality, undue burden, etc.) with respect to the same records. *See Drips Holdings, LLC v. QuoteWizard.com, LLC*, Case No: 5:21-mc-00017-PAB (N.D. Ohio), Dkt. No. 9 (motion to intervene/transfer); No. 13 (QuoteWizard's assent to transfer); No. 14 (Drips's opposition). That motion to transfer is pending a decision in the N.D. Ohio case.

Given QuoteWizard's anticipation that Drips may/will attempt to adduce in the N.D. Ohio matter additional evidence/briefing on the issue of undue burden and specifically with respect to the Berman Case,[2] for example in any reply to QuoteWizard's forthcoming opposition to its motion

---

[2] QuoteWizard has made clear to Drips that it does not believe Drips is entitled to hold back from presenting all arguments and evidence to this Court on the issue of undue burden (especially where given an express invitation to present such arguments and evidence, *see* ECF No. 175) only to present it later to the N.D. Ohio in a strategic decision. However, at base, QuoteWizard cannot control either the actions of Drips (in refusing to produce the records at issue) or its counsel (in choosing, if they do, to hold back certain arguments/evidence from this Court) and should not be unfairly punished for Drips's actions or inactions. If this Court were to reject an undue burden argument but the Court in N.D. Ohio accepted it on an expanded record that included Drips's direct filings, this would be a clearly unjust, inefficient, and troublesome result that unfairly punishes QuoteWizard for Drips's strategic decisions. Therefore, the issue should be decided consistently across the two courts on the same record if possible.

to quash, QuoteWizard requests that this Court, if presently inclined <u>not</u> to find undue burden, reserve such ruling until the Court in N.D. Ohio rules on the pending motion to transfer.  If transferred to this Court, then this Court would likely have the benefit of briefing/filings from Drips in this Court for the first time.

Respectfully submitted,

QuoteWizard.com, LLC,
By its attorneys,


*/s/ Kevin P. Polansky*
Kevin P. Polansky (BBO #667229)
kevin.polansky@nelsonmullins.com
Christine M. Kingston (BBO #682962)
christine.kingston@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
One Financial Center, Suite 3500
Boston, MA 02111
(t) (617)-217-4700
(f) (617) 217-4710

Dated: April 7, 2021

CERTIFICATE OF SERVICE

I, Kevin P. Polansky, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: April 7, 2021                              */s/ Kevin P. Polansky*