# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH MANTHA, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>QUOTEWIZARD.COM, LLC,<br><br>Defendant. | Civil Action No. 1:19-cv-12235-LTS |

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO ITS SHOW CAUSE BRIEFING [ECF NO. 174]

Defendant QuoteWizard.com, LLC ("QuoteWizard") hereby respectfully submits its Reply to the Response filed by Plaintiff Joseph Mantha ("Plaintiff") [ECF No. 179] to QuoteWizard's briefing [ECF No. 174] to the Court's show cause Order [ECF No. 162, p. 13].

### A. Plaintiff's Attempt to Obtain Class Discovery Not Yet Discoverable nor Requested, by Way of his Response, Should be Rejected

The Court's show cause Order required QuoteWizard to address a very narrow issue: "QuoteWizard shall show cause why the Court should not require it, going forward, to ensure preservation of all communications (sent and received) regarding all marketing campaigns conducted by Drips on its behalf in a more easily accessible format." ECF No. 162, p. 13. QuoteWizard addressed this issue in its show cause response. *See* ECF No. 174. The Court then invited Plaintiff to respond to QuoteWizard's response on this narrow issue (*see* ECF No. 176), but instead Plaintiff has submitted a wholly inapposite response that affirmatively requests the Court to order production of "class" records not yet even sought or discoverable in discovery. *See* ECF No. 179.

For the first time, Plaintiff now attempts to draw a distinction between the records at issue in this Court's show cause Order (the text messages by and between Drips Holdings, LLC ("Drips") and consumers on QuoteWizard's campaigns going forward until trial) and what Plaintiff refers to as "Class Call Records," which he defines as Drips's records of when and how Drips contacted a specific consumer separate from the actual communications themselves.[1]

Plaintiff claims to have intimate knowledge of Drips's record-keeping for these so-called "Class Call Records" by way of allegedly receiving similar communications in *Berman v. Freedom Financial Network, LLC et al.*, No. 4:18-cv-01060-YGR (N.D. Cal.) some time prior to the July 2020 filing therein that references these records. *See* ECF No. 179, pp. 2-3.[2] Plaintiff states that these so-called "Class Call Records" should be ordered to be produced immediately despite that class discovery has not yet opened and no class certification motion has been filed much less granted. <u>Yet, Plaintiff has never petitioned the Court for production of these "Class Call Records" prior, despite being aware that Drips (according to Plaintiff) maintains such records</u>. Moreover, Plaintiff claims that, in counsel's experience, these records are easily preserved and produced by Drips. *See* ECF No. 179, p. 2 ("Class Call Records typically summarize entire text telemarketing campaigns, involving hundreds of thousands of individual texts, in one electronic file, and are typically stored in .csv or .txt format. These records can be easily transmitted via email or via FTP transfer. In fact, this is exactly how Drips itself stores such records.").

---

[1] QuoteWizard does not endorse Plaintiff's distinction because Drips itself has not defined its records in such a manner and such records as to other consumers to date have not been subject to any discovery in this case. In fact, certain portions of Drips's deposition testimony suggests that data concerning when and how consumers were contacted by Drips is maintained in the same manner as the communications themselves. QuoteWizard is aware only that any data that Drips has concerning the putative classes is being preserved by Drips because Drips's counsel has confirmed the same.

[2] A review of the referenced filing in *Berman* does not make clear the exact nature of the records produced by Drips therein. The plaintiff's expert in that case described records received from Drips as "[c]all logs."

Plaintiff's request for immediate production by Drips of a category of records Plaintiff defines and identifies for the first time is entirely unsupported, as Plaintiff himself admits that these records are apparently preserved and maintained by Drips and subject to production at the appropriate time. Plaintiff offers no explanation why these records would need to be produced now, before class discovery has even opened, rather than subjecting them to the normal discovery process at the appropriate time. QuoteWizard continues to have concerns that Plaintiff may be pursuing class records before Phase II class discovery opens, and before a summary judgment motion on his individual claims is briefed and decided, in order to find a new or additional putative class representative due to issues surrounding Plaintiff's business use of his cell phone (as relevant to Count II) or for other reasons.[3] There is no good reason for class discovery to open now, much less for the Court to require the immediate production of certain class records outside of the normal discovery process.

But Plaintiff's request for relief, not made by motion as required, is also entirely inapposite to the Court's limited show cause order focusing on the Drips and consumer communications on a going forward basis. This was the limited category of records that the Court ordered briefing on. *See* ECF 162, p. 13. As to *those* records, part of the basis for the Court's show cause order was its prior finding (subject to a pending appeal) that communications between Drips and consumers on QuoteWizard's behalf are within QuoteWizard's control. This is the only arguable basis that QuoteWizard could be required to preserve records held by a non-party (notwithstanding that Drips is already preserving the data). Plaintiff has never argued to the Court, and this Court has never found, that there are a separate category of records (the so-called "Class Call Records") maintained

---

[3] Discovery in this case, namely text messages between Plaintiff and a friend, confirmed these concerns; Plaintiff told his friend that there was a plan to add another plaintiff whose "[c]ase will be much stronger." No such additional plaintiff has materialized to date, however.

3

by Drips that are likewise in QuoteWizard's control. Simply put, Plaintiff cannot utilize the Court's limited show cause Order as a basis to request new class discovery that goes far beyond what is currently at issue in this case. Indeed, class discovery has not yet even opened (*see infra* Section C) and therefore no class discovery has been requested, much less needs be produced at this early stage.

As the Court should note, Plaintiff does not argue—nor could he in good faith—that these newly identified "Class Call Records" are not being preserved by Drips. To the contrary, Plaintiff notes that Drips easily produced similar records in *Berman*.

Moreover, under the applicable rules, Plaintiff must first conference with QuoteWizard and then file a motion with the Court to support his new requests for affirmative relief. He cannot circumvent this procedure by tacking on these substantial, new, affirmative requests for relief to an unrelated show cause briefing.

As to the records at issue in the Court's show cause Order—the communications between Drips and consumers on QuoteWizard's behalf on a going forward basis until trial—Plaintiff freely admits that "Mr. Mantha, at this time, is not particularly interested in obtaining every single one of the Individual Text Messages, presumably that would be produced in millions of individual data files." ECF No. 179, p. 3. This admission alone is enough to preclude any order that QuoteWizard should be required to build new processes at its own time and expense to take possession of Drips's consumer communications on a going forward basis in the event they may become subject to discovery sometime during Phase II class discovery (notwithstanding that Drips is preserving the data already). Plaintiff himself is conceding that he might never even *ask* for such discovery, much less obtain it in the face of a discovery dispute. This is in addition to all of the arguments made in

QuoteWizard's show cause briefing, including noting that Courts typically do not require cost-shifting *before* certain records are subject to discovery.

### B. Plaintiff Was Aware of and Never Objected to Drips's Preservation Methods

In addition to the fact that Plaintiff admits that he is "not particularly interested" "at this time" in obtaining in discovery the records at issue in this Court's show cause Order, QuoteWizard also notes that the Court's preservation concerns (regarding Drips's "unwieldy" systems) are not shared by Plaintiff.

Plaintiff's counsel learned the *exact* system that Drips uses to preserve consumer data when Plaintiff took Drips's Fed. R. Civ. P. 30(b)(6) deposition on December 17, 2020. Drips's deponent, Tom Martindale, testified that data is transferred from its production database to cold storage after a certain period of time, consistent with the Mr. Martindale's later Declaration that prompted the Court's show cause Order. Despite this testimony, Plaintiff's counsel never expressed concerns about preservation of the data in this manner, whether to QuoteWizard or to the Court (and to QuoteWizard's knowledge, not to Drips either). This is likely why Plaintiff's show cause response does not endorse the Court's concerns about the "unwieldy" systems or ask that the Court require QuoteWizard to preserve this data in a different format.

### C. Class Discovery Has Not Yet Opened; the Parties Agreed to Stay the Same Until the Court's (Pending) Resolution of the "Do Not Call" Records Dispute

Not only is Plaintiff's counsel's request for immediate production of class records inapposite to the Court's show cause Order, the request is separately inappropriate. Class discovery has not yet opened in this case and therefore no class discovery has been *requested* to date.

Indeed, the case is still in Phase I discovery on Plaintiff's individual claims in part due to a request of Plaintiff to hold QuoteWizard's second deposition date. Namely, Plaintiff has sought

5

to depose QuoteWizard a second time but has asked QuoteWizard to hold such deposition in abeyance until the Court resolves the ongoing dispute over the "do not call" records. QuoteWizard agreed, and the Parties further agreed to stay all discovery and other pertinent deadlines until such time. *See* Exhibit 1 – *February 2021 E-mail Exchange between Counsel*.

Thus, Plaintiff's request that the Court immediately require QuoteWizard and/or Drips to produce certain "Class Call Records" violates the Parties' agreement and the current discovery schedule in this Court. Class discovery has not yet opened. Moreover, such records must first be sought either via Fed. R. Civ. P. 34, allowing QuoteWizard to first make any appropriate objections, or (more appropriately) directly from Drips via Fed. R. Civ. P. 45.[4]

QuoteWizard also notes that Plaintiff's blanket request for records concerning all consumers is dangerously overbroad. Among other things, the eventual class discovery in this case must logically be limited to consumers whose leads QuoteWizard purchased from the same lead seller (RevPoint Media, LLC) and which originated from the same lead source (www.snappyautoinsurance.com). Plaintiff could never logically attempt to certify a class of consumers whose leads were sold to QuoteWizard from various lead sellers and whose leads originated from countless lead sources; there would be an utter lack of commonality where Plaintiff's working class theory is that his lead was allegedly fraudulently generated (he has never identified the person or entity he claims engaged in such fraud). But none of these issues are presently before the Court or appropriate for resolution in this context.

Similar to his request for immediate production of class records, Plaintiff's request for a summary judgment briefing schedule is likewise contrary to Plaintiff's request to defer the second

---

[4] As to class discovery, QuoteWizard has and maintains information for each consumer such as lead data, when some of the lead data was provided to Drips, and other information concerning the lead/campaign. QuoteWizard does not have Drips's communications with the consumers or information concerning when and how many times the consumer was contacted, which is in Drips's exclusive possession.

QuoteWizard deposition, and therefore cause the stay of all other deadlines, pending the Court's resolution of the "do not call" records dispute.  QuoteWizard remains open to agree to a summary judgment briefing schedule directly with Plaintiff, but Plaintiff has not offered such a schedule or discussed the same with QuoteWizard's counsel before making this inapposite new request in his show cause briefing.[5]

The expectation and agreement of the Parties has always been that the Parties would brief summary judgment on Plaintiff's individual claims before class discovery opens, which makes abundant sense to preserve the Parties' resources in the event summary judgment is granted in whole or in part, thus either mooting or limiting subsequent class discovery/proceedings.

The further expectation and general agreement was that the Parties would require 30 days from the end of Phase I discovery to brief summary judgment, which QuoteWizard submits is still reasonable.  Such common expectation derived from one of the Court's initial scheduling orders.  *See* ECF No. 39 (summary judgment motion due approximately 30 days after close of fact discovery).  Given that Phase I discovery has not yet closed, it appears that a summary judgment briefing schedule awaits the conclusion of the "do not call" records dispute <u>and</u> Plaintiff's second deposition of QuoteWizard.  But QuoteWizard remains willing to advance the summary judgment briefing schedule before such time.

---

[5] Moreover, with the possible exception of a Local Rule 7.1. conference that has not yet been held, QuoteWizard does not have an obligation to tell Plaintiff far in advance which specific arguments it intends to brief in its summary judgment motion.  Nevertheless, Plaintiff's counsel is well aware that QuoteWizard will be advancing arguments in such motion that go beyond the issue of consent, such as the fact that Plaintiff used his cell phone number primarily or substantially in connection with his employment.  Given that the Court expanded the scope of Phase I discovery beyond consent (*see* ECF No. 75, p. 5 ("After careful consideration of the various submissions by the parties regarding their myriad disputes, the Court now concludes that Phase I of discovery should address all issues related to Plaintiff's individual claims and that class discovery occur in Phase II.")), there is obviously no ruling that precludes QuoteWizard from advancing any and all arguments it has with respect to Plaintiff's individual claims.

### D. Any Preservation Order Would be Further Inappropriate in Light of the Now-Narrowed Scope of this Case

In addition to all of the reasons set forth in QuoteWizard's show cause briefing addressing why QuoteWizard should not be required to preserve Drips's communications on a going forward basis where Drips is already preserving them, QuoteWizard also notes a new factor that post-dates its show cause briefing.

Namely, the U.S. Supreme Court issued its decision in *Facebook, Inc. v. Duguid*, 2021 WL 1215717 (2021) (No. 19-511) (holding that definition of "ATDS" requires the use of random or sequential number generator, and does not apply where a device only stores/dials numbers without use of such random/sequential generator). Drips contacted Plaintiff (and any putative class member) directly—not using a random or sequential generator—upon being provided with a specific telephone number to contact by QuoteWizard. As a result, in light of *Duguid*, there is no good faith basis for Plaintiff to proceed with Count I pleading the use of an ATDS.[6] QuoteWizard respectfully suggests that the Court should take this into consideration when issuing any further rulings with respect to the show cause Order. Not only is this a $12,000 (at most) individual case, *Duguid* (from an objective perspective) has mooted one of two claims and one of two proposed nationwide classes herein.

[*Signatures on Next Page*]

---

[6] QuoteWizard has asked Plaintiff's counsel whether Plaintiff will be voluntarily dismissing Count I in light of *Duguid* and the undisputed evidence in this case that Drips did not use a random or sequential number generator; Plaintiff's counsel responded that "we are still assessing" without specifying what remained to be "assessed." QuoteWizard plans to move for summary judgment on the issue should Plaintiff refuse to voluntarily dismiss that claim.

Respectfully submitted,

QuoteWizard.com, LLC,
By its attorneys,

Dated: April 12, 2021

*/s/ Christine M. Kingston*
Kevin P. Polansky (BBO #667229)
kevin.polansky@nelsonmullins.com
Christine M. Kingston (BBO #682962)
christine.kingston@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
One Financial Center, Suite 3500
Boston, MA 02111
(t) (617)-217-4700
(f) (617) 217-4710

CERTIFICATE OF SERVICE

I, Christine M. Kingston, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: April 12, 2021                    */s/ Christine M. Kingston*