**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| | : | |
| JOSEPH MANTHA on behalf of himself and others similarly situated, | : | |
| | : | |
| Plaintiff, | : | Case No. 1:19-cv-12235-LTS-PK |
| | : | |
| v. | : | |
| | : | |
| QUOTEWIZARD.COM, LLC | : | |
| | : | |
| Defendant. | : | |
| | : | |
| _____/ | | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO QUOTEWIZARD'S MOTION FOR SUMMARY JUDGMENT[1]**

## I.     INTRODUCTION

QuoteWizard petitions the Court to grant summary judgment in its favor (the "Motion"). In support, it makes five arguments.[2] First, QuoteWizard claims that cell phone numbers are not entitled to the protections of the Telephone Consumer Protection Act, 47 U.S.C. § 227(c) ("TCPA"), or the National Do Not Call Registry. Second, QuoteWizard claims Mr. Mantha's cell phone, in particular (the "Wireless Number"), is not entitled to the protections of the Do Not Call Registry because Mr. Mantha used his personal Wireless Number to make work related calls in association with his employment as the Director of group homes for children with disabilities.

---

[1] Mr. Mantha has also moved for the entry of partial summary judgment in his favor. *See* ECF #205-206. References herein to ECF#210, Plaintiff's Statement of Facts In Support of Motion for Partial Summary Judgment, are noted as "PSOF at ¶_." References herein to Mr. Mantha's response to QuoteWizard's Statement of Facts in Support of its Motion for Summary Judgment are noted as "P Response to DSOF at ¶_."

[2] References herein to the arguments set forth in Defendant's Memorandum of Law In Support of Its Motion for Summary Judgment, ECF #202, are noted as "Defendant's Memo at pg. _".

Third, QuoteWizard claims it is being victimized by Mr. Mantha who, by suing QuoteWizard to

hold it to account for its suspected massive violation of the TCPA[3], is allegedly engaged in a

"money-making scheme" that disqualifies him from asserting his rights under the TCPA. In this

regard, the aggrieved QuoteWizard claims that Mr. Mantha lacks standing to enforce the TCPA

because he purportedly welcomed the text spam at issue as part of a scheme to make money and

was not damaged as a result.[4] Fourth, QuoteWizard claims its telemarketing texts messages, sent

to millions of consumers nationwide, seeking to sell consumers auto-insurance, were not

"solicitations" and, accordingly, the TCPA does not apply. Fifth, QuoteWizard claims that,

although two and a half million consumers complained after receiving QuoteWizard's

telemarketing text spam, QuoteWizard at all times, acted in good faith and subjectively believed

Mr. Mantha (and apparently the other 2.5 million consumers who complained) consented to

---

[3] Although QuoteWizard still has not disclosed how many spam telemarketing texts it sent to consumers, it recently revealed that ***millions*** of consumers who received such spam texts on their personal telephone lines complained demanding that such texts cease. *See ECF# 184, Defendant's Notice to Court Regarding Supplemental, Corrected Production,* (QuoteWizard acknowledges error in its prior discovery responses disclosing that the number of consumers who submitted Do Not Call complaints after receiving QuoteWizard telemarketing texts was not 46,000 as represented previously to the Court, but in fact was over ***two and a half million complaints***). A compilation of these DNC Complaints was attached as an exhibit to Mr. Mantha's Motion for Partial Summary Judgment. *See* ECF #210, <u>Exhibit 5</u>, Tabs A & B. Even when considering this small sampling of DNC Complaints produced, the raw outrage expressed by consumers responding to QuoteWizard's telemarketing spam defies any conceivable claim that these consumers welcomed QuoteWizard's spam texts, as alleged, and expressly consented to receive text telemarketing messages from QuoteWizard.

receive telemarketing text spam from QuoteWizard and, therefore, is entitled to blanket immunity for its suspected massive violation of the TCPA.

For the following reasons, the Motion should be denied. This case should then be allowed to proceed to class discovery, class certification, summary judgment and then on to trial for remaining outstanding issues if any.

## II.    ARGUMENT

### A.    The DNC Registry Applies To Cell Phones Subscribed To Consumers

In its lead argument on summary judgment, QuoteWizard essentially asks this Court to grant it a free pass as to its suspected massive violation of federal telemarketing law. *See* ECF #202, Defendant's Memo of Law at pg. 7-11. Under its self-interested view of the TCPA, cell phones are simply not entitled to the protections of the Do Not Call Registry. Accordingly, QuoteWizard reasons, the many millions of telemarketing spam texts sent to consumers nation-wide are not subject to the TCPA. Of course, this is not the law. In enacting the Do Not Call provisions of the TCPA, Congress chose to extend protection to "residential telephone subscribers" a term it explicitly acknowledged easily extends to the non-business subscribers of wireless telephone lines. *See* 47 C.F.R. § 64.1200 (c)(2)(limiting DNC Registry to "residential" subscribed numbers).[5] In this regard, the Code of Federal Regulations at 47 C.F.R. § 64.1200(e) also provides that the:

> "rules set forth in paragraph (c)[6] … of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG

---

[5] The Federal Communication Commission ("FCC") possesses authority to issue implementing rules and regulations for the TCPA. S*ee* 47 U.S.C. § 227(c)(1)(A-E) and (c)(2) and (c)(3). Pursuant to that authority, the FCC promulgated regulations relating to the implementation, interpretation of the TCPA. *See* 47 C.F.R. § 64.1200(a)-(m).

[6] Paragraph (c) of 47 C.F.R. 47 C.F.R. § 64.1200 relates to the restrictions imposed on telemarketers by the TCPA and the DNC Registry.

Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991."

*See* 47 C.F.R. § 64.1200(e). At the time the DNC Registry provisions of the TCPA were enacted, the Code of Federal Regulations specifically relating to "Telecommunications" defined a "residential subscriber" as a "subscriber to a telephone exchange service that is not a business subscriber." *See* 47 C.F.R. § 64.2305(d).[7] A "business subscriber" was defined as a "subscriber to a telephone exchange service for businesses." See 47 C.F.R. § 64.2305(b). Further, the FCC Commission's Report and Order, CG Docket No. 02-238, FCC 03-153, referenced in the text of 47 C.F.R. § 64.1200(e), unequivocally recognized that wireless numbers could be listed on the DNC Registry stating:

> We conclude that the national database should allow for the registration of wireless telephone numbers, and that such action will better further the objectives of the TCPA and the Do Not Call Act. In so doing, we agree with the FTC and several commentators that wireless subscribers should not be excluded from the protection of the TCPA, particularly the option to register on a national-do-not call-list. Congress has indicated its intent to provide significant protections under the TCPA to wireless users.

*See* 18 F.C.C. Rcd. 14014, at ¶33. In that same Report and Order, the FCC went on to recognize that "it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections. *Id* at 36.

Consistent with this legislative authority, courts have repeatedly recognized the protections afforded wireless numbers by the TCPA and the DNC Registry. *See Hodgin v. Parker Waichman LLP*, Civil Action No. 3:14-cv-733-DJH, 2015 U.S. Dist. LEXIS 192262 *9 (W.D. Ky. Sep. 30, 2015) (finding defendant's "assertion that cell phone numbers are not

---

[7] The regulatory definitions of "business subscriber" and "residential subscriber" were enacted in 1999, prior to Congress' creation of the Do Not Call Registry in 2003. *Compare* 47 C.F.R. § 64.1200(e), *citing* 18 FCC Rcd. 14014, 14032, 14043; 2003 FCC LEXIS 3673 at ¶22, 42. (June 26, 2003) (Do Not Call Registry was enacted in 2003) *with* 47 C.F.R. § 64.2305(b) and (d) (effective date of regulations is October 5, 1999).

allowed on the national do-not-call list . . . meritless"); *Stevens-Bratton v. Trugreen, Inc.,* 437 F.Supp.3d 648 (W.D. Tenn. Feb. 4, 2020)[8](reviewing applicable regulations and concluding that cell phones may be listed on the DNC Registry); *Smith v. Truman Rd. Dev., LLC,* No. 4:18-cv-00670-NKL, 2020 U.S. Dist. LEXIS 74330 *37 (W.D. Mo. Apr. 28, 2020) (rejecting contention that wireless numbers cannot be listed on the DNC Registry); *Hand v. Beach Entm't Kc,* 456 F. Supp. 3d 1099, 1120 (W.D. Mo. 2020) (rejecting claim that the TCPA does not apply to wireless numbers and certifying a DNC class action); *Mestas v. CHW Grp. Inc.*, No. 19-CV-792 MV/CG, 2020 U.S. Dist. LEXIS 236357 *32 (D.N.M. Dec. 16, 2020) (rejecting claim that wireless numbers cannot be listed on the DNC Registry).

In support of its claim that the TCPA simply does not apply to cell phones, QuoteWizard recites the textual language of 47 C.F.R. §64.1200(c)(2) which recognizes that the protections afforded the DNC Registry apply to "residential telephone subscribers." QuoteWizard then self-servingly claims "residential telephones" can only include traditional land lines and not wireless telephone numbers. In making this argument, QuoteWizard simply ignores the text of 47 C.F.R. § 64.1200(e) that recognizes that the protections afforded consumers by the DNC Registry extends to their cell phones, and that the FCC in its 2003 Report and Order enacting the DNC Registry, unequivocally recognized that wireless numbers could be listed on the DNC Registry. *See* 18 F.C.C. Rcd. 14014, at ¶33, ¶36.

QuoteWizard further offers the Court a *Merriam's Dictionary* definition of the term "residential," and argues that the protections of the DNC Registry should only apply to telemarketing calls made to a phone located within a residence. This argument, however, ignores

---

[8] In this case, the Court considered and rejected many of the cases cited by QuoteWizard in support of its contention that cell phones may not be listed on the DNC Registry. *See Stevens-Bratton,* 437 F.Supp.3d at 655.

the above authority and that the Code of Federal Regulations relating to "Telecommunications" defines a "residential subscriber" as a "subscriber to a telephone exchange service that is not a business subscriber." See 47 C.F.R. § 64.2305(d).[9]

The case law cited by QuoteWizard in support of its contention that wireless numbers are not entitled to the protections of the DNC Registry is similarly un-availing as the cases either ignore the above regulatory authority, or have nothing to do with the DNC Registry.

- *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 362 n.7 (E.D. Pa. 2019). In this case, the plaintiff received multiple telemarketing calls from the defendant in alleged violation of the TCPA and filed suit. The defendant defaulted. The plaintiff then moved for the entry of default judgment seeking multiple statutory damages for each telemarketing. The Court ultimately awarded the Plaintiff $33,000 in statutory damages. In a footnote, however, and although neither party raised or briefed whether wireless numbers are "residential telephone" lines subject to the TCPA and the DNC Registry, the Court observed that a wireless number was not a 'residential telephone' subject to the protections of the TCPA and the DNC Registry. As the defendant did not raise this argument, however, the Court *did not consider this argument* in its findings.

- *Cunningham v. Caribbean Cruise Lines, Inc*., 2016 U.S.Dist. LEXIS 179758 (S.D.Fla Dec. 2016). In this case, the Court granted a motion to dismiss plaintiff's claims under 47 U.S.C. ¶227(b) of the TCPA that prohibits telemarketing via pre-recorded message. The case had nothing to do with the DNC Registry and whether cell phones may be listed on the DNC Registry.

- *Cunningham v. Politi*, 2019 U.S.Dist. LEXIS 102447 (E.D.Tex. April 2019) (finding cell phones may not be listed on the DNC Registry and collecting cases). This outlier case does stand for the stated proposition, however, the case and the collected cases cited within, include no discussion whatsoever of 47 C.F.R. § 64.1200(e), and 18 F.C.C. Rcd. 14014, at ¶33, ¶36 that unequivocally recognize that wireless numbers can be listed on the DNC Registry.[10]

---

[9] It is undisputed that the Wireless Number on which Mr. Mantha received QuoteWizard spam texts is his personal number, and is not subscribed to any business. *See* PSOF at ¶27-29 and ¶85-98.

[10] Indeed, courts interpreting *Politi*, even in the same state, have recognized its outlier holding that is contrary to "common sense". *See Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 131 (N.D. Tex. 2020) ("Defendants suggest that cell phones, as a matter of law, cannot be 'residential subscribers.' *See Cunningham v. Politi*, No. 4:18-cv-00362-ALM-CAN, 2019 U.S. Dist. LEXIS 102447, 2019 WL 2517085, *4 (E.D. Tex. Apr. 30, 2019). But the Court disagrees with this

- *McEwen v. NRA of Am.,* 2021 U.S.Dist. LEXIS 72133 (D.Me. April 2021). In this case the Court actually denied at the Motion to Dismiss stage the claim that wireless numbers cannot be listed on the DNC Registry. In *dicta*, the Court went on to surmise that the FCC's extension of the DNC Registry to cell phones may have exceeded the scope of the statute's enabling language, but also that such may be a "losing argument" given deference to administrative agencies and generously imprecise enabling legislation. *Id.* at *18.

Finally, the TCPA is a remedial statute that should be interpreted broadly to effectuate its legislative intent. The intent of Congress in enacting the TCPA and the regulations enacting the DNC Registry was to protect the personal phone numbers of consumers- including their wireless numbers- from intrusive telemarketing calls. *See Breda v. Cellco P'ship,* 934 F.3d 1, 11 (1st Cir. 2019) (recognizing the TCPA as a remedial statute to be interpreted broadly to effectuate its intent). QuoteWizard asks this Court to eviscerate the TCPA and the DNC Registry by denying wireless numbers the protections afforded by the TCPA and the DNC Registry. For all of the above reasons, QuoteWizard's motion for summary judgment on this basis should be denied.[11]

### B.       The DNC Registry Applies To Cell Phones Subscribed To Consumers

Next, QuoteWizard claims that even if wireless numbers, generally, may be listed on the DNC Registry, the Wireless Number assigned to Mr. Mantha by Verizon and subscribed to him personally may not. *See* ECF #202, Defendant's Memo of Law at pg. 12-15. In this regard, QuoteWizard claims that wireless numbers subscribed to consumers may not be listed on the DNC Registry if they are used at all for business purposes. In QuoteWizard's view of the law, if a consumer uses their personal cell phone to make a certain number of work-related calls, those calls disqualify the personal cell phone from the protections of the TCPA and the DNC Registry.

---

isolated authority, and instead follows common sense and the greater weight of authorities").

[11] As it is undisputed that Mr. Mantha's Wireless Number is subscribed to him personally and not to any business, Mr. Mantha's motion for partial summary judgment as to whether the protections afforded wireless numbers by the TCPA and the DNC Registry should be granted.

In an effort to support this claim, QuoteWizard then parses through Mr. Mantha's calling records and claims he made too many allegedly "work" calls for his Wireless Number to qualify for the protections of the TCPA and the DNC Registry. Again, this is not the law.

As explained above, The DNC Registry was intended by Congress to protect the personal telephone numbers of consumers be they traditional land lines or wireless cell phones. *See* 47 C.F.R. § 64.1200(e) (citing 18 F.C.C. Rcd. 14014, 14039-40 ¶ 28-36) (recognizing the privacy rights of wireless subscribers and recognizing that DNC protections afforded by 47 U.S.C. 227(c) extend "to wireless telephone numbers"). Such protections, however, do not apply to numbers subscribed to businesses. *See* 47 C.F.R. § 64.1200 (c)(2)(limiting DNC Registry to residential subscribed numbers); 18 FCC Rcd. 14014 at ¶ 37 ("The national do-not-call rules will also not prohibit calls to businesses"). *See also*, *Smith v. Truman Rd. Dev., LLC,* 2020 U.S. Dist. LEXIS 74330 *38-39 (recognizing that the national do-not-call registry does not permit businesses to register their numbers with the registry and that the FCC has made clear that calls to businesses impermissibly registered on the registry do not violate the DNC regulations).

Accordingly, telemarketing calls to numbers listed on the DNC Registry that are "subscribed" to consumers violate the TCPA. Telemarketing calls to numbers listed on the DNC Registry that are "subscribed" to businesses do not violate the TCPA. Determining the difference between a phone number that is protected by the DNC Registry, and one that is not, simply requires an examination as to whether the number is subscribed to a consumer or to a business. A "business subscriber" is defined by the Code of Federal Regulations as a "subscriber to a telephone exchange service for businesses." *See* 47 C.F.R. § 64.2305(b). A "residential subscriber" is specifically defined as a "subscriber to a telephone exchange service that is not a business subscriber." *See* 47 C.F.R. § 64.2305(d). Accordingly, land lines and wireless numbers

subscribed to consumers are protected by the DNC Registry. Land lines and wireless numbers subscribed to businesses are not.

One exception to this bright definitional line, however, arises when a consumer operates a home-based business. In a 2005 Report and Order, telemarketing industry interests petitioned the FCC to exempt from the provisions of the TCPA and the DNC Registry telemarketing calls made to "home based businesses." *See Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991,* 20 FCC Rcd. 3788, 3793 at ¶14 (2005) (Direct Marketing Association petitions the FCC to allow telemarketing calls to numbers listed on the DNC Registry if those numbers are used by a home-based business). In response, the FCC denied the request for the exemption but concluded that it would scrutinize telemarketing calls to home-based businesses to determine "whether or not the call was made to a residential subscriber." *Id. See also, Baker v. Certified Payment Processing, L.P.*, 2016 U.S. Dist. LEXIS 78368 * 7 (C.D.Ill. June 2016) (recognizing the protections afforded by the DNC Registry to "home based business" that are "residential subscribers). Accordingly, where a DNC listed phone number is used as a home-based business, an inquiry would have to be made as to whether or not that particular number was "made to a residential subscriber" in order to determine if that number is protected by the TCPA and the DNC Registry.

Finally, to address industry concerns that cellular wireless numbers subscribed to businesses were impermissibly being listed on the DNC Registry, the FCC has similarly noted that a consumer who lists their cellular number on the DNC Registry will be presumed to be a "residential telephone subscriber" entitled to the TCPA protections afforded by the DNC Registry. *See* 18 F.C.C. Rcd. 14014 at ¶36. To ensure this "residential telephone subscriber" presumption is not abused, the FCC further recognized that, in the context of an enforcement

9

action, a court may require the consumer/subscriber "to provide further proof of the validity of the presumption" that the wireless number listed on the DNC Registry is entitled to the protection afforded by the TCPA and the DNC Registry and, in fact, is not subscribed to a business. *Id. See Barton v. Temescal Wellness, LLC,* 2021 U.S.Dist LEXIS 42211 *13 (March 8, 2021) (D. Mass, Hillman. J.) (reviewing applicable law and denying a Motion to Dismiss in a TCPA telemarketing text class action where defendant claimed plaintiff's cell phone was not entitled to the protections of the DNC Registry).

Applied here, it is undisputed that the Wireless Number was listed on the Do Not Call Registry long prior to Mr. Mantha's receipt of illegal QuoteWizard telemarketing texts. *See* PSOF at ¶30. The Wireless Number is, therefore, entitled to the presumption that it was a number assigned to a "residential subscriber" and is entitled to the protections of the DNC Registry. Mr. Mantha, however, does not merely rely on this presumption and has provided the Court with additional undisputed facts and evidence proving that the Wireless Number is assigned to a "residential telephone subscriber":

- The Wireless Number is subscribed to Mr. Mantha individually and is billed to him in his name at his residential address and is used as a personal cell phone. *See* PSOF at ¶27-29 and ¶85-98.

- The Wireless Number is not subscribed to any business. *Id.* at ¶27-29, and ¶89.

- Mr. Mantha does not hold the Wireless Number out as a business line, does not operate a home based business, and does not declare the Wireless Number as a business expense. *Id.*

- The texts were targeted to Mr. Mantha, individually, seeking to sell him personal auto insurance, and were not targeted at his employer. *Id.* at ¶32-48.

- Mr. Mantha's employer confirmed the Wireless Number is not a business number and, in fact, is Mr. Mantha's personal cell phone number over which the employer does not exercise control. *Id.* at ¶98.

QuoteWizard, however, apparently believes the manner in which the Wireless Number is

subscribed is irrelevant. It claims that whether a particular wireless number is entitled to the protections of DNC Registry depends solely on how it is used. QuoteWizard then goes to great lengths to parse through Mr. Mantha's calling records and ultimately contends that he used his Wireless Number to make and receive work related calls nearly twenty-four hours a day, seven days a week.[12]

In QuoteWizard's reading of the TCPA, if a personal wireless number subscribed to a consumer is used by the consumer for work-related calls, it loses the protections afforded that wireless number by the TCPA and the DNC Registry. In support, QuoteWizard relies on *Lee v. Loandepot.com, LLC,* 2016 U.S.Dist. LEXIS 110100 (D.Kan 2016). In *Lee,* the Court granted summary judgment in favor of the defendant dismissing plaintiff's claims for violation of the TCPA and the DNC Registry. In dismissing a *pro se* plaintiff's claims, the Court noted that the plaintiff's phone was a cell phone and not a landline, that the plaintiff had initiated an enforcement action, and therefore bore the burden to prove that his cell number was entitled to the protections of the DNC Registry. The Court then assumed that to demonstrate whether the number was entitled to DNC protection, the plaintiff had to submit evidence as to how the

---

[12] Even this characterization of Mr. Mantha's use of the Wireless Number is misleading. QuoteWizard claims that "Mr. Mantha made or received at least 1,400 work calls on his cell phone in 2019." Many of these calls, however, were to friends of Mr. Mantha who also happen to be co-workers. QuoteWizard has no idea what was discussed on these calls, and whether they were personal or business in nature. Further, the call records offered by QuoteWizard in support of its self-serving claims as to Mr. Mantha's use of his personal cell phone omit text communications, a form of communication used extensively by Mr. Mantha to communicate with family and friends. Mr. Mantha has testified under oath that he "overwhelmingly" used his personal cell phone for personal purposes. *See ECF #210,* Plaintiff's Statement of Facts In Support of Motion for Partial Summary Judgment at Exhibit 6, Plaintiff's Answers to Interrogatories as Supplemented at #7. Ultimately, however, the fact that Mr. Mantha made and received a significant number of work related phone calls on his personal Wireless Number does not change the fact that the Wireless Number is subscribed to Mr. Mantha, individually, is used by Mr. Mantha as his personal cell phone, and is not subscribed to any business.

number was "used" and not how that number was subscribed. *Id.* The Court specifically found that the plaintiff had to come forth with some evidence that the number was used for personal purposes. Because the plaintiff failed to submit any evidence as to how the number was used, the claims were dismissed. *Id.*[13]

As detailed above, however, relevant to whether a wireless number is entitled to the protections of the DNC Registry is whether the number is subscribed to a business or not. No "use" test appears anywhere in the statute or the applicable regulations. Further, in this case, it is undisputed that Mr. Mantha used the Wireless Number as his personal phone, and that the telemarketing texts at issue were directed to Mr. Mantha and not to his employer. *See* PSOF at ¶27-29 and ¶85-98. Accordingly, even under the use test adopted by the court in *Lee*, Mr. Mantha has established that he used the Wireless Number for personal reasons and, as such, it is entitled to the protections of the TCPA and the DNC Registry. Finally, *Lee v. Loandepot.com* in no way stands for the proposition, as claimed by QuoteWizard, that a personal cell number listed on the DNC Registry loses its statutory privacy protections if it is used for both personal and work-related purposes.[14]

Next, QuoteWizard refers the Court to *Blevins v. Premium Merch. Funding One, LLC*, No. 2:18-cv-377, 2018 U.S. Dist. LEXIS 183362, at *6-7 (S.D. Ohio Oct. 25, 2018). In *Blevins,* the Court **rejected** defendant's claim that the plaintiff's cell number was used for business

---

[13] In none of the cases offered by QuoteWizard in support of its claim that the manner in which a cell phone is used is determinative of whether it can be listed on the DNC Registry did the courts consider that the definitions of "residential subscriber" or "business subscriber" at 47 C.F.R. § 64.2305(b) and (d).

[14] QuoteWizard also cites to *Stevens-Bratton v. Trugreen. Inc.,* 437 F.Supp.3d 648 (W.D.TN, Feb. 2020) for this same proposition. The Court in *Stevens* adopted the *Loan Depot* "use" test and granted summary judgment to the defendant where the plaintiff failed to introduce evidence as to how the wireless number was used. The case is distinguishable for the same reasons.

purposes, and accordingly, was not entitled to the protections of the TCPA and the DNC

Registry. *Id.* at *1-3. QuoteWizard cites to this case for the limited proposition that courts will

look to the "facts and circumstances surrounding a particular case…" before deciding whether a

cell phone that is used for both business and residential purposes is entitled to the protections

afforded by the TCPA and the DNC Registry. *Blevins,* however, involved a call to a cell that was

used by a consumer for an at home business. As explained above, in rejecting the telemarketing

industry's request for a blanket exemption allowing telemarketing calls to numbers listed on the

DNC Registry but used by home-based businesses, the FCC recognized that in those limited

cases a factual determination will be made to determine that the DNC listed number being used

by a home-based business is, in fact, is a residential subscribed telephone number. There is no

claim here that Mr. Mantha's cell phone is associated with any home-based business. Further,

*Blevins* offers no support whatsoever for QuoteWizard's claim that a personal cell phone that is

used to make work related calls, loses any protections afforded by the TCPA and the DNC

Registry. To the contrary, the Court in *Blevins* recognized that even cell phones used for an at

home business may be entitled to the protections of the TCPA and the DNC Registry if the calls

at issue were "made to a residential subscriber." *Id.* at *6.

The final three cases offered by QuoteWizard in support of its novel claim that a

consumer who uses their personal cell phone to make work related calls loses any privacy

protection afforded by the TCPA and the DNC Registry, are also all unavailing:

- In *Bank v. Indep. Energy Grp., LLC,* 2015 U.S.Dist LEXIS 96532 (E.D.N.Y. July
  2015), the plaintiff operated a law firm out of his home. He received pre-recorded
  telemarketing calls on his phone line and filed suit for an alleged violation of 47
  U.S.C. 227(b) which regulates the use of telemarketing via pre-recorded call to
  residential lines. The plaintiff, however, held out his number to the public as a
  business line on his business cards, pleadings and court filings. *Id.* at 4-5. *Banks* has
  no application here. It is not even a case relating in any way to 47 U.S.C. 227(c) and
  whether wireless cell phones can be listed on the DNC Registry. Further, there is no

simply claim in this case that Mr. Mantha used the Wireless Number in association with a home based business, or held the number out to the public as a business number. He merely made work related calls on his personal cell phone when out of the office.

- In *Worsham v. Dis. Power, Inc.,* 2021 U.S.Dist. LEXIS 1931 (D,Md. 2021), the plaintiff's personal landline was also associated with a law firm, and was held out the public as a business line. Noting it is legal to telemarket to business numbers, the Court concluded that the number was not entitled to the protections of the DNC Registry. Here, of course, there is no claim that Mr. Mantha used the Wireless Number is association with a business, or held the number out the public as a business number. Again, he merely made work related calls on his personal cell phone when out of the office.[15]

- In *Shelton v. Target Advance,* 2019 U.S.Dist. LEXIS 64713 (E.D.Pa. April 2019), the plaintiff received multiple pre-recorded telemarketing calls from the defendant in alleged violation of the TCPA and filed suit. Although the cell phone at issue was listed on the DNC Registry is was also associated with the plaintiff's judgment collection business. Noting it is legal to telemarket to business numbers, the Court concluded that the number was not entitled to the protections of the DNC Registry. Here, of course, there is no claim that Mr. Mantha used the Wireless Number in association with a business he owns or held the number out to the public as a business number.

None of the cases support QuoteWizard's contention that the DNC Registry listed personal cell phone of a consumer loses the privacy protections afforded the personal cell phone if it is used to make work related calls. Such an interpretation is simply untethered to the TCPA, to the regulations and commentary implementing and interpreting the TCPA, and to the case law interpreting the TCPA. The TCPA is a remedial statute that is to be interpreted in a manner that

---

[15] Following the dismissal of his claims, the plaintiff in this case filed an Amended Complaint that more specifically pled and alleged that the phone number at issue was a residential number not subscribed to a business. In response, Discount Power again moved to dismiss. On July 29, 2021, the Court denied the defendant's motion to dismiss the amended complaint. In doing so, the court noted that its prior dismissal of the plaintiff's claim with prejudice was in error and that the Court should not have assumed that because the plaintiff's phone number was listed on a court filing that it was a business line not entitled to the protections of the TCPA. The Court then went on to allow the plaintiff to file an Amended Complaint more specifically pleading that the number at issue was a residential number and denied the defendant's renewed motion to dismiss noting there was not clear evidence that the number at issue was a business number. *See Worsham v. Discount Power,* 2021 U.S.Dist. LEXIS 14182 (D.Md.. July 29, 2021)

effectuates its legislative purpose. *See Breda v. Cellco P'ship,* 934 F.3d at 11. Denying consumers the privacy protections afforded their wireless numbers by the TCPA and the DNC Registry simply because they used their personal wireless numbers to make work related calls would eviscerate the TCPA and the DNC Registry. QuoteWizard's Motion for Summary Judgment on this ground should be denied.

C.    **Mr. Mantha Has Standing To Enforce The TCPA**

Next, QuoteWizard contends that because Mr. Mantha was not injured by the spam telemarketing texts at issue, he has no standing to pursue TCPA claims against QuoteWizard. *See* Defendant's Memo of Law at pg. 16-21. QuoteWizard ignores that Mr. Mantha, in his Answers and Supplemental Answers to Interrogatories at #8, and in a prior sworn declaration submitted to this Court, attested under oath that he was frustrated with illegal telemarketing calls and considered them irritating an invasion of privacy. *See ECF #210,* Plaintiff's Statement of Facts In Support of Motion for Partial Summary Judgment at Exhibit 6, Plaintiff's Answers and Supplemental Answers to Interrogatories at #8, and Exhibit 15, Declaration of Joseph Mantha.

Here, and although Mr. Mantha *has never filed a single TCPA complaint before this lawsuit,* QuoteWizard asserts that he is essentially a professional plaintiff engaged in a "money-making scheme," to which QuoteWizard has fallen victim. The facts that support QuoteWizard's allegations are essentially that:

- Mr. Mantha received spam texts from QuoteWizard;

- He then spoke with a friend about the texts.

- The friend was knowledgeable as to the TCPA, had a relationship with a consumer protection attorney, and encouraged him to file a lawsuit to protect his rights and to enforce the TCPA.

- The friend advised Mr. Mantha that the next time he received a telemarketing text from QuoteWizard that he follow up to identify QuoteWizard as the entity actually sending the texts.

- Mr. Mantha followed his friend's advice, and on receipt of his eighth text from QuoteWizard (the first seven of which he ignored), he responded to the text seeking more information to confirm that QuoteWizard was the entity responsible for the illegal text telemarketing campaign at issue.

See ECF #202, Defendant's Memo of Law at pg. 17. See also ECF #210, Plaintiff's Statement of Facts In Support of Motion for Partial Summary Judgment at Exhibit 6, Plaintiff's Answers to Interrogatories as Supplemented at #8 (Mr. Mantha explains that he booked an appointment with QuoteWizard after receipt of the eighth spam text to confirm that QuoteWizard was the entity behind the illegal text campaign).

However, because Mr. Mantha responded to the eighth text and engaged with QuoteWizard's sales representatives in an effort to conclusively identify QuoteWizard as the entity responsible for the illegal texts, QuoteWizard contends that Mr. Mantha acted inappropriately and unethically, essentially "baiting" and "victimizing" QuoteWizard as a result all part of Mr. Mantha's "money making scheme." This argument is ridiculous.

First, Congress passed the TCPA to protect consumers from intrusive and unwanted calls. See Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 268 (3d Cir. 2013) (citing Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 372 (2012)). To enforce the TCPA, and particularly the provisions of the TCPA relating to the DNC Registry, Congress empowered consumers with a private right of action and incentivized consumers to enforce the TCPA by establishing statutory damages for each violation. See 47 U.S.C. §227(c) (Congress creates a private right of action to enforce calls made to numbers listed on the DNC Registry and provides for statutory damages of up to $500 for a negligent violation and $1,500 for a knowing or willful violation). The "money making" scheme that QuoteWizard complains of was, in fact, authorized and incentivized by Congress, and empowered consumers such as Mr. Mantha to enforce the TCPA. See Mey v. Castle Law Grp., PC, No. 5:19-CV-185, 2020 U.S. Dist. LEXIS 174894, at *6-7 (N.D.W. Va. Sep. 22, 2020)

("The statutory damages available under the TCPA are, in fact, specifically designed to appeal to plaintiffs' self-interest and to direct that self-interest toward the public good).

Second, and undisclosed to the Court by QuoteWizard who now accuses Mr. Mantha of concocting a "money making" scheme, is that on two occasions now, QuoteWizard offered to pay Mr. Mantha amounts of ███████ if he would drop his claims against QuoteWizard. *See* Exhibit 1, Declaration of Counsel. As any ideal potential class representative would do, Mr. Mantha rejected these buy off attempts because QuoteWizard failed to offer any relief to anyone other than Mr. Mantha and failed to make any changes whatsoever to its illegal telemarketing practices.[16] Mr. Mantha's repeated rejection of QuoteWizard's settlement offers alone refutes QuoteWizard's claim that Mr. Mantha is pursuing a "money making" scheme and therefore has no standing to pursue his TCPA claims.

Third, QuoteWizard's claim that Mr. Mantha has not been harmed by his receipt of illegal spam telemarketing texts simply ignores the evidentiary record. Mr. Mantha received

---

[16] Having attacked Mr. Mantha's motivations for bringing this lawsuit, QuoteWizard should not be heard to complain that Plaintiff is offering a settlement communication in violation of Fed.R.Evid. 408. QuoteWizard's rejected offer is not presented here to "either prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction" but rather is for "another purpose, such as proving or disproving a witness's bias or prejudice." Fed. R. Evid. 408; *see also McInnis v. A.M.F., Inc.*, 765 F.2d 240, 248 (1st Cir.1985) (rehearing *en banc* denied) ("Although Rule 408 bars the admission of evidence of settlement to prove liability or validity of the claim, it expressly allows such evidence for other purpose"). As QuoteWizard's baseless attack on Mr. Mantha goes to an alleged lack of Article III and prudential standing, this information should be properly considered by the Court. *See P.R. Dairy Farmers Ass'n v. Pagan*, No. 08-2191 (DRD), 2017 U.S. Dist. LEXIS 21508, at *4 (D.P.R. Feb. 10, 2017) ("The Court emphasizes the exception that '[t]he court may admit this evidence [used] for another purpose [at trial] ... .' *Fenoglio v. Augat, Inc.*, 254 F.3d 368, 372 (1st Cir.2001) (settlement letter used to demonstrate the date of the termination of the claimant in a labor case)"). Here, Mr. Mantha's rejection of QuoteWizard's repeated settlement offers that offered no relief to the class, and no change to its telemarketing practices, is offered as a dispositive refutation of QuoteWizard's disingenuous position that Mr. Mantha has filed this lawsuit only to recover money for himself and therefore has no standing to pursue his claim.

eight text messages from QuoteWizard seeking to sell him insurance services. *See* PSOF at ¶32-48. These texts were received on the Wireless Number that Mr. Mantha long ago listed on the National Do Not Call Registry in violation of the TCPA. *Id.* at ¶30. Appellate courts have repeatedly recognized that an alleged violation of the TCPA asserts the requisite harm to give rise to standing to enforce the TCPA. *See e.g. Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1270 (11th Cir. 2019); *Gadelhak v. AT&T Servs., Inc.,* 950 F.3d 458, 461-63 (7th Cir. 2020); *Melito v. Experian Mktg. Sols., Inc.,* 923 F.3d 85, 92-95 (2d Cir. 2019); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017). Specific to TCPA claims arising to numbers listed on the DNC Registry, the Fourth Circuit elucidates the issue in *Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643, 653 (4th Cir. 2019):

> Looking both to Congress's judgment and historical practice, as *Spokeo* instructs, the private right of action here plainly satisfies the demands of Article III. In enacting § 227(c)(5) of the TCPA, Congress responded to the harms of actual people by creating a cause of action that protects their particular and concrete privacy interests. To bring suit, the plaintiffs here must have received unwanted calls on multiple occasions. These calls must have been to a residential number listed on the Do-Not-Call registry. This is not a statute authorizing citizen-suits for any legal violation to which a plaintiff might take issue. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 571-72, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (citing 16 U.S.C. § 1540(g)). The statute requires that an individual receive a call on his own residential number, a call that he previously took steps to avoid. There is nothing ethereal or abstract about it.

Fourth, QuoteWizard's claim that Mr. Mantha somehow acted inappropriately when he responded to the ninth text and engaged QuoteWizard's sales representatives in an effort to confirm that QuoteWizard was, in fact, responsible for the text campaign at issue, is specious. Courts have repeated rejected similarly hysterical claims of telemarketers claiming that pretextual investigations of consumers seeking to identify telemarketing defendants and to hold them to account are somehow inappropriate. *See e.g. Perrong v. Victory Phones LLC*, No. 20-5317, 2021 U.S. Dist. LEXIS 132404, at *12-14 (E.D. Pa. July 15, 2021) (rejecting claim that

plaintiff acted inappropriately by playing along to identify the caller noting such conduct is "merely part of enforcing the TCPA") (collecting cases); *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017) (same)**;** *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 783 (N.D.W. Va. 2017) (denying motion for summary judgment in TCPA case related to a similar standing argument where the plaintiff conducted her own investigation to identify the defendant and noting she is doing "exactly what Congress intended—enforcing the law").[17]

In support of its contention that Mr. Mantha lacks standing to enforce the TCPA because he allegedly engaged in a purported "money making scheme," QuoteWizard relies primarily on *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782 (W.D. Pa. 2016). In this case, a TCPA plaintiff was found to lack standing where she testified her *sole purpose* for owning over 35 cell phones was to run what she referred to as a TCPA litigation business; that these 35 cell phones were only used to collect telemarketing calls, and were not called by anyone else for any other purpose. *Id.*, 197 F. Supp. 3d at 788-799. Under these extraordinary facts, the Court held that Ms. Stoops had suffered no injury-in-fact, *id.* at 800-01, and fell outside the TCPA's zone of interest. *Id.* at 803-06.

---

[17] The name "QuoteWizard" does appear in some of the telemarketing texts sent to Mr. Mantha. However, ever creative telemarketers and their counsel have successfully argued in other cases that the mere mention of a defendant's trade name in a telemarketing calls is hearsay and insufficient to connect the defendant to the telemarketing call in alleged violation of the TCPA. *See McDermet v. DirecTV, LLC*, 2021 U.S. Dist. LEXIS 11123 * 10-12 (D.Mass., Jan. 21, 2021) (Judge Saylor grants summary judgment to DirecTV finding that the mere mention of DirecTV on a telemarketing call was hearsay and not admissible to show that DirecTV was responsible for the allegedly illegal call). Accordingly, it was essential that Mr. Mantha engage with QuoteWizard's sales representatives to confirm that QuoteWizard itself was behind the telemarketing texts at issue in this case.

With good reason, many other courts have been skeptical of defendants' persistent attempts to extend *Stoops* beyond its unique facts. *See, e.g., Jones v. Revenue Assistance Corp.*, No. 14-10218-GAO, 2016 U.S. Dist. LEXIS 136993, at *16-17 (D. Mass. Aug. 31, 2016) (rejecting claim plaintiff lacked standing noting that unlike plaintiff in *Stoops*, plaintiff was not engaged in filing TCPA actions as a business); *Evans v. Nat'l Auto Div., L.L.C.*, No. 15-8714, 2016 U.S. Dist. LEXIS 123660, at *8 (D.N.J. Sept. 12, 2016) (rejecting *Stoops* claim and noting that as a consumer complaining of receiving intrusive telemarketing calls, Plaintiff falls directly within the zone of interests protected by the TCPA); *Mey,* 245 F. Supp. 3d at 783 (explaining that in *Stoops*, "The district court concluded that the plaintiff did not suffer a true nuisance or an invasion of her privacy because the plaintiff admitted that her only purpose in using her cell phones was to file TCPA lawsuits."); *Katz v. Liberty Power Corp., LLC*, Civil Action No. 18-cv-10506-ADB, 2019 U.S. Dist. LEXIS 162793 *30 (D. Mass. Sep. 24, 2019) (rejecting *Stoops* claim in a case where plaintiff had previously filed dozens of TCPA lawsuits); *Perrong v. Victory Phones LLC*, No. 20-5317, 2021 U.S. Dist. LEXIS 132404, at *12-14 (E.D. Pa. July 15, 2021) (same).[18]

Finally, the facts in this case could not be more different than those addressed by the Court in *Stoops*. The Wireless Number in this case is subscribed to Mr. Mantha personally, is used as a personal cell phone, is not subscribed to a business, and is not used to collect

---

[18] One of the only cases approving of the *Stoops* standing analysis of the Court is *Garcia v. Credit One Bank, M.A.,* 2020 U.S.Dist. LEXIS 136881 (D.NV July 31, 2020). In *Garcia*, however, the defendant bank sent pre-recorded messages to a number owned by a prior customer who had consented to the calls. The Court in *Garcia* reasoned that the plaintiff under these circumstances should have simply informed the defendant bank that the number had been re-assigned. In this case, QuoteWizard intended to send text spam to Mr. Mantha, who had not consented to receive such texts. His number had not been re-assigned from a consumer who had, in fact, consented to receive QuoteWizard telemarketing texts.

telemarketing calls as a part of a TCPA litigation business. *See* PSOF at ¶27-29 and ¶85-98. In *Stoops,* the sole reason plaintiff obtained 35 cell phones was to pursue TCPA claims, and those 35 phones were used for nothing else other than to accumulate actionable telemarketing calls. In addition, and unlike the plaintiff in *Stoops* who pursued TCPA litigation as a business, QuoteWizard admits that Mr. Mantha has *never* before filed a TCPA lawsuit or made a demand for TCPA damages.[19] And, unlike the plaintiff in *Stoops,* Mr. Mantha is not seeking to enforce the TCPA for his own financial self-interest. Rather, by rejecting QuoteWizard's ever increasing efforts to buy him off, Mr. Mantha has demonstrated his commitment to this case, and to the best interests of the class- the exact opposite of the plaintiff in *Stoops.*[20]

### D.    QuoteWizard's Texts Are Solicitations To Sell Insurance

QuoteWizard next recycles an argument previously rejected by the Court in denying its earlier Motion to Dismiss—namely that its text messages to Mr. Mantha were not "telephone

---

[19] Undeterred by inconvenient facts, QuoteWizard reasons that since Mr. Mantha had never previously pursued a TCPA claim he was not "genuinely injured" by QuoteWizard's telemarketing texts. *See* Defendant's Memo of Law at pg. 17. According to QuoteWizard, a consumer who files too many TCPA lawsuits (the plaintiff in *Stoops)* is a greedy and litigious "professional plaintiff" who lacks standing to enforce the TCPA because they welcome illegal calls, and a consumer who has never filed a TCPA lawsuit also lacks standing to enforce the TCPA apparently because their failure to previously file a TCPA lawsuit evidences their indifference and lack of injury to invasive telemarketing calls. In this world, either way, QuoteWizard wins.

[20] Asserting a novel 'spousal notice' requirement to Article III standing jurisprudence, QuoteWizard further argues that because Mr. Mantha did not tell his wife of his specific frustrations with his receipt of QuoteWizard spam texts, or of his filing of this lawsuit, he was not damaged by the texts and has no standing to enforce the TCPA. *See* Defendant's Memo of Law at pg. 17. Of course, there is no such requirement. And, even in this regard, QuoteWizard ignores the evidentiary record. *See ECF #210,* Plaintiff's Statement of Facts In Support of Motion for Partial Summary Judgment at <u>Exhibit 6</u>, Plaintiff's Answers and Supplemental Answers to Interrogatories at #8 (Mr. Mantha attests that he generally discussed with his wife his frustration with illegal telemarketing calls and his desire to enforce his rights under the law); *ECF #210,* <u>Exhibit 15</u>, Declaration of Joseph Mantha (attesting that he finds telemarketing text solicitations to his personal cell phone irritating and an invasion of privacy).

solicitations" but rather were merely "informational" messages. *See* Defendant's Memo of Law

at pg. 21-26. The Court dispatched that argument previously and should do so again. In denying

QuoteWizard's Motion to Dismiss, the Court held:

> Next, Count II of the Complaint alleges that QuoteWizard "violated the TCPA by (a) initiating telephone solicitations to persons and entities whose telephone numbers were listed on the Do Not Call Registry, or (b) by the fact that others made those calls on its behalf." Doc. No. 1 ¶ 68. QuoteWizard also moves to dismiss this Count, contending that the content of the text messages as alleged in the Complaint does not plausibly suggest a solicitation, as opposed to an informational, message. See Doc. No. 17 at 2 (arguing that "[i]nformational communications are not within the ambit of the TCPA's do-not-call prohibition, which require something in the nature of a sales pitch.").
>
> The TCPA defines "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(14). Here, the messages reproduced in Mantha's Complaint say:
>
> • "Hey, it's Amanda following up. When's a good day for us to talk Joe? You requested a quote on auto insurance. Message me if you're still interested!"
>
> • Hi this is Amanda! Are you looking for an accurate estimate, Joe? We can review your options together. Call me when you're free, it won't take long!"
>
> Doc. No. 1 ¶ 38. Drawing all reasonable inferences in Mantha's favor, Gargano Liberty Intern. Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009), these messages were soliciting the purchase of services, specifically automobile insurance. See In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14046 (2003) (declining "to establish an exemption for calls made to set 'face-to-face' appointments" and "conclud[ing] that such calls are made for the purpose of encouraging the purchase of goods and services and therefore fall within the statutory definition of telephone solicitation."); id. at 14098-99 (noting that a message that seeks people to help sell or market a business' products, constitutes an advertisement if the individuals called are encouraged to purchase, rent, or invest in property, goods, or services, during or after the call."). Thus, the Motion to Dismiss Count II is DENIED.

*Mantha v. QuoteWizard.com, LLC*, No. 19-12235-LTS, 2020 U.S. Dist. LEXIS 45481, at *5-7

(D. Mass. Mar. 16, 2020) (Dkt. 30).

Undeterred by this Court's prior Order, QuoteWizard persists in its claim that its texts are

not 'solicitations' subject to the TCPA but, rather, are mere "transactional communications"

intended to complete or confirm a transaction previously agreed to by the recipient. *See* ECF

#202, Defendant's Memo of Law at pg. 21. For this proposition, QuoteWizard relies on the FCC commentary found at *In re Rules & Regs. Implementing the Tel. Consum. Prot. Act of 1991*, 21 FCC Rcd 3787, 3812 ¶ 49 (Apr. 5, 2006) (recognizing that messages sent by businesses to existing customers to complete or confirm a commercial transaction that the recipient has previously agreed to are not advertisements). Notably absent from QuoteWizard's citation, however is **the very next paragraph** of the FCC's commentary in this regard that explicitly clarifies that:

> In order to fall outside the definition of an "unsolicited advertisement" [the message] must relate specifically to *existing* accounts and ongoing transactions. Messages regarding new or additional business would advertise the 'commercial availability or quality of any property, goods or services' and therefore would be covered by the prohibition.

*Id.* at ¶50 (emphasis added).

Mr. Mantha, however, is not and never was an existing customer of QuoteWizard. In fact, the purpose of the text spam campaign at issue was for QuoteWizard to find new business for GEICO in the form of new potential customers whose information it could then sell to GEICO for a fee. *See* ECF #203-3, Exhibit C to QuoteWizard Affidavit – *QuoteWizard Contract with GEICO Insurance* at QuoteWizard_Mantha 000133-173. QuoteWizard's contract with GEICO

███████████████████████████████████

███████████████ *See* also PSOF at ¶1-3 (quoting from QuoteWizard's own web-site as to its commercial purpose and noting the contract between QuoteWizard and Drips pursuant to which QuoteWizard engaged Drips to send telemarketing texts to consumers nationwide seeking new customers for QuoteWizard's insurance clients).

QuoteWizard's claim that its message was "transactional" is in essence a rehashing of its prior false claim (that is wholly contradicted by the evidence) that it had Mr. Mantha's consent to text him with insurance quotes and was merely following up on that inquiry. As the purpose of

the text spam campaign was to sell insurance policies to new customers, QuoteWizard's claim

that the texts were not telephone solicitations should be rejected.

Finally, courts have repeatedly refused to allow telemarketers to couch their

telemarketing solicitations as mere "transactional" messages not subject to the TCPA. As the

Ninth Circuit has held, a Court discerning whether a call is a telephone solicitation should apply

common sense:

> We approach the problem with a measure of common sense. The robot-calls urged the listener to "redeem" his Reward Zone points, directed him to a website where he could further engage with the RZP, and thanked him for "shopping at Best Buy." Redeeming Reward Zone points required going to a Best Buy store and making further purchases of Best Buy's goods. There was no other use for the Reward Zone points. Thus, the calls encouraged the listener to make future purchases at Best Buy. Neither the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context. Any additional information provided in the calls does not inoculate them. *See 2003 Report and Order ¶ 142.*

*Chesbro v. Best Buy Stores, L.P.,* 705 F.3d. 913, 918, (9th Cir. 2012). The *Chesbro* court further

clarified that even for calls that are arguably partially "informational" those calls are also

prohibited without the recipient's prior express written permission:

> The FCC has determined that so-called "dual purpose" calls, those with both a customer service or informational component as well as a marketing component, are prohibited. *See 2003 Report and Order at 14097-98 ¶¶ 140-142.* The FCC explains:

> The so-called "dual purpose" calls described in the record—calls from mortgage brokers to their clients notifying them of lower interest rates, calls from phone companies to customers regarding new calling plans, or calls from credit card companies offering overdraft protection to existing customers—would, in most instances, constitute "unsolicited advertisements," regardless of the customer service element to the call. The Commission explained in the *1002 Notice* that such messages may inquire about a customer's satisfaction with a product already purchased, but are motivated in part by the desire to ultimately sell additional goods or services. If the call is intended to offer property, goods, or services for sale either during the call, or in the future (such as in response to a message that provides a toll-free number), that call is an advertisement. *Id. ¶ 142* (footnote omitted).

*Id.*

Contrary to QuoteWizard's suggestion that the Court should rely on QuoteWizard's purported belief that it was only passing on information to consumers, the *Chesbro* court rejected that notion noting that whether a message is a "solicitation" turns "not on the caller's characterization of the call, but on the purpose of the message." *Id. citing 2003 Report and Order at 14098 ¶ 141* (footnote omitted). The purpose of the QuoteWizard telemarketing text campaign at issue here was to find new auto insurance for GEICO, QuoteWizard's client, and in exchange, QuoteWizard would be paid a fee for each new customer originated. There was nothing "informational" or "transactional" about this text campaign- at all.

Finally, QuoteWizard's claim that it is exempt from TCPA liability because it only sought to refer Mr. Mantha to GEICO for a quote is incorrect. In *Panacci v. A1 Solar Power, Inc.*, No. 15-cv-0532-JCS, 2015 U.S. Dist. LEXIS 77294, 2015 WL 3750112, at *5-6 (N.D. Cal. June 15, 2015), the district court held that a referral company violated the TCPA even though it only sought to refer the called party to another entity. Because the TCPA defined telephone solicitations as "*any* call 'for the purpose of encouraging [a] purchase," it necessarily included calls to encourage purchases with a different entity or in the future. *Id.* (quoting 47 U.S.C. § 227(a) (emphasis added)); *see also* 2003 Report and Order at 14040 ¶ 142.

As QuoteWizard was indisputably advertising the availability of insurance, its claim that its texts were exempt from the TCPA should be rejected.

### E.    QuoteWizard Is Not Entitled To A Good Faith Or Reasonable Reliance Defense[21]

Even after being compelled by this Court to disclose that over 2.5 million consumers who received QuoteWizard's telemarketing text spam took the time to complain as to such texts and

---

[21] The DNC provisions of the TCPA do include a defense of "safe harbor" that protect a telemarketer who has complied with the provisions of 47 C.F.R. § 64.1200(c)(2)(i)(A-E).

to demand that further text solicitations cease, QuoteWizard still believes it acted in "good faith" and is entitled to a non-existing "reasonable reliance" defense immunizing it from TCPA liability. QuoteWizard still believes it is entitled to immunity despite the visceral and raw language used by many of the 2.5 million consumers who responded to QuoteWizard's spam text telemarketing campaign with a demand that future text spam solicitations cease. *See ECF #210,* Plaintiff's Statement of Facts In Support of Motion for Partial Summary Judgment at Exhibit 5, Declaration of Anthony Paronich (summarizing the DNC complaints produced to date by QuoteWizard and compiling examples of such complaints at Tabs A and B). These consumers were ***angry*** at QuoteWizard for violating their privacy and interrupting their day and cluttering their phones with text spam. These complaints made it crystal clear to QuoteWizard that these consumers did not expressly consent to receive text solicitations from QuoteWizard. Most egregious, QuoteWizard did not cease sending text spam to consumers even after this class action lawsuit was filed. In fact, long after the filing of this lawsuit, between the months of March and May of 2021, 248,641 consumers complained after receiving QuoteWizard spam texts. *Id.*

---

Notably, QuoteWizard has not asserted a "safe harbor" defense in this litigation assumedly because it did not comply with these provisions. *See* ECF #89, Answer to Amended Complaint (no safe harbor defense asserted). For example, to qualify for "safe harbor" protection a telemarketer must demonstrate that it can access the national do-not-call database and uses a process to prevent telephone solicitations to any telephone number on the Do Not Call Registry. *Id.* A telemarketer must also implement procedures to comply with the national do-not-call rules and the violation at issue was the result of an error. It does not appear that QuoteWizard ***ever*** scrubbed its lead lists against the DNC Registry or even subscribed to obtain access to numbers listed on the DNC Registry. Further, in light of the fact that 2.5 million people complained after receiving such texts, it would be difficult for QuoteWizard to claim the violation was a mere "error" despite its implementation of policies and practices to prevent calls to consumers on the DNC Registry. Undeterred, however, QuoteWizard essentially asks this Court for the exact same protection provided under a "safe harbor" under the guise of a non-existent "reasonable reliance" defense.

There is no "good faith" defense to TCPA violations. *See Hoffman v. Hearing Help Express, Inc.*, 2020 U.S. Dist. LEXIS 241003 *11-13 (W.D. WA 12.22.2020) (court grants a motion to strike affirmative defense of good faith in a TCPA class action noting that such a defense is inapplicable as to liability and relates solely as to whether conduct was willful and subject to treble damages); *Jiminez v. Credit One Bank, N.A.,* 377 F. Supp. 3d 324 at 334-335 (S.D.N.Y. March 2019)(in context of a TCPA class action court denies defendant's motion for summary judgment as to good faith and reasonable reliance noting that such was relevant only as to willfulness); *Perez v. Rash Curtis & Assocs.*, 2019 U.S. Dist. LEXIS 58639 *13-14 (N.D. Cal. March 2019) (in context of a TCPA class action court grants plaintiff's motion in limine precluding defendant from arguing a good faith and reasonable reliance noting that such was relevant only as to willfulness); *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 979-981  *29-31 (N.D. Cal.. Sept. 4, 2019) (in context of a TCPA class action court denies defendant's motion to summary judgment based on good faith and reasonable reliance noting that the [TCPA] . . . makes no exception for senders who mistakenly believe that recipients' permission or invitation existed. The issue of intent, or more accurately, the issues of knowledge and willfulness, however, clearly are material to the question of treble damages.") (collecting cases). *See Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011) ("The TCPA is essentially a strict liability statute . . . . [and] does not require any intent for liability except when awarding treble damages."); *Soppet v. Enhanced Recovery Co., LLC, 679 F.3d 637, 641 (7th Cir. 2012)* (affirming TCPA liability for calls to phone numbers where the recipient of the call had not given consent, even if the phone number was called due to a typographical error in its entry or because the number previously belonged to a different person); *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876, 882 n. 3 (8th Cir. 2005)

("The [TCPA] . . . makes no exception for senders who mistakenly believe that recipients' permission or invitation existed. The issue of intent, or more accurately, the issues of knowledge and willfulness, however, clearly are material to the question of treble damages."). *See Pieterson v. Wells Fargo Bank, N.A.*, No. 17-cv-02306-EDL, 2018 U.S. Dist. LEXIS 113125, at *10 (N.D. Cal. July 2, 2018) (no good faith defense under TCPA); *Jiminez v. Credit One Bank, N.A.,* 377 F. Supp. 3d 324, 334 (S.D.N.Y. 2019) ("Credit One's good faith argument finds no basis in the text of the TCPA which only makes a caller's intent relevant in connection with the trebling of damages."); *Davis v. Diversified Consultants, Inc.*, 36 F. Supp. 3d 217, 223-24 (D. Mass. 2014) ("The TCPA is essentially a strict liability statute and does not require any intent for liability except when awarding treble damages.").

QuoteWizard's "reasonable reliance" defense relies almost entirely on *Sandoe v. Boston Sci. Corp.*, 2020 U.S. Dist. LEXIS 2800 (D. Mass. Jan. 8, 2020). In *Sandoe*, a consumer received automated survey related calls from the defendant and filed suit for alleged violations of the TCPA. The phone number in this case had recently been reassigned to the plaintiff. It was undisputed that the prior owner of the number consented to receive the automated survey calls. *Id.* at *3-4. Prior to the time this opinion was rendered, the FCC had recognized a "one call exemption" in the unique circumstances of a reassigned number case, where the prior owner consented to receive the calls at issue, and the defendant lacked knowledge that the number had been re-assigned to another consumer. *See generally In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961 (2015). In *ACA International v. FCC,* however, the DC Circuit Court of Appeals, rejected the FCC's one-call post-reassignment safe harbor as arbitrary and capricious. *See ACA International v. FCC,* 885 F.3d 687, 705-06 (D.C. Cir. 2018).  Although he was admittedly aware of the rejection of the "one call exemption"

defense applicable to reassigned number cases, Judge Gorton in *Sandoe*, still dismissed the plaintiff's claims noting it was literally impossible for the defendant to have known that the number at issue had been re-assigned to a consumer who did not consent to receive the call. In doing so, Judge Gorton conceded that a "reasonable reliance" defense appears no-where in the TCPA, and that the very existence of a good faith defense had been broadly rejected by many other courts. *Sandoe*, 2020 U.S. Dist. LEXIS 2800 at *10-12. Under these specific and unique facts, however, Judge Gorton granted judgment in favor of the defendant. *Id.*

The unique facts presented in *Sandoe* are inapplicable to this case. First, this is not a re-assigned number case. Mr. Mantha has owned his personal Wireless Number for many years and listed it on the DNC Registry in 2008. *See* PSOF at ¶30. This is not a "one call" case. Mr. Mantha received eight unsolicited telemarketing texts from QuoteWizard. There also is no claim here that QuoteWizard was trying to contact another consumer who had consented to receive its text spam and whose number had been just recently re-assigned to Mr. Mantha without its knowledge. At all times, QuoteWizard objectively intended to send text spam to Mr. Mantha and no-one else, at the Wireless Number that Mr. Mantha has personally owned for many years and long ago listed on the DNC Registry. As QuoteWizard's claimed entitlement to a defense of "reasonable reliance" has no basis in either law or fact, its Motion for Summary Judgment in this regard should be denied.

## III.    CONCLUSION

For the above reasons, QuoteWizard's Motion for Summary Judgment (ECF #201-202) should be denied. Plaintiff's Motion for Partial Summary Judgment (ECF #205-206) should be granted. This case should then be allowed to proceed to class discovery, class certification, summary judgment and then on to trial for remaining outstanding issues.

PLAINTIFF,

By his attorneys

*/s/ Matthew P. McCue*
Matthew P. McCue
THE LAW OFFICE OF MATTHEW P.
MCCUE
1 South Avenue, Suite 3
Natick, MA 01760
Telephone: (508) 655-1415
mmccue@massattorneys.net

Edward A. Broderick
BRODERICK LAW, P.C.
176 Federal Street, Fifth Floor
Boston, MA 02110
Telephone: (617) 738-7080
ted@broderick-law.com

Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Alex M. Washkowitz
Jeremy Cohen
CW LAW GROUP, P.C.
188 Oaks Road Framingham, MA 01701
alex@cwlawgrouppc.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2021, I electronically transmitted the foregoing to all counsel of record via the electronic filing system.

By:  */s/ Matthew P. McCue*
        Matthew P. McCue