UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH MANTHA, *on behalf of himself and all others similarly situated*,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>QUOTEWIZARD.COM, LLC,<br><br>　　　　　　　Defendant. | Civil Action No. 1:19-cv-12235-LTS |

**DEFENDANT'S MOTION TO STRIKE EXHIBITS TO DECLARATION OF ANTHONY PARONICH, ESQ. IN SUPPORT OF PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT**
(Memorandum Incorporated)

Now comes Defendant QuoteWizard.com, LLC ("QuoteWizard") and hereby moves to strike the hearsay evidence submitted by Plaintiff Joseph Mantha ("Mantha") attached to the Declaration of Anthony Paronich, Esq. ("Paronich Dec."), namely, selected portions of non-party consumer "do not call" request communications made by consumers to non-party Drips Holdings, LLC ("Drips"). As the communications from non-party consumers are inadmissible hearsay attempted to be used by Mantha for the purported truth of the matters therein, they cannot be considered in the summary judgment context.

**BRIEF BACKGROUND**

During discovery in this case, Mantha sought the production of "do not call" requests (or opt-outs) made by non-party consumers (not including Mantha – who never made one) to QuoteWizard's texting agent, Drips. Although the date and time and other basic data for such requests were in QuoteWizard's possession (because they are provided by Drips to QuoteWizard

in real time), only Drips had the actual communications made by the consumers to Drips that Drips ultimately classified as a "do not call" request because Drips never shared the same with QuoteWizard in the ordinary course of business.

Ultimately, the Parties reached a global resolution of the discovery dispute concerning these records (hereinafter, "DNC Data"), resulting in Drips producing: (1) "the underlying consumer response for up to 500 Tier 1 reports and up to 100 Tier 2 and 3 reports (for a total of up to 600 responses)" under the parameters specified therein; and (2) "all consumer responses underlying disqualifications (all tiers) for the 60 days prior to May 18, 2021." *See Drips Holdings, LLC v. QuoteWizard.com LLC*, No. 1:21-mc-91266-LTS (D. Mass.), Dkt. No. 37[1]; *id.*, Dkt No. 38. *See also* ECF No. 186. Drips produced the DNC Data to QuoteWizard so that QuoteWizard could redact non-party consumers' personal information (name, telephone numbers, etc.), and then QuoteWizard produced Drips' DNC Data to Mantha.

The Parties have filed cross-motions for summary judgment, with Mantha's styled as a "partial" motion on two issues: (1) whether he consented to receive text messages from QuoteWizard; and (2) whether he qualifies as a "residential subscriber" for his claim relating to the National Do Not Call Registry. In support of his partial motion, he filed the Paronich Dec., which addresses the above DNC Data. *See* ECF No. 210. Exhibit 5. Attached to the Paronich Dec. are two "tabs," identified as follows: "Tab A" is identified as the "600 Tier 1 and Tier 2 DNC Complaints submitted by consumers during the time frame immediately preceding the telemarketing texts sent to Mr. Mantha"; "Tab B" is identified as the "an excerpt" of "many of the first 300 DNC" requests made as provided by Drips for the timeframe of March to May 18, 2021. *See* Paronich Dec., ¶¶ 13-15. As explained in Section D below, the Paronich Dec. has

---

[1] Drips categorizes requests by tier. The production by Drips encompassed all tiers as specified in the Stipulation.

mischaracterized the DNC Data as produced by Drips (for example, misdescribing the tiers that were included in the DNC Data).

Therefore, in other words, the Paronich Dec. purports to attach some, selected portions of the DNC Data produced by Drips pursuant to the aforementioned Stipulation. QuoteWizard moves to strike both "Tab A" and "Tab B" to the Paronich Dec., as well as any portion of Attorney Paronich's Declaration that purports to analyze or characterize the same.

## ARGUMENT & AUTHORITIES

### A. Mantha's Counsel's Characterization of the DNC Data is Unsupported and Inadmissible

In his summary judgment papers, Mantha attempts to weaponize the DNC Data by self-describing them as "complaints," and further arguing that the consumer "do not call" requests represent proof that those consumers (who are not parties to this action) did not consent to be contacted by Drips on behalf of QuoteWizard. It appears Mantha then hopes that this Court will infer that Mantha, too, did not consent to be contacted by QuoteWizard, although Mantha never made a "do not call" request.

There are numerous, fundamental problems with this approach. First and foremost, the DNC Data does not say what Mantha's counsel tells this Court it says. Instead, Mantha's counsel has improperly attempted to convert attorney characterizations and labels of the DNC Data into evidence via the Paronich Declaration.

For example, in the Paronich Dec., Attorney Paronich first notes that the DNC Data contains "'Do Not Call' *requests*" but then refers to them throughout as "DNC Complaints" to conveniently fit Mantha's narrative of the case. *See* Paronich Dec., ¶ 4 (emphasis added).[2] Indeed,

---

[2] Attorney Paronich also improperly concludes that QuoteWizard sends text messages to consumers to "promote [its] services." *See* Paronich Dec., ¶ 4. This is also improper. Nothing in the record shows QuoteWizard "promoting [its] services" to anyone, including Mantha. Rather, as explained in

3

Attorney Paronich repeatedly refers to the "do not call" requests as "complaints," apparently hoping to confuse the Court into believing that hundreds of thousands of consumers have complained to QuoteWizard about lack of consent. *See generally id*. (using the term "DNC Complaints" fourteen (14) times throughout declaration).

The problem with Attorney Paronich's characterization of the DNC Data as consumer "complaints" is that it is totally unsupported by the record evidence. In addition to Attorney Paronich recognizing that the DNC Data contain <u>requests</u> before he misrepresents the requests as "complaints," the entity that produced the DNC Data, Drips, has never referred to the DNC Data as "complaints." Rather, in the Parties' Joint Stipulation governing the production of the DNC Data that was drafted by Drips' counsel *and approved and signed by counsel for all Parties*, the term "DNC Complaints" does not appear once. Rather, Drips defined the "do not call" requests as "disqualifications" and the underlying consumer communications as "consumer responses underlying disqualifications." *See Drips Holdings, LLC v. QuoteWizard.com LLC*, No. 1:21-mc-91266-LTS (D. Mass.), Dkt. No. 37, ¶¶ 1-2.

Other actual, admissible evidence in the record dispels any notion that the DNC Data can or should be characterized as "complaints." *See* ECF No. 124, Ex. 5 (QuoteWizard Declaration), ¶¶ 5-6 ("'[D]o not call' records reflect consumers who have consented to receive communications from QuoteWizard but who then requested no further contact. It is the functional equivalent of an 'opt out.' … The 'do not call' requests are not complaints from those consumers and do not indicate that the consumers did not originally consent to be contacted. The records reflect a consumer's choice not to receive a further communication."). As such, Attorney Paronich has, quite improperly, created the term "DNC Complaints" out of thin air and based on no factual matter.

---

QuoteWizard's Motion for Summary Judgment, each text message to Mantha sought to complete a request for a (free) auto insurance quote.

4

Attempting to utilize Attorney Paronich's inadmissible, and completely unsupported, characterization of the DNC Data as representing consumer "complaints," Mantha's memorandum of law proceeds to argue that the so-called "complaints" show that QuoteWizard lacks consent to contact consumers (and, by implied extension, Mantha). For example, in his memorandum of law, Mantha argues:

> On July 8, 2021, Quotewizard produced the substance of the 600 "Tier 1" and "Tier 2" DNC Complaints submitted by consumers immediately preceding the telemarketing texts sent to Mr. Mantha. These complaints evidence the clear outrage and annoyance experienced by consumers who received QuoteWizard's spam telemarketing texts. *See* SOF at ¶24. On this same date, QuoteWizard also produced all of the DNC Complaints received from consumers who received QuoteWizard's spam telemarketing texts between March 17 and May 17 of 2021. Over 284,000 consumers submitted DNC Complaints after receiving QuoteWizard telemarketing texts during this three month time period. These DNC Complaints similarly evidence consumers' widespread anger and frustration as to their continued receipt of QuoteWizard text telemarketing spam, now approaching two years ***after*** the original filing of this class action complaint. *See* SOF at ¶24; ECF #1. Taken together, these substantive DNC Complaints are merely a sample of the 2.5 million complaints submitted by consumer recipients of QuoteWizard's telemarketing spam. Even this small sampling, however, made it crystal clear that consumers did not consent to receive QuoteWizard's telemarketing text spam, and were annoyed and outraged by QuoteWizard's illegal telemarketing practices. *See* SOF at ¶23-24.4

*See* ECF No. 206, pp. 5-6.

In addition, Mantha argues in a footnote:

> A compilation of these DNC Complaints is attached at Exhibit 5, Tabs A & B. Even when taking into account this small sampling of DNC Complaints produced, the raw outrage expressed by consumers responding to QuoteWizard's telemarketing spam defies any conceivable claim that these consumers welcomed QuoteWizard's spam texts, as alleged, and expressly consented to receive text telemarketing messages from QuoteWizard.

*See id.*, p. 6 n.4.

Thus, Mantha's attorneys again misrepresent to the Court, without any record or factual evidence to support this interpretation, that the DNC Data are consumer ***complaints*** reflecting that the consumers never consented to be contacted in the first place. As noted, the document governing the production of the DNC Data refers to them as "disqualifications" and "consumer

responses," *not* complaints. And the DNC Data itself does not support such a broad, sweeping, generalization. For example, many consumers communicated to Drips, in response to text messages from Drips, "No thanks" or "No" or the like—which represents that they do not want *future* contact but in no way represents a *complaint* about being contacted in the first instance. Mantha fails to point to specific consumer statements that support his counsel's bald assertion that the DNC Data contains "complaints." The Court will find no evidence in the summary judgment record to support such a broad generalization of the DNC Data in total. Therefore, Mantha's counsel's attempts to present the DNC Data in "Tab A" and "Tab B" as consumer "complaints" fails for this reason.

QuoteWizard also notes that other documents presented by Mantha further undermine his counsel's attempts to define the DNC Data as consumer "complaints." For example, Exhibit 4 to ECF No. 210 is a document Mantha relies on to show that "do not call" requests can somehow be equated to consumer complaints. *See* ECF No. 210, Ex. 4. But nowhere in the document relied upon by Mantha does the word "complaint" or "complain" or any derivative thereof appear. Rather, the document identifies "tiers" to which a consumer who "ask[s] to be removed" will be assigned by Drips. The document identifies scenarios where a person should be removed that does not imply or suggest lack of consent—in fact, it describes a scenario that even a Tier 1 "screamer" may be someone who actually did consent: where they may be "upset that they are being called or texted by multiple auto insurance companies ***upon submitting for a free quote***." *See* ECF No. 210, Exhibit 4, p. 2 (emphasis added).

Moreover, as explained in Section D *infra*, Mantha has conveniently omitted from the "tabs" numerous consumer responses included in the DNC Data produced by Drips *that affirmatively show consent*—where consumers acknowledge that they consented to receive a quote

but were still classified as "disqualifications" or opt-outs by Drips for some reason. In light of this evidence, it is egregious for Mantha's counsel to represent to the Court that the DNC Data can be generally defined as consumer complaints, or that they generally show lack of consent.

Thus, simply put, Mantha's attorneys seek to stamp the imprimatur of a sworn declaration on what is actually inadmissible <u>and factually unsupported</u> attorney characterizations. Nothing in the factual record, much less what has been submitted by Mantha with his summary judgment motion, can support a reading of the DNC Data to mean that (1) "do not call" requests are consumer "complaints" or (2) that they generally show a lack of consent for consumers contacted by QuoteWizard.[3] Because attorney argument, representations, characterizations, labels and the like (especially including those that are unsupported by and divorced from the factual record) are <u>inadmissible</u>, Attorney Paronich's repeated characterizations of the DNC Data as "complaints" and Mantha's argument about "complaints" and lack of consent should be stricken and not considered. *See*, *e.g.*, *Jersey Cent. Power & Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985) ("Legal memoranda and oral argument are not evidence and cannot by themselves create a factual dispute sufficient to [support or] defeat a summary [enforcement] motion."); *Germinaro v. Fidelity Title Ins. Co.*, 2016 U.S. Dist. LEXIS 141797, 2016 WL 5942236, at *2 (W.D. Pa. 2016) (attorney argument is not evidence, but simply the characterization of the evidence on the record, and to the extent that it is unsupported by the evidence, it should be disregarded); *Yan v. Penn State Univ.*, 529 F.App'x 167, 170 (3d Cir. 2013) (mere "characterizations" of record evidence do not, alone, have probative value); *Berckeley Inv. Group,*

---

[3] This is, of course, putting aside for the moment that the DNC Data represents only a <u>fraction</u> of consumers who were contacted by Drips on behalf of QuoteWizard, and that Mantha targeted his request for "do not call" comments for the lowest tiers (Tier 1 and 2), presumably hoping to find the angriest consumers. Even with this evidence, Mantha cannot show that the DNC Data represents complaints or lack of consent. Of course, there are millions of other consumers contacted by QuoteWizard (with consent) who are not represented in the DNC Data.

7

*Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (assertions made by the parties at summary judgment must ultimately be supported by facts).[4]

### B. To the Extent the DNC Data Supported Mantha's Counsel's Characterizations, It is Inadmissible Hearsay

Second, even assuming that the Court could read *some* of the DNC requests in the DNC Data as "complaints" or evidence that the non-party consumers did not consent to be contacted (which QuoteWizard submits the Court cannot), Mantha's attempt to use the consumers' communications for the purported truth of the matter (*i.e.* a "complaint" or lack of consent) is improper. The consumer responses appearing in the DNC Data are inadmissible hearsay if used for this purpose as Mantha attempts.

First, it is clear that the consumer responses are hearsay; they are out-of-court statements that Mantha has proffered to this Court for the purported truth of the matters therein. *See* Fed. R. Evid. 801. Second, no hearsay exception applies. *See United States v. Bartelho*, 129 F.3d 663, 670 (1st Cir. 1997) ("A party who seeks admission of hearsay evidence bears the burden of proving each element of the exception that he asserts."). Insofar as Mantha would claim that the business records exception applies, this is simply untrue. Even assuming *arguendo* that Mantha tried to satisfy the business records exception for the spreadsheets produced by Drips (a showing Mantha has not attempted to make, as he has produced no affidavit or other information from Drips

---

[4] More generally, a summary judgment affiant must also have personal knowledge for the statements offered. Fed. R. Civ. P. 56(c)(4); *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 53 (1st Cir. 2000) ("affidavits submitted in opposition to" summary judgment motion that do not provide "specific factual information made on the basis of personal knowledge . . . are insufficient"). Attorney Paronich has no personal knowledge such to speak to the *substance* or *interpretation* of the "do not call" requests; at most, he can merely authenticate that the data was produced in discovery, although even on that point he has not correctly described what was produced by Drips.

concerning authenticity/reliability),[5] the consumer responses *within* the spreadsheets are still inadmissible hearsay. *See*, *e.g.*, *United States v. Vigneau*, 187 F.3d 70, 75 (1st Cir. 1999) ("[T]he business records exception does not embrace statements contained within a business record that were made by one who is not a part of the business if the embraced statements are offered for their truth.").

Thus, the DNC Data reflected in "Tab A" and "Tab B" to the Paronich Dec. is inadmissible hearsay and must be excluded at the summary judgment stage. "It is black-letter law that hearsay evidence cannot be considered on summary judgment for the truth of the matter asserted[.]" *United States v. $8,440,190.00 in U.S. Currency*, 719 F.3d 49, 61 (1st Cir. 2013) (quotation and citation omitted). *See also Mackey v. Town of Tewksbury*, 2020 U.S. Dist. LEXIS 2136, at *6-10, 2020 WL 68243 (D. Mass. Jan. 7, 2020) (striking various portions of plaintiff's affidavit from summary judgment record based on impermissible hearsay).

To the extent Mantha would argue in response to this Motion that the DNC Data is being proffered for some reason other than the truth of the matters asserted therein, this argument is belied by the Paronich Dec. and Mantha's memorandum of law, which *plainly* advance the DNC Data (in a factually unsupported manner) to argue that the consumer responses should be taken as true and show a lack of consent.

There is no other purpose besides the purported truth for which Mantha could possibly offer the DNC Data. For example, he cannot argue that the DNC Data is offered for "notice" purposes, *i.e.* to show that QuoteWizard was on notice of alleged "complaints" about its leads such that it should not have trusted the legitimacy of the Mantha lead. It is undisputed that Drips did

---

[5] *See* Fed. R. Evid. 901; *see also Elgabri v. Lekas*, 964 F.2d 1255, 1261 (1st Cir. 1992) ("Admission as a business record requires the testimony of the custodian or other qualified witness. This testimony is essential. Without such a witness the writing must be excluded." (internal quotations omitted)).

not share, and QuoteWizard did not see, the consumer responses underlying a DNC Request and that the consumer responses were produced for the first time by Drips during this litigation. *See, e.g.*, ECF No. 151, ¶ 5 ("Drips has never shared with or produced to QuoteWizard … the underlying consumer communications to Drips that led Drips to classify the communications as a 'do not call' request."). Thus, the DNC Data cannot be used for a "notice" argument. There is no other conceivable basis on which Mantha has advanced the DNC Data.

Rather, Mantha has advanced the DNC Data for one clear purpose: to improperly characterize the DNC Data as complaints about lack of consent to bait the Court to make some improper inference that Mantha's lead lacked consent. Putting aside the clear impropriety of Mantha's counsel's approach, at base, the DNC Data is hearsay when used in this manner. As such, the DNC Data attached to the Paronich Dec. is inadmissible.

### C. The Comments Are Not Relevant to Any Disputed Issue

Attorney Paronich's Declaration and the attached records are further inadmissible because they are simply not relevant to any disputed issue herein. The *only* conceivable purpose that Mantha's counsel could rely on them at this stage is to hope that this Court draws some improper negative inference against QuoteWizard and its business practices by taking note that a fraction of consumers QuoteWizard has contacted have opted-out. But this is not a fair inference to draw against QuoteWizard concerning the validity of Mantha's consent. Regardless of what other consumers were saying—which QuoteWizard was indisputably not aware of—the Court must only examine the record evidence surrounding *Mantha's consent*. On that point, the material facts are in dispute—Mantha denies consenting, whereas QuoteWizard has abundant evidence that Mantha or a person on his behalf went to a website, clicked through a web form, solicited an auto insurance

quote, and Mantha willingly engaged with QuoteWizard, asking, "How do I get a quote?" Other consumers' comments have absolutely no bearing on the issue of Mantha's disputed consent.

And even if they did, the Court could not draw any inference against QuoteWizard based on the consumer comments at the summary judgment stage since QuoteWizard is the non-moving party on the issue of the disputed consent. Rather, the Court must take the record "in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990).

### D. The Paronich Declaration Fails to Accurately Describe the DNC Data; Fuller Data Also Undermines Mantha's Narrative

First, Attorney Paronich has not accurately represented the DNC Data that was produced by Drips and portions of which he purportedly attaches to his Declaration, therefore further rendering his Declaration inadmissible. For example, Attorney Paronich has misstated the tiers represented in the DNC Data, failing to recognize that the data represents three—not two—"tiers" as classified by Drips. *See* Paronich Dec., ¶ 11 ("Ultimately, the parties agreed that QuoteWizard would produce 500 of the **Tier 1** and 100 of the **Tier 2** DNC Complaints received prior to the texts sent to Mr. Mantha." (emphasis added)); *id*., ¶ 13 ("On July 8, 2021, Quote[W]izard produced the substance of the 600 **"Tier 1" and "Tier 2"** DNC Complaints submitted by consumers immediately preceding the texts sent to Mr. Mantha. This file was labelled "DRIPS000008 - CONFIDENTIAL Pursuant to the Courts Default PO (Redacted).xlsx. The 600 **Tier 1 and Tier 2** DNC Complaints submitted by consumers during the time frame immediately preceding the telemarketing texts sent to Mr. Mantha are attached at Tab A." (emphasis added)); *compare Drips Holdings, LLC v. QuoteWizard.com LLC*, No. 1:21-mc-91266-LTS (D. Mass.), Dkt. No. 37 (requiring Drips (the entity in possession of the requested documents, not QuoteWizard) to produce "the underlying consumer response for up to 500 **Tier 1** reports and up to 100 **Tier 2 and**

**3** reports (for a total of up to 600 responses)" under the parameters specified therein) (emphasis added).

Moreover, nowhere in the Parties' Joint Stipulation at Docket No. 37 are the "do not call" requests or "disqualifications" called or characterized as "complaints," and the DNC Data was maintained and produced by Drips, not QuoteWizard. *See generally id*.

As another example, QuoteWizard has reviewed and disputes Attorney Paronich's summarization of the data in Paragraphs 6-8 of his Declaration, as a review of the same records he cites in Paragraph 3 indicates that he has miscalculated the data. Whereas Attorney Paronich has indicated that there are a total of 2,561,448 rows of data in the records identified, QuoteWizard has calculated 2,561,245 rows. Whereas Attorney Paronich has indicated there are "16,019 'Tier 1' requests in the documents[,]" QuoteWizard has calculated 14,582. Whereas Attorney Paronich has indicated that there are "756,049 'Tier 2' requests in the documents[,]" QuoteWizard has calculated 970,894. Moreover, Attorney Paronich does not mention that the records identified contain "Tier" 3 communications, as well. He has also not attached the records identified in Paragraph 3 so that the Court may review for itself and resolve the inaccuracies. The Court cannot Attorney Paronich's inaccurate summarizations of the DNC Data, which renders his Declaration further inadmissible.

Second, Attorney Paronich's description of the DNC Data as representing consumer "complaints" (a description incorporated by and parroted in Mantha's memorandum of law) is also shockingly misleading and inaccurate when considering the totality of the DNC Data that Drips produced, only a portion of which Attorney Paronich attached as "Tab A" and "Tab B" to his Declaration. As representative examples, the below consumer responses were included in the DNC Data produced by Drips and, needless to say, can neither constitute a "complaint" nor show

a lack of consent to contact the consumer in the first instance. In fact, many of these DNC requests *actually acknowledge consent*:

[redacted]





[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

<p>



*See* Exhibit 1 – *Relevant Portions of "DRIPS000005 -CONFIDENTIAL Pursuant to the Court's Default PO (Redacted).xlsx."*

This is not surprising given that, for each and every lead that QuoteWizard buys, QuoteWizard requires and is guaranteed that it comes with compliant consent under the Telephone Consumer Protection Act. *See* ECF No. 203, ¶ 5 ("Every single lead that QuoteWizard purchases, including the Joseph Mantha lead at issue herein, carries with it a contractual promise from the entity that sells the lead to QuoteWizard that the seller obtained consent for the lead that satisfies the Telephone Consumer Protection Act and all other applicable laws and regulations.").

Thus, even for the fraction of consumers contacted by QuoteWizard who have requested no further communication as reflected in the DNC Data, this data has captured people who freely admit that they consented to receive the initial communications. *See* ECF No. 124, Ex. 5 (QuoteWizard Declaration), ¶¶ 5-6 ("'[D]o not call' records reflect consumers who have consented to receive communications from QuoteWizard but who then requested no further contact. It is the functional equivalent of an 'opt out.' … The 'do not call' requests are not complaints from those consumers and do not indicate that the consumers did not originally consent to be contacted. The records reflect a consumer's choice not to receive a further communication."). *See also* Ex. 1.

As such, even Mantha's allegedly "best" evidence to try to establish that QuoteWizard lacks consent to contact consumers inadvertently shows that QuoteWizard's business model is

premised on consent. His attempt to mischaracterize the DNC Data as "complaints" is therefore not only unsupported by the DNC Data itself and other factual evidence in the record but clearly false or at least misleading in light of the consumers within the DNC Data who clearly acknowledge that they did in fact consent. For this additional reason, the Paronich Dec. and the tabs thereto should be stricken.

## CONCLUSION

On any of the above grounds, "Tab A" and "Tab B" to the Paronich Declaration, and the statements concerning the data made in the Declaration, must be stricken and/or not considered.

WHEREFORE, QuoteWizard respectfully requests that the Court strike the "tabs" attached to the Declaration of Attorney Paronich, Esq. and the portions of the Declaration that purport to analyze or characterize the same, and not consider this inadmissible evidence in the summary judgment context.

Respectfully submitted,

QuoteWizard.com, LLC,
By its attorneys,

*/s/ Kevin P. Polansky*
Kevin P. Polansky (BBO #667229)
kevin.polansky@nelsonmullins.com
Christine M. Kingston (BBO #682962)
christine.kingston@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
One Financial Center, Suite 3500
Boston, MA 02111
(t) (617)-217-4700
(f) (617) 217-4710

Dated: August 4, 2021

## LOCAL RULE 7.1 CERTIFICATION

I, Kevin P. Polansky, hereby certify that, by e-mails on July 31, 2021, Plaintiff's counsel and my office conferred in good faith regarding the issues raised by this Motion, but we were unable to narrow or resolve the issues. Plaintiff opposes this Motion.

Dated: August 4, 2021                                               /s/ Kevin P. Polansky

## CERTIFICATE OF SERVICE

I, Kevin P. Polansky, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: August 4, 2021                                               /s/ Kevin P. Polansky