**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JOSEPH MANTHA, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>QUOTEWIZARD.COM, LLC,<br><br>Defendant. | Civil Action No. 1:19-cv-12235-LTS |

**DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S IMPROPER REFERENCES TO SETTLEMENT NEGOTIATIONS IN SUMMARY JUDGMENT PAPERS OR ALTERNATIVELY FOR A LIMITED DEPOSITION REGARDING THE MATTERS RAISED BY PLAINTIFF**
**(Memorandum Incorporated)**

Now comes Defendant QuoteWizard.com, LLC ("QuoteWizard") and hereby moves to strike the portions of Plaintiff Joseph Mantha's ("Mantha") summary judgment Opposition [ECF No. 221] and the Affidavit of Matthew McCue, Esq. ("McCue Affidavit") [ECF No. 221, Exhibit 1] that egregiously and improperly discuss confidential settlement offers and negotiations between the Parties during this case.

As Mantha's discussion of these negotiations flagrantly violates rules relating to the confidentiality of settlement negotiations, and because the discussion is not relevant to any disputed issue anyway, it must be stricken from the record.

In the alternative, if the Court is inclined to not strike but rather consider the settlement references in ruling upon the pending cross-motions for summary judgment, QuoteWizard requests that the Court allow it a limited deposition of Mantha to probe the matters now raised by his counsel—namely, the reasons behind Mantha's settlement decisions to date, as they are unknown.

As Mantha's counsel has opened the door to such matters, it is only fair and just for QuoteWizard to probe them before the Court considers such purported evidence.

## BRIEF BACKGROUND

Each party to this case has made settlement offers during the course thereof. In continuation of ongoing, confidential settlement negotiations, QuoteWizard served a letter on Mantha's counsel dated December 30, 2020. ***QuoteWizard marked the document Confidential***, advising that "[t]his is a confidential offer of settlement of the above-captioned action ("Action"), subject to all attendant protections[.]"[1] Each and every settlement discussion between the attorneys in this case was expressly marked or considered confidential, not to be disclosed to this Court or otherwise.

Mantha seeks to use portions of the aforementioned, confidential letter and other confidential settlement offers and negotiations to support his Opposition to QuoteWizard's Motion for Summary Judgment. *See* ECF No. 221, p. 2 n.4, p. 17 & n.16. Even more egregiously, Mantha's counsel has purported to submit an affidavit discussing some (but not all) of the confidential settlement discussions and then suggesting or implying, in the affidavit, that the Court should infer that QuoteWizard is liable because it made settlement offers. *See* ECF No. 221, Exhibit 1 (McCue Affidavit).

Mantha's counsel did not ask QuoteWizard's counsel for assent to breach confidentiality by disclosing portions of the confidential letter, *nor did QuoteWizard's counsel have any notice at all that Mantha's counsel would include portions of the confidential negotiations* in Mantha's filings. QuoteWizard's counsel first learned of the references to the confidential settlement negotiations when reviewing Mantha's as-filed papers with the Court. If Mantha's counsel had

---

[1] Should the Court wish to see the December 30th letter for reference, QuoteWizard can file the same under seal.

2

alerted QuoteWizard to their plan to use confidential settlement negotiations in papers filed with the Court, QuoteWizard's counsel likely would have sought an Order precluding the same *before* Mantha's papers were filed, as QuoteWizard considers settlement negotiations to be inviolate, and Mantha's improper references, already filed and docketed with the Court, have the potential (and likely were intended) to poison the well.

## APPLICABLE LEGAL STANDARDS

Settlement offers and negotiations are generally inadmissible under Federal Rule of Evidence 408 "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408. They may be admissible for narrow other purposes, such as "proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." *Id*. In sum, Rule 408 "bars the introduction of an offer or agreement to compromise a disputed claim, or the content of settlement negotiations, to prove liability for, invalidity of, or [the] amount of the disputed claim." *Nat'l Union Fire Ins. Co. Of Pittsburgh, PA v. W. Lake Acad.*, 548 F.3d 8, 20 (1st Cir. 2008). *See also Carballo-Rodriguez v. Clark Equip. Co.*, 147 F. Supp. 2d 66, 76 (D.P.R. 2001) ("Rule 408 provides that evidence of conduct or statements made in the context of settlement negotiations are inadmissible to prove liability.").

There are two underlying bases for the Rule: (1) such evidence is irrelevant, since settlement positions "may also be influenced by other circumstances"; and (2) "promotion of the public policy favoring the compromise and settlement of disputes." Fed. R. Evid. 408, Notes of Advisory Committee on Proposed Rules.

As to the second point, Rule 408 excludes settlement offers or other conduct or statements made during settlement negotiations in order to encourage disputing parties to attempt to resolve

3

their conflict outside of the courtroom. *See Zurich Am. Ins. Co. v. Watts Industries, Inc.*, 417 F.3d 682, 690 (7th Cir. 2005). Otherwise, to allow these settlement offers or statements to come into evidence could "chill voluntary efforts at dispute resolution." *Id*. Thus, courts closely guard against evidence barred by Rule 408; courts are more likely to allow settlement evidence in when the evidence arises from a dispute distinct from the one in which it is being offered. *Id*.

### ARGUMENTS & AUTHORITIES

**A. The Court Should Strike the Egregious Use of Confidential Settlement Negotiations**

Mantha's attempted use and weaponization of confidential settlement negotiations is *exactly* the type of conduct that Rule 408 was designed to bar in the first instance. Even worse, Mantha's counsel's conduct proves that counsel knew that such attempted use was improper, but forged ahead anyway and sought to unfairly conceal the same and surprise QuoteWizard's counsel. The entirety of the McCue Affidavit should be stricken, as well as the portions of Mantha's Opposition that discuss settlement offers and negotiations.

As an initial matter, there cannot be any serious debate that Mantha's counsel attempts to advance the settlement negotiations as proof of QuoteWizard's alleged liability. In a monumentally inappropriate affidavit from counsel of record,[2] Mantha's counsel claims that QuoteWizard attempted to "buy off" Mantha and at an amount "far in excess" of his alleged statutory damages, after Mantha's counsel claims that "extensive discovery conclusively proved that Mr. Mantha did not consent to receive its telemarketing texts." *See* McCue Affidavit, ¶¶ 6-11.

---

[2] QuoteWizard separately moves to strike the McCue Affidavit on additional grounds, such as improper purported testimony from an attorney of record and lack of personal knowledge. This Motion focuses solely on the inadmissible use of/reference to settlement negotiations in the McCue Affidavit and Mantha's Opposition.

The remainder of the Affidavit purports to demonize QuoteWizard for its "telemarketing practices," discussing "2.5 million consumer complaints" that do not exist. *See id*.

Not only does Mantha's counsel attempt to use the confidential settlement negotiations to try to prove that QuoteWizard is liable, he clearly attempts to use it more generally to poison the well: to paint QuoteWizard and its attorneys as bad actors hoping to "buy off" an allegedly innocent plaintiff and "disparage" him in court filings. *See* McCue Affidavit. This line of argument, dressed up as sworn, substantive testimony by counsel of record, is flagrantly violative of Rule 408 and other fundamental rules of litigation.

In light of the McCue Affidavit—proffered as *sworn testimony from Mantha's counsel of record*—Mantha's attorneys cannot seriously argue that the confidential settlement negotiations are offered for any other reason than to prove, suggest, or imply QuoteWizard's alleged liability and otherwise baselessly attack it for engaging in good faith settlement negotiations. This is *precisely* what Rule 408 forbids. *See* Fed. R. Evid. 408. Mantha's papers clearly violate the letter and spirit of Rule 408. On the latter point, it is clear that Mantha's counsel knew that the settlement references were highly improper. Mantha's counsel made no attempt to inform QuoteWizard's counsel of an intent to reference settlement negotiations in Mantha's summary judgment papers, despite that the Parties exchanged correspondence and worked collaboratively pursuant to LR 7.1 regarding other summary judgment-related issues. Mantha's counsel also did not identify the settlement references as a matter they sought to seal when asking QuoteWizard to assent to the sealing of certain unidentified matters in their summary judgment opposition papers. This conduct shows an attempt to conceal and unfairly surprise QuoteWizard with the inclusion of highly objectionable, confidential materials filed with the Court.

Despite the unmistakable tone, tenor, and substance of the McCue Affidavit in which he uses the negotiations to argue that QuoteWizard is trying to "buy off" Mantha to avoid liability, Mantha's attorneys then attempt to argue in the Opposition that the settlement negotiations are actually just harmless, admissible evidence of Mantha's motivations for prosecuting this lawsuit. This argument should be rejected outright given the statements in the McCue Affidavit that unambiguously proffer the evidence for proof of liability.

In addition, this argument misses the mark for three additional reasons. First, and notwithstanding that there is no admissible evidence concerning *why* Mantha made certain settlement decisions and nothing can be inferred from the decisions themselves—his settlement decision-making is not relevant to standing. In arguing that Mantha lacks both Article III and prudential standing, QuoteWizard is relying solely on *pre-litigation conduct*. Namely, and among other things, the fact that Mantha was told about TCPA money-making schemes prior to the text messages, was actively coached on how to respond to QuoteWizard by a friend and (indirectly) his future attorney in this case, he voluntarily engaged in a conversation with QuoteWizard and asked for an auto insurance quote, he never disclosed the text messages to anyone or alleged an injury, and that he openly discussed with the same friend making a monetary demand to "get paid" "life-changing money." *See* ECF No. 204, ¶¶ 78-82, 116-121, 122-143.

Mantha's attempt to use confidential settlement negotiations *during this lawsuit* does not rebut this undisputed, pre-litigation conduct, nor is it even relevant thereto. As the Advisory Committee Notes to Rule 408 recognizes, the decision to offer or reject settlement of a pending case is generally irrelevant because there may be other circumstances at play—for example, the presence of attorneys as intermediaries.

6

To that end, Mantha's counsel has consistently represented to QuoteWizard's counsel that they are not interested in a so-called "individual settlement" of this case unless and until Mantha makes and loses a class certification motion or it is otherwise clear that the case cannot or will not be certified as a class action. In other words, Mantha's attorneys have represented that they are not interested in an "individual" settlement but rather a "class-wide" monetary settlement (reflecting a much higher value). This fact is made even further clear by the McCue Affidavit, which complains that QuoteWizard has not made a "class-wide" monetary offer. *See* McCue Affidavit, ¶¶ 4, 7, 11.[3]

Thus, based on the facts known to QuoteWizard, Mantha's rejection of settlement offers to date might have *nothing* to do with Mantha's subjective mindset or motivations but more to do with his counsel's strategy and direction in this case. QuoteWizard also notes that rejection of settlement offers to date could equally be taken to support Mantha's pursuit of this case as a money-making scheme; the fact that Mantha has rejected prior settlement offers in pursuit of a higher one does not negate, but in fact helps prove, his use of this lawsuit to "get paid."

Second, and relatedly, the Court cannot reasonably infer, in the absence of any admissible evidence, that Mantha rejected certain settlement offers (and made others) because he is allegedly seeking to vindicate his rights and others' rights under the TCPA. To use settlement negotiations as proof of a plaintiff's mindset is an exercise in speculation, unsupported by admissible evidence. To that end, QuoteWizard notes that—curiously—Mantha's attorney offers an 11-paragraph sworn affidavit purporting to provide substantive testimony on *Mantha's subjective mindset* but Mantha himself has not proffered an affidavit in the summary judgment record. Mantha could have submitted an affidavit discussing his alleged (but nonexistent) injury, his motivations in filing

---

[3] The McCue Affidavit also conveniently fails to reference and discuss Mantha's offers of settlement in this case, which, according to his theory, is somehow proof of a weakness of his case.

7

suit, etc., without his counsel having to resort to confidential settlement negotiations.[4] Mantha's silence speaks volumes; his counsel of record has attempted to do his bidding and on the basis of inadmissible evidence and improper inferences. No one can know based on the evidence at hand what Mantha's subjective mindset was in making settlement decisions and the Court certainly cannot and should not accept his counsel's inappropriate characterizations of the same.

Third, and even *if* this Court could accept Mantha's counsel's disingenuous claim that the settlement negotiations are somehow proof of Mantha's standing and even *if* there was admissible evidence on that point, Mantha's standing is inextricably intertwined with the merits of his claim (including alleged injury), and therefore this is still a prohibited use under Rule 408. *See EEOC v. UMB Bank Fin. Corp.*, 558 F.3d 784, 791-792 (8th Cir. 2009) (stating that it believed Rule 408 applied to a note improperly admitted into evidence "regarding the calculation or estimation of damages" that was used to "reflect[] upon [plaintiff's] motivations for bringing suit and upon his credibility") (although noting error in admission, finding harmless error given outcome of trial).

Because the settlement negotiations are not proof of Mantha's standing at all, and were not genuinely offered for that purpose, and because Mantha could have but failed to submit actual evidence on this point (in the form of his affidavit), Mantha's highly inappropriate use of confidential settlement negotiations must be stricken from the summary judgment record. *See St. Paul Fire & Marine Ins. Co. v. Brother Int'l Corp.*, 2007 U.S. Dist. LEXIS 64648, at *54-56, 2007 WL 2571960 (D.N.J. August 29, 2007) (evidence of settlement negotiations, which were "an attempt to bring an amicable resolution" to the case, were stricken and inadmissible at summary judgment and excluded by Rule 408; "the settlement negotiations in this case are irrelevant to the

---

[4] Moreover, Mantha was deposed twice, including relating to a lack of injury, etc. The fact that Mantha's counsel cannot use the deposition transcripts but rather seeks to rely on inadmissible, confidential evidence is proof that Mantha's counsel attempts to *make* evidence improperly where it otherwise does not exist.

Motions for Summary Judgment currently pending before the Court and have not assisted the Court in its deciding of the pending Motions"); *BPI Energy Holdings, Inc. v. IEC (Montgomery), LLC*, 2010 U.S. Dist. LEXIS 69045, at *10-11, 2010 WL 2738969 (S.D. Ill. July 12, 2010) (agreeing that "Rule 408 would be rendered a nullity if a proponent could circumvent the rule" by claiming that other party's settlement efforts were in bad faith; because the settlement negotiations arose from the dispute at issue in the suit, and were attempted to be used at least in part to support the proffering party's claims, striking the settlement evidence from the summary judgment record as violative of Rule 408).

To permit such references would be to strip Rule 408 of all meaning and protective force. QuoteWizard would have no good faith ground to engage in future settlement negotiations with Mantha if past, good faith negotiations are allowed to be weaponized and used against it *even when expressly deemed confidential*.  This is particularly true where QuoteWizard's counsel was not given the professional courtesy by Mantha's counsel that they would seek to use the negotiations in their summary judgment filings until after Mantha's counsel attempted to poison the well with the inflammatory counsel affidavit.  Under these egregious circumstances, if the settlement offers and negotiations are admitted into evidence and considered by the Court, that could result in a complete erosion of trust and breakdown of any meaningful lines of communication concerning settlement if this case survives summary judgment.  Rule 408 exists precisely to avoid that.

**B. Alternatively, QuoteWizard Requests a Limited Deposition of Mantha**

By and through the McCue Affidavit and Mantha's Opposition to QuoteWizard's Motion for Summary Judgment, Mantha has directly put at issue and opened the door to discovery on his mindset in rejecting settlement offers made in this case.  As explained *supra* Section A, and notwithstanding that the settlement negotiations are inadmissible under Rule 408, the Court cannot

9

accept Mantha's counsel's characterization of the subjective reasons behind Mantha's settlement decisions. There is no actual *evidence* in the record on that point, putting aside his counsel's flagrantly inadmissible affidavit purporting to speculate and guess concerning the same. The simple act of rejecting a settlement offer carries no inherent meaning that the Court can fairly discern.

Therefore, in the event the Court determines that the settlement negotiations are admissible despite the clear dictates of Rule 408, then QuoteWizard is entitled to defend against such purported evidence by probing into the matters Mantha's counsel has put at issue: why Mantha rejected settlement offers in this case, including but not limited to whether his settlement decisions have been materially affected by input from his counsel as could be the case. As noted *supra*, Mantha's attorneys have been categorical in rejecting "individual" settlement offers and insisting on "class-wide" settlement offers, which could have impacted Mantha's decision-making.[5]

To that end, QuoteWizard would request a limited deposition of Mantha, not to exceed three (3) hours, solely on these points. The Court is authorized to grant this relief under Federal Rule of Civil Procedure 56(d), Federal Rule of Civil Procedure 16(d), and/or its inherent powers before ruling on the cross-motions for summary judgment. *See* Fed. R. Civ. P. 56(d); Fed. R. Civ. P. 16(d). *See also United States v. Bulger*, 283 F.R.D. 46, 53 (D. Mass. July 17, 2012) ("[T]his

---

[5] To the extent Mantha's attorneys claim that such a deposition would interfere with the attorney-client privilege, QuoteWizard notes that the majority of the deposition would focus on Mantha's decision-making process, not his counsel's statements. But to the extent that Mantha's counsel's statements to him materially impacted that decision-making process, then Mantha has waived any privilege with regard to such statements. By submitting the McCue Affidavit and putting Mantha's settlement decision-making at issue, Mantha has opened the door to questioning and has waived the privilege on these points. *See, e.g., Maciel v. Thomas J. Hastings Props.*, 2012 U.S. Dist. LEXIS 204762, at *6-8 (D. Mass. Nov. 30, 2012) (attorney-client privilege is waived when "[f]airness requires that the privilege holder surrender the privilege to the extent that it will weaken, in a meaningful way, the [other side's] ability to defend"; "That is, the privilege ends at the point where the defendant can show that the plaintiff's civil claim, and the probable defenses thereto, are enmeshed in important evidence that will be unavailable to the defendant if the privilege prevails.") ("attorney client privilege should not be used as a sword and a shield").

court undeniably has the discretion and the authority to modify or vacate the protective order under Rule 16(d) and/or its inherent power to control the discovery process. … Simply stated, albeit in a civil case, [c]ontrol of pretrial discovery, including the entry or modification of a protective order, is a matter falling peculiarly within the discretion of the district court." (citation and quotation omitted)); *Reza v. Crowley Towing & Transp. Co.*, 628 F. Supp. 1575, 1576 (D.P.R. March 6, 1986) (court has "inherent power to control the cases before it").

## CONCLUSION

WHEREFORE, QuoteWizard respectfully requests that the Court grant its Motion and strike and refuse to consider all references to and discussions of confidential settlement negotiations and offers made in the Plaintiff's Opposition to QuoteWizard's Motion for Summary Judgment and the entirety of Plaintiff's counsel's affidavit in support thereof, or alternatively allow QuoteWizard to depose Plaintiff on the limited issue of his decision to reject settlement offers made in this case.

    Respectfully submitted,

    QuoteWizard.com, LLC,
    By its attorneys,

    */s/ Kevin P. Polansky*
    Kevin P. Polansky (BBO #667229)
    kevin.polansky@nelsonmullins.com
    Christine M. Kingston (BBO #682962)
    christine.kingston@nelsonmullins.com
    Nelson Mullins Riley & Scarborough LLP
    One Financial Center, Suite 3500
    Boston, MA 02111
    (t) (617)-217-4700
Dated: August 18, 2021    (f) (617) 217-4710

## LOCAL RULE 7.1 CERTIFICATION

I, Kevin P. Polansky, hereby certify that, on August 18, 2021, my office e-mailed Plaintiff's counsel in good faith regarding the issues raised by this Motion, but we were unable to narrow or resolve the issues. Plaintiff opposes this Motion.

Dated: August 18, 2021                                         */s/ Kevin P. Polansky*

## CERTIFICATE OF SERVICE

I, Kevin P. Polansky, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: August 18, 2021                                         */s/ Kevin P. Polansky*