**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

JOSEPH MANTHA on behalf of himself and others similarly situated,
Plaintiff,

v.

QUOTEWIZARD.COM, LLC
Defendant.

Case No. 1:19-cv-12235-LTS-PK

**PLAINTIFF'S OPPOSITION TO QUOTEWIZARD'S MOTION TO STRIKE DNC COMPLAINTS [ECF 222]**

## I. BACKGROUND

Mr. Mantha initiated this consumer class action against QuoteWizard for what is suspected to be a massive violation of the Telephone Consumer Protection Act, and the protections afforded to consumers by the provisions of the National Do Not Call Registry. The exact number of telemarketing texts sent by QuoteWizard is unknown at this time as initial discovery was limited to Mr. Mantha's individual claim. *See* ECF #39. During discovery, however, plaintiff sought the production of do not call requests submitted by consumers who objected to their receipt of QuoteWizard's telemarketing texts and requests such text telemarketing solicitations cease ("DNC Demands"). *See* ECF #104, #112, #124, #132, #133, #136, #144, #149-151; ECF# 153; ECF #158, #162, #163, #165, #167, #170, #177-180, #184, and #186. QuoteWizard resisted producing the DNC Demands. *Id.* Initially, in fact, QuoteWizard claimed that only 46,000 consumers had submitted DNC Demands and provided this Court with a sworn declaration attesting that the "do not call" demands ***"are not complaints"*** but merely reflect a consumer's choice not to receive further communications. *See*

ECF#124-5, Declaration of Tricia Winkler at ¶5-6.

Thereafter, the Court rejected QuoteWizard's objections and ordered it to produce the records, regardless as to how they were labelled. *See* ECF #132. QuoteWizard, however, still refused to produce the substance of these consumer responses to QuoteWizard telemarketing texts, necessitating further motion practice. The Court ultimately ordered QuoteWizard, again, to produce consumers DNC responses to QuoteWizard's telemarketing texts. *See* ECF #144. Thereafter, QuoteWizard informed the Court and Mr. Mantha that its initial claim that 46,000 consumers had submitted DNC Complaints after receiving QuoteWizard's telemarketing texts was incorrect. In fact, over 2.5 million consumers had submitted DNC Complaints after receiving QuoteWizard's telemarketing texts. *See* ECF# 184*,* Defendant's Notice to Court Regarding Supplemental, Corrected Production*,* (QuoteWizard acknowledges error in its prior discovery responses disclosing that the number of consumers who submitted Do Not Call Complaints after receiving QuoteWizard telemarketing texts was not 46,000 as represented previously to the Court, but in fact was over [REDACTED]

Even after disclosing that over [REDACTED] consumers submitted DNC Complaints after receiving QuoteWizard telemarketing texts, QuoteWizard continued to refuse to produce the substance of the DNC Complaints, claiming the production of so many consumer DNC Complaints would be overly burdensome. *See* ECF #149-151; #153; #158, #162, #163, #165, #167, #170, #177-180, #184, and #186.

To overcome this claim of purported burden, the parties ultimately agreed and stipulated that QuoteWizard would produce 600 DNC Complaints immediately preceding the text solicitation sent by QuoteWizard to Mr. Mantha. QuoteWizard also agreed to produce all of the DNC Complaints received between March 17, 2021, and May 17, 2021 (the "Stipulation"). *See*

ECF #186. *See Drips Holdings,LLC v. QuoteWizard.com LLC*, No. 1:21-mc-91266-LTS (D. Mass.), Dkt. No. 37.

On July 8, 2021, pursuant to the court approved Stipulation, Quotewizard produced the substance of the 600 DNC Complaints submitted by consumers immediately preceding the telemarketing texts sent to Mr. Mantha. On this same date, QuoteWizard also produced all of the DNC Complaints received from consumers who received QuoteWizard's spam telemarketing texts between March 17 and May 17 of 2021. [REDACTED] consumers submitted DNC Complaints after receiving QuoteWizard telemarketing texts during this three month time period. *See ECF #210-5,* Declaration of Anthony Paronich and Tabs A & B.

## II. RELEVANT FACTS

On July 14, 2021, the Plaintiff, Joseph Mantha, filed a motion for partial summary judgment (ECF #204-206, 209-211. the "Motion") on two issues: First, whether QuoteWizard had carried its burden to prove that Mr. Mantha consented to receive the text messages at issue in this case, and, second, if Mr. Mantha's telephone number was subject to the protections afforded by the National Do Not Call Registry. *Id.* In support of the Motion, Mr. Mantha submitted the Declaration of Anthony Paronich (ECF #210-5), which attached a small sampling of the Do Not Call Complaints submitted by consumers who received QuoteWizard's telemarketing texts. On their face, these complaints evidence the outrage expressed by consumers who received QuoteWizard's telemarketing texts and revealed QuoteWizard's claim that it had a good faith belief that the consumers it was texting had consented to be texted is a fallacy. In response, QuoteWizard both opposed Mr. Mantha's Motion for Partial Summary Judgment (ECF #223) and affirmatively moved for summary judgment on various issues, including its claim that it is entitled to a good faith defense because it purportedly subjectively believed that Mr. Mantha had consented to receive its telemarketing texts, and that it had no reason whatsoever to question

whether the leads purchased from third party data vendors that it used to send telemarketing texts to consumers *en masse* were TCPA compliant. *See* ECF #202.

On August 4, 2021, QuoteWizard filed a motion to strike the Declaration of Anthony Paronich, as well as the substantive DNC demands submitted by consumers who received QuoteWizard's telemarketing texts. *See* ECF #222. In support, QuoteWizard claims that its Motion to Strike should be granted because counsel for Mr. Mantha "mischaracterized" the evidence attached to the Declaration of Attorney Paronich by referring to the Do Not Call demands of consumers in response to their receipt of QuoteWizard telemarketing texts as "complaints." QuoteWizard also argues that the DNC demands, which were produced in response to a Court Order, and pursuant to the Stipulation between counsel, are inadmissible hearsay and do not qualify as a business record apparently because the agreed upon Stipulation did not include the boiler plate language required to authenticate the DNC demands as "business records." QuoteWizard also claims that the DNC demands are not otherwise admissible based on any exception to the hearsay rule. As detailed below, each of these arguments fail and the Motion to Strike should be denied.

## III. ARGUMENT

### A. QuoteWizard Continues The Fallacy That A DNC Demand Is Not A 'Complaint.'

In its lead argument, QuoteWizard claims counsel for Mr. Mantha "mischaracterize" the evidence when they refer to the DNC responses attached to the Declaration of Attorney Paronich as "complaints." In QuoteWizard's world, consumers who respond to QuoteWizard's telemarketing texts with responses such as [redacted]

[redacted] are all simply consumers who previously consented to receive QuoteWizard telemarketing texts, and just simply changed their mind. QuoteWizard then spends the first eight pages of its brief claiming the DNC Demands are not really complaints and it was unfair for counsel to Mr. Mantha to refer to the DNC Demands as 'complaints.' The DNC Demands produced by QuoteWizard and attached to the Declaration of Counsel speak for themselves. *See* ECF #210-5. Counsel for Mr. Mantha stand by their fair characterization that the overwhelming majority of these consumer demands are fairly characterized as "complaints."

### B. QuoteWizard's Telemarketing Vendor Has Provided A Business Records Declaration Authenticating The DNC Complaints.

[redacted]

Defendant claims that the business records exception does not extend to consumer-generated contents of business records, it mischaracterizes *United States v. Vigneau*. 187 F.3d 70 (1st Cir.

[1] These are all actual verbatim examples of consumer responses to QuoteWizard telemarketing texts, and all are located on the first page of the sampling attached at Tab A to the Declaration of Counsel.

1999). In *Vigneau*, the government relied on Western Union money transfer forms with the Defendant's name on them as evidence that Vigneau sent those money transfers. *Id.* at 74. The Court of Appeals correctly concluded that anybody could have completed those forms with the Defendant's name and that those forms were therefore not business records. *Id.* at 75. Not so here. The records of consumer replies produced by Drips were computer-generated from replies affirmatively sent by the recipients of the messages sent by QuoteWizard and stored in their vendor's siloed database.

    A record of acts or events is admissible upon the testimony of the custodian or other qualified witness showing that the record was made at or near the time by a person with knowledge, if it was kept in the regular course of a regularly conducted business activity and it was the regular practice of that business activity to make such records. FED. R. EVID. 803(6). Courts are inherently more trusting of automatically-created and machine-generated data, such as the DNC Data. *See CE Design Ltd. v. Cy's Crabhouse N., Inc.*, 259 F.R.D. 135, 139 (N.D. Ill. 2009) (holding that computer-generated fax logs were admissible in a TCPA case under the business records exception). By all accounts, even without the affidavit, the data was kept in the regular course of Drip's business and it was Drip's practice to make such records:

[redacted]



under the business records exception to the Hearsay Rule.

**C. The DNC Data is Subject to Admission Under the State of Mind and The Residual Hearsay Exceptions to the Hearsay Rule**

In addition to the business record exception, even if the court were to hold that the Plaintiff did present the DNC Data for the truth of the matter asserted, the DNC Data is subject to at least two additional exceptions to the hearsay rule: the state of mind exception and the residual hearsay exception.

Under the state of mind exception, when a witness makes a statement as to their state of mind, that statement is admissible as to the truth of their state of mind. FED R. EVID. 803(3). In the consumer context, courts have held that consumer statements evidencing confusion over trademarks, for example, were not hearsay. *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 509 (9th Cir. 2011). Therefore, statements of confused or angry recipients of Defendant's text messages in response to them are admissible in that they clearly evidence confusion arising out of a lack of consent (*e.g.* Why am I getting this message for someone else?).

The DNC Data also qualifies under the residual exception to the hearsay rule. Under this exception, a hearsay statement is not excluded if, under the totality of the circumstances, it is supported by sufficient guarantees of trustworthiness and it is more probative than any other evidence that the proponent can obtain through reasonable efforts. Courts have admitted audio

recordings of telephone calls under the residual exception to ascertain consumer responses to telemarketing conduct. *ADT Sec. Servs. v. Sec. One Int'l, Inc.*, No. 11-CV-5149 YGR, 2013 WL 4766401, at *5 (N.D. Cal. Sept. 5, 2013). Like audio recordings, the DNC Data directly speak to the essence of the consumer interaction, including statements which indicate a lack of consent. The writings either occurred or they did not. And asking each recipient to testify would be unreasonable. To begin with, the Defendant has *sua sponte* redacted the identity of the call recipients and will not disclose them to the Plaintiff. And even if the Defendant did, it would be impractical to call all but a few of these recipients to testify, especially because of the nationwide scope of Defendant's text-spamming campaign.

### D. The DNC Complaints Are Admissible As They Demonstrate That QuoteWizard Was On Notice That It Was Telemarketing In Violation of the TCPA and Cannot Claim a Defense of Good Faith Or Reasonable Reliance

As a preliminary matter, the DNC demands produced by QuoteWizard and attached to the Declaration of Attorney Paronich, are not hearsay. Under the hearsay rule, out-of-court statements are not admissible as evidence if they are offered to prove the truth of the matter asserted. *See* Fed. R. Evid. 801(c). In order to constitute hearsay, evidence must be offered to *prove the truth of the matter asserted*. *See United States v. Cruz-Diaz*, 550 F.3d 169, 176 (1st Cir. 2008) ("Out-of-court statements offered not to prove the truth of the matter asserted but merely to show context--such as a statement offered for the limited purpose of showing what effect the statement had on the listener--are not hearsay.")

To see why the DNC Complaints are admissible, the Court need only look to QuoteWizard's Motion for Summary Judgment (ECF #202) and to its "good faith" defense. QuoteWizard claims it had no reason to know that Mr. Mantha did not consent to receive QuoteWizard telemarketing texts because it reasonably relied on third party vendors who sold it

data, and accordingly it is entitled to complete immunity from Mr. Mantha's TCPA claim based on a defense of "good faith." In support, QuoteWizard claims it purchased Mr. Mantha's data from Rev-Point who had contractually guaranteed that Mr. Mantha's lead was TCPA compliant. *See* ECF #202 at pg. 26. Accordingly, QuoteWizard reasons that since Rev-Point was supposed to only sell it TCPA compliant leads, it acted in "good faith" when it send Mr. Mantha repeated telemarketing texts.

Of course, we now know that, based on the [REDACTED] Do Not Call demands submitted by consumers, that QuoteWizard had ample notice of the fact that the purported consent data it was purchasing from third party lead vendors, such as Rev-Point, was not TCPA compliant as alleged. In fact, QuoteWizard was well aware that its telemarketing text campaign was infuriating consumers who were complaining to QuoteWizard in droves demanding that such spam texts cease. Rather than listen to consumers, QuoteWizard had Drips organize the [REDACTED] as to [REDACTED]



The DNC demands, attached to the Declaration of Attorney Paronich are admissible for the additional reason that they rebut QuoteWizard's claim of good faith. The demands are not admitted to prove the truth of the matter asserted. *See* Fed. R. Evid. 801(c). Rather, the DNC demands are admissible to demonstrate that QuoteWizard was on notice that its text telemarketing practices were not TCPA compliant, that it failed to act accordingly, and having failed to act, cannot claim a defense of reasonable reliance or good faith.[2]



**E. The DNC Complaints Do Not Evidence Consumers Who Provided Their TCPA Compliant Consent To Receive Telemarketing Texts From QuoteWizard**

In a final reality defying effort, QuoteWizard claims that a tiny minority of the DNC responses attached to the Declaration of Counsel "actually acknowledge consent" of consumers to receive QuoteWizard telemarketing texts. *See* ECF # 222 at pg. 12. QuoteWizard appears to have scoured through the tens of thousands of DNC Complaints and has cherry picked approximately thirty five examples of consumers who responded to their receipt of QuoteWizard telemarketing texts with an actual expression of interest in the product being sold. Of course, when a text spammer, such as QuoteWizard, sends out millions of texts to consumers nationwide seeking consumers interested in purchasing auto insurance, it is inevitable that QuoteWizard is bound to reach some consumers who are actually interested in purchasing auto insurance. Contrary to QuoteWizard's claim, however, these responses do not "actually acknowledge consent" of these consumers to receive QuoteWizard telemarketing texts in a manner that is compliant with the TCPA. The mere fact that a consumer expresses an interest in obtaining an insurance quote from QuoteWizard in no way demonstrates that the consumer provided QuoteWizard with their TCPA compliant prior express consent to receive QuoteWizard telemarketing texts. *See Rosales v. Heath*, No. 8:17CV87, 2019 WL 7586541, at *6 (D. Neb. June 27, 2019) (the fact that a person requested a quote does not automatically mean that they provided legally sufficient consent under the TCPA). And, of course, as discussed above, the

---

[redacted]

DNC Complaints, in fact, demonstrate that the opposite is true. Based on the sheer number of Tier 1 and Tier 2 DNC Complaints, QuoteWizard knew it was telemarketing to consumers who did not consent to receive telemarketing texts from QuoteWizard.

## IV.    CONCLUSION

For the foregoing reasons, the Plaintiff requests that the court DENY Defendant's Motion to Strike (ECF #222) in its entirety and consider all the evidence presented by the Plaintiff in its Motion for Summary Judgment.

PLAINTIFF,
By his attorneys

/s/ Matthew P. McCue
Matthew P. McCue
THE LAW OFFICE OF MATTHEW P. MCCUE
1 South Avenue, Suite 3
Natick, MA 01760
Telephone: (508) 655-1415
mmccue@massattorneys.net

Edward A. Broderick
BRODERICK LAW, P.C.
176 Federal Street, Fifth Floor
Boston, MA 02110
Telephone: (617) 738-7080
ted@broderick-law.com

Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Alex M. Washkowitz
Jeremy Cohen
CW LAW GROUP, P.C.
188 Oaks Road Framingham, MA 01701
alex@cwlawgrouppc.com

CERTIFICATE OF SERVICE

    I hereby certify that on August 18, 2021, I electronically transmitted the foregoing to all counsel of record via the electronic filing system.

                                                  */s/ Matthew P. McCue*
                                                  Matthew P. McCue