# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH MANTHA, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>QUOTEWIZARD.COM, LLC,<br><br>Defendant. | Civil Action No. 1:19-cv-12235-LTS |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO ITS MOTION TO STRIKE THE DECLARATION OF ANTHONY PARONICH, ESQ. AND EXHIBITS THERETO**

Defendant QuoteWizard.com, LLC ("QuoteWizard") submits its Reply to Plaintiff Joseph Mantha's ("Mantha") Opposition [ECF No. 235] to QuoteWizard's Motion to Strike the Declaration of Anthony Paronich, Esq. and exhibits thereto [ECF No. 222].

For all of the reasons stated in QuoteWizard's separately-filed Motion to Strike the Declaration of Tom Martindale, which QuoteWizard incorporates herein, the "do not call" requests and consumer comments ("DNC Requests") found at the exhibits to ECF No. 210-5 constitute inadmissible hearsay, are not properly offered for notice purposes, are not cured by the untimely Martindale Declaration, and are not admissible under the business records exception.

In addition, QuoteWizard files this Reply to briefly address Mantha's claims in his Opposition brief that the DNC Requests are admissible under Fed. R. Evid. 803(3)'s "state of mind" exception or the residual exception.[1] The burden is on Mantha to show that the proffered

---

[1] If the Court strikes the Martindale Declaration as requested, then Mantha *per se* cannot satisfy a hearsay exception for the DNC Requests because the records in which they are contained are inadmissible. As noted in the Motion to Strike the Martindale Declaration, Mantha must prove that *both* the Drips

records meet a hearsay exception. *See*, *e.g.*, *United States v. Bartelho*, 129 F.3d 663, 670 (1st Cir. 1997) ("A party who seeks admission of hearsay evidence bears the burden of proving each element of the exception that he asserts.").

First, the DNC Requests are not admissible under the "state of mind" exception. That exception provides that "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will" is not excluded by the hearsay rule. *See* Fed. R. Evid. 803(3). "To be admissible under the state-of-mind exception, 'a declaration . . . must mirror a state of mind, which, in light of all the circumstances, including proximity in time, is reasonably likely to have been the same condition existing at the material time.'" *United States v. Rivera-Hernandez*, 497 F.3d 71, 81 (1st Cir. 2007) (quoting *Colasanto v. Life Ins. Co. of N. Am.*, 100 F.3d 203, 212 (1st Cir. 1996)). "[D]isputes over whether particular statements come within the state-of-mind exception are fact-sensitive." *Colasanto*, 100 F.3d at 212.

As an initial matter, the DNC Requests submitted as tabs to the Paronich Declaration, although unnumbered, appear to include thousands of consumer comments. *See* ECF No. 210-5. The burden is on Mantha to prove that *each* consumer comment would satisfy a hearsay exception; as noted in *Colasanto*, this is a fact-sensitive inquiry. But Mantha has not even attempted to address a single such comment relative to Rule 803(3), let alone each comment. This is woefully insufficient to establish the admissibility of any of the comments under Rule 803(3), much less all of them.

---

Holdings, LLC records *and* the DNC Requests contained within them satisfy a hearsay exception; he has failed at both steps.

In any event, generally speaking, the comments do not represent the consumers' respective state of mind or physical conditions. As a representative example of what actually qualifies under Rule 803(3), an out-of-court statement from a declarant saying "I am confused" describes their state of mind and therefore may be admissible under the exception to show the declarant's then-existing state of mind. *See Idaho Golf Partners, Inc. v. Timberstone Mgmt., LLC*, 2016 U.S. Dist. LEXIS 126800, at *3, 2016 WL 4974944 (D. Idaho Sep. 16, 2016) (testimony about "golfer's statement such as 'I was confused' … though offered for the truth of the matter asserted, may nonetheless be admissible under the hearsay exception for then-existing state-of-mind."). A review of the consumer comments attached to the Paronich Declaration confirm that they do not relate at all to then-existing state of mind or physical condition; for example, many of the comments simply state "No" or "Stop." Most simply request or direct an action.

Moreover, even *if* the Court could construe some of the comments as relating to the consumers' state of mind or physical condition, despite that Mantha has made no attempt to make this showing, Mantha must also satisfy a temporal element, *i.e.* that any declaration concerning state of mind or condition was then-existing at the time of the declaration. *See Colasanto*, 100 F.3d at 212. Mantha has not even acknowledged, much less attempted to satisfy, this temporal requirement for any of the DNC Requests.

The sole case Mantha cites in purported support, *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 509 (9th Cir. 2011), is completely inapposite to his argument. There, the Ninth Circuit held, in a line of similar trademark cases, that testimony about confused customers was admissible to show their state of mind relative to trademark confusion. *See id*. As noted, Mantha has not pointed to a single consumer comment that constitutes evidence of then-existing state of mind. His counsel rather *creates a fictitious comment* ("Why am I getting this message for someone else?") that

3

does not exist to argue the applicability of *Lahoti*. *See* ECF No. 235, p. 7. He cannot even point to a single DNC Request that would satisfy this hearsay exception.

Lastly, it is clear that Mantha's "state of mind" argument is merely a ruse to get the Court to admit the DNC Requests for both the purported truth of the comments but more so for Mantha's counsel's subjective interpretation of them as proof of lack of consent—not for proof of the consumers' state of mind. Even assuming for a moment that any of the DNC Requests qualify under the "state of mind" exception, which they do not, Mantha fails to address how such purported evidence would be relevant to any disputed issue at summary judgment on his claim. What other consumers' state of mind may have been in texting Drips is not relevant to any issue involving Mantha, including whether he consented to the QuoteWizard text messages.

Rather, it is self-evident that Mantha attempts and intends to use the DNC Requests for the extremely improper purpose of subjectively interpreting the DNC Requests to reflect "complaints" and "anger" about QuoteWizard and therefore inviting the Court to infer that, because so many consumers are allegedly complaining to QuoteWizard, Mantha's claim must have some merit. Mantha's attempt to label the hearsay something else—state of mind evidence—is unavailing where he still seeks to advance the comments for the purported truth of the matters asserted therein. *See Olson v. Ford Motor Co.*, 410 F. Supp. 2d 855, 861 (D.N.D. 2006) (where party relied "on the truth of the underlying assertions in the customer [comments]" and "regardless of how the evidence is characterized, the customer complaints would be offered for the truth of the matters asserted therein."). Thus, Mantha does not actually seek to apply the "state of mind" exception and the DNC Requests are not admissible under that exception, anyway.

Finally, Mantha has also fallen woefully short of establishing that any of the DNC Requests are admissible under the residual exception. As with his "state of mind" argument,

Mantha has likewise made no attempt to address any of the DNC Requests individually, apparently hoping that the Court will comb through the thousands of comments attached to the Paronich Declaration and do that work for him. The burden is on Mantha to prove admissibility of each and every DNC Request he seeks to admit and he has not even attempted to satisfy that burden.

In any event, and generally speaking, the DNC Requests also do not satisfy the residual exception. The exception is "to be used only rarely, and in exceptional circumstances and applies only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present." *United States v. Wright*, 363 F.3d 237, 245 (3d Cir. 2004) (internal quotations omitted). The evidence also must be more probative than any other possible evidence on the point for which it is offered. *See Copperweld Steel Co. v. Demag-Mannesmann-Bohler*, 578 F.2d 953, 964-65 (3d Cir. 1978) (admissibility under the residual exception requires in part that "the statement is more probative on the point for which it is offered than any other evidence readily procurable").

The consumer comments to Drips do not have *any* guarantees of trustworthiness, much less exceptional guarantees. As courts have found in deeming inadmissible consumer comments made to businesses, "[t]he problem is that the customer is under no duty to report accurately." *Shimozono v. May Dep't Stores Co.*, 2002 U.S. Dist. LEXIS 28478, at *40-41, 2002 WL 34373490, at *13 (C.D. Cal. Nov. 20, 2002). As in *Shimozono*, Mantha has produced no evidence that the substance of the consumer comments were ever verified by Drips—and no such evidence exists, because they are not so verified. *See id.*, 2002 U.S. Dist. LEXIS 28478, at *40-41 ("Plaintiffs have not offered any evidence that Robinsons-May does adequate verification of the statements by third parties. The court grants the Motion to Exclude Customer Survey Response Cards as they are inadmissable hearsay."). *See also QVC, Inc. v. MJC Am., Ltd.*, 2012

5

U.S. Dist. LEXIS 1713, at *7-8 (E.D. Pa. Jan. 6, 2012) (excluding consumer complaint logs kept by business since underlying consumer comments were inadmissible hearsay) ("QVC does not contend that it took steps to verify each of the customer complaints included in its complaint logs.").

As one court put it when excluding customer comments/complaints, letters, or reports as inadmissible hearsay:

> Complaint letters in a manufacturer's files may be true, **but they also may be accusatory and self-serving**; they are rarely under oath and never subject to cross-examination. As they are necessarily out-of-court statements, they are hearsay if offered to prove the truth of the assertions therein — that the incidents complained of occurred as reported.

*Olson*, 410 F. Supp. 2d at 861 (quoting *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 140 (Tex. 2004) (emphasis added)).

Thus, there are no guarantees of trustworthiness for any of the DNC Requests that Mantha seeks to offer for the truth of the matters asserted therein. Making matters even worse, Mantha not only wants the Court to consider the consumer comments themselves, but *also* accept his subjective interpretations of those comments as reflecting widespread "anger" about alleged lack of consent. *See* ECF No. 235, p. 3 ("On their face, these complaints evidence the outrage expressed by consumers who received QuoteWizard's telemarketing texts and revealed QuoteWizard's claim that it had a good faith belief that the consumers it was texting had consented to be texted is a fallacy.").[2]

---

[2] In his Opposition to QuoteWizard's Motion to Strike the Paronich Declaration, and despite repeatedly asserting that *all* DNC Requests constitute complaints, Mantha's counsel finally concedes that (1) it is counsel's subjective interpretation of the requests to label them as "complaints" and (2) at least *some* of the DNC Requests cannot be characterized as "complaints." *See* ECF No. 235, p. 5 ("Counsel for Mr. Mantha stand by their fair characterization that the overwhelming majority of these consumer demands are fairly characterized as 'complaints.'"). In truth, the DNC Requests cannot at all be characterized as complaints for all of the reasons stated in QuoteWizard's Motion to Strike.

This is entirely inappropriate, as a consumer stating "No" or "Stop" cannot be reasonably read or interpreted in this manner, and the declarants themselves have not been cross-examined to testify to what they actually *meant*, much less to confirm or deny the truthfulness of what they *said*. *See Boddicker v. Am. Honda Motor Co.*, 2011 U.S. Dist. LEXIS 141551, at *9-11 (N.D. Iowa Dec. 8, 2011) (excluding as inadmissible hearsay "records maintained by [defendant] regarding customer complaints") ("[N]one of the complainants have been identified as witnesses and, therefore, are unavailable for cross-examination regarding the truth of the allegations.").

Thus, the DNC Requests simply do not have any inherent guarantees of trustworthiness such to even arguably qualify for the residual exception. In truth, they do not even say what Mantha's counsel argues they say.

Nor are the DNC Requests probative of any disputed issue between the Parties on Mantha's individual claim. The DNC Requests do not establish anything concerning Mantha's disputed consent and there can be no inference taken from them regarding *his* claim.[3] They cannot be relevant to QuoteWizard's good faith reliance defense since it is undisputed QuoteWizard never saw them and therefore they could not have affected QuoteWizard's subjective beliefs. Simply put, it is abundantly clear that Mantha has offered them for one improper purpose: to poison the well, to try to paint QuoteWizard as a wayward bad actor generating thousands of alleged complaints, to bait an improper inference that QuoteWizard harmed Mantha. But this is not what the DNC Requests establish, and this is a clearly inappropriate, inadmissible use of the records, anyway. The Court must exclude the DNC Requests.

---

[3] In addition, as one court has pointed out, "details of the [consumer statements] are generally unknown. That is, the [factfinder] would have no way of knowing whether the [other consumers'] … experiences were similar to those of [the plaintiff]. Accordingly, … the probative value of the evidence is substantially outweighed by the potential for confusion or misleading the jury." *Boddicker*, 2011 U.S. Dist. LEXIS 141551, at *10-11 (citing Fed. R. Evid. 403).

        Respectfully submitted,

        QuoteWizard.com, LLC,
        By its attorneys,


        */s/ Kevin P. Polansky*
        Kevin P. Polansky (BBO #667229)
        kevin.polansky@nelsonmullins.com
        Christine M. Kingston (BBO #682962)
        christine.kingston@nelsonmullins.com
        Nelson Mullins Riley & Scarborough LLP
        One Financial Center, Suite 3500
        Boston, MA 02111
        (t) (617)-217-4700
Dated: August 24, 2021        (f) (617) 217-4710


## CERTIFICATE OF SERVICE

    I, Kevin P. Polansky, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: August 24, 2021        */s/ Kevin P. Polansky*