UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH MANTHA, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>QUOTEWIZARD.COM, LLC,<br><br>Defendant. | Civil Action No. 1:19-cv-12235-LTS |

**DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S UNTIMELY ATTEMPTED CURATIVE DECLARATION OF DRIPS HOLDINGS, LLC**
**(Memorandum Incorporated)**

Now comes Defendant QuoteWizard.com, LLC ("QuoteWizard") and hereby moves to strike the Declaration of Tom Martindale, filed by Plaintiff Joseph Mantha ("Mantha") in support of his Opposition to QuoteWizard's Motion to Strike the Declaration of Anthony Paronich, Esq. and the exhibits thereto [ECF No. 235-1].

In support of Mantha's partial summary judgment motion, he submitted the Paronich Declaration, purporting to analyze and attach some (but not all) "do not call" consumer requests containing consumer comments ("DNC Requests") made to Drips Holdings, LLC ("Drips") that were produced during this litigation. *See* ECF No. 210-5. QuoteWizard moved to strike the Paronich Declaration and the DNC Requests attached thereto on numerous grounds, including that the DNC Requests constituted inadmissible hearsay. To that end, QuoteWizard noted that (1) Mantha produced no authenticating, foundational testimony from Drips to the extent he would claim admissibility under the business records exception, and (2) ***in any event***, the DNC Requests contained within Drips' records were inadmissible hearsay regardless because those Requests were

made by non-party consumers, not Drips, and therefore were hearsay within hearsay. *See* ECF No. 222.

In response to the Motion to Strike and in an extremely belated attempt to cure one but not all deficiencies in the Paronich Declaration as noted in the Motion, Mantha now purports to submit the Martindale Declaration, in the hopes that the Court considers the untimely declaration and rules that the DNC Requests attached to the Paronich Declaration are admissible under the business records exception to the hearsay rule. But Mantha is barred from filing an untimely declaration to attempt to cure a deficiency in his original summary judgment papers.

Under the Joint Stipulation of the Parties, motions for summary judgment and supporting papers were due by July 14, 2021, with oppositions thereto due August 4, 2021, and replies by August 18, 2021. *See* ECF No. 188. The Court adopted this Joint Stipulation in an Order binding on both Parties. *See* ECF Nos. 191, 192. Thus, all papers in support of Mantha's partial summary judgment motion were due by July 14th. Mantha timely filed a partial motion for summary judgment on that date, submitting the Paronich Declaration and some DNC Requests in purported support. *See* ECF No. 210-5 (filed July 14, 2021). QuoteWizard timely submitted its Opposition, together with the Motion to Strike the inadmissible evidence at ECF No. 210-5, on August 4, 2021. *See* ECF Nos. 222, 223. In an admitted attempt to cure a deficiency with the Paronich Declaration/DNC Requests and in direct response to the Motion to Strike, Mantha filed the Martindale Declaration on August 19, 2021, *beyond the expiration of all summary judgment filing deadlines*, and thirty-six (36) days after his deadline to file summary judgment papers expired. *See* ECF Nos. 188, 191-192.

The Martindale Declaration, filed in support of Mantha's partial summary judgment motion by attempting to show the admissibility of records at ECF No. 210-5, is patently untimely

under the Parties' Joint Stipulation and the Court's Order and therefore should be stricken and not considered. *See Rosario-Díaz v. González*, 140 F.3d 312, 315 (1st Cir. 1998) ("[A] litigant who ignores a case-management deadline does it at his peril ... We have made it clear that district courts may punish such dereliction in a variety of ways. ... [L]itigants have an unflagging duty to comply with clearly communicated case-management orders."); *González-Rivera v. Centro Médico Del Turabo, Inc.*, 931 F.3d 23, 28 (1st Cir. 2019) ("[T]he district court has an interest in the efficient management of its docket. It follows that [w]henever a party, without good cause, neglects to comply with reasonable deadlines, the court's ability to manage its docket is compromised." (internal quotations and citations omitted)); *Santiago–Diaz v. Laboratorio Clinico Y De Referencia Del Este*, 456 F.3d 272, 277 (1st Cir. 2006) ("Courts are entitled to take sensible measures to guard against such debilitating occurrences.").[1]

Moreover, Mantha's belated and barred attempt to cure a deficiency in his original summary judgment papers fails. Regardless of the fact that Drips may have authenticated *its* records through the untimely Martindale Declaration, the DNC Requests within those records are—and remain—inadmissible hearsay. The case law is unequivocal on this point.

For example, in *Hendricks v. Ford Motor Co.*, 2012 U.S. Dist. LEXIS 139293 (E.D. Tex. Sep. 27, 2012), the court found that "[c]ustomer [statements] in a company's files are out-of-court statements. If they are offered to prove the truth of the matter asserted - that the incidents complained of in the report occurred as reported - they are hearsay and are inadmissible. ***While the record of the [statements], if made in the regular course of business, may fall under the***

---

[1] To be clear, Mantha was obviously entitled to oppose QuoteWizard's Motion to Strike, but not with *purported new evidence* (the Martindale Declaration) that could have been and was in fact required to have been submitted with his original summary judgment papers filed on July 14, 2021, the deadline.

3

***business records exception, the consumer [statements] themselves are hearsay within hearsay and must fall under their own exception***." *Id*. at *4-5 (internal citation omitted) (emphasis added).

Courts across the country have similarly concluded that, where a consumer's statements are incorporated into a business's records, the statements are still inadmissible hearsay regardless of whether the business records themselves are authenticated or would be admissible under the business records hearsay exception; this is a classic case of "double hearsay" requiring an exception for both the records themselves and the consumer's statements within them. *See, e.g.*, *Alzuraqi v. Group 1 Auto., Inc.*, 921 F. Supp. 2d 648, 671 (N.D. Tex. 2013) ("Even if Group 1 could show that the surveys themselves fall within the business records exception to hearsay, they would still need to show that the contents of the surveys are nonhearsay or fall within an exception because the source of the comments and information in the surveys is an outsider."); *QVC, Inc. v. MJC Am., Ltd.*, 2012 U.S. Dist. LEXIS 1713, at *5 (E.D. Pa. Jan. 6, 2012) ("Even if QVC's customer complaint logs are business records, they cannot be admitted as evidence of the truth of the complaints contained therein because the complaints described in the logs are themselves hearsay."); *Williams v. Remington Arms Co.*, 2008 U.S. Dist. LEXIS 5940, at *28 (N.D. Tex. Jan. 28, 2008) ("[W]hen the [consumer] complaints are offered to prove the truth of the matters asserted in the complaints, they are hearsay."); *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 139-140 (Tex. 2004) ("Complaint letters in a manufacturer's files may be true, but they also may be accusatory and self-serving; they are rarely under oath and never subject to cross-examination. As they are necessarily out-of-court statements, they are hearsay if offered to prove the truth of the assertions therein - that the incidents complained of occurred as reported. While a compilation of such complaints by a manufacturer might constitute a business record that such claims were (or were not) received, they could not be a business record that such claims are true unless the

employee making the record had personal knowledge of each. Thus, consumer complaints in a company's files are generally hearsay within hearsay, and require their own exception in addition to that for business records generally."); *In re GM LLC Ignition Switch Litig.*, 2017 U.S. Dist. LEXIS 89274, at *354-355, 2017 WL 2493143 (S.D.N.Y. June 9, 2017) (customer complaints made to the National Highway Traffic Safety Administration were hearsay and "inadmissible as a matter of course" for notice and other putative purposes).[2]

As noted, this is a classic case of double hearsay. *See Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 271 (5th Cir. 1991) ("Double hearsay in the context of a business record exists when the record is prepared by an employee with information supplied by another person. … [I]f the source of the information is an outsider, as in the facts before us, Rule 803(6) does not, by itself, permit the admission of the business record. The outsider's statement must fall within another hearsay exception to be admissible because it does not have the presumption of accuracy that statements made during the regular course of business have. Further, Federal Rule of Evidence 805 requires that all levels of hearsay satisfy exception hearsay requirements before the statement is admissible." (internal citation omitted)).

---

[2] Mantha misrepresents the similar holding of *United States v. Vigneau*, 187 F.3d 70 (1st Cir. 70), in his Response, claiming that the records there were deemed inadmissible because it was not proven that the defendant had signed the records. *See* ECF No. 235, pp. 5-6. This is not true. There, the First Circuit noted—consistent with all of the case law cited by QuoteWizard—that the records at issue were not admissible under the business records hearsay exception even though they constituted business records of Western Union because (as here) "the business records exception does not embrace statements contained within a business record that were made by one who is not a part of the business if the embraced statements are offered for their truth." *Vigneau*, 187 F.3d at 75. As noted by the Court, the reasons behind the business records exception (safeguards of regularity, etc.) do not apply to statements therein by non-business outsiders. *Id*. at 75-76. Whether or not the defendant had signed the records at issue was irrelevant to this holding; it only mattered that the statements at issue were not made by Western Union. *See id.*

Although the same reasoning plainly applies here, to avoid any doubt about the application of this "double hearsay" rule to the consumer context, QuoteWizard herein cites to numerous cases ruling inadmissible consumer comments/complaints within a business's records.

Thus, the DNC Requests are inadmissible hearsay because they require a hearsay exception independent of the business records exception that may be applicable to Drips' records. And they are inadmissible for good reason. In the specific context of business records that contain consumer comments or the like, "[t]he problem is that the customer is under no duty to report accurately." *Shimozono v. May Dep't Stores Co.*, 2002 U.S. Dist. LEXIS 28478, at *40-41, 2002 WL 34373490, at *13 (C.D. Cal. Nov. 20, 2002) (excluding consumer survey responses as inadmissible hearsay). Therefore, their out-of-court statements cannot be taken for the truth of the matters asserted therein because they are not reliable for that purpose.

In addition, here, Mantha seeks to improperly impute his unsupported, biased interpretations of the consumer comments to argue that they represent complaints—apparently, according to him, that QuoteWizard lacked consent to contact them or otherwise upset the consumers for some unidentified reason. Mantha's counsel argues that consumer comments such as "f*** off" or "noooo" inherently must be taken to be a complaint about something (he never specifies what). *See* ECF No. 235, pp. 4-5. But this is a subjective characterization of the comments; the consumers have not been examined under oath to determine what they meant.

Mantha completely ignores the fact of double hearsay and hopes that the Court will conflate Drips's business records with the underlying consumer comments within them. To be admissible, however, *both* the Drips business records *and* the consumer comments within them, made by consumers who do not work for Drips, would need to satisfy a hearsay exception. For the reasons stated herein and in a separate Reply brief by QuoteWizard, no such exception exists for the DNC Requests.[3] Needless to say, Tom Martindale cannot speak to the truthfulness of the consumer

---

[3] Mantha also claims that the DNC Requests might be admissible under the state of mind or residual exceptions. Neither such exception applies. This is separately addressed in QuoteWizard's Reply to Mantha's Opposition to the Motion to Strike the Paronich Declaration, which QuoteWizard has sought leave to file.

comments nor has he attempted to do so. *See* ECF No. 235-1. The DNC Requests are inadmissible hearsay and the untimely Martindale Declaration fails to cure this defect.

Finally, Mantha's attempt to claim that the DNC Requests are admissible for an alleged non-hearsay purpose—to show that QuoteWizard had alleged notice of what Mantha describes as "complaints" contained in the Requests—also fails. First, as mentioned in the Motion to Strike, QuoteWizard never saw the DNC Requests with consumer comments and thus the notice argument fails on this ground alone. *See*, *e.g.*, ECF No. 151, ¶ 5 ("Drips has never shared with or produced to QuoteWizard … the underlying consumer communications to Drips that led Drips to classify the communications as a 'do not call' request."). *See also* 4 C. Fishman, Jones on Evidence (7th Ed. 2000) § 24:27, pp. 263-66 ("In civil litigation as well as criminal, a statement may be nonhearsay because it is relevant to show knowledge or notice. . . . But to be relevant for this nonhearsay purpose, the offering party must establish that the adverse party in fact heard, saw or read the statement."); 2 R. Mosteller, McCormick on Evidence (8th Ed. 2020) § 249, p. 197 n.13 ("Of course, there must be evidence that the relevant party could hear the statements or they are inadmissible under a notice theory"); *Farrell v. Johnson & Johnson*, 238 A.3d 698, 707 (Conn. 2020) ("The purpose of notice evidence is to show an effect on the hearer. Therefore, if the offering party has failed to demonstrate that the putative listener has heard or read the statement, it is inadmissible to prove notice." (internal citations omitted)).[4]

---

[4] Mantha's attempt to alternatively argue a constructive notice theory—that QuoteWizard should have requested to see each and every consumer comment accompanying a DNC Request and therefore the comments should be admissible to show what QuoteWizard could have known (even though many comments post-date the Mantha lead and even this case)—also fails. Mantha has not argued or attempted to show that QuoteWizard had some cognizable duty to review each consumer comment sent to Drips or even that this is standard industry practice. *See Farrell*, 238 A.3d at 707-08 (otherwise inadmissible hearsay might be admissible to show constructive notice *only* if there is evidence of some reasonable, independent duty for non-offering party to have been aware of records at issue, such as where manufacturers are held to reasonable scientific knowledge or practicing doctors to emerging medical science) ("In the present case, the plaintiffs failed to meet their burden of demonstrating that Hines read or reasonably should have read

Moreover, putting aside the fact that QuoteWizard did not have notice of the consumer comments, Mantha is not actually proffering the DNC Requests for a notice purpose. Rather, he still actively advances the DNC Requests to argue that they constitute consumer complaints, and that QuoteWizard knew or should have known about the complaints to infer that it did not have consent to contact consumers, thereby relying on the purported truth of the matters asserted therein. *See* ECF No. 235, p. 3 ("On their face, these complaints evidence the outrage expressed by consumers who received QuoteWizard's telemarketing texts and revealed QuoteWizard's claim that it had a good faith belief that the consumers it was texting had consented to be texted is a fallacy."). This is improper because at base he is still urging the Court to accept the comments for the purported truth of the matters therein.

Courts have barred such attempts to advance hearsay under a different label. For example, in *Hendricks*, the court noted that "[a] party cannot circumvent the hearsay rules, however, by arguing that the hearsay is offered not to show the truth of the matters asserted but rather to show the opposing party's knowledge of the truth of the matters asserted." *Hendricks*, 2012 U.S. Dist. LEXIS 139293, at *5. Thus, where, as here the

> Plaintiff contends that the comments are not hearsay because they are not being offered for the truth of the matter asserted but rather to prove Defendant had notice of the matters asserted therein … Plaintiff cannot avoid hearsay issues by arguing that the evidence is being offered to show only Defendant's knowledge of the truth of the matters asserted in the reports. Indeed, even if the documents are being offered to prove notice, they must still meet the necessary evidentiary requirements to be admissible.

*Id*. at *6 (internal citation omitted). *See also Nissan Motor Co.*, 145 S.W.3d at 141-42 ("[T]he court of appeals indicated that the database was relevant to show 'Nissan's knowledge of the dangerous condition in its vehicles.' In other words, the hearsay was admissible not for the truth

---

the contents of these articles. … Nor did the plaintiffs argue or present evidence to establish an independent duty establishing that Hines reasonably should have read these two articles, beyond his receipt of one of the journals.").

of the matters asserted, but to show Nissan's *knowledge* of the truth of the matters asserted. The hearsay rules cannot be avoided by this kind of circular reasoning." (emphasis in original)).

The DNC Requests are thus still the proverbial rose by any other name—inadmissible hearsay proffered by Mantha for the purported truth of the matters therein. And notwithstanding that the consumer comments *are not* complaints, Mantha's attempted reliance on non-party consumer comments to make his case for his individual claim is completely unavailing. As the court observed in *Nissan Motor Co.*, an alleged wrongdoing by a defendant "must be proved; [it] cannot simply be inferred from a large number of complaints. If the rule were otherwise, [] claims would become a self-fulfilling prophecy -- the more that are made, the more likely all must be true." *Nissan Motor Co.*, 145 S.W.3d at 142.

## CONCLUSION

The Court should strike the Martindale Declaration and the portions of Mantha's Response that relies on it. *See* ECF No. 235 & 235-1. The Declaration was filed 36 days after the deadline as agreed-to by the Parties and adopted by the Court in a binding Order. It is indisputably untimely. In any event, the Martindale Declaration does not cure the defects addressed in QuoteWizard's Motion to Strike the Paronich Declaration and attached tabs; the DNC Requests are inadmissible hearsay.

[*Signatures on Next Page*]

Respectfully submitted,

QuoteWizard.com, LLC,
By its attorneys,

*/s/ Kevin P. Polansky*
Kevin P. Polansky (BBO #667229)
kevin.polansky@nelsonmullins.com
Christine M. Kingston (BBO #682962)
christine.kingston@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
One Financial Center, Suite 3500
Boston, MA 02111
(t) (617) 217-4700
(f) (617) 217-4710

Dated: August 24, 2021

## LOCAL RULE 7.1 CERTIFICATION

I, Kevin P. Polansky, hereby certify that, on August 24, 2021, my office e-mailed Plaintiff's counsel in good faith regarding this Motion, but we were unable to narrow or resolve the issues.

Dated: August 24, 2021                                               */s/ Kevin P. Polansky*

## CERTIFICATE OF SERVICE

I, Kevin P. Polansky, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: August 24, 2021                                               */s/ Kevin P. Polansky*