**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| | : | |
| JOSEPH MANTHA on behalf of himself and others similarly situated, | : | |
| | : | |
| Plaintiff, | : | Case No. 1:19-cv-12235-LTS-PK |
| | : | |
| v. | : | ***Motion for Leave To File In Excess of Page*** |
| | : | ***Limits Allowed on January 12, 2022 (Dkt.*** |
| QUOTEWIZARD.COM, LLC | : | ***#266)*** |
| | : | |
| Defendant. | : | |
| | : | |
| _____/ | | |

**PLAINTIFF'S OPPOSITION TO QUOTEWIZARD'S OBJECTIONS TO CHIEF
MAGISTRATE JUDGE KELLEY'S SUMMARY JUDGMENT ORDERS**

## I.    INTRODUCTION

On December 13, 2021, Chief Magistrate Judge Kelley issued a twenty-one page Report

and Recommendation On Cross Motions for Summary Judgment (Dkt. #258 the "Order")

rejecting the Motion of the Defendant, QuoteWizard.com, LLC ("QuoteWizard") for the entry of

Summary Judgment and granting the Plaintiff, Joseph Mantha's ("Mantha") Motion for Partial

Summary Judgment. QuoteWizard's Objection to Judge Kelley's Report and Recommendation

Order (Dkt. #264) ("Objection to R&R at pg. _") objects "to the entirety" of the Order, raising

six arguments. Objection to R&R at pg.1 (emphasis in original).

First, QuoteWizard claims cell phone numbers, in general, are not entitled to the

protections of the Telephone Consumer Protection Act, 47 U.S.C. § 227(c) ("TCPA"), or the

National Do Not Call Registry ("DNC"). Judge Kelley correctly rejected this argument as

without meaningful support and granted summary judgment on this issue in favor of Mr. Mantha, citing FCC regulations and three decisions to the contrary within this District.

Second, QuoteWizard claims Mr. Mantha's cell phone (the "Wireless Number"), was not entitled to the protections of the TCPA and the DNC because Mr. Mantha was not a residential subscriber. Judge Kelley rejected this argument, noting that as Mr. Mantha's phone is not subscribed as a business phone, he is entitled to summary judgment as to this issue.

Third, QuoteWizard claims it was victimized by Mr. Mantha who, by suing QuoteWizard to hold it to account for its suspected massive violation of the TCPA, allegedly engaged in a "money-making scheme" that disqualifies him from asserting his rights under the TCPA. QuoteWizard also claims Mr. Mantha lacks standing to enforce the TCPA because he purportedly welcomed the text spam at issue and was not damaged as a result. Judge Kelley rejected QuoteWizard's claims on prudential and constitutional standing, citing *Spokeo* and cases from this District, finding that Mr. Mantha had standing to pursue his claim pursuant to the TCPA.

Fourth, QuoteWizard claims its telemarketing texts messages, sent to millions of consumers nationwide seeking to sell auto-insurance, were not "solicitations" to which the TCPA telemarketing rules relating to consent apply. Judge Kelley's Order appropriately rejected this argument noting the intent of the telemarketing text campaign at issue was to sell insurance to consumers on behalf of QuoteWizard's insurance company clients.

Fifth, QuoteWizard claims Mr. Mantha consented to receive its telemarketing texts. Judge Kelley reviewed the undisputed evidence in this regard and issued summary judgment in Mr. Mantha's favor, noting both that Mr. Mantha never consented to receive telemarketing texts

from QuoteWizard, and that the consent language offered by QuoteWizard did not comply with the TCPA's requirements as to consent in the context of telemarketing calls.

Finally, QuoteWizard claims that, although two million consumers complained after receiving QuoteWizard's telemarketing text spam, QuoteWizard at all times acted in good faith and is entitled to blanket immunity for its suspected massive violation of the TCPA. Judge Kelley appropriately rejected this argument noting that a good faith defense does not exist under the TCPA and that such a defense, under these facts, raises public policy concerns.

For the following reasons, Judge Kelley's Order was well reasoned and correct on all grounds. QuoteWizard's objections should be overruled.

## II.    STATEMENT OF FACTS[1]

Judge Kelley's recitation of the undisputed facts is straightforward and carefully tied to record citations for each and every fact. *See* Objection to R&R pg. 2-6. Magistrate Judge Kelley found:

Plaintiff has a cellular number subscribed to in his name and billed to his home address, is not subscribed to any business, is not listed on his business card and is not declared on his tax return.  Objection to R&R pg. 2. Plaintiff uses the number for personal purposes and uses it in connection with his work and is sometimes "on call" for his job. As a result, his employer reimburses him for a portion of his cellular service bill each month. *Id. See* Dkt. #225, PSOF at ¶27-29, 87-96.

---

[1] The following facts all appear with evidentiary support in the Plaintiff's Local Rule 56.1 Statement of Material Facts In Support of Motion for Partial Summary Judgment, and Defendant's Response Thereto ("Dkt. #225, PSOF at ¶__"). References to the Defendant's Statement of Material Facts In Support of Motion for Summary Judgment and Plaintiff's Response Thereto ("Dkt. 220") is referred to herein as "Dkt, 220, DSOF at ¶_").

QuoteWizard contacts consumers in order to generate leads that it sells to insurance companies. *Id.* Magistrate Judge Kelley acknowledged that QuoteWizard itself does not sell insurance, and that it is paid for a lead regardless of whether a lead buys insurance. *Id.* In spite of Plaintiff's number having been listed on the national DNC registry since November 7, 2008, in August 2019, Plaintiff received eight text messages from QuoteWizard promoting its insurance quote services. Objection to R&R pg. 3-4. Magistrate Judge Kelley acknowledged that Plaintiff never texted back asking that the texting stop. *Id.* pg. 4. *See* Dkt. #225, PSOF at ¶1-3; Dkt, 220, DSOF at ¶144-146.

Magistrate Judge Kelley found that QuoteWizard had purchased plaintiff's telephone number and associated information from RevPoint Media, LLC, who in turn had purchased it from Plural Marketing Group, who itself had purchased the information from a company based in Bosnia called Fenix Media. Objection to R&R pg. 3. Magistrate Judge Kelley acknowledged that each of the lead sellers contractually promised that its lead was TCPA compliant, but RevPoint had no ability to verify the information that it bought from Plural. *Id.* Mr. Mantha's lead purportedly came from a website named Snappy Auto Insurance, but Magistrate Judge Kelley found that the owner of the website testified that he shut down the site in 2015, had no connection to Fenix Media in Bosnia, and that when he did operate the website, he only collected ZIP codes and email addresses. Objection to R&R pg. 4. Magistrate Judge Kelley further held that Plaintiff had denied ever visiting the Snappy Auto Insurance website. *See* Dkt. #225, PSOF at ¶49-62.

Magistrate Judge Kelley laid out the undisputed facts that the purported consent offered by QuoteWizard referenced two IP addresses allegedly related to Plaintiff, which in fact had no such connection as was confirmed by deposition testimony by the two actual owners of the IP

4

addresses in question. Objection to R&R pg. 5. In addition, a "Jornaya LeadID" intended to confirm whether a lead has consented to contact was proven by a Jornaya representative's testimony not to have any connection to Plaintiff or the Snappy Auto Insurance website. *Id.* Even Plural admitted the LeadID was erroneously associated with the Plaintiff. *Id.*

Although QuoteWizard relies on an email from Dario Osmancevic of Fenix Media claiming he operated a website which he did not own and obtained Mr. Mantha's consent on that website, Magistrate Judge Kelley noted that Plaintiff moved to strike that email as hearsay. QuoteWizard never deposed or sought admissible or testimony from Fenix. Magistrate Judge Kelley denied this motion without prejudice and noted the correspondence would not be accepted as probative of the truth of the matters asserted herein and recognized that "hearsay cannot be relied upon to defeat summary judgment." *See* Dkt. #249, margin order as to Dkt. #219. *See* Dkt. #225, PSOF at ¶63-76.

Magistrate Judge Kelley also noted that the purported consent language offered by QuoteWizard did not reference consent to be called by QuoteWizard, but rather discussed "AutoInsurQuotes.com and one or more of its marketing partners." Objection to R&R pg. 5. Magistrate Judge Kelley further found that QuoteWizard's 30(b)(6) witness was not aware of any affiliation or relation between defendant and AutoInsurQuotes.com. *Id. See* Dkt. #225, PSOF at ¶77.

### III.     STANDARD OF REVIEW

The First Circuit has held unequivocally that an appellant objecting to a Magistrate Judge's order under Fed. R. Civ. P. 72(b) is not entitled to an entirely new review—but rather is

entitled to a review of arguments actually presented to the magistrate judge:

> Appellant tells us that Rule 72(b)'s requirement of a "de novo
> determination" by the district judge means that an entirely new hand is
> dealt when objection is lodged to a recommendation. That is not so. At
> most, the party aggrieved is entitled to a review of the bidding rather than
> to a fresh deal. The rule does not permit a litigant to present new initiatives
> to the district judge. We hold categorically that an unsuccessful party is
> not entitled as of right to de novo review by the judge of an argument
> never seasonably raised before the magistrate. *Accord Borden v. Secretary
> of HHS*, 836 F.2d 4, slip op. at 4 (1st Cir. 1987).

*Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir. 1988).

## IV.    ARGUMENT

### A.  Judge Kelley Correctly Found That The DNC Registry Applies To Cell Phones Subscribed To Consumers.

In its lead argument on summary judgment, QuoteWizard claims cell phones are simply

not entitled to the protections of the TCPA and the DNC. Rejecting this argument outright, Judge

Kelley aptly recognized that in enacting the Do Not Call provisions of the TCPA, the Federal

Communications Commission chose to extend the protections afforded by the TCPA and the

DNC to cellular numbers. [2] *See* Order at page 8, citing *In re Rules & Regs. Implementing the

TCPA of 1991 (In re Rules* 2003), 18 FCC Rcd. 14014, ¶36 (June 26, 2003) ("[W]e believe it is

more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from

the full range of TCPA protections. . . . Therefore, we conclude that wireless subscribers may

participate in the national do-not-call list."). Judge Kelley also recognized that the extension of

the protections of the TCPA and the DNC to wireless numbers was also consistent with

---

[2] The Federal Communication Commission ("FCC") possesses authority to issue implementing rules and regulations for the TCPA. S*ee* 47 U.S.C. § 227(c)(1)(A-E) and (c)(2) and (c)(3). Pursuant to that authority, the FCC promulgated regulations relating to the implementation, interpretation of the TCPA. *See* 47 C.F.R. § 64.1200(a)-(m).

regulations implementing and interpreting the TCPA. *See* Order at page 8, citing 42 C.F.R. § 64.1200(c)(2)(e) ("No person or entity shall initiate any telephone solicitation to [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry . . . . The rules set forth . . . are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers  ").

The extension of the protections of the TCPA and DNC to wireless numbers is also consistent with the regulatory definitions of "residential subscriber" and "business subscriber" under the Telecommunications Act.  A "business subscriber" is defined by the Code of Federal Regulations as a "subscriber to a telephone exchange service for businesses." *See* 47 C.F.R. § 64.2305(b). A "residential subscriber" is specifically defined as a "subscriber to a telephone exchange service that is not a business subscriber." *See* 47 C.F.R. § 64.2305(d).[3] Determining the difference between a phone number that is protected by the DNC Registry, and one that is not, simply requires an examination as to whether the number is subscribed to a consumer or to a business. Wireless numbers that are subscribed to consumers are entitled to the protections of the TCPA and the DNC.  Wireless numbers subscribed to businesses are not.[4]

---

[3] The regulatory definitions of "business subscriber" and "residential subscriber" were enacted in 1999, prior to Congress' creation of the Do Not Call Registry in 2003. *Compare* 47 C.F.R. § 64.1200(e), *citing* 18 FCC Rcd. 14014, 14032, 14043; 2003 FCC LEXIS 3673 at ¶22, 42. (June 26, 2003) (Do Not Call Registry was enacted in 2003) *with* 47 C.F.R. § 64.2305(b) and (d) (effective date of regulations is October 5, 1999).

[4] QuoteWizard's claim that a cell phone implicates a lesser privacy concern than a residence is not well taken. As the United States Supreme Court has observed, "modern cell phones, which are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy." *See Riley v. California*, 573 U.S. 373, 385, 134 S. Ct. 2473, 2484 (2014).

Judge Kelley also recognized that, consistent with FCC regulations, courts within this district have repeatedly found that the TCPA's DNC provision apply to cellular numbers registered to residential (*i.e.* non-business) users. *See* Order at page 8, citing *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 202 (D. Mass. 2021); *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 324 (D. Mass. 2020); Report and Recommendationat 10-11, *Scanlon v. Manscaped, LLC*, No. 20-cv-10795 (Dec. 14, 2020), ECF No. 26 (report and recommendation adopted at ECF No. 27).

In accord with Judge Kelley's Order and decisions from courts within this district, courts throughout the United States have also consistently recognized the protections afforded wireless numbers subscribed to consumers and not businesses by the TCPA and the DNC Registry. *See Hodgin v. Parker Waichman LLP*, Civil Action No. 3:14-cv-733-DJH, 2015 U.S. Dist. LEXIS 192262 *9 (W.D. Ky. Sep. 30, 2015) (finding defendant's "assertion that cell phone numbers are not allowed on the national do-not-call list . . . meritless"); *Stevens-Bratton v. Trugreen, Inc.,* 437 F.Supp.3d 648, 658-659 (W.D. Tenn. Feb. 4, 2020) (reviewing applicable regulations and concluding that cell phones may be listed on the DNC Registry); *Smith v. Truman Rd. Dev., LLC,* No. 4:18-cv-00670-NKL, 2020 U.S. Dist. LEXIS 74330 *37 (W.D. Mo. Apr. 28, 2020) (rejecting contention that wireless numbers cannot be listed on the DNC Registry); *Hand v. Beach Entm't Kc,* 456 F. Supp. 3d 1099, 1120 (W.D. Mo. 2020) (rejecting claim that the TCPA does not apply to wireless numbers and certifying a DNC class action); *Mestas v. CHW Grp. Inc.*, No. 19-CV-792 MV/CG, 2020 U.S. Dist. LEXIS 236357 *32 (D.N.M. Dec. 16, 2020) (rejecting claim that wireless numbers cannot be listed on the DNC Registry).

Indeed, even following Judge Kelley's Order, other Courts have reached the same conclusion citing the same regulation followed by Judge Kelley. *See Clemons v. Bradford O'Neil Agency, LLC*, No. 4:21-cv-00678-SRC, 2021 U.S. Dist. LEXIS 244116 at *9 (E.D. Mo. Dec. 22, 2021) (recognizing that the explicit text of 47 C.F.R. § 64.1200(e) extends the protections of the DNC Registry to cell phones).

QuoteWizard claims the protections afforded the DNC Registry only apply to "residential telephone subscribers" which it asserts can only include traditional landlines and not wireless telephone numbers subscribed to consumers. In doing so, QuoteWizard simply ignores the text of 47 C.F.R. § 64.1200(e) that recognizes the protections afforded consumers by the DNC Registry extends to their cell phones, and that the FCC, in its 2003 Report and Order enacting the DNC Registry, unequivocally recognized that consumers' wireless numbers could be listed on the DNC Registry. *See* 18 F.C.C. Rcd. 14014, at ¶33, ¶36. QuoteWizard's argument also ignores that the Code of Federal Regulations relating to "Telecommunications" defines a "residential subscriber" as a "subscriber to a telephone exchange service that is not a business subscriber," a definition that easily extends to wireless numbers subscribed to consumers. *See* 47 C.F.R. § 64.2305(d).

The case law cited by QuoteWizard in support of its contention that wireless numbers are not entitled to the protections of the DNC Registry are similarly unpersuasive as the cases either ignore the above regulatory authority or have nothing to do with the DNC Registry.[5]

---

[5] *See Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 131 (N.D. Tex. 2020) (Court "follows common sense and the greater weight of authorities" recognizing that cell phones are entitled to the protections of the TCPA and the DNC). *See Clemons v. Bradford O'Neil Agency, LLC*, No. 4:21-cv-00678-SRC, 2021 U.S. Dist. LEXIS 244116 at *9 (E.D. Mo. Dec. 22, 2021) (Court reviews case law to the contrary recognizing that none of these cases acknowledge the explicit

For the above reasons, Judge Kelley's determination that wireless numbers subscribed to consumers are entitled to the protections of the DNC and the TCPA was correct and should be affirmed.

### B.   Judge Kelley Correctly Found That the Plaintiff was a Residential Subscriber.

Next, QuoteWizard claims Judge Kelley erred when she granted Mr. Mantha's Motion for Partial Summary Judgment finding that as Mr. Mantha was a 'residential subscriber,' the cellular phone number on which Mr. Mantha received the text solicitation at issue (the "Wireless Number") was entitled to the protections of the TCPA and the DNC, and denying QuoteWizard's Motion for Summary Judgment on the same ground. *See* Objection to R&R at pg. 5-12. Judge Kelley recognized there was no dispute that the Wireless Number was subscribed to Mr. Mantha individually, was billed to Mr. Mantha at his residential address, and was not issued by Mr. Mantha's employer or subscribed in his employer's name. *See* Order at page 2, 9.[6]

On this undisputed factual record, Judge Kelley correctly determined that the Wireless Number was entitled to the protections of the TCPA and the DNC. In doing so, Judge Kelley appropriately rejected QuoteWizard's claim that because Mr. Mantha used the Wireless Number on occasion for business purposes, the Wireless Number was a business number not entitled to the protections of the TCPA and the DNC. *Id.* As explained above, The DNC Registry was intended by Congress to protect the personal telephone numbers of consumers be they traditional land lines or wireless cell phones. *See* 47 C.F.R. § 64.1200(e) (citing 18 F.C.C. Rcd. 14014,

---

text of 47 C.F.R. § 64.1200(e) extends the protections of the DNC Registry to cell phones).

[6] QuoteWizard admitted these facts were undisputed.  *See* Order at page 2. *See* Dkt. #225, QuoteWizard's Response to Plaintiff's Statement of Facts at ¶27-29 and ¶85-98.

14039-40 ¶ 28-36) (recognizing the privacy rights of wireless subscribers and that DNC protections afforded by 47 U.S.C. 227(c) extend "to wireless telephone numbers"). Such protections, however, do not apply to numbers subscribed to businesses. *See* 47 C.F.R. § 64.1200 (c)(2)(limiting DNC Registry to residential subscribed numbers); 18 FCC Rcd. 14014 at ¶ 37 ("The national do-not-call rules will also not prohibit calls to businesses"). *See also*, *Smith v. Truman Rd. Dev., LLC,* 2020 U.S. Dist. LEXIS 74330 *38-39 (W.D. Mo. Apr. 28, 2020) (recognizing that the national do-not-call registry does not permit businesses to register their numbers with the registry and that the FCC has made clear that calls to businesses impermissibly registered on the registry do not violate the DNC regulations).

Accordingly, telemarketing calls to numbers listed on the DNC Registry that are subscribed to consumers violate the TCPA. Telemarketing calls to numbers listed on the DNC Registry that are subscribed to businesses do not violate the TCPA. Determining the difference between a phone number that is protected by the DNC Registry, and one that is not, simply requires an examination as to whether the number is subscribed to a consumer or to a business.

Applied here, it is undisputed that the Wireless Number was listed on the Do Not Call Registry long prior to Mr. Mantha's receipt of QuoteWizard's telemarketing texts. *See* Order at page 2; Dkt. #225 at ¶30 (admitting that the Wireless Number was registered on the DNC). Contrary to QuoteWizard's assertion that "Mantha's counsel submitted no evidence of residential use during the relevant time period in 2019 (or any time) whatsoever" (Objection to R&R at 9), Mr. Mantha provided the Court with undisputed facts and evidence proving that the Wireless Number was assigned to a "residential telephone subscriber":

- The Wireless Number was subscribed to Mr. Mantha individually and is billed to him in his name at his residential address and is used as a personal cell phone. *See* Order at page 2. *See* Dkt. #225 at ¶27-29 and ¶85-98.

11

- The Wireless Number was not subscribed to any business. *Id.*[7]

- Mr. Mantha does not hold the Wireless Number out as a business line, does not operate a home based business, and does not declare the Wireless Number as a business expense. *Id.*

- The texts were targeted to Mr. Mantha, individually, seeking to sell him personal auto insurance, and were not targeted at his employer. *Id.* at ¶32-48.

- Mr. Mantha's employer confirmed the Wireless Number is not a business number, and, in fact, is Mr. Mantha's personal cell phone number over which the employer does not exercise control. *Id.* at ¶98.

- Mr. Mantha's employer also confirmed that Mr. Mantha is assigned an office at his place of employment and a business number that is not the Wireless Number. *Id.* at ¶96.

The evidence is overwhelming and undisputed. Mr. Mantha's Wireless Number was not subscribed to a business. It was subscribed to Mr. Mantha individually, in his name and the bill was delivered to his residence. On this undisputed factual record, Judge Kelley appropriately granted Mr. Mantha's Motion for Partial Summary Judgment as to whether the Wireless Number was entitled to the protections of the TCPA and the DNC. *See* Order at page 10.

Under QuoteWizard's restrictive interpretation of the TCPA, if a personal wireless number subscribed to a consumer is used by the consumer for work-related calls, it loses the protections afforded by the TCPA and the DNC Registry. In support, QuoteWizard relies on *Lee v. Loandepot.com, LLC,* 2016 U.S.Dist. LEXIS 110100 (D.Kan 2016). In *Lee,* the Court granted summary judgment in favor of the defendant dismissing plaintiff's claims for violation of the TCPA and the DNC Registry. In dismissing the *pro se* plaintiff's claims, the Court noted that the plaintiff's phone was a cell phone and not a landline and that the plaintiff bore the burden to

---

[7] QuoteWizard also admits that Mr. Mantha does not have a home business and does not declare the Wireless Number as a business expense on his tax return. *See* Dkt. #225, at ¶91-92.

prove that his cell number was entitled to the protections of the DNC Registry. The Court then assumed that to demonstrate whether the number was entitled to DNC protection, the plaintiff had to submit evidence as to how the number was "used" and not how that number was subscribed. *Id.* at **17-18. The Court specifically found that the plaintiff had to come forth with some evidence that the number was used for personal purposes. Because the plaintiff failed to submit any evidence as to how the number was used, the claims were dismissed. *Id.* **18-19.[8] As detailed above, however, relevant to whether a wireless number is entitled to the protections of the DNC Registry is whether the number is subscribed to a business or not. No "use" test appears anywhere in the statute or the applicable regulations.

QuoteWizard's other cited authority, *Blevins v. Premium Merch. Funding One, LLC*, No. 2:18-cv-377, 2018 U.S. Dist. LEXIS 183362, at *6-7 (S.D. Ohio Oct. 25, 2018), is entirely unhelpful for its cause. In *Blevins,* the Court **rejected** defendant's claim that the plaintiff's cell number was used for business purposes, and accordingly, was not entitled to the protections of the TCPA and the DNC Registry. *Id.* at *1-3. QuoteWizard cites to this case for the limited proposition that courts will look to the "facts and circumstances surrounding a particular case…" before deciding whether a cell phone that is used for both business and residential purposes is entitled to the protections afforded by the TCPA and the DNC Registry. *Blevins,* however, involved a call to a cell that was used by a consumer for an at home business. There is no claim here that Mr. Mantha's cell phone is associated with any home-based business. Further, *Blevins*

---

[8] In none of the cases offered by QuoteWizard in support of its claim that the manner in which a cell phone is used is determinative of whether it can be listed on the DNC Registry did the courts consider that the definitions of "residential subscriber" or "business subscriber" at 47 C.F.R. § 64.2305(b) and (d).

offers no support whatsoever for QuoteWizard's claim that a personal cell phone that is used to make work related calls, loses any protections afforded by the TCPA and the DNC Registry. To the contrary, the Court in *Blevins* recognized that even cell phones used for an at home business may be entitled to the protections of the TCPA and the DNC Registry if the calls at issue were "made to a residential subscriber." *Id.* at *6.[9]

None of the cases offered by QuoteWizard support its contention that the DNC Registry listed personal cell phone of a consumer loses the privacy protections afforded the personal cell phone if it is used to make work related calls. Such an interpretation is simply untethered to the TCPA, to the regulations and commentary implementing and interpreting the TCPA, and to the case law interpreting the TCPA. The TCPA is a remedial statute that is to be interpreted in a manner that effectuates its legislative purpose. *See Breda v. Cellco P'ship,* 934 F.3d 1, 11 (1st Cir. 2019). Denying consumers the privacy protections afforded their wireless numbers by the TCPA and the DNC Registry, simply because they used their personal wireless numbers to make work related calls would eviscerate the TCPA and the DNC Registry.

## C. Judge Kelley Correctly Held That Mr. Mantha Has Standing To Enforce The TCPA.

Next, QuoteWizard contends that because Mr. Mantha was not injured by the telemarketing texts at issue, he has no standing to pursue his TCPA claim. *See* Objection to R&R at pg. 12-17. In rejecting this claim, Judge Kelley appropriately recognized that Mr. Mantha had alleged and affirmed under oath that QuoteWizard's telemarketing texts were irritating and a violation of his privacy, particularly where Mr. Mantha had listed the Wireless Number on the

---

[9] QuoteWizard also curiously cites to *Stevens-Bratton v. Trugreen, Inc.,* 437 F.Supp.3d 648 (W.D. Tenn. Feb. 4, 2020), which **supports** Judge Kelley's finding that cell phones may be listed on the DNC Registry.

DNC. *See* Order at page 11, citing #80, ¶58 and #210-14 ¶¶ 9-10. Judge Kelley noted these allegations alone were sufficient to constitute the concrete injury required to give rise to Article III standing. *Id., citing Gibbs v. SolarCity Corp.*, 239 F. Supp. 3d 391, 395 (D. Mass. 2017) (privacy and nuisance allegations sufficient concrete injury to confer standing) (collecting cases). Appellate courts throughout the country have also repeatedly recognized that an alleged violation of the TCPA asserts the requisite harm to give rise to standing to enforce the TCPA. *See e.g. Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1270 (11th Cir. 2019); *Gadelhak v. AT&T Servs., Inc.,* 950 F.3d 458, 461-63 (7th Cir. 2020); *Melito v. Experian Mktg. Sols., Inc.,* 923 F.3d 85, 92-95 (2d Cir. 2019); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017). Specific to TCPA claims arising to numbers listed on the DNC Registry, the Fourth Circuit eloquently recognized:

> Looking both to Congress's judgment and historical practice, as *Spokeo* instructs, the private right of action here plainly satisfies the demands of Article III. In enacting § 227(c)(5) of the TCPA, Congress responded to the harms of actual people by creating a cause of action that protects their particular and concrete privacy interests. To bring suit, the plaintiffs here must have received unwanted calls on multiple occasions. These calls must have been to a residential number listed on the Do-Not-Call registry. This is not a statute authorizing citizen-suits for any legal violation to which a plaintiff might take issue. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 571-72, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (citing 16 U.S.C. § 1540(g)). The statute requires that an individual receive a call on his own residential number, a call that he previously took steps to avoid. There is nothing ethereal or abstract about it.

*Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643, 653 (4th Cir. 2019). A recent decision from the U.S Supreme Court also makes clear a claim under the TCPA does state an "injury-in-fact" sufficient to support Article III standing. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2209 (2021) (citing a TCPA decision authored by then Seventh Circuit Judge Barrett, recognizing "intrusion upon seclusion" as a harm "traditionally recognized as providing a basis for [a]

lawsuit[] in American courts." *TransUnion LLC*, 141 S. Ct. at 2204 (citing TCPA case *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.), *cert denied*, 209 L. Ed. 2d 568, 2021 WL 1521010 (U.S. 2021)).

Judge Kelley also rightly rejected QuoteWizard's allegation that Mr. Mantha "set [it] up for liability" when he conferred with a friend as to whether the TCPA applied to text messages and, thereafter, responded after receiving his eighth unsolicited text solicitation from QuoteWizard asking QuoteWizard to identify itself so Mr. Mantha could investigate the unsolicited contact to proceed with a TCPA claim. *See* Order at page 12. *See* Objection to R&R at pg. 16. Courts have repeatedly rejected telemarketers' complaints that it is somehow inappropriate for a consumer who has received an illegal telemarketing call to interact with the telemarketer to obtain more specific identifying information in order to hold the telemarketer to account. *See e.g. Perrong v. Victory Phones LLC*, No. 20-5317, 2021 U.S. Dist. LEXIS 132404, at *12-14 (E.D. Pa. July 15, 2021) (rejecting claim that plaintiff acted inappropriately by playing along to identify the caller noting such conduct is "merely part of enforcing the TCPA") (collecting cases); *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017) (same**)**; *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 783 (N.D.W. Va. 2017) (denying motion for summary judgment in TCPA case related to a similar standing argument where the plaintiff conducted her own investigation to identify the defendant and noting "[t]his does not deprive the plaintiff of standing any more than the purchase of a burglar alarm would indicate that the homeowner wanted her house to be broken into.…While [defendant] is understandably frustrated by Ms. Mey's efficacy, she is doing exactly what Congress intended—enforcing the law.")

16

Further, Judge Kelley also rejected QuoteWizard's complaint that Mr. Mantha was akin to a 'professional plaintiff,' noting that Mr. Mantha had never previously filed a TCPA case before. *See* Order at page 12.[10] Given the undisputed facts, Judge Kelley's denial of QuoteWizard's Motion for Summary Judgment for lack of standing was sound and should be affirmed.

### D. Judge Kelley Correctly Found That QuoteWizard's Text Messages Were Solicitations.

QuoteWizard claims the millions of text messages it sent to consumers nationwide offering insurance quotes were not 'solicitations' but merely were transactional texts that provided consumers with 'information." [11] *See* Objection to R&R at pg. 21-23.[12] QuoteWizard self-servingly claims that since the texts at issue were not solicitations, the strict rules relating to consent in the telemarketing context simply do not apply. In support of its claim that the text messages sent to Mr. Mantha were 'transactional' messages not subject to the TCPA's

---

[10] It bears noting that QuoteWizard's claim that a "professional plaintiff" lacks standing to enforce the TCPA is not well taken. To enforce the TCPA, and particularly the provisions of the TCPA relating to the DNC Registry, Congress empowered consumers with a private right of action to enforce the TCPA. *See* 47 U.S.C. §227(c) (Congress creates a private right of action to enforce calls made to numbers listed on the DNC Registry and provides for statutory damages of up to $500 for a negligent violation and $1,500 for a knowing or willful violation). The "money making" scheme that QuoteWizard complains of was authorized by Congress. *See Mey v. Castle Law Grp., PC*, No. 5:19-CV-185, 2020 U.S. Dist. LEXIS 174894, at *6-7 (N.D.W. Va. Sep. 22, 2020) ("The statutory damages available under the TCPA are, in fact, specifically designed to appeal to plaintiffs' self-interest and to direct that self-interest toward the public good).

[12] This Court previously considered and rejected QuoteWizard's claim, at the Motion to Dismiss stage, that its text messages sent to Mr. Mantha were not 'solicitations' subject to the TCPA. *See Mantha v. QuoteWizard.com, LLC*, No. 19-12235-LTS, 2020 U.S. Dist. LEXIS 45481, at *5-7 (D. Mass. Mar. 16, 2020) (Dkt. 30). QuoteWizard makes an identical argument now at summary judgment.

heightened consent requirements relating to telemarketing solicitations, QuoteWizard cites to FCC regulations standing for the proposition that communications sent to consumers, for example, relating to account balances, changes in terms of subscriptions, changes in travel plans, communications relating to a pending loan, or the transmission of a price list by a wholesaler to a grocer, are not solicitations subject to the TCPA's heightened consent requirements subject to telemarketing calls. *See* Objections to R&R at pg. 22, citing 21 FCC Rcd. 3787, 3812 ¶49 (April 5, 2006). Of course, these regulations do not apply in the context of telemarketing solicitations.

The cases cited by QuoteWizard in support of its claim that the less stringent TCPA requirements relating to consent in the context of 'transactional' calls all relate to communications that were not designed or intended to lead to the sale of goods or services. *See Absolute Health Ctr., Inc. v. Multiplan, Inc.*, 2016 U.S. Dist. LEXIS 187496, at *8 (D. Colo. Sep. 23, 2016) (court found that facsimile communications sent by a defendant operating a Preferred Provider Organization and offering to include the physician recipients of its facsimiles in its PPO network were not solicitation subject to the telemarketing consent requirements of the TCPA); *Aderhold v. car2go N.A. LLC*, 2016 U.S. App. LEXIS 16596 at *2-3 (9th Cir Sept. 9, 2016) (affirming ruling that a text message sent to a consumer to facilitate a registration process was not a 'solicitation'); *An Phan v. Agoda Co.*, 351 F. Supp. 3d 1257, 1262-65 (N.D. Cal. 2018) (text message confirming hotel booking was not a 'solicitation'); *Alleman v. Yellowbook,* No. 12-cv-1300-DRH-PMF, 2013 U.S. Dist. LEXIS 127212 (S.D. Ill. Sep. 6, 2013) (an offer of a free delivery of a business directory to a business was not an offer of a good or service); *Suttles v. Facebook, Inc.,* No. 1:18-CV-1004-LY, 2020 U.S. Dist. LEXIS 90026 *6 (W.D. Tex. May 20, 2020)(attempts by social media site to encourage visitors to visit its web site was not a sales offer).

18

Here, of course, QuoteWizard did not send its pre-existing customers an invoice or a membership update, it sent millions of text messages to consumers nationwide seeking to obtain new customers for QuoteWizard's insurance company clients. QuoteWizard had no prior business relationship with these consumers. It was cold calling (or texting) consumers to solicit new business for its insurance clients. *See* Dkt. #225, PSOF at ¶32-47. *See* Dkt. #220, DSOF at ¶144-146, 150. QuoteWizard's contention that it "contacted Mantha for the purposes (sic) of helping him obtain an informational insurance quote" (Objection to R&R at pg. 25) is a fallacy. *See Chesbro v. Best Buy Stores, L.P.,* 705 F.3d 913, 918 (9th Cir. 2012) (As to whether a call is a solicitation "We approach the problem with a measure of common sense…Neither the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context…Because the calls encouraged recipients to engage in future purchasing activity, they also constituted telemarketing under the DNC regulation.").

QuoteWizard asserts that Magistrate Judge Kelley erred when she found that the texts sent to Mr. Mantha were 'solicitations' intended to encourage the purchase of insurance from QuoteWizard's insurance company clients. *See* Objection to R&R at pg. 23. Incredibly, QuoteWizard asserts: "*[t]here is no admissible record evidence to support this statement." Id.* This is simply false. Plaintiff pointed to QuoteWizard's contract with its insurance company client, submitted as an exhibit to QuoteWizard's own Affidavit. *See* ECF #203-3, Exhibit C to QuoteWizard Affidavit – *QuoteWizard Contract* at QuoteWizard_Mantha 000133-173. Plaintiff also directed the Court to QuoteWizard's own website, in which it describes itself as in the business of selling leads of potential customers to its insurance company clients. *See* ECF 207, ¶1. *See* Dkt. #225, PSOF at ¶32-47. *See* Dkt. #220, DSOF at ¶144-146, 150.

In denying QuoteWizard's Motion for Summary Judgment as to the claim that the text messages at issue were not 'solicitations' subject to the TCPA's stricter consent requirements, Judge Kelley first recognized that 'solicitation' under the TCPA are defined as:

> the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, [or] (B) to anyperson with whom the caller has an established business relationship . . .

*See* Order at page 15, quoting 47 U.S.C. § 227(a)(4). Next, Judge Kelley appropriately found that QuoteWizard initiated contact with Mr. Mantha and that such contact was intended to encourage Mr. Mantha to purchase insurance coverage from QuoteWizard's insurance company clients, and that in exchange, QuoteWizard would be paid a fee for each lead provided. *See* Order at page 2, 15. *See* Dkt. #225, PSOF at ¶32-47. *See* Dkt. #220, DSOF at ¶144-146, 150. On this undisputed record, Judge Kelley appropriately found that the texts at issue were solicitations directed at consumers- not businesses- designed to find new customers for QuoteWizard's insurance clients and to sell them insurance. *See* Order at 14-15.

In rejecting QuoteWizard's self-serving claim that its text messages merely offered informational insurance quotes to consumers and, as such, were not subject to the TCPA's strict consent requisites relating to telemarketing calls, contrary to QuoteWizard's assertion, Magistrate Judge Kelley's Order does not reflect, as alleged, a "nonsensical interpretation of the "transactional exception." Objection to R&R at pg. 23. Rather, Magistrate Judge Kelley correctly found that the texts were intended to ultimately sell insurance and further noted that the definition of a telephone solicitation under the TCPA does not require a direct sale but also extends to the referral of a consumer to another entity for the purpose of encouraging a sale or

purchase. *See* Order at page 15, citing *Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532, 2015 U.S. Dist. LEXIS 77294, at *16 (N.D. Cal. June 15, 2015) (because the TCPA defined telephone solicitations as "*any* call 'for the purpose of encouraging [a] purchase," it necessarily included calls to encourage purchases with a different entity or in the future). Judge Kelley's ruling that the texts at issue were 'solicitations' subject to the TCPA's consent requirements relating to telemarketing calls was sound and should be affirmed.

### E. Judge Kelley Correctly Found That Mr. Mantha Did Not Consent To Receive Telemarketing Texts From QuoteWizard.[13]

The TCPA and its accompanying regulations prohibit sellers, such as QuoteWizard, from making telephone solicitations to "residential telephone subscribers" listed on the national DNC Registry. *See* 47 U.S.C. §227(c)(5). Telemarketing calls to numbers listed on the DNC Registry are permissible only where the consumer has previously provided the telemarketer with their prior express invitation or permission signed and in writing. *See* 47 C.F.R. § 64.1200(c)(2)(ii) (prohibits initiating any telephone solicitation to a "residential telephone subscriber" registered on the national do-not-call registry without a signed agreement). In addition, the signed writing must state that the consumer agrees to be called by a particular seller at a particular number. *Id.* The Federal Communications Commission has further explained that the consent disclosures required to consumers whose numbers are listed on the DNC Registry must be "clear and conspicuous" and must explicitly identify the specific

---

[13] The FCC has warned telemarketers that in the event of a dispute as to a consumer's consent to receive telemarketing calls, the telemarketer must be prepared to provide clear and conspicuous evidence as to such consent and to also prove that such consent was unambiguous. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd 1830 at ¶32-33 (Feb. 15, 2012). *See* Order at page 16.

'seller' who will be sending telemarketing calls to the consenting consumer. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd. 14014, ¶44 (2003) ("express permission must be evidenced by a signed, written agreement between the consumer and the seller which states that the consumer agrees to be contacted by this seller, including the telephone number to which the calls may be placed"). *See* 27 FCC Rcd. 1830, 1844 at ¶33 (recognizing that consent must include clear and conspicuous disclosure that the consumer is consenting to receive future telemarketing calls *from a specific seller*). *See e.g. Mattson v. New Penn Fin.,* No. 3:18-cv-00990-YY, 2020 U.S. Dist. LEXIS 197955, at *12 (D. Or. Oct. 25, 2020) (citing 47 C.F.R. § 64.1200(c)(2)(ii) and holding "the regulations promulgated under the TCPA require the consumer's prior express consent to receive calls from the specific telemarketer that makes the call before the telemarketer can call a number listed on the DNCR…Thus, consent to receive calls from 'other business partners' is insufficient").

1. **Mr. Mantha Did Not Visit The Web Site And Accordingly Did Not Consent To Receive QuoteWizard's Telemarketing Texts.**

As found by Judge Kelley, the undisputed evidence in this case confirms that Mr. Mantha did not consent to receive telemarketing texts from QuoteWizard:

- QuoteWizard's consent defense relies entirely on the QuoteWizard Opt In. *See* Dkt. #225, QuoteWizard's Response to Plaintiff's Statement of Facts at ¶50-51.

  - The IP address listed on the QuoteWizard Opt In has no connection whatsoever to Mr. Mantha. *Id.* at ¶70-76.

  - The Jornaya Lead ID listed on the QuoteWizard Opt In has no connection whatsoever to Mr. Mantha. *Id.* at ¶63-69.

  - Mr. Mantha never visited the Snappy Auto web site prior to receiving telemarketing texts from QuoteWizard. *Id.* at ¶52.

- o The owner of the Snappy Auto website, Adam Brown, testified he never sold Mr. Mantha's contact information or consent to receive telemarketing calls to anyone. *Id.* at ¶57-62.

- o Mr. Brown also testified that the Snappy Auto web site was not even generating leads at the time of Mr. Mantha's alleged visit to that website. *Id.*

- o Mr. Brown testified he searched the archives and databases of Snappy Auto and could find no information whatsoever relating to Mr. Mantha. *Id.*

- o Mr. Brown testified that it was "fully impossible" for Mr. Mantha's contact and consent data to have come from Snappy Auto. *Id.*

In sum, Mr. Mantha never consented to receive telemarketing texts from QuoteWizard. QuoteWizard's claim to the contrary has been soundly debunked.[14] Judge Kelley's careful and considered ruling that QuoteWizard failed to carry its burden of proof to demonstrate that Mr. Mantha ever visited the Snappy Auto website and, accordingly, could not have consented to receive QuoteWizard's telemarketing texts, was well founded and based on an overwhelming evidentiary record. *See* Order at 3-5, 13-15.

---

[14] QuoteWizard's reliance on Plaintiff's answer to a wholly objectionable deposition question that called for speculation as to whether some unnamed party might have entered his information ("he cannot rule out that someone entered the information on his behalf") betrays a total lack of affirmative evidence. That Plaintiff was unwilling to state under oath that he knows what every other person in the world may have done is not equivalent to an admission that he, or someone on his behalf, did in fact visit the website and input his information. Similarly, QuoteWizard seizes on Mr. Mantha's "concession" that he could not remember every website he visited in 2019 as evidence that he might have visited the dormant Snappy Auto Insurance website is absurd in the face of the undisputed fact that QuoteWizard has failed to come forth with any evidence whatsoever as to such visit. *See* Objection to R&R at pg 19, ¶ 13.

### 2.    The Website Did Not Disclose QuoteWizard As the 'Seller' Who Would Be Telemarketing To Mr. Mantha.[15]

Further, even if Mr. Mantha visited the Snappy Auto website, QuoteWizard would still have failed to carry its burden to prove that it obtained Mr. Mantha's TCPA compliant prior express invitation or permission to receive QuoteWizard's telemarketing texts. In this regard, it is undisputed that:

- The Snappy Auto web site contained no disclosure language whatsoever clearly and conspicuously informing Mr. Mantha that by vising the site he was consenting to receive telemarketing text messages from *QuoteWizard* itself. *See* Dkt. #225 at ¶77.

- The only seller that appears in the disclosure language offered by QuoteWizard is AutoInsurquotes.com. *Id.*

- QuoteWizard admits it has no connection whatsoever with AutoInsurquotes.com. *Id.*

After finding that Mr. Mantha did not visit the Snappy Auto website and, accordingly, could not have consented to receive QuoteWizard's telemarketing texts, Judge Kelley appropriately found, based on the above undisputed evidence, that even if Mr. Mantha had visited the Snappy Auto website, the consent language on the website was not TCPA compliant. Specifically, Judge Kelley found that the consent form and language relied upon by QuoteWizard was not sufficient to comply with the TCPA because the language failed to specifically identify QuoteWizard as the "seller" who would be telemarketing to Mr. Mantha. *See* Order at page 3-5, 15-17.

---

[15] The Code of Federal Regulations further define "seller" as "the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *See* 47 C.F.R. § 64.1200 (f)(10). In this case, the "seller" who sent telemarketing texts to Mr. Mantha was QuoteWizard.

In its Objection, QuoteWizard sidesteps the above regulations relating to the requirement that telemarketers identify themselves specifically to consumer when obtaining their consent simply does not apply to the texts at issue. QuoteWizard claims that in finding that QuoteWizard was required to identify itself as the 'seller' Judge Kelley added a requirement under the TCPA that "simply did not exist." Objection to R&R at 27. In support, QuoteWizard, again, claims that since the texts at issue were mere "transactional" or "informational" in nature, it was not required to obtain Mr. Mantha's prior express consent signed in writing nor was it required to identify itself as the entity who would be texting Mr. Mantha. *See* Objection to R&R at pg. 29. In support, QuoteWizard again refers to FCC regulations relating to the less stringent consent standards applicable to non-telemarketing calls. *Id.* at pg. 21-22. *See* 29 FCC Rcd. 3442, 3444 (March 27, 2014) (referring to consent standards applicable to non-telemarketing calls); 30 FCC Rcd 7961, 7990 (July 10, 2015) (discussing consent standards relating to non-telemarketing calls). These rules, however, have no application in the context of telemarketing solicitations.

As the texts at issue here were telemarketing solicitations designed to sell Mr. Mantha insurance, QuoteWizard was required to obtain Mr. Mantha's signed consent agreeing to receive texts ***from QuoteWizard*** itself as the 'seller." Judge Kelley did not impose upon QuoteWizard an obligation that "simply did not exist." The requirement that a telemarketer before sending solicitations to numbers listed on the DNC Registry must obtain signed consent identifying the seller by name has been in effect since 2003. *See* 47 U.S.C. §227(c)(5); 47 C.F.R. § 64.1200(c)(2)(ii) (prohibits initiating any telephone solicitation to a "residential telephone subscriber" registered on the national do-not-call registry without a signed agreement that identifies the seller); 18 FCC Rcd. 14014, ¶44 (2003) ("express permission must be evidenced by a signed, written agreement between the consumer and the seller which states that the consumer

25

agrees to be contacted by this seller, including the telephone number to which the calls may be placed"). *See e.g. Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) (prior express consent must be clearly and unmistakably stated, identifying the ***specific entity*** granted permission to call).

QuoteWizard's admitted failure to identify itself to Mr. Mantha as the "seller" who would be telemarketing to Mr. Mantha is fatal to QuoteWizard's consent defense. Judge Kelley's finding that since QuoteWizard failed to identify itself as the 'seller' and, therefore, failed to carry its burden to prove TCPA compliant consent was sound and should be affirmed.

### 3. The Consent Disclosure Relied Upon By QuoteWizard Were Not E-Sign Compliant.

QuoteWizard does not claim it obtained Mr. Mantha's signature evidencing his consent to receive its telemarketing texts. *See* Dkt. #225, PSOF at ¶49-51. Of course, in order for a telemarketer to send solicitations to a consumer whose phone number is listed on the DNC Registry, the telemarketer must first obtain the consumers signed consent in writing agreeing to be called by a specific telemarketer at a specific number). *See* 47 C.F.R. § 64.1200(c)(2)(ii). In an effort to circumvent its admitted failure to produce a writing signed by Mr. Mantha, QuoteWizard claims that Mr. Mantha consented to receive its telemarketing texts by visiting the Snappy Auto web-site where he purportedly filled out a "web-form."[16] QuoteWizard then claims that consent obtained via a web-form can suffice to satisfy the TCPA's requirement that consent of a consumer whose number is listed on the DNC Registry be signed and in writing. *See* Objection to R&R at pg. 27.

---

[16] No web-form has been produced. Rather, the QuoteWizard Opt In, which was admittedly created by QuoteWizard after Mr. Mantha, was a compilation of inaccurate and debunked data obtained from a variety of sources. *See* Dkt. #225, PSOF at ¶49-51.

In support of its consent by "web-form" claim, QuoteWizard cites to 27 FCC Rcd. 1830, 1844, ¶33-34 (Feb. 2012). This Declaratory Ruling and Order was issued by the FCC in 2012 pursuant to which the FCC strengthened the consent requirements relating to pre-recorded telemarketing calls made to consumers requiring that, going forward, consent to receive such calls must be evidenced by a signed writing. *See* 27 FCC Rcd. 1830, ¶7, 18 (FCC acknowledges a consent rule change designed to heighten the consent requirements for pre-recorded telemarketing calls by requiring prior express consent to be evidenced by a signed writing). The FCC rule relied upon by QuoteWizard does allow for a consumer to evidence their signed consent to receive pre-recorded telemarketing calls via a web form. *See* 27 FCC Rcd. 1830, 1844, ¶33-34 (acknowledging consent may be obtained via a web-form). This exact rule, however, further provides that if consent is obtained electronically via a web-form, such consent must also comply with the E-Sign Act. *Id.* (consent obtained via a web-form must otherwise comply with the provisions of the E-Sign Act). The E-Sign Act, in turn, provides that consent may be obtained electronically from a consumer ***only if*** the consumer agrees to consent electronically, and is also provided with a litany of important disclosures, including that the consumer agrees to consent electronically, that the consumer can withdraw their consent and which also provides the consumer with a mechanism to withdraw their purported consent. *See* 15 U.S.C. § 7001(c)(detailing the disclosures required to be made to a consumer for an electronic signature can be deemed E-Sign compliant including disclosure relating to withdrawal of consent and a mechanism to do so). *See Larson v. Harman Mgmt. Corp,* 2016 U.S. Dist. LEXIS 149267 *5-7 (ED CA) (Oct. 27, 2016) (discussing the requirements of E-Sign in the context of TCPA consent); *Winner v. Kohl's Dep't Stores, Inc., 2017 U.S. Dist. LEXIS 131225* at * 12-19 (E.D.PA. Aug. 17, 2017) (recognizing that where a telemarketer has failed to come forth with

the consumer's signed writing consent may be evidenced by an electronic signature obtained in compliance with the E-Sign Act, including its disclosures relating to a consumers right to withdraw consent and a mechanism to do so).

The TCPA disclosure language relied on by QuoteWizard as purported proof of Mr. Mantha's consent to receive QuoteWizard's telemarketing texts did not advise Mr. Mantha of his right to withdraw such purported consent. *See* Dkt. #225, PSOF at ¶ ¶77. Such language also did not provide Mr. Mantha with a mechanism to withdraw such purported consent. *Id.* These facts are undisputed. Accordingly, even if QuoteWizard came forward with a web-form evidencing Mr. Mantha's consent to receive telemarketing texts from QuoteWizard to the Wireless Number, QuoteWizard still fails to carry its burden as to TCPA compliant consent as any alleged web-form obtained from Mr. Mantha did not comply with the E-Sign Act.

In its Objection, QuoteWizard asserts it obtained Mr. Mantha's signed consent to receive its telemarketing texts via a web-form apparently on the Snappy Auto web-site, but dismissively claims it was not required to make any additional E-Sign Act disclosures in order to comply with the TCPA. *See* Objection to R&R at 28. In doing so QuoteWizard ignores the exact text of the rule it relies upon for its claim that consent to receive telemarketing calls may be obtained by a web-form. *See* 27 FCC Rcd. 1830, 1844, ¶33-34 (consent may be obtained via a web-form ***if in compliance with the E-Sign Act).***

In support, QuoteWizard cites to *Morris v. Modernize, Inc.,* 2018 U.S.Dist. LEXIS 232701 (W.D.Tex. Sept. 27, 2018). In *Morris,* the Court found that the plaintiff consented to receive Modernize telemarketing calls by filling out a web-form that clearly and conspicuously identified Modernize as the seller who would be calling. *Id*. at *8.* Having found the consumer consented to be called by Modernize itself via a web-form, the court did not go further to

examine whether Modernize had complied with the E-Sign Act's disclosure requirements. In doing so, the Court erroneously claimed the E-Sign Act only applied where a "transaction" was involved and that the plaintiff had failed to identify a ***"rule of law"***[17] requiring Modernize to make additional disclosures. *Id.* (emphasis added). The Court in *Morris* failed to acknowledge that the FCC, in its 2012 Report and Order, explicitly adopted by reference the disclosure requirements of E-Sign in the context where a telemarketer claimed it obtained a consumer's signed consent to receive telemarketing calls via a web-form. *See* 27 FCC Rcd. 1830, 1844, ¶¶33-34; 15 U.S.C. § 7001(c)(detailing the disclosures required to be made to a consumer for an electronic signature can be deemed ESign compliant). The Court in *Modernize* ignored these provisions in finding the E-Sign Act did not apply in the context of a consumers consent to receive telemarketing calls via an electronic signature evidenced by a web-form. As the Court in *Modernize* failed to assess if the web-form allegedly evidencing the consumer's TCPA compliant consent was otherwise compliant with the E-Sign Act, the case is easily distinguishable and unpersuasive.[18]

On an undisputed factual record, Judge Kelley appropriately found the texts at issue were subject to the TCPA's consent requirements relating to telemarketing calls, including the disclosure requirements of the TCPA and the E-Sign Act, and that QuoteWizard had failed to

---

[17] Of course, the "rule of law" requiring E-Sign Act disclosures where a telemarketer claims a consumer consented in writing to receive telemarketing calls via a web-form is the very regulation relied upon by QuoteWizard- 27 FCC Rcd. 1830, 1844, ¶¶33-34.

[18] Equally unavailing is *Reinert v. Power Home Remodeling Grp.,* 2020 U.S. Dist. Lexis 214666 at *7 (E.D. Mich. Nov. 17, 2020)(Court contends E-Sign Act does not apply in the context of the TCPA, following *Modernize,* and failing to acknowledge that the disclosure requirements of the E-Sign Act were explicitly incorporated by reference in the telemarketing context where consent was offered via a web-form by the FCC's Order at 27 FCC Rcd. 1830, 1844, ¶¶33-34 *).*

carry its burden to prove it had Mr. Mantha's TCPA compliant consent to send telemarketing texts to the DNC listed Wireless Number. Judge Kelley's findings and rulings on these key issues as to consent were based on undisputed facts and relevant applicable law. *See* Order at pg. 15-18. QuoteWizard's objections as to these rulings should be overruled.

### F. Judge Kelley Appropriately Rejected QuoteWizard's Claimed Entitlement To A Good Faith Or Reliance Defense.

In a final effort to escape responsibility for what is believed to be a massive violation of the TCPA, QuoteWizard claims its vendors contractually promised that all leads sold to QuoteWizard would be TCPA compliant. *See* Objection to R&R at 30-33. Accordingly, QuoteWizard claims it at all times acted in "good faith" and in reliance on its contracts with its third party lead vendors, and should be judicially absolved of any TCPA liability to Mr. Mantha, or to any class member. *Id.*

QuoteWizard asserts such a claim although it now admits that literally millions of consumers who received its telemarketing text messages complained and demanded that such solicitations cease. *See* Dkt. #225, PSOF at ¶11-16. *See* Dkt. #184, *Defendant's Notice to Court Regarding Supplemental, Corrected Production,* (QuoteWizard acknowledges error in its prior discovery responses disclosing that the number of consumers who submitted Do Not Call complaints after receiving QuoteWizard telemarketing texts was not 46,000 as represented previously to the Court, but in fact was over ***two million complaints***). A compilation of these DNC Complaints was attached as an exhibit to Mr. Mantha's Motion for Partial Summary Judgment. *See* Dkt. #210 at <u>Exhibit 5</u>, Declaration of Anthony Paronich (summarizing the DNC complaints produced to date by QuoteWizard and compiling examples of such complaints at Tabs A and B).

QuoteWizard's apparent claim that it had no reason to suspect that the leads it was purchasing from third parties were not TCPA compliant is demonstrably false. It was placed on notice *over two million times* that consumers who QuoteWizard apparently believed requested its texts, had not done so. Such a claim is also suspect where, as Judge Kelley recognized, QuoteWizard's lead vendor had no independent means to verify whether or not the data sold to QuoteWizard was, in fact, TCPA compliant. *See* Order at pg. 18 (noting that Rev-Point had no independent means of verifying the TCPA compliance of its data as it merely purchased such data from other data brokers who were not the original source). QuoteWizard's "good faith" claim under these undisputed facts is unprecedented and extraordinary. Judge Kelley appropriately rejected such a defense, recognizing there is no "good faith" defense to a TCPA claim, [19] and that QuoteWizard's plea for immunity under these factual circumstances would

---

[19] A myriad of other federal courts have similarly recognized there is no "good faith" defense to TCPA violations. *See Hoffman v. Hearing Help Express, Inc.*, 2020 U.S. Dist. LEXIS 241003 *11-13 (W.D. WA 12.22.2020) (court grants a motion to strike affirmative defense of good faith in a TCPA class action noting that such a defense is inapplicable as to liability and relates solely as to whether conduct was willful and subject to treble damages); *Jiminez v. Credit One Bank, N.A.,* 377 F. Supp. 3d 324 at 334-335 (S.D.N.Y. March 2019)(in context of a TCPA class action court denies defendant's motion for summary judgment as to good faith and reasonable reliance noting that such was relevant only as to willfulness); *Perez v. Rash Curtis & Assocs.*, 2019 U.S. Dist. LEXIS 58639 *13-14 (N.D. Cal. March 2019) (in context of a TCPA class action court grants plaintiff's motion in limine precluding defendant from arguing a good faith and reasonable reliance noting that such was relevant only as to willfulness); *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 979-981 *29-31 (N.D. Cal.- Sept. 4, 2019) (in context of a TCPA class action court denies defendant's motion to summary judgment based on good faith and reasonable reliance noting that the [TCPA] . . . makes no exception for senders who mistakenly believe that recipients' permission or invitation existed. The issue of intent, or more accurately, the issues of knowledge and willfulness, however, clearly are material to the question of treble damages.") (collecting cases). *See Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011) ("The TCPA is essentially a strict liability statute . . . . [and] does not require any intent for liability except when awarding treble damages."); *Soppet v. Enhanced Recovery Co., LLC, 679 F.3d 637, 641 (7th Cir. 2012)* (affirming TCPA liability for calls to phone numbers where the recipient of the call had not given consent, even if the phone number was called due to a typographical error in its entry or because the number previously belonged to

present public policy concerns whereby if a defendant- such as QuoteWizard- were relieved of

TCPA liability as requested, there would be no incentive for defendants to ensure that their data

suppliers were held to their contractual obligations to provide only TCPA compliant data. *See*

Order at page 23.[20]

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that *Defendant's Objections to*

*Magistrate Judge's Order* (Dkt. #258) should be overruled.

PLAINTIFF,

By his attorneys

/s/ Matthew P. McCue

Matthew P. McCue
THE LAW OFFICE OF MATTHEW P.
MCCUE
1 South Avenue, Suite 3
Natick, MA 01760
Telephone: (508) 655-1415
mmccue@massattorneys.net

---

a different person); *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876, 882 n. 3 (8th Cir. 2005) ("The [TCPA] . . . makes no exception for senders who mistakenly believe that recipients' permission or invitation existed. The issue of intent, or more accurately, the issues of knowledge and willfulness, however, clearly are material to the question of treble damages."). *See Pieterson v. Wells Fargo Bank, N.A.*, No. 17-cv-02306-EDL, 2018 U.S. Dist. LEXIS 113125, at *10 (N.D. Cal. July 2, 2018) (no good faith defense under TCPA); *Jiminez v. Credit One Bank, N.A.*, 377 F. Supp. 3d 324, 334 (S.D.N.Y. 2019) ("Credit One's good faith argument finds no basis in the text of the TCPA which only makes a caller's intent relevant in connection with the trebling of damages."); *Davis v. Diversified Consultants, Inc.*, 36 F. Supp. 3d 217, 223-24 (D. Mass. 2014) ("The TCPA is essentially a strict liability statute and does not require any intent for liability except when awarding treble damages.").

[20] Of course, if QuoteWizard's lead vendors breached its contract with QuoteWizard, QuoteWizard is free to pursue them for breach or indemnity. *See* Objection to R&R at pg. 35 (QuoteWizard admits that it has costs of defense and indemnity rights against its vendors).

Edward A. Broderick
BRODERICK LAW, P.C.
176 Federal Street, Fifth Floor
Boston, MA 02110
Telephone: (617) 738-7080
ted@broderick-law.com

Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Alex M. Washkowitz
Jeremy Cohen
CW LAW GROUP, P.C.
188 Oaks Road Framingham, MA 01701
alex@cwlawgrouppc.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 13, 2022, I electronically transmitted the foregoing to all counsel of record via the electronic filing system.

By:  */s/ Matthew P. McCue*
        Matthew P. McCue