# EXHIBIT A: RESPONSE TO THIRD SET OF INTERROGATORIES

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH MANTHA on behalf of himself and others similarly situated, : : : | |
| Plaintiff, : | Case No. 1:19-cv-12235-LTS |
| : | |
| v. : | |
| : | |
| QUOTEWIZARD.COM, LLC : | |
| : | |
| Defendant. : | |
| : / | |

## DEFENDANT'S RESPONSES TO PLAINTIFF'S THIRD SET OF INTERROGATORIES

Defendant QuoteWizard.com, LLC ("QuoteWizard") hereby responds to Plaintiff Joseph Mantha's ("Plaintiff") Third Set of Interrogatories.[1]

## GENERAL OBJECTIONS

QuoteWizard objects to the introductory paragraphs preceding Plaintiff's Third Set of Interrogatories to the extent they seek to impose duties on QuoteWizard beyond the scope of what is required under Fed. R. Civ. P. 33 or under applicable rules and orders of the Court. QuoteWizard also objects to Plaintiff's terms and definitions and does not adopt them herein.

QuoteWizard also objects on the grounds that some of the information and documents sought in these interrogatories: (a) were prepared in anticipation of litigation; (b) are protected by the attorney-client privilege; (c) are protected by the work product doctrine; and/or (d) are otherwise privileged or protected from disclosure. QuoteWizard hereby asserts all such applicable

---

[1] The Interrogatories were served with Plaintiff's fourth set of requests, in class discovery, but appear to be the third set of Interrogatories since discovery opened.

privileges and protections, and excludes such privileged information and documents from its responses.

QuoteWizard also objects to the Interrogatories because Plaintiff has exceeded the limit imposed by Fed. R. Civ. P. 33 without leave of court, which is 25 interrogatories. *See* Fed. R. Civ. P. 33(a)(1). Plaintiff's first and second set of interrogatories included a total of 23 interrogatories, and the third set includes another 5, for a total of 28 and in excess of what is allowable under the Federal Rules.

To the extent Plaintiff's interrogatories seek confidential consumer personal identifying information ("PII"), including consumer names, QuoteWizard objects. This information is not generally available to putative lead plaintiffs until a class is certified, is not relevant to any issue under Fed. R. Civ. P. 23, and is not appropriate to share with Plaintiff, who does not need this information prior to any certification. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978); *Dziennik v. Sealift, Inc*., 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006) ("Courts have ordinarily refused to allow discovery of class members' identities at the pre-certification stage out of concern that plaintiffs' attorneys may be seeking such information to identify potential new clients, rather than to establish the appropriateness of certification.") (denying motion to compel this information).

QuoteWizard objects to any and all interrogatories that concern other consumers outside of the Commonwealth of Massachusetts, as they are beyond the jurisdictional scope of the case. *See*, *e.g.*, *DeBernardis vs. NBTY, Inc.*, 2018 WL 461228, at *2 (N.D. Ill. Jan. 18, 2018) ("The Court believes that it is more likely than not based on the Supreme Court's comments about federalism that the courts will apply *Bristol-Myers Squibb* to outlaw nationwide class actions in a form, such as in this case, where there is no general jurisdiction over the Defendants.").

QuoteWizard further objects to the interrogatories insofar as they seek information solely in the possession, custody, or control of Drips Holdings, LLC which Drips has not produced to QuoteWizard to date by agreement herein. As QuoteWizard has maintained throughout this action, it does not have possession, custody, or control over Drips's records and therefore does not have any responsive information or documents for this category of requests.

To the extent that the interrogatories seek information regarding leads generated from any other source than www.snappyautoinsurance.com ("Snappy website"), QuoteWizard objects to the same. As Plaintiff's lead purportedly originated from the Snappy website and the majority of discovery and briefing in this case related to that website (both as to the sufficiency of the TCPA disclosures thereon and its existence/legitimacy at the time of the making of the lead), Plaintiff cannot represent consumers who consented via different websites—as there are no common issues of fact or law capable of resolution on a classwide basis. Unlike in other cases where a defendant engaged in a mass campaign or all disputed leads came from the same source, here, QuoteWizard purchased hundreds of thousands of leads from (approximately) over 180 possible lead suppliers, necessarily arising from different websites, with different TCPA disclosure language. This case cannot be expanded beyond the Snappy website. *See Shamblin v. Obama*, 2015 U.S. Dist. LEXIS 54849, at *28-29 (M.D. Fla. April 27, 2015) ("[P]redominance is not satisfied based on the looming issue of consent. … [T]he evidence necessary to establish Shamblin's claim is not common to both Shamblin and all class members. Individualized inquiries into consent (including where, how, and when) will predominate."). *Compare Wendell H. Stone Co. v. Five Star Adver., LLC*, 2021 U.S. Dist. LEXIS 50721, at *2, *12 (D. Colo. March 17, 2021) (consent could be "common across the whole class" where there are "communications that were part of a mass campaign") (plaintiff alleged that "defendants faxed the same unsolicited advertisement to 40 other

3

recipients without receiving the recipients' permission or invitation"); *Sullivan v. All Web Leads, Inc.*, 2017 U.S. Dist. LEXIS 84232, at *24-25 (N.D. Ill. June 1, 2017) (commonality could be satisfied where putative class members "engaged in the same consent procedure that [plaintiff] did" and "gave the same consent," and issue remained about legal efficacy of that same consent); *Derrick Reaves v. Ketoro, Inc.*, 2020 U.S. Dist. LEXIS 167926, at *28 (C.D. Cal. July 17, 2020) (classwide treatment appropriate where all texts sent "during the [same] November 2018 campaign" and form/method of consent was the same across putative class members). Upon information and belief, RevPoint Media, LLC never sold QuoteWizard another lead originated from the Snappy website besides Plaintiff's lead, and thus there is no putative class.

## INTERROGATORIES

1. Identify each person who provided the information to answer interrogatories in this case and specify the interrogatories about which each person provided information.

> **ANSWER:** QuoteWizard objects to this Interrogatory on the ground that it does not exclude QuoteWizard's attorneys and thus improperly seeks information protected by the attorney-client privilege and work product doctrine. Subject to and notwithstanding this objection, these answers constitute corporate responses and, as such, are not based upon the personal knowledge of a particular person. Answers to interrogatories are based upon information gathered from various sources and documents. The facts as stated in these answers have been assembled from various sources and from authorized individuals, including the assistance of counsel. Subject to the foregoing, QuoteWizard refers Plaintiff to its verification page below, which identifies the name and occupation of the person executing the Answers on behalf of QuoteWizard.

2. Identify all third parties that you obtained telephone numbers from that were sent text messages on the DRIPS system. This includes, but is not limited to, Plural Marketing Solutions, Inc.

> **ANSWER:** QuoteWizard objects to this Interrogatory as overly broad, unduly burdensome, not relevant to any class issues under Fed. R. Civ. P. 23, and not proportional to the needs of the case. In addition, QuoteWizard objects because this Interrogatory is not limited in time, scope, or to the subject matter of this case

(text messages sent to consumers two or more times where the consumer is registered (validly) on the National Do Not Call Registry and QuoteWizard allegedly lacked consent to contact them – and more specifically, relating to the Snappy website – within the statute of limitations period).

With respect to class issues, this Interrogatory has no apparent bearing on or relevancy to any of the Rule 23 factors. "Generally at the pre-class certification stage, discovery in a putative class action is limited to certification issues such as the number of class members, the existence of common questions, typicality of claims, and the representative's ability to represent the class." *Gusman v. Comcast Corp.*, 298 F.R.D. 592, 595 (S.D. Cal. 2014) (citing *Oppenheimer*, 437 U.S. at 359).

Moreover, QuoteWizard objects insofar as Plaintiff is seeking information regarding third parties that exceeds the commonality and typicality required under Rule 23. Plaintiff's lead was sold to QuoteWizard by RevPoint Media, LLC ("RevPoint"), which in turn had purchased it from Plural Marketing Solutions, Inc. ("Plural"), which in turn purchased it from Fenix Media ("Fenix"), which in turn claimed to have obtained it or generated it from the Snappy website. The Parties expended substantial resources in merits discovery regarding the owner and legitimacy of the Snappy website and the summary judgment briefing focused in large part on that issue and the generation of Plaintiff's lead. The identity of all other lead suppliers that QuoteWizard purchased leads from in the putative class period is not relevant to, common to, or typical of Plaintiff's lead or those similarly situated.

In the putative class period, QuoteWizard purchased leads from (approximately) over 180 possible lead suppliers. These lead suppliers in turn necessarily would have either purchased leads from or generated leads from thousands (if not hundreds of thousands) of different lead websites that necessarily have various different forms of consent language that might be contested by counsel and would require individualized inquiries into each consumer's agreement to disclosure language. *See Berman v. Freedom Financial Network*, No. 20-16900 (9th Cir. 2022) (requirement to arbitrate in online webform was not enforceable). Consumer leads sold by over 180 possible lead suppliers to QuoteWizard lack commonality and typicality with Plaintiff's lead, and thus precertification discovery into these unrelated leads is not appropriate. *See Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985) (precertification discovery may be prohibited where plaintiff fails to advance a prima facie showing that the class requirements (i.e., numerosity, commonality, typicality and adequacy of representation) of Rule 23 are satisfied or that "discovery is likely to produce substantiation of class allegations.") (no abuse of discretion by denying pre-certification discovery where plaintiff merely cited "two other complaints filed elsewhere" by similar plaintiffs against the same defendant to demonstrate a likelihood that discovery would substantiate class allegations); *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977) ("[W]here the plaintiffs fail to make even a prima facie showing of Rule 23's prerequisites, as we find here, the burden is on the plaintiff to demonstrate that

discovery measures are likely to produce persuasive information substantiating the class action allegations."); *Pizana v. Sanmedica Int'l, LLC*, 2021 U.S. Dist. LEXIS 18926, at *9-10 (E.D. Cal. Feb. 1, 2021) (prohibiting pre-certification discovery where plaintiff failed to show why requested information concerning non-party companies "is likely to substantiate his class allegations").

Plaintiff has never alleged nor presented any evidence to substantiate an allegation that QuoteWizard was sold allegedly fraudulent leads by over 180 possible lead suppliers; rather at all times this case has focused on the Snappy website. This is not a case where QuoteWizard sent the text messages pursuant to the same mass campaign or where all leads were generated from a single source or website. *See Shamblin*, 2015 U.S. Dist. LEXIS 54849, at *28-29. *Compare Sullivan*, 2017 U.S. Dist. LEXIS 84232, at *24-25.

Thus, class discovery must necessarily be limited to leads that originated from the same source—the Snappy website. Upon information and belief, however, Plaintiff's lead was the only lead purchased by QuoteWizard from RevPoint and in turn from Plural during the putative class period that purportedly originated from the Snappy website. Plural (which worked directly with Fenix, the alleged lead generator) would have direct knowledge of this fact and QuoteWizard is amenable to working with Plaintiff's counsel, via a subpoena, deposition or otherwise, to confirm the same. Pursuant to the foregoing objections, no answer is being provided.

3. For all entities identified in response to Interrogatory No. 2, identify the amount of telephone numbers obtained from each entity.

**ANSWER:** QuoteWizard objects to this Interrogatory as over the number of interrogatories allowed under Fed. R. Civ. P. 33, as this is Plaintiff's 26th interrogatory. QuoteWizard further objects to this Interrogatory as overly broad, unduly burdensome, not relevant to any class issues under Fed. R. Civ. P. 23, and not proportional to the needs of the case. In addition, QuoteWizard objects because this Interrogatory is not limited in time, scope, or subject matter of this case (text messages sent to consumers two or more times where the consumer is registered (validly) on the National Do Not Call Registry and QuoteWizard allegedly lacked consent to contact them – and more specifically, relating to the Snappy website – within the statute of limitations period). QuoteWizard refers Plaintiff to its objections to Interrogatory No. 2 and incorporates and relies on those objections in response to Interrogatory No. 3.

Moreover, the number of leads sold by each of QuoteWizard's lead suppliers is not relevant to any Rule 23 issue. In addition, it would be incredibly overly burdensome for QuoteWizard to (1) identify with certainty every lead supplier that sold it leads during the class period, (2) compile a list of records of those leads, and (3) determine which of those leads were contacted by Drips during the putative

6

class period. Further, although QuoteWizard retains records for each lead sold to it, QuoteWizard does not maintain separate records of leads sold by each lead supplier in any discrete format that could be produced, but would have to create/compile such leads to respond to this Interrogatory. This would be a time-consuming, onerous, and expensive task, and the Federal Rules of Civil Procedure do not require QuoteWizard to do this. *See In re Symbol Techs., Inc. Sec. Litig.*, 2017 U.S. Dist. LEXIS 50530, at *39 (E.D.N.Y. March 31, 2017) ("[T]he information sought by Defendants … is not presently memorialized in any tangible medium that could be turned over to Defendants. To the contrary, such information would need to be 'created' in documentary form. However, in general, a party is not required to create documents responsive to another party's request."); *see also Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.*, 2002 U.S. Dist. LEXIS 19555, 2002 WL 31309232, at *4 (S.D.N.Y. Oct. 15, 2002) ("It is well-established . . . that courts may not compel the creation of documents to comply with a discovery demand."). Pursuant to the foregoing objections, no information is being provided.

4. Identify all websites that you obtained telephone numbers from that were sent text messages on the DRIPS system. This includes, but is not limited to, www.snappyautoinsurance.com.

**ANSWER:** QuoteWizard objects to this Interrogatory as over the number of interrogatories allowed under Fed. R. Civ. P. 33, as this is Plaintiff's 27th interrogatory. QuoteWizard further objects to this Interrogatory as overly broad, unduly burdensome, not relevant to any class issues under Fed. R. Civ. P. 23, and not proportional to the needs of the case. Moreover, other leads/websites generated from other lead suppliers different than Plaintiff's lead lacks any relevancy to, commonality, or typicality with Plaintiff's lead. This case is, and always has been, about the Snappy website. In addition, QuoteWizard objects because this Interrogatory is not limited in time, scope, or to the subject matter of this case. QuoteWizard refers Plaintiff to its objections to Interrogatories Nos. 2 and 3 and incorporates and relies on those objections in response to Interrogatory No. 4. QuoteWizard further objects on the ground that some or all of this information is not within its possession, custody, or control but rather would be in the possession, custody, or control (if it exists) of the companies that sold QuoteWizard consumer leads—which has been approximately identified as over 180 different entities. More specifically, when QuoteWizard purchases leads (as with Plaintiff's lead), the source of the lead/website is not typically shared with QuoteWizard by the lead supplier and therefore is not ordinarily within the possession, custody, or control of QuoteWizard. It would be patently overly burdensome and not proportional to the needs of the case, and also beyond the scope of any permissible discovery, to require QuoteWizard to contact approximately 180 different lead suppliers and review each lead they ever sold to discern this information that is not within

QuoteWizard's possession, custody, or control. Pursuant to these objections, no information is being provided.

5. For all entities identified in response to Interrogatory No. 4, identify the amount of telephone numbers obtained from each entity.

**ANSWER:** QuoteWizard objects to this Interrogatory as over the number of interrogatories allowed under Fed. R. Civ. P. 33, as this is Plaintiff's 28th interrogatory. QuoteWizard further objects to this Interrogatory as overly broad, unduly burdensome, not relevant to any class issues under Fed. R. Civ. P. 23, and not proportional to the needs of the case. In addition, QuoteWizard objects because this Interrogatory is not limited in time, scope, or to the subject matter of this case. Moreover, other leads/websites generated from other lead suppliers different than Plaintiff's lead lacks any relevancy to, commonality, or typicality with Plaintiff's lead. This case is, and always has been, about the Snappy website. QuoteWizard refers Plaintiff to its objections to Interrogatories Nos. 2, 3, and 4 and incorporates and relies on those objections in response to Interrogatory No. 5. QuoteWizard further objects on the ground that some or all of this information is not within its possession, custody, or control but rather would be in the possession, custody, or control (if it exists) of the companies that sold QuoteWizard consumer leads. More specifically, when QuoteWizard purchases leads (as with Plaintiff's lead), the source of the lead/website is not typically shared with QuoteWizard by the lead supplier and therefore is not ordinarily within the possession, custody, or control of QuoteWizard. Further, although QuoteWizard retains records for each lead sold to it, QuoteWizard does not maintain separate records of leads sold by each lead supplier in any discrete format that could be produced, but would have to create/compile such leads to respond to this Interrogatory. This would be a time-consuming, onerous, and expensive task, and the Federal Rules of Civil Procedure do not require QuoteWizard to do this. *See In re Symbol Techs., Inc. Sec. Litig.*, 2017 U.S. Dist. LEXIS 50530, at *39.

In addition, QuoteWizard objects on the ground that this Interrogatory appears to be duplicative of Interrogatory No. 3. Pursuant to these objections, no information is being provided.

Respectfully Submitted,

QuoteWizard.com, LLC,
By its attorneys,

*/s/ Kevin P. Polansky*
Kevin P. Polansky (BBO #667229)
kevin.polansky@nelsonmullins.com
Christine M. Kingston (BBO #682962)

8

|  |  |
|---|---|
|  | christine.kingston@nelsonmullins.com |
|  | Nelson Mullins Riley & Scarborough LLP |
|  | One Financial Center, Suite 3500 |
|  | Boston, MA 02109 |
|  | (t) (617)-217-4700 |
| Dated: April 18, 2022 | (f) (617) 217-4710 |

## **CERTIFICATE OF SERVICE**

I, the undersigned, of the law offices of Nelson Mullins Riley and Scarborough LLP, attorneys for Defendant QuoteWizard.com, LLC, do hereby certify that I have served all counsel of record with copies of the below listed documents by electronic mail and U.S. Mail on this 18th day of April 2022:

Documents: QuoteWizard's Responses to Plaintiff's Third Set of Interrogatories

*/s/ Kevin P. Polansky*
Kevin P. Polansky

**VERIFICATION**

The undersigned states that he/she holds the position of Director of Data Partnerships for QuoteWizard.com, LLC. The matters stated in the foregoing interrogatories are not all within his/her personal knowledge and there is no such person who has personal knowledge of all such matters. As a result, the facts as stated in said responses have been assembled by authorized individuals of QuoteWizard.com, LLC. The undersigned is informed and believes that the facts stated in said responses are true and so states under the pains and penalties of perjury.

Signed under pains and penalties of perjury on the __15th__ day of April 2022.

*Matthew Weeks*
Matthew Weeks (Apr 15, 2022 13:56 PDT)

Matthew Weeks
Director of Data Partnerships