# EXHIBIT B: RESPONSE TO FOURTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| JOSEPH MANTHA on behalf of himself and others similarly situated, | : : : : | |
| Plaintiff, | : : | Case No. 1:19-cv-12235-LTS |
| v. | : : | |
| QUOTEWIZARD.COM, LLC | : : | |
| Defendant. | : : : | |

_____ /

**DEFENDANT'S RESPONSES TO PLAINTIFF'S FOURTH SET OF REQUESTS FOR
PRODUCTION OF DOCUMENTS**

Defendant QuoteWizard.com, LLC ("QuoteWizard") hereby responds to Plaintiff Joseph Mantha's ("Plaintiff") Fourth Set of Requests for Production of Documents as follows.

**INTRODUCTION AND GENERAL OBJECTIONS**

In responding to Plaintiff's document requests, QuoteWizard has sought documents and information from those persons who are most likely to know of information or documents or other things responsive to Plaintiff's discovery. QuoteWizard conducted a reasonable search of its records kept in the ordinary course of business where such information, documents, or other things responsive to discovery are most likely to be found. To the extent Plaintiff's requests call for more, QuoteWizard objects on the grounds that such request is overly broad, not limited in time and scope, unduly burdensome, and is not proportional to the needs of this case.

QuoteWizard also objects on the grounds that some of the information and documents sought in these requests: (a) were prepared in anticipation of litigation; (b) are protected by the attorney-client privilege; (c) are protected by the work product doctrine; and/or (d) are otherwise

privileged or protected from disclosure. QuoteWizard hereby asserts all such applicable privileges and protections, and excludes such privileged documents from its responses.

To the extent Plaintiff's requests seek confidential consumer personal identifying information ("PII"), including consumer names, QuoteWizard objects to such requests. This information is not generally available to putative lead plaintiffs until a class is certified, is not relevant to any issue under Fed. R. Civ. P. 23, and is not appropriate to share with Plaintiff, who does not need this information prior to any certification. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978); *Dziennik v. Sealift, Inc*., 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006) ("Courts have ordinarily refused to allow discovery of class members' identities at the pre-certification stage out of concern that plaintiffs' attorneys may be seeking such information to identify potential new clients, rather than to establish the appropriateness of certification.") (denying motion to compel this information).

QuoteWizard objects to any and all requests that concern other consumers outside of the Commonwealth of Massachusetts, as such requests are beyond the jurisdictional scope of the case. *See*, *e.g.*, *DeBernardis vs. NBTY, Inc.*, 2018 WL 461228, at *2 (N.D. Ill. Jan. 18, 2018) ("The Court believes that it is more likely than not based on the Supreme Court's comments about federalism that the courts will apply *Bristol-Myers Squibb* to outlaw nationwide class actions in a form, such as in this case, where there is no general jurisdiction over the Defendants.").

QuoteWizard further objects to the requests insofar as they seek documents or data solely in the possession, custody, or control of Drips Holdings, LLC which Drips has not produced to QuoteWizard to date by agreement herein. As QuoteWizard has maintained throughout this action, it does not have possession, custody, or control over Drips's records and therefore does not have any responsive documents for this category of requests.

QuoteWizard also objects insofar as the requests purport to seek broad information about consumers contacted without any attempt to differentiate between those on the National Do Not Call Registry who were contacted two or more times with telephone solicitations (elements of Plaintiff's claim) versus those who were not on the Registry or contacted only once. These latter consumers would be excluded from any putative class. QuoteWizard further objects insofar as Plaintiff is using class discovery in furtherance of merits discovery, which has long since closed. Class discovery is different and more limited in scope. *See Pizana v. Sanmedica Int'l, LLC*, 2021 U.S. Dist. LEXIS 18926, at *9-10 (E.D. Cal. Feb. 1, 2021) (where court bifurcated merits and class discovery, "[t]he pertinent question at this time is not whether the requested information is relevant to substantiate Plaintiff's claims, but instead whether the information is relevant to substantiate Plaintiff's class certification allegations.") (prohibiting pre-certification discovery that did not bear on any class issues) (citing *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465-66, 133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013) (while the court's "class-certification analysis must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.")). Indeed, some of Plaintiff's requests are entirely duplicative of requests made in individual/merits discovery that have already been answered.

Finally, to the extent that the requests seek information regarding leads generated from any other source than www.snappyautoinsurance.com ("Snappy website"), QuoteWizard objects to the same. As Plaintiff's lead purportedly originated from the Snappy website and the majority of discovery and briefing in this case related to that website (both as to the sufficiency of the TCPA disclosures thereon and its existence/legitimacy at the time of the making of the lead), Plaintiff cannot represent consumers who consented via different websites—as there are no common issues

of fact or law capable of resolution a class-wide basis.  Unlike in other cases where a defendant engaged in a mass campaign or all disputed leads came from the same source, here, QuoteWizard purchased hundreds of thousands of leads from over 180 possible lead suppliers, necessarily arising from different websites, with different TCPA disclosure language thereon.  This case cannot be expanded beyond the Snappy website.  *See Shamblin v. Obama*, 2015 U.S. Dist. LEXIS 54849, at \*28-29 (M.D. Fla. April 27, 2015) ("[P]redominance is not satisfied based on the looming issue of consent. … [T]he evidence necessary to establish Shamblin's claim is not common to both Shamblin and all class members.  Individualized inquiries into consent (including where, how, and when) will predominate.").  *Compare Wendell H. Stone Co. v. Five Star Adver., LLC*, 2021 U.S. Dist. LEXIS 50721, at \*2, \*12 (D. Colo. March 17, 2021) (consent could be "common across the whole class" where there are "communications that were part of a mass campaign") (plaintiff alleged that "defendants faxed the same unsolicited advertisement to 40 other recipients without receiving the recipients' permission or invitation"); *Sullivan v. All Web Leads, Inc.*, 2017 U.S. Dist. LEXIS 84232, at \*24-25 (N.D. Ill. June 1, 2017) (commonality could be satisfied where putative class members "engaged in the same consent procedure that [plaintiff] did" and "gave the same consent," and issue remained about legal efficacy of that same consent); *Derrick Reaves v. Ketoro, Inc.*, 2020 U.S. Dist. LEXIS 167926, at \*28 (C.D. Cal. July 17, 2020) (classwide treatment appropriate where all texts sent "during the [same] November 2018 campaign" and form/method of consent was the same across putative class members).  Upon information and belief, RevPoint Media, LLC never sold QuoteWizard another lead that was originated on/from the Snappy website besides Plaintiff's lead, and thus there is no putative class of consumers similarly situated to Plaintiff.

This Introduction and General Objections are incorporated by reference to the extent applicable into the specific responses below, and are neither waived nor limited by the specific responses and objections. The General Objections shall be continuing as to each Request, and are not waived or limited by the specific objections. QuoteWizard's objections as set forth herein are based upon information presently known. QuoteWizard reserves the right to (a) rely on facts, documents or other evidence that may develop or subsequently come to its attention; (b) to assert objections or supplemental responses should it discover additional information or grounds for objection; and/or (c) to supplement or amend these responses at any time.

## DOCUMENT REQUESTS

1.     Please produce all records of outbound text messages provided to Quotewizard by DRIPS pursuant to this Court's prior Order.

> **RESPONSE:** QuoteWizard objects to this Request as confusing as written, overly broad, unduly burdensome, not relevant to any class issues under Fed. R. Civ. P. 23, not proportional to the needs of the case, insofar as it seeks confidential information for non-party consumers that is not relevant herein, and because the requested records are not within QuoteWizard's possession, custody, or control. In addition, QuoteWizard objects because this Request is not limited in time, scope, or to the subject matter of this case (text messages sent to consumers two or more times where the consumer is registered (validly) on the National Do Not Call Registry and QuoteWizard allegedly lacked consent to contact them – and more specifically, relating to the Snappy website – within the statute of limitations period).
>
> First, it is unclear whether the Request is seeking the text messages sent to consumers (which are not in QuoteWizard's possession, custody, or control, as Drips sent the messages), or the spreadsheet produced by Drips to QuoteWizard in this litigation for preservation purposes that reflected phone numbers texted by Drips, but did not include the content of the text messages (which QuoteWizard's counsel has been maintaining). QuoteWizard objects to both/either such requests on the above and below grounds.
>
> With respect to class issues, this Request has no bearing on or relevancy to any of the Rule 23 factors. "Generally at the pre-class certification stage, discovery in a putative class action is limited to certification issues such as the number of class members, the existence of common questions, typicality of claims, and the

representative's ability to represent the class." *Gusman v. Comcast Corp.*, 298 F.R.D. 592, 595 (S.D. Cal. 2014) (citing *Oppenheimer*, 437 U.S. at 359). Records of each and every consumer texted by Drips and/or the text messages sent to them is not relevant to any Fed. R. Civ. P. 23 factor; as noted below, QuoteWizard has identified the number of telephone numbers appearing on the Drips spreadsheet to the extent Plaintiff believes that number relevant to alleged numerosity. Moreover, the names and other PII of putative class members is not generally available in discovery prior to a class being certified. *See Dziennik*, 2006 WL 1455464, at *1.

Further, QuoteWizard objects insofar as Plaintiff is seeking information regarding third parties that exceeds the subject matter of this case. QuoteWizard's leads during the putative class period were not bought or generated from a common source, nor were the text messages sent pursuant to a single mass campaign. Plaintiff's lead was sold to QuoteWizard by RevPoint Media, LLC ("RevPoint"), which in turn had purchased it from Plural Marketing Solutions, Inc. ("Plural"), which in turn purchased it from Fenix Media ("Fenix"), which in turn claimed to have obtained it or generated it from the Snappy website. The Parties expended substantial resources in merits discovery regarding the owner and legitimacy of the Snappy website, and the TCPA disclosure language thereon, and the summary judgment briefing focused in large part on those issues and the generation of Plaintiff's lead. Consumers contacted pursuant to leads (with consent) that QuoteWizard purchased from other lead suppliers, generated from other websites, and with different TCPA disclosures in the putative class period is not relevant to, common to, or typical of Plaintiff's lead/claim or those similarly situated. In the putative class period, QuoteWizard purchased leads from over 180 possible lead suppliers. These lead suppliers in turn necessarily would have either purchased leads from or generated leads from thousands (if not hundreds of thousands) of different lead websites that necessarily have various different forms of consent language that might be contested by counsel and would require individualized inquiries into each consumer's agreement to the specific disclosure language. *See Berman v. Freedom Financial Network*, No. 20-16900 (9th Cir. 2022) (requirement to arbitrate in online webform not enforceable). Thus, pre-certification discovery into these unrelated leads that did not come from the Snappy website is not appropriate. *See Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985) (pre-certification discovery may be prohibited where plaintiff fails to advance a prima facie showing that the class requirements (i.e., numerosity, commonality, typicality and adequacy of representation) of Rule 23 are satisfied or that "discovery is likely to produce substantiation of class allegations.") (no abuse of discretion by denying pre-certification discovery where plaintiff merely cited "two other complaints filed elsewhere" by similar plaintiffs against the same defendant to demonstrate a likelihood that discovery would substantiate class allegations); *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977) ("[W]here the plaintiffs fail to make even a prima facie showing of Rule 23's prerequisites, as we find here, the burden is on the plaintiff to demonstrate that discovery measures are likely to produce persuasive information substantiating the class action allegations."); *Pizana*, 2021 U.S. Dist. LEXIS 18926, at *9-10 (prohibiting pre-certification

discovery where plaintiff failed to show why requested information concerning non-party companies "is likely to substantiate his class allegations"). *See also Fiorentine v. Sarton P.R., LLC*, 2021 U.S. Dist. LEXIS 96379, at *6 (D.P.R. May 20, 2021) (noting that precertification discovery into Rule 23 factors should be allowed "*[i]f* the complaint makes a prima facie showing that Rule 23 requirements are met or that discovery is likely to substantiate class allegations" (emphasis added)).

Plaintiff has never alleged nor presented any evidence to substantiate an allegation that QuoteWizard was sold allegedly fraudulent leads by over 180 possible lead suppliers; rather at all times this case has focused on the Snappy website. This is not a case where QuoteWizard sent the text messages pursuant to the same mass campaign or where all leads were generated from a single source or website. *See Bais Yaakov of Spring Valley v. ACT, Inc*., 12 F.4th 81, 92 (1st Cir. 2021) (affirming denial of class certification in TCPA case where individual issues of consent predominated) ("Bais Yaakov has made no argument that the court could cull from the class the consenting schools in an administratively feasible way, protective of ACT's rights. … The district court therefore reasonably determined that individual issues of permission would predominate over common questions"); *Bais Yaakov of Spring Valley v. ACT, Inc*., 328 F.R.D. 6, 13 (D. Mass. 2018) ("[D]etermining consent would not be as simple as looking for a checked box, it would be a highly individualized inquiry into Defendant's relationship with each school."). *Compare Wendell H. Stone Co.*, 2021 U.S. Dist. LEXIS 50721, at *2, *12; *Sullivan*, 2017 U.S. Dist. LEXIS 84232, at *24-25.

Thus, where there is clearly no relevancy, commonality or typicality between leads sold to QuoteWizard from over 180 possible lead suppliers and Plaintiff's lead, class discovery must necessarily be limited to leads that originated from the same source—the Snappy website. Upon information and belief, however, Plaintiff's lead was the only lead purchased by QuoteWizard from RevPoint and in turn from Plural during the putative class period that purportedly originated from the Snappy website. Plural (which worked directly with Fenix, the alleged lead generator) would have direct knowledge of this fact and QuoteWizard is amenable to working with Plaintiff's counsel, via a subpoena, deposition or otherwise, to confirm the same.

To the extent this Request is actually seeking the text messages sent to consumers by Drips, QuoteWizard also objects to this Request on the grounds that these requested records are not in QuoteWizard's possession, custody, or control, but rather they are in the exclusive possession, custody, or control of Drips, requiring a third-party subpoena from Plaintiff to Drips.[1] QuoteWizard is neither obligated

---

[1] Although the request states that the "records of outbound text messages [were] provided to Quotewizard by DRIPS pursuant to this Court's prior Order," this is not accurate to the extent the request is referring to the text messages themselves. Pursuant to a subpoena from QuoteWizard to Drips that resulted in a separate but related lawsuit, the parties entered into a voluntary

to produce nor capable of producing them. *See Ray v. FedEx Ground Package Systems, Inc.*, 2021 WL 3727143, at *1-2 (D. Mass. Aug. 23, 2021) ("Generally, the court will not order a party to produce documents when the party represents that the documents are not in his or her possession, custody, or control."). Drips does not "provide" outbound text messages to QuoteWizard in the ordinary course of business. Moreover, although QuoteWizard denies and disputes that there is any putative class beyond Plaintiff when properly limited to the Snappy website, Drips's records indicate a total of 43,166,509 rows of telephone numbers contacted by Drips, some on behalf of QuoteWizard.[2] As written, this request would force Drips, a non-party, to compile records with respect to these millions of consumers. There is no contract or other document that would require Drips to produce this staggering breadth of records to QuoteWizard such that the records are even arguably in the control of QuoteWizard, which they are not. QuoteWizard also has no knowledge of how Drips stores these messages and whether it even has accessible records to produce at all.

QuoteWizard further objects to this request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and is not relevant for class purposes. The content of the text messages themselves is not relevant to the Fed. R. Civ. P. 23 factors. In addition, Drips's records indicate a total of 43,166,509 rows of telephone numbers contacted by Drips, some on behalf of QuoteWizard. It is patently unreasonable to expect a third-party to gather and

---

agreement whereby Drips agreed to produce (1) "the underlying consumer response for up to 500 Tier 1 reports and up to 100 Tier 2 and 3 reports (for a total of up to 600 responses)" which QuoteWizard produced to Plaintiff; (2) in addition, "all consumer responses underlying disqualifications (all tiers) for the 60 days prior to May 18, 2021," which QuoteWizard produced to Plaintiff; (3) in addition, "[f]or preservation purposes only, Drips will undertake to produce to QuoteWizard a list of all phone numbers texted for QuoteWizard on each date during the class period date range specified by the Mantha and QuoteWizard," which such records QuoteWizard is preserving in the event required to be produced; and (4) Drips "supplied Plaintiff and QuoteWizard with a list of all aggregators used to send text messages on behalf of QuoteWizard." *See Drips Holdings, LLC v. QuoteWizard.com LLC*, No. 1:21-mc-91266-LTS (D. Mass.), Docket No. 37, pp. 2-4. Drips neither agreed to produce nor produced text messages. *See id.* Plaintiff agreed to "seek additional information *from Drips* … to the extent they determine that additional information is necessary to their claims … as discovery develops." *Id.*, p. 5 (emphasis added).

[2] Drips's spreadsheet of telephone numbers contacted during the putative class period purported also to include numbers it texted dating back to 2016 on behalf of Bantam Connect, LLC *before* QuoteWizard acquired Bantam. These messages were therefore not sent on behalf of QuoteWizard. The earliest date that Drips could have been texting consumers on behalf of QuoteWizard was January 1, 2018, when QuoteWizard acquired Bantam. QuoteWizard is not and cannot be liable for any text messages sent by Drips on behalf of Bantam. *See, e.g., Zean v. SelectQuote Ins. Servs.*, 2022 U.S. Dist. LEXIS 6978, at *10 (D. Minn. Jan. 13, 2022) (defendant could not be legally responsible under TCPA for calls made by a separate entity on a date before defendant acquired that entity).

produce text messages sent to this many consumers, particularly when the text messages themselves have no independent relevancy and Plaintiff cannot represent these consumers who are not similarly situated.

Pursuant to the foregoing objections, to the extent this request seeks the text messages sent to consumers by Drips during the putative class period, QuoteWizard has no documents within its possession, custody, or control to produce, and otherwise reserves and maintains all objections herein.  To the extent the request is requesting the Drips spreadsheet produced to QuoteWizard during this case by agreement, QuoteWizard objects to the same based on the foregoing objections, and no documents will be produced pursuant to that request.

2.      Please produce all records of outbound text messages made by Quotewizard

on the DRIPS system during the putative class period.

**RESPONSE:**  QuoteWizard objects to this Request as confusing as written, as it is not clear what "made … on the DRIPS system" means.  QuoteWizard does not have access to "make" or send messages to consumers on Drips's systems.  QuoteWizard further objects to this Request on the grounds that the requested records are not in the possession, custody, or control of QuoteWizard, as Drips has sole possession, custody, and control of its records except for the limited category of documents it has produced during this case by agreement (*see* FN1 herein).  Further, the request is unduly burdensome, overly broad, not proportional to the needs of the case, is not relevant to any of the Fed. R. Civ. P. 23 factors or to liability, and also impermissibly seeks confidential PII of non-party consumers.  QuoteWizard refers Plaintiff to, and incorporates herein, its objections to Request No. 1.

Pursuant to these objections, QuoteWizard has no documents within its possession, custody, or control to produce for Request No. 2, and otherwise maintains and preserves its objections.

3.      With respect to any documents produced in response to Request Nos. 1 or 2, any

documents that evidence that the telephone numbers contacted were associated with a business.

**RESPONSE:**   QuoteWizard refers Plaintiff to and incorporates herein its objections to Requests No. 1 and 2.  To the extent these requests relate to text messages sent to consumers, as noted in these objections, QuoteWizard has no records in its possession, custody, or control for Requests Nos. 1 and 2, and therefore also does not have records in its possession, custody, or control responsive to Request No. 3.  To the extent Requests Nos. 1 and 2 related to the Drips spreadsheet produced during this case, QuoteWizard incorporates herein all of its other objections to Requests Nos. 1 and 2.

Specifically, QuoteWizard also objects to this Request as unduly burdensome, overly broad, not proportional to the needs of the case, and on the basis that it seeks confidential non-party consumer PII.  Even if QuoteWizard had copies of the outbound text messages sent to all non-party consumers in its possession, custody, or control, which it does not, or if this request relates to the identity of all non-party consumers contacted by Drips, whether each consumer was contacted on a business versus residential number or not presents an extremely individualized and time-consuming inquiry not appropriate for class discovery or certification.  There is no way to determine on a class-wide basis whether a particular number is business or otherwise without inquiring into each consumer's number. The Drips spreadsheet reflects 43,166,509 rows of telephone numbers.  Determining which of these numbers were residential versus non-residential at the time they were contacted, in addition to whether they were registered on the National Do Not Call Registry and received two or more telephone solicitations (elements of Plaintiff's claim) would be an individualized task not appropriate of resolution on a class-wide basis.

Pursuant to these objections, QuoteWizard does not have any records in its possession, custody, or control to produce for Request No. 3 if relating to text messages sent, and if relating to all consumers contacted by Drips during the class period, QuoteWizard produces no documents pursuant to its foregoing objections.

4.      With respect to any documents produced in response to Request Nos. 1 or

2, any documents that evidence that the telephone numbers contacted were not registered

to a residential service.

**RESPONSE:**    QuoteWizard refers Plaintiff to and incorporates herein its objections to Requests Nos. 1, 2, and 3.  To the extent these requests relate to text messages sent to consumers, as noted in these objections, QuoteWizard has no records in its possession, custody, or control for Requests Nos. 1 and 2, and therefore also does not have records in its possession, custody, or control responsive to Request No. 4.   To the extent Requests Nos. 1 and 2 related to the Drips spreadsheet produced during this case, QuoteWizard incorporates herein all of its other objections to Requests Nos. 1, 2, and 3. Specifically, QuoteWizard also objects to this Request as unduly burdensome, overly broad, not proportional to the needs of the case, and on the basis that it seeks confidential non-party consumer PII.

Pursuant to these objections, QuoteWizard does not have any records in its possession, custody, or control to produce for Request No. 4 if relating to text messages sent, and if relating to all consumers contacted by Drips during the class period, QuoteWizard produces no documents pursuant to its objections.

5.     With respect to any documents produced in response to Request Nos. 1 or 2, any

documents that evidence the name and address of the call recipient.

> **RESPONSE:**    QuoteWizard refers Plaintiff to and incorporates herein its
> objections to Requests No. 1 and 2.  To the extent these requests relate to text
> messages sent to consumers, as noted in these objections, QuoteWizard has no
> records in its possession, custody, or control for Requests Nos. 1 and 2, and
> therefore also does not have records in its possession, custody, or control responsive
> to Request No. 5.  To the extent Requests Nos. 1 and 2 related to the Drips
> spreadsheet produced during this case, QuoteWizard incorporates herein all of its
> other objections to Requests Nos. 1 and 2.  Specifically, QuoteWizard also objects
> to this Request as beyond the scope of class discovery and not relevant to the Rule
> 23 factors, unduly burdensome, overly broad, not proportional to the needs of the
> case, and on the basis that it seeks confidential non-party consumer PII.  The names
> and other PII of putative class members is not generally available in discovery prior
> to a class being certified.  *See Dziennik*, 2006 WL 1455464, at *1. In addition, in
> the Parties' agreement in the Drips lawsuit, QuoteWizard noted that it would not
> produce consumer names or PII for any class records it produced; Plaintiff did not
> object or reserve the right to seek the same.  *See Drips Holdings, LLC v.
> QuoteWizard.com LLC*, No. 1:21-mc-91266-LTS (D. Mass.), Docket No. 37.
>
> Pursuant to these objections, QuoteWizard does not have any records in its
> possession, custody, or control to produce for Request No. 5 if relating to text
> messages sent, and if relating to all consumers contacted by Drips during the class
> period, QuoteWizard produces no documents pursuant to its foregoing objections.

6.     With respect to any documents produced in response to Request Nos. 1 or 2, any

documents that evidence any consent or permission for Quotewizard to contact the call recipient.

> **RESPONSE:**    QuoteWizard refers Plaintiff to and incorporates herein its
> objections to Requests Nos. 1, 2, and 3.  To the extent these requests relate to text
> messages sent to consumers, as noted in these objections, QuoteWizard has no
> records in its possession, custody, or control for Requests Nos. 1 and 2, and
> therefore also does not have records in its possession, custody, or control responsive
> to Request No. 6.  To the extent Requests Nos. 1 and 2 related to the Drips
> spreadsheet produced during this case, QuoteWizard incorporates herein all of its
> other objections to Requests Nos. 1 and 2.  Specifically, QuoteWizard also objects
> to this Request as unduly burdensome, overly broad, not proportional to the needs of
> the case, on the basis that it seeks confidential non-party consumer PII, and
> because consumers contacted for leads sold to QuoteWizard by a possible of 180
> other lead suppliers and generated from different websites than the Snappy website
> have no relevancy to, commonality with or typicality to Plaintiff's claim and are
> not discoverable. Moreover, QuoteWizard notes that Drips's records reflect
> 43,166,509 rows of telephone numbers contacted in the records it sent to

QuoteWizard pursuant to the parties' agreement. It is patently unreasonable to expect QuoteWizard to gather, at all much less within the timeframe provided for responses, "documents that evidence any consent or permission for Quotewizard to contact the call recipient" for 43,166,509 rows of telephone numbers. Further, consent for each consumer is a highly individualized inquiry. It would involve inquiring into the chain of the lead, from where the lead was generated, the TCPA disclosure language on the lead generation website, whether consent was revoked, etc. This is not appropriate for resolution on a purported class-wide basis, notwithstanding that (upon information and belief) there is no putative class beyond Plaintiff for the Snappy website.

QuoteWizard further objects on the basis that at least some of the requested "consent" documents are not in its possession, custody, or control. For example, QuoteWizard's lead suppliers, not QuoteWizard, would be in possession, custody, or control of certain information for each lead, including the lead generation website. In addition, for each lead, the lead verification information, such as visual playbacks and lead verification reports, are in the possession, custody, or control of Jornaya/Lead Intelligence Inc. or TrustedForm/Active Prospect, Inc., not QuoteWizard.

Pursuant to these objections, QuoteWizard does not have any records in its possession, custody, or control to produce for Request No. 6 if Request No. 1 relates to text messages sent, and if Request No. 1 relates to all consumers contacted by Drips during the class period, QuoteWizard produces no documents pursuant to its foregoing objections.

7.    With respect to any documents previously produced in the case that contain the name or telephone numbers of putative class members that were redacted, please produce unredacted versions of those documents.

**RESPONSE:** QuoteWizard objects to this Request as not relevant to any issue in class discovery. The names and other PII of consumers (or even putative class members) is not generally available in discovery prior to a class being certified. *See Dziennik*, 2006 WL 1455464, at *1; *Bray v. Santander Bank, N.A.*, 2021 WL 2349375, at *1, *6 (D. Conn. June 3, 2021) (bank customers' personal identifying information "not necessary at this pre-certification stage."); *Deibler v. SanMedica International, LLC*, 2021 WL 6198062, at *11 (D.N.J. Dec. 30, 2021) (denying motion to compel putative class members' personal identifying information as not relevant at pre-certification stage); *Mandrigues v. World Savings, Inc*., 2008 WL 11388759, at *1, *2 (N.D. Cal. June 20, 2008) (where plaintiff sought the names, addresses, and telephone numbers of putative class action plaintiffs before the class was certified, court denied motion to compel) ("[R]eleasing the names, addresses, and telephone numbers of the putative class members will not help plaintiffs meet their burden of demonstrating that class certification is proper."); *Bird Hotel Corp.*

*v. Super 8 Motels, Inc.*, 2007 WL 404703, at *1 (D.S.D. Feb. 1, 2007) (refusing to allow pre-certification discovery into identity and personal information of potential class members); *Robbins v. NCO Financial Systems, Inc.*, 2006 WL 3833352, at *1 (N.D. Ind. Dec. 12, 2006) (number of putative class members relevant, but their personal information/identity is not relevant to pre-certification discovery).

Nor has Plaintiff identified a single reason why consumers' names or contact information is relevant to any class issue herein—particularly where none of the "documents previously produced in the case that contain the name or telephone numbers of putative class members" were even limited/restricted to actual putative class members based on Plaintiff's remaining claim (consumers registered on the National Do Not Call Registry with residential numbers who were contacted two or more times with telephone solicitations and did not consent to the same). Records of consumers whom Drips texted or who responded to Drips (for example, consumers who made DNC requests) go far beyond even the broadest of possible class definitions, and Plaintiff is not entitled to a fishing expedition into their names and identities for improper purposes.

In addition, in the Parties' agreement in the Drips lawsuit, QuoteWizard noted that it would not produce consumer names or PII for any class records it produced; Plaintiff did not object or reserve the right to seek the same. *See Drips Holdings, LLC v. QuoteWizard.com LLC*, No. 1:21-mc-91266-LTS (D. Mass.), Docket No. 37. Pursuant to these objections, no records are being produced in response to Request No. 7.

8.    All documents supporting the factual basis for any affirmative defense asserted.

**RESPONSE:**    QuoteWizard objects to this request as overly broad, unduly burdensome, vague, not proportional to the needs of the case, not relevant to class discovery, and duplicative of individual discovery that has already been taken and completed. QuoteWizard has pleaded thirty-two (32) affirmative defenses in its Answer to the First Amended Complaint, and as such this overly broad and vague request is impossible to answer. QuoteWizard further objects on the ground that the Request purports to seek in part documents protected by the attorney-client and work product privileges. Further, the requested documents have no apparent connection to or bearing on the class issues under Rule 23. *See Pizana*, 2021 U.S. Dist. LEXIS 18926, at *9-10. *See also Gusman*, 298 F.R.D. at 595.

Moreover, this request is duplicative of at least one request already made in individual/merits discovery—namely, Request No. 1 in Plaintiff's third set of document requests ("Produce all documents relating to, supporting or contradicting any affirmative defense(s) you claim in regard to this litigation."). Because QuoteWizard has already responded to this request, QuoteWizard refers Plaintiff to its prior response.

13

9.    All documents you intend to rely on to support any Safe Harbor defense under the TCPA.

**RESPONSE:**  QuoteWizard objects to this Request on the ground that it purports to seek in part documents protected by the attorney-client privilege and work product doctrine.  QuoteWizard further objects on the ground that the Request for "[a]ll documents" is overly broad, unduly burdensome, and not proportional to the needs of the case.  Further objecting, this Request is not related in any way to class discovery.  *See Gusman*, 298 F.R.D. at 595.

In addition, QuoteWizard objects on the basis that this Request is duplicative of at least one prior request for documents made by Plaintiff in merits discovery.  In Plaintiff's third set of document requests, Plaintiff requested (as No. 2) "If you claim a 'safe harbor' defense, produce all documents relating to, supporting or contradicting such a claim."  Because QuoteWizard has already responded to this request, QuoteWizard refers Plaintiff to its prior response.

10.    Please produce all documents related to policies for compliance with the TCPA or the FCC's regulations thereunder and all documents necessary to construct a timeline of when each policy was in force. This request specifically includes, but is not limited to, policies related to the following:

a)  compliance with the TCPA, including, but not limited to the rules, regulations, opinions, advisories, comments or filings of the Federal Communications Commission that relate to the TCPA or 47 C.F.R. § 64.1200;

b)  obtaining or verifying prior express consent;

c)  complying with E-SIGN Act, 15 U.S.C. §§ 7001 *et seq.*

**RESPONSE:**  QuoteWizard objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case.  QuoteWizard also objects to this Request on the ground that it purports to seek in part documents protected by the attorney-client privilege and work product doctrine. There is no claim in the litigation that relates at all to QuoteWizard's policies.  QuoteWizard also objects on the basis that it is not required to show policies to comply with the E-Sign Act and such request is not relevant herein.

In addition, QuoteWizard objects on the basis that the requested documents have no apparent connection to or bearing on the class issues under Rule 23. *See Pizana*, 2021 U.S. Dist. LEXIS 18926, at *9-10. *See also Gusman*, 298 F.R.D. at 595.

QuoteWizard notes that Plaintiff has already made requests at least partially if not completely duplicative of this request in individual/merits discovery—for example, Request No. 3 in Plaintiff's third set of requests ("Produce all documents evidencing your Do Not Call policy in effect as of the time of the texts at issue"), Request No. 4 in the same set ("If you claim to have implemented reasonable practices and procedures to prevent telephone solicitations in violation of the TCPA, produce all documents relating to, supporting or contradicting such claim"), and Requests No. 11-12 in Plaintiff's first set of requests. Because QuoteWizard has already responded to this request, QuoteWizard refers Plaintiff to its prior responses. Subject to and notwithstanding these objections, QuoteWizard also refers Plaintiff to documents it already produced in merits discovery, such as a copy of its Do Not Call Policy.

11.    All communications with any third party concerning this litigation.

**RESPONSE:**    QuoteWizard objects to this request as overly broad, unduly burdensome, not proportional to the needs of the case, not relevant to any class issue under Fed. R. Civ. P. 23, and on the ground that it seeks documents protected by the attorney-client privilege and work product doctrine. "Generally at the pre-class certification stage, discovery in a putative class action is limited to certification issues such as the number of class members, the existence of common questions, typicality of claims, and the representative's ability to represent the class." *Gusman*, 298 F.R.D. at 595. This Request has no apparent bearing on any of the Rule 23 factors.

In addition, QuoteWizard objects on the basis that this Request is duplicative of at least <u>two</u> prior requests for documents made by Plaintiff in merits discovery. In Plaintiff's first set of document requests, Plaintiff requested (as No. 10) "all correspondence with anyone other than your counsel in any way relating to this litigation or to the Plaintiff." In Plaintiff's second set of document requests, Plaintiff again requested (as No. 11) "all documents and communications between You and any third party relating to the Plaintiff." Because QuoteWizard has already responded to this request, QuoteWizard refers Plaintiff to its prior responses.

12.    To the extent Defendant asserts that it, or a vendor on its behalf, obtained consent or permission to contact Plaintiff or putative class members based on a visit to a website, produce documents that identify those website(s) and the specific page(s) on those website(s) that you claim constitute consent or permission.

**RESPONSE:** QuoteWizard refers Plaintiff to and incorporates herein its objections to Requests No. 1 and 2. Specifically, QuoteWizard objects to this Request as unduly burdensome, overly broad, not proportional to the needs of the case, and because consumers contacted for leads sold to QuoteWizard by a possible 180 other lead suppliers and generated from different websites than the Snappy website have no relevancy to, commonality with or typicality to Plaintiff's claim and are not discoverable. Moreover, QuoteWizard notes that Drips's records reflect 43,166,509 rows of telephone numbers contacted in the records it sent to QuoteWizard pursuant to the parties' agreement. It is patently unreasonable to expect QuoteWizard to gather, at all much less within the timeframe provided for responses, the requested documents. Further, consent for each consumer is a highly individualized inquiry. This is not appropriate for resolution on a purported class-wide basis, notwithstanding that (upon information and belief) there is no putative class beyond Plaintiff for the Snappy website. Objecting further, QuoteWizard states that the requested records are not in the possession, custody, or control of QuoteWizard. QuoteWizard purchased leads from its lead suppliers and, in most cases, has no knowledge of where the leads were generated, and QuoteWizard does not own or maintain the lead generation websites. This information would only be in the possession, custody, or control of its lead suppliers or the companies from whom the lead suppliers in turn bought those leads. Pursuant to these objections, no documents are being produced.

13.     For any website identified in response to the prior request, produce all access logs and error logs during the day you assert that Plaintiff or putative class members visited that website.

**RESPONSE:** QuoteWizard refers Plaintiff to and incorporates herein its objections to Requests Nos. 1 and 12. Pursuant to these objections, no documents are being produced in response to Request No. 13.

14.     For each website identified in response to Request No. 12, all documents sufficient to identify any vendor or third party used for visitor traffic reporting. This includes any companies performing search engine optimization or internet marketing consultants.

**RESPONSE:** QuoteWizard refers Plaintiff to and incorporates herein its objections to Requests Nos. 1 and 12. Pursuant to these objections, no documents are being produced in response to Request No. 14.

15.     All web logs for any website identified in response to Request No. 12, including the following information for each such website: IP Address, Location, Date and Time stamps, User Agent (including but not limited to user browser and operating system), Requested URL, Referring URL, Request Type (i.e. POST, GET), Response Code, and Status.

**RESPONSE:** QuoteWizard refers Plaintiff to and incorporates herein its objections to Requests Nos. 1 and 12. Pursuant to these objections, no documents are being produced in response to Request No. 15.

16.     All lists of any leads, telephone numbers, or other information you obtained from Plural Marketing Solutions, Inc. that were sent text messages on the DRIPS system.

**RESPONSE:**  QuoteWizard objects to this Request insofar as it seeks consumer names and PII.  The names and other PII of putative class members is not generally available in discovery prior to a class being certified.  *See Dziennik*, 2006 WL 1455464, at *1.

This request also seeks records in the possession, custody, or control of Plural rather than QuoteWizard.  QuoteWizard does not maintain separate, discrete lead lists for each lead supplier it works with in a format that could be produced, but would have to compile the same, which the Federal Rules of Civil Procedure do not require. Further objecting, the request is beyond the time, scope, and subject matter of this case, as it is not limited to consumers solicited two or more times within the limitations period and whose numbers were validly registered on the National Do Not Call Registry.  In addition, Plural did not provide any leads directly to QuoteWizard, thus QuoteWizard has no responsive documents for that category of documents.  Pursuant to the foregoing objections, no documents are being produced.

17.     All lists of any leads, telephone numbers, or other information you obtained from RevPoint Media, LLC that were sent text messages on the DRIPS system.

**RESPONSE:**  QuoteWizard objects to this Request insofar as it seeks consumer names and PII.  The names and other PII of putative class members is not generally available in discovery prior to a class being certified.  *See Dziennik*, 2006 WL 1455464, at *1. In addition, in the Parties' agreement in the Drips lawsuit, QuoteWizard noted that it would not produce consumer names or PII for any class records it produced; Plaintiff did not object or reserve the right to seek the same. *See Drips Holdings, LLC v. QuoteWizard.com LLC*, No. 1:21-mc-91266-LTS (D. Mass.), Docket No. 37.  The request also seeks records in the possession, custody, or control of RevPoint rather than QuoteWizard.  QuoteWizard does not maintain

separate, discrete lead lists for each lead supplier it works with in a format that could be produced, but would have to compile the same, which the Federal Rules of Civil Procedure do not require. Further objecting, the request is beyond the time, scope, and subject matter of this case, as it is not limited to consumers solicited two or more times within the limitations period and whose numbers were validly registered on the National Do Not Call Registry, and where the leads came from the Snappy website. Pursuant to these objections, no documents are being produced.

18.    All lists of any leads, telephone numbers, or other information you obtained

as a result of any visits to www.snappyautoinsurance.com that were sent text messages on

the DRIPS system.

**RESPONSE:** QuoteWizard objects to this Request as confusing and unintelligible as written, as it is unclear what Plaintiff means by "you obtained as a result of any visits to www.snappyautoinsurance.com." Subject to this objection, and assuming that Plaintiff means any leads sold to QuoteWizard that were generated or purportedly generated on the Snappy website, QuoteWizard states that Plaintiff's lead is the only lead, of which it is aware, sold to it that was generated/purportedly generated on the Snappy website. QuoteWizard has already provided all discoverable documents in its possession, custody, or control concerning Plaintiff's lead. It has no other responsive documents.

19.    All "conversational messaging" technology scripts that were sent on the

DRIPS system.

**RESPONSE:** QuoteWizard objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, not relevant to any class discover issues, and beyond the scope of class discovery that has been bifurcated from merits discovery. QuoteWizard further objects to this Request on the ground that it purports to seek documents outside of its possession, custody, or control. Drips's scripts sent on the Drips systems are in the possession, custody, or control of Drips. QuoteWizard also refers Plaintiff to and incorporates herein its objections to Request No. 1. Pursuant to the forgoing, QuoteWizard has no responsive documents in its possession, custody, or control.

20.    All Journaya IDs and associated documents for any numbers that were sent

outbound text messages provided in response to Request Nos. 1 or 2.

**RESPONSE:** QuoteWizard objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and on the ground that it seeks confidential non-party consumer PII. QuoteWizard further objects to this

Request on the ground that it purports to seek documents outside of its possession, custody, or control, as QuoteWizard does not maintain or have access to Jornaya's information and records, beyond the LeadiD assigned to a particular consumer lead. QuoteWizard refers Plaintiff to its objections to Request No. 1 and incorporates them in full herein.

Drips' records reflect 43,166,509 telephone numbers contacted in the records it sent to QuoteWizard pursuant to the parties' agreement. It is patently unreasonable to expect QuoteWizard to gather Jornaya information for 43,166,509 numbers, notwithstanding that Jornaya's records are not in the possession, custody, or control of QuoteWizard. This would be a highly individualized, specific inquiry for each consumer. Pursuant to the foregoing objections, QuoteWizard will not produce any documents in response to this Request.

21.    All lists of any purported consent language listed on any websites for individuals

that were sent text messages on the DRIPS system by QuoteWizard.

**RESPONSE:**  QuoteWizard objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case. QuoteWizard further objects to this Request on the ground that it purports to seek documents outside of its possession, custody, or control, as QuoteWizard does not maintain lead generation websites or have this information. QuoteWizard refers Plaintiff to its objections to Requests Nos. 1 and 12 and incorporates them in full herein.

QuoteWizard notes that Drips' records reflect 43,166,509 telephone numbers contacted in the records it sent to QuoteWizard pursuant to the parties' agreement. It is patently unreasonable to expect QuoteWizard to gather the website name and the consent language on the website at the time the subject lead was made for 43,166,509 numbers. This is a highly individualized, specific inquiry for each consumer. For leads texted by Drips in the putative class period, QuoteWizard has identified over 180 possible lead suppliers, which such leads were likely generated from thousands of different websites. QuoteWizard does not own or operate those lead websites and does not possess the consent language on those websites. This information would solely be in the possession of the lead suppliers/generators. Subject to the foregoing objections, QuoteWizard will not produce any documents in response to Request No. 21.

22.    Documents that evidence that QuoteWizard subscribed to the National Do Not Call

Registry during the putative class period.

**RESPONSE:**  QuoteWizard objects to this request as overly broad, unduly burdensome, not limited in time or scope, not relevant to any class discovery issues, and because it seeks in part documents protected by the attorney-client privilege and work product doctrine.

With respect to class discovery, "[g]enerally at the pre-class certification stage, discovery in a putative class action is limited to certification issues such as the number of class members, the existence of common questions, typicality of claims, and the representative's ability to represent the class." *Gusman,* 298 F.R.D. at 595. This request has no relevancy to any class issue. Moreover, because merits/individual discovery and class discovery was bifurcated, the time for Plaintiff to seek such merits-related documents has passed. *See Pizana*, 2021 U.S. Dist. LEXIS 18926, at \*9-10. Subject to and notwithstanding these objections, QuoteWizard notes that it has no documents responsive to this request, and otherwise maintains and preserves all objections.

23.    Documents that evidence that QuoteWizard utilized an Internal Do Not Call

list, as well as a copy of that Internal Do Not Call list.

**RESPONSE:**    QuoteWizard objects to this request as overly broad, unduly burdensome, not limited in time or scope, not relevant to any class discovery issues, on the basis that it seeks confidential PII of non-party consumers, and because it seeks in part documents protected by the attorney-client privilege and work product doctrine.

With respect to class discovery, "[g]enerally at the pre-class certification stage, discovery in a putative class action is limited to certification issues such as the number of class members, the existence of common questions, typicality of claims, and the representative's ability to represent the class." *Gusman*, 298 F.R.D. at 595. This request has no relevancy to any class issue. Moreover, because merits/individual discovery and class discovery was bifurcated, the time for Plaintiff to seek such merits-related documents has passed. *See Pizana*, 2021 U.S. Dist. LEXIS 18926, at \*9-10. These requested documents have also no relevancy to Plaintiff's claim (or class discovery), as Plaintiff was not on an internal do not call list when he was contacted. Whether or not other non-party consumers were on an internal call list is not an issue relevant to individual or class discovery.

Further objecting, QuoteWizard's internal do not call list is stored in a secure electronic database that is constantly updated. The electronic database is not in a form that could be easily produced, rather QuoteWizard would have to compile and create records in a format that could be shared externally based on a particular date range. The Federal Rules of Civil Procedure do not require a party to create a document, especially where such process would be time-consuming. *See In re Symbol Techs., Inc. Sec. Litig.*, 2017 U.S. Dist. LEXIS 50530, at \*39 (E.D.N.Y. March 31, 2017) ("[T]he information sought by Defendants … is not presently memorialized in any tangible medium that could be turned over to Defendants. To the contrary, such information would need to be 'created' in documentary form. However, in general, a party is not required to create documents responsive to another party's request."); *see also Universal Acupuncture Pain Servs., P.C. v.*

*State Farm Mut. Auto. Ins. Co.*, 2002 U.S. Dist. LEXIS 19555, 2002 WL 31309232, at \*4 (S.D.N.Y. Oct. 15, 2002) ("It is well-established . . . that courts may not compel the creation of documents to comply with a discovery demand.").

Finally, QuoteWizard notes that this request is largely duplicative of information that Plaintiff has already received from Drips pursuant to the parties' agreement in the related litigation, namely, do not call requests that consumers sent to Drips after Drips contacted them on QuoteWizard's behalf.  Plaintiff has received, by agreement, a significant number of these DNC requests as summarized above.  Plaintiff has no apparent need for even additional such requests.

Pursuant to these objections, no documents are being produced.  Subject to the foregoing objections, QuoteWizard refers Plaintiff to a copy of its Do Not Call List already produced in discovery.

Respectfully Submitted,

QuoteWizard.com, LLC,
By its attorneys,

*/s/ Kevin P. Polansky*
Kevin P. Polansky (BBO #667229)
kevin.polansky@nelsonmullins.com
Christine M. Kingston (BBO #682962)
christine.kingston@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
One Financial Center, Suite 3500
Boston, MA 02109
(t) (617)-217-4700
Dated: April 18, 2022                                          (f) (617) 217-4710

## CERTIFICATE OF SERVICE

I, the undersigned, of the law offices of Nelson Mullins Riley and Scarborough LLP, attorneys for Defendant QuoteWizard.com, LLC, do hereby certify that I have served all counsel of record with copies of the below listed documents by electronic mail on this 18th day of April 2022:

Documents: QuoteWizard's Responses to Plaintiff's Fourth Set of Requests for Production of Documents

*/s/ Kevin P. Polansky*
Kevin P. Polansky

21