IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH MANTHA on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>QUOTEWIZARD.COM, LLC<br><br>Defendant. | Case No. 1:19-cv-12235-LTS-PK |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

**ARGUMENT SUMMARY**

The exact class action claim alleged here—for violations of the Telephone Consumer Protection Act's do-not-call registry provisions, 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(f)—was certified, tried, and brought to final judgment in *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 676 (2019). As the Fourth Circuit stated in affirming the class action judgment:

> The private right of action in § 227(c)(5) offers many advantages for class-wide adjudication. It requires a plaintiff to initially show two things: a number on the Do-Not-Call registry, and two calls made to that number in a year. The damages, moreover, can be set at any amount up to $500 without any actual proof of loss. Other relevant issues, such as the existence of a business relationship between the solicitor and the recipient of the call, are likely to be proven by records kept by the defendant company. The problems that so often plague class actions under Rule 23(b)(3) are wholly absent from this scheme.

*Id.* at 655.[1]

---

[1] Many other courts have recognized the appropriateness of class certification in TCPA cases. *See, e.g.*, *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("Class certification

1

Here, using the same expert methodology used in *Krakauer* to identify allegedly violative calls and class members, the same expert witness, and even the same class counsel, Plaintiff proposes to certify a class that will allow a jury to decide — up or down, and consistent with due process — over 300,000 claims, all in a single proceeding before a single jury of this Court.

Class violations can be proven through common evidence that every call was made by or for Defendant QuoteWizard to residential numbers on the national DNC registry at least twice in a 12-month period—the elements of the claim. Damages require no proof of actual loss and can be determined class-wide by a jury. 47 U.S.C. § 227(c)(5)(B). And the Court can decide based on evidence presented at trial whether any violations were willful or knowing, and therefore subject to trebling. *Id.* § 227(c)(5)(C).

This action meets all Rule 23(a) and (b)(3) certification requirements. As in *Krakauer,* the class is objectively defined and ascertainable—persons holding the telephone numbers that received the unlawful calls. The class is sufficiently numerous (calls were made to more than 66,000 telephone numbers); the class representative's claim is the same as all class members; Plaintiff and counsel are adequate to represent the class; and common questions—did the class calls violate the DNC provisions; did class members receive the calls; were the class calls made

---

is normal under § 227, because the main questions . . . are common to all recipients."); *Vance v. DirecTV, LLC*, No. 5:17-cv-179, 2022 WL 3044653, at *3 (N.D.W. Va. Aug. 1, 2022) (recognizing that "TCPA claims [are] amenable to class action resolution"); *Thrower v. Citizens Disability, LLC*, Civ. No. 20-10285, 2022 WL 3754737, at *3 (D. Mass. Aug. 30, 2022) (explaining that "by alleging that they received the same types of calls as other class members, and that they were unlawfully harmed in the same way," TCPA plaintiffs satisfied Rule 23's certification requirements); *Clough v. Revenue Frontier, LLC*, No. 17-cv-411, 2019 WL 2527300, at *6 (D.N.H. June 19, 2019) (granting class certification because "every element of the class's TCPA claim is susceptible to classwide proof"); *Sparkle Hill, Inc. v. Interstate Mat Corp.*, Civ. No. 11-10271, 2012 WL 6589258, at *2 (D. Mass. Dec. 18, 2012) (certifying proposed TCPA class because of "common contentions dispositive of all the class members' claims").

by or for QuoteWizard; did QuoteWizard have consent to make the calls—can be answered through classwide evidence, and predominate over individual questions. And resolution through class certification is far superior to individual resolution. In fact, given the low individual penalties (up to $500, 47 U.S.C. § 227(c)(5)(B)), the TCPA's cause of action is particularly appropriate for certification: "Since few individuals would have an incentive to bring suit, no matter how frustrated they were with the intrusion on their privacy, the TCPA opted for a model that allows for resolution of issues without extensive individual complications." *Krakauer*, 925 F.3d at 656.

While the claims are yet to be proven, Plaintiff submits that discovery has revealed massive disregard for the TCPA by QuoteWizard. QuoteWizard purchased millions of sales leads from dozens of lead generators, which had in turn obtained leads from thousands of unknown sources, and QuoteWizard did nothing to confirm that the consumer targets of those leads actually consented to receive its text messages. QuoteWizard should be brought to stand trial for meaningful damages; only through class certification will this outcome be achieved.

## I.  Factual Background

### A.  Legal claims and procedural history

Rutland, Massachusetts resident Joseph Mantha has listed his personal cellular phone number on the National Do Not Call Registry for more than fifteen years. Nonetheless, on August 9, 2019, Mr. Mantha received an unsolicited text message from an unknown sender promoting the sale of auto insurance. *See* Exhibit 1, Compilation of Mantha Text Messages. Thereafter, the unknown sender bombarded Mr. Mantha with two more text messages on August 9, two on August 12, two on August 13, ten on August 19 (when the sender finally revealed itself as QuoteWizard), and three on August 23, for a total of 20 text messages in a two-week span. *Id.*

The sender, Defendant QuoteWizard, is owned by NASDAQ-traded LendingTree, Inc., and relies heavily on telemarketing to sell insurance to consumers.

Because he did not consent to receive these messages and had no relationship with QuoteWizard, Mr. Mantha instituted this putative class action—his first lawsuit of any kind—alleging violations of the consumer privacy protections of the TCPA. ECF No. 80, at ¶¶ 79-81. On behalf of a putative class, Mr. Mantha alleges a single count: that, by sending more than one call in a 12-month period to a residential telephone number listed on the National Do Not Call Registry without express written consent, QuoteWizard violated the TCPA's do-not-call registry provisions. *See* 47 U.S.C. § 227(c)(5) ("[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity" in violation of TCPA regulations may bring an action to recover up to $500 for each violation, which the Court can treble if the violations are knowing or willful); 47 C.F.R. § 64.1200(c)(2) ("No person or entity shall initiate any telephone solicitation to . . . a residential telephone subscriber who has registered his or her telephone call on the national do-not-call registry of persons who do not wish to receive telephone solicitations[.]"). *See generally Krakauer,* 925 F.3d at 650 ("This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace.").

This case has proceeded under a bifurcated discovery schedule, where Mr. Mantha's individual claims were litigated before commencing class action discovery. ECF No. 39. At the end of the first phase, the parties filed cross-motions for summary judgment. *See* ECF Nos. 201,

205. In her December 3, 2021 Report and Recommendation, Magistrate Judge Kelley recommended denial of QuoteWizard's motion, concluding that (1) the TCPA's do-not-call provisions apply to DNC-registered cell phone numbers like Mr. Mantha's; (2) Mr. Mantha's cell phone was used as a residential telephone line, such that it falls within the scope of the TCPA's protections; (3) Mr. Mantha has Article III standing to bring the action; (4) QuoteWizard's text messages were "solicitations" under TCPA, 47 U.S.C. § 227(a)(4); and (5) QuoteWizard's argument that it relied in good faith on its lead generator's promises that the leads were compliant did not exculpate the Defendant from liability. *See* ECF No. 258.

Judge Kelley also recommended granting Mr. Mantha's cross-motion for partial summary judgment, finding that QuoteWizard's online "consent form" was not TCPA compliant, and provided no mechanism for him to "opt out" of telemarketing messages, as the TCPA and the E-Sign Act regulations require. *See* ECF No. 258 (citing 47 C.F.R. § 64.1200(f)(9)).

This Court approved and adopted Judge Kelley's Report. ECF No. 268. It is therefore no longer disputed that Mr. Mantha received QuoteWizard telemarketing texts on his DNC-listed residential phone line that he did not consent to receive.

### B. After prevailing on summary judgment, Plaintiff obtained and analyzed voluminous call records to establish a class list.

Following these rulings, the parties commenced a discovery phase aimed at obtaining records of QuoteWizard calls to identify potential class members who, just like Mr. Mantha, received unwanted calls. Plaintiff first subpoenaed Drips, LLC, the company whose communication systems the Defendant used to send its telemarketing texts to consumers nationwide. The volume of call records obtained was staggering, and revealed that, during the proposed class period, QuoteWizard sent more than 48 million telemarketing text messages to

nearly 16 million telephone numbers nationwide. *See* Exhibit 2, Expert Report of Anya Verkhovskaya ¶ 50.

To assess which calls potentially violate the TCPA's do-not-call provisions (two or more calls in a 12-month period to a residential telephone number listed on the national do not call registry), Plaintiff retained expert witness Anya Verkhovskaya to replicate the methodology she has used in many cases— including *Krakauer,* where the court found her work and methodology to be reliable and admissible, *Krakauer v. Dish Network, L.L.C.*, 2015 WL 5227693, at *1 (M.D.N.C. Sept. 8, 2015), "clear [and] cogent," 2017 WL 2455095, at *6 (M.D.N.C. June 6, 2017), and credible, based on the court's "familiarity with her work over time and on its personal, in-court observations of her testimony," 2018 WL 11429948, at *2 (M.D.N.C. Jan. 25, 2018). *See also Vance v. DirecTV, LLC,* No. 5:17-cv-179 (N.D.W. Va. Aug. 1, 2022) (approving Ms. Verkhovskaya's expert analysis to identify potential violations and class members).

As outlined in her expert reports,[2] Ms. Verkhovskaya collected and standardized the various call records, removed numbers to conform to evidence obtained in discovery, and applied a methodology that would identify a class of consumers (the "Class List") whose claims could be resolved through common proof. Her methodology is set forth below:

First, Ms. Verkhovskaya eliminated from the Drips call records all phone numbers that QuoteWizard obtained from its own web-sites. *See* Exhibit 2 ¶¶ 52-54. What remained after this elimination were 5,090,954 sales leads and phone numbers that QuoteWizard purchased from myriad lead sources, who themselves bought them from many more thousands of sources and

---

[2] *See* Exhibit 2*,* Expert Rep. of A. Verkhovskaya; Exhibit 3, Rebuttal Expert Rep. of A. Verkhovskaya; Exhibit 4, Amended and Corrected Suppl. Rep. of A. Verkhovskaya. These exhibits omit the voluminous report attachments.

6

lead-generation websites. QuoteWizard has produced no valid evidence of consent regarding these leads, and has done nothing to vet the consent issue before or during this litigation. *Id.* ¶ 52; Exhibit 5, Rule 30(b)(6) Dep. of M. Weeks at 25-27 (QuoteWizard never bothered to look at the lead generation websites, but instead left "that up to our partners.").

Second, because QuoteWizard claimed that its vendor Drips sent some texts to some consumers without authorization (a potentially individualized and predominance-defeating contention), counsel directed Ms. Verkhovskaya to exclude all numbers except those to which QuoteWizard expressly authorized Drips to send text messages. Exhibit 2 ¶¶ 55-56; 71-75.

Third, to establish that class members *received* QuoteWizard text messages, Ms. Verkhovskaya analyzed the telemarketing call records produced by Bandwidth and Twilio, the entities who Drips used to facilitate the physical transmission of QuoteWizard's telemarketing texts to consumers nationwide, and which records evidenced consumers' receipt of QuoteWizard's telemarketing texts. Ms. Verkhovskaya excluded all numbers from the Class List other than those the Bandwidth and Twilio records confirmed as having actually received QuoteWizard texts. *Id.* ¶¶ 57-58. And to further buttress proof of receipt, Ms. Verkhovskaya also excluded all numbers except those that replied to the QuoteWizard texts, demanding that they stop. *Id.* ¶¶ 59-60.

Fourth, Ms. Verkhovskaya analyzed the remaining telephone numbers to identify those that she will opine satisfy the elements of a TCPA Do Not Call claim. To do this, she:

- verified that all remaining numbers (including Mr. Mantha's) were on the Do Not Call Registry before the consumer received a QuoteWizard text, and that the numbers received two text messages in a 12-month period, *id.* ¶¶ 61-68;

- removed the relative handful of numbers that responded to QuoteWizard's texts with an expression of interest and for whom QuoteWizard paid Drips for generating a successful lead, *id.* ¶¶ 68-70; and

7

- verified that the remaining numbers were residential and therefore appropriately on the DNC Registry. Regarding this step, even though QuoteWizard has admitted that the leads it purchased from third parties were consumer leads to whom it wanted to sell consumer insurance products,[3] Ms. Verkhovskaya ran the remaining numbers through an industry-standard database of known business numbers, and removed business-identified numbers. *Id.* ¶¶ 76-87. Ms. Verkhovskaya further applied a business keyword analysis to the remaining numbers to remove numbers associated with business names.

Ultimately, Ms. Verkhovskaya opined that, based on her analysis of the call records, QuoteWizard sent **314,828 text messages to 66,693 telephone numbers** that satisfied the DNC requirements of having received, on a residential number listed on the national do-not-call registry, more than one text messages in a 12-month period.[4] *See* Exhibit 3, Rebuttal Expert Report of Anya Verkhovskaya ¶ 62; Exhibit 4, Amended and Corrected Supplemental Report of Anya Verkhovskaya ¶ 2 (making final revisions to the Class List). All such violations can be proven using common proof.

### III.   Proposed Class Definition

Based on discovery obtained and Ms. Verkhovskaya's analysis, Plaintiff proposes the following class definition:

> All persons within the United States (a) whose residential telephone numbers were listed on the National Do Not Call Registry, and (b) who received more than one telemarketing text within any twelve-month period at any time from Drips, (c) to promote the sale of QuoteWizard's goods or services, and (d) whose numbers are included on the Class List.

The Class List tentatively identifies the phone numbers of class members and the number of violative texts received by each class member, whose claims can all be litigated using common

---

[3] S*ee* Exhibit 5 at 66-67, Rule 30(b)(6) Dep. of M. Weeks (QuoteWizard purchased leads from data brokers to sell consumer insurance to consumers, not businesses).

[4] After submitting her Rebuttal Report (Ex. 3) and prior to her deposition, Ms. Verkhovskaya discovered that a small subset of numbers identified in the business keyword process were mistakenly left on the Class List. To remedy this error, Ms. Verkhovskaya submitted an Amended and Corrected Supplemental Report which corrected the final Class List. *See* Ex. 4.

proof.

## IV. Class Certification Requirements

To obtain class certification, a plaintiff must establish each of the four requirements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *In re Nexium Antitrust Litig.*, 777 F.3d 9, 17 (1st Cir. 2015). A proposed class must further fall into one of the categories prescribed by Rule 23(b), and here, Mr. Mantha seeks certification under Rule 23(b)(3), which imposes the additional criteria of "predominance" and "superiority." *See Garcia v. E.J. Amusements of N.H., Inc.*, 98 F. Supp. 3d 277, 290-92 (D. Mass. 2015) (reviewing applicable Rule 23(b)(3) standards). The class is also obliged to meet the implicit "threshold Rule 23 requirement of 'ascertainability,'" which inquires whether a class "exists" — in other words, it must be "administratively feasible for the court to determine whether a particular individual is a member" of the class. *Donovan v. Philip Morris USA, Inc.*, 268 F.R.D. 1, 9 (D. Mass. 2010).

"District courts have broad discretion when determining issues of class certification," *Hogan v. InStore Grp., LLC*, 512 F. Supp. 157, 187 (D. Mass. 2021), and class certification orders are reviewed for abuse of discretion, *In re Nexium*, 777 F.3d at 17. "When the legal and factual premises of a case are disputed, 'the court may probe behind the pleadings, to formulate some prediction as to how specific issues will play out in order to assess whether the proposed class meets the legal requirements for certification.'" *Glynn v. Martin Sports & Ent.*, No. 1:19-cv-12189 2023 WL 2601609, at *3 (D. Mass. Mar. 22, 2023) (quoting *Donovan*, 268 F.R.D. at 8). "Nevertheless, the class certification proceeding must not become a mini-trial on the merits" and "the class certification prerequisites should be construed in light of the underlying objectives of class actions." *Id*.

## V. Argument

### A. The proposed class is objectively defined and readily identifiable, and therefore satisfies the ascertainability requirement.

Rule 23's "threshold" ascertainability requirement requires that the proposed class be "definite," in that the class is "ascertainable with reference to objective criteria" — and the class here is constrained by such stable and objective factors. *In re Nexium*, 777 F.3d at 19. Ascertainability does *not* require that every class member is identifiable at the time of class certification; rather, the Court must only determine whether it is "administratively feasible" to "decide and declare who will receive notice, who will share in any recovery, and who will be bound by the judgment." *Hebert v. Vantage Travel Serv., Inc.*, 334 F.R.D. 362, 370 (D. Mass. 2019) (citing *Crosby v. Soc. Sec. Admin.*, 796 F.2d 576, 580 (1st Cir. 1986)).

As explained above, Mr. Mantha's expert, Ms. Verkhovskaya, has employed a lengthy and detailed methodology to identify the phone numbers of class members, other than Mr. Mantha, whose claims can be resolved using common proof. These numbers are contained on the Class List. Ms. Verkhovskaya's list reflects only those class members, including Mr. Mantha, who received more than one telemarketing text from QuoteWizard at their residential phone number, and who had their phone numbers listed on the Do Not Call registry for the requisite amount of time prior to receiving the text messages. The class here is therefore just like the class in *Krakauer*, where the Fourth Circuit found the class ascertainable because the defendant's call records could be used to "show[] when calls were placed and whether the call went through," and "whether a number was residential." 925 F.3d at 658. Ms. Verkhovskaya's methodology here is virtually identical to the one she applied in *Krakauer*. This class is therefore reasonably identifiable and is structured in such a way "as to ensure that there will be some administratively

feasible way for the court to determine whether a particular individual is a member at some point." *Id.*[5]

### B. All Rule 23(a) requirements are met.

#### 1. Rule 23(a)(1): Hundreds of thousands of telemarketing texts sent to tens of thousands of class members easily satisfies numerosity.

The first requirement of Rule 23(a) is that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The First Circuit has characterized the numerosity requirement as a "low threshold." *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Id.*

Here, Ms. Verkhovshkaya's report makes clear that QuoteWizard sent 314,828 illegal telemarketing texts to 66,693 non-business numbers, which were listed on the DNC registry prior to their receipt of QuoteWizard's texts. It would be impracticable to join every proposed class member, and so numerosity is satisfied.

#### 2. Rule 23(a)(2): Dispositive questions uniformly and commonly apply to all class members.

Rule 23(a) next requires there be "a common question of law or fact among the members of the class." Fed. R. Civ. P. 23(a)(2). The "commonality" requirement is satisfied when the class claims depend upon a "common contention" that is "capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,

---

[5] The consumer data produced by QuoteWizard in discovery also discloses the names, addresses, and e-mails of putative class members.

11

350 (2011). In other words, "questions that go to the heart of the elements of the cause of action . . . will not vary by individual class member." *Donovan v. Philip Morris USA, Inc.*, Civ. No. 06-12234, 2012 WL 957633, at *21 (D. Mass. Mar. 21, 2012).

Here, common questions are dispositive, apply equally to all class members, and can be resolved using common proof and uniform legal analysis. They include the following:

- Were the phone numbers of all class members listed on the DNC Registry for the required amount of time at the time of the text campaign?
- Were the texts received?
- Were the texts sent to residential numbers?
- Did class members receive two or more calls in a 12-month period?
- Can QuoteWizard show that any class member provided their prior express consent signed in writing to receive the telemarketing texts at issue specifically from QuoteWizard itself?
- Do the purported internet-based "opt ins" offered by QuoteWizard as a proof of consent satisfy the E-Sign Act?
- Did QuoteWizard authorize Drips to text class members on its behalf?
- Are class members entitled to recover statutory damages of up to $500 per violation of § 227(c)?[6]
- Were QuoteWizard's violations "willful" or "knowing," thereby entitling all class members to treble damages under the TCPA?

All class members share these common legal and factual questions. Further, the uniformity of the applicable law — the TCPA — makes resolution of these questions on a class-wide basis viable. Whether or not QuoteWizard is liable for the alleged violations of the DNC provisions of the TCPA is a legal question that can be resolved on behalf of the entire class via common proof.

---

[6] These damages are set by statute and require no individualized analysis of harm. *See*, *e.g.*, *Targin Sign Sys., Inc. v. Preferred Chiropractic Ctr., Ltd.*, 679 F. Supp. 2d 894, 898–99 (N.D. Ill. 2010) (availability of statutory damages in TCPA case made individualized damages inquiry unnecessary and class certification appropriate).

### 3. Rule 23(a)(3): Typicality is satisfied because all class members had phone numbers listed on the DNC registry, still received telemarketing texts promoting insurance products marketed by QuoteWizard, and voiced their objections to such texts.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A representative plaintiff satisfies the typicality requirement "when [his] injuries arise from the same events of course of conduct as do the injuries of the class and when [the] plaintiff's claims and those of the class are based on the same legal theory." *Vargas v. Spirit Delivery & Distrib. Servs., Inc.*, 245 F. Supp. 3d 268, 287 (D. Mass. 2017). The "central inquiry" in assessing whether a proposed class has "typicality" is whether the class representative's claims have the "same essential characteristics" as those of the remaining class members. *Garcia*, 98 F. Supp. 3d at 288. "The claims of the entire class need not be identical" — so long as "the legal theories of the named plaintiffs [do not] conflict with those of the absentees," typicality will be satisfied. *Connor B. ex rel. Vigurs v. Patrick*, 272 F.R.D. 288, 296 (D. Mass. 2011). Ordinarily, the typicality inquiry will "tend to merge" with Rule 23(a)(2)'s "commonality" requirement, as "[b]oth serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

Mr. Mantha, like all class members, received telemarketing texts from QuoteWizard, on a residential number listed on the DNC Registry, seeking to sell QuoteWizard's goods or services. Mr. Mantha's claim, like the claims of all class members, requires the demonstration that the residential phone number on which the alleged illegal telemarketing calls were received was listed on the DNC Registry and received at least two telemarketing calls from the same defendant within twelve months. *See Krakauer*, 925 F.3d 655. Mr. Mantha also seeks the same

13

statutory relief as the class under a single subsection of the TCPA, 47 U.S.C. § 227(c)(5). By proving his own legal claims, Mr. Mantha will prove the class claims. The claims are identical. As a result, the typicality requirement is satisfied.

### 4. Rule 23(a)(4): The named plaintiff and his counsel are adequate to represent the class.

Rule 23(a)'s final requirement, that class representatives will "fairly and adequately protect the interests of the class," is met in this case with respect to both Mr. Mantha and his counsel. Fed. R. Civ. P. 23(a)(4). The "adequacy" standard requires a two-part showing: "[t]he moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *DaSilva v. Border Tr. of MA, Inc.*, 296 F. Supp. 3d 389, 405 (D. Mass. 2017) (quoting *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)).

As applied to a class representative, the adequacy inquiry again "tends to merge" with the commonality and typicality criteria of Rule 23(a)(2)-(3), such that when those requirements are met, the interests of the class members will likely be protected by the class representative in their absence. *Falcon*, 457 U.S. at 157 n.13. A class representative will be deemed inadequate only if there is evidence of a true conflict of interest with the class members, which must be "more than merely speculative or hypothetical." *In re Nexium*, 777 F.3d at 21 (cited authority omitted). Mr. Mantha's interests here are perfectly aligned with every other member of the class, as all seek a determination that QuoteWizard violated the TCPA, and as all seek the same statutory damage remedy. As a result, Mr. Mantha will adequately represent the class.

Plaintiff's counsel likewise submit that their prosecution of this action, along with their experience, demonstrates that they will adequately represent the class.[7] Just as Mr. Mantha is committed to the prosecution of this case, so too are his lawyers, who request appointment as class counsel pursuant to Fed. R. Civ. P. 23(g)(1).

### C. All Rule 23(b)(3) requirements are met, because common issues predominate and a class action is a superior method of adjudicating this matter.

#### 1. Common issues predominate.

The "core purpose" of Rule 23(b)(3) is to "vindicate the claims of consumers . . . whose individual claims would be too small to warrant litigation." *Bais Yaakov of Spring Valley v. ACT, Inc.*, 798 F.3d 46, 48 (1st Cir. 2015) (quoting *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 41 (1st Cir. 2003)). Its provisions are "less stringent" than those of Rule 23(b)(1) or (b)(2), and it is intended to "permit[] certification where class suit may . . . be convenient and desirable." *Smilow*, 323 F.3d at 41. The predominance requirement is just that: a condition "merely that common issues predominate, not that all issues be common to the class." *Id.* Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof. Rather, the question is whether there is reason to think that individualized questions will *overwhelm* common ones and render class certification inappropriate." *In re Nexium*, 777 F.3d at 21.

---

[7] Plaintiff's counsel collectively have decades of experience litigating TCPA class actions in state and federal courts. Importantly, Plaintiff's counsel also represented the class in *Krakauer v. Dish Network, L.L.C.*, No. 1:14-CV-333, 2018 WL 6305785, at *3 (M.D.N.C. Dec. 3, 2018) (in $63 million class judgment after trial, finding that "Class Counsel [Barrett, McCue, Broderick, Paronich] here [are] particularly experienced and skilled in TCPA litigation," and "achieved an excellent result on behalf of the class."), *aff'd,* 925 F.3d 643 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 676 (2019). Counsel submit that this track record demonstrates their adequacy to represent this virtually identical class as in *Krakauer*. Declarations of Plaintiff's Counsel in support of their class qualifications are attached at Exhibit 6.

15

Because of the "many advantages for class-wide adjudication" inherent in the TCPA, "[t]he problems that so often plague class actions under Rule 23(b)(3) are wholly absent from" TCPA litigation. *Krakauer*, 925 F.3d at 655. "The liability determinations involve no questions of individual reliance, no complicated contractual obligations, and no theories of probabilistic injury. The damages calculations do not turn on individual evidence, nor are they difficult to connect to the underlying harm. Put simply, a plaintiff suing under [the TCPA] is likely to be in the same position as a great many other people and can largely rely on common proof to make out his claim." *Id.*

Precisely that sort of "common proof" will go to the claims of Mr. Mantha and those of the proposed class members.[8] Mr. Mantha will demonstrate using common proof why none of the leads purchased by QuoteWizard from third party data brokers (a) are admissible (b) satisfy the TCPA or (c) comply with the E-Sign prerequisites for prior express written consent in writing, each of which would independently support defeating QuoteWizard's consent defense

---

[8] In its 2021 decision *Bais Yaakov of Spring Valley v. ACT, Inc.*, the First Circuit affirmed the denial of class certification in a TCPA matter on predominance grounds. 12 F.4th 81 (2021). *Bais Yaakov* concerned unwanted marketing faxes sent by standardized testing companies to schools, and liability turned on whether the schools had consented to the testing company's faxes by previously requesting other materials from the company. *Id.* at 88-90. Because each plaintiff school had written and submitted its own, unique request for materials to the company, the Court held that individualized determinations of whether each school's communications amounted to consent would predominate over other, common issues. *Id.* No such concerns are present here, where any consent analysis will turn on scrutiny of the lead forms that are common among the class members. This Court previously distinguished *Bais Yaakov* in another TCPA case, *Thrower v. Citizens Disability, LLC*, where — as here — "all signs . . . point[ed] to general uniformity among consent forms on lead generator websites." 2022 WL 3754737, at *5. *Thrower* explained that any individualized determinations regarding whether particular class members filled out lead forms "can be made through a simple analysis of [the defendant's] own internal data," and that legal assessment of whether lead forms convey proper consent "can be adjudicated on a class-wide basis" in light of the common wording among those forms. *Id.* And as explained above, the Court has already resolved that the consent form relied on by QuoteWizard here is *not* TCPA-compliant and all such consent forms suffer from the same defect.

using common evidence. No individual issues relating to authority will preclude certification as the Class List includes only the numbers of consumers to which QuoteWizard commonly admits it authorized Drips to send telemarketing texts to. Individual issues as to whether class members other than Mr. Mantha, in fact, received QuoteWizard's telemarketing texts will not preclude class certification as the Class List includes only the numbers of class members whose receipt of QuoteWizard's texts were commonly confirmed by telecommunications records, and who further all commonly texted back to QuoteWizard demanding that the telemarketing texts cease.

Finally, individual issues as to whether or not class members, other than Mr. Mantha, received QuoteWizard's telemarketing texts on their residential and non-business phone lines will not predominate as 1) QuoteWizard admits the class member leads it purchased from third parties were consumer and not business leads, 2) the purpose of the telemarketing text campaign at issue was to target consumers and not businesses, and 3) Ms. Verkhovskaya scrubbed from the Class List any numbers identified by commercially recognized databases, and by a business key word search, as being associated with a business. As Mr. Mantha has demonstrated a methodology to prove the class claims using common evidence, the predominance requirement of Rule 23 is readily satisfied.

### 2. The class action mechanism is the superior method of resolving class members' claims.

Rule 23(b)(3)'s superiority requirement is also met here. If this class action is not allowed to proceed, the alternative result is likely a lack of any relief for class members.  That alone shows that a class action is the superior method of litigating these claims. *See* William B. Rubenstein, 2 *Newberg on Class Actions* § 4:87 (5th ed.) (noting superiority requirement is met in class actions involving small claims because "[i]n such cases, there will either be a class action or there will be no litigation."); *Amchem Prods., Inc. Windsor*, 521 U.S. 591, 617 (1997)

17

(noting with regard to superiority requirement that "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." (internal quotation marks and citation omitted)). At bottom, the superiority inquiry is intended to "ensure[] that litigation by class action will achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Hebert*, 334 F.R.D at 374.

Certifying this class would serve both the "procedural and substantive purposes" of Rule 23. *Donovan*, 268 F.R.D. at 8. It would "enable a large number of individuals to bring a single proceeding — plainly a more convenient way to deal with a controversy than advancing in a fragmentary fashion with multiple actions," *id.*, and would "vindicat[e] the rights of people who individually would be without effective strength to bring their opponents into court at all," *Amchem Prods.*, 521 U.S. at 617. A class action must be proven "unwieldy indeed before it can be pronounced an inferior alternative . . . to no litigation at all." *Garcia*, 98 F. Supp. 3d at 292.

## VI. Conclusion

As the class proposed by Mr. Mantha satisfies all of the pre-requisites of Rule 23 of the Federal Rules of Civil Procedure, the Motion for Class Certification should be granted and this matter should be allowed to proceed to summary judgment and trial.

Dated:  January 12, 2024                                    Respectfully Submitted,


                                                            /s/ John W. Barrett
                                                            John W. Barrett
                                                            Brian Glasser
                                                            **BAILEY & GLASSER LLP**
                                                            209 Capitol Street
                                                            Charleston, WV  25301
                                                            Telephone: (304) 345-6555

jbarrett@baileyglasser.com
bglasser@baileyglasser.com

Matthew P. McCue
**The Law Office of Matthew P. McCue**
1 South Ave., Third Floor
Natick, MA 01760
Telephone: (508) 655-1415
mmcue@massattorneys.net

Edward A. Broderick
**Broderick Law, P.C.**
176 Federal Street, Fifth Floor
Boston, MA 02110
Telephone: (617) 738-7089
ted@broderick-law.com

Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Alex M. Washkowitz
CW LAW GROUP, P.C.
188 Oaks Road Framingham, MA 01701
alex@cwlawgrouppc.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 12, 2024, I electronically transmitted the foregoing to all counsel of record via the electronic filing system.

By: */s/ John W. Barrett*
         John W. Barrett