# EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

JOSEPH MANTHA, *on behalf of himself and*
*all others similarly situated*,

               Plaintiff,

vs.

QUOTEWIZARD.COM LLC

               Defendant.

Civil Action No. 1:19-cv-12235-LTS

**EXPERT REPORT OF JAN KOSTYUN**

**Table of Contents**

# Contents

Introduction ........................................................................................................................ 4

Background and Experience ............................................................................................... 4

Compensation .................................................................................................................... 8

Documents Reviewed ........................................................................................................ 8

Methodology .................................................................................................................... 15

Summary of Opinions ..................................................................................................... 15

Discussion of Opinions ................................................................................................... 16

Opinion 1 - The call records produced in this case cannot be used to reliably identify text messages that were successfully delivered to the intended recipient. ......................................... 16

    Missing data fields from call records ......................................................................... 19

    Call records reflect only the delivery status to the mobile carrier, and do NOT reflect whether any message was successfully delivered to the recipient's telephone handset. ........................ 22

    Call records reflect significant conflicting and erroneous data values ..................... 25

    Call records report messages successfully delivered to landline numbers. Landlines typically cannot receive text messages, and texts to landlines are not supported by Drips. ................... 31

    Call records report messages successfully delivered to non-working telephone numbers – unable to receive calls or text messages, based on industry resources. .................................... 35

    Call records report messages successfully delivered to non-working telephone numbers – unable to receive calls or text messages, based on individual telephone number identification. ................................................................................................................................................ 40

Opinion 2 - The available resources to determine the date that any telephone number was registered on the National Do Not call Registry ("NDNCR") are severely limited, and that determination requires individualized investigation. ................................................................ 46

    Home-grown NDNCR registration solutions ............................................................ 47

Opinion 3 - There is no classwide method to identify the individual who registered a number on the NDNCR, and such identification will require individualized investigation. ......................... 49

    Re-registration of telephone numbers on the NDNCR results in misleading registrations. ..... 53

Opinion 4 - Vendors regularly used by TCPA plaintiff experts are unreliable, and fail to identify Mantha as the individual who registered his number on the NDNCR ....................................... 55

    According to PacificEast, Mantha was NOT the individual who registered his 508-353-9690 telephone number on the NDNCR. ............................................................................................. 56

    Two-thirds of the telephone numbers in the sample sent to PacificEast were found to have been registered by someone other than the individual(s) associated with that number ........... 57

According to AT&T, Mantha was NOT the individual who registered his 508-353-9690 telephone number on the NDNCR. ................................................................................................ 58

Opinion 5 - The NDNCR cannot prevent business numbers from registering, and there is no classwide mechanism available to reliably identify business numbers to be removed from Plaintiff's class. ................................................................................................................................ 58

There is a blurred distinction between residential and business telephone numbers ................ 59

*PacificEast, a third-party vendor who purports to identify business/residential status, cannot reliably do so.* ........................................................................................................ 60

Opinion 6 – Data produced by Defendant includes vast evidence of consent, that requires manual, individualized analysis to determine its bearing on class members ................................ 70

Examples of website screen images reflecting consent language ........................................... 71

Examples of Data Transfer files reflecting consent .................................................................. 73

Examples of consent documented by Jornaya Compliance reports and Visual Playbacks ...... 76

Examples of Additional Data Transfer files reflecting consent ................................................ 85

Examples of consent documented by audio recordings ........................................................... 90

Examples of consent documented by Trusted Form documentation ....................................... 91

Consent language found in inbound "do not call" text messages ........................................... 100

Consent summary ................................................................................................................... 108

Reservation of Right to Amend ............................................................................................... 112

Exhibit A – Jan Kostyun CV .................................................................................................... 113

Case Experience: ................................................................................................................... 119

Exhibit B1- B4 – DNC Re-registration example ...................................................................... 134

## Introduction

1.      In this case, Joseph Mantha ("Plaintiff") proposes to represent a class of individuals in a TCPA class action against QuoteWizard.com LLC ("QuoteWizard" or "Defendant"):

> All persons in the United States who, from four years prior to the filing of this action: (1) Defendant (or an agent acting on behalf of Defendant) made (2) two or more telemarketing calls (3) promoting Defendant's products or services; (4) to a residential phone number that was listed on the National Do Not Call Registry for at least 30 days before the first call; and (5) within any twelve-month period.[1]

2.      Counsel for QuoteWizard contacted me for the purposes of an engagement as an expert witness for this case, and I have been asked to use my specialized professional knowledge, experience, and expertise to provide opinions in this case. In particular, I have been asked to analyze Plaintiff's proposed class membership and determine whether class membership or liability could be determined under the facts of this case in a classwide manner.

## Background and Experience

3.      I am an independent technology consultant with over 35 years of experience covering the areas of telecommunications, enterprise architecture, and information technologies. I received both a Bachelor of Science degree (magna cum laude) in Mathematics, as well as a Master of Science degree in Computer Science, from Union College in 1976. I have been directly employed in various capacities by major telecommunications companies, including Bell Telephone Laboratories, GTE, Verizon, and Syniverse Technologies. I have also been engaged as a consultant on various telecommunications issues by telecommunications companies and

---

[1] According to Plaintiff's First Amended Class Action Complaint ("FAC"), two classes were proposed: An Automated Calling class (Class 1), and a DNC class (Class 2). Plaintiff subsequently filed a Stipulation of Dismissal with Prejudice of Count I of The First Amended Complaint (D.E. 187), dropping the Automated Calling Class, and retaining only the DNC Class.

regulatory authorities, including Rogers Wireless (the largest wireless carrier in Canada), CRC (the national telecommunications regulatory agency of Colombia), and Syniverse Technologies. I have worked at numerous technical levels in software development, database technology, and enterprise architecture. I have worked for over 15 years providing consulting services, software development, and data analysis in the field of telephone number portability. This experience covers landline, wireless, and intermodal (landline-to-wireless or wireless-to-landline) number portability, as well as telephone number pooling. I have played lead roles in the technical and organizational processes of porting landline numbers in the U.S. as well as wireless numbers in the U.S., Canada, and Colombia.

4.    As a software architect for Bell Telephone Labs, GTE, Verizon, and Syniverse, I also developed expertise in areas such as landline and wireless number provisioning, including the end-to-end process of establishing service for an initial subscriber; landline and wireless order entry, including the collection of subscriber contact information; initial implementation of the National Do Not Call registry as a telephone carrier representative; technical experience with telecom features such as voice calling, SMS messaging, fax transmissions, voicemail, auto dialer and Interactive Voice Response Unit (IVRU) technology, and switching implementations; and a wide variety of telecommunications industry standards.

5.    I also have extensive experience in database methodologies, data analysis, and data mining. My experience with database technologies includes hierarchical, network and relational database models and implementations. I have instructed working professionals on the use of database programming, support and internal architecture, and have developed database training courses. I am highly proficient with advanced database modeling, optimization and query techniques, as well as the development of database software applications. I have personally

performed database queries and data analysis against hundreds of data stores, including but not limited to Internal and National Do Not Call lists, Wireless Block identifiers, Number Portability transaction lists and telephone call records produced by both wireless carriers and businesses involved in dialing campaigns.

6.    I have significant experience with call center operations and various dialing systems, including those used for inbound and outbound calling campaigns. In my tenure with GTE/Verizon, I performed early research with Intel-based Computer Telephony Interfaces (CTI), including text-to-speech translation and automated dialing interfaces. I have worked closely with IVRU engineers and application architects to develop programmatic interfaces used for inbound and outbound calling. I have worked closely with call center personnel at telecom businesses such as GTE, Verizon, Syniverse and Rogers Wireless while supporting Customer Relations Management (CRM) applications that include interfaces to inbound and outbound dialing systems. I have analyzed dialing systems and features from vendors such as Avaya, LiveVox, CallFire, RingCentral, Cisco, Five9, Nice-InContact, GTE, Txtwire Technologies, Stratics Networks, InfoLink Technologies, Interactive Intelligence, Aspect, Chase Data Corp, and TCN, among others.

7.    For the past ten years I have worked as a consultant and expert witness on cases covering TCPA issues, patent litigation, software copyright infringement and trade secret misappropriation, software value determination, vandalism, and sabotage of application programs. I have testified both in deposition and in court. My opinions have never been stricken or rejected, and have been cited by six U.S. district courts in support of denial of class certification in multiple TCPA cases.

8.    A copy of my curriculum vitae is attached hereto as Exhibit A.

9.     I have not authored any publications in the past 10 years.

10.     In the past four years, I have been retained to provide Deposition testimony as an expert in the following matters: *Cunningham v. Health Insurance Innovations*, No. 8:18-cv-00919 (M.D. Fla.); *Schaevitz v. Braman Hyundai*, No. 1:17-cv-23890 (S.D. Fla.); *Gurzi v. Penn Credit*, No. 6:19-cv-00823 (M.D. Fla.); *Lalli v. First Team Real Estate*, No. 8:20-cv-00027 (C.D. Cal.); *Rechul v. Crisp Marketing*, No. 0:20-cv-61042 (S.D. Fla.); *Turner v. USAA Savings Bank*, No. 3:20-cv-3004 (W.D. Ark.); *Johansen v. Bluegreen Vacations*, No. 20-cv-81076 (S.D. Fla.); *Hage v. World Financial Group*, No. 1:19-cv3386 (N.D. Ill.); *Gruber v. Yelp*, No. CGC 16-554784 (Cal. Superior); *Clemons v. State Farm*, No. 4:21-cv-00678 (E.D. Mo.); *Rowan v. United Enrollment Services*, No. 9:22-cv-80235 (S.D. Fla.); *Sapuy v. Roosevelt Field Mall Dental*, No. 2:21-cv-03222 (E.D.N.Y.); *Powers v. Receivables Performance Management*, No. 4:18-cv-12125 (D. Mass.); *Witvoet v. Pat Tumilty*, No. 1:22-cv-04236 (N.D. Ill.); *Rose v. New TSI Holdings*, No. 1:21-cv-05519 (S.D.N.Y.); *Mey v. Matrix*, No. 5:21-cv-00062 (N.D. W.V.); *Anthony v. The Federal Savings Bank*, No. 1:12-cv-2509 (N.D. Ill.); *Baldwin v. HearingPro Inc. and Miracle-Ear Inc.*, No. 0:20-cv-1502 (D. Minn.); *Burk v. Direct Energy*, No. 4:19-cv-663 (S.D. Tex.); *Smith v. USAA Savings*, No. 1:20- cv-1303 (D. Col.); *Virgne v. C.R. England*, No. 1:19-cv-2011 (S.D. Ind.); *Grome v. USAA Savings Bank*, No. 4:19-cv-03080 (D. Neb.); *Hill v. USAA Savings Bank*, No. 01-19-0003-2123 (AAA); *Howerton v. USAA Savings Bank*, No. 01-19-0003-3505 (AAA); *Mancuso v. USAA Savings*, No. 2:20-cv-01656 (D. Nev.); *Rogers v. Navient Solutions*, No. 1:20-cv-00276 (E.D. Va.);   *Floyd v. National Payment Systems*, No. 0:20-cv-61042 (N.D. Cal.); *Chinitz v. Realogy Holdings*, et. al., No. 3:19-cv-03309 (N.D. Cal.); *Dickson v. Direct Energy*, No. 5:18- cv-182 (N.D. Oh.); *Hage v. World Financial Group*, No. 1:19-cv-3386 (N.D. Ill.); *Samuel v. Adroit Health Group*, No. 1:19-cv-10487 (D. Mass.); *Iverson v. Advanced Disposal Services*, No. 3:18-

cv00867 (M.D. Fla.); *Charvat v. The Southard Corporation*, No. 2:18-cv-190 (S.D. Ohio); *Palmer v. KCI*, No. 4:19-cv-3084 (D. Neb.); Quintana v. BB&T, No. 1:18-cv-00748 (M.D. N.C.); *Saunders v. Dyck O'Neal*, No.1:17-cv-00335 (W.D. Mich.); *Wang v. Wells Fargo*, No. 1:16-cv-11223 (N.D. Ill.); *Grant v. Regal Automotive*, No. 8:19-cv-00363 (M.D. Fla.); *Moraitis v. The HELPcard*, JAMS No. 1460005448; *Sandoe v. Boston Scientific*, No. 1:18-cv-11826 (D. Mass.); *Snyder v. U.S. Bank*, No. 1:16- cv-11675 (N.D. Ill.); *Wijesinha v. Bluegreen Vacations*, No. 1:19-cv-20073 (S.D. Fla.); *Thomas v. Peterson's Harley Davidson*, No. 0:18-cv-61723 (S.D. Fla.); *Albrecht v. Oasis Power*, No. 1:18-cv01061 (N.D. Ill.); *Gonzalez v. Redwood*, No. 8:17-cv-02184 (M.D. Fla.); *Eisenband v. Schumacher Auto.*, No. 9:18-cv-80911 (S.D. Fla.); *Berman v. Freedom Fin.*, No. 4:18-cv-01060 (N.D. Cal.); *Williams v. Bluestem*, No. 8:17-cv-1971 (M.D. Fla.); *Wilson v. Badcock*, No. 8:17-cv-02739 (M.D. Fla.); and *Goins v. Walmart and Palmer Recovery Attorneys*, No. 6:17-cv-00654 (M.D. Fla.). I have not provided any trial testimony in the past four years.

## Compensation

11.    I am being compensated at the rate of $400 per hour for my study and analysis in this case, as well as $300 per hour for travel and $600 per hour for testimony. My compensation is not dependent on the outcome of this matter.

## Documents Reviewed

12.    In forming my opinions, I have reviewed the following documents: 2020.05.18 Defendant's Responses to Plaintiff's First Set of Interrogatories.pdf; 2020.05.18 Defendant's Responses to Plaintiff's First Set of Requests for Admission.pdf; 2020.05.18 Defendant's Responses to Plaintiff's First Set of Requests for Documents.pdf; 2020.05.26 Plaintiff's Answers to Defendant's First Set of Interrogatories.pdf; 2020.05.26 Plaintiff's Response to Defendant's First

Request for Production of Documents - MANTHA000015-MANTHA000047.pdf; 2020.05.26 Plaintiff's Response to Defendant's First Set of Requests for Admissions.pdf; 2020.06.19 Plaintiff's Answers to Defendant's Second Set of Interrogatories.pdf; 2020.06.23 Plaintiff's Response to Defendant's Second Set of Requests for Admissions.pdf; 2020.06.23 Plaintiff's Response to Defendant's Third Request for Production of Documents.pdf; 2020.08.04 DN80 First Amended Class Action Complaint.pdf;  2020.08.17 Plaintiff's Response and Supplemental Response to Defendant's Requests for Production of Documents.pdf; 2020.08.17 Plaintiff's Supplemental Answers to Defendant's First Set of Interrogatories.pdf; 2020.08.18 DN89 Defendant's Answer to Count 2 of Plaintiff's First Amended Complaint.pdf; 2020.09.02 Plaintiff's Response, Supplemental Response and Amended Supplemental Response to Defendant's Requests for Production of Documents.pdf; 2020.09.02 Plaintiff's Supplemental Answer to Defendant's First Set of Requests for Admissions.pdf; 2020.09.08 Defendant's Answers to Plaintiff's Second Set of Interrogatories.pdf;  2020.09.08 Defendant's Responses to Plaintiff's Second Request for Production of Documents.pdf; 2020.09.08 Defendant's Responses to Plaintiff's Third Request for Production of Documents.pdf; 2020.09.16 Plaintiff's Answers to Defendant's Third Set of Interrogatories.pdf; 2020.09.16 Plaintiff's Response to Defendant's Fourth Request for Production of Documents.pdf; 2020.10.13 Plaintiff's Response to Defendant's Fourth Set of Interrogatories.pdf; 2020.10.13 Plaintiff's Response to Defendant's Sixth Request for Production of Documents.pdf; 2020.10.13 Plaintiff's Response to Defendant's Fifth Request for Production of Documents.pdf; 2020.10.21 Plaintiff's Response to Defendant's Seventh Request for Production of Documents.pdf; 2020.10.23 Plaintiff's Second Supplemental Response to Defendant's Request for Production of Documents Per Judge Sorokin's Order.pdf; 2020.10.23 Plaintiff's Supplement to Second Supplemental Response to Defendant's Request for Production of Documents Per Judge

Sorokin's Order.pdf; 2020.10.26 Defendant's Supplemental Responses to Plaintiff's Second Request for Production of Documents.pdf; 2020.11.09 Defendant's Second Supplemental Responses to Plaintiff's Second Request for Production of Documents -QuoteWizard_Mantha 000132-000197.pdf; 2021.02.03 Plaintiff's Response to Order ECF 132.pdf; 2021.06.09 DN187 Stipulation of Dismissal With Prejudice of Court I of the First Amended Complaint.pdf; 2021.07.14 DN201 Defendant's Motion for Summary Judgment.pdf; 2021.07.14 DN202 Defendant's Memorandum of Law in Support of its Motion for Summary Judgment.pdf; 2021.07.14 DN203 Affidavit of Joel Peterson in Support of Defendant's Motion for Summary Judgment.pdf; 2021.07.14 DN204 Defendant's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment Submitted Pursuant to Local Rule.pdf; 2021.07.14 DN205 Plaintiff's Motion for Partial Summary Judgment as to Prior Express Consent and Entitlement of Plaintiff's Personal cell Phone to.pdf; 2021.07.14 DN206 Plaintiff's Memorandum ISO Motion for Partial Summary Judgment as to Prior Express Consent.pdf; 2021.08.04 DN220 Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ISO its Motion for Summary Judgment.pdf; 2021.08.04 DN221 Plaintiff's Memorandum of Law in Opposition to QuoteWizard's Motion for Summary Judgment.pdf; 2021.08.04 DN222 Sealed Version of Defendant's Motion to Strike Exhibits to Declaration of Anthony Paronich Esq. ISO Plaintiff's Partial Motion fo~.pdf; 2021.08.04 DN223 Defendant's Opposition to Plaintiff's Partial Cross-Motion for Summary Judgment.pdf; 2021.08.04 DN224 Sealed Version of Affidavit of Counsel in Opposition Re [205] Plaintiff's Motion for Partial Summary Judgment.pdf; 2021.08.18 DN230 Defendant's Reply to Plaintiff's Opposition to its Summary Judgment Motion.pdf; 2021.08.19 DN234 Plaintiff's Memorandum in Response to Defendant's Opposition to its Motion for Summary Judgment as to Prior Express Consent.pdf; 2021.12.03 DN249 Order Denying [219] Plaintiff's

Motion to Strike the Hearsay Email Offered by QW ISO its Motion for Summary Judgment.pdf; 2021.12.03 DN253 Sealed Report and Recommendation on Cross-Motions for Summary Judgment.pdf; 2021.12.30 DN264 Defendant's Objections to Report and Recommendation on Parties' Cross-Motions for Summary Judgment (ECF No. 258].pdf; 2022.01.13 DN267 Plaintiff's Reply to QuoteWizard's Objections to Judge Kelley's Summary Judgment.pdf; 2022.02.03 DN268 Order on Report and Recommendations (Docs. Nos. 253, 258).pdf; 2022.02.17 DN270 STATUS REPORT Joint Status Report Ordered by the Court [ECF 269] by Joseph Mantha.pdf; 2022.04.18 QW's Answers to Plaintiff's Third Set of INTs.pdf; 2022.04.18 QW's Responses to Plaintiff's Fourth Set of RPDs.pdf; 2022.05.24 DN277 REDACTION to[276] Sealed document Joint Status Report Regarding Dispute Over Class Discovery.pdf; 2022.05.24 Joint Status Report on Motion to Compel --5-24-22 TO BE FILED UNDER SEAL.pdf; 2020.07.22 Matthew Weeks (Quotewizard.com) Full-Page Deposition Transcript.pdf; 2020.07.22 Quotewizard.com Deposition Transcript.pdf; 2020.07.23 Peter Andrew Petroff Deposition Full-Page Transcript.pdf; 2020.07.27 Joseph Mantha Deposition Full-Page Transcript.pdf and Exhibits; 2020.07.28 George Rios Full-Page Deposition Transcript (Lead Intelligence Inc.).pdf; 2020.07.28 Michael Fishman Full-Page Deposition Transcript (Lead Intelligence Inc.).pdf; 2020.09.01 Steven Novia Deposition Transcript (Full).pdf; 2020.09.10 Continued Joseph Mantha Transcript Deposition Transcript.pdf; 2020.09.11 Derek Padon's Deposition Transcript.pdf] 2020.09.11 Melisa Mantha Deposition Transcript.pdf] 2020.12.14 Michael Fishman Deposition Transcript.pdf; 2021.01.04 Deposition Transcript of George Rios (Full).pdf; 2019.08.31 Washkowitz email confirming Mantha's DNC registration.pdf; 2019.09.16 QW Lead Data File - TCPA Report - 4812-3381-5974 1.docx; EXHIBIT 1 - Mantha Call Records (CLEAN VERSION) -- TO BE FILED UNDER SEAL - 4847-9357-7969 1.pdf; EXHIBIT 16 - Emails - 4852-0204-3121 1.pdf; EXHIBIT 17 - Text-Call History

- 4819-4732-8753 1.pdf; Exhibit 9 -- Mantha Complete Highlighted Phone Records (no notes) (TO BE FILED UNDER SEAL) - 4851-3901-8225 1.pdf; Sorokin's Default Protective Order in Complex Cases.pdf; Ex 5 Declaration of Anthony Paronich -- July 13, 2021 (With Tabs).pdf; 2020.07.28 Manny Wald Full-Page Deposition Transcript (Lead Intelligence Inc.) 4825-3715-9623 v.1.pdf; 2020.08.17 Justin C. Cohen (Full) 4811-5108-9864 v.1.pdf; 2020.09.15 Justin C. Cohen (Full) 4839-6079-9181 v.1.pdf; 2020.12.17 Deposition Transcript of Tom Martindale (Drips Holdings) (full).pdf; Adam Brown (Full) 4832-5696-6093 v.1.pdf; 11-19 to 20 - 2019 Moynihan Emails.pdf; 12.10.2019 Email to Plural Marketing Solutions.pdf; 2022.06.16 Plural Marketing Solutions Subpoena Response.pdf; 7-28-2020 email.pdf; 7-28-2020 Notice.pdf; 9-11-2019 - MANTHA_TPCA_REQUEST.pdf; 9-11-2019 Email ro Plural.pdf; Draft Affidavit of Manny Wald of Lead Intelligence (Journaya) 4818-8648-0837 v.1.pdf; Exhibit - 0008 - Jornaya Subpoena response (00026900).pdf; Fenix-Buy-Seller-Contract-IO-Signed.pdf; plm-rvpt-auto-audit-mantha-20220301.xlsx; Response to Non-Party Subpoena 2.pdf; rvpt-sales-all-do-plmrkg.csv; sales-all-do-plmrkg.csv; 503964_5_5_31_2022 12_00_00 AM_2022_.pdf; DRIPS000006 CONFIDENTIAL Pursuant to the Court's Default PO.csv; Docket for DirectTV Case (W.Va) - 4894-6868-3557 1.pdf; Mantha v QuoteWizard complaint.pdf; Opp. to Class Cert. (DirecTV W. Va. Case) - 4886-9798-0197 1.pdf; P's Motion for Class Cert (DirecTV W.Va Case) - 4882-9480-2725 1.pdf; Sponsler Expert Report (DirecTV W.Va Case) - 4885-4744-4005 1.pdf; Declaration of Tom Martindale in Support of Drips Holdings, LLC's Motion to Quash Subpoena; QuoteWizard_Mantha 000197-000199; DNC-Part1.csv; DNC-Part2.csv; DNC-Part3.csv; DNC_Full_9.8.2022.csv; DRIPS000005 - CONFIDENTIAL Pursuant to the Court's Default PO.csv; DRIPS000007 CONFIDENTIAL Pursuant to the Court's Default PO.csv; DRIPS000008 CONFIDENTIAL Pursuant to the Court's Default PO.csv; QuoteWizard__Mantha 000211

UNREDACTED.csv; 2023.07.21 Oral Video Conferenced Deposition Transcript of Obinna Njoku (Full) - 4885-5291-6594 1.pdf; Njoku Obinna 08.03.23 (Twilio Depo. Day 2) - 4880-5377-8045 1.pdf; Campaign Description 3 [Privileged and confidential].xlsx; 2022.08.05 Declaration (ATT Subpoena) - 4889-8273-9572 1.pdf; QUOTEWIZARD003653-QUOTEWIZARD003653.xlsx; ReportCT_3492143 (ATT Subpoena Response) - 4882-2828-9140 1.pdf; MANTHA000048--CONFIDENTIAL-MANTHA000066--    CONFIDENTIAL    4846-8088-5955    v.1.pdf; MANTHA000335-MANTHA000335-MANTHA000503CONFIDENTIAL  (Combined)  4821-4495-9944 v.1.pdf; Stevens Siena 06.30.23.pdf; Bandwidth - Mantha v. QuoteWizard Declaration (14 June 2023).pdf; Numbers and Quantity of Calls provided by Plaintiff to Bandwidth - 4892-6559-9591 1.xlsx; 2022.10.06 DN298 Second Joint Stipulation Regarding Class Discovery Production Deadline and Status Report Deadline by Quotewizard.com, L~.pdf; 2023.05.22 Twilio Production_Privileged and confidential.csv; HigherEd00001.xlsx; 2019.08.31 Washkowitz email confirming Mantha's DNC registration.pdf; 2019.09.16 QW Lead Data File - TCPA Report - 4812-3381-5974 1.docx; EXHIBIT 1 - Mantha Call Records (CLEAN VERSION) -- TO BE FILED UNDER SEAL - 4847-9357-7969 1.pdf; Exhibit 9 -- Mantha Complete Highlighted Phone Records (no notes) (TO BE FILED UNDER SEAL) - 4851-3901-8225 1.pdf; EXHIBIT 16 - Emails - 4852-0204-3121 1.pdf; EXHIBIT 17 - Text-Call History - 4819-4732-8753 1; Sorokin's Default Protective Order in Complex Cases.pdf; Campaign Description 2 [Privileged and confidential] (1).xlsx; Declaration of Tom Martindale (final).pdf; Declaration of Tom Martindale executed 7102023.pdf; Exhibit G to Martindale Declaration.xlsx; Outbound Set 1 [Privileged and confidential].csv; Outbound Set 2 [Privileged and confidential].csv; Users Texted Inbound [Privileged and confidential].csv; 25 Jornaya Guardian TCPA reports from Kumparison; 2023.05.15 DN319 Order on Discovery Schedule - 4872-2801-1108 1.pdf; Campaign Description

Privileged and confidential (1) (1) (002) - 4876-4187-1716 1.xlsx; Excel Impact Subpoena Response – QuoteWizard.pdf; Internal with Trusted Form 2021-2022.csv; Internal with Trusted Form 2022-present.csv; QW - Auto_Home - Internal - 2021-03 - 2022-01.csv; QW - Internal Leads - 2022 – Present.csv; QW - Network Partners - 2020-09 - 2022-01.csv; QW - Network Partners - 2022 – Present.csv; QW Internal 2020-09 - 2022-01.csv; qw-cake-leads-2018-01-2020-09.csv; qw-network-partners-2018-01-2020-09.csv; Avenge Consent Info__QW Leads.xlsx; Mantha v. QuoteWizard.com Inifinix Subpoena response 7.3.2023.pdf; Infinix_1_Consent Records 2019.csv; Infinix_1_Consent Records 2020.csv; Infinix_1_Consent Records 2021.csv; Twilio Production [Privileged and confidential.csv (corrected); BAND-202002-202112.csv; BAND-202105-202112.csv; Exports.csv; DEINTRP-2403.csv; With Providers.csv; QUOTEWIZARD000001-580 (580 consent HTMLs); QUOTEWIZARD000581 (20 Trusted Form certificates); QUOTEWIZARD000582-647 (66 consent HTMLs) ; QUOTEWIZARD000648-678 (31 consent HTMLs); QUOTEWIZARD000679-680 (2 consent audio recordings); QUOTEWIZARD000681-886 (56 Jornaya Guardian TCPA Reports); Inbound Page Details 10/7/2022; Inbound XML 10/7/2022; Inbound XML 10/11/2022; Inbound Page Details 10/11/2022; 57 QuoteWizard Audio Recordings - Proof of Consent; Onsite Page Details 10/17/2022; Onsite XML 10/17/2022; Onsite Page Details 11/9/2022; Onsite XML 11 09 2022; Inbound XML 11 09 2022; Inbound XML 11 11 2022; Onsite Page Details Leads Drips Rejected but Texted; Onsite Page Details Leads Rejected but Drips Accepted and Texted; Onsite XML_Leads Drips Rejected but Texted; Onsite XML_Leads Rejected but Drips Accepted and Texted.

13.    It is my practice to regularly research and follow developments in the telecommunications industry. This ongoing research includes, but is not limited to: review of

significant FCC orders; review of TCPA cases and rulings; routine communication with former telecom associates; comparison of opinions set forth by other TCPA experts; communication with vendors who provide TCPA-related data services; regular review of industry blogs and user groups, such as the Association of Credit and Collections Professionals (ACA International); review of news feeds from organizations such as the Expert Institute, Neustar, LexisNexis, TransUnion, and other vendors in the telecom field; and regular research into statistics and trends related to the telecommunications industry. This review and research have also informed and supported my opinions.

## Methodology

14.    The methodology that I have employed in producing my opinions in this report is based on my business experience in telecommunications, my experience as an expert with other TCPA-related cases, my education and training, and my review of documents and data relevant to this case, as cited above and throughout this report. Based on my experience and that review, I developed hypotheses regarding the methods typically proposed by opposing experts to identify classes that are similar to those proposed by Plaintiff's in the instant case. I have tested and confirmed my hypotheses using a combination of related documentation, research, data analysis, and experience - similar to the techniques that I have used during my career as a telecommunications system architect. I have analyzed the results of my analysis and testing, and used the results of that analysis to form my opinions and document them in this report.

## Summary of Opinions

15.    Based on my business experience in telecommunications and data analysis; my review of available evidence presented for this case; and my prior experience with similar TCPA cases; it is my opinion that:

1. The call records produced in this case cannot be used to reliably identify text messages that were successfully delivered to the intended recipient.

2. The available resources to determine the date that any telephone number was registered on the National Do Not call Registry ("NDNCR") are severely limited, and that determination requires individualized investigation.

3. There is no classwide method to identify the individual who registered a number on the NDNCR, and such identification will require individualized investigation.

4. Vendors regularly used by TCPA plaintiff experts are unreliable, and fail to identify Mantha as the individual who registered his number on the NDNCR.

5. The NDNCR cannot prevent business numbers from registering, and there is no classwide mechanism available to reliably identify business numbers to be removed from Plaintiff's class.

6. Data produced by Defendant includes vast evidence of consent, that requires manual, individualized analysis to determine its bearing on class members.

### **Discussion of Opinions**

### **Opinion 1 - The call records produced in this case cannot be used to reliably identify text messages that were successfully delivered to the intended recipient.**

16.    In order to understand the text message process, Figure 0 below depicts the players involved in sending text messages from a text message customer such as QuoteWizard, to the destination mobile telephone number of a consumer.



Figure 0 – Flow of text messages from text message customer to consumer

17.     As seen in Figure 0, the attempt to send a text message begins with a text message

customer such as QuoteWizard.

    a.  That customer makes a request (arrow 1) by sending a text message request to a text message vendor, such as Drips. That request will include the ultimate destination telephone number, the verbiage to include in the message, and any additional, optional parameters.

    b.  The text message vendor (e.g. Drips) compiles the text message, and forwards it (arrow 2) to one of its aggregators, such as Bandwidth or Twilio. A text messaging aggregator will maintain connections to Mobile Carriers, such as Verizon, T-Mobile, AT&T, etc., and forwards the text message request to the Mobile Carrier responsible for the telephone number to which the given text message is intended. In some cases, there may be multiple tiers of aggregators, such that a lower-tiered aggregator receives a text request from a text vendor, forwards that request to a higher-tiered aggregator, which then forwards it to the appropriate Mobile Carrier.

    c.  The aggregator forwards the text message (arrow 3) to the appropriate Mobile Carrier for processing.

    d.  The Mobile Carrier returns a delivery status (arrow 4) back to the aggregator, which indicates whether or not the text message was successfully delivered to the Mobile Carrier.

    e.  As an independent process, the Mobile Carrier attempts to deliver the text message (dotted arrow) to the destination mobile telephone, and receives a completion status indicating whether the text message was successfully received by that destination mobile telephone. This process can occur after the Mobile Carrier responds to the aggregator (arrow 4). This can result in the very real scenario in which the Mobile Carrier responds to the aggregator that the text message was successfully delivered

to the carrier, but also that the text message FAILED to be successfully delivered to the destination mobile telephone. Notably, representatives from both major aggregators used by Drips (Twilio and Bandwidth) each testified that they have no knowledge of the status of the delivery process from the Mobile Carrier to the destination telephone.[2]

f. The aggregator may then provide the delivery status (arrow 5) back to the text message vendor. In scenarios such as with the instant case, the aggregator may also produce call records including the Carrier-supplied delivery status, based on subpoena or other data requests.

g. The text message vendor may also provide a result of the text request (individually or in bulk) back to the text message customer (arrow 6).

18.     Numerous sets of call records have been produced in this case – each purporting to identify text messages that were sent to specific telephone numbers. However, each set of call records that have been produced exhibit limitations and inconsistencies that prevent any of them from being able to reliably identify text messages that were successfully delivered to the intended telephone number.

19.     I have been provided with the following sets of call records, appearing in Table 1 below:

| File Name | Records | Unique TNs | Start Date | End Date | Source |
|---|---|---|---|---|---|
| DRIPS000006 CONFIDENTIAL Pursuant to the Court's Default PO | 43,166,507 | 13,807,697 | 11/8/2016 | 6/28/2021 | Drips |
| Numbers Texted Since 2021-05-18 | 7,564,902 | 3,472,591 | 5/17/2021 | 12/1/2021 | Drips |
| With Providers | 42,781,168 | 13,764,653 | 11/8/2016 | 6/28/2021 | Drips |
| Outbound Set 1 [Privileged and confidential] | 42,029,477 | 13,635,705 | 10/18/2018 | 12/1/2021 | Drips |
| Outbound Set 2 [Privileged and confidential] | 6,533,455 | 2,560,027 | 11/8/2016 | 10/24/2018 | Drips |
| DEINTRP-2403 | 7,219,462 | 1,292,439 | 8/2/2021 | 12/1/2021 | Bandwidth |
| BAND-202002-202112 | 73,417,310 | 6,945,619 | 2/25/2020 | 12/1/2021 | Bandwidth |
| BAND-202105-202112 | 9,070,773 | 1,953,193 | 5/25/2021 | 12/1/2021 | Bandwidth |
| Twilio Production [Privileged and confidential] | 2,049,636 | 810,627 | 5/25/2018 | 10/25/2018 | Twilio |

Table 1 – Summary of call records produced[3]

---

[2] See excerpts of the deposition testimony of Bandwidth's Data & Engineering Product Owner, Siena Stevens, and Twilio's senior data analyst, Obinna Njoku, at ¶¶ 34 - 38 below.

[3] It is important to note that the number of records for each of the nine files cannot be added to determine a total number of call records produced, since there is significant overlap among these nine files. Moreover, there is significant variation in the format and content of call records across

20.     But every call record file suffers from significant shortcomings and errors that make each of them unusable for the identification of text messages that were successfully delivered to the telephones of any potential class members. These shortcomings and errors include:

    a.  Call dispositions that reflect the delivery status of messages to only the telephone carrier, rather than to the telephone handset of the call recipient.
    b.  Call dispositions that erroneously reflect successfully delivered text messages to landlines.
    c.  Call dispositions that erroneously reflect successfully delivered text messages to non-working telephone numbers.
    d.  Missing call dispositions to indicate the result of attempted texts.
    e.  Missing time-of-day data to determine which call records may be duplicates.
    f.  Call records appearing in one file for a given telephone number and date, that do not appear in another file with the same number, covering the same timeframe.
    g.  Call records for the same number and call date in two different files, reflecting a different number of calls for the given date.
    h.  Call records for the same number and call date in two different files, reflecting different delivery status.

**Missing data fields from call records**

21.     There are five call record files, each produced by Drips, each of which fail to include critical data values.

22.     The file "DRIPS000006 CONFIDENTIAL Pursuant to the Court's Default PO" ("DRIPS000006") includes only three data columns: *Date*, *Campaign*, and *Phone*. Each call record fails to include a call disposition or status field, making it impossible to determine which text messages were purportedly successfully delivered. Moreover, this file includes multiple call records to the same number on the same date, but does not include any time field, which would identify any potential duplicate call records for a given number on the same date and time. The

---

the files. Similarly, the unique TNs (telephone numbers) applies only to each individual file (e.g. the file "Numbers Texted Since 2021-05-18" contains records for 3,472,591 TNs), but the count of unique TNs for each file cannot be added for a total of unique telephone numbers, since there is also significant overlap of telephone numbers across the nine files.

lack of these data fields means that the call records in DRIPS000006 cannot be used to identify successfully delivered text messages.

23.     The file "Numbers Texted Since 2021-05-18" follows the same data format as DRIPS000006, with the addition of a *Provider* column - which identifies the aggregator vendor who attempted delivery of the given text message to the appropriate telephone carrier. Just as with the DRIPS000006 file, 'Numbers Texted Since 2021-05-18' fails to include a call disposition field, as well as a time field, making it unusable for the identification of successfully delivered text messages.

24.     The file "With Providers" follows the same data format as "Numbers Texted Since 2021-05-18", with the addition of a *QW Phone* column, which identifies the telephone number used to send each given text message. As with the previous two files, the lack of a call disposition field, and a time field, make it unusable for the identification of successfully delivered text messages.

25.     The files "Outbound Set1" and "Outbound Set2" have a data format similar to the first three files described above, and include the following columns: *Date*; *Phone*; *Outbound SMSs* (count of outbound messages sent); *Campaign*; *QW Phone*; and *Provider*. As with the previous files, "Outbound Set1" and "Outbound Set2" fail to include a call disposition and time field, which precludes the ability to use these files to identify successfully delivered text messages, or to distinguish between potential duplicate call records.

26.     The remaining three call record files were produced by the aggregator vendors Bandwidth and Twilio.

27.     The first three of those files, produced by Bandwidth, are: "DEINTRP-2403"; "BAND-202002-202112"; and "BAND-202105-202112". The DEINTRP-2403 file was produced first by Bandwidth, and includes the following data columns:

  a. *Called_Number*
  b. *Message_Date*
  c. *Customer_Name* (includes the value "Drips Holdings, LLC - Prod - V2 – A" or "Drips Holdings, LLC - Prod - V2 – B")
  d. *Message_Direction* ("INBOUND" or "OUTBOUND")
  e. *Message_Status* "DELIVERED", "FAILED", "SENT", "UNDELIVERED", and "ACCEPTED", where "DELIVERED" indicates successful delivery, all others reflect unsuccessful).

28.     The records in the BAND-202002-202112 file include the same data columns, with slightly different values:

  a. *Called_Number*
  b. *Message_Date*
  c. *Customer_Name* (includes the value "Drips Holdings, LLC - Prod - V2 – A", "Drips Holdings, LLC - Prod - V2 – B" or "Drips Holdings – Staging")
  d. *Message_Direction* ("INBOUND" or "OUTBOUND")
  e. *Message_Status* ('0','201','360','403','406','470', '500' – where '0' indicates successful delivery, all others reflect unsuccessful).

29.     And the records in the BAND-202105-202112 file include the same data columns, also with slightly different values:

  a. *Called_Number*
  b. *Message_Date* (the message_date value appears in column [$3] in this file)
  c. *Customer_Name* includes the values "Drips Holdings, LLC - Prod - V2 – A", "Drips Holdings, LLC - Prod - V2 – B" or blank.
  d. *Message_Direction* includes the values "INBOUND", "OUTBOUND" or blank.
  e. *Message_Status* includes the values "DELIVERED", "FAILED", "SENT", "UNDELIVERED", "ACCEPTED" and blank, where "DELIVERED" indicates successful delivery, all others reflect unsuccessful.

30.     None of the call records appearing in "BAND-202002-202112" and "BAND-202105-202112" include a time field, which precludes the ability to use these files to distinguish between potential duplicate call records.

31.     The final call record file listed is "Twilio Production [Privileged and confidential]" ("Twilio"), which includes call records produced by the aggregator Twilio. Each Twilio call record includes three data columns: *Phone*, *Date* and *Status*.[4]

32.     Notably, as with all other files, none of the call records appearing in the Twilio file include a time field, which precludes the ability to use these files to distinguish between potential duplicate call records.

**Call records reflect only the delivery status to the mobile carrier, and do NOT reflect whether any message was successfully delivered to the recipient's telephone handset.**

33.     As described earlier, the delivery status values that appear in either the Bandwidth or Twilio call records only reflects – at best – whether a given message was successfully delivered to the Mobile Carrier, and does NOT reflect whether a given message was successfully delivered to the mobile telephone of the consumer to whom the message was intended.

34.     This fact was also confirmed by representatives of Bandwidth and Twilio.

35.     In the deposition testimony of Bandwidths' Data & Engineering Product Owner, Siena Stevens ("Stevens Dep."), Stevens was questioned regarding the meaning and accuracy of the delivery status reported in Bandwidth's call records, and confirmed that Bandwidth only has data to indicate whether the message was received by the Carrier ("Provider"), but not the destination phone number:

> Q. So based on your testimony, you just know they go to the provider, and then the provider sends you a message?
> A. Correct.
> Q. So based on your testimony, you don't know whether the messages are actually sent, actually delivered to the phone number?

---

[4] The Twilio call records were produced in an Excel CSV file that did not include column headings. Based on the data values in the file, it included: a *Phone* column, reflecting the number to which the text message was sent; *Date* column reflecting the date the message was sent; and *Status* column reflecting the delivery status of the message. The values for the Status column include "DELIVERED", "DELIVERY_UNKNOWN" or "UNDELIVERED".

A. Correct.
Q. Okay. It's just -- this is just based on whether it was received by the provider or not.
A. That's correct.

Stevens Dep. 30:4-10.

36.    Further, Stevens confirmed the scenario described above: that a message could be successfully delivered to the Mobile Carrier, but NOT delivered to the destination number. And she also testified that Bandwidth cannot tell whether the destination telephone number is unable to receive texts, by way of blocking incoming text messages, roaming off network, or forwarding messages to another number:

> Q. Is it possible that the Bandwidth receives successful delivery messages from the provider but that message was never delivered to the destination telephone handset?
> A. Sure.
> Q. Does Bandwidth have any way to know if any message was positively delivered to the destination telephone?
> A. I don't know. I don't believe so.
> Q. Okay. Does Bandwidth know whether a destination telephone number has blocked messages from the originator?
> A. I don't know.
> Q. Does Bandwidth know whether or not a destination telephone is roaming off network when a message is sent?
> A. I don't know.
> Q. Does Bandwidth know whether or not a message was sent to a destination telephone number that was forwarded at the time the message was sent to another number?
> A. I don't know.

*Id.* 39:18-40:14.

37.    Similarly, Twilio's representative Obinna Njoku testified at deposition ("Njoku Dep.") that Twilio only knows the delivery status to the telephone carrier, that they do not know whether any given message is delivered to the destination number, and that he is not aware of any auditing that takes place by Twilio to verify the accuracy of the delivery status to the carrier(s):

> Q. So Twilio has no information as to how the carrier delivers the message to the end user?
> A. I don't know that. I don't know if Twilio knows but I don't think so. Twilio platform is just like an API that enables you to do it. The majority of the work is behind the scene.

The carrier actually delivers the message because Twilio doesn't have the ability to deliver the message. Twilio just gives you the platform where you can send those messages so the carrier will be the best place to determine if the message is delivered or how that process goes.

Q. Okay. So Twilio doesn't have information as to whether the message is actually delivered to the final end user?

A. No. Twilio -- depends on the carrier. The status comes from the carrier so if the carrier says it's delivered then Twilio believes it's delivered.

Q. Twilio believes it's delivered but it doesn't actually know whether it's delivered, right?

A. No.

Q. And does Twilio ever audit the carrier to make sure that the messages are actually being delivered?

A. I don't know that.

Njoku Dep. 31:14 – 32:13.

38.    Moreover, the Twilio call records that were produced were sent from Twilio to the messaging vendor Drips, who then manipulated those records before sending them to Plaintiff's counsel. This unusual handling of the documentation jeopardizes the reliability of those call records, which even caused the first day of the Twilio deposition to be extended to a second day nearly three weeks later. And the Nkoku testimony further confirmed that the reliability and accuracy of the call records produced by Twilio is suspect:

Q. Got it. So if I understood that, are you saying that Twilio relies on the accuracy of the statuses as part of it's day-to-day business practice?

A. No.

Q. Okay. So then explain to me why Twilio relies on the accuracy of the status messages?

A. Twilio doesn't rely on the accuracy. I said that Twilio collects this data as part of it's day-to-day business operations.

*Id.* 13:3-11.

And

Q. Okay. And in your experience working with the call logs, have you found instances where those delivery statuses have been inaccurate?

KEVIN POLANSKY: Objection.

A. I wouldn't say inaccurate because like – like I said before, it depends on what the carrier sends. **<u>If the carrier sends it delivered there's no way for me to know if it's accurate or not</u>** but I believe it should be accurate because it came from the carrier.

*Id.* 43:21-44:4 (emphasis added).

**Call records reflect significant conflicting and erroneous data values**

39.    Even the existence of *Message_Direction* and *Message Status* fields in the Bandwidth call records introduces additional problems with those records, rather than making them more reliable.

40.    For example, telephone number 719-258-0682 appears in the DEINTRP and Band202002 files, both produced by bandwidth. As seen in Table 2 below, however, those two files report different call activity for 719-258-0682:

| Source | | DEINTRP | | | Band202002 | | |
|---|---|---|---|---|---|---|---|
| Phone | Date | Records | Direction | Status | Records | Direction | Status |
| 7192580682 | 10/14/2021 | 4 | Outbound | Delivered | 4 | Outbound | Delivered ('0') |
| | 10/15/2021 | 3 | Outbound | Delivered | 6 | Outbound | Delivered ('0') |
| | 10/16/2021 | 2 | Outbound | Delivered | 2 | Outbound | Delivered ('0') |
| Total | | 9 | | | 12 | | |

Table 2 – Conflicting call records for 719-258-0682

41.    As seen in Table 2, DEINTRP reports three text messages sent to 719-258-0682 on 10/15/2021 – each one with a *Message_Delivery* status of "Delivered". But Band202002 reports six text messages sent to that same number, also on 10/15/2021, with each of those six messages also reflecting a *Message_Delivery* status of Delivered ('0'). And hence, DEINTRP reports a total of 9 text messages delivered to 719-258-0682 during 10/14, 10/15 and 10/16/2021, while Band202002 reports a total of 12 messages delivered to that number for the same time period.

42.    In this example, telephone number 910-964-8820 appears in the DEINTRP and Band202002 files, both produced by Bandwidth. As seen in Table 3 below, however, those two files report different call activity for 910-964-8820:

| Source | | DEINTRP | | | Band202002 | | |
|---|---|---|---|---|---|---|---|
| Phone | Date | Records | Direction | Status | Records | Direction | Status |
| 9109648820 | 10/15/2021 | 6 | Outbound | Delivered | 36 | Outbound | Delivered ('0') |
| | 10/15/2021 | 10 | Outbound | Undelivered | 0 | not found | not found |

| | 10/16/2021 | 4 | Outbound | Delivered | 11 | Outbound | Delivered ('0') |
|---|---|---|---|---|---|---|---|
| | 10/16/2021 | 8 | Outbound | Undelivered | 0 | not found | not found |
| | 10/18/2021 | 2 | Outbound | Delivered | 4 | Outbound | Delivered ('0') |
| | 10/18/2021 | 2 | Outbound | Undelivered | 0 | not found | not found |
| Total | | 32 | | | 51 | | |

Table 3 – Conflicting call records for 910-964-8820

43.     As seen in Table 3, there is conflicting data reported between the DEINTRP and Band202002 files for every date of text activity for 910-964-8820. On 10/15/2021, DEINTRP reports <u>six</u> delivered text messages to this number, while Band202002 reports **36** Delivered messages. On that same date, DEINTRP reports <u>10</u> undelivered messages, while Band202002 reports **none**. On 10/16/2021, DEINTRP reports <u>four</u> delivered messages, while Band202002 reports **11** delivered messages. Also on 10/16, DEINTRP reports <u>eight</u> undelivered messages, and Band202002 reports **none**. On 10/18, DEINTRP reports <u>two</u> delivered messages, but Band202002 report **four**. And also on 10/18, DEINTRP reports <u>two</u> undelivered messages, but Band202002 reports **none**. All told, DEINTRP reported <u>32</u> messages attempted to 910-964-8820, while Band202002 reported **51** attempted messages. And keep in mind that both DEINTRP and Band202002 were produced by Bandwidth in response to a subpoena from the Plaintiff.

44.     In this example, telephone number 559-909-9524 appears in the DEINTRP and Band202002 files, both produced by Bandwidth. As seen in Table 4 below, however, those two files report different call activity for 559-909-9524:

| Source | | | DEINTRP | | | Band202002 | |
|---|---|---|---|---|---|---|---|
| Phone | Date | Records | Direction | Status | Records | Direction | Status |
| 5599099524 | 9/29/2021 | 1 | Outbound | Delivered | 0 | not found | not found |
| | 10/4/2021 | 2 | Outbound | Delivered | 3 | Outbound | Delivered ('0') |
| | 10/4/2021 | 1 | Outbound | Undelivered | 0 | not found | not found |
| | 10/5/2021 | 1 | Outbound | Delivered | 2 | Outbound | Delivered ('0') |
| | 10/5/2021 | 1 | Outbound | Undelivered | 0 | not found | not found |
| | 10/6/2021 | 1 | Outbound | Delivered | 2 | Outbound | Delivered ('0') |
| | 10/6/2021 | 1 | Outbound | Undelivered | 0 | not found | not found |
| Total | | 8 | | | 7 | | |

Table 4 – Conflicting call records for 559-909-9524

45.     As seen in Table 4, there is again conflicting data reported between the DEINTRP and Band202002 files for every date of text activity for 559-909-9524. On 9/29/2021, DEINTRP reports <u>one</u> message delivered to this number, but Band202002 **does not report any message activity** on this date. On 10/4, DEINTRO reports <u>two</u> delivered messages, but Band202002 reports **three** delivered messages. Also on 10/4, DEINTRP reports a <u>single</u> undelivered message, while Band202002 reports **none**. On 10/5, DEINTRP reports <u>one</u> delivered message - Band202002 reports **two** delivered messages. On 10/5 DEINTRP reports a <u>single</u> undelivered message, while Band202002 reports **none**. On 10/6, DEINTRP reports a <u>single</u> delivered message, Band202002 reports **two**. And again on 10/6, DEINTRP reports a <u>single</u> undelivered message, while Band202002 reports **none**. In total, DEINTRP reports <u>eight</u> messages attempted to 559-909-9524, while Band202002 reports **seven** attempted messages for the same dates.

46.     Clearly, if two files produced by Bandwidth cannot agree on which messages were successfully delivered, Bandwidth's call records cannot be used to reliably identify any delivered messages. And remember that this delivery status only applies to messages being delivered to the Mobile Carrier – <u>not the end recipient's telephone handset</u>.

47.    This next example demonstrates discrepancies reported for telephone numbers appearing in Bandwidth's DEINTRP and Band202105 files. Here, telephone number 256-305-3545 appears in both files, for the date range of 8/27/2021 through 9/3/2021. See Table 5:

| Source | | DEINTRP | | | Band202105 | | |
|---|---|---|---|---|---|---|---|
| Phone | Date | Records | Direction | Status | Records | Direction | Status |
| 2563053545 | 8/27/2021 | 1 | Outbound | Delivered | 0 | not found | not found |
| | 8/27/2021 | 0 | not found | not found | 1 | blank | blank |
| | 9/1/2021 | 4 | Outbound | Delivered | 0 | not found | not found |
| | 9/1/2021 | 0 | not found | not found | 2 | blank | blank |
| | 9/2/2021 | 2 | Outbound | Delivered | 0 | not found | not found |
| | 9/2/2021 | 0 | not found | not found | 1 | blank | blank |
| | 9/3/2021 | 2 | Outbound | Delivered | 0 | not found | not found |
| | 9/3/2021 | 0 | not found | not found | 1 | blank | blank |
| Total | | 9 | | | 5 | | |

Table 5 – Conflicting call records for 256-305-3545

48.    As seen in Table 5, there is conflicting data reported between the DEINTRP and Band202105 files for every date of text activity for 256-305-3545. On 8/27/2021, DEINTRP reports one delivered message for this number, Band202105 reports **none**. However, on 8/27, Band202105 reports 1 message with a **blank** Message_Direction and **blank** Message_Status. While DEINTRP reports no such message. On 9/1, DEINTRP reports four delivered messages, while the only activity reported in Band202105 for that date is two messages with a blank Message_Direction and blank Message_Status. On 9/2, DEINTRP reports two delivered messages, but Band202105 only reports **one** message for that date with a blank Message_Direction and blank Message_Status. And on 9/3, DEINTRP again reports two delivered messages, but Band202105 only reports **one** message for that date with a **blank** Message_Direction and **blank** Message_Status. In total, DEINTRP reports nine attempted messages for this date range, while Band202105 reports **five** attempted messages.

49.     In this example, telephone number 423-223-3788 demonstrates conflicting data between the Band202002 and Band202105 files. See Table 6:

| Source | | Band202002 | | | Band202105 | | |
|---|---|---|---|---|---|---|---|
| Phone | Date | Records | Direction | Status | Records | Direction | Status |
| 4232233788 | 9/6/2021 | 4 | Outbound | Delivered ('0') | 1 | blank | blank |
| | 9/7/2021 | 1 | Outbound | Delivered ('0') | 1 | blank | blank |
| | 9/8/2021 | 1 | Outbound | Delivered ('0') | 1 | Outbound | Undelivered |
| | 9/9/2021 | 1 | Outbound | Delivered ('0') | 1 | Outbound | Undelivered |
| Total | | 7 | | | 4 | | |

Table 6 – Conflicting call records for 423-223-3788

50.     As seen in Table 6, there is conflicting data reported between the Band202002 and Band202002 files for every date of text activity for 423-223-3788. On 9/2/2021, Band202002 reports _four_ messages _delivered_ to this number, but Band202105 reports just **one record**, and that record includes a **blank** _Message_Direction_ and **blank** _Message_Status_. On 9/7, Band202002 reports one _delivered_ message, while Band202105 reports one message with a **blank** _Message_Direction_ and **blank** _Message_Status_. On 9/8, Band202002 reports one _delivered_ message, while Band202105 reports one **undelivered** message. And similarly on 9/9, Band202002 reports one _delivered_ message, while Band202105 reports one **undelivered** message. All told, Band202002 reports _seven_ attempted messages for this timeframe, and Band202105 report **four** attempts.

51.     Another example demonstrates conflicting data between Band202002 and Band202105, for telephone number 813-506-4043. See Table 7:

| Source | | Band202002 | | | Band202105 | | |
|--------|------|---------|-----------|----------------|---------|-----------|----------|
| Phone | Date | Records | Direction | Status | Records | Direction | Status |
| 8135064043 | 9/24/2021 | 1 | Outbound | Delivered ('0') | 1 | Outbound | Delivered |
| | 9/25/2021 | 0 | not found | not found | 1 | Outbound | Delivered |
| Total | | 1 | | | 2 | | |

Table 7 – Conflicting call records for 813-506-4043

52.     Here in Table 7, it is seen that Band202002 reports 1 delivered message to 813-506-4043 on 9/24/2021, as does Band202105. But for 9/25, Band202002 reports no attempted messages, while Band202105 reports **one delivered message**. And the total for 9/24-9/25/2021 for this number is reported as one (delivered) message in Band202002, and a total of two (delivered) messages in Band202105.

53.     There are also examples of conflicting call records between those reported by Twilio, when compared to those found in the With Providers file. For example, Table 8 below depicts contradictory call records between those two files for telephone number 956-999-1412.

| Source | | Twilio | | | With Providers | | |
|--------|------|---------|-----------|-----------|---------|-----------|--------|
| Phone | Date | Records | Direction | Status | Records | Direction | Status |
| 9569991412 | 10/5/2018 | 0 | N/A | not found | 1 | N/A | N/A |
| | 10/8/2018 | 0 | N/A | not found | 1 | N/A | N/A |
| | 10/9/2018 | 0 | N/A | not found | 1 | N/A | N/A |
| | 10/15/2018 | 1 | N/A | Delivered | 1 | N/A | N/A |
| Total | | 1 | | | 4 | | |

Table 8 – Conflicting call records for 956-999-1412

54.     As seen in Table 8, Twilio reports that there were no attempted messages to 956-999-1412 on 10/5, 10/8, and 10/9/2018. But the With Providers file reported **one message attempted on each of those same three days**.[5] Also, Twilio reports one delivered message on 10/15/2018, while With Providers also reports one message (without any delivery status) on that

---

[5] As described earlier, the With Providers file includes call records for attempted messages by date to each telephone number, but does not include *Message_Direction* or *Message_Status* columns.

same date. In total, Twilio reported just <u>one</u> attempted message, while With Providers reported **<u>four</u>** attempted messages for the same dates.

55.     And the last example of conflicting call records demonstrates different call records for telephone number 217-254-4760 between Twilio and With Providers, as seen in Table 9:

| Source | | Twilio | | | With Providers | | |
|--------|------|---------|-----------|-------------|---------|-----------|--------|
| Phone | Date | Records | Direction | Status | Records | Direction | Status |
| 2172544760 | 7/16/2018 | 1 | N/A | Undelivered | 1 | N/A | N/A |
| | 7/19/2018 | 1 | N/A | Undelivered | 1 | N/A | N/A |
| | 7/20/2018 | 1 | N/A | Undelivered | 0 | N/A | N/A |
| | 7/21/2018 | 0 | N/A | not found | 1 | N/A | N/A |
| | 7/23/2018 | 1 | N/A | Undelivered | 1 | N/A | N/A |
| Total | | 4 | | | 4 | | |

Table 9 – Conflicting call records for 217-254-4760

56.     As reflected in Table 9, Twilio and With Providers report the same number of messages attempted to 217-254-4760 on 7/16 and 7/19/2021 – with Twilio reporting those messages as undelivered, and With Providers does not include any delivery status. On 7/20, Twilio reports <u>one</u> undelivered message, while With Providers reports **<u>no attempted messages</u>** on that date. Conversely, on 7/21, Twilio reports <u>no attempted messages</u>, while With Providers reports **<u>one</u>** attempted message. And on 7/23, Twilio and With Providers both report one attempted message – Twilio's message appears as undelivered, while With Providers does not include any delivery status.

57.     My analysis revealed that there are at least <u>1.7 million</u> such conflicting call records when comparing the call record files described throughout these examples.

**Call records report messages successfully delivered to landline numbers. Landlines typically cannot receive text messages, and texts to landlines are not supported by Drips.**

58.     The text messages at issue in this case are defined as Short Message Service ("SMS") messages, and are traditionally sent only to mobile/cellular telephones. Indeed, Twilio –

one of the main aggregators used to send the text messages at issue – provides the following definition:

> SMS stands for *Short Message Service* and is another name for a *text message*. An SMS is generally sent from one mobile device to another over the cellular network. SMS is a text-only standard first formalized in 1985 in the Global System for Mobile Communications (GSM) standards.[6]

59.      There are a limited number of vendor solutions that advertise the ability to send text messages to landlines, but landline telephones do not have the capability to receive or display an SMS text message, and landline telephone carriers do not have the technical infrastructure to process SMS text messages. The vendor solutions that purport to send text messages to landline telephones require specialized set-up and interactions that are incompatible with the bulk text messaging that was processed by Drips in the instant case. For example, vendors who purport to send text messages to landlines might actually convert the text messages to emails, and deliver them to an email account. Other vendors might convert the text message to a voice message, to be sent to the landline as a traditional voice call, but also prompt both the sender before the message is sent, and often present the sender with a per-message charge before the message is sent. Some services may also require a landline telephone to pre-register with a given vendor or application in order to receive voice calls that have been converted from text messages.

60.      I was unable to find any documentation indicating that Drips supports sending text messages to landline telephones. Moreover, representatives from both Twilio and Bandwidth (the primary aggregators responsible for delivery of text messages to telephone carriers) testified that they were unaware of any capability to send text messages to landlines:

> Q. Can text messages be sent to land lines?
> A. I don't know.

---

[6] See *What is an SMS Short Message Service* at https://www.twilio.com/docs/glossary/what-is-an-sms-short-message-service (last visited 8/29/2023).

Q. So fair to say you don't know what type of message service there is for land lines?
A. Correct.
Q. Are any special telephone handsets required to receive text messages?
A. I don't know.
Q. Are you aware of whether land line numbers are required to preregister in order to receive text messages?
A. I don't know.

Stevens Dep. 38:9-20.

And:

Q. Do you know whether text messages over Twilio can be sent to land lines?
A. I don't know.
Q. Does Twilio use any process to determine if the destination telephone number is a land line or wireless?
A. I don't know.
Q. Do you know if the carrier that Twilio uses has any way of determining whether the destination telephone number is land line or wireless?
A. I don't know what the carrier does.

Njoku Dep. 37:11-20.

61.    Despite these restrictions, I was able to identify thousands of text messages appearing in the Bandwidth and Twilio call records indicating that they were successfully delivered to telephone numbers that were landlines at the time of those messages.[7]

62.    For example, telephone number 210-394-2629 appears in Table 10 below, depicting six messages reported as successfully delivered by Twilio, and the grey shaded row, reflecting porting activity for 210-394-2629 on 9/26/2018.

---

[7] To perform this historical wireless vs, landline determination, I used a subscription service provided by Interactive Marketing Solutions ("IMS"). IMS is a vendor regularly used by plaintiff experts in TCPA cases to identify the historical wireless/landline status of telephone numbers at issue. See *TCPA Litigation and Audit Services*, at https://www.ims-dm.com/mvc/page/tcpa-litigation-service/ (last visited 8/29/2023)

| Column 0 | Column 1 | Column 2 |
|----------|----------|----------|
| 2103942629 | 9/20/2018 | DELIVERED |
| 2103942629 | 9/25/2018 | DELIVERED |
| 2103942629 | 9/26/2018 | Becomes landline |
| 2103942629 | 9/27/2018 | DELIVERED |
| 2103942629 | 10/16/2018 | DELIVERED |
| 2103942629 | 10/17/2018 | DELIVERED |
| 2103942629 | 10/18/2018 | DELIVERED |

Table 10 – Twilio call records for 210-394-2629

63.     According to IMS, the 210-394-2XXX block to which 210-394-2629 belongs is a wireless block, making 210-394-2629 a wireless number by default. But also according to IMS, 210-394-2629 was ported from wireless to landline starting on 9/26/2018. This means that the text messages sent on 9/20 and 9/25/2018 were sent to 210-394-2629 when it was a wireless number, and these messages *may* have been successfully delivered, subject to the additional barriers to identifying successful messages described throughout this report.

64.     But the messages that are reported as successfully delivered by Twilio on 9/27, 10/16, 10/17 and 10/18/2018 are erroneous, since 210-394-2629 was a landline number for all those dates (beginning on 9/26), and there is no evidence that 210-394-2629 could have received any text messages as a landline.

65.     In another example, telephone number 913-666-8886 appears in the Bandwidth call records reflecting a total of 36 successfully delivered messages between 10/22/2021 and 10/26/2021. The DEINTRP call records report 12 of the messages, the Band202002 records report 12 messages, and the Band202105 records report 12 messages.

66.     But according to IMS, the 913-666-8XXX block to which 913-666-8886 belongs has never been a wireless block, which means that 913-666-8886 is a landline telephone number by default. Moreover, IMS reports that 913-666-8886 has <u>never</u> been ported from landline to wireless, and as such 913-666-8886 <u>has always been a landline number</u>.

67.     And since there is no evidence that 913-666-8886 could have received any text messages as a landline, Bandwidth <u>incorrectly</u> reported these 36 messages as successfully delivered. [8]

68.     In this example, telephone number 646-801-8214 is reported by Twilio as having received four successfully delivered text messages on 10/16, 10/19, 10/22 and 10/23/2018.

69.     According to IMS, the 646-801-8XXX block to which 646-801-8214 belongs has never been a wireless block, which means that 646-801-8214 is a landline telephone number by default. IMS also reports that 646-801-8214 was ported from landline to wireless from 1/12/2016 through 7/23/2018, but on 7/23/2018 it returned to its status as a landline number, making it a landline in October 2018 for all four messages reported by Twilio.

70.     And since there is no evidence that 646-801-8214 could have received any text messages as a landline, Twilio <u>incorrectly</u> reported these four messages as successfully delivered.

**Call records report messages successfully delivered to non-working telephone numbers – unable to receive calls or text messages, based on industry resources.**

71.     The North American Numbering Plan Administration ("NANPA") holds overall responsibility for numbering resources used by the United States and other North American countries. These numbering resources include management of Central Office codes (aka Area codes/exchanges, NPA/NXX codes, or 10,000 number blocks) that are available for use by

---

[8] For this telephone number, the DEINTRP, Band202002 and Band202105 call records reflect the same number of messages for each date. This *could* indicate that the three data sources are all reporting the same set of twelve messages. However, as described earlier, none of the call records include the time that each text was attempted. This means there is no way to identify any possible overlaps, and no way to verify whether the three data sources are reporting the same 12 messages, or 36 different text messages, or some number of messages between 12 and 36. In any case, Bandwidth clearly has incorrectly reported at least 12 successfully delivered messages for this number, and as many as 36 incorrect messages.

telephone carriers. NANPA's website[9] provides downloads of the utilized telephone number blocks. If a number block does not appear in the utilized database, then none of the numbers in that block are available to be used by telephone carriers. Number blocks that do appear in the utilized database are signified with a *USE* indicator. Those blocks with a *USE* indicator value of "AS" are assigned to a telephone carrier, and may include working telephone numbers. Those blocks with a *USE* indicator value of "UA" are generally unavailable for assignment to telephone carriers, and can only be used for special use codes, such as test numbers, and other reserved telephone numbers.

72.    I downloaded a database that identified all utilized Central Office codes used by US telephone carriers, effective through 11/14/2021. This list identifies the first six digits of any telephone number that can currently be in service through a US-based telephone carrier.

73.    I compared telephone numbers from the Twilio and Bandwidth call records against the NANPA utilized database, to find calls that were placed to numbers that were not available for assignment to telephone carriers as of the dates of the respective calls, but nonetheless were reported as successfully delivered according to Twilio and Bandwidth.

74.    This analysis revealed that there are several hundred calls appearing in the Twilio and Bandwidth call records, with disposition values indicating that the message was successfully delivered, but the telephone number was not a working number at the time of the call according to the NANPA utilized databases. Furthermore, I was able to sample more than 15 telephone numbers that were incorrectly reported by Twilio and Bandwidth as having successfully received messages based on this analysis, and place test calls to those numbers. In every case, the test calls did NOT

---

[9] See NANPA Central Office Code Assignment Records at
https://nationalnanpa.com/reports/reports_cocodes_assign.html (last visited 7/9/2023).

result in a completed call, and received an intercept message indicating that the call could not be completed as dialed.[10]

75.    For example, telephone number 321-653-3434 appears in the Band202002 call records, which indicate that **15** text messages were successfully delivered on 5/1, 5/2 and 5/4/2020. But the 321-653 number block for 321-653-3434 does not appear in the NANPA utilized database dated 11/14/2021, indicating that the entire 321-653 block, as well as the individual 321-653-3434 number, was not assigned to any telephone carrier. This means that none of the numbers in that block were working numbers, and that 321-653-3434 would have been unable to receive successfully delivered text messages. I placed multiple test calls to 321-653-3434 during the month of August, 2023, from my Verizon Wireless mobile phone. These calls each responded in the same way – the call did not ring, and was greeted by an intercept message that stated "Welcome to Verizon Wireless. Please check the number and dial again".

76.    In this example, telephone number 215-846-8079 appears in the Band202002 call records, which indicate that **three** text messages were successfully delivered on 5/4/2020. But the 215-846 number block for 215-846-8079 was reported as unassigned by NANPA on 11/14/2021, indicating that the number was not assigned to any telephone carrier for normal telephone service, and that the number would have been unable to receive successfully delivered text messages. Furthermore, I placed multiple test calls to 215-846-8079 during the month of August, 2023, from my Verizon Wireless mobile phone. These calls each responded in the same way – the call did not ring, and was greeted by an intercept message that stated "Testing 1 2 3 4 5. Testing 1. Welcome

---

[10] In a few examples, telephone numbers can appear in the NANPA database with an unassigned status value of 'UA', indicating that the block of numbers is reserved for special usage, such as test numbers, and 976 numbers. These numbers may also be used for special assignment such as recorded weather reports. In all cases, calls to such numbers would be unable to result in a successfully delivered text message.

to Verizon Wireless. Your call cannot be completed as dialed, as the called party is busy. Please try again later".

77.    Telephone number 954-872-5122 appears in the Twilio call records, which indicate **four successfully delivered messages** on 10/16, 10/17, 10/18 and 10/24/2018, but the 954-872 number block for 954-872-5122 does not appear in the NANPA utilized database dated 11/14/2021, indicating that the entire 321-653 block, as well as the individual 954-872-5122 number, was not assigned to any telephone carrier. This means that none of the numbers in that block were working numbers, and that 954-872-5122 would have been unable to receive successfully delivered text messages. I placed multiple test calls to 954-872-5122 during the month of August, 2023, from my Verizon Wireless mobile phone. These calls each responded in the same way – the call did not ring, and was greeted by an intercept message that stated "The number you dialed is not a working number. Please check the number and dial again".

78.    Telephone number 203-670-8891 appears in both the DEINTRP and Band202105 call records, with both files reflecting **three successfully delivered messages** on 9/29/2021. But the 203-670 number block for 203-670-8891 does not appear in the NANPA utilized database dated 11/14/2021, indicating that the entire 203-670 block, as well as the individual 203-670-8891 number, was not assigned to any telephone carrier. This means that none of the numbers in that block were working numbers, and that 203-670-8891 would have been unable to receive successfully delivered text messages. I placed multiple test calls to 203-670-8891 during the month of August, 2023, from my Verizon Wireless mobile phone. These calls each responded in the same way – the call did not ring, and was greeted by a tri-tone (intercept tone), followed by the message "We're sorry. You have reached a number that has been disconnected or is no longer in service. If you feel you have reached this recording in error, please check the number and try your call again".

79.     And in this example, telephone number 646-985-6512 appears in the Band202002 call records, which indicate that **six** text messages <u>were successfully delivered</u> on 5/24/2021. But the 646-985 number block for 646-985-6512 was reported as unassigned by NANPA on 11/14/2021, indicating that the number was not assigned to any telephone carrier for normal telephone service, and that the number would have been unable to receive successfully delivered text messages. Furthermore, I placed multiple test calls to 646-985-6512 during the month of August, 2023, from my Verizon Wireless mobile phone. These calls each responded in the same way – the call did not ring, and was greeted by an intercept message that stated "Welcome to Verizon Wireless. Your call cannot be completed as dialed, as the called party is temporarily unavailable. Please try again later".

80.     My analysis identified several hundred calls from the Twilio and Bandwidth call records, which indicated successful delivery of text messages to telephone numbers that could not have received calls or text messages – as evidenced by the national agency that manages the assignment of telephone numbers to carriers, as well as my own validation based on test calls. Plaintiff may contend that calls to such non-working numbers can be filtered from their proposed class, but such a workaround would suffer from multiple shortcomings.

81.     Even if Plaintiff were able to remove calls to telephone numbers that were unavailable for assignment to telephone carriers, such a solution would fail to address the underlying problem: that the call records used as the basis for Plaintiff's calls cannot reliably identify text messages that were successfully delivered to a recipient number. It has already been demonstrated that the call records at issue have incorrectly reported successful delivery of text messages, based on: (1) the fact that delivery status only reflects the success or lack of success in delivering messages to mobile carriers, rather than the telephone handset of the intended recipient;

(2) the fact that the call records produced report successful delivery of messages to landline telephones, which are unable to receive text messages without extreme accommodation – none of which appear to be supported by the text responsible message vendor, Drips; (3) the fact that the call records produced report successful delivery of messages to telephone numbers incapable of receiving calls or text messages, based on the national agency responsible for the assignment of telephone number blocks, NANPA. This evidence alone paints a clear picture that the call records used here cannot be trusted to report ANY text message as successfully delivered, without individual investigation and knowledge of each individual telephone number and call record.

82.    Moreover, in addition to the mistaken reporting of successful message delivery to telephone numbers that are part of unavailable blocks of numbers, the available call records also incorrectly report successful delivery of messages to numbers that belong to *available* blocks, but to individual numbers within those available blocks that are still non-working.

**Call records report messages successfully delivered to non-working telephone numbers – unable to receive calls or text messages, based on individual telephone number identification.**

83.    As described above, the Twilio and Bandwidth call records mis-identified hundreds of successfully delivered text messages to telephone numbers belonging to number blocks that were not assigned to telephone carriers, and none of the numbers within those blocks were capable of successfully receiving text messages.

84.    I also performed analyses of call records indicating successful text messages to telephone numbers that belong to number blocks that have been assigned to telephone carriers. In this instance, a telephone carrier obtains control of a block of 10,000 telephone numbers; that carrier is able to provision numbers within that block to end customers; and thus, individual numbers within that block become working numbers that are able to make and receive calls, and send and receive text messages (provided it is a mobile number).

85.    But within that same block of 10,000 numbers are those that have not been provisioned to end customers, and those are still non-working telephone numbers that cannot place or receive calls, and cannot send or receive text messages.

86.    By analyzing the call records for telephone numbers that reported both successful and unsuccessful message delivery, and placing test calls to some of those numbers, I was able to identify numbers appearing in the Twilio and Bandwidth call records that indicated successfully delivered messages to numbers that were non-working numbers, even though those numbers were part of number blocks that were available for assignment.

87.    For example, telephone number 956-566-1390 appears in the Bandwidth 202002 call records, which reflect <u>two</u> successfully delivered messages on 4/6/2021. According to NANPA, the 956-566 10,000 number block in which 956-566-1390 belongs had been available for assignment since 2002, so there are undoubtedly working telephone numbers within that block. But 956-566-1390 appears to be one of the numbers in that block that was not working on 4/6/2021, and is still not working. This is evidenced by the fact that the Bandwidth 202002 call records also reflect that there were an additional **<u>28 unsuccessful messages</u>** attempted to that number on the same date as the two purportedly successful messages – 4/6/2021.

88.    I also placed test calls to 956-566-1390 during August, 2023 from my Verizon Wireless cell phone. Those calls all produced the same result: the call did not ring, and was greeted with an intercept message stating: "Welcome to Verizon Wireless. Your call cannot be completed, as the called party is temporarily unavailable. Please try again later".

89.    In another example, telephone number 580-304-1112 appears in the Bandwidth 202002 call records, which reflect <u>two</u> successfully delivered messages on 3/17/2021. According to NANPA, the 580-304 number block in which 580-304-1112 belongs had been available for

assignment since 2002, so that block would have included both working and non-working numbers. But 580-304-1112 appears to be one of the numbers in that block that was not working on 3/17/2021, and is still not working. This is evidenced by the fact that the Bandwidth 202002 call records also reflect that there were an additional **45 unsuccessful messages** attempted to that number on the same date as the two purportedly successful messages – 3/17/2021.

90.     I also placed test calls to 580-304-1112 during August, 2023 from my Verizon Wireless cell phone. Those calls all produced the same result: the call did not ring, and was greeted with an intercept message stating: "Welcome to Verizon Wireless. Your call cannot be completed as dialed. Please check the number and dial again".

91.     In this example, telephone number 863-212-9967 appears in the Twilio call records, which indicate <u>two</u> successfully delivered messages on 8/29/2018 and 10/24/2018. According to NANPA, the 863-212 number block in which 863-212-9967 belongs had been available for assignment since 2009, so that block would have included both working and non-working numbers. But 863-212-9967 appears to be one of the numbers in that block that was not working during 2018, and is still not working. This is evidenced by the fact that the Twilio call records also reflect that there were an additional **four unsuccessful messages** attempted to that number on 8/21, 8/22, 8/23 and 10/25/2018.

92.     I also placed test calls to 863-212-9967 during August, 2023 from my Verizon Wireless cell phone. Those calls all produced the same result: the call did not ring, and was greeted with an intercept message stating: "The subscriber you have dialed is not in service. If you feel you've received this message in error, please hang up and try your call again later", followed by "Welcome to Verizon Wireless. Your call cannot be completed, as the called party is temporarily unavailable. Please try again later".

93.     And in this example, telephone number 870-690-0927 appears in the Band202002 call records, which indicate <u>two</u> successfully delivered messages on 4/5/2021. According to NANPA, the 870-690 number block in which 870-690-0927 belongs had been available for assignment since 2003, so that block would have included both working and non-working numbers. But 870-690-0927 appears to be one of the numbers in that block that was not working during 2018, and is still not working. This is evidenced by the fact that the Band202002 call records also reflect that there were an additional **86 unsuccessful messages** attempted to that number on the same date as the two purportedly successful messages – 4/5/2021.

94.     Once again, I placed test calls to 870-690-0927 during August, 2023 from my Verizon Wireless cell phone. Those calls all produced the same result: the call did not ring, and was greeted with an intercept message stating: "Welcome to Verizon Wireless. The number you dialed has been changed, disconnected, or is no longer in service. If you feel you have reached this recording in error, please check the number and try your call again".

95.     By way of analysis and testing against only a very small portion of the call records, I identified more than 30 telephone numbers that reflected successfully delivered messages, but proved to be unable of receiving calls or text messages. Table 11 below lists 30 of those telephone numbers ("TN") appearing in the call records; the call records source file ("Source") where the number appears; the count of Delivered messages ("Delvrd") reported in the call records; the count of Undelivered messages ("Undlvrd"); and the audio message(s) that were heard when test calls were placed to those numbers.

| TN | Source | Delvrd | Undlvrd | Test call result |
|---|---|---|---|---|
| 2013595173 | Twilio | 3 | 4 | Welcome to Verizon Wireless. The number you dialed has been changed, disconnected, or is no longer in service. If you feel you have reached this recording in error, please check the number and try your call again. |
| 2145645289 | Band202002 | 3 | 57 | The subscriber you have dialed is not in service. If you feel you've received this message in error, please hang up and try your call again later. Welcome to Verizon Wireless. Your call cannot be completed, as the called party is temporarily unavailable. Please try again later. |
| 2762180605 | Band202002 | 1 | 27 | Welcome to Verizon Wireless. Your call cannot be completed as dialed. Please check the number and dial again |
| 2819650715 | Twilio | 2 | 3 | The person you have dialed is not able to receive calls at this time |
| 3315880938 | Band202002 | 2 | 45 | The number you dialed is not a working number. Please check the number and dial again. |
| 3473300327 | Band202002 | 2 | 48 | The wireless customer you are calling is not available. Please try again later. Welcome to Verizon Wireless. Your call cannot be completed, as the called party is temporarily unavailable. Please try again later. |
| 4043458911 | Twilio | 2 | 3 | The person you are trying to reach is not accepting calls at this time. Please try your call again later. (recheck this message - may be: The # you dialed is not a working # ..) |
| 4237616747 | Twilio | 2 | 4 | Welcome to Verizon Wireless. The number you dialed has been changed, disconnected, or is no longer in service. If you feel you have reached this recording in error, please check the number and try your call again. |
| 4343909553 | Band202002 | 3 | 58 | Welcome to Verizon Wireless. The number you dialed has been changed, disconnected, or is no longer in service. If you feel you have reached this recording in error, please check the number and try your call again. |
| 4405298237 | Band202002 | 2 | 30 | The wireless customer you are calling is not available. Please try again later. Welcome to Verizon Wireless. Your call cannot be completed, as the called party is temporarily unavailable. Please try again later. |
| 5014087860 | Twilio | 2 | 3 | The subscriber you have dialed is not in service. If you feel you've received this message in error, please hang up and try your call again later. Welcome to Verizon Wireless. Your call cannot be completed, as the called party is temporarily unavailable. Please try again later. |
| 5037983608 | Band202002 | 2 | 84 | Welcome to Verizon Wireless. The number you dialed has been changed, disconnected, or is no longer in service. If you feel you have reached this recording in error, please check the number and try your call again |
| 5175263702 | Band202002 | 3 | 62 | Welcome to Verizon Wireless. Your call cannot be completed, as the called party is temporarily unavailable. Please try again later. |
| 5742225183 | Twilio | 2 | 3 | Welcome to Verizon Wireless. Your call cannot be completed as dialed. Please check the number and dial again |
| 5803041112 | Band202002 | 2 | 45 | Welcome to Verizon Wireless. Your call cannot be completed as dialed. Please check the number and dial again |
| 6024594020 | Band202002 | 2 | 44 | Welcome to Verizon Wireless. Your call cannot be completed as dialed. Please check the number and dial again |
| 6207780345 | Band202002 | 3 | 57 | Welcome to Verizon Wireless. Your call cannot be completed as dialed. Please check the number and dial again |
| 6307709269 | Twilio | 2 | 3 | Welcome to Verizon Wireless. Your call cannot be completed as dialed. Please check the number and dial again |
| 6784818423 | Band202002 | 2 | 30 | The service you're attempting to use has been restricted, or is unavailable. Please contact customer care for assistance. |

| 6825538695 | Band202002 | 1 | 92 | The subscriber you have dialed is not in service. If you feel you've received this message in error, please hang up and try your call again later. Welcome to Verizon Wireless. Your call cannot be completed, as the called party is temporarily unavailable. Please try again later. |
| 7062667094 | Twilio | 2 | 3 | The person you are trying to reach is not accepting calls at this time. Please try your call again later. Welcome to Verizon Wireless. Your call cannot be completed, as the called party is temporarily unavailable. Please try again later. |
| 7622181818 | Band202002 | 2 | 30 | Welcome to Verizon Wireless. The number you dialed has been changed, disconnected, or is no longer in service. If you feel you have reached this recording in error, please check the number and try your call again |
| 7656090585 | Band202002 | 3 | 57 | The service you're attempting to use has been restricted, or is unavailable. Please contact customer care for assistance. |
| 8044504251 | Twilio | 2 | 3 | The wireless customer you are calling is not available. Please try again later. Welcome to Verizon Wireless. Your call cannot be completed, as the called party is temporarily unavailable. Please try again later. |
| 8632129967 | Twilio | 2 | 4 | The subscriber you have dialed is not in service. If you feel you've received this message in error, please hang up and try your call again later. Welcome to Verizon Wireless. Your call cannot be completed, as the called party is temporarily unavailable. Please try again later. |
| 8706900927 | Band202002 | 2 | 86 | Welcome to Verizon Wireless. The number you dialed has been changed, disconnected, or is no longer in service. If you feel you have reached this recording in error, please check the number and try your call again |
| 9036029034 | Twilio | 2 | 5 | The wireless customer you are calling is not available. Please try again later. Welcome to Verizon Wireless. Your call cannot be completed, as the called party is temporarily unavailable. Please try again later. |
| 9039160213 | Band202002 | 72 | 70 | We're sorry. The number you have dialed has calling restrictions that have prevented the completion of your call. Welcome to Verizon Wireless. Your call cannot be completed as dialed. Please check the number and dial again. |
| 9124380234 | Twilio | 2 | 5 | Welcome to Verizon Wireless. The number you dialed has been changed, disconnected, or is no longer in service. If you feel you have reached this recording in error, please check the number and try your call again. |
| 9565661390 | Band202002 | 2 | 28 | Welcome to Verizon Wireless. Your call cannot be completed, as the called party is temporarily unavailable. Please try again later. |

Table 11 – sample non-working telephone numbers from assigned number blocks that erroneously report successfully delivered text messages

96.     There is significant evidence that has been described here, indicating that the delivery status appearing in the available Bandwidth and Twilio call records cannot reliably identify calls that truly resulted in the successful delivery of text messages to the telephone handset of a consumer. That evidence includes the following:

a.   The call records' delivery status only reflects the success or lack of success in delivering messages to mobile carriers, rather than the telephone handset of the intended recipient.

b.   The call records erroneously report successful delivery of messages to landline telephones, which are unable to receive text messages without extreme

accommodation – none of which appear to be supported by the text responsible message vendor, Drips

c. The call records erroneously report successful delivery of messages to telephone numbers incapable of receiving calls or text messages, based on the national agency responsible for the assignment of telephone number blocks, NANPA.

d. The call records erroneously report successful delivery of messages to telephone numbers belonging to number blocks available for assignment, where those individual numbers are still NOT assigned to working telephone service.

97.    Based on this evidence, it is my opinion that none of the available call records can be trusted to accurately reflect successfully delivered messages, without individualized knowledge of the circumstances and success or failure of each individual message, which can be achieved only through a detailed, message by message investigation.

**Opinion 2 - The available resources to determine the date that any telephone number was registered on the National Do Not Call Registry ("NDNCR") are severely limited, and that determination requires individualized investigation.**

98.    In order to identify telephone numbers eligible for Plaintiff's proposed class, Plaintiff must first identify the date, if any, that each telephone number at issue was registered on the NDNCR.

99.    This requirement alone presents significant roadblocks. In my experience, Plaintiff's experts often attempt to identify the historical date of NDNCR registrations by way of third-party vendors, such as Contact Center Compliance or PacificEast. But the proposition for any vendor to reliably identify the historical date of NDNCR registration is significantly more complex than simply checking to see if a number is currently on the NDNCR.

100.    This is because the NDNCR can ONLY be downloaded with the telephone numbers that are <u>currently</u> registered – the FTC does not provide any historical downloads of the NDNCR, nor does it provide any downloads with the dates that telephone numbers were registered. The only way for any vendor to determine the historical date of registration is to build and maintain their own database of telephone numbers and registration dates, by downloading a list of currently

registered numbers from the NDNCR every single day, computing their own registration dates by comparing today's download with yesterday's download, and identifying telephone numbers that were added or removed between yesterday and today. And this download process must have occurred flawlessly, every single day, 365 days per year, since the inception of the NDNCR in 2003 – roughly 7,000 consecutive daily downloads without fail.

101.     Vendors that have been used by plaintiff's experts also fail to provide any significant documentation of their services that purport to identify DNC registration dates, and fail to advertise any testing methods or statistics that could be used to determine the reliability or accuracy of such services.

102.     Moreover, my experience with these vendors reveals that any registration dates provided for telephone numbers only identifies when currently registered numbers were initially registered. I am not aware of any vendor that will identify a date range for a given telephone number that was registered during some interval in the past, but is no longer registered today.

**Home-grown NDNCR registration solutions**

103.     In my experience, experts for plaintiffs sometimes attempt to build and maintain their own repository of NDNCR registration dates to be used in the pursuit of identifying if and when given telephone numbers were registered on the NDNCR on the historical date(s) of call(s).

104.     But such repositories are subject to the same limitations and requirements as described above for vendor-supplied services that purport to identify historical NDNCR registration dates. In particular, home-grown NDNCR registration solutions must have downloaded copies of the NDNCR database every single day since the FTC's inception of the NDNCR in 2003. And such home-grown solutions must also aggregate each day's download with

the previous day's version, in order to determine which telephone numbers were added to or removed from the NDNCR each day.

105.    In some cases, home-grown solutions may propose that daily downloads of the NDNCR database are required only as far back as the calls at issue. However, such a solution would still be required to download the NDNCR every single day – without fail – for the required timeframe. In order to identify calls that violate the NDNCR, Plaintiff must be able to verify that any given telephone number was registered on the NDNCR for at least thirty consecutive days before any call at issue. If a home-grown solution is missing NDNCR downloads for just one or two of the thirty days that precede a given call, then there is no definitive evidence that the number was registered on the NDNCR for the requisite 30-day period prior to the call.

106.    Plaintiffs-side experts who attempt to use home-grown NDNCR registration solutions may argue that they can still identify calls in violation of the NDNCR when they do not have complete data for the 30-day period preceding any given call. One such argument may indicate that they can essentially ***guess*** that a given number has been registered on the NDNCR for 30 consecutive days, when they are in possession of data for a large portion of those 30 days, even though they are still missing registration data for the remaining days. This argument may be based on the contention that telephone numbers are rarely deleted from the NDNCR, and that a number that was registered for 27 of the 30 days prior to a call (for example) would indicate that the number *must* have been registered for the requisite full 30-day period. However, this is a faulty assumption that would result in an over-inclusive class that included an untold number of telephone numbers that were NOT registered for the full 30 days prior to a call.

107.    Indeed, telephone numbers are deleted from the NDNCR every day, and in many cases, a vast number of deletions occur. These deletions take place based on two processes: (1) a

Registry hygiene process is performed by software vendors on behalf of the FTC, in order to remove telephone numbers that were previously registered, but have been reassigned to new users; and (2) individual telephone numbers can be deleted by the owner of the number by simply calling a toll-free number from the registered phone.[11]

108.    For example, when analyzing the NDNCR downloads on 1/14/2021 and 1/15/2021, I found that **70,000 telephone number registrations were removed from the NDNCR in a single day**. It is also not unusual to find telephone numbers that were deleted from the Registry for just a single day, and then re-registered the following day. Analysis of the NDNCR downloads from 1/14/2021, 1/15/2021 and 1/16/2021 shows that there were 16 telephone numbers that were on the NDNCR on 1/14/2021, deleted on 1/15/2021, and then re-registered on 1/16/2021, after being off the Registry for just a single day. And just a month later (on 2/15/2021), nearly 300 of those numbers removed on 1/15/2021 were re-registered back on the DNC, having been off the DNC for just 31 days. The deletion of numbers is a regular occurrence, and re-registration of numbers within a short timeframe after deletion also occurs. As such, any assumption that a telephone number is registered on the NDNCR on a given day – without access to the actual Registry data for that day – is an irresponsible and **<u>invalid</u>** assumption.

**<u>Opinion 3 - There is no classwide method to identify the individual who registered a number on the NDNCR, and such identification will require individualized investigation.</u>**

109.    Subject to various exceptions and exemptions, 47 C.F.R. § 64.1200(c)(2) prohibits telephone solicitations to:

---

[11] See "Can I take my number off the Registry?" Yes. You can remove your number by calling 1-888-382-1222 from the phone you want to remove. Your number will be off the Registry the next day. Companies have to update their telemarketing lists within 31 days. At https://consumer.ftc.gov/articles/national-do-not-call-registry-faqs#questions (last visited 8/11/2023).

A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.

110.    It is my understanding that Plaintiff must identify calls in violation of the DNC rules as those that were placed to the subscriber who registered that number on the Registry.

111.    Plaintiff also acknowledges this requirement, when stating in the FAC that "The National Do Not Call Registry underlines consumers to register **their** telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2)." FAC ¶ 47 (emphasis added).

112.    This requirement is significant, because the NDNCR is rife with registrations that were created by someone other than the current subscriber or authorized user of the registered number.

113.    When creating NDNCR entries through the FTC's website[12] the user must only satisfy a basic, three-step process: (1) specify up to three phone numbers to be registered, and an email address; (2) verify the phone number(s) and email address are correct; and (3) open the specified email account, and click on a link provided in an email from donotcall.gov – thus registering the phone number(s).  Throughout this process, there are no validations to ensure the web user is actually associated with the telephone numbers being registered.  In fact, since the website allows up to three telephone numbers to be registered in a single transaction, it effectively invites its users to register numbers on behalf of others. Anyone with access to the internet, and

---

[12]    *See  Register  Your  Phone*  at  the  *National  Do  Not  Call  Registry*, https://www.donotcall.gov/register.html#step1 (last visited 9/11/2022).

access to an email account, may register ANY telephone number that they wish with the National Do Not Call Registry.[13]

114.    The process of telephone number reassignments – in which a subscriber drops her or his number, and that number is subsequently reassigned to another subscriber/user – creates significant problems with identifying current or historic subscribers or authorized users of telephone numbers.  Former FCC Chairman Ajit Pai has commented that "over 37 million telephone numbers are reassigned each year."[14] Recognizing the problems related to number reassignment, some data sources, such as the NDNCR, have implemented measures in an attempt to keep their data current.  As described earlier, FTC uses vendors to perform a hygiene process on its DNC registrations, in which existing registrations for telephone numbers that have been reassigned to new subscribers are removed from the NDNCR.  However, these processes are not without their limitations.

115.    The Do Not Call Improvement Act of 2007 specifies that NDNCR entries have no expiration date.  In order to alleviate the problem of unexpired registrations for numbers that have been reassigned, the FTC and FCC hires telecom vendors, such as PossibleNOW[15], to perform a hygiene process to remove registrations for reassigned numbers from the NDNCR.  However, this hygiene process only attempts to remove landline telephone numbers, and there is no reliable data source to track disconnects and reassignments of wireless telephone users. And with 37 million

---

[13] A subscriber may also register their telephone number with the NDNCR by calling the FTC DNC access number, from the telephone number they wish to register.

[14] DISSENTING STATEMENT OF COMMISSIONER AJIT PAI Re: In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, WC Docket No. 07-135 at 3.

[15] https://www.possiblenow.com/ (last visited 5/31/2022).

number reassignments each year, or 100,000 per day, the bulk of which are wireless numbers - the NDNCR is replete with stale, invalid DNC registrations.

116.     There is further evidence that even with the limited hygiene processes in place to remove expired landline registrations, the registries on the NDNCR are not reliable.  For example, my current landline telephone number – 860-XXX-7668 – was assigned to my account in October 2017, and I have been the subscriber of that number since then.  However, my telephone number has been registered with the NDNCR since September 19, 2007.  This means that my current landline telephone number is registered on the NDNCR, but was registered by someone other than me, and someone unknown to me. This also means that telemarketing calls to my number since October 2017 (and possibly longer)[16] would be reported as potential DNC violations even though I have never registered my number with the NDNCR.

117.     In another example, I registered my prior landline telephone number – 732-XXX-3902 – with the NDNCR in May of 2012.  I relinquished that number in May of 2017, and have not been the subscriber or user of that number since then.  However, as of August, 2023, that number is still registered on the NDNCR with my original registration date of 5/17/2012.  And any calls to that number could be considered NDNCR violations, even though I have not been the user or subscriber for <u>five</u> years.

118.     Simply put, persons could have telephone numbers on the NDNCR, yet not have registered that number themselves and could likely be unaware that their number is registered.  This could be due to the fact that someone other than the owner of the number registered that

---

[16] If multiple parties subscribed to my number before it was assigned to me, there is no guarantee that the subscriber who relinquished the number immediately before I became the owner had been the one to register the number with the NDNCR either.  Calls to the prior subscriber of my number could also have been erroneously reported as DNC violations.

number in the first place, or the number has been reassigned from the original registrant to another owner, but the registration has never been removed from the NDNCR. And stale registrations only increase in volume daily due to the abundance of wireless telephone number reassignments, and due to the absence of ANY comprehensive process to remove those out-of-date registrations. In such cases, the current subscriber who received any call would not be the "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." See 47 C.F.R. § 64.1200(c)(2).

**Re-registration of telephone numbers on the NDNCR results in misleading registrations.**

119.    Besides the condition just described – in which telephone numbers reside on the NDNCR that were registered by someone prior to the current owner – the NDNCR also allows for telephone numbers that are currently registered to be re-registered, but the registration date remains unchanged.

120.    For example, John Public can register a telephone number on the NDNCR on January 1, 2010. Mary Smith may then register that same number on the NDNCR on June 1, 2020, and receive an indication from the Registry that the number has been successfully registered, but the registration date on the NDNCR will still reflect the original registration date of January 1, 2010.

121.    I have confirmed that this is the true behavior of telephone numbers that are re-registered on the NDNCR, by performing the following steps:

    a.    On June 27, 2022, I verified that telephone number 813-222-9999 was not registered on the NDNCR. An image of the verification appears as Exhibit B-1.

b. On that same date, I then followed the three-step process described above, and registered 813-222-9999 on the NDNCR. An image of the confirmation for that registration – dated 6/27/2022 - appears as Exhibit B-2.

c. On July 7, 2022, I again followed the three-step process to re-register 813-222-9999 on the NDNCR. An image of the confirmation for that registration - dated 7/7/2022 - appears as Exhibit B-3.

d. On 9/1/2022, I then verified the registration for 813-222-9999 using the donotcall.gov website. I received an email confirmation indicating that the number was registered on the NDNCR on its original registration date – **6/28/2022**. An image of that registration verification appears as Exhibit B-4.

122.    As described in Opinion 2 above, third-party vendors who purport to identify NDNCR registration dates also provide timeframes of individuals who were associated with registered telephone numbers, and that data shows that - for the vast majority of registered numbers – the number was registered by a different individual than the person(s) who are associated with the number.

123.    As such, the registration dates on the NDNCR cannot be reliably used to identify when a number was registered, or by whom a number was registered. Any registration date on the NDNCR may indicate that a number was registered, but not by the current owner of the number. Any registration date on the NDNCR may indicate that a number was originally registered by one individual on that registration date, but does NOT indicate that the number was re-registered – by the same individual, or most likely by a different individual – on some unknown, later date.

124.    And even with substantial, individualized investigation, it would be improbable that the true individuals comprising Plaintiff's class who registered any given number could be

determined, and it would be equally improbable that the date any given number was re-registered could be determined.

**Opinion 4 - Vendors regularly used by TCPA plaintiff experts are unreliable, and fail to identify Mantha as the individual who registered his number on the NDNCR**

125.    In my experience, experts on behalf of plaintiffs in TCPA cases attempt to make use of third-party vendors in order to determine the date, if any, at which a given telephone number was registered on the NDNCR.

126.    One such vendor is PacificEast, which advertises that it provides "Data Enrichment and Verification Services".[17]

127.    I have rebutted opposing experts in several TCPA cases, in which those experts attempted to use PacificEast to identify the date at which given telephone numbers were registered on the NDNCR.

128.    Although I do not endorse PacificEast, or any similar vendors for the purposes of reliably identifying historical NDNCR registration dates, I performed a demonstration exercise for the instant case, in which I selected a random sample of the telephone numbers for which text message records were produced in this case. I arranged with PacificEast to perform several data analysis processes against those numbers, including identification of the date, if any, that each number was purportedly registered on the NDNCR. Additionally, I requested that PacificEast identify whether each telephone number was business or residential, whether each number was wireless or landline, and identify the names, addresses, and date range of each individual who was historically associated with each number.

---

[17] See https://www.pacificeast.com/ (last visited 9/3/2023).

129.    The sample telephone numbers sent to PacificEast included 4,161 numbers from the total text messages produced by Defendant[18], and represents a statistically significant sample of the overall text records.[19] I also filtered the numbers sent to PacificEast to include numbers that were found on the NDNCR as of 12/1/2020. Although I did not attempt to identify numbers that satisfied Plaintiff's class definition, I performed these filtering steps in order to more closely approximate a set of numbers that might be processed by Plaintiff's expert.

**According to PacificEast, Mantha was NOT the individual who registered his 508-353-9690 telephone number on the NDNCR.**

130.    As described above, I requested several data processes to be performed on the sample numbers sent to PacificEast, including identification of any DNC registration date, as well as identification of the names, addresses, and date range of each individual who was historically associated with each number.

131.    Mantha's 508-353-9690 telephone number, which was included in the sample sent to PacificEast, was identified as having been registered on the NDNCR on November 8, 2008.[20] PacificEast also identified two individuals as having been associated with that number during the

---

[18] The sample telephone numbers were selected from the file named "DRIPS000006 CONFIDENTIAL Pursuant to the Court's Default PO.csv", which included a total of 43,166,509 text messages. I shall refer to these text messages in this report as the "DRIPS000006 text messages". I selected a random sample of 4,155 numbers from the DRIPS000006 text messages, and also added Mantha's 508-353-9690, and five numbers belonging to Plaintiff's counsel, for a total of 4,161 telephone numbers.

[19] The DRIPS000006 text messages included 13,807,697 unique telephone numbers. According to the sample size calculator at https://www.surveysystem.com/sscalc.htm (last visited 8/12/2023), a sample size of 4,159 numbers represents a statistically significant sample from a population of 13,807,697 numbers with a confidence level of 99% and a confidence interval of 2.

[20] PacificEast's NDNCR registration date of 11/8/2008 for Mantha's 508-353-9690 is in agreement with the registration date of 11/7/2008 for that number, returned by the FTC's email-based registration verification service.

relevant timeframe: Joseph Mantha of Rutland, Mass., with an associated timeframe of December 15, 2009 through February 27, 2015; and Melissa Banks at the same address as Joseph Mantha, with an associated timeframe of February 3, 2022 through May 23, 2022. According to PacificEast, since Mantha was not associated with his number until 12/15/2009, and the number had already been registered on the NDNCR on 11/8/2008, Mantha's 508-353-9690 number was registered by some individual other than Mantha – 13 months before Mantha became associated with that number. Moreover, the second and only other individual associated with that number as identified by PacificEast – Melissa Banks – was also not associated with the number at its registration date. And it is also my understanding that Mantha has not claimed that he personally registered his number on the NDNCR, nor that his number was registered on the NDNCR during the time that he was the user/subscriber of that number.

**Two-thirds of the telephone numbers in the sample sent to PacificEast were found to have been registered by someone other than the individual(s) associated with that number**

132.    And Mantha's status as having a telephone number that was registered by a different individual is commonplace based on the data results from PacificEast. As described earlier, 3,823 telephone numbers processed by PacificEast were found to have a registration date on the NDNCR, and also returned at least one name of an individual associated with the number. But my analysis also shows that only 1,273 of those numbers were identified with an individual who was associated with the number at the time of registration, while 2,550 of those numbers identified individuals associated with a telephone number, but that association was outside the date of registration. In other words, the PacificEast sample revealed that fully two-thirds of the telephone numbers found to be on the NDNCR were registered by someone other than any of the individuals associated with that number – just as with Mantha's number.

**According to AT&T, Mantha was NOT the individual who registered his 508-353-9690 telephone number on the NDNCR.**

133.    I was also provided with a subpoena response from AT&T for Mantha's 508-353-9690 number, indicating that number was active with AT&T between 12/7/2006 and 10/21/2011 (which includes the NDNCR registration date), under the subscriber name Daniel Nordberg.

134.    Clearly, based on evidence from PacificEast as well as from AT&T, Mantha was NOT the subscriber or owner of 508-353-9690 in November of 2008, and that number was most likely registered on the NDNCR by someone other than Mantha.

### Opinion 5 - The NDNCR cannot prevent business numbers from registering, and there is no classwide mechanism available to reliably identify business numbers to be removed from Plaintiff's class.

135.    Plaintiff's class definition limits the proposed class to "a *residential* phone number that was listed on the National Do Not Call Registry for at least 30 days before the first call".[21]

136.    Moreover, the FTC's Do Not Call website instructs users that business telephone numbers are ineligible for do not call protection.[22]

137.    In order to identify an accurate set of numbers that satisfy Plaintiff's Do Not Call class, any methodology proffered by Plaintiff must *necessarily* identify business numbers, in order to filter those numbers out of any proposed class.

138.    In my experience as a TCPA expert, opposing experts for plaintiffs purport to be able to use vendor services on a classwide basis - such as those provided by LexisNexis or

---

[21] First Amended Class Action Complaint, D.E. 80, ¶ 62, Class 2, subitem (c) (emphasis added).

[22] See *National Do Not Call Registry FAQs*. Q: Can I register my business phone number or a fax number?' A: The Registry is for personal phone numbers. Business phone numbers and fax lines are not covered. At **https://consumer.ftc.gov/articles/national-do-not-call-registry-faqs#what%20doesn't%20do** (last visited 9/3/2023).

PacificEast - in order to identify whether given telephone numbers are business or residential. It is also my experience that these vendors cannot account for the fuzzy and subjective differences that now exist between business and residential telephone usage. It is further my experience that these vendors regularly mis-identify a significant number of telephone numbers as residential numbers, when evidence exists that those numbers have been used for business purposes.

**There is a blurred distinction between residential and business telephone numbers**

139.    Numerous factors now blur the difference between business and residential telephone numbers – making the process of positive identification virtually impossible, even with individualized investigation.

140.    Many telephone numbers under residential accounts may still be used as business numbers. This scenario will often be seen with small business owners, who operate their business from their residence, and use a residential telephone account for their business. Or the scenario may occur with employees using their residential telephone numbers as their business line when working remotely from home – particularly in this time of the Covid-19 Pandemic. Indeed, it's estimated that as many as 75 percent of employees used their personal telephones for business purposes before the Pandemic, and that number has surely increased since. And employees are often using their personal residential numbers for business simply as a matter of convenience.[23]

141.    Other scenarios may also exist that further muddle the distinction between business and residential addresses. For example, one family member may be the subscriber to a residential family plan that includes other family members, one or more of whom may use their particular telephone number under that plan as a business number.

---

[23] *How to Safely Allow Employees to Use Their Personal Cell Phones for Work* at https://www.dialpad.com/blog/how-to-safely-allow-employees-to-use-their-personal-cell-phones/ (last visited 9/3/2024).

142.    Many telephones may also be used in a mixed mode – where a given number is used a portion of the time for residential purposes, and the remaining portion for business use.

143.    It is also now common – particularly with the increase in remote work – for employers to request the employees to use their personal residential telephones for business purposes. In some cases, the employer may reimburse their employee for all or a portion of the cost of that line, in other cases there may be no reimbursement. And the use of personal phone lines for business use has become so prevalent that some states such as California have adopted requirements for employers to reimburse employees for their usage[24], and Federal tax rules have been adjusted to address business deductions for the use of personal phones for business purposes.[25] Once again, these examples further blur the distinction between residential and business numbers, and the ability to reliably discern them.

### PacificEast, a third-party vendor thar purports to identify business/residential status, cannot reliably do so.

144.    As described earlier, there is a blurred distinction between residential and business telephone numbers, and that blurriness is evident in the results returned from PacificEast. I performed a sampling of a small portion of the telephone numbers identified by PacificEast as residential numbers, and performed some web-based searches on those numbers to identify evidence of associated business usage. The purpose of this investigation was not to select a statistically-significant sample for extrapolation purposes, but rather to demonstrate that the

---

[24] *Calling All Employers — Either Prohibit Personal Cell Phones or Prepare to Pay for Business Use*, at https://www.silvertracsoftware.com/extra/employer-solutions-to-new-personal-cell-phone-laws (last visited 9/3/2023).

[25] *Tax Law Changes for a Claiming Cell Phone as a Business Expense*, at https://smallbusiness.chron.com/tax-law-changes-claiming-cell-phone-business-expense-56196.html (last visited 9/3/2023).

business/residential identification process by vendors such as PacificEast is subject to limitations and inaccuracies. In past cases, I have performed similar investigative analyses on the business/residential identification of PacificEast and other vendors, such as LexisNexis, and have found similar limitations and inaccuracies.

145.    After sampling a portion of the telephone numbers identified by PacificEast as residential, and searching for those numbers using websites such as Google, Google Maps, Yellowpages.com, buzzfile.com, Yahoo.com, and others, I was able to identify more than twenty telephone numbers – tagged by PacificEast as residential - with firm evidence of business usage. In some cases, a given telephone number was found to be associated with a single business, and multiple websites on which that number appears as a business contact number. In other cases, a given telephone number was found to be associated with multiple businesses, each having its own website reference.

146.    For example, telephone number 206-271-1988 was identified as residential by PacificEast. But my web-based analysis found the number to be associated with Jeffrey Serage Psychotherapy, in Seattle, WA. And Jeffrey Serage Psychotherapy, along with its 206-271-1988 telephone number, has its own website, at http://www.jeffreyserage.com/, as shown in Figure 1, below:



Figure 1 – Business website for Jeffrey Serage Psychotherapy 206-271-1988

147.    In another example, telephone number 702-870-1400 was identified as residential by PacificEast. But my web-based analysis found the number to be associated with at least three different businesses: LV Cellars, LLC, in Henderson, NV (https://www.manta.com/c/mm0rpj8/lv-cellars-llc); St. Marks Pizza in Las Vegas, NV (https://www.buzzfile.com/business/Villa-Pizza-702-870-1400); and World Wine Trading, also in Las Vegas (https://www.showmelocal.com/profile.aspx?bid=1520466). Each of the three websites lists the business name, associated with the 702-870-1400 telephone number.



Figure 2 – Business website for LV Cellars 702-870-1400



Figure 3 – Business website for St Marks Pizza 702-870-1400



Figure 4 – Business website for World Wine Trading 702-870-1400

148.    In another example, telephone number 508-221-1510 was identified as residential by PacificEast. But this number appears to be used for business purposes by one of Plaintiff's Counsel, Anthony Paronich. Figure 5 below depicts a signature page from Plaintiff's First Amended Complaint for the instant case, in which the 508-221-1510 number appears under Paronich's signature line. This further illustrates the lack of control of the NDNCR to prevent business numbers from registering. It also further illustrates the issue that PacificEast's erroneous identification of business numbers as residential – such as this one – could lead to damages being awarded to class members with telephone numbers that are not protected by the provisions of the NDNCR.

A.    Injunctive relief prohibiting Defendant from calling telephone numbers advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry or to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

C.    Because of Defendant's violations of the TCPA, Plaintiff seeks for himself and the other putative Class members $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3) and (c)(5).

D.    An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiff is proper representatives of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

E.    Such other relief as the Court deems just and proper.

**Plaintiff request a jury trial as to all claims of the complaint so triable.**

PLAINTIFF,

By their attorneys

*/s/Matthew P. McCue*
Matthew P. McCue
THE LAW OFFICE OF MATTHEW P. MCCUE
1 South Avenue, Suite 3
Natick, MA 01760
Telephone: (508) 655-1415
mmccue@massattorneys.net

Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510

15

Figure 5 – Business usage of Plaintiff's Counsel's 508-221-1510 number from First Amended Complaint

149.    Similarly, telephone number 617-738-7080 was identified as residential by PacificEast. But this number appears to be used for business purposes by another one of Plaintiff's Counsel, Edward Broderick. Figure 5a below depicts a subsequent signature page from Plaintiff's First Amended Complaint, in which the 617-738-7080 number appears under Broderick's signature line. Again, this further illustrates the lack of control of the NDNCR to prevent business numbers from registering, as well as a third-party vendor's erroneous identification of business numbers as residential.

anthony@paronichlaw.com

Alex M. Washkowitz
Jeremy Cohen
CW LAW GROUP, P.C.
188 Oaks Road Framingham, MA 01701
alex@cwlawgrouppc.com

Edward A. Broderick
BRODERICK LAW, P.C.
99 High St., Suite 304
Boston, MA 02110
Telephone: (617) 738-7080
ted@broderick-law.com

Dated: August 4, 2020

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 4, 2020, I electronically transmitted the foregoing to all

counsel of record via the electronic filing system.

By:  */Matthew P. McCue*
         Matthew McCue

16

Figure 5a – Business usage of Plaintiff's Counsel's 617-738-7080 number from First Amended
Complaint

150. Clearly, PacificEast's residential identification for the sample telephone numbers described herein was faulty. In addition to those for Paronich and Broderick, Table 12 below lists more than 20 telephone numbers corresponding to 23 businesses and 31 websites that I identified - by way of manual, web-based searches and analysis – that exhibit firm evidence of business association, for just several dozen of the telephone numbers that PacificEast identified as *residential* telephone numbers. It is my opinion – based on the preponderance of examples such as these, as well as the imprecise distinction between business and residential phone usage – that such individualized research and analysis is the only available method to identify business telephone numbers that must be excluded from Plaintiff's class.

| Number | Business Name(s) | Website(s) displaying business name telephone number |
|---|---|---|
| 2012478353 | NJ Easter Seal Society | http://www.eiginfo.com/Westfield/Aeder/19669/9860-09-31.pdf |
| | | https://files.eric.ed.gov/fulltext/ED262548.pdf |
| 2013200463 | Mobie Sports Media LLC | https://www.buzzfile.com/business/Mobie-Sports-Media-LLC-201-320-0463 |
| 2062553059 | Three Sisters Transport LLC | https://opengovus.com/washington-corporation/603199789 |
| 2062711988 | Jeffrey Serage Psychotherapy | http://jeffreyserage.com/ |
| 2134801200 | kwonmatae corp. | https://www.apollo.io/companies/Kwonmatae-Corporation/5569cb9c7369642579689700 |
| | | https://www.dutyfreekoreausa.com/korean |
| 3033789099 | Coldwell Banker Gelfond | https://www.denversluxuryhomes.com/ |
| 3216144343 | Hicks Enterprise LLC | https://www.bbb.org/us/fl/melbourne/profile/professional-services/hicks-enterprise-llc-0733-90758537 |
| | | https://www.buzzfile.com/business/Hicks-Enterprise-LLC-321-614-4343 |
| 5059174413 | Patricia Rael Training | https://www.facebook.com/PRTCLLC/ |
| | | https://us.need.tips/company/new-mexico/albuquerque/training-consultants/patricia-rael-training/5832516 |
| 5176476705 | Jessica's Day Care | https://recruitment.care.com/b/l/jessicas-day-care/portland-mi |
| 5178966886 | Arbonne International | https://www.dandb.com/businessdirectory/arbonneinternational-midland-mi-1976566.html |
| 5732301341 | Dozier & Associates | https://www.dandb.com/businessdirectory/dozierassociates-jeffersoncity-mo-20773520.html |
| 7028701400 | LV Cellars LLC | https://www.manta.com/c/mm0rpj8/lv-cellars-llc |
| | St Marks Pizza | https://www.buzzfile.com/business/Villa-Pizza-702-870-1400 |
| | World Wine Trading | https://www.showmelocal.com/profile.aspx?bid=1520466 |
| 7047913578 | Once Upon A Time | https://www.yellowpages.com/albemarle-nc/mip/once-upon-a-time-antiques-and-lamp-repair-472457660 |
| | | https://www.superpages.com/albemarle-nc/bpp/once-upon-a-time-antiques-and-lamp-repair-472457660 |
| 7062841752 | Cleaners Are Us | https://www.yellowpages.com/nationwide/mip/cleaners-are-us-19849950 |
| 7078880267 | Mark Stephen Le Roy Pharm | https://npiprofile.com/npi/1730481235 |
| 7152079276 | Grooming on the Go | https://www.mapquest.com/us/wisconsin/grooming-on-the-go-llc-456761553 |
| | | https://www.yellowpages.com/marshfield-wi/mip/grooming-on-the-go-454400662 |
| 7248660000 | Sharon Memorial Day Parade | https://www.sharonherald.com/news/sharon-s-memorial-day-parade-will-be-may/article_4010edeb-126e-50d3-b2f7-ad5a9c8f9ec9.html |
| 8152389000 | Schubert's Speed Shop LLC | https://heyautoshops.com/024508896/Schubert's_Speed_Shop,_LLC |
| 8183241807 | Suzanne G Schuda Therapist | https://www.b2byellowpages.com/company-information/095140483-schuda-suzanne-g.html |
| | | https://www.ehealthscores.com/care-llpptxwtlw-suzanne-schuda-agoura-hills.html |
| | | https://npiprofile.com/npi/1144358318 |
| 8312102741 | Little Belt Shop | https://www.buzzfile.com/business/Little-Belt-Shop-LLC-831-210-2741 |
| 9402249893 | Hilltop Property Management | https://www.buzzfile.com/business/Hilltop-Property-Management,-LLC-940-224-9893 |

Table 12 – Sample residential numbers found to be business numbers

### Opinion 6 – Data produced by Defendant includes vast evidence of consent, that requires manual, individualized analysis to determine its bearing on class members

151.    QuoteWizard has produced an extensive array of data that reflects the origins of the leads to which text messages were directed, as well as the consent provided when those leads were captured. The evidence produced by Defendant includes, but is not limited to:

    a.   Website screen images (in the form of HTML[26] documents) that reflect the final screen image that was presented to the lead when the lead's telephone number and personal data was submitted. These screen images also include the consent language as seen and agreed to by the lead.

    b.   Trusted Form certificate IDs, provided by third-party vendor ActiveProspect, which provide independent proof of consent.

    c.   Lead IDs and Compliance Reports, provided by third-party vendor Jornaya, which provide independent proof of consent

    d.   Millions of detailed, lead source code files, each containing dozens of data points related to a particular lead, that were captured by QuoteWizard and nearly 400 distinct lead vendors. The data points for each lead may contain any of the following, as well as additional detailed data points:

        i.   Telephone number(s) provided by the lead – primary and secondary numbers
       ii.   Date and time lead was captured
      iii.   Lead name, address, city, county, state, and zip
      iv.   Lead email address

---

[26] HTML (HyperText Markup Language) files consist of the source code that is used to display a given web page. When clicking on an HTML file, it will typically open the file in a web browser, and display the website image as it appeared to a web user. An HTML file can also be opened in a text editor, to display the actual source code. This source code can be used to identify all of the text and images that are displayed when opening the file in a web browser, as well as additional, internal data values that are not displayed in a web browser.

v.   Lead vendor name and ID
vi.   Website address from which lead was captured
vii.   IP address from which lead was captured
viii.   Web browser user-agent data: Web browser used (Mozilla, Chrome, etc.) and version number; Operating System used (Windows NT, Linux,,); Details of the device platform that the browser is running on (Android 11/ SM-G973U, iPhone/ iPhone OS 13_3_1, iPad/IOS, etc.)
ix.   Insurance quote-related data: gender; marital status; height/weight; date of birth; own/rent; number of family members; current insurance provider; current coverage info; medicare status; auto information; driver information; financial information; desired coverage information; etc.
x.   Active Prospect Trusted Form Lead ID and Trusted Form Certificate URL (see further description of Trusted Forms below)
xi.   Jornaya Lead ID (see further description of Jornaya Leads below)

**Examples of website screen images reflecting consent language**

152.     Defendant produced 677 examples of website screen images where leads were captured. Each of those screen images includes the telephone number provided by the lead, along with additional personal information, such as the lead's first name, street address, city, state and zip code. Also appearing on each screen image is the button selected by the lead to request their insurance quote, followed immediately by consent language by which the lead agrees to provide an electronic signature and express consent to receive communications (in the form of telemarketing calls, text messages, emails, and postal mail from a set of marketing and insurance sources at the phone number and addresses provided by the lead.

153.     For example, telephone number 201-362-3390 is reported in the Bandwidth 202002 call records as having eight successfully delivered text messages on 3/3 and 3/9/2021.

154.     Among the screen images produced by Defendant was the image displayed in Figure 6 below, which depicts a request for auto insurance quotes for a consumer with the first name of Rufus, at an address of 116 Lafayette Pl, Englewood, NJ, 07631, and a telephone number of 201-362-3390. The screen image also depicts the consent language described above, with an enhanced image of that verbiage appearing in Figure 7 below.



Figure 6 – Screen image of Quote request and accompanying consent for 201-362-3390



Figure 7 – Consent language captured for 201-362-3390

155.    This screen image indicates that the consumer provided telephone number 201-362-3390, along with other personal information, and requested insurance quotes to be provided, as well as providing express agreement to be contacted at the telephone number and address provided.

**Examples of Data Transfer files reflecting consent**

156.    Telephone number 201-362-3390 is also found in the Onsite Page Details[27] data produced by Defendant, and dated 10/17/2022. The Onsite Page Details 10 17 2022 data was produced in 274 CSV files, with each file representing leads produced by a different lead vendor. The record(s) for telephone number 201-362-3390 were found in the CSV file ADQUADRANT_ONSITE_XML.csv, indicating that this lead was provided by the lead vendor Adquadrant. Figure 8 below depicts an excerpt of one of the Page Details data records, for telephone number 201-362-3390:

---

[27] The Onsite Page Details files include lead and consent data in an open-format data exchange language known as JSON (JavaScript Object Notation).  It is my understanding that JSON-based data was one of the methods used to transmit lead and consent data to QuoteWizard.

```
"vendor": "AdQuadrant",
"clientip": "68.172.229.234",
"timestamp": "2021-03-03T23:07:59.433Z",
"contact": {
        "address": "116 Lafayette Pl",
        "age": 63,
        "birthdate": "1957-08-04",
        "city": "ENGLEWOOD",
        "email": "rmoore5749@gmail.com",
        "first_name": "Rufus",
        "gender": "male",
        "last_name": "Moore",
        "marital_status": "MARRIED",
        "own_or_rent": "own",
        "primary_phone": "2013623390",
        "self_credit_rating": "good",
        "state": "NJ",
        "zip_code": "07631"
    },
```

Figure 8 – Onsite Page Details 10 17 2022 excerpt for 201-362-3390

157.    As seen in Figure 8 above, there is additional lead data for 201-362-3390 that confirms the HTML screen image data appearing in Figure 6, as well as augmenting that lead data. For example, the "vendor" tag identified that the lead originated with the Adquadrant vendor. The

"clientip" tag indicates that the lead was captured from IP address 68.172.229.234.[28] The "timestamp" tag indicates that this lead was created on 3/3/2021, which demonstrates that the lead was captured, and provided consent, on or before the dates of the eight text messages reported by Bandwidth.

158.    In the "contact" section, the Page Details data confirms the lead's address, city, first name, telephone number, state and zip code, that all appeared in the HTML screen image data in Figure 6. It can also be seen that values were provided for: the lead's age ("63"); birthdate ("1957-08-04"); email address ("rmoore5749@gmail.com"); gender ("male"); last name ("Moore"); marital_status ("married"); own_or_rent ("own"); and self_credit_rating ("good") - which augment the Figure 6 HTML data.

159.    Moreover, as seen in Figure 9 below, the Page Details data for 201-362-3390 includes the same consent language that appears on the web page from Figure 7 above:

---

[28] According to the website WhatIsMyIP (https://members.whatismyip.com/ip-address-lookup/), the IP address 68.172.229.234 translates to Palisades Park, NJ. According to Google maps, Palisades Park, NJ is 3.6 miles from the Englewood, NJ address provided by the lead.

```
id=\"leadid_tcpa_disclosure\"> By clicking \"Get My Auto Quotes\" I provide my
electronic signature \n                   and express written consent to telemarketing
calls, text messages, emails, and postal mail from this Web site,
<span class=\"providers_link\">our marketing and re-marketing network, and up to eight
\n                   insurance companies or their affiliates</span> or representatives
at the phone number (including wireless number), \n                email address,
and postal address provided by me. I consent to calls and text messages transmitting
insurance quotes, \n             or seeking related additional information from
me, using an Automatic Telephone Dialing System or prerecorded or \n
artificial voices. I consent that my signature is not a condition of purchasing any
property, goods, or services \n                   and that I may revoke my consent at
any time.<br><br> \n             Additionally, by clicking \"Get My Auto
Quotes,\" I acknowledge that I have read, understand, and agree to this Web site's
                   <a href=\"?openaction=qw&amp;subaction=privacy\" target=\"_blank
\">Privacy Policy</a> and <a href=\"?openaction=qw&amp;subaction=terms\" target=
\"_blank\">Terms of Use</a>.<br><br>\n               I am directing this Web site
to share my information to the providers in our network for the purpose of providing me
\n                   with information about their financial services and products.\n
```

Figure 9 – Consent language for 201-362-3390 from Page Details data

**Examples of consent documented by Jornaya Compliance reports and Visual Playbacks**

160.    Jornaya (now known as Verisk Marketing Solutions) is a third-party vendor that provides its TCPA Guardian service, which can be integrated into web-based applications.   When properly integrated into a lead collection application, Jornaya TCPA Guardian can provide a TCPA Compliance Report, which provides a summary of the event during which the lead and related data was captured, as well as a description of the TCPA disclosures that were presented to the lead/consumer, and witnessed by Jornaya. In addition to the Compliance Report, Jornaya also provides a visual playback that displays the consumers interaction with the website as the lead data was entered and the consumer agreed to the TCPA disclosure.[29]

161.    The following example comes from the Jornaya Compliance Reports produced by Defendant.   This   example   was   produced   in   the   file   F52811E8-D5C1-56D0-0ACF-

---

[29] See Verisk Marketing Solutions' *Compliance Reports and Visual Playbacks* at
https://marketing.verisk.com/docs/compliance-reports-visual-playbacks (last visited 8/31/2023)

6712C7050ED3-compliance-report.pdf, and it provides confirmation of the lead capture for telephone number 803-238-9769.

162.    Telephone number 803-238-9769 appears in the Bandwidth Band202002 call records, which indicate that 102 successfully delivered text messages were sent to this number between 1/11/2021 and 4/2/2021. It will be demonstrated that, based on the consent data produced for this number, there was third-party verification of consent, including the date, time and location when and where that consent took place, video playback of the consumer's entry of lead data, and the consent disclosure language that was agreed to.

163.    The Jornaya Compliance Report includes a description of what a "lead" is and the process of capturing lead information. It also includes the following description of Jornaya's services, under the heading "Who is Jornaya ?":

> Jornaya provides a neutral, 3rd party technology-based platform that tracks the origin and history of a lead event and the consumer actions that occurred at that event. Jornaya's technology witnesses more than one hundred million lead events each month - tracking the actions that occur when a consumer fills out a lead form - or interacts with a call center representative to complete a lead form.

> Jornaya's Guardian services document the specific disclosure that was present on a lead form during a lead event and what type of consent was obtained, if any. Guardian services are intended solely and exclusively to provide companies with factual information about the environment that the consumer experienced.

> Companies that purchase 3rd party data leads, or generate their own data leads on their website forms or in their call centers, use Guardian services to provide neutral verification and assurance that the activities regarding the collection of the consumer's consent to be contacted meet their requirements. Guardian services do not capture and store personally identifiable consumer data and Jornaya does not buy or sell leads; we help to verify what happened at the lead event.

164.    Figure 10 below depicts the lead-specific information included in the Jornaya Compliance Report for 803-238-9769:



• Did the consumer consent to the TCPA disclosure that was displayed or provided?

**Lead Event Information:**

| | |
|---|---|
| Universal LeadID | F52811E8-D5C1-56D0-0ACF-6712C7050ED3 |
| Event Date | 03/26/2021 |
| Event Time | 04:28:37 PM EDT |
| IP Address | 172.58.157.211 |

**Disclosure Information:**

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | BY CLICKING THE "SEE MY RESULTS" BUTTON ABOVE, YOU ARE PROVIDING YOUR ELECTRONIC SIGNATURE IN WHICH YOU CONSENT, ACKNOWLEDGE AND AGREE TO THE FOLLOWING: (A) OUR TERMS OF SERVICE AND PRIVACY POLICY, INCLUDING OUR ARBITRATION PROVISION. (B) YOU ARE PROVIDING EXPRESS WRITTEN CONSENT TO SHARE YOUR INFORMATION WITH RATEMARKETPLACE, AND UP TO 5 INDUSTRY PARTNERS, OR AUTHORIZED THIRD PARTIES CALLING ON OUR, OR THEIR BEHALF WHO MAY CONTACT YOU FOR MARKETING PURPOSES. (C) YOU GIVE CONSENT (CONSENT NOT REQUIRED AS A CONDITION TO PURCHASE A GOOD/SERVICE) FOR THEM/US TO CONTACT YOU THROUGH AUTOMATED MEANS AT THE PHONE NUMBER(S) AND AT THE EMAIL ADDRESS YOU HAVE PROVIDED (E.G. AUTOMATIC TELEPHONE DIALING SYSTEM, TEXT, ARTIFICIAL OR PRE-RECORDED MESSAGING) VIA TELEPHONE, MOBILE DEVICE (INCLUDING SMS AND MMS) AND/OR EMAIL, EVEN IF YOUR TELEPHONE NUMBER IS CURRENTLY LISTED ON ANY STATE, FEDERAL OR CORPORATE DO NOT CALL REGISTRY. YOU MAY OPT-OUT FROM SMS OR TEXT MESSAGES AT ANY TIME BY REPLYING STOP. DATA AND MSG RATES MAY APPLY. AS AN ALTERNATIVE, YOU MAY CONTACT US BY EMAIL AT: CUSTOMERCARE@RATEMARKETPLACE.COM. YOU UNDERSTAND THAT YOU MAY REVOKE THIS CONSENT AT ANY TIME. |

**Visual Playback Link:**

https://vp.leadid.com/playback/F52811E8-D5C1-56D0-0ACF-6712C7050ED3?key=1616790517773

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

Figure 10 – Jornaya Guardian TCPA Compliance Report for 803-238-9769

165.    As seen in Figure 10, the Compliance Report provides the Jornaya Universal LeadID "F52811E8-D5C1-56D0-0ACF-6712C7050ED3"; the date and time the lead was captured "3/26/2021" and "04:28:37 PM EDT"; and the IP Address of the location of the lead "172.58.157.211".

166.    Based on the capture date of 3/26/2021 for this lead, and significant evidence confirming that this lead consented to receive telemarketing calls from Defendant, 94 of the 102 text messages reported as delivered to 803-238-9769 after 3/26/2021 would require identification and removal from any class proposed by Plaintiff.

167.    Furthermore, the Compliance Report also displays the TCPA disclosure language, which Jornaya verified to have been displayed to the consumer when they provided their personal information and selected the "See My Results" action from the website.

168.    And finally, the Jornaya Compliance Report provides a link to display a visual playback of the consumer's interaction with the website where their lead information was collected. Figure 11 below is a screen image of the visual playback provided by Jornaya, which replays website interaction as seen by the consumer while their lead information was collected:



Figure 11 - Overview of Visual Playback provided for lead capture of 803-238-9769

169.    The visual playback provides player controls (seen in the upper left of Figure 11) which allows the viewer to advance through the visual playback as seen in the center Figure 11. In Figure 11, the player controls indicate that the playback is being displayed for timestamp 0:00 out of a total time of 4:26, indicating that this is the image that the consumer viewed at the start of their interaction. Figure 12 below depicts the visual playback at a further point in the consumer's interaction:



Figure 12 – Visual playback captured at 2 minutes, 38 seconds into the consumer interaction

170.    Figure 12 above (captured at the 2:38 timestamp out of 4:26) depicts the consumer's

selection of a credit rating of "Good (680 – 719)". Figure 13 below depicts the visual playback at

a further point in the consumer's interaction:



Figure 13 - Visual playback captured at 3 minutes, 58 seconds into the consumer interaction

171. Figure 13 above (captured at the 3:58 timestamp out of 4:26) depicts the consumer's entry of first and last name. Notice that the values for the first and last name in the visual playback are obfuscated. This is because Jornaya does not divulge any personal information as provided by the lead in the Compliance Reports. However, if the lead information is known by a Jornaya user/customer, that information can be confirmed using the Match Data feature that appears in the left-side pane of the playback. An example of this feature will be described below.

172. As the final step in the visual playback for this lead, Figure 14 below depicts the visual playback at a further point in the consumer's interaction:



Figure 14 - Visual playback captured at 4 minutes, 3 seconds into the consumer interaction

173.    Figure 14 above (captured at the 4:03 timestamp out of 4:26) depicts the TCPA disclosure language presented to the consumer, prior to selection of the "See my results" button, and submission of their personal lead information. Figure 15 below is an enlarged version of that consent language as presented to the consumer/lead, which matches the language as displayed in the Compliance report, and depicted in Figure 10 above:

Figure 15 – TCPA disclosure as viewed by the consumer, prior to their submission of lead information for telephone number 803-238-9769

174.    As described above, Jornaya Compliance Reports do not disclose the personal lead information supplied by the lead, including the lead's telephone number. In the case of the example for telephone number 803-238-9769 just described, that telephone number was not provided with the Jornaya Compliance Report. Instead, the report was only identified by the Jornaya lead ID

(also known as a Universal Lead ID). In this example, that Lead ID has the value F52811E8-D5C1-56D0-0ACF-6712C7050ED3. This Compliance Report was part of a production of 56 Jornaya Compliance Reports, with Bates Stamps QUOTEWIZARD000681-886.

**Examples of Additional Data Transfer files reflecting consent**

175.    Throughout my analysis, I determined that the lead IDs appearing in these Jornaya Compliance Reports also appeared in another set of consent data that was produced by Defendant. For example, the lead ID F52811E8-D5C1-56D0-0ACF-6712C7050ED3 just described in detail is also found in the "Inbound XML" data produced by Defendant, and dated 10/7/2022[30]. The Inbound XML 10 7 2022 data was produced in 48 CSV files, with each file representing leads produced by a different lead vendor. The record(s) for lead ID F52811E8-D5C1-56D0-0ACF-6712C7050ED3 was found in the CSV file inbound_xml_SUITED.csv, indicating that this lead was provided by the lead vendor Suited. Figure 16 below depicts an excerpt of the XML data record, for lead ID F52811E8-D5C1-56D0-0ACF-6712C7050ED3:

---

[30] The Inbound XML files that were produced include lead and consent data in a tag-based data exchange format known as XML (Extensible Markup Language).  It is my understanding that XML-based data was one of the methods used to transmit lead and consent data to QuoteWizard

```
<GeneralInfo>
    <SourceId>SUITED</SourceId>
    <ConsumerIP>172.58.157.211</ConsumerIP>
    <PartnerId>10056</PartnerId>
    <PartnerLeadCreatedTime>2021-03-26T20:33:20.8843771Z</PartnerLeadCreatedTime>
    <LeadID>9A2F66E4-F6A6-4C3A-8471-A9F20121E39C</LeadID>
    <LeadId_Id>F52811E8-D5C1-56D0-0ACF-6712C7050ED3</LeadId_Id>
    <TrustedFormCertificateUrl />
    <SubSource>F4927BA8-FFFF-4E92-BB85-BDAF59D00611</SubSource>
    <Channel>Media</Channel>
    <QWSessionID>AA461C8C-C0F3-4D9A-B89C-D1F3805CBC04</QWSessionID>
</GeneralInfo>
<ApplicantContactInfo>
    <FirstName>HENRY</FirstName>
    <LastName>SURLES</LastName>
    <Address1>18 HICORIA CT</Address1>
    <Address2>18 HICORIA CT</Address2>
    <City>COLUMBIA</City>
    <State>SC</State>
    <ZipCode>29209</ZipCode>
    <EmailAddress>hsurles7@yahoo.com</EmailAddress>
    <PrimaryPhoneNumber>8032389769</PrimaryPhoneNumber>
    <DayTimePhoneNumber>8032389769</DayTimePhoneNumber>
```

Figure 16 – Inbound XML 10 7 2022 for 803-238-9769
(Lead ID F52811E8-D5C1-56D0-0ACF-6712C7050ED3)

176.     Figure 16 provides confirmation of data that appears in the Compliance Report for lead ID F52811E8-D5C1-56D0-0ACF-6712C7050ED3 (Figure 10), as well as providing additional data that supplements the Compliance Report data. The <SourceId> value of "SUITED" identifies the vendor who originated the lead. The <ConsumerIP> value of "172.58.157.211" confirms the Compliance Report IP address. The <PartnerLeadCreatedTime> specifies that the lead was captured on 3/26/2021, at 20:33 GMT (4:33 PM ET) which confirms the date and time (within 5 minutes) appearing in the Compliance Report. The <LeadID_ID> value of "F52811E8-D5C1-56D0-0ACF-6712C7050ED3" confirms the Universal lead ID from the Compliance Report. And additional data (appearing in the <ApplicantContact> section) augments the Compliance Report data, including: <PrimaryPhoneNumber> "8032389769"; <FirstName>

"Henry"; <LastName> "Surles"; <Address1> "18 Hicoria Ct"; <City> "Columbia"; <State> "SC";

<ZipCode> "29209"; and <EmailAddress> "hsurles7@yahoo.com".

177.    The lead capture date of 3/26/2021, as depicted in the Inbound XML data for 803-238-9769, once again confirms that 94 of the 102 text messages reported as successfully delivered to this number, would qualify as having been sent with the lead's consent, and would not qualify for eligibility in Plaintiff's class.

178.    And as described earlier, as part of the visual playback feature, Jornaya provides a Match Data feature that verifies if certain data values match those that were provided by the lead. Figure 17 below depicts the Match Data results for data values that do not appear in the Compliance Report, but were taken from the Inbound XML data corresponding to the Lead ID of F52811E8-D5C1-56D0-0ACF-6712C7050ED3:



Figure 17 – Match Data results for lead ID F52811E8-D5C1-56D0-0ACF-6712C7050ED3

179.    As seen in Figure 17, the Jornaya Match Data feature confirms with check-marks that the lead's first and last name, phone number and email address that appear in the Inbound XML record for this lead are matches for the data values that were provided by the lead on the lead-collection website. The feature also confirms the validity of additional data from the Inbound XML record, including the street address, city, state, and zip code. Finally, a control value of "Test field XXX" was tested, and the Match Data feature verified with an X-mark that this was not among the data values provided by the lead.

180.    It should be noted that the IP address for this lead (172.58.157.211) appears in both the corresponding Jornaya Compliance Report and the Inbound XML data. When validated using the WhatIsMyIP website, a location of Charlotte, NC was returned, which does not agree with the lead's provided address of Columbia, SC. This could be due to a number of reasons. The lead may have been physically located in Charlotte, NC when he provided his lead information, including his actual home address in Columbia, SC. The disagreement in location could also be due to inherent issues with the accuracy of IP-based geolocation services. For example, some estimates indicate that such services offer 55 to 80 percent accuracy for a user's region or state, and 50 to 75 percent accuracy for a user's city.[31] Questions regarding the location of IP addresses arose in this case regarding the lead information captured for Plaintiff's telephone number. That information indicated an IP address corresponding to a location in Morristown, NJ, but Plaintiff contends that that is not his address, and that, to his knowledge, he has not visited that location.[32]

---

[31] See *Everything You Need to Know About IP Based Geolocation* at https://www.if-so.com/geo-targeting/ (last visited 9/1/2023)

[32] It is also noteworthy that, as of the date of this expert report, Plaintiff has refused to divulge his actual IP address.

181.    In any case, conflicts such at this indicate the need for individualized investigation in order to validate some or all of the data that may appear in the consent data that has been produced by Defendant.

**Examples of consent documented by audio recordings**

182.    Another form of consent data that has been produced by Defendant are audio recordings, which memorialize telephone conversations in which consumers agreed to provide lead information and discuss quotes with agents representing Defendant. Two such audio recordings were produced with Bates numbers QUOTEWIZARD000679 and 680; and another 57 recordings were produced with Bates numbers QUOTEWIZARD001014 – 1070.

183.    One of these recordings was produced as 8032389769.wav, and represents a recorded conversation between Henry Surles and a quote agent. Mr. Surles is the lead who is associated with telephone number 803-238-9769, with the Lead ID F52811E8-D5C1-56D0-0ACF-6712C7050ED3, that has been described in the preceding paragraphs.

184.    During the recording, Mr. Surles confirms his first and last name with the agent, confirms that he resides in the state of South Carolina, that he lives in a single-family home as his primary residence, that he currently carries homeowner's insurance with State Farm, that he has not had his home insurance cancelled or lapsed in the past year, and that he would purchase an insurance policy within the next 60 days if presented with one that met his needs. Mr. Surles then agrees to be transferred to a licensed insurance agent.

185.    Notably, the lead's confirmation that he resides in South Carolina is an example of the type of individualized information that may confirm that his lead information was accurately captured, and that the translation of his IP address to a North Carolina location may have been due to limitations in the geolocation translation process.

**Examples of consent documented by Trusted Form documentation**

186.    Defendant produced multiple forms of consent data for telephone number 843-877-9591. The Bandwidth call records also reported 10 successfully delivered messages to 843-877-9591 between 5/25 and 5/26/2021, Consent data for this number was provided in the form of: (1) a Jornaya Compliance Report; (2) a consent record in the Inbound XML 10 7 2022 files; and (3) a consent record in the files produced from vendor Excel Impact. In this instance, there were **two separate** third-party verifications for telephone number 843-877-9591 – a Jornaya Compliance Report, and an Active Prospect Trusted Form Certificate.

187.    Similar to Jornaya, ActiveProspect provides a third-party lead verification service in the form of Trusted Form certificates. The Trusted Form service is also integrated into website applications that collect lead data. And when properly integrated, Trusted Form: will verify lead data that was entered on the given site; will provide identification of the website used to capture the lead data, and user agent identification of the device and software used to visit the website; and will provide a screen capture replay showing the consumer's entry of lead data into the website.

188.    Using the Excel consent file "QW - Auto_Home - Internal - 2021-03 - 2022-01.csv", I identified a record with telephone number 843-877-9591. This record included an internal lead ID value. Using the internal lead ID value, I cross-referenced to another Excel consent file "Internal with Trusted Form 2021-2022". This record included a column named trusted_form_id,    which    included    the    trusted    form    ID    value    of "49c3ff66011a84e6521fb5e8c499adfda23a73d9", as well as a web link to the Trusted Form Certificate for that lead.

189.    Figure 18 below depicts the Trusted Form Certificate of authenticity for the lead associated with telephone number 843-877-9591:



Figure 18 – Trusted Form Certificate of Authenticity for the lead associated with
telephone number 843-877-9591

190.    As    depicted    in    Figure    18,    the    trusted_form_id    value    of "49c3ff66011a84e6521fb5e8c499adfda23a73d9" appears near the top of the Certificate. That certificate also includes identification of: the date and time that the lead/consumer visited the lead collection website (5/20/2021, 5:30 PM ET); the time spent on that web page (2 minutes, 28 seconds); the URL of the lead collection website (https://www.quotesmatch.com/auto-form/); the IP address of the consumer's locations (198.29.61.117); the geo-location of that IP address (Loris, SC); and the user agent data that describes the browser and device used by the lead/consumer (Chrome mobile version on an Android device).

191.    The Trusted Form Certificate also provides a link via the "View Screen Capture" button to view a screen capture of the consumer's entry of lead data into the website, including the TCPA disclosure language. Figure 19 below depicts an image from the screen capture, which includes a portion of the lead data provided by the consumer, as well as a portion of the TCPA disclosure language:



Figure 19 – Trusted Form Screen Capture image for telephone number 843-877-9591

192.    A portion of the lead data provided can be seen in Figure 19, including the lead's state, zip code, email address, and telephone number. Figure 19 also depicts the beginning portion of the TCPA disclosure language agreed to by the lead.

193.    And the record in one of the Excel consent files used to identify this lead ("QW - Auto_Home - Internal - 2021-03 - 2022-01.csv") also included a column labelled *tcpa*, which included the full TCPA disclosure language presented to the lead/consumer. For the consent record corresponding to telephone number 843-877-9591, the consent language value in the *tcpa* column was:

{'call_consent': 1, 'text': 'By clicking the Get My Free Quotes button and submitting this form, I agree that I am 18+ years old and I provide my signature expressly consenting to receive emails, calls, postal mail, text messages and other forms of marketing communication regarding Auto Insurance, or other offers from the listed companies and agents to the number(s) I provided, including a mobile phone, even if I am on a state or federal Do Not Call and/or Do Not Email registry. The list of companies participating are subject to change. I will receive calls and/or texts from multiple companies in the list. Such calls and text messages may use automated telephone dialing systems, artificial or pre-recorded voices. I understand my wireless carrier may impose charges for calls or texts. I understand that my consent to receive communications is not a condition of purchase and I may revoke my consent at any time by calling us at 833-637-0318.', 'url': 'mobile.quotesmatch.com', 'sms_consent': 1, 'email_consent': 1}

194.    The IP address (198.29.61.117) from the Trusted Form Certificate was checked for geo-location using the WhatIsMyIP.com lookup tool. In this case, two locations were returned: one for Myrtle beach, SC, which is approximately 32 miles from the Certificate's location of Loris, SC; and one for Loris, SC, an exact match to the Certificate's location.

195.    And as described earlier, Bandwidth reported 10 successfully delivered messages to 843-877-9591 between 5/25 and 5/26/2021. Since the Trusted Form Certificate confirms that the lead consented to received calls at this number on 5/20/2021, then all messages reported by Bandwidth were sent with consent, and Plaintiff must provide a mechanism to identify those calls and remove them from any proposed class.

196.    As a side note related to this example, there are nearly 300,000 telephone numbers appearing in the Excel consent data that have Trusted Form Certificates associated with them. But in analyzing these records, it appears that the Trusted Form Certificates all reside in long-term storage with Active Prospect. This means that for each one of those 300,000 telephone numbers, the website link to the Certificate must be copied and pasted into a web browser, at which time a screen is displayed as seen in Figure 19A below:



Figure 19A – Long-term storage retrieval screen for Trusted Form Certificates

197.    In my experience, retrieval of the Certificate may take anywhere from a few hours to 24 hours or more, requiring the Certificate user to refresh their web browser, until the Certificate has been retrieved and is available for viewing. Once available (as seen in the example in Figure 19B below, the Certificate user must save images of the Certificate data to their own storage, before the certificate (and its associate replay feature) are returned back to long-term storage.



Figure 19B – Trusted Form certificate manually retrieved from long-term storage

198.    The manual effort required to retrieve some 300,000 consent certificates by this method is yet another example of the individualized processes that would be necessary in order to identify Plaintiff's class.

199.    Continuing with the example of multiple forms of consent for telephone number 843-877-9591, Figure 20 below depicts the second form of third-party verification of the validity of the lead data collected for this number, in the form of a Jornaya TCPA Guardian Report:



- Did the consumer consent to the TCPA disclosure that was displayed or provided?

**Lead Event Information:**

| | |
|---|---|
| Universal LeadiD | 7F846E33-A5C5-743B-AFCE-B72705F2573C |
| Event Date | 05/20/2021 |
| Event Time | 05:30:25 PM EDT |
| IP Address | 198.29.61.117 |
| Location (as indicated by IP address) | Loris,SC |

**Disclosure Information:**

| | |
|---|---|
| Labeled TCPA Disclosure Statement captured at the lead event: | BY CLICKING THE GET MY FREE QUOTES BUTTON AND SUBMITTING THIS FORM, I AGREE THAT I AM 18+ YEARS OLD AND I PROVIDE MY SIGNATURE EXPRESSLY CONSENTING TO RECEIVE EMAILS, CALLS, POSTAL MAIL, TEXT MESSAGES AND OTHER FORMS OF MARKETING COMMUNICATION REGARDING AUTO INSURANCE, OR OTHER OFFERS FROM THE LISTED COMPANIES AND AGENTS TO THE NUMBER(S) I PROVIDED, INCLUDING A MOBILE PHONE, EVEN IF I AM ON A STATE OR FEDERAL DO NOT CALL AND/OR DO NOT EMAIL REGISTRY. THE LIST OF COMPANIES PARTICIPATING ARE SUBJECT TO CHANGE. I WILL RECEIVE CALLS AND/OR TEXTS FROM MULTIPLE COMPANIES IN THE LIST. SUCH CALLS AND TEXT MESSAGES MAY USE AUTOMATED TELEPHONE DIALING SYSTEMS, ARTIFICIAL OR PRE-RECORDED VOICES. I UNDERSTAND MY WIRELESS CARRIER MAY IMPOSE CHARGES FOR CALLS OR TEXTS. I UNDERSTAND THAT MY CONSENT TO RECEIVE COMMUNICATIONS IS NOT A CONDITION OF PURCHASE AND I MAY REVOKE MY CONSENT AT ANY TIME BY CALLING US AT 833-637-0318. |
| Labeled TCPA Disclosure Statement captured at the lead event: | NO LABEL TEXT FOUND |

**Visual Playback Link:**

CONFIDENTIAL & PROPRIETARY

INFORMATIONAL PURPOSES ONLY. LIMITED DISTRIBUTION FOR INTENDED PARTIES ONLY

Figure 10 – Jornaya Guardian TCPA Compliance Report for 803-238-9769

200.    And the preceding examples represent just a small fraction of the millions of consent data records that have been produced by QuoteWizard. As seen in the Consent Summary section at paragraph 214 below, QuoteWizard has produced tens of millions of consent records for the telephone numbers to which text messages were sent, and those consent records include a vast array of data describing the leads associated with those telephone numbers, which serves as compelling evidence that those leads provided their personal information and consented to be contacted.

**Consent language found in inbound "do not call" text messages**

201.    As discussed, Defendant made use of the vendor Drips Holdings ("Drips") by way of various campaigns in order to send text messages to consumers. As part of that text message activity, it is also my understanding that Drips would analyze the verbiage of inbound text messages from consumers, using numerous criteria, purportedly in order to determine when a consumer might no longer wish to receive text messages. When Drips makes such a determination, it characterizes the consumer as "disqualified", and provides that information to the Drips customer that engaged Drips to send the text messages.

202.    The normal or default method used in text message campaigns – to determine when a text recipient no longer wishes to receive messages – is through the identification of standard keywords used in the text message industry, such as STOP, UNSUBSCRIBE or CANCEL.[33]

203.    Drips' disqualification process goes beyond the identification of these standard keywords. According to this text message vendor "Over the years, Drips has built out a system

---

[33] See the Mobile Marketing Association's *US Consumer Best Practices for Messaging*, at https://www.mmaglobal.com/files/Best_Practices_for_Messaging_Version_7.0%5B1%5D.pdf , which defines the recommended keywords END, CANCEL, UNSUBSCRIBE or QUIT, in addition to STOP, as opt-out keywords for text messaging campaigns. (last visited 9/3/2023).

with more than 800 million conversations and 2.7 billion touchpoints" in their attempt to analyze consumer text messages responses and determine when a consumer wishes to cease communications. Moreover, Drips states that "in just 60 days, Drips identified and categorized over 250,000 ways a consumer can express they do not want any further communications".[34] And yet, even with this huge business and technical investment, a trove of responses by consumers that appear to reflect the consumer's desire to *engage with* QuoteWizard were mistakenly identified by Drips' software as *opt-outs*. I was able to identify such consumer responses among the purported disqualified messages by way of manual review and analysis.

204.    During my analysis, I reviewed records from two files produced by Defendant with the names "DRIPS000005 - CONFIDENTIAL Pursuant to the Court's Default PO.csv" and "DRIPS000008 CONFIDENTIAL Pursuant to the Court's Default PO.csv". It is my understanding that these files were produced by Drips, that they represent messages determined by Drips to satisfy the "disqualified" criteria, and were received during a 60-day period in 2021.

205.    I was able to browse the records from the "DRIPS000005 - CONFIDENTIAL Pursuant to the Court's Default PO.csv" file ("disqualified records"), and observed that the verbiage found in many of the records <u>DID NOT</u> appear to indicate that the consumer wished to cease receiving text messages. Indeed, in many examples I was able to identify verbiage to the contrary – in which the consumer indicated that they wished to receive further calls or text messages. Some examples also seemed to indicate that the consumer wished to transact business with Defendant, is some cases explicitly asking for quotes.

---

[34] See Disqualified by Drips Infographic, at https://go.pardot.com/l/775223/2022-08-30/3fbvg5/775223/1661874575yIAEruiD/Disqualified_by_Drips_Infographic.pdf (last visited 9/3/2023)

206.     For example, telephone number 609-816-2051 is reported in the DRIPS000006 text messages as having text messages sent to it on four dates: May 5th, 7th, 8th and 9th, 2021. According to the disqualified records, an inbound text message was sent to QuoteWizard from 609-816-2051 on 5/9/2021 with the verbiage "I've submitted the info online. What more do I need to do to get a quote?". Manual interpretation of this inbound message indicates that the consumer at 609-816-2051 did NOT ask to stop further communications (which is the purported content of the disqualified records), but rather the consumer appears to indicate that they willingly provided an online request to receive a quote, and is now asking how to continue that quote process with QuoteWizard. A subjective review of these messages might determine that the consumer's reply on 5/11/2021 indicated that they were consenting (or had previously consented) to be contacted, or that the consumer either started or was continuing in an established a business relationship ("EBR") with Defendant. If that were the case, then any possible putative messages, such as those on 5/5/2021 through 5/9/2021, would not be eligible for class inclusion. And it is my opinion that there is no automated, classwide mechanism that Plaintiff could use in order to: review the content of the inbound text messages; determine which of those messages qualify as consent and/or the existence of an EBR; determine the scope in time to which any consent/EBR applied; and compare that scope in time to any outbound text messages that might otherwise satisfy Plaintiff's class criteria.

207.     In another example, telephone number 231-510-0692 is reported in the DRIPS000006 text messages as having text messages sent to it on two dates: 5/10/2021 and 5/13/2021. According to the disqualified records, an inbound text message was sent to QuoteWizard from 231-510-0692 on 5/13/2021 with the verbiage:

> I have just been very busy unexpectedly this week.  My cat passed away yesterday and now I have to bury him.  Please add a choice with another car. 2007 plymouth van.

Don't have any more info at the moment.

Manual review of this inbound message indicates that the consumer at 231-510-0692 did NOT ask to stop further communications, but to the contrary that consumer is providing additional automobile information to Defendant, with the implication that they desire a quote for that auto, in addition to any others that were previously specified by QuoteWizard or the consumer. Moreover, the consumer appears to be fully engaging with Defendant, by volunteering personal information.

208.    In this next example, telephone number 813-240-6895 is reported in the DRIPS000006 text messages as having text messages sent on tow dates: 4/8/2021 and 4/9/2021. According to the disqualified records, an inbound text message was sent to QuoteWizard from 813-240-6895 on 4/9/2021, and included the message:

> Can u call me in the am   813 240 6895.   I don't even drive 50 miles in 2 or 3 weeks n I can tell u the ins I now have with State Farm n I have been with them for years.  I believe I may have too much ins

Once again, manual review of this response from the consumer indicates that the owner of 813-240-6895 did NOT ask to stop further communications. Conversely, that consumer is asking to be called at the same number to which Defendant's text messages were sent. Also, the consumer is providing Defendant with information about their driving habits, as well as identifying their current insurance carrier, with the implication that they would like to reduce their coverage. This information seems to clearly indicate that this consumer wishes to engage in or continue a business relationship with QuoteWizard.

209.    Table 13 below lists 60 text message responses that I identified by way of individualized review of those produced by Defendant. As described, these responses – which are only a small portion of those that appear in the disqualified records – not only fail to describe any

desire by the consumer to cease communications, but they appear to describe a desire by the consumer to continue a business conversation with Defendant. Among these text message responses, it can be seen that the consumers are providing the following types of information to Defendant: current insurance info, such as premiums being paid, premiums desired, current insurance carriers being used, types of vehicles being covered, addresses of homes to receive possible quotes, driver's license numbers, driving habits, etc.; requests for further text messages to be sent to consumers; requests for calls to be placed to consumers; requests to be contacted at a later date; requests to be called or messaged at specific times; confirmation that consumer info had been provided online; confirmation that the telephone number that the consumer wishes to be contacted at was the same number to which text messages were sent; personal information about the consumer, such as their height and weight, medications used, or details about their pets and habits; and so on.

| Number | Inbound text message from consumer |
|--------|-----------------------------------|
| 2017041712 | Please give me a call today after 2pm. If you cant provide a quote for me that is not involving Amerihealth, and is under not a crazy number we don't need to talk |
| 2056167562 | Sorry.. ugh! I have to blow you off again. It's a crazy week. My brother in law had open heart surgery and about to head to UAB. How about tomorrow at 10a? |
| 2143251916 | Amanda, I have a a steady Geico, I'm paying $75 - not sure you can match it . |
| 2292513829 | Used auto with payments at 250 Rogue, older 4 runner. |
| 2315100692 | I have just been very busy unexpectedly this week.  My cat passed away yesterday and now I have to bury him.  Please add a choice with another car. 2007 plymouth van. Don't have any more info at the moment. |
| 2488943953 | 248 894 3953 us my cell, which we are SMS texting right now |
| 2542305280 | I have a 03 Ford expedition I need a quote for inc on it |
| 3133207057 | Yes but phone was on vibrate and I didn't hear it in the other room |
| 3145373384 | Let's do this another day cause I don't have a car yet and I'm experiencing a very BAD HEADACHE right NOW So Sorry but I need a Long Nap after taking Medicine |
| 3219874942 | Every time they say they can beat it , I'm paying 282 per month, 2005 honda crv , 2007 honda accord , collision & liability, 500 dollar deductible, roadside assistance, we have I ticket getting ready to drop off in a couple of months & they gonna drop 60 to 70 a month , if you can't save me a considerable amount NOW , I'm not interested !  Thank you for trying |
| 3864021507 | I do need insurance and I'm working right now. I get off at 6:30 tonight |

| 4042774102 | Amanda I need health coverage for 1 month, thats it! October between Cobra expiration & Disability Medicare kicking in after 2 year wait |
| 4045938119 | Hey! I deliver with Uber and think you should try it too. Sign up with my referral link today and you could qualify for a new promotion where you are guaranteed to make at least $800 in total payout for your first 100 trips: https://www.uber.com/signup/drive/deliver/?invite_code=t8tw15pq5 |
| 4106030500 | Call right now.  My phone gets 500 to 800 spam calls every day so your number came up as spam. I'll watch for it. |
| 4172471553 | Not interested unless the annual car full coverage is 700.00 for a year |
| 4192983477 | I see your text message I am currently with State Farm I was just looking at what other insurance companies were doing not really wanting to change |
| 4235193611 | I got a quote of 317 for 6 months from progressive can you beat it |
| 4235256441 | Sorry I've been on phone since 8:30 this morning.  I found policies that paralleled exactly what I had, and was able to add 1M umbrella at no cost, plus saving $829 for 6 months. Thanks for your help, sorry I look at so many in one day, and you weren't able to reach me |
| 4784421464 | I get so many spam calls, if wouldn't mind just send me a text message! |
| 5039978913 | Not until June when my 2018 accident gets dropped from my record |
| 5104153443 | I really need to get insurance, I didn't know I didn't have coverage worth the one through Progressive.  I guess my auto pay didn't go through so they didn't try again and I didn't notice.  I really was sick and still watching 3 children |
| 5125150948 | Hello Amanda Thank you for reaching out. I live in Texas. I am 57, female, non-smoker, no health issues, light drinkerI am currently on my husband's individual plan as his spouse non-employer). He will be on Medicare 6/1/2021. I need my own plan. Can you help? Meds: Trazadone 25mg/night; Lexipro 15mg/day; Singular Zyrtec |
| 5164490177 | Amanda, Sorry I didnt get back to you, somethings came up that have kept me out of town. Im back, and I need insurance by the end of the day Tues, April 6. You can call me at this # anytime, now if you want. Thanks. |
| 5169932645 | Just so I know do you give a discount for driving my car very little.I barely use it. |
| 5743613579 | Low income (under $50,000 yr) family of 4 and available in Elkhart County Indiana. Ages 52,45,18 & 15 |
| 5807890473 | Amanda I have car insurance. To me it's a little high but I have a 2020 car |
| 6098162051 | I've submitted the info online. What more do I need to do to get a quote? |
| 6107374199 | Amanda my renewal for insurance is 7/2021 & I will revisit beginning of June. |
| 6196740453 | Well hopefully 10 or 11am tomorrow we'll be ok with you. I'm really hoping to find some better AUTO + HOME INSURANCE SOON. SORRY ABOUT TODAY! |
| 6197543294 | I apologize. Im.interested in paying less.for auto insurance for sure. I've been busy however, moving around, looking for a decent and not too expensive motel to stay in thats safe. Its me, my big Akita Husky dog and 5 cats...living motel to motel while I look for work, stay one step ahead of my Narcissistic ex boyfriend, and scour the internet for an affordable place to live that we can all fit.in and will even talk to me because I'm not working and haven't used any credit in 6 months. I've been at this for months but I'm still not used to it. I need to pull up my policy because I paid it off for 6 months and don't even remember exactly what coverage I have. I'll do that in a bit and.we can talk tomorrow at 12:30pm if.that.works.for.you. Sorry for the melodramatic sob story. Sometimes.I just gotta get.it.out. Thanks. |
| 6199447290 | OK let's just get to the bottom line I have insurance right now with Wawnesa, so far I haven't really found anybody to beat them I'll pay 1200 and something dollars a year so before you waste my time I waste yours can you send me back perspectives if you can beat that or not |

| | |
|---|---|
| 6612121937 | Thank u for ur interest, at this time I'm only chking quotes for upcoming renewal in June |
| 6784376781 | Tomorrow (Wednesday March 17) around 12 noon if possible. I own two trucks and want a better deal+ renter's ins. please. Also. Could you please text me prior to calling? I am screening calls to avoid scammers and general pains in the butt. Thank you. D |
| 6786182611 | I'm very interested in affordable plans. My DL is 059203075 I have 2019 Silverado and 2005 Corvette. Full coverage minimum on both. Don't contact me until you have fair pricing with my DL and my vehicles. |
| 6786739096 | I'm sorry I'm not sure why I didn't hear the call can you call me tomorrow at 230pm? |
| 7202883956 | Hi Amanda.. I will be free on Saturday... but there is a litlle detail.. I don't speak English, I'm learning. I need options for the insurance of my car. Thx |
| 7248222474 | How at 2:00 |
| 7323973759 | I need to push back the time |
| 7324393760 | I have Nissan Altima 2014 & Lexus RX 350, 2010 . Looking for comprehensive insurance. Three drivers. |
| 7344787844 | Amanda I'm I'm interested I just don't have any time right now there a chance that I can get ahold of you this evening or early tomorrow cuz I am interested in finding out about house insurance alright thank you Amanda talk to you later bye-bye |
| 7574776604 | Good afternoon already got Medicare do I need a second health insurance |
| 7653319117 | Home and auto. I am really busy. I'm not dissatisfied with the insurance we have, was just going to compare |
| 7852247453 | Hey Amanda do you have an opening anytime next week? My hair is a mess. Thanks if you do |
| 7852309127 | I apologize. I didn't recognize the phone number. I'm at work and am unable to talk right now perhaps Thursday. Is this the phone number you will be calling from? |
| 8017924802 | In a few weeks. Thx We're dealing with some serious unexpected medical issues right now. |
| 8132406895 | Can u call me in the am   813 240 6895.  I don't even drive 50 miles in 2 or 3 weeks n I can tell u the ins I now have with State Farm n I have been with them for years.  I believe I may have too much ins |
| 8132445262 | Amanda, this is Carol Austin and we also have another car besides a Subaru 1998 I have a Camry 2011. if you could give me a breakdown for a yearly rate. I also pay monthly to Liberty insurance give me a price how much it would be monthly for both cars for a yearly rate. This weekend is Mother's Day I have my son here so I will call you next week thank you. So you can work out a plan from the information I gave you. Thank you!!!!! |
| 8142014912 | I am.  I only want basic coverage with no more than a 5,000 deductible. Only catastrophic items. I am not interested in dr's visits ect. I am 55 my date of birth is 10/25/1965. I am 5'3" and 240 lbs I am at work now I work for a nonprofit.  So less out of pocket the better |
| 8179139519 | I have to have Home Ins with it. Need to keep them together. |
| 8186130972 | I don't wanna do alot of talking I just wanna look at quotes. |
| 8186450796 | Give me a quote for a house located at 19532 Victory Blvd Tarzana Ca 91335 and a 2006 honda odyssey. I have auto insurance with 21st century and home insurance with farmers. |
| 8329216127 | here's what I'm paying now if your insurance is any higher than this im not interested. my home owners insurance is $400 with a $1,000 deductible. my windstorm and hurricane is $1,400 |
| 8432672988 | Yes I do .i have INS with field INS. But they won't call me . do lets do this. I need a quote for a 2800 sqft house we have 2 other structures. |
| 9018704499 | Came at 1:15. Text first so I won't confuse you with the scammers and ignore. Or better yet what number should I be looking for? |

| 9143744170 | Amanda I'm sure you already have the information on the four cars that I have insured and I'm sure you know that I'm insured with allstate paying $2000 every 6 months so if you can beat that text me back if not there's no reason for you to use your time on me |
| 9193328618 | I'm looking for nonowners insurance to get my license.. that's all I need. Nothing more . Nothing less |
| 9252386066 | If the estimate is below $500, I am interested. If not, I am not interested |
| 9496835680 | 2020 Tesla with Geico for 200 a month nobody can beat it |
| 9517199577 | Sorry, do not call me txt better, because I am deaf. Or you can also email me. |

Table 13 – Sample text messages from consumers providing possible consent or EBRs

210.     Keep in mind that the examples in Table 13 above were found by manually browsing and analyzing only a small portion of inbound text messages produced by Defendant, for which the algorithms used by Drips had determined to be consumer responses asking to stop further communications. And those inbound responses covered only a sixty-day period, as compared to the three-and-one-half year span of potential putative text messages produced by Defendant.[35] Further review of *all inbound* text messages from consumers, during the full 3 ½ year timeframe – if that exercise were practically possible - would undoubtedly result in the identification of thousands and thousands of possible instances of consent and/or EBRs among those consumer responses.

211.     As stated above, it is my opinion that there is no automated, classwide mechanism that Plaintiff could use in order to: review the content of the inbound text messages; determine which of those messages qualify as consent and/or the existence of an EBR; determine the scope in time to which any consent/EBR applied; and compare that scope in time to any outbound text

---

[35] The DRIPS000006 text messages covered the time period of 11/8/2016 through 6/28/2021. It is my understanding that prior to 1/1/2018, the messages included in the DRIPS000006 text messages were sent by Drips on behalf of a business entity named Bantam, and were not sent on behalf of QuoteWizard. As such the timeframe of messages at issue in the DRIPS000006 text messages is the 3 ½ year period of 1/1/2018 through 6/28/2021.

messages that might otherwise satisfy Plaintiff's class criteria. And this opinion is supported by the very data that exists in the disqualified records used in my analysis.

212.    Also as described above, Drips analyzes the verbiage of inbound text messages from consumers, using various criteria, in order to determine when a consumer might no longer wish to receive text messages. In cases where Drips makes this determination, Drips refers to that telephone number as "disqualified". But it is also clear that Drips' disqualification process is far from foolproof, as demonstrated by the numerous exceptions I found during manual review, showing that many consumers whom Drips disqualified were willing engaging in the quote process.

213.    Based on the years of development by Drips to build its disqualification process, and the millions of text message conversations analyzed by Drips in their attempt to identify consumer opt-out responses – which is only partially successful – it is clear that any classwide or automated mechanism to determine consent or EBRs from consumer messages would be equally unsuccessful. As such, tedious, manual and subjective review of any available consumer input messages would be required to determine which consumers consented to be contacted via those messages, as well as the timeframes to which that consent applied.

**Consent summary**

214.    As described earlier, the examples provided herein represent only a small introduction to tens of millions of consent records produced by Defendant. Listed below in Table 14 are significant counts of those consent records by various categories:

| Category of consent data | Count |
|---|---:|
| HTMLs screen images | 677 |
| Audi Recordings | 59 |
| Trusted Form Certificates, available immediately or within 3-5 hours | 293,745 |
| Trusted Form Certificates, potentially available for purchase from Active Prospect | 10,429,063 |
| Jornaya Guardian TCPA Reports, available immediately | 72 |
| Jornaya Guardian TCPA Reports, potentially available for purchase from Jornaya | 10,547,356 |
| XML | 17,778,308 |
| Page Details | 10,920,047 |
| Miscellaneous | 3,878 |
| Total lead records | 29,805,748 |
| Total unique Telephone Numbers with consent data | 26,484,042 |
| Total Telephone Numbers with documented consent language | 9,842,369 |
| Total Telephone Numbers with significant User data | 27,177,851 |

Table 14 – Counts of consent records produced by significant categories

215.    And Table 15 below provides a more comprehensive summary of the consent data produced, with each row representing specific data productions, and each column representing the types of consent data available in those productions.

| Consent source | Bates | Total Leads | Trusted Form | Phone Numbers ID'd | Consent language | Submit website | User data | Jornaya Report | Jornaya Lead ID |
|---|---|---|---|---|---|---|---|---|---|
| QW Consent HTMLs | QW000001-580 | 580 | | 580 | 580 | 580 | 580 | | |
| Trusted Form certificates | QW000581 | 20 | 20 | 20 | 20 | 20 | 20 | | |
| QW Consent HTMLs | QW000582-647 | 66 | | 66 | 66 | 66 | 66 | | |
| QW Consent HTMLs | QW000648-678 | 31 | | 31 | 31 | 31 | 31 | | |
| TCPA Consent recording | QW000679-680 | 2 | | 2 | 2 | | 2 | | |
| Jornaya Guardian TCPA Report | QW000681-886 | 56 | | 56 | 56 | 56 | 56 | 56 | 56 |
| Inbound Page Details 10/7/2022 | QW000887-899,948-959 | 189,832 | 175,407 | 175,407 | 33,770 | 33,107 | | | |
| Inbound XML 10/7/2022, 10/11/2022 | QW000900-947, 970-1008 | 3,167,006 | 123,207 | 2,924,317 | | | 3,167,006 | 2,848,099 | 2,848,099 |
| Inbound Page Details 10/11/2022 | QW000968-969, 1009-1013 | 474,725 | 474,717 | 474,717 | 8 | 8 | | | |
| QW Audio Recording | QW001014-1070 | 57 | | 55 | 55 | | 55 | | |
| Onsite Page Details 10/17/2022 | QW001071-1617 (non-consecutive) | 5,939,719 | 2,104,368 | 5,320,079 | 5,458,299 | 5,320,079 | 5,320,079 | 5,856,419 | 5,856,419 |
| Onsite XML 10/17/2022 (QW XML) | QW001072-1616 (non-consecutive) | 6,096,007 | 947,744 | 5,461,744 | | 6,096,007 | 6,096,007 | 6,007,631 | 6,007,631 |
| Onsite Page Details 11/9/2022 | QW001621-2159 (non-consecutive) | 4,315,771 | 3,137,626 | 3,846,969 | 3,968,595 | 3,846,969 | 3,846,969 | 4,280,769 | 4,280,769 |
| Onsite XML 11 09 2022 | QW001722-1746, 1748-1978 (non-consecutive) | 4,457,876 | 2,825,769 | 3,753,853 | | | 4,457,876 | 4,381,319 | 4,381,319 |
| Inbound XML 11 09 2022 | QW001980-2061 | 3,663,916 | 639,508 | 3,507,927 | | | 3,663,916 | 3,292,277 | 3,292,277 |
| Inbound XML 11 11 2022 | QW002162-2186 | 393,503 | 139 | 371,353 | | | 393,503 | 362,439 | 362,439 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Onsite Page Details Leads Drips Rejected but Texted | QW002194 | 523 | 281 | 516 | 489 | 523 | 523 | 507 | 507 |
| Onsite Page Details Leads Rejected but Drips Accepted and Texted | QW002195 | 946 | 26 | 931 | 902 | 946 | 944 | 944 | 944 |
| Onsite XML_Leads Drips Rejected but Texted | QW002196 | 522 | 220 | 519 | | 522 | 522 | 516 | 516 |
| Onsite XML_Leads Rejected but Drips Accept and Texted | QW002197 | 931 | 3 | 931 | | 931 | 931 | 920 | 920 |
| Avenge Consent Info__QW Leads | | 100 | 48 | 100 | 100 | 100 | 100 | 100 | 100 |
| Excel Impact | | 1,102,703 | 292,907 | 643,030 | 378,579 | 655,405 | 227,826 | 990,494 | 990,494 |
| Infinix | | 30 | 25 | 30 | | 30 | 30 | | |
| Kumparison | | 25 | | 16 | 16 | 16 | 16 | 16 | 16 |
| Higher Ed | | 801 | 793 | 793 | 801 | 791 | 793 | 795 | 795 |
| | | | | | | | | | |
| Totals | | 29.8 million | 10.7 million | 26.48 million | 9.8 million | 15.95 million | 27.1 million | 28 million | 28 million |
| | | | | | | | | | |
| Total unique TNs ID'd w/ consent | | | | **14,840,074** | | | | | |

Table 15 – Overall Summary of consent

Key:

| |
|---|
| Pending claim of Trusted Form Certificate |
| Pending request of Jornaya Compliance Report |

216.     The key takeaway from Table 15 is that QuoteWizard has produced at least one form of consent documentation for 14,840,074 unique telephone numbers that were collected by 389 unique lead vendors. Nearly nine million of those numbers received consent from more than one source, with some numbers receiving consent from as many as eight different lead sources.

**Reservation of Right to Amend**

217.    I reserve the right to offer additional opinions and/or to amend this report subject to additional information I receive after issuance of the report. I also reserve the right to modify or supplement my report based on any expert report(s) presented on behalf of the Plaintiff.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and this declaration was executed on this 22nd day of September, 2023 at Burlington, Connecticut.

_____

Jan Kostyun

**CERTIFICATE OF SERVICE**

I, the undersigned, of the law offices of Nelson Mullins Riley and Scarborough LLP, attorneys for Defendant QuoteWizard.com, LLC do hereby certify that I have served all counsel of record with copies of this document by electronic mail.

Dated: September 22, 2023                         */s/ Kevin P. Polansky*
                                                  Kevin P. Polansky

**Exhibit A – Jan Kostyun CV**

# Jan Kostyun CV



Jan Kostyun is an independent technology consultant with over 35 years of experience covering the areas of telecommunications, enterprise architecture, and information technologies.  He has been directly employed in various capacities by major telecommunications companies, including Bell Telephone Laboratories, GTE, Verizon, and Syniverse Technologies.  He has also been engaged as a consultant on various telecommunications issues by telecommunications companies and regulatory authorities, including Rogers Wireless (the largest wireless carrier in Canada), CRC (the national telecommunications regulatory agency of Colombia), and Syniverse Technologies.  He has worked at numerous technical levels in software development, database technology, and enterprise architecture. He has worked for over 20 years providing consulting services, software development, and data analysis in the field of telephone number portability.  This experience covers landline, wireless, and intermodal (landline-to-wireless or wireless-to-landline) number portability, as well as telephone number pooling. He has played lead roles in the technical and organizational processes of porting landline numbers in the U.S. as well as the porting process for wireless numbers in the U.S., Canada, and Colombia.

As a software architect for Bell Telephone Labs, GTE, Verizon, and Syniverse, Mr. Kostyun also developed expertise in areas such as landline and wireless number provisioning, including the end-to-end process of establishing service for subscribers; landline and wireless order-entry, including the collection of subscriber contact information; initial implementation of the National Do Not Call registry; technical experience with telecom features such as voice calling, SMS messaging, fax transmissions, voicemail, auto dialer and Interactive Voice Response Unit (IVRU) technology, and switching implementations; and a wide variety of telecommunications industry standards.

Mr. Kostyun also has extensive experience in database methodologies, data analysis, and data mining. His experience with database technologies includes hierarchical, network and relational database models and implementations. He has instructed working professionals on the use of database programming, support and internal architecture, and has developed database training courses. He is proficient with advanced database modeling, optimization and query techniques, as well as the development of database software applications. He has personally performed database queries and data analysis against hundreds of data stores, including but not limited to Internal and National Do Not Call lists, Wireless Block identifiers, Number Portability transaction lists; carrier call detail records; telephone number reverse-lookup data records from commercial data vendors; and call records and text messaging records from platforms used by a variety of vendors.

For the past ten years Mr. Kostyun has worked as a consultant and expert witness on cases covering TCPA issues, patent litigation, software copyright infringement and trade secret misappropriation, software value determination, vandalism, and sabotage of application programs.

Mr. Kostyun's expert witness work in TCPA cases has covered: wrong number and reassigned number calls; National and internal do not call violations; Consent and revocation of consent analysis; Identification of call recipient location; Wireless/landline identification; Capacity of dialing systems to generate telephone numbers and dial without human intervention; Ascertainability of class members based on telephone number; Carrier subpoena process; Voice calling; SMS/text messaging; Fax transmission; and Ringless Voicemail delivery. Mr. Kostyun has testified both in deposition and in court, his opinions have never been stricken or rejected, and he has been cited in support of denial of class certification, and award of Summary Judgment in multiple TCPA cases.

**Professional Experience:**

**2012 to present**       *Independent Consultant*                                      *Middletown, NJ/Burlington, CT*

Representative case descriptions:
- Expert witness representing defendant under civil case alleging violation of Telephone Consumer Protection Act (TCPA). Extensive review and critique of plaintiff's expert witness reports; data analysis and research of very large call-record databases, alleged call violations and ported telephone numbers; and ATDS evaluation. Preparation of expert report in support of defendant, contributing to denial of class certification and judgment in favor of defendants.
- Expert consultant representing defendant in civil case alleging violation of TCPA. Provided analysis and report of plaintiff telephone numbers, porting activity and subscriber information.
- Expert consultant representing defendant under class action complaint alleging violation of TCPA involving text messaging/SMS activity. Provided analysis and report of CTIA/Wireless Industry best practices for short code messaging campaigns.
- In class action TCPA case, served as expert to provide ATDS evaluation, analysis of express consent and TCPA applicability of contested texts and voice calls.
- In class action TCPA matter, developed expert report addressing the feasibility and technical aspects of identifying users/subscribers of cell phones. Also developed expert report rebutting opposing expert's data analysis and subscriber identification, contributing to denial of class certification and exclusion of Plaintiff's expert report.
- Expert witness in class action TCPA complaint, providing in-depth analysis of National and internal Do Not Call (DNC) records and very large volume call record files, and critical assessment of opposing expert's data analysis.
- In class action TCPA case, developed expert report addressing the feasibility and technical aspects of identifying users/subscribers of fax telephone numbers. Also developed expert report rebutting opposing expert's opinions regarding successful completion of fax transmissions and identification of fax recipients.
- In class action TCPA matter, developed expert report addressing the feasibility and technical aspects of identifying users/subscribers of cell phones and residential landlines.
- In class action TCPA matter, developed expert rebuttal report challenging opposing expert's data analysis results of alleged DNC and wrong number calls, and addressing technical aspects of identifying users/subscribers of cell phones.
- In class action TCPA matter, performed extensive analysis of high-volume call data

records against internal and national DNC files.

- In class action TCPA case, analyzed call data records, performed testing and analysis of defendant's telephone calling system and provided opinions addressing defendant's alleged use of an ATDS for telemarketing purposes.
- In class action TCPA case, developed expert rebuttal report challenging opposing expert's data analysis methodology, and addressed technical aspects of identifying users/subscribers of cell phones.
- In class action TCPA matter, developed expert rebuttal report challenging opposing expert's data analysis results of alleged DNC violations, and addressed technical aspects of identifying users/subscribers of cell phones.
- In class action TCPA matter, developed expert rebuttal report challenging opposing expert's data analysis results of alleged DNC violations, reliability of opposing expert's data vendors, and addressed technical aspects of identifying users/subscribers of cell phones.
- In class action matter involving the Washington Automatic Dialing and Announcing Device (WADAD) statute, provided expert analysis and support regarding carrier records, carrier subpoena responses, and identification of wireless/landline subscribers and calls within specific geographic boundaries.
- In class action TCPA case, rebutted opposing expert's analysis of wrong number designations, and class member identification, contributing to denial of class certification.
- In multiple class action matters, provided analysis of Defendant's dialing equipment and opinions addressing the capacity store or produce telephone numbers to be called, using a random or sequential number generator, as well as the capability to dial telephone numbers without human intervention.

| 2009 to 2011 | **Senior Consultant** | |
| | ***eComp Consultants*** | ***Tampa, FL*** |

Provided consulting on design and development of software products and wireless technology. Provided technology consulting and expert support for enterprise architecture, software engineering and telecommunications in the areas of:

- Patent portfolio evaluation, market valuation, and prior art analysis.
- Patent litigation consulting for information technology in telecommunications, wireless and enterprise architecture for validity/invalidity and infringement/non-infringement analysis.
- Software contract analysis for disputes involving custom software, software copyright and trade secret infringement, and software valuation.
- Functional analysis, Source Code reviews, Damage Assessment analysis and software tampering evaluation.

| 2009 to 2010 | ***Independent Consultant*** | ***Tampa, FL*** |

Collaborated with Value Partners Management Consulting firm in preparation of proposal to the Colombian National Regulatory Agency for implementation of Wireless Number Portability across Colombia.

| Prior experience | **Senior Consultant** | |

***BusinessEdge Solutions/EMC***                    ***Toronto, Ontario, Canada***

Provided strategic and tactical guidance to Rogers Wireless, Canada's largest wireless carrier in the successful, on-schedule implementation of Canadian wireless number portability.

- Developed detailed specifications for Rogers' internal business applications interface to the Syniverse/Telcordia Service Management Gateway (SMG) for communication of wireless port requests & responses to wireless and wireline trading partners.
- Served as Rogers' representative to several industry-level committees, including SMG Defect Management and SMG Testing, acting as liaison between Rogers and all Canadian carriers. Developed detailed specifications for acceptance and regression testing of SMG for entire Canadian industry.
- Provided integration expertise to Rogers' application development, network administration, system testing, production support, and program management team
- Provided in-depth knowledge of Telcordia SMG interface, Canadian portability standards (CWNPG and CLOG), Wireless to Wireline (WPR to LSR) translation requirements, and post-implementation data analysis to determine customer porting trends and roadblocks.

**Senior Consultant**
***Syniverse Technologies***                    ***Tampa, FL***

Served as development specialist & subject matter expert during implementation of U.S. Wireless Number Portability (WNP). Designed the reporting data warehouse and client billing processes which support Syniverse's WNP & ICC Clearinghouse product offerings.

- Provided significant expertise in the technical internals, database design and API requirements of Telcordia's SMG platform; WNP WICIS Industry standards; InterCarrier Communications (ICC) Process; Service Order Administration (SOA)/NPAC interaction; and Tekelec LSMS database access.
- Subject matter consultant to other Syniverse WNP product offerings, including Pre-port Validation, Fallout Management, Wireline Porting and PortFlow Management. Responsible for interaction and consulting with Sales, Business Development, Training and Production Support organizations.
- In-depth experience with Cellular Provisioning, GSM/CDMA technologies, SIM Card provisioning

**Software Engineer**
***Verizon Communications***                    ***Tampa, FL***

Served as Enterprise Integration Architect for Local Number Portability (LNP) and Telephone Number Pooling (TNP) projects. Responsible for development of enterprise-level architecture and system integration of 38 major applications in order to develop and deploy Wireline LNP and Number Pooling capabilities for the entire former-GTE operating area.

- Managed technical team of 30+ individual project architects, including interaction with program management, functional owners, development teams, system testers and production support personnel.

- Coordinated retail and wholesale ordering, provisioning, billing and service assurance business functionality.
- Developed significant expertise in number portability network element systems (Telcordia's LSMS and SOA), including low-level knowledge and direct access to LSMS internal databases.
- Directly responsible for the successful national deployment of LNP/TNP in GTE/Verizon West. Maintained close working relationship with Network Engineering's TN Administrator, assisting with LSMS extracts for reconciliation processes, TNP block donation and block allocation processing, and creative use of LNP capabilities for special customer requests.

**Senior Advisory Systems Engineer**
*GTE Telephone Operations*                                                  *Tampa, FL*

Provided extensive systems development work as enterprise architect and development team project manager.

- Developed technical specifications for numerous systems across GTE Telephone Operations, primarily within the Customer Contact and Operations domains. Technical specifications established the hardware, software and network architecture with emphasis on a distributed, UNIX-based, client/server environment.
- Established corporate standards for Relational DBMS products, including interaction with Oracle and Informix vendors
- Established corporate standards for UNIX hardware and operating system platforms, including interaction with SUN, HP and IBM vendors.
- Managed application development for TCOM, a distributed, IBM-based bulk mail processing application
- Application technical lead for Central Office personnel dispatch and work allocation application.

**Senior Database Analyst**
*Exxon Company, USA*                                                  *Houston, TX*

Provided database analysis and database administration in large-scale IBM environment, specializing in project team support, implementation of DB2/SQL and use of IBM utilities, IBM Dialog Management Services.

**Senior Database Analyst**
*Ford Aerospace*                                                  *Houston, TX*

Served as key member of application team for NASA contractor responsible for Shuttle Simulator Reconfiguration System.  Responsibilities included data analysis and database design, and application lead.

**Senior Consultant**
*Informatics, Inc.*                                                  *Houston, TX*

Consulted for major oil & gas and technology clients, offering application conversions, development of new systems, and application optimization. Conducted international technical training classes in IBM IMS DB/DC, IBM Utilities and IBM Internals

**Senior Systems Analyst**
***GTE Data Services***                                                                          ***Tampa, FL***

Served as project lead and technical advisor for development of IBM/IMS-based customer billing application and IBM/CICS online order-entry application. Specialized in deployment of mini-computer office-automation systems.

**Technical Lead**
***Bell Telephone Laboratories***                                                        ***Piscataway, NJ***

Application lead for development of IBM/IMS-based Inventory Management system implemented across entire Bell System.

**Education:**

B.S. Mathematics – Magna Cum Laude                       Union College, Schenectady, NY

M.S. Computer Science                                                 Union College, Schenectady, NY

| Wireless Communications | 7 years | Syniverse/Telcordia Service Management Gateway (SMG), Canadian portability standards (CWNPG and CLOG), Wireless to Wireline (WPR to LSR) translation, Wireless Number Portability (WNP) & WICIS Industry standards, InterCarrier Communications (ICC), Service Order Administration (SOA)/NPAC,; and Tekelec LSMS database, Wireline Porting and PortFlow Management, Provisioning, GSM/CDMA technologies, SIM Card Provisioning |
|---|---|---|
| Telecommunications | 25 years | Local Number Portability (LNP), Telephone Number Pooling (TNP), Telcordia's LSMS and SOA, Customer Contact, Provisioning & Operations, eCommerce applications |
| Database Technology | 30 years | IBM IMS Database/Data Communication; DB2/SQL database design, Performance Optimization, Query Specialist; Informix; ORACLE; Logical Data Modeling; MS Access |
| Software Engineering | 20 years | Enterprise integration, Order Entry/CRM, Trouble Management, Provisioning, Customer Billing, Work Allocation/Work Management, Inventory Management |

**Tools & Platforms**

| Languages and tools: | IBM Assembler, FORTRAN, COBOL, C, C++, JAVA, Visual Basic, IMS DB/DC, CICS, DB2/SQL, Informix, Oracle, MS Access/SQL, HTML, MS Office, WordPress |
|---|---|
| Platforms: | IBM Mainframe/370, IBM 4300, IBM 9700, IBM RS/6000, HP 9000, Sun SPARC, Windows-based PC |
| Operating Systems: | IBM MVS, IBM DOS/VSE, AIX, HP-UX, UNIX, Solaris, MS-DOS, Windows |
| | |

| Professional: | Published article in *Computerworld*, 9/24/84: "IBM ISPF dialog manager: More than meets the eye" |
|---|---|

**Case Experience:**

**Adam Hage et. al. v World Financial Group and TransAmerica Corp**

| Jurisdiction: | U.S. District Court, Northern District of Illinois |
| Client: | World Financial Group and TransAmerica Corp, as defendants |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Engaged as consulting expert to analyze alleged text message violations and opine on ability to ascertain class members based on telephone numbers. |
| Represented by: | Chittendon, Murday & Novotny LLC |

**Alex Jacobs et. al. v Quicken Loans, Inc.**

| Jurisdiction: | U.S. District Court, Southern District of Florida |
| Client: | Quicken Loans, Inc. as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report addressing the feasibility and technical aspects of identifying users/subscribers of cell phones. Also developed expert report rebutting opposing expert's data analysis and subscriber identification, contributing to denial of class certification and exclusion of Plaintiff's expert report. |
| Represented by: | Goodwin Procter LLP |

**Amber Goins et. al. v Walmart and Palmer Recovery**

| Jurisdiction: | U.S. District Court, Middle District of Florida |
| Client: | Walmart and Palmer Recovery as defendants |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report rebutting opposing expert's data analysis, historic wireless identification and subscriber identification. |
| Represented by: | Shepard, Smith, Kohlmyer & Hand, P.A. / Sheppard, Mullin, Richter & Hampton, LLP |

**Ameranth v Six Continents Hotels**

| Jurisdiction: | Superior Court of DeKalb County, State of Georgia |
| Client: | Six Continents as defendant in complaint for web advertising misuse and trade secret infringement of web-based concierge application |
| Nature of Case: | Web Advertising Analysis and Intellectual Property Litigation |
| Nature of Engagement: | Consulting expert analyzing web-based advertising practices, user interfaces, and development models; provided expertise in web marketing, online advertising, and eCommerce technology development standards, design and architecture. |
| Represented by: | Alston & Bird |

**Angela Gurzi et. al. v Penn Credit Corporation**

| Jurisdiction: | U.S. District Court, Middle District of Florida |
| Client: | Penn Credit as defendant |

| | |
|---|---|
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report addressing the barriers to identifying historical users and subscribers associated with telephone numbers. Identified unreliability with the delivery status of direct-drop/ringless voicemail messages. |
| Represented by: | Golden Scaz Gagain, PLLP |

**Anthony Gonzalez-Pagan et. al. v Redwood Clairmont on the Green, LLC**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Middle District of Florida |
| Client: | Redwood Clairmont on the Green, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Served as consulting expert to provide analysis of call data, identification of historical wireless status of telephone numbers, and identification of DNC calls. |
| Represented by: | Berger Singerman LLP |

**Ariel Shuckett et. al. v DialAmerica Marketing, Inc.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Southern District of California |
| Client: | DialAmerica, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Served as consulting expert to rebut opposing expert's analysis of call data, identification of historical wireless status of telephone numbers, and identification of historical users/subscribers of telephone numbers.  Contributed to granting of Summary Judgment in favor of Defendant. |
| Represented by: | Berenson LLP |

**Brittany Burk et. al. v Direct Energy, LP**

| | |
|---|---|
| Jurisdiction: | United States District Court, District of Texas |
| Client: | Direct Energy as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Rebuttal of ATDS opinion by opposing expert, Call record and SMS record data analysis, wireless/landline identification, lead data and landing page analysis, analysis of express business relationships. Contributed to court's denial of class certification. |
| Represented by: | McDowell Hetherington LLP |

**Carrie Beets et. al. v Molina Healthcare, Inc.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Central District of California |
| Client: | Molina Healthcare, Inc., as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Served as consulting expert to provide analysis of call data, identification of historical wireless status of telephone numbers, and identification of consent. |
| Represented by: | Boies Schiller Flexner LLP |

**Carrie Couser et. al. v Cucamonga Valley Medical Group, Inc.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Central District of California |
| Client: | Cucamonga Valley Medical Group, Inc. as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Served as expert to provide ATDS evaluation, analysis of express consent and TCPA applicability of contested texts and voice calls. |
| Represented by: | Schmid & Voiles |

**Carrie Couser et. al. v Dish One Satellite, LLC**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Central District of California |
| Client: | Dish One, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Served as expert to provide in-depth analysis of National and internal Do Not Call (DNC) records and very large volume call record files, and critical assessment of opposing expert's data analysis. |
| Represented by: | Benesch, Friedlander, Coplan & Aronoff LLP |

**Catherine Palmer et. al. v KCI USA**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, District of Nebraska |
| Client: | KCI, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Wireless Identification, ascertaining class members, wrong number identification, consent identification. Provided deposition testimony. |
| Represented by: | Benesch, Friedlander, Coplan & Aronoff LLP |

**Comprehensive Health Care Systems of the Palm Beaches et. al. v M3 USA Corporation**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Southern District of Florida, West Palm Beach Division |
| Client: | M3 USA Corp., as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report addressing the feasibility and technical aspects of identifying users/subscribers of fax telephone numbers. Also developed expert report rebutting opposing expert's opinions regarding successful completion of fax transmissions and identification of fax recipients. Provided deposition testimony. |
| Represented by: | Sheppard Mullin Richter & Hampton LLP |

**Craig Cunningham v Health Plan Intermediaries Holdings, LLC**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Middle District of Florida |
| Client: | Health Plan Intermediaries Holdings, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Engaged as consulting expert to analyze the wireless status of telephones numbers at issue and perform wireless telephone forensics. |
| Represented by: | Greenspoon Marder LLP |

**C. S. Wang et. al. v Wells Fargo Bank NA, et. al.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Northern District of Illinois |

|  |  |
|---|---|
| Client: | Wells Fargo Bank, Fifth Third Bank, First Data Merchant Services, Vantiv, Inc., National Processing Company, Ironwood Financial, LLC, John Lewis, Dewitt Lovelace, as defendants |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed declaration rebutting opposing expert's methodology for ascertaining class members. Also developed declaration rebutting opposing expert's methodology for wireless identification and carrier subpoena process. |
| Represented by: | Polsinelli PC, Figliulo & Silverman PC, Baker Hostetler |

**Daniel Berman et. al. v Freedom Financial Network**

|  |  |
|---|---|
| Jurisdiction: | U.S. District Court, Northern District of California |
| Client: | Freedom Financial Network, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report rebutting opposing expert's ability to identify call recipients on the National Do Not Call Registry, opposing expert's flawed analysis of lead data names, and the feasibility and technical aspects of identifying users/subscribers of cell phones. Contributed to court's denial of class certification. |
| Represented by: | Klein Moynihan Turco LLP |

**Danielle Moraitis et. al. v Dent-A-Med, Inc.**

|  |  |
|---|---|
| Jurisdiction: | JAMS |
| Client: | Dent-A-Med, as respondent |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report rebutting opposing expert's ATDS analysis. Provided opinions on defendant's dialing equipment's capacity to generate random or sequential numbers, and capacity to dial numbers without human intervention. |
| Represented by: | Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. |

**Datamaxx Applied Technologies v Computer Projects of Illinois, Inc.**

|  |  |
|---|---|
| Jurisdiction: | United States District Court, Northern District of Florida |
| Client: | Datamaxx as plaintiff |
| Nature of Case: | Software Copyright Infringement |
| Engagement: | Prepared expert report assessing infringement of plaintiff's software copyrights, utilizing Abstraction-Filtration-Comparison test. Provided deposition testimony. |
| Represented by: | Pennington, Moore, Wilkinson, Bell & Dunbar, P.A. |

**Deborah Turner v USAA Savings Bank**

|  |  |
|---|---|
| Jurisdiction: | U.S. District Court, Western District of Arkansas |
| Client: | USAA, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report rebutting opposing expert's opinions that defendant's Aspect dialing system had the capacity to store or produce telephone numbers using a random or sequential number generator. |
| Represented by: | Benesch, Friedlander, Coplan & Aronoff LLP |

**Derrick Thomas et. al. v Peterson's Harley Davidson**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Southern District of Florida |
| Client: | Peterson's, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Provided expert report rebutting opposing expert's proposed methodology for identifying historic wireless status and historic users/subscribers of telephone numbers, and opposing expert's consent analysis. Also produced expert report addressing the dialing system used by Defendant for text message campaigns, and its capacity to perform as an ATDS. |
| Represented by: | Robert L. Switkes & Associates, P.A. |

**Derrick Virgne et. al. v C. R. England, Inc.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Southern District of Indiana |
| Client: | C. R. England, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Provided declaration with statistical analysis of text message interactions between Defendant and customers, including Stop requests and messages after Stop requests. Provided deposition testimony. |
| Represented by: | Benesch Friedlander Coplan and Aranoff LLP |

**Diana Mey et. al. v United Enrollment Service LLC, et.al.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Southern District of Florida |
| Client: | United Enrollment Services, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Provided expert report rebutting opposing expert's ability to identify: violations of the National Do Not Call Registry; calls that received prerecorded voice messages; and names of users/subscribers associated with class-eligible telephone numbers. Provided deposition testimony. |
| Represented by: | Roth Jackson Gibbons Condlin, PLC |

**Donna Carpenter v World Omni Financial Corp.**

| | |
|---|---|
| Jurisdiction: | American Arbitration Association |
| Client: | World Omni, as respondent |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Engaged as consulting expert to opine on whether defendant's dialing equipment has the characteristics of an ATDS. |
| Represented by: | Akerman LLP |

**Eileen Nece et. al. v Quicken Loans, Inc.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Middle District of Florida |
| Client: | Quicken Loans, Inc. as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |

Engagement:         Developed expert report addressing the feasibility and technical aspects of identifying users/subscribers of cell phones and residential landlines.

Represented by:      Goodwin Procter LLP

**Eric Gruber et. al. v Yelp, Inc.**

Jurisdiction:         Superior Court of the State of California

Client:         Yelp, Inc. as defendant

Nature of Case:     California Invasion of Privacy (CIPA) violation

Engagement:         Developed expert report rebutting two of plaintiff's experts regarding: wireless identification;  identification of forwarded calls; data analysis errors; identification of users/subscribers associated with class eligible telephone numbers; barriers to issuing subpoenas to telephone carriers; identification of the physical location of call recipients. Provided deposition testimony.

Represented by:      Reed Smith LLP

**Estrellita Reyes et. al. v BCA Financial Services, Inc.**

Jurisdiction:         United States District Court, Southern District of Florida

Client:         BCA Financial Services as defendants

Nature of Case:     Telephone Consumer Protection Act (TCPA) violation

Engagement:         Developed expert rebuttal report challenging opposing expert's data analysis methodology, and addressing technical aspects of identifying users/subscribers of cell phones. Provided deposition testimony.

Represented by:      Shepard, Smith, Kohlmyer & Hand, P.A.

**Forrest Rogers et. al. v Navient Solutions LLC**

Jurisdiction:         United States District Court, Eastern District of Virginia

Client:         Navient as defendants

Nature of Case:     Telephone Consumer Protection Act (TCPA) violation

Engagement:         Developed draft expert rebuttal report challenging opposing expert's data methodology of identifying users/subscribers of cell phones.

Represented by:      Holland & Knight LLP

**Grace Howerton v USAA Savings Bank**

Jurisdiction:         American Arbitration Association

Client:         USAA Savings, as respondent

Nature of Case:     Telephone Consumer Protection Act (TCPA) violation

Nature of Engagement:  Developed expert report rebutting opposing expert's opinions that defendant's Aspect dialing system had the capacity to store or produce telephone numbers using a random or sequential number generator.

Represented by:      Benesch, Friedlander, Coplan & Aronoff LLP

**Israel Garcia et. al. v Target Corporation**

Jurisdiction:         U.S. District Court, District of Minnesota

Client:         Target, as defendant

Nature of Case:     Telephone Consumer Protection Act (TCPA) violation

| | |
|---|---|
| Nature of Engagement: | Provided affirmative report addressing the challenges to identifying historic users and subscribers of telephone numbers. Also produced an expert report rebutting opposing expert's analysis of Defendant's dialing system. |
| Represented by: | Barnes & Thornburg LLP |

**Janet Hill v USAA Savings Bank**

| | |
|---|---|
| Jurisdiction: | American Arbitration Association |
| Client: | USAA Savings, as respondent |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report rebutting opposing expert's opinions that defendant's Aspect dialing system had the capacity to store or produce telephone numbers using a random or sequential number generator. Contributed to Arbitrator's finding that Defendant's dialer does not constitute an ATDS. |
| Represented by: | Benesch, Friedlander, Coplan & Aronoff LLP |

**Jed Iverson et. al. v Advanced Disposal Services.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Middle District of Florida |
| Client: | ADS, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Provided expert rebuttal reports disputing opposing expert's ability to identify class members based on Five9 call records and defendant's customer data. Analyzed and documented potential customer consent appearing in customer account records and audio recordings. Provided deposition testimony. |
| Represented by: | Burr & Forman, LLP; Holland & Knight, LLP |

**Jerry Eisenband et. al. v Schumacher Automotive, Inc.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Southern District of Florida |
| Client: | Schumacher, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Provided expert analysis of Plaintiff's expert report, and analysis of systems used to send alleged SMS text messages. |
| Represented by: | Kurkin Forehand Brandes LLP |

**John Scherkanowski v Bluegreen Vacations**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, District of New Hampshire |
| Client: | Bluegreen, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report analyzing Defendant's dialing system, it's capacity to store or produce telephone numbers using a random or sequential number generator, its capacity to place calls without human intervention, and the use an artificial or prerecorded voice. |
| Represented by: | Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. |

**Julie Smith v USAA Savings Bank**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, District of Colorado |

| | |
|---|---|
| Client: | USAA, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report rebutting opposing expert's opinions that defendant's Aspect dialing system had the capacity to store or produce telephone numbers using a random or sequential number generator. |
| Represented by: | Benesch, Friedlander, Coplan & Aronoff LLP |

**Karen Saunders et. al. v Dyck O'Neal, Inc.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Western District of Michigan |
| Client: | DONI, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report addressing the ability to identify the recipients of Direct Dial Voicemail messages, and the ability to identify consent based on Defendant's records. |
| Represented by: | Golden Scaz Gagain, PLLP |

**Kathryn Kalmbach et. al. v National Rifle Association and InfoCision, Inc.**

| | |
|---|---|
| Jurisdiction: | Superior Court of Washington, King County |
| Client: | InfoCision, Inc. as defendant |
| Nature of Case: | Washington Automatic Dialing and Announcing Device (WADAD) violation |
| Engagement: | Provided expert consulting regarding carrier record content and retention, carrier subpoena responses, and identification of wireless/landline subscribers and calls within specific geographic boundaries. |
| Represented by: | Baker & Hostetler LLP |

**Keith Snyder et. al. v U.S. Bank et. al.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Northern District of Illinois |
| Client: | Deutsche Bank, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Provided analysis of Defendant's dialing system as it relates to TCPA's definition of an ATDS. |
| Represented by: | Morgan, Lewis & Bockius LLP |

**Kenneth Albrecht et. al. v Oasis Power**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Northern District of Illinois |
| Client: | Oasis Power, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Provided expert consulting including data analysis of ringless voicemail data records, and identification of historic wireless subscribers of telephone numbers. |
| Represented by: | Morgan, Lewis & Bockius LLP |

**Kenneth Johansen et. al. v Bluegreen Vacations**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Southern District of Florida |
| Client: | Bluegreen, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |

| | |
|---|---|
| Nature of Engagement: | Provided expert consulting including reliability analysis of call records, data analysis of call records, analysis of express business relationships, and description of barriers to identification of historic wireless subscribers of telephone numbers. Provided deposition testimony. Contributed to denial of class certification. |
| Represented by: | Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. |

**Kevin Buja et. al. v Novation Capital LLC, et. al.**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Southern District of Florida, West Palm Beach Division |
| Client: | Novation, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert rebuttal report challenging opposing expert's data analysis results of alleged DNC violations, and addressing technical aspects of identifying users/subscribers of cell phones. Provided deposition testimony. |
| Represented by: | Vedder Price, P.C. |

**Lance Mancuso v USAA Savings Bank**

| | |
|---|---|
| Jurisdiction: | U.S. District Court, District of Nevada |
| Client: | USAA, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report rebutting opposing expert's opinions that defendant's Aspect dialing system had the capacity to store or produce telephone numbers using a random or sequential number generator. Provided deposition testimony. |
| Represented by: | Benesch, Friedlander, Coplan & Aronoff LLP |

**Lorenzo Quintana et. al. v Branch Banking and Trust**

| | |
|---|---|
| Jurisdiction: | United States District Court, Middle District of North Carolina |
| Client: | BB&T, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Developed expert report addressing dialing equipment's capability to store or produce telephone numbers using a random or sequential number generator. Contributed to the award of summary judgment to defendant based on lack of number generation. |
| Represented by: | Womble Bond Dickinson LLP |

**Lori Shamblin et. al. v Obama for America et. al.**

| | |
|---|---|
| Jurisdiction: | United States District Court, Middle District of Florida, Tampa Division |
| Client: | Obama for America and DNC Services Corp. as defendants |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Extensive review and critique of plaintiff's expert witness reports; data analysis and research of very large call-record databases, alleged call violations and ported telephone numbers; and ATDS evaluation. Preparation of expert report in support of defendant, contributing to denial of class certification and judgment in favor of defendants. |
| Represented by: | Perkins Coie LLP |

**Louis Floyd et. al. v National Payment Systems, et. al.**

| | |
|---|---|
| Jurisdiction: | United States District Court, Northern District of California |
| Client: | NPS, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Analysis of lead data, analysis of call records, wireless identification of telephone numbers. |
| Represented by: | Wilson Elser Moskowitz Edelman & Dicker LLP |

**Marc Schaevitz et. al. v Braman Hyundai, Inc.**

| | |
|---|---|
| Jurisdiction: | United States District Court, Southern District of Florida |
| Client: | Braman Hyundai, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Technical comparison of Ringless Voicemails to voice calls, analysis of lead and call data, contributing to denial of class certification. Provided deposition testimony. |
| Represented by: | Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. |

**Mark Preman et. al. v Pollo Operations**

| | |
|---|---|
| Jurisdiction: | United States District Court, Middle District of Florida, Orlando Division |
| Client: | Pollo Operations as defendants |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Pre-trial review of text messaging procedures and data flow analysis. Provided expert report evaluating adherence to CTIA/Wireless Industry best practices for short code messaging campaigns. |
| Represented by: | Akerman LLP |

**Matthew Dickson et. al. v Direct Energy, LP et. al.**

| | |
|---|---|
| Jurisdiction: | United States District Court, District of Ohio |
| Client: | Direct Energy as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Provided expert report addressing the reliability of Ringless Voicemail call records, rebutting opposing expert's historical wireless analysis, class identification using audio recordings, and identification of users associated with given telephone numbers. Investigated significant evidence of lead generation, website landing pages and customer consent. Contributed to granting of defendant's Motion to Dismiss. |
| Represented by: | McDowell Hetherington LLP |

**Michael Anthony v The Federal Savings Bank, et. al.**

| | |
|---|---|
| Jurisdiction: | United States District Court, Northern District of Illinois |
| Client: | The Federal Savings Bank as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Rebuttal of opposing expert's proposal to identify National Do Not Call violations, and Prerecorded message violations. Provided deposition testimony. |
| Represented by: | Mitchell Sandler LLP |

**Michael Lutman v Harvard Collection Services**

| | |
|---|---|
| Jurisdiction: | United States District Court, Middle District of Florida, Ft Myers Division |
| Client: | Harvard Collection Services as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Provided expert analysis of plaintiff telephone numbers, porting activity, subscriber information, and ATDS evaluation. |
| Represented by: | Wilson Elser Moskowitz Edelman & Dicker LLP |

**Mildred Baldwin et. al. Miracle-Ear, et. al.**

| | |
|---|---|
| Jurisdiction: | United States District Court, District of Minnesota |
| Client: | Miracle-Ear as defendants |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Developed draft expert rebuttal report evaluating the reliability of call records, challenging opposing expert's data methodology of identifying users/subscribers of cell phones, and identification of DNC and Pre-recorded message classes |
| Represented by: | Faegre Drinker Biddle & Reath LLP |

**Monifa Grant et. al. v Regal Automotive Group**

| | |
|---|---|
| Jurisdiction: | United States District Court, Middle District of Florida |
| Client: | Regal Automotive Group, as defendants |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Provided expert analysis of discrepancies between Defendant's subscriber records and subscriber/user records returned from commercial identification vendor. |
| Represented by: | Golden Scaz Gagain PLLP |

**Monique Jackson et. al. v Palm Beach Credit Adjustors**

| | |
|---|---|
| Jurisdiction: | United States District Court, Southern District of Florida |
| Client: | Palm Beach Credit, as defendants |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Engaged as consulting expert to opine on ability to ascertain class members based on telephone numbers, and analyze evidence of consent and revocation. |
| Represented by: | Shepard, Smith, Kohlmyer & Hand, P.A. |

**Moricz v Google**

| | |
|---|---|
| Jurisdiction: | United States District Court, Western District of Washington at Seattle |
| Client: | Michael Moricz as plaintiff |
| Nature of Case: | Patent infringement of search engine software capabilities |
| Engagement: | Provided technical research into history, evolution and current state of web-based search engine design and functionality. Development of claim construction report. |
| Represented by: | Schwabe, Williamson & Wyatt, P.C. |

**Nathan Rowan, et. al. v United Enrollment Services LLC**

| | |
|---|---|
| Jurisdiction: | United States District Court, Southern District of Florida |
| Client: | United Enrollment as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Analysis of Florida Telephone Solicitation, Text messages, message search strings, and location of text recipients. |
| Represented by: | Roth Jackson Gibbons Condlin, PLC |

**Paramjit Lalli, et. al. v First Team Real Estate**

| | |
|---|---|
| Jurisdiction: | United States District Court, Central District of California |
| Client: | First Team as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Analysis of real estate dialers, call record analysis to identify calls leaving prerecorded messages, identification of consent. |
| Represented by: | Payne & Fears LLP |

**Patrick Rose, et. al. v New TSI Holdings, Inc.**

| | |
|---|---|
| Jurisdiction: | United States District Court, Southern District of New York |
| Client: | New TSI as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Provided Expert Rebuttal Report addressing reliability of Sneeze-It call records, wireless identification, consent analysis, ascertainability of class members. |
| Represented by: | Gordon Rees Scully Mansukhani, LLP |

**Phillip Charvat, et. al. v The Southard Corp.**

| | |
|---|---|
| Jurisdiction: | United States District Court, Southern District of Ohio |
| Client: | The Southard as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Identification of National DNC Registry violations, Ascertainability of class members |
| Represented by: | Baker & Hostetler, LLP |

**PCS4Less v Go Mobile**

| | |
|---|---|
| Jurisdiction: | State of Michigan, Circuit Court for Washtenaw County |
| Client: | Go Mobile as defendant |
| Nature of Case: | Copyright / Trade Secret on unlocking GSM/CDMA cell phone devices |
| Engagement: | Provided expert analysis of cell phone unlocking methods. |
| Represented by: | Gray Robinson |

**Ranier Sapuy, et. al. v Roosevelt Field Mall Dental, PC, Stomatcare DSO, LLC, et. al.**

| | |
|---|---|
| Jurisdiction: | United States District Court, Eastern District of New York |
| Client: | Roosevelt Field Mall Dental and Stomatcare DSO, as defendants |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Engagement: | Expert rebuttal report addressing: applicability of text message stop requests to subsequent prerecorded voice calls; existence of consent |

within prerecorded call responses; reliability of call records; identification of calls that pertain to defendants; identification of users/subscribers associated with class-eligible telephone numbers

|  | |
|---|---|
| Represented by: | Nixon Peabody LLP |

## Resource Acquisition and Management Services v Mathews

| | |
|---|---|
| Jurisdiction: | State of Florida, Circuit Court for Hillsborough County |
| Client: | Resource Acquisition and Management Services, Inc. as plaintiff |
| Nature of Case: | Breach of Contract and Conversion of disputed property including application source code |
| Engagement: | Provided expert report assessing the value of application source code. Provided deposition testimony. |
| Represented by: | Rocke, McLean and Sbar, P.A. |

## Richard Witvoet, et. al. v Pat Tumilty

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Northern District of California |
| Client: | Pat Tumilty, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Provided Expert Rebuttal report addressing ability to identify completed calls and delivered text messages, identification of calls in violation of the national Do Not Call registry, and consent analysis. |
| Represented by: | Riley Safer Holmes & Cancila LLP |

## Ronald Chinitz, et. al. v Mojo Dialing Solutions, et. al.

| | |
|---|---|
| Jurisdiction: | U.S. District Court, Northern District of California |
| Client: | Mojo, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Analysis of pre-recorded message call records, Identification of National DNC Registry violations, Ascertainability of class members, express business relationships and prior consent, identification of business vs. residential telephone numbers, analysis of dialing platform used by real estate agents. Contributed to denial of class certification for defendant Mojo. Provided deposition testimony. |
| Represented by: | Day Pitney LLP |

## Samantha Grome v USAA Savings Bank

| | |
|---|---|
| Jurisdiction: | U.S. District Court, District of Nebraska |
| Client: | USAA Savings, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report rebutting opposing expert's opinions that defendant's Aspect dialing system had the capacity to store or produce telephone numbers using a random or sequential number generator. Provided deposition testimony. Contributed to court's granting of summary judgment in favor of Defendant. |
| Represented by: | Benesch, Friedlander, Coplan & Aronoff LLP |

## Sara Diaz-Lebel et. al. v TD Bank and Target Corporation

| | |
|---|---|
| Jurisdiction: | U.S. District Court, District of Minnesota |

|  |  |
|---|---|
| Client: | Target, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report rebutting opposing expert's analysis of call records. Also provided analysis of Defendant's dialing system as it relates to TCPA's definition of an ATDS, as well as describing the restrictions to accurately ascertaining class members based on historic call data. |
| Represented by: | Barnes & Thornburg LLP |

**Shehan Wijesinha et. al. v Bluegreen Vacations**

|  |  |
|---|---|
| Jurisdiction: | U.S. District Court, Southern District of Florida |
| Client: | Bluegreen Vacations, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report rebutting opposing expert's identification of historical users/subscribers.  Also provided analysis of Defendant's dialing system as it relates to TCPA's definition of an ATDS, as well as describing the restrictions to accurately ascertaining class members based on historic call data. Provided deposition testimony. |
| Represented by: | Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. |

**Sherry Clemons, et. al. v O'Neil Insurance Agency and State Farm**

|  |  |
|---|---|
| Jurisdiction: | U.S. District Court, Eastern District of Missouri |
| Client: | O'Neil Insurance, as defendant |
| Nature of Case: | Telephone Consumer Protection Act (TCPA) violation |
| Nature of Engagement: | Developed expert report rebutting opposing expert's: lack of identification of telemarketing calls; vendor usage for identifying National Do Not Call registrations; identification of business vs. residential telephone numbers; identification of consent and established business relationships; and recognition of forwarded calls. |
| Represented by: | Riley Safer Holmes & Cancila LLP |

**State of Florida v Poole**

|  |  |
|---|---|
| Jurisdiction: | State of Florida, Circuit Criminal Court for Hillsborough County |
| Client: | Poole as defendant |
| Nature of Case: | Criminal complaint involving damage of application components |
| Engagement: | Provided expert analysis and court testimony regarding the feasibility of performing a forensic analysis of hardware and software components. Provided court testimony. |
| Represented by: | Pawuk and Pawuk, P.A. |

**Stephanie Powers et al. v Receivables performance Management**

|  |  |
|---|---|
| Jurisdiction: | United States District Court, District of Massachusetts |
| Client: | RPM as defendant |
| Nature of Case: | Massachusetts Consumer Protection Act, Massachusetts Debt Collection Regulations |

Engagement:            Provided expert analysis of LiveVox call record reliability, business vs.
                       residential analysis, location of call recipients, identification of harm
                       or injuries. Provided deposition testimony.
Represented by:        Gordon Rees Scully Mansukhani, LLP

**Steven Sandoe et. al. v Boston Scientific Corporation**
Jurisdiction:          United States District Court, District of Massachusetts
Client:                Boston Scientific, as defendant
Nature of Case:        Telephone Consumer Protection Act (TCPA) violation
Engagement:            Developed expert rebuttal report challenging opposing expert's data
                       analysis, identification of wrong number calls, identification of
                       National DNC Registry violations, and identification of historic
                       users/subscribers of telephone numbers. Provided deposition
                       testimony. Directly contributed to Denial of Class Certification.
Represented by:        Faegre Baker Daniels LLP

**Thomas Cook et. al. v Palmer, Reifler & Associates and WALMART**
Jurisdiction:          United States District Court, Middle District of Florida
Client:                PRA as defendant
Nature of Case:        Telephone Consumer Protection Act (TCPA) violation
Engagement:            Developed expert rebuttal report challenging opposing expert's data
                       analysis, and addressing technical aspects of identifying
                       users/subscribers of cell phones. Provided deposition testimony.
Represented by:        Shepard, Smith, Kohlmyer & Hand, P.A.

**Toya Green-Mobley v Capital One Auto Finance**
Jurisdiction:          United States District Court, Middle District of Florida
Client:                COAF as defendant
Nature of Case:        Telephone Consumer Protection Act (TCPA) violation
Engagement:            Developed expert rebuttal report address qualification of Defendant's
                       calling system as an ATDS, including capacity to generate telephone
                       numbers, use of human intervention, and the pre-recorded nature of
                       phone messages. Provided deposition testimony.
Represented by:        Burr & Forman LLP

**Victoria Wilson et. al. v Badcock Home Furniture**
Jurisdiction:          United States District Court, Middle District of Florida
Client:                Badcock as defendant
Nature of Case:        Telephone Consumer Protection Act (TCPA) violation
Engagement:            Developed expert rebuttal report challenging opposing expert's data
                       analysis and methodology for identifying users/subscribers of cell
                       phones, contributing to denial of class certification. Provided
                       deposition testimony.
Represented by:        Johnson & Cassidy, P.A.

**Waddell Williams et. al. v Bluestem Brands**
Jurisdiction:          United States District Court, Middle District of Florida
Client:                Bluestem Brands as defendant

Nature of Case:        Telephone Consumer Protection Act (TCPA) violation
Engagement:            Developed expert report analyzing Defendant's dialing platform and
                       its characteristics related to Automated Telephone Dialing Systems.
Represented by:        Faegre Baker Daniels, LLP

**Weronika Rechul et. al. v Crisp Marketing LLC**
Jurisdiction:          United States District Court, Southern District of Florida
Client:                Crisp as defendant
Nature of Case:        Telephone Consumer Protection Act (TCPA) violation
Engagement:            Wireless identification, pre-recorded voice delivery, consent analysis,
                       analysis of TrustedForm certificates
Represented by:        Womble Bond Dickinson, LLP

<u>**Exhibit B1- B4 – DNC Re-registration example**</u>



Number 813-222-9999 not registered on NDNCR as of 6/27/2022



Number 813-222-9999 added to NDNCR registry on 6/27/2022



Number 813-222-9999 re-registered on NDNCR on 7/7/2022



Number 813-222-9999 still reflects original registration date of 6/28/2022