# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOSEPH MANTHA on behalf of himself and others similarly situated, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 1:19-cv-12235-LTS-PK |
| v. | : | |
| | : | |
| QUOTEWIZARD.COM, LLC | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |
| | : | |

## PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HIS
## MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

Page

Argument Summary ................................................................................................................1

Argument .............................................................................................................................2

A.    Through common proof — including a number's listing on the DNC Registry, evidence from QuoteWizard that it was not targeting business numbers, and expert testimony — a jury can decide if the class telephone numbers are residential...................2

B.    QuoteWizard's consent defense presents questions that the Court or a jury can decide classwide. ..........................................................................................................................5

    1.    Whether consent forms that do not specifically reference QuoteWizard are TCPA-compliant is a common, predominant, classwide question. .........................5

C.    Whether consent forms that do not contain E-Sign Act disclosures are TCPA-compliant is a common, predominant, and classwide question answerable as a matter of law. ..................................................................................................................................9

D.    Defendant's typicality challenges do not preclude certification. .....................................11

E.    QuoteWizard's remaining challenges fail. .....................................................................14

    1.    Mr. Mantha is a class member. ............................................................................14

    2.    The class definition is not "fail-safe." ................................................................15

    3.    Class certification is the superior vehicle to resolve the class claims of tens of thousands of consumers. ....................................................................................16

Conclusion .........................................................................................................................18

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bennett v. SunPath*,
  2023 U.S. Dist. LEXIS 47234 (D. Mass. 2023) ...................................................2

*Chinitz v. Intero Real Est. Servs.*,
  No. 18-cv-05623, 2020 WL 7391299 (N.D. Cal. July 22, 2020) ...........................5

*Chinitz v. Intero Real Estate Servs.*,
  2020 U.S. Dist. LEXIS 247921 (W.D. Wash. Feb. 12, 2021)................................4

*Cohen v. Brown Univ.*,
  101 F.3d 155 (1st Cir. 1996)...............................................................................12

*Denning, Inc. v. Cap. All. Grp.*,
  No. 13-cv-2654, 2015 U.S. Dist. LEXIS 129495 (S.D. Cal. Sept. 24, 2015) .......17

*Gaker v. Citizens Disability, LLC*,
  654 F. Supp. 3d 66 (D. Mass. 2023) ....................................................................6

*Hirsch v. USHealth Advisors, LLC*,
  337 F.R.D. 118 (N.D. Tex. 2020) ................................................................. 10, 11

*Hochstadt v. Bos. Sci. Corp.*,
  708 F. Supp. 2d 95 (D. Mass. 2010) ...................................................................12

*Krakauer v. Dish Network*,
  311 F.R.D. 384 (M.D.N.C. Sept. 9, 2015)..............................................................4

*Krakauer v. Dish Network, L.L.C.*,
  925 F.3d 643 (4th Cir. 2019) ....................................................................*passim*

*Krakauer v. Dish Network, L.L.C.*,
  No. 1:14-cv-333, 2017 WL 2455095 (M.D.N.C. June 6, 2017)..........................4, 5

*Larson v. Harman Mgmt. Corp.*,
  2016 U.S. Dist. LEXIS 149267 (E.D. Cal. Oct. 27, 2016)...................................10

*Mattson v. New Penn Fin.*,
  No. 3:18-cv-00990, 2020 U.S. Dist. LEXIS 197955 (D. Or. Oct. 25, 2020) ...................6, 11

*Mattson v. New Penn Fin.*,
  No. 3:18-cv-00990, 2023 U.S. Dist. LEXIS 219491 (D. Or. Oct. 12, 2023) ........11

*Moore v. Healthcare Sols. Inc.*,
    No. 21-cv-4919, 2022 U.S. Dist. LEXIS 220437 (N.D. Ill. Dec. 7, 2022) .......................... 13

*In re Nexium*,
    777 F.3d 9 (2015) .................................................................................................. 16

*Owens v. Starion Energy, Inc.*,
    No. 3:16-cv-01912, 2017 WL 2838075 (D. Conn. June 30, 2017) ...................................... 13

*In the Matter of Rules & Regulations Implementing the TCPA of 1991*,
    27 FCC Rcd. 1830 (2012) ........................................................................................... 9

*Sagar v. Kelly Auto Grp., Inc.*,
    2021 U.S. Dist. LEXIS 227881 (D. Mass. 2021) .............................................................. 2

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) ..................................................................................... 7

*Vance v. DirecTV*,
    No. 5:17-cv-179, 2022 U.S. Dist. Lexis 140518 (N.D. W. Va. Aug. 1, 2022)....................... 17

*Vargas v. Spirit Delivery & Distrib. Servs., Inc.*,
    245 F. Supp. 3d 268 (D. Mass. 2017)......................................................................... 11

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................................................ 1, 5

*Watson v. Manhattan Luxury Autos., Inc.*,
    2022 U.S. Dist. LEXIS 178069 (S.D.N.Y. Sept. 29, 2022) ........................................ 13, 17

*In re White*,
    64 F.4th 302 (D.C. Cir. 2023) ................................................................................... 16

*Williams v. Pillpack LLC*,
    No. C19-5282, 2021 U.S. Dist. LEXIS 27496 (W.D. Wash. Feb. 12, 2021).................... 6, 13

*Winner v. Kohl's Dep't Stores, Inc.*,
    2017 U.S. Dist. LEXIS 131225 (E.D. Pa. Aug. 17, 2017) .................................................. 10

**Statutes**

15 U.S.C. § 7001(c) ........................................................................................................ 9

47 U.S.C. § 227(a)(4).................................................................................................... 15

E-Sign Act ...................................................................................................... 9, 10, 12

**Rules**

Fed. R. Civ. P. 23(a)(3) ..................................................................................11

Fed. R. Civ. P. 23(b)(3) ..................................................................................16

Fed. R. Civ. P. 30(b)(6) ...............................................................................3, 7

**Regulations**

47 C.F.R. § 64.1200(f)(10) ..............................................................................6

47 C.F.R. § 64.1200(f)(15) ............................................................................15

**Argument Summary**

Peppered throughout QuoteWizard's overlong, repetitive opposition brief is a persistent claim that Plaintiff cannot prove his and the proposed class's claims through common proof. In fact, QuoteWizard's objections are to the *persuasiveness and validity* of Plaintiff's classwide proof — and that sort of dispute is what a trial is for.

Class certification requires that a "common contention . . . be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). This case presents numerous "one stroke" questions that will allow the Court to adjudicate consequential and dispositive issues in a single efficient proceeding, including:

- Has the Plaintiff established — through a combination of expert analysis, the legal presumption of the residential status of Do Not Call Registry numbers, and evidence that the purpose of QuoteWizard's telemarketing campaign was to target consumers, not businesses — that each class telephone number is residential?

- Is "consent" evidence that does not mention the telemarketer by name, and that is not E-Sign compliant (as here), sufficiently specific, clear, and conspicuous to constitute prior express written consent to call numbers on the DNC Registry?

- Using the detailed telephone call records produced in discovery, did each class member receive two or more calls in a 12-month period while the telephone number was listed on the DNC Registry?

All of these questions can be answered based on classwide proof, just as in the *Krakauer* case, which these same counsel and expert witness tried to affirmed final judgment of the same statutory claims, over many of the same certification and proof challenges lodged here. *Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 676 (2019).

## Argument

**A. Through common proof — including a number's listing on the DNC Registry, evidence from QuoteWizard that it was not targeting business numbers, and expert testimony — a jury can decide if the class telephone numbers are residential.**

QuoteWizard's principal argument (framed in terms of challenges to ascertainability, commonality, and predominance) in opposition to class certification is that whether a class telephone number is residential is an individualized inquiry not capable of classwide resolution. *See* ECF Doc. No. 348, Opp. Br. at 13-14, 27-31. To the contrary, Plaintiff can rely on three forms of common proof to show that the class telephone numbers are residential.

First, Plaintiff's expert witness Anya Verkhovskaya will testify — using data that third-party data provider PacificEast obtained directly from the FTC, which maintains the DNC Registry — that every class telephone number was listed on the Registry when it received QuoteWizard telemarketing texts. ECF Doc. No. 339-2, Expert Rep. of A. Verkhovskaya ¶¶ 61-68 ("Verkhovskaya Rep."). The Court has already held that a telephone number on the DNC Registry is presumptively residential, so here, based on Ms. Verkhovskaya's testimony, *every class number is presumptively residential*. ECF Doc. No. 268, Order on Mot. for Summ. J. ("SJ Order") at 11 ("Mantha begins with the benefit of the presumption that his cellular telephone number constitutes a 'residential telephone subscriber' because the undisputed facts establish Mantha listed his cellular phone number on the National DNC Registry") (citing *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 202 (D. Mass. 2021) (the FCC "presumes that wireless subscribers who ask to be put on the National Do Not Call Registry are residential subscribers")); *see also Bennett v. SunPath*, 2023 U.S. Dist. LEXIS 47234, at *2 (D. Mass. 2023) (O'Toole, J.) (cellphones registered on the Do Not Call Registry are presumed to be residential subscribers); *Sagar v. Kelly Auto Grp., Inc.*, 2021 U.S. Dist. LEXIS 227881, at *15 (D. Mass. 2021) (Saris, J.) (same).

Critically, QuoteWizard has offered no evidence that any class telephone number is *not* listed on the Registry, but instead attacks Ms. Verkhovskaya's methodology for identifying listed numbers, setting up a classic basis for cross-examination at trial.[1]

The second category of common proof of residential status is testimony from QuoteWizard that the entire point of its telemarketing campaigns was to sell insurance to consumers, not businesses, and that QuoteWizard bought and called leads for consumer sales, not business sales. *See* ECF Doc. No. 339-5, Rule 30(b)(6) Dep. of M. Weeks, at 66-67 (in purchasing leads from third party data brokers, QuoteWizard's "purpose [was] to buy leads of consumers who are looking for insurance" and not to obtain data on businesses); Exhibit 1, Rule 30(b)(6) Dep. of T. Winkler, at 17-18 (the leads purchased by QuoteWizard were consumer leads, and the purpose of the text campaign was to sell insurance to consumers, not businesses). In fact, QuoteWizard's opposition brief forthrightly acknowledges that QuoteWizard "attempts only to contact individual consumers[.]" Opp. Br. at 2.

Third and finally, Ms. Verkhovskaya's expert testimony buttresses the first two categories of proof; not only did she confirm that all class telephone numbers are on the DNC (and therefore presumptively residential), and that the purpose of the telemarketing campaign at issue was to call residential numbers, but she obtained third-party data that, using various business-directory resources, identifies whether a class telephone number was a business-registered or -associated number. *See* ECF Doc. No. 339-2, Verkhovskaya Rep. ¶¶ 82-84. She also searched the third-party data for common keywords of business terms, and eliminated those numbers from the class list. *Id.* ¶ 84. In the end, her testimony leaves us with a list of telephone

---

[1] To avoid duplication, Plaintiff addresses QuoteWizard's attacks on Ms. Verkhovskaya's opinions primarily in Plaintiff's opposition to QuoteWizard's *Daubert* motion.

numbers Ms. Verkhovskaya will testify are residential, and on the DNC, a conclusion a jury may accept or reject.

This process replicates the "clear, cogent" and reliable testimony she provided in another certified TCPA Section 227(c) class action — starting with a list of DNC-registered numbers obtained from a third-party data source, cross-checking for business and government (*i.e.,* non-residential) numbers against third-party data, and removing additional known business numbers. *See Krakauer v. Dish Network, L.L.C.*, No. 1:14-cv-333, 2017 WL 2455095, at *6-7 (M.D.N.C. June 6, 2017).

So QuoteWizard is wrong to say that Plaintiff lacks common proof of the class numbers' residential status. With discovery now closed, QuoteWizard has never analyzed the complete class list to identify proof of business numbers. To be sure, in discovery, Plaintiff offered QuoteWizard the opportunity to rebut the presumption that any of the wireless numbers it targeted were residential. *See* Exhibit 2, QuoteWizard's Supp. Answers to Pl.'s Fourth Set of Ints., Int. No. 1. It failed to identify a single such number, and instead responded with generalities, including an acknowledgement that it "*only intended to purchase lead information associated with individual consumers rather than businesses*." *Id.* (emphasis added).[2]

---

[2] QuoteWizard's expert, Jan Kostyun, identified a handful of telephone numbers — 20, out of the 66,693 numbers on the class list — that he says are associated with businesses. Rebuttal Rep. of J. Kostyun, ECF Doc. No. 350-2 ¶¶ 64-81. Even if he is correct, a small number of challenged calls does not create individual factual issues that predominate over common issues. *See Chinitz v. Intero Real Estate Servs.*, 2020 U.S. Dist. LEXIS 247921 (W.D. Wash. Feb. 12, 2021) (granting TCPA class certification of a DNC Registry class and noting that whether some business numbers still remain in the class does not preclude certification); *Krakauer v. Dish Network,* 311 F.R.D. 384, 396 (M.D.N.C. Sept. 9, 2015) (certifying TCPA Section 227(c) class and rejecting defense claim that a small number of numbers on the class list may be business numbers, and finding "the fact that a class list contains members whose claims may fail on the merits does not mean that the class cannot be certified").

Having refused to identify business telephone numbers contained in the texting call data during the class discovery period, QuoteWizard is left now merely to criticize Plaintiff's methodology, rather than present its own evidence to rebut the numbers' presumptive residential status. The time for that critique is at trial, based on the discovery produced through the end of the class discovery period, where the jury will be asked whether Plaintiff has proven the class numbers are residential and can decide that question up or down. *Cf. Krakauer,* 2017 WL 2455095, at *7 (affirming jury finding, based on Ms. Verkhovskaya's analysis, that all class telephone numbers were residential); *Chinitz v. Intero Real Est. Servs.,* No. 18-cv-05623, 2020 WL 7391299, at *6 (N.D. Cal. July 22, 2020) (rejecting *Daubert* challenge where Ms. Verkhovskaya started with the assumption that the numbers were residential because they were registered with the Do Not Call Registry, but used a third-party database to remove business numbers). This is the quintessential common question whose "truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke[,]" *Dukes,* 564 U.S. at 350, making this case appropriate for certification.

## B. QuoteWizard's consent defense presents questions that the Court or a jury can decide classwide.

### 1. Whether consent forms that do not specifically reference QuoteWizard are TCPA-compliant is a common, predominant, classwide question.

QuoteWizard's second overarching certification challenge is that consent issues cannot be decided on a classwide basis. QuoteWizard insists that its consent defense will require individualized inquiries because of voluminous evidence in the form of web forms and online verifications supposedly created by consumers granting consent to receive QuoteWizard telemarketing calls. But through summary judgment, the Court can decide whether this consent evidence offered by QuoteWizard complies with the TCPA. Simply stated, a telemarketer like

QuoteWizard who calls DNC-registered telephone numbers has valid consent only so long as the consumer grants *that specific telemarketer* consent to make telemarketing calls. With discovery closed, QuoteWizard has presented no such evidence.

On this issue, the TCPA requires that a "seller" — meaning "the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services," 47 C.F.R. § 64.1200(f)(10) — who sends telemarketing messages to numbers on the DNC Registry must have a "*signed, written agreement between the consumer and the seller which states that the consumer agrees to be contacted by **this seller*** and includes the telephone number to which the calls may be placed." *Id.* § 64.1200(c)(ii) (emphasis added).

Vague, unspecific consent is insufficient; consent must be "clear and conspicuous," *Gaker v. Citizens Disability, LLC*, 654 F. Supp. 3d 66, 71 (D. Mass. 2023) (Kelley, J.) (citing *In the Matter of Rules & Regulations Implementing the TCPA of 1991*, 27 FCC Rcd. 1830 ¶¶ 26, 32-33 (2012)), and consent is an affirmative defense that the defendant must prove by clear and convincing evidence, *see* SJ Order at 18-19 (consent is affirmative defense); 2005 FCC LEXIS 1158 ¶ 40 (Feb. 10, 2005) (clear and convincing standard). *See generally Mattson v. New Penn Fin.,* No. 3:18-cv-00990, 2020 U.S. Dist. LEXIS 197955, at *12 (D. Or. Oct. 25, 2020) (the TCPA regulations "require the consumer's prior express consent to receive calls from the *specific* telemarketer that makes the call before the telemarketer can call a number listed on the DNCR").

Under this authority, nonspecific grants of TCPA consent are invalid. *Id.*; *see also Williams v. Pillpack LLC,* No. C19-5282, 2021 U.S. Dist. LEXIS 27496, at *13-14 (W.D. Wash. Feb. 12, 2021) (certifying class where defendant's opt-in web forms failed to list the defendant

as the party with consent to make telemarketing calls); *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 955 (9th Cir. 2009) ("[C]onsent to receive promotional material by [a nonspecified third party] … cannot be read as consenting to the receipt of [the defendant's] promotional material."). In fact, in her report and recommendation, Chief Magistrate Judge Kelley found that QuoteWizard's purported form of consent to call the Plaintiff — a web-form obtained through a website called "Snappyauto.com" — did not comply with the TCPA because "the form does not mention defendant or its client by name." ECF Doc. No. 258, Rep. & Rec. on Cross-Mots. for Summ. J. ("SJ Rep. & Rec.") at 16. Instead, the form granted consent to a company named AutoInsurQuotes.com, an entity that QuoteWizard's own senior executive and Rule 30(b)(6) designee "had never heard of." *Id.* at 17.

Here, although Plaintiff has requested QuoteWizard produce all evidence supporting its affirmative defense of consent, QuoteWizard has only managed to cobble together a few anecdotal examples, *none of which demonstrate consent to receive telemarketing calls from QuoteWizard*.

These examples principally come from QuoteWizard's expert Jan Kostyun. In his report, Mr. Kostyun evaluated QuoteWizard's consent evidence, which largely consists of Excel data files and "Trusted Form Certificates" from a company called "Jornaya." Rep. of J. Kostyun, ECF Doc. No. 348-5, ¶ 151. Mr. Kostyun's report includes a dozen screenshots of consent forms from various websites — *none of which mention QuoteWizard by name. Id.* ¶¶ 154-78. At best, a signer of the form grants consent to receive telemarketing calls from "our marketing and re-marketing network, and up to eight insurance companies or their representatives," *id.* ¶ 159; "up to 5 industry partners, or authorized third parties calling on our or their behalf," *id.* ¶¶ 160-74; and a non-specific set of "listed companies and agents" that is "subject to change," *id.* ¶¶ 186-93.

Even the consent examples listed in QuoteWizard's opposition brief fail to mention QuoteWizard by name. *See* Opp. Br. at 35 (consent language stating, "By checking, you authorize up to 3 insurance companies (or their agents) and marketing partners to email and/or place marketing calls[.]"; consent granted to "OttoInsurance.com or our marketing partners and/or their affiliates"; authorizing "insurance companies, their agents and marketing partners to contact me about auto insurance[.]"). QuoteWizard could easily have searched the consent data to identify specific references authorizing it to make telemarketing calls. ECF Doc. No. 339-3, Rebuttal Expert Rep. of A. Verkhovskaya, ¶ 45 (QuoteWizard's consent data "can be easily searched without manual review to assess whether such purported consent" specifically allows QuoteWizard to telemarket to DNC-listed numbers). That it did not do so speaks volumes about QuoteWizard's lack of specific consent.

This is frankly astonishing: after over four years of hard-fought litigation, the best examples of consent QuoteWizard can muster do not mention QuoteWizard at all. The Court (or a jury, if the issue survives summary judgment) can decide whether QuoteWizard has any evidence that it, and not some vaguely referenced "marketing partner" had "clear and conspicuous" express consent to telemarket to numbers on the Do Not Call Registry.

Finally, to the extent factual inquiry is warranted beyond the legal issues outlined above, a finding of lack of consent here is bolstered by the fact that, despite QuoteWizard's initial claims that all calls were placed with consent, *over 2.5 million* consumers replied to its messages to demand that they stop and such numbers were added to QuoteWizard's Internal Do Not Call list. *See* ECF Doc. No. 210, Def.'s Resp. to Pl.'s LR 56.1 Stmt. of Material Facts & Add'l Stmt. of Material Facts, ¶¶ 12-16. The sheer volume of consumer complaints was such that QuoteWizard utilized artificial intelligence to review them, and assigned tiers to the complaints

— for example, it described "Tier 1" complaints as those lodged by "the screamers" and others who were "upset that they are being called or texted." *Id.* ¶¶ 17-19.

The fact that none of QuoteWizard's leads, regardless of their source, specifically authorized QuoteWizard to send telemarketing texts to class members sets up a straightforward common question well-suited for class wide adjudication.

**C. Whether consent forms that do not contain E-Sign Act disclosures are TCPA-compliant is a common, predominant, and classwide question answerable as a matter of law.**

There is a second ground on which the Court (or a jury) can decide the validity of QuoteWizard's consent defense: failure to comply with the E-Sign Act.

Here, QuoteWizard's consent evidence was obtained not in the form of signed, written agreements on a piece of paper, but via web-forms purchased from third party data brokers that derived from thousands of different sources. While internet consent can suffice to replace the actual signature of a consumer as evidence of consent to receive telemarketing calls, the E-Sign Act requires the entity obtaining the electronic signature to make certain disclosures, including the manner in which the consumer can withdraw consent. *See* 27 FCC Rcd. 1830, 1844, ¶¶ 33-34 (Feb. 2012) (consent may be obtained via web-form if in compliance with the E-Sign Act); 15 U.S.C. § 7001(c) (detailing the disclosures required to be made to a consumer for an electronic signature to be E-Sign compliant, including disclosures relating to withdrawal of consent and a mechanism for doing so).

In her report and recommendation, Chief Magistrate Judge Kelley found QuoteWizard's web-form consent as to Mr. Mantha invalid for failure to comply with the E-Sign Act:

> [T]o be TCPA compliant, a consumer's consent to receive solicitations from a seller must comply with the E-Sign Act. This is consistent with TCPA regulations, which allow an electronic signature in connection with prior written consent if it complies with the requirements under the E-SIGN Act. 47 C.F.R.

§ 64.1200(f)(9) (defining prior express written consent and requirements for electronic signatures); *see In re Rules* 2012 ¶ 34 ("[C]onsent obtained in compliance with the E-SIGN Act will satisfy the requirements of our revised rule [. . . ]. The E-SIGN Act provides that an electronic record may be used to provide information to a consumer that is required to be made in writing per a statute or regulation where the consumer is provided with certain disclosures, including how to withdraw consent. 15 U.S.C. § 7001(c). Those disclosures were not included in the consent form defendant identified.

ECF Doc. No. 258, SJ Rep. & Rec. at 17.

The Chief Magistrate Judge's conclusion is in line with other courts. *See, e.g.*, *Larson v. Harman Mgmt. Corp.*, 2016 U.S. Dist. LEXIS 149267, at *5-7 (E.D. Cal. Oct. 27, 2016) (discussing the requirements of the E-Sign Act in the context of TCPA consent); *Winner  v. Kohl's Dep't Stores, Inc.*, 2017 U.S. Dist. LEXIS 131225, at *12-19 (E.D. Pa. Aug. 17, 2017) (where a telemarketer has failed to come forth with the consumer's signed writing, consent may be evidenced by an electronic signature obtained in compliance with the E-Sign Act — including its mandatory disclosures relating to a consumer's right to withdraw consent and a mechanism to do so).

What was true regarding Mr. Mantha is true for all class members: QuoteWizard's consent forms are not E-Sign Act-compliant, and it has produced no evidence to the contrary. After certification, Plaintiff will move for summary judgment on this ground and seek a ruling that will strike its purported consent classwide.

That the Court or a jury can decide the validity of QuoteWizard's consent — up or down, across the class — distinguishes this case from *Hirsch v. USHealth Advisors, LLC,* 337 F.R.D. 118 (N.D. Tex. 2020). There, the plaintiff simply had no way to address consent issues across the class, *id.* at 130, which — as explained above — is not the case here. Moreover, in finding that the plaintiff "offer[ed] no way to establish consent on a classwide basis," *id.*, the court wrongly placed the burden of disproving consent on the

plaintiff; consent is an affirmative defense that the *defendant* must prove. Further, the plaintiff in *Hirsch* sought to hold the defendant company liable for the illegal telemarketing of an independent insurance agent, which raised fact-intensive defenses not amenable to certification, and not applicable here, where vicarious liability is not an issue. The Court in *Hirsch* also failed to acknowledge, as this Court has (ECF Doc. No. 358, SJ Order at 11), that DNC-listed wireless numbers are presumed residential, and that it is defendant who bears the burden to rebut that presumption.

Similarly, in *Mattson v. New Penn Fin.*, No. 3:18-cv-00990, 2023 U.S. Dist. LEXIS 219491 (D. Or. Oct. 12, 2023), the Court also denied certification in a TCPA case involving calls to the DNC Registry — primarily due to its concern that factual disputes specifically as to the plaintiff's "mixed use" of his phone number for personal and business purposes gave rise to a defense "unique" to the representative plaintiff that would be the major focus of class litigation. *Id.* at * 10-11. In this case, of course, the Court has already found that Mr. Mantha's wireless number was residential. *See* SJ Order at 9-13.

Finally, the decisions in *Hirsch* and *Mattson* did not involve telemarketing campaigns directed to admittedly non-business numbers, and neither involved methodologically sound expert testimony.

## D. Defendant's typicality challenges do not preclude certification.

A class representative satisfies Rule 23(a)(3) typicality "when [his] injuries arise from the same events or course of conduct as do the injuries of the class and when [the] plaintiff's claims and those of the class are based on the same legal theory." *Vargas v. Spirit Delivery & Distrib. Servs., Inc.*, 245 F. Supp. 3d 268, 287 (D. Mass. 2017). QuoteWizard challenges typicality on three unavailing grounds.

11

First, QuoteWizard points to the fact that it bought leads from a variety of sources, each of which is different and uses different disclosures. Opp. Br. at 18-19. As QuoteWizard would have it, the fact that it buys leads from scores of lead generators,[3] each of which obtained "consent" in various forms, should effectively immunize it from TCPA class certification. But the fact that the lead sources are different does not detract from the common question of whether *any* of the sources specifically authorized QuoteWizard itself to call, and whether *any* of the leads comply with the E-Sign Act. As stated above, these are common issues shared by all class members, rendering the Plaintiff's claim sufficiently similar to that of class members to satisfy typicality, which requires only that the class representative's claims and those of the class be based on the same legal theory and arise out of the same course or conduct — not that the claims be identical. *Hochstadt v. Bos. Sci. Corp.,* 708 F. Supp. 2d 95, 103 (D. Mass. 2010).

Second, although this Court found in its summary judgment order that it is undisputed that Plaintiff himself listed his cellular number on the National DNC Registry, *see* SJ Order at 11, QuoteWizard seeks a do-over on that issue. It challenges typicality on the ground that Mr. Mantha's former roommate was the subscriber to Mr. Mantha's phone line several years before the number was listed on the DNC Registry, and alleges that Mr. Mantha may not, in fact, have

---

[3] Including some sketchy lead generators. QuoteWizard's admissions in its brief (Opp. Br. at 6-7) regarding the dizzying and multi-layered source of the Mantha leads present a dark tour of the dishonest world of lead generation that QuoteWizard uses to get sales leads. In short, QuoteWizard bought the Mantha lead from a company called RevPoint, which bought it from Plural Marketing Group, which bought it from a company called Fenix. *Id.* Fenix, a Bosnian entity, operated a website which had been "pirated" and was no longer being operated by Fenix. *Id.* QuoteWizard relates these facts as if it — and not the many thousands of DNC-registered consumers who received its unwanted telemarketing calls — was the victim of some form of wrongdoing, notwithstanding the fact that it relied blindly and without independent verification on contractual representations from RevPoint that its sales leads were TCPA-compliant. They were not, as none of the leads QuoteWizard has identified actually authorize it to telemarket DNC-listed numbers.

been the individual who physically listed his wireless number on the DNC Registry. But the Court's prior finding is law of the case. *Cohen v. Brown Univ.*, 101 F.3d 155, 167-68 (1st Cir. 1996). And even more so, QuoteWizard's distinction about the provenance of Mr. Mantha's number on the DNC Registry is one without a difference. The TCPA not only prohibits calls to the subscribers of telephone lines; it prohibits calls to all numbers listed on the DNC Registry without consent. *Krakauer v. Dish Network, LLC,* 925 F.3d 643, 657 (4th Cir. 2019) (Section 227(c)'s prohibitions may be enforced by the subscriber, owner, or user of a residential telephone number); *Moore v. Healthcare Sols. Inc.,* No. 21-cv-4919, 2022 U.S. Dist. LEXIS 220437, at *12-15 (N.D. Ill. Dec. 7, 2022) (it does not matter who registered the phone number on the Do Not Call Registry); *Watson v. Manhattan Luxury Autos., Inc.,* 2022 U.S. Dist. LEXIS 178069, at *26-27 (S.D.N.Y. Sept. 29, 2022) (certifying a TCPA DNC class action and rejecting defendant's claim that only the person who registered a number on the DNC Registry can assert a claim under the TCPA); *Williams,* 2021 U.S. Dist. LEXIS 27496, at *20 (the TCPA does not "require a called party to personally register his or her own number on the DNC Registry"); *Owens v. Starion Energy, Inc.*, No. 3:16-cv-01912, 2017 WL 2838075, at *7 (D. Conn. June 30, 2017) (person whose number is on the Registry and receives telemarketing calls can sue, regardless of whether the person personally listed the number on the Registry).

Third and finally, QuoteWizard lodges a standing challenge in opposing typicality, contending that although this Court has concluded that Plaintiff himself has standing — *see* SJ Order at 3-4 — it will contest class standing at trial. All class members, including Mr. Mantha, have DNC-listed telephone numbers, and this is sufficient to establish standing to bring DNC violation claims under Section 227(c). As the Fourth Circuit held in *Krakauer v. Dish Network, LLC*:

> [T]he private right of action here plainly satisfies the demands of Article III. In
> enacting § 227(c)(5) of the TCPA, Congress responded to the harms of actual
> people by creating a cause of action that protects their particular and concrete
> privacy interests. To bring suit, the plaintiffs here must have received unwanted
> calls on multiple occasions. These calls must have been to a residential number
> listed on the Do-Not-Call registry. . . . The statute requires that an individual
> receive a call on his own residential number, a call that he previously took steps to
> avoid. There is nothing ethereal or abstract about it.

925 F.3d at 653.

And when further considering that every class member replied to QuoteWizard's text

messages with a response that QuoteWizard itself designated a "do not call" request, standing as

to Mr. Mantha and the class is plainly established. *See* ECF Doc. No. 339-2, Verkhovskaya Rep.

¶ 5.

### E. QuoteWizard's remaining challenges fail.

#### 1. Mr. Mantha is a class member.

Without even referencing the proposed class definition, QuoteWizard baldly claims that

Plaintiff "is not a member of the class he seeks to represent." Opp. Br. at 16-17. This is untrue.

The proposed class definition is:

> All persons within the United States (a) whose residential telephone numbers
> were listed on the National Do Not Call Registry, and (b) who received more than
> one telemarketing text within any twelve-month period at any time from Drips,
> (c) to promote the sale of QuoteWizard's goods or services, and (d) whose
> numbers are included on the Class List.

*See* ECF Doc. No. 340, Pl.'s Mem. Supp. Mot. Class Cert., at 8. QuoteWizard fails to say which

element of the class definition Mr. Mantha does not meet — and, in fact, he meets them all:

- Regarding subpart (a), the Court held in its summary judgment order that
  "undisputed facts establish Mantha listed his telephone number on the National
  DNC Registry" (SJ Order at 11, 18), and that his cellular telephone number is
  residential and therefore properly on the Registry (*id.* at 5-8, 12, 17-19);

- Regarding subpart (b), it is not disputed that Mr. Mantha began receiving multiple
  telemarketing texts from QuoteWizard beginning on August 9, 2019, on his DNC

14

listed wireless number and continued receiving such text through August 19, 2019. *See* ECF Doc. No. 210, Def.'s Resp. to Pl.'s LR 56.1 Stmt. of Material Facts & Additional Stmt. of Material Facts, ¶¶ 12-16. *See also* ECF Doc. No. 258, SJ Rep. & Rec. at 3-4;

- Regarding subpart (c), the Court has held that the texts Mr. Mantha received were QuoteWizard "telephone solicitations" as that term is defined in the TCPA, 47 U.S.C. § 227(a)(4), 47 C.F.R. § 64.1200(f)(15) (SJ Order at 13-14); and

- Regarding subpart (d), Mr. Mantha's telephone number is on the class list — an objective, clearly defined (and therefore ascertainable) list of subscribers that, like Mr. Mantha, also received QuoteWizard telemarketing calls despite having their telephone numbers listed on the National DNC Registry.

Mr. Mantha fits the class definition, and QuoteWizard does not seriously claim otherwise; again, it does not even cite the class list in making the assertion. Its chief complaint is with Plaintiff's expert's methodology for identifying *other* class members who have the same claim, but the use of that methodology does not somehow define Mr. Mantha out of the class.[4] Very simply, Mr. Mantha is a class member, and QuoteWizard will have every opportunity to cross-examine Plaintiff's expert regarding the methodology she used to identify other persons who, like Mr. Mantha, received QuoteWizard telemarketing calls despite registering their numbers on the DNC Registry.

### 2.  The class definition is not "fail-safe."

QuoteWizard also claims certification should be denied because one of the criteria defining the class is that the numbers are "residential." Opp. Br. at 15. "A 'fail-safe' class definition is one that references the merits of the case to determine class membership. A simple example is: 'all employees unlawfully denied promotion.' Fail-safe classes earn their name because they have a 'heads I win, tails you lose' aspect: they enable 'putative class members to

---

[4] Plaintiff will address the methodology challenges in his opposition to Defendant's *Daubert* motion.

seek a remedy but not be bound by an adverse judgment—either those class members win or, by virtue of losing, they are not in the class and are not bound.'" 1 Newberg and Rubenstein on Class Actions § 3:6 (6th ed.); *see also In re Nexium,* 777 F.3d 9, 22 (2015) ("[A] fail-safe class is one in which it is virtually impossible for the Defendants to ever 'win' the case, with the intended class preclusive effects. A fail-safe class is prohibited because it would allow putative class members to seek a remedy but not be bound by an adverse judgment—either those class members win or, by virtue of losing, they are not in the class and are not bound.") (cleaned up).

The proposed class definition does not implicate these concerns and is not fail-safe, as membership does not depend on an adjudication of the merits of the claim. *Cf. In re White,* 64 F.4th 302, 303 (D.C. Cir. 2023) (a class of "all workers of Company X employed in its Washington, D.C. and New York City offices between 2021 and 2023 who were unlawfully denied promotion to clerical supervisor due to enforcement of the Company X Skills Test" is made fail-safe by the word "unlawfully," but deleting that word fixes the fail-safe problem).

Instead, class membership is determined by whether a telephone number is on the class list. If Plaintiff loses at trial, any judgment for QuoteWizard against the class will include the list of class telephone numbers, and QuoteWizard will have a clear preclusive bar for any future Section 227(c) action brought against it regarding calls placed to any class telephone number. This is sufficient protection to guard against any potential unfairness, and the definition therefore is not fail-safe.

> **3. Class certification is the superior vehicle to resolve the class claims of tens of thousands of consumers.**

QuoteWizard's last argument — that superiority is lacking — generally repeats its other criticisms addressed above, and also falls short. As the Fourth Circuit recognized in *Krakauer v. Dish Network,* because of the "many advantages for class-wide adjudication" inherent in the

TCPA, "[t]he problems that so often plague class actions under Rule 23(b)(3) are wholly absent from" TCPA litigation. *Krakauer*, 925 F.3d at 655. "The liability determinations involve no questions of individual reliance, no complicated contractual obligations, and no theories of probabilistic injury. The damages calculations do not turn on individual evidence, nor are they difficult to connect to the underlying harm. Put simply, a plaintiff suing under [the TCPA] is likely to be in the same position as a great many other people and can largely rely on common proof to make out his claim." *Id.* In rejecting arguments similar to those made here by QuoteWizard, the *Krakauer* court noted that "it would be dispiriting beyond belief if courts defeated Congress' obvious attempt to vindicate the public interest with interpretations that ignored the purpose, text, and structure of this Act at the behest of those whose abusive practices the legislative branch had meant to curb." *Id.* at 663. The same is true here.

Many other courts have similarly recognized the superiority of the use of the class action vehicle to resolve the TCPA DNC claims of class members. *See Watson v. Manhattan Luxury Autos., Inc.*, Civ. No. 20-4572, 2022 U.S. Dist. LEXIS 178069, at *26-27 (S.D.N.Y. Sept. 29, 2022) (certifying a TCPA DNC class action and rejecting defendant's claim class certification was not superior vehicle to address class claims); *Vance v. DirecTV*, No. 5:17-cv-179, 2022 U.S. Dist. Lexis 140518, at *1 (N.D. W. Va. Aug. 1, 2022) (court certifies a TCPA DNC consumer class action finding class resolution is superior). As one court found in certifying a TCPA case:

> [T]he instant case highlights one of the strongest justifications for the class action device: its regulatory function . . . . A statute such as the TCPA, which provides for a relatively small recovery for individual violations but is designed to deter conduct directed against a large number of individuals, can be effectively enforced only if consumers have available a mechanism that makes it economically feasible to bring their claims. Without the prospect of a class action suit, corporations balancing the costs and benefits of violating the TCPA are unlikely to be deterred because individual claims will not impose the level of liability that would outweigh the potential benefits of violating the statute.

*Denning, Inc. v. Cap. All. Grp.*, No. 13-cv-2654, 2015 U.S. Dist. LEXIS 129495, at *37-38 (S.D. Cal. Sept. 24, 2015).

QuoteWizard's superiority challenge is redundant of its other arguments and poses no bar to class certification.

**Conclusion**

For the foregoing reasons, the Court should grant Plaintiff's motion and certify the class.


Dated: February 28, 2024                           Respectfully Submitted,

                                                   */s/ Matthew P. McCue*
                                                   Matthew P. McCue
                                                   **The Law Office of Matthew P. McCue**
                                                   1 South Ave., Third Floor
                                                   Natick, MA 01760
                                                   Telephone: (508) 655-1415
                                                   mmcue@massattorneys.net

                                                   John W. Barrett
                                                   Brian Glasser
                                                   **Bailey & Glasser LLP**
                                                   209 Capitol Street
                                                   Charleston, WV 25301
                                                   Telephone: (304) 345-6555
                                                   jbarrett@baileyglasser.com
                                                   bglasser@baileyglasser.com

                                                   Edward A. Broderick
                                                   **Broderick Law, P.C.**
                                                   176 Federal Street, Fifth Floor
                                                   Boston, MA 02110
                                                   Telephone: (617) 738-7089
                                                   ted@broderick-law.com

                                                   Anthony I. Paronich
                                                   **Paronich Law, P.C.**
                                                   350 Lincoln Street, Suite 2400
                                                   Hingham, MA 02043
                                                   Telephone: (508) 221-1510
                                                   anthony@paronichlaw.com

                                                   Alex M. Washkowitz

**CW Law Group, P.C.**
188 Oaks Road
Framingham, MA 01701
alex@cwlawgrouppc.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 28, 2024, I electronically transmitted the foregoing to all counsel of record via the electronic filing system.

By:   <u>*s/ Matthew P. McCue*</u>
          Matthew P. McCue

19