# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH MANTHA on behalf of himself and others similarly situated, | Case No. 1:19-cv-12235-LTS-PK |
| Plaintiff, | Leave to File Granted February 27, 2024, Doc. No. 353 |
| v. | |
| QUOTEWIZARD.COM, LLC | |
| Defendant. | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S EXPERT

# <u>TABLE OF CONTENTS</u>

Page

Argument Summary ............................................................................................................. 1

The *Daubert* Analysis ...................................................................................................... 3

Argument ........................................................................................................................... 5

    A.    That Ms. Verkhovskaya added Mr. Mantha to the class list does not, under *Daubert*, render her opinions unreliable. .................................................................. 5

        1.    Mr. Mantha has already proven his claims, and there is no reason for him to have to prove them again through expert testimony. ...................... 5

        2.    Courts routinely find Ms. Verkhovskaya's testimony reliable. ................... 7

        3.    QuoteWizard's limited authority is distinguishable and inapposite, and does not warrant exclusion. ........................................................................ 8

    B.    Ms. Verkhovskaya's use of the PacificEast data to weed out 3% of the class calls does not render her testimony unreliable, particularly considering QuoteWizard's admission that it was calling consumers, not businesses. ............ 14

    C.    QuoteWizard's claim that Ms. Verkhovskaya's testimony results in "false positives" mischaracterizes the record and misstates the law. .............................. 18

Conclusion ....................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*,
No. 15-cv-06314, 2018 WL 3707283 (N.D. Cal. Aug. 3, 2018) ........................................8, 12

*Braver v. Northstar Alarm Servs., LLC*,
329 F.R.D. 320 (W.D. Okla. 2018)...................................................................................17

*Bumpus v. Realogy Brokerage Grp. LLC*,
No. 3:19-cv-03309, 2022 WL 867256 (N.D. Cal. Mar. 23, 2022) ..................................1, 7, 16

*Carroll v. SGS Auto. Services*,
No. 16-537, 2020 U.S. Dist. LEXIS 223676 (M.D. La. Nov. 3, 2020) ...........................11, 12

*Chinitz v. Intero Real Est. Servs.*,
No. 18-cv-05623, 2020 U.S. Dist. LEXIS 247921 (N.D. Cal. July 22, 2020)
................................................................................................................7, 15, 16, 17

*Clark v. Edison*,
881 F. Supp. 2d 192 (D. Mass. 2012) .................................................................................4

*Daubert v. Merrell Dow Pharms.*,
509 U.S. 579 (1993)................................................................................................. *passim*

*Davis v. Capital One, N.A.*,
2023 U.S. Dist. LEXIS 189255 (E.D. Va. Oct. 20, 2023) ............................................9, 10, 11

*Earley Info. Sci., Inc. v. Omega Eng'g, Inc.*,
575 F. Supp. 3d 242 (D. Mass. 2021) .................................................................................4

*General Electric Co. v. Joiner*,
522 U.S. 136 (1997).........................................................................................................3

*Johnson v. Comodo Grp., Inc.*,
No. 16-cv-04469, 2020 WL 525898 (D.N.J. Jan. 31, 2020)...................................................8

*Knapper v. Cox Communs., Inc.*,
329 F.R.D. 238 (D. Ariz. 2019) .......................................................................................13

*Krakauer v. Dish Network, L.L.C.*,
311 F.R.D. 384 (M.D.N.C. 2015) ....................................................................................17

*Krakauer v. Dish Network, L.L.C.*,
925 F.3d 643 (4th Cir. 2019) ......................................................................................12, 21

*Krakauer v. Dish Network, L.L.C.*,
    No. 1:14-cv-333, 2015 WL 5227693 (M.D.N.C. Sept. 8, 2015) ...................................8, 10, 16

*Krakauer v. Dish Network, L.L.C.*,
    No. 1:14-CV-333, 2018 WL 11429948 (M.D.N.C. Jan. 25, 2018) ...........................................8

*Linhares v. Buyers Prods. Co.*,
    Civ. No. 15-11881, 2016 WL 4599899 (D. Mass. Sept. 2, 2016) ............................................5

*Mey v. Matrix Warranty Sols.*,
    No. 5:21-cv-62, 2023 U.S. Dist. LEXIS 94167 (N.D. W. Va. Mar. 23, 2023) .............9, 12, 13

*Milward v. Rust-Oleum Corp.*,
    820 F.3d 469 (1st Cir. 2016) ...................................................................................................3

*Moore v. Healthcare Sols. Inc.*,
    No. 21-cv-4919, 2022 U.S. Dist. LEXIS 220437 (N.D. Ill. Dec. 7, 2022)...........................21

*In re Nexium Antitrust Litig.*,
    777 F.3d 9 (1st Cir. 2015) ...............................................................................................17, 18

*Owens v. Starion Energy, Inc.*,
    No. 3:16-cv-01912, 2017 WL 2838075 (D. Conn. June 30, 2017) .......................................21

*Perez v. Rash Curtis & Assocs.*,
    No. 16-cv-03396, 2019 U.S. Dist. LEXIS 58639 (N.D. Cal. Apr. 4, 2019) ...........................13

*Reyes v. BCA Fin. Servs.*,
    No. 16-24077-CIV, 2018 U.S. Dist. LEXIS 106449 (S.D. Fla. June 26, 2018)...............13, 19

*Rodriguez v. Hosp. San Cristobal, Inc.*,
    91 F.4th 59 (1st Cir. 2024)......................................................................................................3

*Sandoe v. Boston Sci. Corp.*,
    333 F.R.D. 4 (D. Mass. 2019).........................................................................................12, 13

*Sapan v. Yelp*,
    No. 3:17-cv-03240, 2021 WL 5302908 (N.D. Cal. Nov. 15, 2021) .......................................13

*Shamblin v. Obama*,
    No. 8:13-cv-2428-T-33TBM, 2015 U.S. Dist. LEXIS 54849 (M.D. Fla. Apr.
    27, 2015) ..................................................................................................................................8

*United States v. Sampson*,
    No. 01-10384, 2016 WL 11726919 (D. Mass. Sept. 2, 2016) ...........................................4, 16

*Vance v. DIRECTV, LLC*,
    No. 5:17-cv-179, 2022 U.S. Dist. LEXIS 140518 (N.D. W. Va. Aug. 1, 2022) ......................7

*Watson v. Manhattan Luxury Autos., Inc.*,
   No. 20-4572, 2022 U.S. Dist. LEXIS 178069 (S.D.N.Y. Sept. 29, 2022)......................2, 7, 21

*Williams v. PillPack LLC*,
   No. C19-5282 TSZ, 2021 U.S. Dist. LEXIS 27496 (W.D. Wash. Feb. 12,
   2021) ..............................................................................................................................7, 17, 21

*Wilson v. Badcock Home Furn.*,
   329 F.R.D. 454 (M.D. Fla. Dec. 19, 2019) ...........................................................................13

**Statutes**

47 U.S.C. §227(b) ...................................................................................................................11

**Rules**

Fed. R. Civ. P. 23(d)(1)(A) ......................................................................................................6

Fed. R. Evid. 702 .................................................................................................................3, 4

**Argument Summary**

As one of the many courts (*see infra* at 7-8) that have denied motions to strike Anya Verkhovskaya's testimony identifying DNC-registered, residential numbers recently observed, "Verkhovskaya's methods are not particularly complicated." *Bumpus v. Realogy Brokerage Grp. LLC,* No. 3:19-cv-03309, 2022 WL 867256, at *3 (N.D. Cal. Mar. 23, 2022) (certifying the same DNC claim as the instant case and denying *Daubert* motion to strike Ms. Verkhovskaya's opinions on DNC-registered and residential numbers). In *Bumpus*, Ms. Verkhovskaya analyzed call records, identified completed calls, identified numbers on the DNC Registry, and used third-party data to cull any remaining numbers associated with businesses or the government. *Id.*

Her work here is much the same, and the legal claims are identical. To identify telephone numbers that, just like Mr. Mantha's, received two or more telephone solicitation text messages from QuoteWizard in a 12-month period, Ms. Verkhovskaya analyzed call records showing all QuoteWizard calls and developed a list of telephone numbers that met the temporal DNC criteria. And having completed that initial analysis (which QuoteWizard does not seriously challenge), she proceeded to answer just two remaining questions.

**First**, were the identified numbers on the DNC Registry at the time of the calls? To accomplish this, Ms. Verkhovskaya used data from third-party data provider PacificEast, which provides a service to identify telephone numbers on the Registry. *See* Decl. of S. Rice, Doc. No. 350-4, at 4.

**Second**, were the telephone numbers residential numbers, and thus entitled to assert claims under TCPA Section 227(c)? Or were they business or government numbers? This inquiry was not particularly challenging, for several reasons: (a) QuoteWizard was selling consumer, not business, insurance, and was therefore not targeting businesses in its telemarketing calls; (b) as this Court held in its order granting Plaintiff summary judgment and denying Defendant's motion

for summary judgment, telephone numbers on the DNC Registry are presumptively residential under caselaw and FCC guidance, *see* SJ Order, Doc. No. 268, at 11; (c) QuoteWizard produced the sales lead information showing the names and addresses of every consumer it called, providing a particularly strong dataset for analysis and simplifying the process of culling non-residential lines, *see* Rep. of A. Verkhovskaya, Doc. No. 350-1, ¶ 88 ("Verkhovskaya Rep."); and (d) QuoteWizard was offered the opportunity to rebut the residential status in discovery, but declined, *infra* at 14.

So, in identifying any remaining business telephone numbers on her list of putative class members, Ms. Verkhovskaya was not starting from a blank slate; all numbers — 73,781 of them, Verkhovskaya Rep. ¶ 75 — were strongly presumed to be residential. Nonetheless, to ensure that any numbers associated with businesses were removed from the proposed class list, she again turned to PacificEast, which also provides a service that identifies telephone numbers associated with businesses. And finally, she manually searched the narrowed records for common keywords associated with non-residential numbers (*e.g.*, "corp.," "gov," and hundreds of others). *Id.* ¶¶ 84-85. The result? Of the 73,781 numbers on Ms. Verkhovskaya's list before her additional work identifying business numbers, just 3% were removed, leaving a total of 71,550 telephone numbers in the initial proposed class list.[1] Given the consumer-focused purpose of

---

[1] Thereafter additional adjustments were made to the class list to primarily account for the fact that QuoteWizard erroneously placed consumers on their Internal Do Not Call list that actually expressed interest in QuoteWizard's services. The final number of consumer phone numbers on the class list is 66,693. QuoteWizard makes much of the fact that Ms. Verkhovskaya submitted supplemental reports correcting such oversights. *See* Mem. Supp. *Daubert* Mot. ("Br."), Doc. No. 350, at 4, 7-8, 12. But one court easily dispatched a similar challenge: "Defendant argues that Verkhovskaya's methodology to identify class members is unreliable because it has been tweaked several times, often in response to [other] experts pointing out errors[.] . . . [T]he fact that Verkhovskaya refined her methodology and fixed supposed problems suggests it is now more rather than less reliable." *Watson v. Manhattan Luxury Autos., Inc.*, No. 20-4572, 2022 U.S.

QuoteWizard's telemarketing efforts, the exceedingly small percentage of business numbers is not surprising.

QuoteWizard's massive class certification and *Daubert* briefing effort obfuscates the simplicity — and, ultimately, the reliability — of Ms. Verkhovskaya's work to identify DNC-registered, residential telephone numbers. It relentlessly and exhaustingly examines every tree in the legal forest. In the end, QuoteWizard cites *no* cases striking Ms. Verkhovskaya's residential or DNC analyses. Her work is sufficiently reliable, objective, accepted, and testable to withstand *Daubert*. QuoteWizard's challenges are appropriate for cross-examination at trial, as its critiques go to the weight, not the admissibility, of Ms. Verkhovskaya's evidence.

### The *Daubert* Analysis

There is no "definitive checklist or test" used to evaluate the reliability of proposed expert testimony. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 593-94 (1993). The question, at its root, is whether the expert at issue has provided a reliable, valid, and generally accepted method for her work, or whether her approach is "junk science" akin to predicting criminality by feeling the bumps on a person's head. *General Electric Co. v. Joiner*, 522 U.S. 136, 153 n.6 (1997) (Stevens, J., concurring in part)

In applying Federal Rule of Evidence 702 to weigh the admissibility of expert testimony, the Court "serves as the gatekeeper for expert testimony by 'ensuring that [it] . . . both rests on a reliable foundation and is relevant to the task at hand.'" *Milward v. Rust-Oleum Corp.*, 820 F.3d 469, 473 (1st Cir. 2016) (quoting *Daubert*, 509 U.S. at 597). The present form of Rule 702, which incorporates *Daubert*'s reasoning, *Rodriguez v. Hosp. San Cristobal, Inc.*, 91 F.4th 59, 70 (1st Cir. 2024), provides that:

---

Dist. LEXIS 178069, at *9 (S.D.N.Y. Sept. 29, 2022) (in putative TCPA class action, denying *Daubert* challenge to Ms. Verkhovskaya's identification of business numbers).

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under the Rule's "flexible inquiry," the Court's analysis "is not primarily concerned with a proposed expert's conclusions" — instead, the Court "is tasked with making a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'" *United States v. Sampson*, No. 01-10384, 2016 WL 11726919, at *4 (D. Mass. Sept. 2, 2016) (Sorokin, J.) (quoting *Daubert*, 509 U.S. at 592-93).

The requirement that an expert's testimony be rooted in a "reliable foundation" is often the "central focus of a *Daubert* inquiry." *Earley Info. Sci., Inc. v. Omega Eng'g, Inc.*, 575 F. Supp. 3d 242, 244 (D. Mass. 2021) (quoting *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998)). The Supreme Court in *Daubert* laid out a non-exhaustive list of factors to be considered in a reliability analysis, including whether the expert's technique can be tested; whether it has been subjected to peer review and publication; whether there are standards controlling its application; and its degree of acceptance within the relevant scientific community. *See id.*; *Sampson*, 2016 WL 1172619, at *4. The Court does not take on the role of the factfinder in assessing expert credibility; "[r]ather, vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Clark v. Edison*, 881 F. Supp. 2d 192, 200 (D. Mass. 2012) (quoting *Daubert*, 509 U.S. at 596).

At bottom, "[t]he ultimate purpose of the *Daubert* inquiry is to determine whether the testimony of the expert would be helpful to the jury." *Linhares v. Buyers Prods. Co.*, Civ. No. 15-11881, 2016 WL 4599899, at *2 (D. Mass. Sept. 2, 2016) (Sorokin, J.) (quoting *Hochen v. Bobst Grp., Inc.*, 290 F.3d 446, 452 (1st Cir. 2002)). A proponent of expert testimony "does not . . . carry the burden of proving to the judge that the expert's assessment of the situation is correct. As long as an expert's scientific testimony rests upon good grounds, based on what is known, it should be tested by the adversary process." *Id.* (quoting *Ruiz-Troche*, 161 F.3d at 85).

**Argument**

**A.     That Ms. Verkhovskaya added Mr. Mantha to the class list does not, under *Daubert*, render her opinions unreliable.**

QuoteWizard says "the most glaring deficiency" in Ms. Verkhovskaya's testimony is "that her proposed methodology fails to identify the named Plaintiff[,]" and that "[c]ourts routinely exclude expert testimony regarding a proposed methodology for identifying class members when that methodology fails to identify the named plaintiff as one of the potential class members[.]" Br. at 12. This argument — QuoteWizard's leading ground for exclusion — (1) ignores the unique factual circumstances of this case, where Mr. Mantha has already proven his claims, obviating any need to prove them again through expert testimony; (2) is contrary to the weight of authority; and (3) relies on outlier decisions that are inapposite here.

**1.     Mr. Mantha has already proven his claims, and there is no reason for him to have to prove them again through expert testimony.**

QuoteWizard's argument for exclusion skirts the one fact that is not present in any of its cited cases: this Court has already ruled in Mr. Mantha's favor and against QuoteWizard on nearly every issue Mantha must prove. Specifically, it is already established that (1) Mr. Mantha listed his number on the National DNC Registry (*see* SJ Order, Doc. No. 268, at 11, 18); (2) his

5

number was residential and therefore properly on the Registry (*id.* at 5-8, 12, 17-19); (3) the QuoteWizard texts were "telephone solicitations" as the TCPA defines that term (*id.* at 13-14); and (4) QuoteWizard itself admits that Mr. Mantha received eight text messages in ten days from QuoteWizard (*see* Doc. No. 233, ¶¶ 32-33, 35, 37, 39, 41, 43, 45, 47). Moreover, while consent is an affirmative defense and therefore not an element of Mr. Mantha's claim, the Court also concluded QuoteWizard lacked consent to send him telemarketing text messages. SJ Order at 20-21. Mr. Mantha's claim and class membership are proven.[2]

With Mr. Mantha's claims established, why must he prove them *again* through Ms. Verkhovskaya's testimony? None of QuoteWizard's authority addresses anything close to this scenario, and pretending that the individual discovery period and the Court's summary judgment rulings do not exist makes no sense. Further, requiring Mr. Mantha to prove his claims again would lead to duplicative and confusing evidence, which courts managing class actions expressly can disallow. *See* Fed. R. Civ. P. 23(d)(1)(A) (district courts may issue orders in class actions "that prescribe measures to prevent undue repetition or complication in presenting evidence or argument"). In the end, it defies common sense to require that Mr. Mantha prove his claims not only during the individual discovery period, but also through an expert's analysis — particularly when the entire point of that analysis is to identify *others* with the same Section 227(c) claim as Mr. Mantha and the entire point of the individual discovery period was to determine if Mr. Mantha has a claim.

---

[2] The proposed class definition is "All persons within the United States (a) whose residential telephone numbers were listed on the National Do Not Call Registry, and (b) who received more than one telemarketing text within any twelve-month period at any time from Drips, (c) to promote the sale of QuoteWizard's goods or services, and (d) whose numbers are included on the class list." Doc. No. 340, at 8. Mr. Mantha satisfies every element.

2.      **Courts routinely find Ms. Verkhovskaya's testimony reliable.**

To bolster its claim that "[c]ourts routinely exclude expert testimony regarding a

proposed methodology for identifying class members when that methodology fails to identify the

named plaintiff as one of the potential class members[,]" Br. at 12, QuoteWizard marshals two

cases — outliers with little to no application here, *see infra* at 8-11 — in contrast to the large

number of cases approving Ms. Verkhovskaya's work. The latter group includes:

- *Watson v. Manhattan Luxury Autos., Inc.*, 2022 U.S. Dist. LEXIS 178069, at *9 (S.D.N.Y. Sept. 29, 2022) (denying *Daubert* motion to exclude Ms. Verkhovskaya's testimony, rejecting claims she cannot reliably distinguish between residential and business numbers);

- *Vance v. DIRECTV, LLC,* No. 5:17-cv-179, 2022 U.S. Dist. LEXIS 140518, at *15-16 (N.D. W. Va. Aug. 1, 2022) (certifying TCPA DNC class; "this Court would be disinclined to reject Ms. Verkhovskaya's expert methodology even in the context of a *Daubert* motion because Ms. Verkhovskaya is replicating the expert methodology she used that led to the affirmed class judgment in *Krakauer* — analyzing call records to identify putative class members. *See Krakauer v. Dish Network, L.L.C.*, 2015 WL 5227693 (M.D.N.C. Sept. 8, 2015) (Eagles, J.)");

- *Bumpus v. Realogy Brokerage Grp. LLC*, No. 3:19-cv-03309, 2022 WL 867256, at *3 (N.D. Cal. Mar. 23, 2022) (Ms. Verkhovskaya's DNC and residential number identification work withstands *Daubert* analysis; she has provided a "reliable, valid, and generally accepted method for identifying which numbers belong in the putative class"; her "analysis is based on evidence in the record, entails reasonable and appropriate methods, and yields reliable results")

- *Williams v. PillPack LLC*, No. C19-5282 TSZ, 2021 U.S. Dist. LEXIS 27496, at *17, (W.D. Wash. Feb. 12, 2021) (certifying TCPA DNC class; rejecting defense reliability challenge to Ms. Verkhovskaya's identification of DNC-listed and residential telephone numbers);

- *Chinitz v. Intero Real Est. Servs.*, No. 18-cv-05623, 2020 U.S. Dist. LEXIS 247921, at *19-20 (N.D. Cal. July 22, 2020) (denying *Daubert* motion to exclude Ms. Verkhovskaya; defendant's "arguments do not render the Verkhovskaya Report inadmissible as these arguments relate to the weight of Ms. Verkhovskaya's opinion. Ms. Verkhovskaya started with the assumption that the numbers were residential because they were registered with the NDNCR, but used LexisNexis to remove any business numbers that may have been registered with the NDNCR . . . . Indeed, several courts have approved of Ms. Verkhovskaya's use of LexisNexis to remove business numbers from her output list as this is the type of data reasonably relied upon by experts in the field.")

- *Johnson v. Comodo Grp., Inc.*, No. 16-cv-04469, 2020 WL 525898, at *9-10 (D.N.J. Jan. 31, 2020) (denying *Daubert* motion to exclude Ms. Verkhovskaya's "reverse-append" testimony, detailing how she could use third-party data to identify subscribers' names, addresses, and associated date ranges; she "is clearly qualified to opine on TCPA issues" and her methodology "is testable, reliable, and sufficiently capable of identifying putative class members"; citing numerous cases in which Ms. Verkhovskaya has been approved to offer similar reverse-append testimony).

- *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, No. 15-cv-06314, 2018 WL 3707283, at *8 (N.D. Cal. Aug. 3, 2018) (denying *Daubert* motion as to Ms. Verkhovskaya's identification of DNC-listed residential numbers; "Because Ms. Verkhovskaya appears to have reviewed call records confirmed to be authentic business records related to the instant lawsuit and faithfully applied her methodology of excluding zero duration calls, her opinion is both reliable and relevant to the instant lawsuit.")

- *Krakauer v. Dish Network, L.L.C.*, No. 1:14-cv-333, 2015 WL 5227693, at *11 (M.D.N.C. Sept. 8, 2015) (denying *Daubert* challenge as to Ms. Verkhovskaya's identification of DNC-listed and residential numbers; "Dish's challenges concern plaintiff's counsel's instructions as to what certain codes in the data meant, the accuracy of the underlying data, and the soundness of her conclusions, none of which affect admissibility, but go to weight. Dish also points out some potential errors or inaccuracies in Ms. Verkhovskaya's analysis or assumptions. Even taken together, these potential errors are not enough to show that Ms. Verkhovskaya has not reliably applied her methods to the data and facts of the case."); *see also id.*, 2018 WL 11429948, at *2 (M.D.N.C. Jan. 25, 2018) (after trial, finding Ms. Verkhovskaya to be a credible and reliable witness, noting "familiarity with her work over time" and the court's "personal, in-court observations of her testimony").

- *Shamblin v. Obama*, No. 8:13-cv-2428-T-33TBM, 2015 U.S. Dist. LEXIS 54849, at *8-9 (M.D. Fla. Apr. 27, 2015) (denying *Daubert* motion; "The Court determines that both Verkhovskaya and Biggerstaff are amply qualified, and their relevant experience, education, and training render them competent to offer expert testimony in TCPA cases. In addition, both of Shamblin's experts employ generally reliable methodologies which entail, inter alia, performance of detailed statistical analysis and utilization of LexisNexis data that has been independently verified[.] Due to the highly technical nature of the proceedings, the Court determines that the challenged experts are in a position to substantially assist the trier of fact. . . . [B]oth experts satisfy the strictures of *Daubert*.").

### 3.    QuoteWizard's limited authority is distinguishable and inapposite, and does not warrant exclusion.

While QuoteWizard boldly claims that "[c]ourts routinely exclude expert testimony regarding a proposed methodology for identifying class members when that methodology fails to identify the named plaintiff as one of the potential class members[,]" Br. at 12, it cites just a

handful of decisions that are hardly "routine."

Worse, QuoteWizard fails to cite a recent, contrary decision that is directly on point. In a putative TCPA class action with Ms. Verkhovskaya serving as a testifying expert to identify absent class members, the Northern District of West Virginia expressly rejected the argument that her methodology must identify the class representative:

> [T]he [defendants] claim that plaintiff cannot establish ascertainability because plaintiff's expert methodology does not identify plaintiff as a class member. ***This Court is not persuaded by this argument against ascertainability because Ms. Verkhovskaya's methodology is limited to identifying absent class members***.

*Mey v. Matrix Warranty Sols*., No. 5:21-cv-62, 2023 U.S. Dist. LEXIS 94167, at *17-18 (N.D. W. Va. Mar. 23, 2023) (certifying a TCPA class) (emphasis added). What was true in *Matrix* is true here: Ms. Verkhovskaya's task was to identify absent class members. Why would her work be excluded as unreliable because it does not do something it was never intended to do in the first place? This QuoteWizard does not say. It instead relies on five cases — three of which do not involve rulings on *Daubert* motions at all. None require exclusion of Ms. Verkhovskaya's testimony.

**Davis**. QuoteWizard relies most heavily on *Davis v. Capital One, N.A.,* 2023 U.S. Dist. LEXIS 189255 (E.D. Va. Oct. 20, 2023), one of the two cases it cites excluding Ms. Verkhovskaya on *Daubert* grounds. There, the plaintiff, who had never been a Capital One customer, held a telephone number that previously belonged to a Capital One customer, and alleged that he received prerecorded message calls intended for the previous subscriber to his number. *Id.* at *1-2. A classic case of mistaken identity, and in the TCPA vernacular, a "wrong number" (or "reassigned number") case.

The *Davis* plaintiff offered Ms. Verkhovskaya's testimony to identify other putative class members who also had telephone numbers that previously belonged to Capital One customers,

and who also received wrong-number calls from the company. *Id.* at \*15. Ms. Verkhovskaya testified she could identify class telephone numbers by using a combination of Capital One's telephone calling records (which coded calls placed to wrong numbers with an "INVALID" code) and a "Reassigned Number Database" (or "RND") to identify numbers that had been disconnected at some point in the class period. *Id.* at \*16. The court found this process insufficiently reliable, as

> neither the RND nor Capital One's own records can reliably identify a specific date when a Capital One customer relinquished their cellular phone number or otherwise terminated their subscriber status. And even if Verkhovskaya's methodology enabled her to access that temporal data, the RND was only made available starting in 2021, and the class period that Davis proposes begins in May of 2019.

*Id.* at \*24.

None of this is relevant to this case, and the district court in *Davis* did not exclude opinions like those that Ms. Verkhovskaya offers here — that she can identify numbers on the Do Not Call Registry and can identify business numbers using third-party data. There was no need in *Davis* for her to offer this testimony, as the claims there did not require proof of DNC listing or residential status. In fact, the *Davis* court itself drew a sharp distinction between Ms. Verkhovskaya's "much more complicated and individualized undertaking and analysis" there and the more straightforward methodology deployed in *Krakauer* — a case involving DNC claims like this one.

> *Krakauer* involved claims brought under a different section of the TCPA, Section 227(c)(5), and under that section it was only necessary to identify that (1) a call from the defendant was placed to a number on the Do Not Call Registry and "went through" (i.e., connected), and (2) the number received more than one call after it was placed on the registry.

*Id.* at \*23 (citing *Krakauer v. Dish Network, L.L.C.*, 311 F.R.D. 384, 391 (M.D.N.C. 2015)).

While Ms. Verkhovskaya's opinions in the instant case extend to identifying business telephone

numbers, the *Davis* court made no findings that her methodology for identifying DNC-listed residential numbers was unreliable.

  ***Carroll.*** The only other decision excluding Ms. Verkhovskaya's testimony under *Daubert* that QuoteWizard cites is *Carroll v. SGS Auto. Services,* No. 16-537, 2020 U.S. Dist. LEXIS 223676 (M.D. La. Nov. 3, 2020). It is also easily distinguishable. *Carroll* was not a DNC case. *Carroll* concerned allegedly illegal pre-recorded telemarketing calls in alleged violation of a different provision of the TCPA, 47 U.S.C. § 227(b). In *Carroll,* Ms. Verkhovskaya's testimony was offered to connect the names and addresses of class members to their phone numbers. Crucially, however, at the class certification stage, Ms. Verkhovskaya had yet to perform this analysis, and as such, had been unable to test her methodology. The Court found this fact concerning and noted that a key element of a *Daubert* analysis is to be able to test the expert's proposed methodology. *Id.* at * 10, 19 ("her report only proposes a methodology and does not actually perform the proposed work"). In this case, Ms. Verkhovskaya's expert testimony is specifically designed to assist the trier of fact assess whether consumers' phone numbers were listed on the DNC when they received telemarketing texts from QuoteWizard, and whether the numbers on which such texts were received were residential numbers. Here, unlike in *Carroll,* Ms. Verkhovskaya has also performed the work behind her methodology, and it has been challenged and tested by QuoteWizard. The *Carroll* court also found it concerning that the plaintiff was not the intended recipient of the alleged illegal calls at issue, which were intended to go to the plaintiff's wife, a former customer of the defendant. *Id.* at *17 ("His name does not appear in the SGS or Honda records."). The Court expressed skepticism as to whether Ms.

Verkhovskaya's methodology could identify the *intended recipient* of the allegedly illegal calls.[3] Here, there is no doubt that QuoteWizard intended to send telemarketing texts to Mr. Mantha, and QuoteWizard itself has already produced the names and addresses of the consumers it intended to call, along with their phone numbers. *See* Rep. of A. Verkhovskaya, Doc. No. 350-1, ¶ 88. *Carroll* offers no criticism of the sort of testimony Ms. Verkhovskaya is providing here, which is that she can identify DNC-listed residential numbers and has done so.

**The other non-*Daubert* wrong number cases.**  QuoteWizard cites several cases that are not *Daubert* decisions at all; ***all are wrong-number cases that do not involve the testimony Ms. Verkhovskaya offers here***. In *Sandoe v. Boston Sci. Corp.,* 333 F.R.D. 4 (D. Mass. 2019), no *Daubert* motion was before the court, and Judge Bailey's decision in *Matrix* neatly sums up why *Sandoe* is irrelevant here:

> [I]n *Sandoe*, the proposed methodology for identifying subscribers associated with telephone numbers on call logs failed to properly associate the class representative with his own telephone number. Unlike this case, the particular methodological failure in *Sandoe* was illustrative of a problem that would be encountered across the class as a whole[,] unlike here, ***where the expert methodology is utilized for absent class member identification only***.

---

[3]  Carroll's focus on the "intended recipient" moreover, was misguided on two counts. First, both the subscriber and user of a cell phone have standing to enforce TCPA claims. *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 657 (4th Cir. 2019) ("If a wife, as the subscriber, lists a home telephone number on the Do-Not-Call registry, but her husband happens to be the one who receives the improper calls, the law has still been violated. Both the wife and the husband can suffer the harm that Congress sought to deter, and both are "persons" able to bring a claim under § 227(c)(5)."). Second, *Carroll's* focus on identifying class members, moreover, was an inappropriate basis to exclude Ms. Verkhovskaya's testimony, as one court held: "Defendants do not provide any authority to support the assertion that because the call records upon which Ms. Verkhovskaya relied did not identify the recipient of the call her testimony is unreliable and irrelevant. Additionally, although the call records are not yet connected to individual class members, they are very much connected to the alleged conduct at issue in this case and may support plaintiffs' establishment of their claims and Alarm.com's damages in the aggregate." *Abante Rooter,* 2018 U.S. Dist. LEXIS 132078, at *24 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) ("Where the only question is how to distribute the damages, the interests affected are not the defendant's but rather those of the silent class members.")).

*Matrix,* 2023 WL 3695593, at *5. Further, class certification was denied in *Sandoe* in large part because of individualized issues of consent not present here, where the consent question can be answered as a matter of law for all class members. *See* Pl.'s Reply Mem. Supp. Mot. Class Cert., Doc. No. 358, at 5-9.

Another inapposite decision QuoteWizard cites is *Wilson v. Badcock Home Furn.,* 329 F.R.D. 454, 461 (M.D. Fla. Dec. 19, 2019). Not only is *Wilson* another wrong-number case that does not involve Ms. Verkhovskaya's work here, but the *Wilson* court actually denied a *Daubert* motion to exclude Ms. Verkhovskaya. *Id.* at 455. And finally, to the extent QuoteWizard cites *Sapan v. Yelp,* No. 3:17-cv-03240, 2021 WL 5302908 (N.D. Cal. Nov. 15, 2021), it too is easily distinguishable. Yet another non-*Daubert* wrong number case, *Sapan* involved the court's denial of class certification because the plaintiff had "dropped the ball during discovery and had not obtained anything close to a usable record of Yelp's calls to putative class members, which was vital evidence for certification purposes." *Id*. at *2. Ms. Verkhovskaya was left with no class call records to analyze, her declaration was submitted after expert discovery had closed, and she could not satisfy the Court that she could separate out "numbers that are linked to an existing business relationship, or which otherwise have provided consent to be called." *Id.* at *1. Similar circumstances are not present here.[4]

---

[4] Wrong number cases present particularly difficult proof challenges not present here — the task of identifying persons the defendant has no record of, because the defendant was intended to call someone else. Nevertheless, courts have also denied *Daubert* motions to exclude Ms. Verkhovskaya in wrong-number cases. *See, e.g.*, *Perez v. Rash Curtis & Assocs.,* No. 16-cv-03396, 2019 U.S. Dist. LEXIS 58639, at *12 (N.D. Cal. Apr. 4, 2019) (denying *Daubert* motion in wrong-number case); *Reyes v. BCA Fin. Servs.*, No. 16-24077-CIV, 2018 U.S. Dist. LEXIS 106449, at *36-37 (S.D. Fla. June 26, 2018) (denying *Daubert* motion and noting, "[t]o be sure, [defendant's] expert does raise salient gaps in Verkhovskaya's methodology. But a less-than-perfect opinion may still be admissible, even if it contains gaps"); *Knapper v. Cox Communs., Inc.,* 329 F.R.D. 238, 245 (D. Ariz. 2019) ("the Court is not concerned with whether the reverse

**B.    Ms. Verkhovskaya's use of the PacificEast data to weed out 3% of the class calls does not render her testimony unreliable, particularly considering QuoteWizard's admission that it was calling consumers, not businesses.**

To attempt to exclude Ms. Verkhovskaya's testimony, QuoteWizard has followed the standard defense playbook and obtained a carefully worded declaration from a third-party data provider (here, PacificEast) with standard boilerplate disclaimer language and carefully-worded assertions about the conclusiveness of its data. The declaration does not justify exclusion.

In its declaration, PacificEast emphasizes (twice) that "[i]n its standard contract with its customers," it "clearly states that it does not warrant the accuracy of specific data outputs for this service, nor does it warrant or guarantee that its services can appropriately be used for any particular purpose." Decl. of S. Rice, Doc No. 350-4, ¶¶ 8, 17. In like vein, PacificEast notes that although it "provides a service that attempts to indicate whether particular numbers are associated with a residential or a business telephone number," *id.* ¶ 9, its data "is not intended to conclusively establish that a particular telephone number is a 'business,' as opposed to a 'residential' number[,]" *id.* ¶ 15, and it cannot "authoritatively answer[]" the question of whether a number is business or residential. *Id.* ¶¶ 9, 14.

None of this justifies the *Daubert* exclusion of Ms. Verkhovskaya's opinions, for several reasons. First, QuoteWizard itself has acknowledged that the entire point of its telemarketing campaigns was to sell insurance to consumers — not businesses. For that reason, QuoteWizard purchased consumer, not business, sales leads. *See* Pl.'s Reply Mem. Supp. Mot. Class Cert., Doc. No. 358, at 3. Second, as this Court has held, numbers like Mr. Mantha's on the National

---

lookup process will produce perfectly accurate results. Instead, the industry standard shows that the major data aggregators can be used, in connection with other methods like subpoenaing wireless carriers and cross-referencing addresses, to reasonably identify the most likely subscriber of the phone number on the relevant call date. Defendant's expert does not challenge that the reverse lookup process is the industry standard and is commonly used in TCPA cases").

DNC Registry are presumptively residential. *Id.* at 2. And third, QuoteWizard declined in discovery to identify numbers that it claimed were not residential. *See* Pl.'s Reply Mem. Supp. Mot. Class Cert., Doc. No. 358, at 4 & n.2.

These three facts strongly support a finding, even without the PacificEast data, that the numbers QuoteWizard called are residential. But Plaintiff took the extra step of having Ms. Verkhovskaya query potential class numbers against the PacificEast data to weed out any remaining business-associated numbers. This resulted in a small reduction of class size — just 3%. Ms. Verkhovskaya *did not* use the PacificEast data "conclusively" to identify residential numbers in the class. She used PacificEast to cross-check and confirm what Plaintiff already believed to be true: QuoteWizard was calling consumers, not businesses, to sell them consumer insurance.

That QuoteWizard has obtained a PacificEast declaration disclaiming that its information can be used "authoritatively" or "conclusively" to identify businesses is nothing new. Defendants in other cases obtained similar declarations from LexisNexis, the former third-party data provider used by Ms. Verkhovskaya, without success. For example, in *Chinitz* (as here) the defendant cited a declaration from LexisNexis that its data "could not be used in the way Ms. Verkhovskaya used the data." 2020 U.S. Dist. LEXIS 247921, at *15-16. The court nonetheless declined to exclude Ms. Verkhovskaya's testimony, finding the challenges "relate to the weight of Ms. Verkhovskaya's opinion." *Id.* at *19. And much like her process in this case, in *Chinitz*, Ms. Verkhovskaya was not operating from a clean slate. As the court explained, she

> started with the assumption that the numbers were residential because they were
> registered with the NCDNR [the National Do Not Call Registry], but used
> LexisNexis to remove any business numbers that may have been registered with
> the NDNCR. . . . Indeed, several courts have approved of Ms. Verkhovskaya's use
> of LexisNexis to remove business numbers from her output list as this is the type
> of data reasonably relied upon by experts in the field.

*Id.* at *19-20 (citing *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, No. 15-cv-6314, 2017 WL 1806583, at *4 (N.D. Cal. May 5, 2017); *Krakauer,* 2015 WL 5227693, at *11). *See also Bumpus,* 2022 WL 867256, at *4 (challenges to the accuracy of the LexisNexis data go to the weight, not admissibility, of Ms. Verkhovskaya's opinions regarding whether the class numbers are residential).

It is true that these cases do not involve data from PacificEast. It is also true that QuoteWizard was targeting consumers, not businesses; that numbers on the DNC are presumptively residential; that PacificEast's declaration voices only generalized disclaimers about the "authoritative" nature of its data; and one of the services PacificEast sells is in fact intended "to indicate whether particular numbers are associated with a residential or business telephone number." Decl. of S. Rice, Doc. No. 350-4, ¶ 9. Ms. Verkhovskaya did not rely on PacificEast as "authoritative"; she used it to confirm what was already presumed.

It is also true that Ms. Verkhovskaya's testimony about the residential nature of the numbers may contain errors, but that does not call for exclusion; to the contrary, as this Court has pointed out, *Daubert* itself holds that whether an expert's technique can be tested is among the factors a court should consider in determining whether expert testimony is sufficiently reliable. *See Sampson,* 2016 WL 11726919, at *4 (quoting *Daubert,* 509 U.S. at 593-94). And besides, QuoteWizard had the opportunity to do its own testing, but declined. On a more fundamental level, even if Ms. Verkhovskaya's analysis may have left a few business numbers in the list, that does not warrant *Daubert* exclusion — much less a denial of class certification. *See Krakauer*, 2015 WL 5227693, at *11 ("To the extent Ms. Verkhovskaya missed a few business numbers out of more than 28,000, . . .is insufficient to establish that she has not reliably applied her methodology to the data."); *see also Chinitz,* 2020 U.S. Dist. LEXIS 247921, at *44-45 ("[T]he

fact that a class list may contain some business numbers whose claims fail on the merits does not mean that the class cannot be certified.")

Class action expert testimony is not uniquely subject to a requirement of 100% certainty, either at the certification stage or at trial. "The fact that a class list contains members whose claims may fail on the merits does not mean that the class cannot be certified." *Krakauer,* 311 F.R.D. at 396. This is because "excluding all uninjured class members at the certification stage is almost impossible in many cases, given the inappropriateness of certifying what is known as a 'fail-safe class'—a class defined in terms of the legal injury." *Id.* (quoting *In re Nexium Antitrust Litig.,* 777 F.3d 9, 21-22 (1st Cir. 2015)). Many other decisions in TCPA cases just like this one are in accord. *See, e.g., Williams,* 2021 U.S. Dist. LEXIS 27496, at *17 ("Plaintiff's proposed methodology is an adequate starting point to identify the aggregate number of TCPA violations in this case," and to the extent any non-residential numbers remain after Ms. Verkhovskaya's analysis, the Court can "adopt measures to filter out those Class members."); *Chinitz,* 2020 U.S. Dist. LEXIS 247921, at *44-45 ("[Defendant] argues that Ms. Verkhovskaya was not aware of any effort by LexisNexis to identify cellular telephone numbers that were used primarily for business purposes. . . . [T]he fact that a class list may contain some business numbers whose claims fail on the merits does not mean that the class cannot be certified."); *Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320, 329 (W.D. Okla. 2018) ("[I]f issues need to be tried to determine whether a line is a business line or a residential line, those issues could be resolved by asking class members whether the line in question is a residential line during the class notification process, or, … through a standardized and efficient claims process at a later stage.").

The First Circuit's opinion in *Nexium* clearly establishes that perfection is not required at the class certification stage:

> It is difficult to understand why the presence of uninjured class members at the preliminary stage should defeat class certification. Ultimately, the defendants will not pay, and the class members will not recover, amounts attributable to uninjured class members, and judgment will not be entered in favor of such members. Some number of uninjured members will receive a class notice, but the district court can easily assure that defendants will not pay for notice to uninjured members. At worst the inclusion of some uninjured class members is inefficient, but this is counterbalanced by the overall efficiency of the class action mechanism.

777 F.3d at 21-22.

All of this remains true here. In the end, at trial, QuoteWizard will have every right and opportunity to cross-examine Ms. Verkhovskaya concerning her methods, the validity of her sources, and her findings — including her conclusions that class telephone numbers are residential and on the DNC Registry. A jury can hear that evidence, and decide up or down whether Mr. Mantha has carried his burden of proof.

**C.    QuoteWizard's claim that Ms. Verkhovskaya's testimony results in "false positives" mischaracterizes the record and misstates the law.**

Notwithstanding the firmly-rooted principle that expert testimony in the class action context need not be proven with 100% certainty, QuoteWizard attacks Ms. Verkhovskaya's work as suffering from at least five categories of so-called "false positives," or groups of inappropriately identified class members that QuoteWizard's expert, Jan Kostyun, identified in the class list. Although Mr. Kostyun makes vague references to "additional categories of individuals who are inappropriately included" and acknowledges that "it is not possible to reliably estimate their number" (and that "there is no easy way to determine the prevalence" of other alleged shortcomings in Ms. Verkhovskaya's data), he shoots for the moon and maintains that a whopping 93% of the individuals identified on the class list do not belong. Each of Mr. Kostyun's purported deficiencies, however, ignores either material portions of the factual record or basic principles of applicable law.

Mr. Kostyun's first claim — that 20% of the individuals on the class list do not appear in

the "DNC files" produced in discovery — is simply wrong, because Mr. Kostyun did not analyze all of the DNC files that QuoteWizard produced in this case. *See* Am. & Corrected Suppl. Rep. of A. Verkhovskaya, Doc. No. 339-4, ¶ 2(a) (identifying two sets of records of text messages sent to consumers on QuoteWizard's behalf that are not accounted for in Mr. Kostyun's expert report).

Next, Mr. Kostyun states that for 61% of the individuals on the class list, the substance of the do-not-call text message sent by the individual in question to QuoteWizard (following their receipt of QuoteWizard's telemarketing messages) is missing. This is a red herring. On the one hand, Mr. Kostyun baselessly assumes that without a specific do-not-call message linked to them, a class member must never have asked for QuoteWizard's text messages to stop — meaning that all 61% of the affected individuals must be "false positives." That sort of speculation cannot rebut Ms. Verkhovskaya's expert report. On the other, each phone number on the class list was already identified *by QuoteWizard itself* as a consumer who responded to QuoteWizard's text messages with a request that the messages stop. *See* Rep. of A. Verkhovskaya, Doc. No. 350-1, ¶¶ 59-60 (explaining that all class members responded to QuoteWizard's telemarketing texts with a response that were designated as Do Not Call demands). QuoteWizard evidently seeks a do-over because it does not like the substance of Ms. Verkhovskaya's work, but it is not entitled at this late stage to re-classify or re-characterize the do-not-call messages it received — nor can it benefit from its own admitted failure to retain the substance of the missing DNC complaints. *See Reyes*, 2018 U.S. Dist. LEXIS 106449, at *38-39 (rejecting TCPA defendant's proposal that "the contours of the class should be defined by [its] own recordkeeping," which "would create an incentive for a person to violate the TCPA on a mass scale and keep no records of its activity, knowing that it could avoid legal responsibility").

Similarly (and again illustrating QuoteWizard's efforts to benefit from its own poor recordkeeping), Mr. Kostyun claims that some consumer responses to QuoteWizard's telemarketing texts (that, again, *QuoteWizard itself* deemed do-not-call requests) in fact expressed interest in QuoteWizard's services, thus making them inappropriate for inclusion on the class list. *See* Doc. No. 250, at 8, 19. In designing her methodology to weed out consumers who responded to QuoteWizard's messages with interest, Ms. Verkhovskaya relied on the accuracy of QuoteWizard's own records, assuming that if QuoteWizard listed a consumer's number on their Internal Do Not Call list, the consumer surely had asked QuoteWizard to stop calling. *See* Rebuttal Rep. of A. Verkhovskaya, Doc. No. 339-3, ¶¶ 58-59. Plaintiff's counsel were first made aware that QuoteWizard's own internal DNC files mistakenly included some consumers expressing interest in its products when they received Mr. Kostyun's Expert Report. *See* Doc. No. 348-5, ¶¶ 201-13. In response, a manual review of the substantive do-not-call responses of consumers who were initially identified on the class list was conducted. And as a result of that review, 2,768 numbers were removed from the class list. *See* Doc. No. 339-3, ¶¶ 58-59. Despite these efforts to rectify QuoteWizard's own error, QuoteWizard continues to claim that a miniscule number of consumers who were mistakenly included on its Internal Do Not Call list remain on the class list. *See* Br. at 8, 19.[5]

Mr. Kostyun additionally contends that 68% of the consumers on the class list did not register their own numbers on the DNC Registry — instead, someone else did, perhaps a prior

---

[5] QuoteWizard's claim that 22% of the individuals on the class list made "ambiguous" do-not-call requests does not account for the several thousands of numbers removed from the proposed class list in an effort to rectify QuoteWizard's error. At Ms. Verkhovskaya's deposition, QuoteWizard presented *five* examples of consumers who are still on the class list but who responded to QuoteWizard's texts with an expression of interest. Such a negligible quantity of consumers on the class list who responded to QuoteWizard's messages with interest cannot, standing alone, preclude class certification.

user or a family member — and so they, too, are "false positives" (who, in Mr. Kostyun's judgment, "lack standing to bring the claims at issue in this case").

Here, Mr. Kostyun simply has the law wrong. There is no requirement that a phone number's subscriber must have personally and directly listed their number on the DNC Registry to enjoy the TCPA's protections, and such a position has been swiftly and repeatedly rejected when raised in litigation. *See, e.g.*, *Krakauer v. Dish Network, LLC,* 925 F.3d 643, 657 (4th Cir. 2019) (the private right of action in the TCPA's DNC provisions may be enforced by the subscriber, owner, or user of a residential telephone number); *Moore v. Healthcare Sols. Inc.,* No. 21-cv-4919, 2022 U.S. Dist. LEXIS 220437, at *12-15 (N.D. Ill. Dec. 7, 2022) ("Nothing in the text [of the TCPA or its implementing regulations] ascribes any importance to the person who registered the number. The focus is on whether the number was registered, not who did the registration."); *Watson v. Manhattan Luxury Autos., Inc.,* 2022 U.S. Dist. LEXIS 178069, at *26-27 (S.D.N.Y. Sept. 29, 2022) (certifying a TCPA DNC class action and rejecting defendant's claim that only the person who registered a number on the DNC Registry can assert a claim under the TCPA); *Williams,* 2021 U.S. Dist. LEXIS 27496, at *20 (the TCPA does not "require a called party to personally register his or her own number on the DNC Registry"); *Owens v. Starion Energy, Inc.*, No. 3:16-cv-01912, 2017 WL 2838075, at *7 (D. Conn. June 30, 2017) (person whose number is on the DNC Registry and receives telemarketing calls can sue, regardless of whether the person personally listed the number on the Registry) (collecting cases).

Finally, Mr. Kostyun declares that 5% of the class list is "invalidly" listed on the DNC Registry because the listed registration dates allegedly fall before the Registry's creation. Once more, Mr. Kostyun fails to appreciate the full picture. Numbers now on the DNC Registry may well bear a date prior to the Registry's formal October 1, 2003 creation because the Federal

Trade Commission began collecting numbers of consumers wanting to register many months earlier that year. More importantly, the only relevant inquiry in a DNC case is whether a residential number had been listed on the DNC Registry for more than 30 days prior to the number's receipt of two or more calls in a 12-month period — criteria all of the numbers on the class list satisfy.

None of QuoteWizard's "false positive" arguments justify exclusion of Ms. Verkhovskaya's testimony.

## Conclusion

Because Ms. Verkhovskaya's testimony is sufficiently reliable, objective, accepted, and testable to withstand *Daubert*, Plaintiff respectfully requests the Court deny QuoteWizard's motion.

Dated: March 6, 2024                                Respectfully Submitted,

*/s/ Edward A. Broderick*
Edward A. Broderick
Broderick Law, P.C.
176 Federal Street, Fifth Floor
Boston, MA 02110
Telephone: (617) 738-7089
ted@broderick-law.com

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Ave., Third Floor
Natick, MA 01760
Telephone: (508) 655-1415
mmcue@massattorneys.net

John W. Barrett
Brian Glasser
Bailey & Glasser LLP
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
jbarrett@baileyglasser.com
bglasser@baileyglasser.com

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (508) 221-1510
anthony@paronichlaw.com

Alex M. Washkowitz
CW Law Group, P.C.
188 Oaks Road
Framingham, MA 01701
alex@cwlawgrouppc.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 6, 2024, I electronically transmitted the foregoing to all counsel of record via the electronic filing system.

By:  *s/ Edward A. Broderick*
Edward A. Broderick