UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH MANTHA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>QUOTEWIZARD.COM LLC<br><br>Defendant. | CASE NO. 1:19-cv-12235 |

**DEFENDANT'S REPLY IN SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT ANYA VERKHOVSKAYA**

I.  INTRODUCTION

Verkhovskaya's proffered opinion should be excluded because Plaintiff has not carried his burden to show that each of the factors of Rule of Evidence 702 are met, including: (1) that her opinions are "based on sufficient facts or data"; (2) that her opinions are "the product of reliable principles and methods"; or (3) that she "reliably applied the principles and methods to the facts of the case." *First*, the very data source that Verkhovskaya selected, third-party PacificEast, gave unrebutted testimony in this case (and another) that its data outputs cannot reliably be used for the purposes to which Verkhovskaya put them. *Second*, Verkhovskaya's proposed methodology is not reliable for many reasons, including that it fails to identify the named plaintiff in this case, it relies on the "subjective" analysis of her "team" and "poking around on Yelp," it involves her blindly following class counsel's instructions without her own analysis, and because her methodology rejects the notion that even "completely wrong" underlying data would impact her opinions at all. *Finally*, Verkhovskaya has not applied even her own flawed methodology correctly to the facts of

1

this case, as she conceded numerous errors in her report, and even her (untimely) final, "amended", "corrected", "supplemental" class list still has obvious errors. QuoteWizard respectfully asks the Court to exercise its gatekeeper function to exclude her proffered opinions.

## II.    UNDISPUTED POINTS

While the parties disagree on much, their points of agreement bear noting. For example, the parties do not dispute that the source of Verkhovskaya's underlying data, PacificEast, testified in this and other cases that its data cannot be reliably used for the purposes that Verkhovskaya proposes. *See* Mot.[1] at 4-6; Opp. at 14. Plaintiff disputes the import of that testimony, *see* Opp.[2] at 14-15, but he does not present any contrary evidence of his own, *see generally* Opp.

The parties also do not dispute that Verkhovskaya's testimony included concessions that: (1) her original, her "rebuttal," and her untimely "Amended and Corrected Supplemental Report,"[3] all contain errors resulting in individuals appearing on each iteration of her class list who should not; (2) her methodology largely involved following class counsel's instructions without "independent analysis"; (3) even a 100% rate of error in her underlying data would not cause her to second-guess her methodology; (4) she has no data on the error rate in her underlying data; and (5) "poking around on Yelp or Google" played prominently in her methodology. Mot. at 7-9, Ex. 7. Plaintiff's Opposition does not contest the accuracy of this summary or the underlying deposition testimony; in fact, the Opposition does not mention or cite to her deposition testimony at all.

---

[1] Citations to "Mot." or the "Motion" herein refer to Defendant's Motion To Exclude Expert Testimony of Plaintiff's Expert Anya Verkhovskaya [ECF 350].

[2] Citations to "Opp." or the "Opposition" herein refer to Plaintiff's Opposition to the Motion [ECF 359].

[3] QuoteWizard has separately moved to strike her untimely "Amended and Corrected Supplemental Report" [ECF 346].

## III.   PLAINTIFF FAILS TO SHOW THAT ALL RULE 702 FACTORS ARE MET.

### A. Plaintiff Fails To Show That Verkhovskaya's Opinions Are Based On Reliable Data.

In his Opposition, Plaintiff appears to argue that the PacificEast data was not central to Verkhovskaya's opinions. *See, e.g.*, Opp. at 15 (arguing that Verkhovskaya's findings are supported "even without the PacificEast data" and that she "did not use the PacificEast data 'conclusively' to identify residential numbers in the class"). In fact, Plaintiff suggests that Verkhovskaya did not really rely on the PacificEast data because "She [merely] used PacificEast to cross-check and confirm what Plaintiff already believed to be true." *Id*.

Plaintiff may now argue that the PacificEast data was not central to Verkhovskaya's analysis, but that is not consistent with her Reports. *See, e.g.*, Report ¶ 77 ("I relied upon the industry wide recognized services and records of PacificEast."); ¶ 102 ("My methodology relies on the data processors like PacificEast to gather data…"); ¶ 66 ("PacificEast provides accurate and reliable NDNCR data."). Nor is it consistent with her deposition testimony. Depo. at 69:10-12 ("Q: Is it fair to say you rely on PacificEast data outputs at several points in your analysis? A: Yes."); 84:3-7 ("Q: So the registration dates [that PacificEast provided her] are data points that you relied on to provide the opinion that offer in this case, correct? A: The data points I relied on for compiling a list of potential class members; that's correct.").

It is easy to understand why Plaintiff would now want to downplay Verkhovskaya's reliance on the PacificEast data. PacificEast's testimony shows that its data cannot be reliably used for her purposes for several reasons, including that PacificEast does not even gather the data itself (relying instead on "vendors"), Rice Decl.[4] ¶¶ 5-7, 10-13; that PacificEast does not warrant

---

[4] "Rice Decl." citations herein refer to the "December 27, 2023 Declaration of Scott Rice," a copy of which is attached to the Motion as Exhibit 4.

3

the accuracy of any of its data, *id.* ¶¶ 8, 17; and that neither PacificEast nor "any other source" can provide data that distinguishes between residential and business numbers in the way Verkhovskaya claims, *id.* ¶¶13-14.[5] Moreover, PacificEast directly refutes Verkhovskaya's claim that PacificEast provided data "that indicated whether each telephone number status was identified as associated with a business ***and the timeframe of the association***." Report[6] ¶ 83 (emphasis added). PacificEast testified that "***Historical information*** about the identification of a telephone number as a 'business' or 'residential' number is not available from any source that I know, and it ***is not a service that PacificEast provides***." Rice Decl. ¶13 (emphasis added). Notably, Plaintiff cites no case in which Verkhovskaya's testimony was admitted over testimony from the data vendor that it simply does not "provide" the kind of data she claims to have received.

Importantly, not only does Plaintiff fail to present any contrary evidence, Verkhovskaya's own testimony makes clear that she is in no position to rebut Mr. Rice. For example, she confirmed in deposition that she does "not actually have any information one way or the other regarding the degree of accuracy of the data outputs" that she received from PacificEast, Depo. at 82:4-7, and that she does "not know how accurate this dataset is that [she] is using in [her] opinions for this case," *id*. at 100:10-13.

Plaintiff concedes that courts have rejected Verkhovskaya's opinions multiple times before

---

[5] Plaintiff's Opposition repeatedly refers to PacificEast's declaration as "carefully worded" as though to insinuate that it is unreliable or that QuoteWizard had undue influence over the vendor. Opp. at 14. This is a baffling insinuation, however, both because (1) the decision to retain PacificEast was made by Verkhovskaya, not QuoteWizard; and (2) PacificEast has given similar testimony in prior TCPA cases.

[6] Citations herein to "Report" refer to the September 22, 2023 Expert Report of Anya Verkhovskaya, a copy of which is attached as Exhibit 1 to the Motion.

because they found she misstated the reliability of the data she used. Opp. 9-12.[7] Plaintiff's rejoinder appears to be that those cases are irrelevant either because the data source whose accuracy she mischaracterized was a different vendor, as in *Carroll v. SGS Auto. Serv's, Inc.*, No. 16-537-SDD-RLB, 2020 WL 7024477 (M.D. La. Nov. 30, 2020), or, even if it came from the same exact same vendor, as in *Davis v. Capital One*, No. 1:22-cv-00903 (AJT/IDD), 2023 WL 6964051 (E.D. Va. Oct. 20, 2023), was data of a different type. QuoteWizard respectfully submits that the Court should be wary of admitting the opinions of a proposed expert who has misstated the reliability of her data sources in the past and has done so again here.

### B. Plaintiff Fails To Show That Verkhovskaya's Opinions Are Based On Reliable "Principles and Methods."

Plaintiff correctly describes the applicable legal standards that govern the Court's inquiry, including evaluating whether the opinions "rest on a reliable foundation" and "whether reasoning or methodology underlying the testimony is scientifically valid." Opp. at 3-4. What Plaintiff has not done, however, is carry his burden to show that those standards are actually met here. Indeed, there are many examples of the unscientific and unreliable foundation for Verkhoskaya's proposed methodology.

#### 1. A Methodology That Actively Excludes Plaintiff, Is Not A Reliable Methodology For Identifying "Similarly Situated" Class Members.

Plaintiff concedes that Verkhovskaya's methodology not only fails to identify Plaintiff, but

---

[7] Plaintiff cites one and only one case in which Verkhovskaya's testimony was admitted over arguments that vendor testimony undermined the use of its services for her purposes. In *Chinitz*, however, the declaration LexisNexis provided did not state or suggest that Verkhovskaya had overstated the reliability of its services. *Chinitz v. Intero Real Estate Serv's*, No. 18-cv-05623-BLF (N.D. Cal. July 22, 2020) (ECF 93-7 ("Declaration of Craig L. Davis Regarding Documents and Information Produced by LexisNexis in Response to Subpoenas")). A copy of this declaration is attached hereto as **Exhibit 1**. Here, in contrast, PacificEast's testimony directly undermines and contradicts Verkhovskaya's characterizations.

5

actively excludes him at every step, and that the only reason he appears on her list is because she "was directed by class counsel to add Mr. Mantha [to her class list]," manually even though she "did not do any specific analysis for his telephone number." Depo. 126:5-127:8. Plaintiff argues that is irrelevant and should not justify excluding her opinions. Opp. at 5-6. As an initial matter, courts have certainly disagreed and excluded Verkhovskaya's opinions in the past for proposing a methodology that fails to identify the named Plaintiff. *See* Mot. at 9-10 (citing cases).[8]

But there is a more fundamental issue. Verkhovskaya claims that her methodology can reliably "[i]dentify the proposed class," which she states includes only people "who responded to the texts with a request that the telemarketing cease." Report at 3. Plaintiff does not meet that criteria – he is, she confirmed, "the only one" and "not like the others in that regard" – but she put him on her list anyway. What this shows is twofold: (1) she has no scientific basis for manually adding Plaintiff to the class list, undermining her proposed methodology; and (2) if she had performed her proposed methodology without manually adding Plaintiff, Plaintiff would be defined out of the class, which demonstrates that her methodology does not "reliably" identify consumers who are "similarly situated" to Plaintiff.

Plaintiff attempts to slip this knot by arguing that Mr. Mantha should not have to "prove" his claims again through expert testimony. Opp. at 5-6. Respectfully, this rejoinder misses the point. Verkhovskaya purports to be able to identify a class of consumers who share certain characteristics. The point of her testimony is not to prove claims, but to show that she has a reliable methodology for identifying people who are just like Plaintiff. That her methodology omits

---

[8] *See also Revitch v. Citibank, N.A.*, No. C 17-06907 WHA, 2019 WL 1903247, at *3-4 (N.D. Cal. Apr. 28, 2019) (denying class certification in TCPA class action where plaintiff's own proposed methodology would have excluded him from the class); *Schonton v. MPA Granada Highlands LLC*, Case No: 16-cv-12151-DJC, 2019 WL 1455197, at *9 (D. Mass. Apr. 2, 2019) (denying class certification where plaintiffs "failed to identify objective criteria by which Plaintiffs may be deemed part of the class.").

Plaintiff is not important because it means Plaintiff cannot otherwise prove his individual claims; it is important because it shows that her essential claim that there is a "reliable" method for identifying such a common group of consumers – like Plaintiff's claim more generally that the class's claims can be proven through "common evidence" – is false.

### 2. Blindly Following Counsel's Directions Is Not A "Reliable" or "Scientifically Valid" Methodology.

In its Motion, QuoteWizard noted that Verkhovskaya's testimony showed that her methodology "largely consisted of following class counsel's instructions as to which telephone numbers should appear on the list, without any independent analysis from Verkhovskaya," citing many examples from her deposition testimony. Mot. at 8.[9] Plaintiff does not contest this statement or the underlying testimony on which it is based. Through this approach, Plaintiff attempts to shield Verkhovskaya's methodology from scrutiny – indeed, how can one evaluate an expert's proposed methodology when she herself does not know what it entailed because she blindly followed counsel's directions without analysis or inquiry? The effect is that Plaintiff has failed to show even what Verkhovskaya's methodology *is*, let alone that it is sufficiently reliable to satisfy Rule 702. Plaintiff cites no cases in which Verkhovskaya's opinions were admitted after her

---

[9] *See also* Depo. at 46:21-47:1 ("Q: You were relying, at this step of your methodology, on counsel to tell you which numbers involved consumers who made a specific request that the text[s] cease and which ones did not? A: That's correct"), 48:23-49:4 ("Q: What methodology did counsel employ to identify those individuals who made a specific request that the texts cease? A: You would have to ask counsel.  Q:  You do not know, correct?  A:  I do not."); 46:17-19 ("Then I followed directions of counsel to exclude what counsel considered texts and telephone numbers that should be removed."); 19:9-11 ("Q: Who instructed you to exclude the onsite leads from your analysis? A: Class counsel."); 30:7-9 ("My methodology was to have – to work with class counsel and receive a set of instructions from class counsel which language should be removed."); 38:13-19 ("Q: If I understand you, counsel made a determination regarding a set of individuals who may have expressed an interest and told you to remove them from the class list and you removed them from the class list.  Is that accurate?  A:  It is."); 39:12-15 ("Q: Between receiving the instruction from counsel and actually removing them from the class list, did you or your team perform any analysis?  A: No.").

7

testimony confirmed that her methodology was principally to follow counsel's instructions.

### 3. A "Scientifically Valid" Methodology Could Not Rest On "Completely Wrong" Data Inputs.

Verkhovskaya's testimony confirms why her proposed methodology is unmoored from any reliable scientific principles. At deposition, Verkhovskaya took the remarkable position that the accuracy of her underlying data inputs was wholly irrelevant to the reliability of her methodology. Specifically, she testified that even if she learned that her underlying data was "completely wrong," that would not impact her opinions in this case. In response to the following question "Is it your testimony that even if one or more of the data files that you used in your analysis was completely wrong that would not impact the reliability of the opinions that you offer in this case?" she responded "Correct." *Id.* at 79:18:22. In case there were any doubt as to her meaning, she further confirmed that even if she learned her underlying data "had a one hundred percent error rate", "the methodology would remain the same." Depo. 106:24-107:8. Verkhovskaya's testimony confirms that her methodology bears no relation to the scientific method or to accepted scientific principles, which hold that accurate conclusions can only come from accurate data. Plaintiff cites no cases in which Verkhovskaya's opinions were admitted where she testified that even "completely wrong" data inputs would not affect her methodology.

### 4. "Poking Around On Yelp And Google," Is Not A Reliable Methodology.

Other aspects of Verkhovskaya's proposed methodology are equally unscientific. As part of her process for distinguishing between residential and business numbers, Verkhovskaya applied a list of terms that was solely created by her "team poking around on Yelp or Google or Yellow Pages and performing their own subjective analysis of whether they think that a term appears a lot in business names." Depo. 121:20-121:1. She provides no scientific basis for this process, nor does Plaintiff's Opposition, as there is none. Plaintiff does not cite any cases in which a court

8

admitted Verkhovskaya's opinions where her proposed methodology relied on such a "subjective" screening process involving "poking around on Yelp."

### C. Plaintiff Fails To Show That Verkhovskaya "Reliably Applied" Her Own Proposed Methods To The Facts Of This Case.

While the flaws in Verkhovskaya's proposed methodology are a sufficient basis to exclude her opinions, exclusion is further warranted because Verkhovskaya failed to apply even her own flawed methodology correctly. Here are but a few examples of errors that Plaintiff admits:

- Verkhovskaya's report states that she manually added Plaintiff's telephone number to the class list, but she concedes she accidentally added another number instead.
- Verkhovskaya testified that her methodology was supposed to exclude "business" numbers, but she concedes that she failed to do so. *See* Opp. at 16 ("Verkhovskaya's testimony about the residential nature of the numbers may contain errors.").
- Verkhovskaya's methodology was supposed to exclude individuals who had expressed an interest in QuoteWizard products, but she concedes that she failed to do so.
- Verkhovskaya's methodology was supposed to exclude people who had clearly given consent to be contacted, but she mistakenly included 1,000 such people on her list.
- Verkhovskaya conceded that her methodology, as applied, could include many consumers (she does not know how many) who never received an unwanted text from QuoteWizard, because they only asked that the texts cease after they received the quote they wanted and never received further communications from QuoteWizard after that.

Moreover, QuoteWizard's rebuttal expert testified that Verkhovskaya's methodology, as applied, resulted in a class list with over 93% of those listed who are not appropriate class members for one or more reasons. Verkhovskaya and Plaintiff concede, for example, that she mistakenly included nearly 2,800 numbers on her list from individuals who had expressed an interest in receiving QuoteWizard texts, but nonetheless argues that it is irrelevant that 61% of her proposed class are individuals for whom no text data is available to make a similar determination. Opp. at 20. Plaintiff also quibbles with the legal import, but not the accuracy, of the fact that 68% of the individuals on her class list did not register their own telephone numbers on the NDNCR. Opp. at 21. Finally, Plaintiff argues *ipse dixit* – *i.e.*, without citation to any evidence or legal authority –

9

that Mr. Kostyun, an expert in the field, is just wrong that an additional 5% of the numbers on the class list have invalid registration dates. These arguments do not persuade, nor do they rebut Mr. Kostyun's conclusion that over 93% of the individuals on Verkhovskaya's class list do not belong there. Notably, Plaintiff does not cite any cases in which Verkhovskaya's opinions were admitted in the face of unrebutted testimony that over 90% of the individuals in Verkhovskaya's proposed class list did not belong there, nor is QuoteWizard aware of any such cases.

## IV.    CONCLUSION

Because Plaintiff has failed to carry his burden to show that Verkhovskaya's opinions meet the threshold requirements of Federal Rule of Evidence 702, as discussed above, QuoteWizard respectfully requests that the Court exclude Verkhovskaya's opinions in their entirety.

Respectfully submitted,

QuoteWizard.com, LLC,
By its attorneys,

*/s/ Kevin P. Polansky*
Kevin P. Polansky (BBO #667229)
kevin.polansky@nelsonmullins.com
Ben Sitter (*admitted pro hac vice*)
Ben.sitter@nelsonmullins.com
Daniel M. Curran (BBO #709082)
daniel.curran@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
One Financial Center, Suite 3500
Boston, MA 02109
(t) (617)-217-4700
(f) (617) 217-4710

CERTIFICATE OF SERVICE

      I, Kevin P. Polansky, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: March 20, 2024                                              */s/ Kevin P. Polansky*
                                                                                                Kevin P. Polansky