No. __-_____

United States Court of Appeals
for the First Circuit
_____

JOSEPH MANTHA, *on behalf of himself
and all others similarly situated*,

*Plaintiff-Respondent*,

v.

QUOTEWIZARD.COM, LLC,

*Defendant-Petitioner.*
_____

Petition for Permission to Appeal from the United States District Court
for the District of Massachusetts
(The Honorable Leo T. Sorokin)
(No. 19-cv-12235-LTS)
_____

**PETITION OF QUOTEWIZARD.COM, LLC FOR PERMISSION TO
APPEAL UNDER FED. R. CIV. P. 23(f)**
_____

Kevin P. Polansky (No. 1137108)
*kevin.polansky@nelsonmullins.com*
Benjamin J. Sitter
*ben.sitter@nelsonmullins.com*
NELSON MULLINS RILEY
   & SCARBOROUGH LLP
One Financial Center, Suite 3500
Boston, MA 02109
p. (617) 217-4700

*Counsel for Defendant-Petitioner*

## CORPORATE DISCLOSURE STATEMENT
## OF DEFENDANT-PETITIONER QUOTEWIZARD.COM, LLC

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Petitioner Quotewizard.com, LLC hereby states that it is a wholly owned subsidiary of LendingTree, LLC, a publicly-traded corporation, and there are no entities that own 10% or more interest in LendingTree, LLC.

/s/ Kevin P. Polansky
Kevin P. Polansky
*Counsel for Defendant-Petitioner*

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

QUESTIONS PRESENTED...................................................................................2

FACTUAL AND PROCEDURAL BACKGROUND .........................................2

RELIEF REQUESTED............................................................................................4

STANDARD OF REVIEW UNDER RULE 23(f)..............................................4

REASONS FOR GRANTING THE PETITION..................................................5

    I.  Plaintiffs Are Ineligible For Relief Under The TCPA Because They Received The Challenged Messages On A Cellphone, Rather Than A Residential Landline Phone ...............................................................5

    II.  Class Certification Would Likely Be A Death Knell For QuoteWizard, Even Though It Has Several Strong And Valid Defenses......................................................................................... 11

    III. Resolution Of Whether Plaintiffs Consented To The Challenged Messages And Received Them On A Residential Telephone Requires Individualized, Fact-Intensive Inquiry Unsuitable For Class Determination .................................................................... 13

        A. This Court Has Not Yet Determined Whether A Third-Party Intermediary Can Convey Consent Under The TCPA, Nor Whether The E-Sign Act Applies To TCPA Claims.......................................................................... 14

        B. Whether A Mixed-Use Phone Is Entitled To Protection Under The TCPA Is Both Fact Intensive And Unsettled........................................................................ 18

CONCLUSION ............................................................................................... 21

4868-9282-8894 v.1

# TABLE OF AUTHORITIES

CASES

*Bais Yaakov of Spring Valley v. ACT, INC.*,
   328 F.R.D. 6 (D. Mass. 2018), *aff'd*, 12 F.4th 81 (1st Cir. 2021).......... 12, 14-15

*Bradley v. DentalPlans.com*,
   No. CV 20-1094-BAH, 2024 WL 2865075 (D. Md. June 6, 2024)...................17

*Brodsky v. HumanaDental Ins. Co.*,
   910 F.3d 285 (7th Cir. 2018) ................................................................ 12, 14-15

*Burk v. Direct Energy, LP*,
   No. 4:19-CV-663, 2021 WL 4267146 (S.D. Tex. Sept. 20, 2021).....................16

*Cacho v. McCarthy & Kelly LLP*,
   No. 23-CV-11157 (LJL), 2024 WL 3293628 (S.D.N.Y. July 3, 2024)......................... 9

*Chamberlan v. Ford Motor Co.*,
   402 F.3d 952 (9th Cir. 2005) ..............................................................................11

*Chennette v. Porch.com, Inc.*,
   50 F.4th 1217 (9th Cir. 2022) ................................................................ 6, 19-20

*Cunningham v. Politi*,
   No. 418CV00362ALMCAN, 2019 WL 2517085 (E.D. Tex. Apr. 30, 2019) report
   and recommendation adopted, No. 4:18-CV-362, 2019 WL 2524737 (E.D. Tex.
   June 19, 2019) .......................................................................................................7

*Cunningham v. Rapid Response Monitoring Servs., Inc.*,
   251 F. Supp. 3d 1187 (M.D. Tenn. 2017) ................................................................7

*Forman v. Data Transfer, Inc.*,
   164 F.R.D. 400 (E.D. Pa. 1995).........................................................................12

*Gaker v. Q3M Ins. Sols.*,
   No. 322CV00296RJCDSC, 2023 WL 2472649 (W.D.N.C. Feb. 8, 2023) ...................9

*Gene And Gene LLC v. BioPay LLC*,
    541 F.3d 318 (5th Cir. 2008) ....................................................................5, 15, 18

*Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*,
    29 F.4th 839 (7th Cir. 2022) .............................................................................15

*Hirsch v. USHealth Advisors, LLC*,
    337 F.R.D. 118 (N.D. Tex. 2020)......................................................................18

*In re Asacol Antitrust Litig.*,
    907 F.3d 42 (1st Cir. 2018)..........................................................................5, 20

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
    522 F.3d 6 (1st Cir. 2008)..................................................................................11

*Keim v. ADF MidAtlantic, LLC*,
    328 F.R.D. 668 (S.D. Fla. 2018)........................................................................16

*Klassen v. Solid Quote LLC*,
    702 F. Supp. 3d 1052 (D. Colo. 2023) ................................................................ 9

*Latner v. Mount Sinai Health Sys.*,
    879 F.3d 52 (2d Cir. 2018) ................................................................................18

*Levine v. 9 Net Ave., Inc.*,
    No. A-1107-00T1, 2001 WL 34013297 (N.J. Super. Ct. App. Div. June 7,
    2001) ..................................................................................................................13

*Loper Bright Enterprises v. Raimondo*,
    144 S. Ct. 2244 (2024)....................................................................................9-10

*Lundbom v. Schwan's Home Serv., Inc.*,
    No. 3:18-CV-02187-IM, 2020 WL 2736419 (D. Or. May 26, 2020) ...............17

*Mais v. Gulf Coast Collection Bureau, Inc.*,
    768 F.3d 1110 (11th Cir. 2014) ........................................................................16

*McEwen v. Nat'l Rifle Ass'n of Am.*,
    No. 2:20-CV-00153-LEW, 2021 WL 1414273 (D. Me. Apr. 14, 2021)............8, 10

4868-9282-8894 v.1

*Morris v. Modernize, Inc.*,
  No. AU-17-CA-00963-SS, 2018 WL 7076744 (W.D. Tex. Sept. 27, 2018) .....17

*Murray v. Grocery Delivery E-Servs. USA Inc.*,
  55 F.4th 340 (1st Cir. 2022).................................................................................10

*Olden v. LaFarge Corp.*,
  383 F.3d 495 (6th Cir. 2004) ................................................................................5

*Osorio v. State Farm Bank, F.S.B.*,
  746 F.3d 1242 (11th Cir. 2014) ............................................................................7

*Reinert v. Power Home Remodeling Grp., LLC*,
  No. 19-13186, 2020 WL 6743094 (E.D. Mich. Nov. 17, 2020) .......................17

*Rosales v. Heath*,
  No. 8:17CV87, 2019 WL 7586541 (D. Neb. June 27, 2019)............................17

*Salcedo v. Hanna*,
  936 F.3d 1162 (11th Cir. 2019) .................................................................... 6, 10

*Sandoe v. Bos. Sci. Corp.*,
  No. CV 18-11826-NMG, 2020 WL 94064 (D. Mass. Jan. 8, 2020).............. 9

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*,
  863 F.3d 460 (6th Cir. 2017), *as corrected on denial of reh'g en banc* (Sept. 1,
  2017), *cert. denied*, 138 S. Ct. 1284, 200 L. Ed. 2d 470 (2018) ......................15

*Shelton v. Fast Advance Funding, LLC*,
  378 F. Supp. 3d 356 (E.D. Pa. 2019) .....................................................................7

*Stevens-Bratton v. TruGreen, Inc.*,
  437 F. Supp. 3d 648 (W.D. Tenn. 2020) ............................................................19

*Strange v. Doe #1*,
  No. CV 19-1096, 2020 WL 2476545 (W.D. La. May 12, 2020) ............................7

*Van Patten v. Vertical Fitness Grp., LLC*,
  847 F.3d 1037 (9th Cir. 2017) .............................................................................14

iv

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
   208 F.3d 288 (1st Cir. 2000)...................................................................................5

**STATUTES**

15 U.S.C. § 7001(c) ............................................................................................17

47 U.S.C. § 227(b)(1)(A)(i)-(iii) ..........................................................................6

47 U.S.C. § 227(c)(1)............................................................................... 6, 10-11

47 U.S.C. § 227(c)(5)........................................................................................3, 7

47 U.S.C. § 227(c)(5)(B) ......................................................................................1

**RULES**

Fed. R. Civ. P. 23(b)(3).......................................................................................14

Fed. R. Civ. P. 23(f) ....................................................................................*passim*

**REGULATIONS**

47 C.F.R. § 64.1200(c)(2).............................................................................3, 6, 10

**OTHER AUTHORITIES**

1 McLaughlin on Class Actions § 2:20 (20th ed.).........................................12, 15

93 A.L.R. Fed. 2d 343, *What Constitutes 'Prior Express Consent' Under
   Telephone Consumer Protection Act(TCPA), 47 U.S.C.A. § 227* (Originally
   published in 2015) ...........................................................................................16

137 Cong. Rec. S16205 (daily ed. Nov. 7, 1991)...................................................13

*In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*,

18 FCC. Rcd. 14014 (2003) ...........................................................................8, 10, 19

*Matter of GroupMe, Inc./Skype Commc'ns S.A.R.L. Petition for Expedited
    Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer Prot.
    Act of 1991*, 29 F.C.C. Rcd. 3442 (2014) .....................................................16, 18

4868-9282-8894 v.1

## INTRODUCTION

This case involves class allegations that QuoteWizard violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5)(B), by sending text messages to telephone numbers on the National Do Not Call Registry ("NDNCR"). On January 12, 2024, Plaintiff moved to certify the following class:

> All persons within the United States (a) whose residential telephone numbers were listed on the [NDNCR], and (b) who received more than one telemarketing text within any twelve-month period at any time from Drips, (c) to promote the sale of QuoteWizard's goods or services, and (d) whose numbers are included on the Class List.

Doc. 340, at 8.

The district court granted plaintiffs' motion, amending the class definition to prevent an "impermissible fail-safe" class by removing the word "residential" from plaintiffs' proposed class. Doc. 368 at 21, 38. Interlocutory review of the court's certification order is merited, for three chief reasons.

*First*, courts are split on whether a plaintiff can bring a do-not-call claim based on messages or calls to a cell phone, rather than to a residential landline telephone. This Court should grant the petition to determine whether plaintiffs are categorically ineligible for relief under the TCPA.

*Second*, interlocutory review is merited because the district court's certification decision puts significant coercive financial pressure on QuoteWizard to settle the class claims, even though the certification decision is weak, and the plaintiffs' claims

lack merit. In other words, the order will likely sound the death knell for QuoteWizard's defense, even though it is strong.

**Third**, the district court's resolution of two key issues that often arise in do-not-call claims under the TCPA—a) whether the recipient consented to the texts, and b) whether the recipient received the texts on a residential telephone number—involves unsettled legal questions. Further, both issues are fact intensive and not appropriate for class resolution.

## QUESTIONS PRESENTED

Whether interlocutory review is warranted because:

1.  Plaintiffs lack standing and are ineligible for relief under the TCPA since they received the challenged messages on cellphones, not a residential landline telephone.

2.  Class certification would likely be a death knell for QuoteWizard, even though it has several strong and valid defenses.

3.  Resolution of whether plaintiffs consented to the challenged messages and received them on a residential telephone involves an individualized, fact-intensive inquiry unsuitable for class determination.

## FACTUAL AND PROCEDURAL BACKGROUND

QuoteWizard is an insurance comparison platform that aims to connect customers with insurance carriers to identify rates and coverages that align with customers' needs. To that end, QuoteWizard attempts only to contact individual consumers who have expressed interest in hearing more about insurance products and who have expressly consented to being contacted for that purpose; QuoteWizard does not "cold-

2

call" consumers in an effort to market any products. *See* Doc. 348-1. Instead, QuoteWizard acquires Leads—collections of data including contact and other information for individual prospective customers who express interest in QuoteWizard's services—when customers request insurance information. *Id.*

On October 29, 2019, Joseph Mantha brought a class action lawsuit against QuoteWizard alleging violations of the TCPA, 47 U.S.C. § 227(c)(5). Doc. 1. As relevant here, per federal rule, the TCPA prohibits telephone solicitations to a "residential telephone subscriber who has registered his or her number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2). Mantha, on behalf of himself and all others similarly situated, brought a single claim[1] alleging that QuoteWizard violated the TCPA by sending unsolicited text messages to phone numbers on the NDNCR. Doc. 340 at 3-4.

On July 14, 2021, after discovery on Mantha's individual claim, QuoteWizard moved for summary judgment arguing, among other things, that Mantha lacked standing, and he was ineligible for relief because the texts were made to a cell phone, which does not qualify as a "residential telephone." Doc. 202. On February 3, 2022, the district court adopted the magistrate's report and recommendation and denied QuoteWizard's motion for summary judgment. Doc. 268.

---

[1] Mantha initially alleged another count involving violation of the TCPA's automated-calling provisions, but later voluntarily dismissed that claim. Doc. 187.

4868-9282-8894 v.1

After close of class discovery, Mantha moved for class certification on January 12, 2024. Doc. 339. QuoteWizard opposed the motion, arguing, among other things, that certification was not appropriate because two issues would require fact-intensive, individualized mini-trials for each of the nearly 67,000 proposed class members: *first*, whether the messages sent to each individual class member were sent to a "residential" or a business number; and *second*, whether each class member's claim fails due to prior express written consent. Doc. 348.

On August 16, 2024, the district court granted the motion for class certification. Doc. 368. QuoteWizard now brings this timely Rule 23(f) petition for permission to appeal.

## RELIEF REQUESTED

This Court should grant interlocutory review of the district court's August 16 certification order.

## STANDARD OF REVIEW UNDER RULE 23(f)

"The court of appeals is given unfettered discretion whether to permit the appeal" under Rule 23(f). Fed. R. Civ. P. 23(f), advisory comm. note, 1998 amendment. An appellate court is most likely to exercise its discretion for interlocutory review of a certification decision "when the certification decision turns on a novel or unsettled question of law, or when, as a practical matter, the decision on certification is likely dispositive of the litigation." *Id.* Consistent with the advisory committee notes, this

4

Court has explained that review under Rule 23(f) is appropriate when (1) "a doubtful class certification ruling would virtually compel a party to abandon a potentially meritorious claim or defense before trial" because of the costs of litigation; (2) the petition presents "important, unsettled legal questions" that an appeal could resolve, "thus contributing to both the orderly progress of complex litigation and the orderly development of the law"; or, (3) when there are "special circumstances" meriting appellate review. *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 293-94 (1st Cir. 2000).

## REASONS FOR GRANTING THE PETITION

### I.     Plaintiffs Are Ineligible For Relief Under The TCPA Because They Received The Challenged Messages On A Cellphone, Rather Than A Residential Landline Phone.

This Court has the authority to analyze standing in a Rule 23(f) appeal. *See Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318, 324 (5th Cir. 2008) ("At all times, even during a Rule 23(f) appeal, we may review the power of the federal courts to entertain an action."); *Olden v. LaFarge Corp.*, 383 F.3d 495, 498 (6th Cir. 2004) ("The question of subject matter jurisdiction is a prerequisite to class certification and is therefore properly raised in this Rule 23(f) appeal."). For example, in *In re Asacol Antitrust Litig.*, 907 F.3d 42, 48 (1st Cir. 2018), this Court granted defendant's Rule 23(f) petition because the certification decision implicated issues on which the circuits were split. Citing "special circumstances," this Court reviewed

de novo whether the named plaintiffs had Article III standing. *Id.* There are likewise "special circumstances" here justifying immediate review by this Court to determine whether the named plaintiff—and indeed, the entire class—has Article III and statutory standing.[2]

In its motion for summary judgment, QuoteWizard argued that the named plaintiff was not injured, because, among other reasons, cellphone users cannot qualify as residential subscribers under the do-not-call portion of the TCPA. Doc. 202 at 8-11. Both 47 U.S.C. § 227(c)(1) (the enabling statute) and 47 C.F.R. § 64.1200(c)(2) (the related regulation) by their plain terms only apply to "residential telephone subscriber[s]" and not to cellular phone users. This omission is notable because other parts of the TCPA *do* expressly apply to cellular telephone users. *See, e.g.*, 47 U.S.C. § 227(b)(1)(A)(i)-(iii) (setting conditions for use of robocalls to cellular and other covered telephones). As a matter of basic statutory interpretation—and basic English—"the plain language of 'residential telephone' describes a telephone used by individuals in the home, and *not a cellular telephone*, which can be used anywhere."

---

[2] Admittedly, whether a cell phone is covered by the definition of "residential telephone," implicates the merits of plaintiffs' claims. But the issue also implicates standing. *See, e.g.*, *Salcedo v. Hanna*, 936 F.3d 1162, 1168–70 (11th Cir. 2019) (addressing whether one robo-text constituted an Article III injury under the TCPA); *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1222–23 (9th Cir. 2022) (analyzing article III and statutory standing involving statutory interpretation of a TCPA claim). Regardless of whether this Court treats the statutory-interpretation issue as one of standing or a merits issue, this Court should grant the petition to resolve the unsettled question of law.

*See Shelton v. Fast Advance Funding, LLC,* 378 F. Supp. 3d 356, 362 n.7 (E.D. Pa. 2019).

Numerous courts have categorically rejected do-not-call claims premised on communications made to a cell phone because the plaintiff does not qualify as a "residential telephone subscriber" under the statute and regulation. *See, e.g., Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1210 (M.D. Tenn. 2017) ("Plaintiff alleges only calls to his cellular phone. Accordingly, he fails to state a claim for relief under 47 U.S.C. § 227(c)(5)."); *Strange v. Doe #1*, No. CV 19-1096, 2020 WL 2476545, at *3 (W.D. La. May 12, 2020) ("Recent courts considering similar claims have found this section not to encompass cellular phones and have dismissed the claims, while other courts have determined a plaintiff must put forth evidence establishing that the cellular phone is used for residential purposes.") (citing cases); *Cunningham v. Politi*, No. 418CV00362ALMCAN, 2019 WL 2517085, at *4 (E.D. Tex. Apr. 30, 2019) (concluding that section 227(c)(5) is "limited to redress for violations of the regulations that concern residential telephone subscribers" not to claims involving "Plaintiff's cellular phones") (collecting cases), report and recommendation adopted, No. 4:18-CV-362, 2019 WL 2524737 (E.D. Tex. June 19, 2019).[3]

---

[3] *Cf. Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1250 (11th Cir. 2014) (distinguishing between a "residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party" and "a

4868-9282-8894 v.1

Contrary to this case law, the district court rejected QuoteWizard's argument, for three reasons. *First*, the court reasoned that "nothing in the text of the statute at issue here exclusively prevents a 'residential telephone subscriber" from including a wireless or cellular telephone number." Doc. 268 at 7. *Second*, the court noted that the Federal Communications Commission ("FCC")—the agency tasked with implementing the statute and creating the NDNCR—has rejected a categorical approach to the issue, instead concluding that a "wireless subscriber" may be a "residential subscriber" based on a "fact-intensive" inquiry. *Id.* (citing *In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC. Rcd. 14014, 14038-39 (2003) ("2003 TCPA Order")). *Third*, the court reasoned that other judges in the District of Massachusetts have concluded that cellular phones may qualify for protection as "residential telephone subscribers." *Id.* at 8 (citing cases).

The district court's decision interpreting "residential telephone subscriber" broadly to encompass cell phone subscribers creates tension in the District of Massachusetts. A different judge interpreting the pre-recorded-voice provision of the TCPA concluded that the statutory phrase "residential telephone" *does not* encompass calls on a cell

---

cell-phone number"); *McEwen v. Nat'l Rifle Ass'n of Am.*, No. 2:20-CV-00153-LEW, 2021 WL 1414273, at *7 (D. Me. Apr. 14, 2021) (noting that the defendant's "textual argument has potential" and stating the court was "not inclined to unilaterally update and revise a law passed 30 years ago based on a hunch that Congress would have included personal cellular phones in its prohibitions had it the power to see into the future").

4868-9282-8894 v.1

phone. *Sandoe v. Bos. Sci. Corp.*, No. CV 18-11826-NMG, 2020 WL 94064, at *4 (D. Mass. Jan. 8, 2020) (granting summary judgment for the defendant). The tension in the District of Massachusetts reflects a broader split in the federal courts on this issue. *Compare Gaker v. Q3M Ins. Sols.*, No. 322CV00296RJCDSC, 2023 WL 2472649, at *2 (W.D.N.C. Feb. 8, 2023) (stating that the "Fourth Circuit has not addressed whether cell phone owners are considered 'residential telephone subscribers,'" noting that "Courts that have addressed the issue are split as to whether the TCPA extends to wireless telephone numbers," and concluding that calls to a cell phone cannot support liability for a do-not-call claim), *with Klassen v. Solid Quote LLC*, 702 F. Supp. 3d 1052, 1057 n. 2 (D. Colo. 2023) (holding that a cellular telephone may be considered a residential telephone line for purposes of the TCPA and collecting cases).

Perhaps most importantly, the court's deference to and reliance on the FCC's interpretation of "residential subscriber" to encompass a "wireless subscriber" is now dubious—and worthy of this Court's review—under the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) abandoning the *Chevron* doctrine. *See Cacho v. McCarthy & Kelly LLP*, No. 23-CV-11157 (LJL), 2024 WL 3293628, at *6 (S.D.N.Y. July 3, 2024) (concluding that under *Loper* the court "need not defer" to the FCC's interpretation of "residential telephone").[4] Courts that have determined that a cell

---

[4] The FCC believed "it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections," and "wireless subscribers often use their wireless phones in the same manner in which

phone can be a residential number under the TCPA have usually relied on the FCC guidance. But this guidance no longer carries the same—if any—weight under *Loper*.[5]

This Court has not yet interpreted what the phrase "residential telephone" means under 47 U.S.C. § 227(c)(1) and 47 C.F.R. § 64.1200(c)(2). Granting QuoteWizard's petition for permission to appeal will therefore give this Court the opportunity to clarify and develop novel and unsettled law. Given *Loper* and the diminished role of the FCC guidance, the district court split, and the novelty of the issue in this circuit, this Court should find "special circumstances" justifying interlocutory review. Further, standing is a threshold issue which must be decided before adjudication on the merits. If section

---

they use their residential wireline phones." 2003 TCPA Order, 18 FCC Rcd. at 14038. These interpretations of the statute are no longer entitled to deference under *Loper*. Further, the interpretation is wrong based on the plain meaning of "residential" and the intent of Congress in enacting the TCPA. *See Salcedo v. Hanna*, 936 F.3d 1162, 1168–70 (11th Cir. 2019) (examining the judgment of Congress in enacting the TCPA and concluding that "the findings in the TCPA show a concern for privacy within the sanctity of the home that do not necessarily apply to text messaging," given cell phones "are often taken outside of the home and often have their ringers silenced, presenting less potential for nuisance and home intrusion"). True, this Court has noted that the argument that "cell phone users are not 'residential telephone subscribers' runs headlong into the FCC's express statements to the contrary." *Murray v. Grocery Delivery E-Servs. USA Inc.*, 55 F.4th 340, 348 (1st Cir. 2022). But again, under *Loper*, this Court need not and should not defer to the FCC's incorrect interpretation of the statute.

[5] Further, it is arguable that the FCC exceeded the authority delegated under the TCPA enabling statute by sweeping cell phone subscribers into its regulations. *See McEwen v. Nat'l Rifle Ass'n of Am.*, No. 2:20-CV-00153-LEW, 2021 WL 1414273, at *7 (D. Me. Apr. 14, 2021) (questioning "agency authority to prohibit and thereby make actionable calls placed to cellphone numbers registered in either the national or caller-specific do-not-call registries").

227(c)(1) does not provide Mantha a private right of action—because harm or annoyance to his cell phone use is not within the zone of interests protected by the law—then his claim and the claims of the class must be dismissed. This Court should therefore grant QuoteWizard's petition.

## II. Class Certification Would Likely Be A Death Knell For QuoteWizard, Even Though It Has Several Strong And Valid Defenses.

Interlocutory review under Rule 23(f) petitions is "especially appropriate where . . . a doubtful class certification results in financial exposure to defendants so great as to provide substantial incentives for defendants to settle non-meritorious cases in an effort to avoid both risk of liability and litigation expense." *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 8 (1st Cir. 2008); *see also Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 958 (9th Cir. 2005) (describing this as the "death knell" justification for Rule 23(f)). The death-knell justification for Rule 23(f) review has been triggered here.

A single violation of the do-not-call provisions of the TCPA entitles a plaintiff to a minimum statutory-damages award of $500 (and up to $1500 for treble damages). But when thousands of class members aggregate their claims and seek treble damages that modest $500 balloons immensely. According to the certification order, the approved class consists of 66,693 telephone numbers that received a combined 314,828 text messages, which amounts to a *minimum* $157,414,000 in claimed damages. Doc. 368 at 10. But plaintiffs seek treble damages, bringing

11

QuoteWizard's liability exposure to a staggering $472,242,000. Add litigation costs to defend yearslong class claims, and QuoteWizard almost certainly will be forced to settle even though it has numerous valid and strong legal defenses—including that the class members each individually consented to receive the challenged messages. *See infra*, section III.

The Seventh Circuit has recognized the significant economic impact that TCPA class-action claims have on defendants, noting that the "consequences for a firm that violates the TCPA *can be dire* when it is facing not just a single aggrieved person, but a class." *See Brodsky v. HumanaDental Ins. Co.*, 910 F.3d 285, 291 (7th Cir. 2018) (emphasis added). Because the statute permits a minimum award of $500 per violation, "the dollars roll up quickly" in a TCPA class action and make the "stakes for the defendants . . . substantial." *Id.*

Denying class certification will not leave plaintiffs without a remedy—because the minimum $500 per violation recovery provides an "'adequate incentive for an individual plaintiff to bring suit on his own behalf.'" 1 McLaughlin on Class Actions § 2:20 (20th ed.) (quoting *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 404 (E.D. Pa. 1995)); *see also Bais Yaakov of Spring Valley v. ACT, INC.*, 328 F.R.D. 6, 14 n. 2 (D. Mass. 2018) (rejecting notion that an individual plaintiff does not have incentive to bring a TCPA claim given the minimum statutory recovery of $500),

*aff'd*, 12 F.4th 81 (1st Cir. 2021).[6] But permitting class certification would likely lead to QuoteWizard having to abandon its defenses because of the cost of class litigation. "Courts have also expressed reservations about class actions under the TCPA because of the potential for *astronomical damages awards disproportionate to the actual harm* suffered by plaintiffs, making a TCPA class action for plaintiffs "'attractively disproportionate to the extent of the actual injury.'" *Id.* (quoting *Levine v. 9 Net Ave., Inc.*, No. A-1107-00T1, 2001 WL 34013297, at *6 (N.J. Super. Ct. App. Div. June 7, 2001)) (emphasis added).

Given the relative lack of harm and annoyance suffered by the proposed class members, in comparison to the astronomical damages QuoteWizard now faces if the class is approved, this Court should grant the petition to prevent a reverse death knell.

### III. Resolution Of Whether Plaintiffs Consented To The Challenged Messages And Received Them On A Residential Telephone Requires Individualized, Fact-Intensive Inquiry Unsuitable For Class Determination.

Plaintiffs' claims involve at least two fact-intensive inquiries that make them unsuitable for class resolution. *First*, the district court must make individual factual

---

[6] It is worth noting that Senator Fritz Hollings, who introduced the bill in the Senate, stated in support of its passage that TCPA claims would be brought "preferably in small claims court . . . or a similar court" to "allow the consumer to appear before the court without an attorney." 137 Cong. Rec. S16205 (daily ed. Nov. 7, 1991). Class action litigation is about as far from small claims court as imaginable.

13

determinations—for every class member—about whether QuoteWizard obtained the individual's consent to send the challenged messages. *Second*, even if cell phone subscribers are not categorically ineligible for relief under the TCPA, the inquiry into whether a particular cell phone constitutes a "residential" telephone number is necessarily fact intensive. Because these individualized determinations predominate over questions of law and fact common to the class, plaintiffs cannot satisfy the predominance and superiority criteria of Rule 23(b)(3). *See Bais Yaakov of Spring Valley v. ACT, Inc.*, 12 F.4th 81, 89 (1st Cir. 2021). Further, each inquiry involves novel questions of statutory interpretation that justifies interlocutory review. Given that plaintiffs intend to bring class summary judgment motions on both the consent defense and the residential-line defense, judicial economy favors interlocutory review of those issues now. July 17, 2024 Transcript at 8-9.

### A. This Court Has Not Yet Determined Whether A Third-Party Intermediary Can Convey Consent Under The TCPA, Nor Whether The E-Sign Act Applies To TCPA Claims.

"[P]rior express consent is a complete defense" to claims brought under the TCPA. *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017); *Bais Yaakov*, 12 F.4th at 90. The determination of whether prior express consent was properly obtained under the TCPA is individualized, fact intensive, and context driven. *See, e.g.*, *Brodsky v. HumanaDental Ins. Co.*, 910 F.3d 285, 291 (7th Cir. 2018) ("[t]he question of what suffices for consent is central, and it is likely to

14

vary from recipient to recipient"); *Bais Yaakov*, 12 F.4th at 92 (affirming denial of class certification where there was no way "that the court could cull from the class the consenting schools in an administratively feasible way, protective of [defendant's] rights"). Accordingly, courts routinely reject class certification of TCPA claims based on issues of consent. *See, e.g.*, *Bais Yaakov*, 12 F.4th at 92; *Brodsky*, 910 F.3d at 291; 1 McLaughlin on Class Actions § 2:20 (20th ed.) ("*Numerous courts have denied class certification* under the TCPA because of the individualized issues regarding liability arising out of separate communications with each class member . . . [including] whether the communication was sent with permission of the recipient.") (emphasis added) (collecting cases).[7]

Plaintiffs—and the district court—did not dispute that issues of consent are often fatal to class certification of TCPA claims nor that QuoteWizard has evidence of consent from all or nearly all the class plaintiffs. Doc. 368 at 32. Instead, the district court reasoned that the question of consent could be decided on a class-wide, thumbs-up/thumbs-down basis because Mantha concedes that resolution of the question turns entirely on whether the consent forms must mention QuoteWizard by name. *Id.*

---

[7] *See also Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F.4th 839 (7th Cir. 2022); *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017), *as corrected on denial of reh'g en banc* (Sept. 1, 2017), *cert. denied*, 138 S. Ct. 1284, 200 L. Ed. 2d 470 (2018); *Gene And Gene LLC v. BioPay LLC*, 541 F.3d 318 (5th Cir. 2008).

But importantly, whether the consent forms must mention QuoteWizard by name is a disputed and unsettled legal question. *See* 93 A.L.R. Fed. 2d 343, *What Constitutes 'Prior Express Consent' Under Telephone Consumer Protection Act(TCPA), 47 U.S.C.A. § 227* (Originally published in 2015) (collecting cases where third-party intermediary consent held valid, and cases where it was held invalid). Numerous courts—and the FCC—have concluded that a consumer's prior express consent may be obtained through and conveyed by an intermediary. *See, e.g.*, *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1123 (11th Cir. 2014); *Keim v. ADF MidAtlantic, LLC*, 328 F.R.D. 668, 683 (S.D. Fla. 2018); *Burk v. Direct Energy, LP*, No. 4:19-CV-663, 2021 WL 4267146, at *4 (S.D. Tex. Sept. 20, 2021) (denying class certification involving analogous TCPA claim where mini-trials on consent would be required for each plaintiff, who allegedly provided consent to be contacted on third-party intermediary websites who then sold leads to the defendant).[8] Given the unresolved and novel nature of the issue, interlocutory review is warranted to conclusively answer the question of whether consent can be obtained through a third-party intermediary, especially given the district court's

---

[8] *See also Matter of GroupMe, Inc./Skype Commc'ns S.A.R.L. Petition for Expedited Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("GroupMe"), 29 F.C.C. Rcd. 3442, 3444 (2014) ("[A] consumer's prior express consent may be obtained through and conveyed by an intermediary.").

4868-9282-8894 v.1

conclusion that this question is fully dispositive of the consent issue—either for or against Mantha and the class.

Further, Mantha argued that consent can be determined on a class-wide basis because none of the consent forms complied with the E-Sign Act, 15 U.S.C. § 7001(c). Doc. 358 at 14-15.[9] But whether the E-Sign Act applies to the TCPA is also hotly contested among district courts and unsettled in this circuit. *Compare Morris v. Modernize, Inc.*, No. AU-17-CA-00963-SS, 2018 WL 7076744, at *2–3 (W.D. Tex. Sept. 27, 2018) (E-Sign Act does not apply to claims under the TCPA), and *Reinert v. Power Home Remodeling Grp., LLC*, No. 19-13186, 2020 WL 6743094, at *3 (E.D. Mich. Nov. 17, 2020) (same), *with Bradley v. DentalPlans.com*, No. CV 20-1094-BAH, 2024 WL 2865075, at *8–9 (D. Md. June 6, 2024) (E-Sign Act applies to claims under the TCPA), and *Rosales v. Heath*, No. 8:17CV87, 2019 WL 7586541, at *5–6 (D. Neb. June 27, 2019) (same). And even if the E-Sign Act applies, that does not end the inquiry; the district court must still determine whether the consent forms at issue complied with the Act. *See, e.g.*, *Lundbom v. Schwan's Home Serv., Inc.*, No. 3:18-CV-02187-IM, 2020 WL 2736419, at *7–9 (D. Or. May 26, 2020) (E-Sign Act consent validly obtained).

---

[9] Although the certification order does not analyze the E-Sign Act issue, application of the Act to the TCPA was strongly contested during the certification hearing and in the briefing. July 17, 2024 Transcript at 54-58.

4868-9282-8894 v.1

Far from a single up/down decision as claimed by the district court, whether QuoteWizard validly obtained the consent of each class plaintiff requires an individualized, fact-specific inquiry—especially since, as the district court noted, there are over 650 *different* consent forms at issue. July 17, 2024 Transcript at 51. *See Latner v. Mount Sinai Health Sys.*, 879 F.3d 52, 54 (2d Cir. 2018) ("In 2014, the FCC clarified that 'the scope of [an individual's prior express] consent must be determined upon the facts of each situation.'") (quoting *GroupMe, Inc.*, 29 F.C.C. Rcd. 3442, 3446, ¶ 11 (2014)).[10] This Court should grant the petition to resolve whether consent can be obtained by an intermediary and whether the E-Sign Act applies to the TCPA, both of which are unsettled questions in this circuit.[11]

### B. Whether A Mixed-Use Phone Is Entitled To Protection Under The TCPA Is Both Fact Intensive And Unsettled.

Even if the district court is correct that class plaintiffs are not categorically ineligible for relief under the TCPA because a cell phone *may* constitute a residential telephone under certain circumstances, this inquiry is fact-intensive and requires an individual determination. *See, e.g.*, *Hirsch v. USHealth Advisors, LLC*, 337 F.R.D.

---

[10] That the consent inquiry is fact-intensive cannot seriously be disputed given the district court's own multi-factor and complicated analysis of consent in its order denying summary judgment to QuoteWizard. Doc. 268 at 19-21.

[11] Notably, in an analogous TCPA class action, the Fifth Circuit granted a Rule 23(f) petition to review whether the issue of consent precluded certification. *Gene And Gene LLC*, 541 F.3d at 329 (reversing certification order because "myriad mini-trials cannot be avoided").

4868-9282-8894 v.1

118, 131 (N.D. Tex. 2020) ("resolving each phone number's residential status requires a fact-intensive inquiry"); *Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 656-58 (W.D. Tenn. 2020) (a plaintiff "must put forth evidence establishing that her cellular telephone is used for residential purposes," and the ultimate analysis is "fact-intensive"). Given the fact-specific nature of the inquiry, the question of whether a cell phone is "residential" is inappropriate for class resolution.

The district court reasoned that the residential requirement could be determined on a class-wide basis, largely because of the FCC's presumption in favor of finding cell phones to be residential lines. *See* 2003 TCPA Order, 18 FCC Rcd. at 14038 ("since determining whether any particular wireless subscriber is a 'residential subscriber' may be more fact-intensive than making the same determination for a wireline subscriber, we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers'"); Doc. 368 at 34. But presumptions can be rebutted with specific facts. Indeed, the Ninth Circuit has adopted a five-factor test to determine whether a defendant has rebutted the presumption. *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1225 (9th Cir. 2022).[12]

---

[12] These factors include: "(1) how plaintiffs hold their phone numbers out to the public; (2) whether plaintiffs' phones are registered with the telephone company as residential or business lines; (3) how much plaintiffs use their phones for business or employment; (4) who pays for the phone bills; and (5) other factors bearing on how a reasonable observer would view the phone line." *Id.*

Analysis of the relevant factors will be fact intensive and inappropriate for class resolution.

For example, during summary judgment briefing, the parties vigorously disputed whether Mantha's cell phone constituted a "work/business" phone (precluding it from the TCPA do-not-call protections) or a "residential" phone used for personal purposes (entitling it to TCPA protections). *See* Doc. 268 at 9-13. The evidence is mixed. QuoteWizard submitted evidence that Mantha uses his cell phone extensively at and for work, sometimes at all hours of the night and on weekends and holidays, and Mantha submitted evidence of personal use, including that the cell phone is the primary means of reaching him at his house. *Id.* Whether the weight of the evidence on the "residential" issue is in favor of Mantha or in favor of QuoteWizard is not the main point here. Instead, the key is that the analysis is *not* class determinative, but case-by-case determinative, requiring nearly 67,000 individualized—and inefficient—determinations. *See In re Asacol Antitrust Litig.*, 907 F.3d 42, 51 (1st Cir. 2018) ("Inefficiency can be pictured as a line of thousands of class members waiting their turn to offer testimony and evidence on individual issues.").

Further, whether a mixed-use cell phone may constitute a "residential" telephone line, and therefore be entitled to protection under the TCPA do-not-call provisions, is a novel issue that has not been resolved by this circuit. *See Chennette*, 50 F.4th at 1224 (reviewing a split of authority on the issue). Interlocutory review is warranted

20

to determine whether a cell phone used at least partly for work can be considered a residential phone, and if so, to articulate the relevant factors in the analysis.

## CONCLUSION

QuoteWizard respectfully requests that this Court grant its Rule 23(f) petition for permission to appeal.

QUOTEWIZARD.COM, LLC

By his attorneys,

NELSON MULLINS RILEY
 & SCARBOROUGH LLP

/s/ Kevin P. Polansky
Kevin P. Polansky (No. 1137108)
*kevin.polansky@nelsonmullins.com*

One Financial Center, Suite 3500
Boston, MA 02109
p. (617) 217-4700

Benjamin J. Sitter
*ben.sitter@nelsonmullins.com*
Six PPG Place Suite 700
Pittsburgh, PA 15222
Telephone: (412) 730-3244

*Counsel for Defendant-Petitioner*

Dated: August 30, 2024

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     The foregoing Petition for Permission to Appeal complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B), as determined by the word-count function (5,129 words) of Microsoft® Word for Microsoft 365 MSO (Version 2402 Build 16.0.17328.20550), excluding the parts of the petition exempted by Federal Rule of Appellate Procedure 32(f); and

2.     This Petition for Permission to Appeal complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 MSO (Version 2402 Build 16.0.17328.20550) in 14-point Times New Roman font.

Dated:                                   */s/ Kevin P. Polansky*
                                         Kevin P. Polansky

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 30, 2024, I caused the foregoing petition to be electronically filed with the Clerk of the Court via the Court's CM/ECF system. I also caused the foregoing petition to be electronically filed in the underlying district court case in the District of Massachusetts. Participants in this case are registered CM/ECF users, and service will be accomplished by the district court CM/ECF system.

*/s/ Kevin P. Polansky*
Kevin P. Polansky

4868-9282-8894 v.1