UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH MANTHA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>QUOTEWIZARD.COM LLC<br><br>Defendant. | CASE NO. 1:19-cv-12235 |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO RE-OPEN DISCOVERY AND FOR LEAVE TO SERVE LIMITED
INTERROGATORIES ON CLASS MEMBERS**

Defendant QuoteWizard.com LLC ("QuoteWizard") respectfully asks that the Court reopen discovery for the limited purpose of allowing QuoteWizard to serve five narrowly tailored interrogatories on class members seeking information critical to its defenses at trial. QuoteWizard's proposed interrogatories are focused on individual class members' cellular telephones, requests to receive insurance comparison information, and receipt of text messages from QuoteWizard, facts that are central to QuoteWizard's defenses on the issues of standing, residential phone status, and damages. QuoteWizard did not have an opportunity to obtain this discovery previously, because Plaintiff did not identify the 66,694 members of his proposed class, until after the close of fact discovery. Per the Court's December 2, 2024 Order directing QuoteWizard to file a Motion to Re-Open Discovery regarding this issue, QuoteWizard files this Motion to Re-Open Discovery and for Leave to Serve Limited Interrogatories on Class Members.

1

## I.    FACTUAL BACKGROUND

Plaintiff's class action lawsuit against QuoteWizard alleges that QuoteWizard violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5)(B), by sending unsolicited text messages to cellular telephone numbers on the National Do Not Call Registry ("NDNCR"). *See* ECF 1. QuoteWizard is an insurance comparison platform that connects consumers with insurance providers to identify rates and coverage options that align with the consumer's needs. *See* ECF 32. It is QuoteWizard's intent to only contact consumers who have expressed an interest in obtaining and have consented to receive insurance comparison information. *See id*. To identify such consumers, QuoteWizard acquires "leads" – collections of contact information for individuals who have requested and consented to receiving the services QuoteWizard offers – through third-party lead vendors. *See id*.

To investigate Plaintiff's claims that QuoteWizard contacted consumers in violation of the TCPA (which is inconsistent with QuoteWizard's business practices), QuoteWizard asked Plaintiff – at the outset of discovery over four years ago – to "identify any and all witnesses and all persons having any knowledge of any relevant facts," including "his or her name, occupation/title, telephone number, address," "a summary of each person's knowledge," and "the factual substance of the information known to such person." *See* Exhibit 1, Plaintiff's Answers to QuoteWizard's First Set of Interrogatories at Interrogatory No. 2. In response, Plaintiff objected that the request was overbroad and unduly burdensome and did not identify a single person who is now in their defined class. *See id*. Indeed, it was not until ***after*** the close of fact discovery that Plaintiff first disclosed the list of 66,694 class members who allegedly received unsolicited text messages in violation of the TCPA. *See* ECF 339. That list of 66,694 class members reflects a tiny fraction of the pool of approximately 18 million people for whom QuoteWizard provided responsive

information and documents during discovery, notwithstanding its objections that Plaintiff's discovery requests were overbroad. Indeed, completing this monumental discovery that Plaintiff demanded necessitated **nine** Joint Motions to Extend Discovery. *See* ECF 98, 120, 125, 320, 322, 324, 329, 331, and 336.

Now that Plaintiff has identified the Class's members, QuoteWizard finally has the opportunity to investigate individual class members' use of their cellular telephones, their requests to receive insurance comparison information, and their receipt of text messages from QuoteWizard. Discovery focused on these facts goes to the heart of QuoteWizard's defenses on the issues of standing, residential phone status, and damages and was impossible to conduct prior to the post-discovery filing of Plaintiff's Motion to Certify Class which disclosed for the first time the list of 66,694 class members. Moreover, now that a class has been certified, QuoteWizard is not permitted to reach out to these individuals directly to obtain this information. *See Tedesco v. Mishkin*, 629 F. Supp. 1474, 1482–83 (S.D.N.Y. 1986) (finding that defense counsel's post-certification contact with class members "violate[s] American Bar Association Rules of Professional Conduct as well as various of the Federal Rules of Civil Procedure, applicable to attorneys"); *Fulco v. Cont'l Cablevision, Inc.*, 789 F. Supp. 45, 47 (D. Mass. 1992) ("I agree with courts which have held that 'once the court enters an order certifying a class, an attorney-client relationship arises between all members of the class and class counsel'") (quoting *Bower v. Bunker Hill Co.*, 689 F. Supp. 1032, 1034 (E.D. Wash. 1985) (finding that "defense counsel may not communicate with any class member with respect to matters which are the subject of this litigation without prior consent of class counsel or this court" and stating that "the defendants' articulated reason for contacting class members…to obtain information to aid in the preparation of its own

3

case…is present in every case and can be readily filled by the use of the discovery process")). To that end, QuoteWizard intends to serve the following interrogatories on absent class members:

> **Interrogatory No. 1:** Have you ever made or received calls, texts, app-based messages (*e.g.*, Teams, Discord, Slack), or emails, or attended virtual meetings (*e.g.*, Zoom, Teams), on your cellular telephone related to your occupation or business?
>
> **Interrogatory No. 2:** Have you ever used your cellular telephone for any purpose other than personal use? If so, please describe how you have used for cellular telephone for purposes other than personal use.
>
> **Interrogatory No. 3:** Has an employer ever contributed in whole or in part to your cellular telephone bill or have you ever claimed a tax deduction related to your cellular telephone bill as a business expense?
>
> **Interrogatory No. 4:** Have you ever signed up to receive insurance comparison information or insurance quotes and been contacted by QuoteWizard as a result of that request?
>
> **Interrogatory No. 5:** Have you ever received text messages from QuoteWizard? If so, how many text messages have you received from QuoteWizard and when?

If the Court finds that the entire class of 66,694 is overbroad or unduly burdensome, QuoteWizard alternatively requests leave to serve these interrogatories on the approximately 2,560 class members whose area code falls within the applicable 100-mile radius (*i.e.*, class members that QuoteWizard may subpoena as witnesses at trial).

## II.    ARGUMENT

QuoteWizard needs the requested discovery in order to adequately prepare for trial. This discovery goes to the heart of QuoteWizard's defenses on the issues of standing, whether the phone numbers are "residential" and therefore fall within the ambit of the TCPA or are "business" phone numbers that do not, and damages. The discovery QuoteWizard seeks is narrowly tailored to avoid unduly burdening class members. Plaintiff did not identify the members of the class prior to the close of discovery. The only way QuoteWizard can obtain the requested discovery is by obtaining

leave to serve limited interrogatories on class members. Because QuoteWizard has good cause to re-open discovery and because the discovery QuoteWizard seeks is necessary to its ability to adequately defend against the Class claims, the Court should re-open discovery for the limited purpose of allowing QuoteWizard to serve its proposed interrogatories on class members, or in the alternative, on the approximately 2,560 class members whose area code falls within the applicable 100-mile radius.

      **A.**      **QuoteWizard has Good Cause to Re-Open Discovery.**

QuoteWizard has good cause to re-open discovery, because these interrogatories are narrowly tailored and are the only way for QuoteWizard to obtain information vital to its defenses, given that Plaintiff did not disclose the class list to QuoteWizard prior to the close of fact discovery. "Pursuant to Federal Rule of Civil Procedure 16(b)(4), a scheduling order 'may be modified only for good cause.'" *Drewry v. Correct Care Sols., LLC*, No. 1:14-CV-00392-GZS, 2017 WL 11493724, at *1 (D. Me. Feb. 27, 2017); *see also Gladu v. Waltz*, No. 1:18-CV-00275-GZS, 2020 WL 1156115, at *1 (D. Me. Mar. 10, 2020); *Somascan, Inc. v. Philips Med. Sys. Nederland, B.V.*, 714 F.3d 62, 64 (1st Cir. 2013). "The good cause standard 'focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent.'" *Id.* (quoting *Somascan, Inc. v. Philips Med. Sys. Nederland, B.V.*, 714 F.3d 62, 64 (1st Cir. 2013)). This is not a situation in which QuoteWizard "simply has not been diligent in [its] obligation to complete discovery within the time designated by the Court" where, consequently, "the reopening of discovery is not warranted." *See Drewry*, 2017 WL at *1. Rather, this is a situation in which QuoteWizard "happened upon the information…after discovery was closed." *See MAZ Partners LP v. Shear*, 208 F. Supp. 3d 384, 388 (D. Mass. 2016) (finding "good cause" to re-open discovery where the information subject to the discovery sought was disclosed after the close of discovery).

5

Any argument that QuoteWizard should have sought this discovery during the discovery period because the class list was derived from QuoteWizard's monumental production of information concerning approximately 18 million people lacks merit and undercuts any argument that the discovery QuoteWizard now seeks is overbroad. It is without question that serving interrogatories on 18 million people, regardless of the limited number or narrow focus, would be among the broadest of hypothetical discovery endeavors. QuoteWizard has good cause to re-open discovery because the class list was unknown to the parties until after the close of discovery, making the requested discovery impossible during the discovery period.

**B. QuoteWizard has a Strong Showing of the Need for its Narrowly Tailored Limited Interrogatories to Class Members.**

The requested discovery QuoteWizard seeks goes to the heart of its defenses on the issues of standing, residential phone status, and damages, is unavailable from the named Plaintiff as Plaintiff failed to provide that information in response to discovery previously served, is sought in good faith pursuit of its right to defend itself against Plaintiff's class action lawsuit, and is narrowly tailored to eliminate any undue burden upon class members. Accordingly, QuoteWizard has a strong showing of its need to serve the proposed interrogatories on class members. Further, while QuoteWizard ideally seeks to serve the proposed interrogatories on all class members, in the event that the Court views that endeavor as overly broad, QuoteWizard alternatively requests leave to serve the proposed interrogatories on the approximately 2,560 class members whose area code falls within the applicable 100-mile radius.

While "[t]he Federal Rules of Civil Procedure do not provide for discovery from absent class members" by default, "under the general authority provided to them in the class action context by Rule 23(d), federal courts have, on occasion, allowed such discovery to take place." *In re Publ'n Paper Antitrust Litig.*, No. 3:04 MD 1631 (SRU), 2005 WL 1629633, at *1 (D. Conn.

6

July 5, 2005). "The use of discovery devices against nonrepresentative class members raises the troublesome conflict between 'the competing interests of the absent class members in remaining passive and the defendant in having the ability to ascertain necessary information for its defense.'" *Robertson v. Nat'l Basketball Ass'n*, 67 F.R.D. 691, 699 (S.D.N.Y. 1975) (quoting Comment, *Making the Class Determination in Rule 23(b)(3) Class Actions*, 42 Fordham L.Rev. 791, 811 (1974)). "Specifically, a defendant should not be 'unfairly prejudiced by being unable to develop its case' even though 'facts of the case may reside with the absent class members.'" *Fishon v. Peloton Interactive, Inc.*, 336 F.R.D. 67, 70 (S.D.N.Y. 2020) (quoting 3 William B. Rubenstein, Newberg on Class Actions § 9:11 (5th ed. 2015)). "In view of a defendant's interests, absent class members are not automatically immune from discovery." *Redmond v. Moody's Inv. Serv.*, No. 92 CIV. 9161 (WK), 1995 WL 276150, at *1 (S.D.N.Y. May 10, 1995); *Enter. Wall Paper Mfg. Co. v. Bodman*, 85 F.R.D. 325, 327 (S.D.N.Y. 1980) ("[I]t seems dubious to assume there are no circumstances under which absent class members should be treated as parties for discovery purposes"); *Krueger v. New York Tel. Co.*, 163 F.R.D. 446, 450 (S.D.N.Y. 1995) ("Discovery of unnamed class members is neither prohibited nor sanctioned," and "there is authority for the use of both interrogatories and depositions against members of Rule 23 classes."). Further, to alleviate "the risk of turning the 'opt-out' class action into an impermissible opt-in class action," "compliance with such discovery [of absent class members] will not be exacted by the threat of dismissal." *See*, *Fishon*, 336 F.R.D. at 70; *Robertson*, 67 F.R.D. at 700.

"Courts in this District (and elsewhere) have articulated different tests to balance these competing interests." *Fishon*, 336 F.R.D. at 70. "[T]here is no uniform test in the federal courts for deciding whether to allow discovery of absent class members." *In re Telexfree Sec. Litig.*, No. 4:14-MD-2566-NMG, 2024 WL 2186848, at *3 (D. Mass. May 15, 2024). However, "courts that

have allowed such discovery have required the defendant to (1) make a strong showing of the need for the particular discovery and (2) narrowly tailor its requests to its particular need, so as not to burden the absent members." *In re Publ'n Paper Antitrust Litig.*, 2005 WL 1629633 at *1; *In re Porsche Automobil Holding SE*, No. 20-1239, 2021 WL 140638 (1st Cir. Jan. 15, 2021) (stating that "courts that allow discovery from absent class members…have allowed such discovery only after considering multiple factors, including whether the defendant has a good faith purpose and whether the request is unduly burdensome" and affirming denial of requested discovery concerning "the largest group of investors" at issue in a German lawsuit where "[t]he German tribunal…signaled that it [was] receptive to receiving" the same discovery "that [the moving party] claims exists"); *Gonzalez v. RXO Last Mile, Inc.*, No. CV 1:19-10290-TSH, 2022 WL 22269209, at *1 (D. Mass. Dec. 12, 2022) ("courts generally only find discovery appropriate when 'the defendant has a good faith purpose and [where] the request is [not] unduly burdensome'" and denying requested depositions of absent class members, noting that "depositions are the most burdensome form of discovery") (quoting *In re Porsche Automobil Holding SE*, 2021 WL 140638).

In evaluating whether to grant leave to serve discovery requests on absent class members, this Court has stated that it "finds persuasive" the *Fishon* factors: whether the requested discovery from absent class members "'(1) is needed for the purposes of trial or the issues common to the class, (2) is narrowly tailored, (3) will impose undue burden on the absent class members, and (4) is not available from representative plaintiffs.'" *In re Telexfree Sec. Litig.*, 2024 WL 2186848 at *4 (quoting *Fishon*, 336 F.R.D. at 70 (quoting *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 CIV.11515 WHP, 2008 WL 344715, at *2 (S.D.N.Y. Feb. 4, 2008)); *Briggs v. Massachusetts Dep't of Correction*, No. CV 15-40162-GAO, 2022 WL 16702402, at *1 (D. Mass. Oct. 20, 2022) (applying *Fishon* factors to class action defendant's request to serve interrogatories and requests

for production on absent class members and denying requested discovery as "unduly burdensome" where there was evidence of "individuals who may require an interpreter or other auxiliary aids or services to respond to the requests").

QuoteWizard needs the requested discovery to adequately defend itself against Plaintiff's claims. First, Plaintiff class members cannot reasonably claim that they were actually harmed by alleged TCPA violations where they specifically requested insurance comparison information. "Under Article III, 'the "irreducible constitutional minimum" of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Mantha v. Quotewizard.com, LLC*, No. CV 19-12235-LTS, 2021 WL 6061919, at *5 (D. Mass. Dec. 13, 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016), *as revised* (May 24, 2016)). While "[j]udges in this district have found that a mere technical violation of the TCPA is, by itself, a concrete injury sufficient to confer standing", "[p]lainly, there is no consensus in the courts on this issue." *Zauderer v. Cirrus Consulting Grp. (USA), Inc.*, 265 F. Supp. 3d 104, 108 (D. Mass. 2017); *see Bais Yaakov of Spring Valley v. ACT, Inc.*, 438 F. Supp. 3d 106, 110 (D. Mass. 2020) (finding an issue of fact as to whether the plaintiff "requested…to receive" the type of information at issue).

This Court has previously stated that it "agrees with the majority of courts finding that Congress, when it enacted the TCPA, recognized receiving **unsolicited** telemarketing calls is a legally cognizable harm and comprises a 'concrete' injury.'" *Gibbs v. SolarCity Corp.*, 239 F. Supp. 3d 391, 395–96 (D. Mass. 2017) (emphasis added). Class members who requested insurance comparison information cannot reasonably claim that they were harmed by receiving exactly what they asked for. Indeed, QuoteWizard intends to present numerous Plaintiff class members who

9

will testify that they were not harmed by receiving insurance comparison information from QuoteWizard. Without the proposed interrogatories, the number of witnesses encompasses the entirety of the approximately 2,560 class members whose area code falls within the applicable 100-mile radius.

Second, Plaintiff class members who use their phones for business or mixed use cannot pursue a TCPA claim. "Under the TCPA, only residential phone subscribers are entitled to Do Not Call protections." *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 201 (D. Mass.), *adhered to on denial of reconsideration*, 541 F. Supp. 3d 138 (D. Mass. 2021). While "[t]he FCC…applies a presumption that any cell phone subscriber who asks to be put on the Do Not Call Registry is a residential subscriber," the FCC "may require a complaining wireless subscriber to provide further proof of the validity of that presumption." *Gaker*, 654 F. Supp. 3d at 71; *In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003). QuoteWizard's proposed interrogatories are necessary to determine whether Plaintiff class members' cell phones were used for personal purposes rather than business or mixed-use purposes.

Finally, the prospect of any potential settlement is effectively doomed without the proposed interrogatories, as QuoteWizard cannot reasonably evaluate this case without the ability to ascertain facts relevant to damages until calling potentially thousands of witnesses to testify at trial where QuoteWizard will have its first opportunity to ask questions of class members. *See Krueger v. New York Tel. Co.*, 163 F.R.D. 446, 451–52 (S.D.N.Y. 1995) ("[D]efendants face difficulty participating in settlement negotiations without a reasonable basis on which to measure their potential exposure, a factor favoring discovery" of absent class members).

The remaining *Fishon* factors likewise weigh in QuoteWizard's favor. QuoteWizard's proposed interrogatories "are narrowly tailored to the claims at issue" as set forth above, and, in

the event that the Court views serving the proposed interrogatories on all class members as overly broad, QuoteWizard alternatively requests leave to serve the proposed interrogatories on the approximately 2,560 class members whose area code falls within the applicable 100-mile radius. *See Four Women Health Servs., LLC v. Abundant Hope Pregnancy Res. Ctr., Inc.*, No. 1:24-CV-12283-JEK, 2024 WL 4425558, at *3 (D. Mass. Oct. 4, 2024); *see Laborers Loc. 17 Health & Ben. Fund v. Morris*, No. 97CIV.4550(SAS)(MHD), 1998 WL 241279, at *1 (S.D.N.Y. May 12, 1998) ("The requirement of tailoring has also led a number of courts to deem document requests and interrogatories as preferable to depositions of class members").  Similarly, "interrogatories" are "more convenient, less burdensome," and "less expensive" than other forms of discovery, such as depositions.  *New England Carpenters Health Benefits Fund v. First DataBank, Inc.*, 242 F.R.D. 164, 166 (D. Mass. 2007).  QuoteWizard's proposed set of five interrogatories is strictly focused on issues central to its defenses, is narrowly tailored, and is the least burdensome form of discovery available.  Finally, Plaintiff Joseph Mantha cannot provide responsive answers to QuoteWizard's proposed interrogatories because the proposed interrogatories seek information specific to individual class members which "is not available from representative plaintiffs." *See Fishon*, 336 F.R.D. at 70.

### III.   CONCLUSION

QuoteWizard's proposed interrogatories go to the heart of its defenses at trial.  The proposed interrogatories are narrowly tailored to avoid undue burden to class members who were unknown to the parties prior to the close of discovery.  The only way to obtain the requested discovery is by re-opening discovery and serving the proposed interrogatories on class members. Because QuoteWizard has good cause to re-open discovery and because the discovery QuoteWizard seeks is necessary to its ability to adequately defend against Plaintiff's claims, the

Court should re-open discovery and grant leave to serve QuoteWizard's proposed interrogatories on class members, or in the alternative, on the approximately 2,560 class members whose area code falls within the applicable 100-mile radius.

          Respectfully submitted,

          QuoteWizard.com, LLC,
          By its attorneys,

          */s/ Kevin P. Polansky*
          Kevin P. Polansky (BBO #667229)
          kevin.polansky@nelsonmullins.com
          Nelson Mullins Riley & Scarborough LLP
          One Financial Center, Suite 3500
          Boston, MA 02109
          (t) (617)-217-4700
          (f) (617) 217-4710

          Ben Sitter (*admitted pro hac vice*)
          Ben.sitter@nelsonmullins.com
          Nelson Mullins Riley & Scarborough LLP
          One PPG Place, Suite 3200
          Pittsburgh, PA 15222

4915-3542-6823 v.1

## CERTIFICATE OF SERVICE

    I, Kevin P. Polansky, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: December 17, 2024                      */s/ Kevin P. Polansky*
                                                                 Kevin P. Polansky

4915-3542-6823 v.1