# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH MANTHA on behalf of himself and others similarly situated, | : <br> : <br> : |
| Plaintiff, | : <br> : Case No. 1:19-cv-12235-LTS <br> : |
| v. | : <br> : |
| QUOTEWIZARD.COM, LLC | : <br> : |
| Defendant. | : <br> : <br> : |

## DEFENDANT'S SUPPLEMENTAL ANSWERS TO PLAINTIFF'S FOURTH SET OF INTERROGATORIES

Defendant QuoteWizard.com, LLC ("QuoteWizard") hereby provides the following supplemental answers to Plaintiff Joseph Mantha's ("Plaintiff") Fourth Set of Interrogatories.[1]

## GENERAL OBJECTIONS

QuoteWizard objects to the introductory paragraphs preceding Plaintiff's Fourth Set of Interrogatories to the extent they seek to impose duties on QuoteWizard beyond the scope of what is required under Fed. R. Civ. P. 33 or under applicable rules and orders of the Court. QuoteWizard also objects to Plaintiff's terms and definitions and does not adopt them herein.

QuoteWizard also objects on the grounds that some of the information and documents sought in these interrogatories: (a) were prepared in anticipation of litigation; (b) are protected by the attorney-client privilege; (c) are protected by the work product doctrine; and/or (d) are otherwise privileged or protected from disclosure. QuoteWizard hereby asserts all such applicable

---

[1] The Interrogatories were served with Plaintiff's fifth set of discovery requests but appear to be the fourth set of Interrogatories since discovery opened.

privileges and protections, and excludes such privileged information and documents from its responses.

QuoteWizard also objects to the Interrogatories because Plaintiff has exceeded the limit imposed by Fed. R. Civ. P. 33 without leave of court, which is 25 interrogatories. *See* Fed. R. Civ. P. 33(a)(1). Plaintiff's first, second, and third sets of interrogatories included a total of 28 interrogatories, and the fourth set includes another 22, for a total of 50. Plaintiff has therefore exceeded what the Federal Rules allow.

To the extent Plaintiff's interrogatories seek confidential consumer personal identifying information ("PII"), including consumer names, QuoteWizard objects. This information is not generally available to putative lead plaintiffs until a class is certified, is not relevant to any issue under Fed. R. Civ. P. 23, and is not appropriate to share with Plaintiff, who does not need this information prior to any certification. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978); *Dziennik v. Sealift, Inc.*, 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006) ("Courts have ordinarily refused to allow discovery of class members' identities at the pre-certification stage out of concern that plaintiffs' attorneys may be seeking such information to identify potential new clients, rather than to establish the appropriateness of certification.") (denying motion to compel this information).

QuoteWizard objects to any and all interrogatories that concern other consumers outside of the Commonwealth of Massachusetts, as they are beyond the jurisdictional scope of the case. *See, e.g., DeBernardis vs. NBTY, Inc.*, 2018 WL 461228, at *2 (N.D. Ill. Jan. 18, 2018) ("The Court believes that it is more likely than not based on the Supreme Court's comments about federalism that the courts will apply *Bristol-Myers Squibb* to outlaw nationwide class actions in a form, such as in this case, where there is no general jurisdiction over the Defendants.").

QuoteWizard further objects to the interrogatories insofar as they seek information solely in the possession, custody, or control of Drips Holdings, LLC which Drips has not produced to QuoteWizard to date by agreement herein. As QuoteWizard has maintained throughout this action, it does not have possession, custody, or control over Drips's records and therefore does not have any responsive information or documents for this category of requests

Although previously overruled by the District Court, to preserve its appellate rights, QuoteWizard objects to the extent that the interrogatories seek information regarding leads generated from any other source than www.snappyautoinsurance.com ("Snappy website"). As Plaintiff's lead purportedly originated from the Snappy website and the majority of discovery and briefing in this case related to that website (both as to the sufficiency of the TCPA disclosures thereon and its existence/legitimacy at the time of the making of the lead), Plaintiff cannot represent consumers who consented via different websites—as there are no common issues of fact or law capable of resolution on a classwide basis. Unlike in other cases where a defendant engaged in a mass campaign or all disputed leads came from the same source, here, QuoteWizard purchased hundreds of thousands of leads from (approximately) over 180 possible lead suppliers, necessarily arising from different websites, with different TCPA disclosure language. This case cannot be expanded beyond the Snappy website. *See Shamblin v. Obama*, 2015 U.S. Dist. LEXIS 54849, at *28-29 (M.D. Fla. April 27, 2015) ("[P]redominance is not satisfied based on the looming issue of consent. … [T]he evidence necessary to establish Shamblin's claim is not common to both Shamblin and all class members. Individualized inquiries into consent (including where, how, and when) will predominate."). *Compare Wendell H. Stone Co. v. Five Star Adver., LLC*, 2021 U.S. Dist. LEXIS 50721, at *2, *12 (D. Colo. March 17, 2021) (consent could be "common across the whole class" where there are "communications that were part of a mass campaign") (plaintiff

alleged that "defendants faxed the same unsolicited advertisement to 40 other recipients without receiving the recipients' permission or invitation"); *Sullivan v. All Web Leads, Inc.*, 2017 U.S. Dist. LEXIS 84232, at *24-25 (N.D. Ill. June 1, 2017) (commonality could be satisfied where putative class members "engaged in the same consent procedure that [plaintiff] did" and "gave the same consent," and issue remained about legal efficacy of that same consent); *Derrick Reaves v. Ketoro, Inc.*, 2020 U.S. Dist. LEXIS 167926, at *28 (C.D. Cal. July 17, 2020) (classwide treatment appropriate where all texts sent "during the [same] November 2018 campaign" and form/method of consent was the same across putative class members). Upon information and belief, RevPoint Media, LLC never sold QuoteWizard another lead originated from the Snappy website besides Plaintiff's lead, and thus there is no putative class.

## INTERROGATORIES

1. Please identify any telephone numbers in the Text Records that you contend are not residential numbers and state the basis for that contention.

> **ANSWER:** QuoteWizard objects to this Interrogatory as it exceeds the number of interrogatories allowed under Fed. R. Civ. P. 33 as this is Plaintiff's 29th interrogatory. QuoteWizard further objects to this Interrogatory insofar as it is overly broad and unduly burdensome and incorporates its objections above. The "Text Records" contain calls to over 12 million numbers. Therefore, distinguishing "residential numbers" from non-residential numbers would require over 12 million individual assessments. Any such analysis would be enormously onerous for either party. Moreover, the resulting analysis would be created strictly for litigation purposes and therefore protected under the work product doctrine. QuoteWizard also objects insofar as the "Text Records" are equally available to both parties and, therefore, Plaintiff is equally capable of distinguishing residential from non-residential numbers. Further, as defined by Plaintiff, "Text Records" refers to documents produced to QuoteWizard by Drips pursuant to the parties' global agreement. *See* D. Mass., Docket No. 1-21-mc-91266-LTS, Document No. 37 (the "Global Agreement"). Thus, these documents are not in QuoteWizard's possession, custody, or control for discovery purposes and QuoteWizard is in no better position to characterize or opine on these documents' contents than Plaintiff.
>
> Pursuant to these objections, QuoteWizard therefore refers to the business records previously produced to Plaintiff in accordance with Fed. R. Civ. P. 33(d).

> **SUPPLEMENTAL ANSWER:** QuoteWizard refers to and incorporates its supplemental answer to Interrogatory No. 9 below without waiving the foregoing objections.

2. If you contend that QuoteWizard had an Established Business Relationship with the owners or users of any of the telephone numbers in the Text Records, please identify those individuals and numbers and state the basis for the contention with respect to each number and individual, including the dates upon which the Established Business Relationship commenced.

> **ANSWER:** QuoteWizard objects to this Interrogatory as it exceeds the number of interrogatories allowed under Fed. R. Civ. P. 33 as this is Plaintiff's 30th interrogatory. QuoteWizard further objects to this Interrogatory insofar as it is overly broad and unduly burdensome and QuoteWizard incorporates its general objections above. The "Text Records" contain calls to over 12 million consumers. Therefore, identifying the numbers with which QuoteWizard had an Established Business Relationship would require over 12 million individual assessments. Any such analysis would be onerous for either party. Moreover, the resulting analysis would be created strictly for litigation purposes and therefore protected under the work product doctrine. Further, as defined by Plaintiff, "Text Records" refers to documents produced to QuoteWizard by Drips pursuant to the Global Agreement. Thus, these documents are not in QuoteWizard's possession, custody, or control for discovery purposes and QuoteWizard is in no better position to characterize or opine on these documents' contents than Plaintiff.
>
> Pursuant to these objections, QuoteWizard refers to the business records previously produced to Plaintiff in accordance with Fed. R. Civ. P. 33(d).
>
> **SUPPLEMENTAL ANSWER:** QuoteWizard refers to and incorporates its supplemental answer to Interrogatory No. 9 below without waiving the foregoing objections.

9. Please state all facts that support each of your affirmative defenses as to members of the putative class.

> **ANSWER:** QuoteWizard objects to this Interrogatory as it exceeds the number of interrogatories allowed under Fed. R. Civ. P. 33 as this is Plaintiff's 37th interrogatory. QuoteWizard further objects insofar as this Interrogatory is overly broad, unduly burdensome, seeks the mental impressions of QuoteWizard's attorneys, and seeks information protected by the attorney-client privilege. The putative class consists of millions of potential members. Compiling the facts in support of each affirmative defense as to several million consumers, particularly while discovery is ongoing, would work an oppressive burden on QuoteWizard.

5

Moreover, QuoteWizard has produced ample data in support of its affirmative defenses in discovery to date. Therefore, the burden in ascertaining the answer to this interrogatory is substantially the same for either party. QuoteWizard therefore refers to the business records previously produced to Plaintiff in accordance with Fed. R. Civ. P. 33(d). Moreover, QuoteWizard objects insofar as this Interrogatory is duplicative of discovery requests propounded by Plaintiff earlier in this litigation.

Subject to and notwithstanding these objections, QuoteWizard refers to the documents produced as part of its Supplemental Response to Plaintiff's eighth document request propounded as part of his Fourth Set of Requests for Production of Documents.

**SUPPLEMENTAL ANSWER:** QuoteWizard provides the following supplemental answer without waiving the foregoing objections.

QuoteWizard asserted 32 affirmative defenses in response to Plaintiff's First Amended Complaint. Of those 32 affirmative defenses, several concern only the individual plaintiff, whose individual claim was decided at summary judgment (*see, e.g.,* Affirmative Defenses 2, 7, 12, and 13), others invoke well-established legal doctrines (*see, e.g.,* Affirmative Defenses 5, 6, and 8), and others concern Plaintiff's class allegations (*see, e.g.,* Affirmative Defenses 15, 18, and 27). As such, several of QuoteWizard's affirmative defenses are either self-explanatory, or require further factual development through ongoing discovery. Moreover, federal courts examining comparably broad discovery requests have denied motions to compel responses thereto in the absence of greater specificity. *See, e.g., Aldapa v. Fowler Packing Co. Inc.*, 310 F.R.D. 583, 591 (E.D. Cal. 2015) ("Courts routinely disfavor overly broad discovery request that ask opposing parties to produce everything under the sun that relates to the ongoing litigation.") (denying motion to compel responses to discovery requests for all information in respect of affirmative defenses); *see also Lucero v. Valdez*, 240 F.R.D. 591, 594 (D. N.M. 2007) (opining that discovery requests are proper when they "do not encompass every allegation"). Similarly, the process employed by defense counsel to select the exact documents in support of affirmative defenses reveals mental impressions and legal opinions that constitute work product and are therefore privileged. *See Johnson v. Ocean Ships, Inc.*, No. C05-5615RJB, 2006 WL 2166192, *3 (W.D. Wash. July 31, 2006) (denying motion to compel response to discovery request for the "factual bas[e]s for each . . . affirmative defense[]") (citing *Spork v. Peil*, 759 F.2d 312, 315 (3d Cir. 1985)).

Moreover, the burdens associated with setting forth the facts in support of several of QuoteWizard's affirmative defenses are not proportional to the needs of the case because doing so would require individual inquiries into the circumstances concerning several million members of Plaintiff's putative class. For example, QuoteWizard maintains the affirmative defense that it reasonably relied on the good faith belief that each alleged class member had given valid prior express consent, invitation, or permission for QuoteWizard to contact them. QuoteWizard has produced ample data in discovery including, without limitation, records evidencing putative class members' consent to be contacted. These records obviate the need

6

for further elaboration and QuoteWizard refers to them in accordance with Fed. R. Civ. P. 33(d). To the extent Plaintiff purports to require more from QuoteWizard in this respect, QuoteWizard avers that there exists "no administratively feasible way" to do so. *See Bais Yaakov of Spring Valley v. ACT, Inc.*, 12 F.4th 81, 92 (1st Cir. 2021). A request for additional consent information, particularly where ample information has already been provided, is inappropriate insofar as this case is not yet in the class certification stage. *See Gusman v. Comcast Corp.*, 298 F.R.D. 592, 599 (S.D. Cal. 2014) (denying motion to compel further production of documents regarding prior express consent from TCPA class action defendant prior to filing of class certification motion).

The TCPA prohibits telephone solicitations to "residential telephone subscriber[s]." 47 C.F.R. § 64.1200(c). "Determining whether a wireless subscriber is a residential subscriber is fact intensive and requires a case-by-case review for instances of mixed business/residential use." *Miholich v. Senior Life Ins. Co.*, No. 21-cv-1123-WQH-AGS, 2022 WL 1505865, *3 (S.D. Cal. May 12, 2022) (internal quotations and citation omitted). Determining which numbers in the Text Records are not residential numbers would require millions of individualized inquiries and would therefore impose an undue burden on QuoteWizard, the scope of which is not proportional to the needs of the case. Subject to and notwithstanding these objections, QuoteWizard states that it only intended to purchase lead information associated with individual consumers rather than businesses. As just one example, thousands of messages, if not tens of thousands of messages, purportedly sent on behalf of Drips/QuoteWizard were likely not successfully delivered to the intended recipients and it is plausible that these deliveries failed because the target phone numbers were not in service at the time the messages were sent and, therefore, qualify as neither residential nor non-residential for TCPA purposes. The burden of making that determination for each undelivered message is the same for both parties.

Additionally, an "established business relationship for the purpose of telephone solicitations means a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party." 47 C.F.R. § 64.1200(f)(5). The "established business relationship" exception applies broadly to a myriad of potential transactions beyond the purchase of goods or services. *See generally Hand v. Beach Entertainment KC, LLC*, 456 F. Supp. 3d 1099, 1123 (W.D. Mo. 2020) and cases cited. QuoteWizard has produced ample data indicating consumers' consent to be contacted. In addition to contact information, several of these records contain information provided by the consumer for the purpose of furthering a commercial transaction (e.g., information concerning insurance coverage, etc.). These initial, voluntary contacts, coupled with any subsequent two-

7

way correspondence, form the bases of established business relationships. The burden of performing these individualized assessments by cross-referencing consent records and text records is the same for both parties.

QuoteWizard also maintains the affirmative defense that Plaintiff has neither Article III standing nor prudential standing to bring his claims on behalf of the proposed class. "To have standing, a plaintiff has to show three things: that she '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Laufer v. Acheson Hotels, LLC*, 50 F.4th 259, 266 (1st Cir. 2022) (quoting *Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc.*, 578 U.S. at 338. While injuries may be intangible for standing purposes, they "raise more of a question on whether there's an Article III case or controversy." *Laufer*, 50 F.4th at 268. "Every class member must have Article III standing in order to recover individual damages." *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2208 (2021). To date, Plaintiff has produced no documents or information tending to support the contention that *any* member of the proposed class has Article III standing. Even if the Court were to determine that Plaintiff has standing to bring claims on the proposed class members' behalf, the class members themselves do not have standing and therefore cannot recover. QuoteWizard has produced ample data in support of its consent-related affirmative defenses. QuoteWizard therefore refers to those records in accordance with Fed. R. Civ. P. 33(d). An index provided by QuoteWizard to Plaintiff provides the name of each filed produced in discovery as well as a corresponding description. QuoteWizard therefore refers to the files bearing descriptions "Consent data – inbound leads" and "Consent data – onsite leads." Answering this Interrogatory in the conventional manner would burden QuoteWizard in a manner substantially the same for both parties. Invocation of Rule 33(d) is therefore proper. *See United States ex rel. Martino-Fleming v. South Bay Mental Health Center, Inc.*, 332 F.R.D. 1, 6 (D. Mass. 2019); *see also Sabel v. Mead Johnson and Co.*, 110 F.R.D. 553, 555-556 (D. Mass. 1986).

QuoteWizard also maintains the affirmative defense that Plaintiff's class allegations for multiple damages are barred. Under the TCPA, a court may double or treble damages if it "finds that the defendant willfully or knowingly violated" the statute or the regulations promulgated thereunder. 47 U.S.C. § 227(b)(3). QuoteWizard avers that it did not commit any TCPA violations, let alone any willful or knowing violations. Therefore, Plaintiff's proposed class is not entitled to multiple damages. This is particularly true where QuoteWizard had valid consent to contact the putative class.

QuoteWizard also maintains the affirmative defense that Plaintiff's class allegations constitute impermissible fail-safe allegations. "A fail-safe class is 'one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim.'" *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 623 (E.D. Pa. 2015) (striking TCPA class allegations) (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir.

2012)). Paragraph 61 of Plaintiff's First Amended Complaint characterizes Class 2 as "All persons within the United States to whom: (a) two or more text telemarketing calls were sent via Drips; (b) promoting QuoteWizard's goods or services; (c) to a residential phone number that was listed on the National Do Not Call Registry for at least 30 days before the first call; (d) within any twelve-month period." For the reasons set forth in *Zarichny*, this constitutes a fail-safe class.

QuoteWizard also maintains several affirmative defenses in respect of the propriety of the putative class under Fed. R. Civ. P. 23. QuoteWizard reserves the right to elaborate on those defenses by way of its class certification briefing, which it will prepare in accordance with the relevant court order.

QuoteWizard also maintains the affirmative defense that venue is not proper in this Court for Plaintiff's class allegations. "[T]he plaintiff's choice of a forum becomes substantially less important when he sues representatively on behalf of a class[.]" *Firmani v. Clarke*, 325 F. Supp. 689, 691 (D. Del. 1971) (transferring class action to different venue even where named plaintiff was a resident of the jurisdiction in which the case was filed). Aside from the fact that Plaintiff alleges to be a Massachusetts resident, the breadth of the proposed class and other factors such as QuoteWizard's status as a non-resident defendant suggest that this case may be more appropriately heard in a different jurisdiction.

QuoteWizard also maintains the affirmative defense that it reasonably relied on the good faith belief that each alleged class member had given valid prior express consent, invitation, or permission for QuoteWizard to contact them. In support of this defense, QuoteWizard once again refers to its business records in accordance with Fed. R. Civ. P. 33(d). QuoteWizard avers that its good faith belief in having received consent mitigates its liability including, without limitation, for double or treble damages.

QuoteWizard provides this supplemental answer without waiving any of its rights or defenses and reserves the right to assert additional affirmative defenses once discovery includes. QuoteWizard also reserves the right to further substantiate its affirmative defenses in future briefings or other proceedings.

*Signatures on Following Page*

|  |  |
|---|---|
|  | As to objections, |
|  | QuoteWizard.com, LLC, |
|  | By its attorneys, |
|  | */s/ Kevin P. Polansky* |
|  | Kevin P. Polansky (BBO #667229) |
|  | kevin.polansky@nelsonmullins.com |
|  | Daniel M. Curran (BBO #709082) |
|  | Daniel.curran@nelsonmullins.com |
|  | Nelson Mullins Riley & Scarborough LLP |
|  | One Financial Center, Suite 3500 |
|  | Boston, MA 02109 |
|  | (t) (617)-217-4700 |
| Dated: July 7, 2023 | (f) (617) 217-4710 |

**CERTIFICATE OF SERVICE**

I, the undersigned, of the law offices of Nelson Mullins Riley and Scarborough LLP, attorneys for Defendant QuoteWizard.com, LLC, do hereby certify that I have served all counsel of record with copies of the below listed documents by electronic mail on July 7, 2023:

Documents: QuoteWizard's Supplemental Answers to Plaintiff's Fourth Set of Interrogatories

                                                                                          */s/ Kevin P. Polansky*
                                                                                          Kevin P. Polansky

## VERIFICATION

The undersigned states that he/she holds the position of Director of Media Partnerships for QuoteWizard.com, LLC. The matters stated in the foregoing interrogatories are not all within his/her personal knowledge and there is no such person who has personal knowledge of all such matters. As a result, the facts as stated in said supplemental responses have been assembled by authorized individuals of QuoteWizard.com, LLC. The undersigned is informed and believes that the facts stated in said supplemental responses are true and so states under the pains and penalties of perjury.

Signed under pains and penalties of perjury on the 7th day of July 2023.

*Matthew Weeks*
DocuSigned by: D61421656E0C47F...

Matthew Weeks

Director of Media Partnerships