**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| JOSEPH MANTHA on behalf of himself and others similarly situated, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 1:19-cv-12235-LTS-PK |
| v. | : | |
| | : | |
| QUOTEWIZARD.COM, LLC | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |
| | : | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL**

**I.      Introduction**

After more than five years of contested litigation—including extensive discovery, class certification, and appeals—the Parties have reached a Class Action Settlement Agreement and Release (the "Settlement" or "Agreement") that provides meaningful and immediate relief to the Settlement Class. A copy of the Settlement is attached as Exhibit A. The Settlement requires Defendant QuoteWizard.com, LLC ("QuoteWizard") to pay $19,000,000 into a non-reversionary Settlement Fund, from which Settlement Class Members will receive pro-rata Cash Awards based on the number of qualifying texts they received, after deduction of Settlement Costs. The Settlement also includes prospective relief, requiring QuoteWizard to retain, at its own expense, a compliance company to audit and monitor its telemarketing practices for three years following Final Approval.

The Settlement is exceedingly fair and well within the range of approval for several independent reasons.

*First*, it provides immediate and substantial monetary relief for Settlement Class Members, whose recovery—if any—would otherwise be uncertain. QuoteWizard continues to deny liability and maintains it would prevail at trial. Further litigation would involve the risks of defending the class certification order on appeal and the possibility that prevailing on the merits might yield no recovery or a lesser one. The Settlement avoids these risks and secures guaranteed, timely relief for Class Members.

*Second*, the Settlement was reached only after substantial investigation, contested motion practice, arm's-length negotiations, and multiple mediations facilitated by Bruce A. Friedman of JAMS in Los Angeles. The Parties continued negotiations for over three months after a formal mediation session on November 13, 2024 and conducted a thorough review of QuoteWizard's financial condition. The Parties then convened for a second mediation on April 26, 2025 with Mr. Friedman and reached the terms set forth in the Settlement. These facts support the conclusion that the Settlement is the product of serious, informed, and non-collusive negotiations.

Because the Settlement is fair, reasonable, and adequate, Plaintiff respectfully requests that the Court: (1) preliminarily approve the Settlement; (2) approve the Notice Plan and direct that Notice be disseminated to the Settlement Class; (3) appoint the Settlement Administrator as set forth in the Agreement; and (4) schedule a Final Approval Hearing.

## II.    Factual and Procedural Background

Plaintiff Joseph Mantha filed this action on October 29, 2019, alleging that QuoteWizard.com, LLC violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, by initiating telemarketing texts to his cell phone number despite its inclusion on the National Do Not

Call Registry (ECF No. 1). The Complaint alleged violations of the Do Not Call regulations (47 C.F.R. § 64.1200(c)) and of the TCPA's restriction on use of an automatic telephone dialing system (ATDS). However, following the Supreme Court's decision in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021), the parties stipulated to the dismissal of Plaintiff's ATDS claim (ECF No. 187). The DNC claim proceeded.

Over the next several years, the parties engaged in extensive litigation, with over 387 docket entries. This included over 20 filings regarding discovery disputes, briefing and argument on cross-motions for summary judgment (ECF Nos. 201, 205), voluminous evidentiary submissions (e.g., ECF Nos. 204, 207–208, 220–221), and multiple motions to strike (ECF Nos. 219, 222, 227–229). Over the course of discovery, Plaintiff's counsel issued 30 subpoenas, took and defended 23 depositions and reviewed over 6,000 documents. Declaration of Edward A. Broderick ¶ 3, attached as Exhibit B.

On December 13, 2021, Magistrate Judge Kelley issued a Report and Recommendation recommending denial of QuoteWizard's motion for summary judgment and partial grant of Plaintiff's motion (ECF No. 258), which this Court adopted on February 3, 2022 (ECF No. 268). Following the summary judgment rulings, the Court adopted a new discovery schedule (ECF No. 271-272). After the completion of class certification discovery, Plaintiff moved for class certification on January 12, 2024 (ECF No. 339). QuoteWizard opposed class certification (ECF No. 348) and moved to exclude Plaintiff's expert testimony under *Daubert* (ECF No. 348-349). On August 16, 2024, the Court granted Plaintiff's motion for class certification and denied QuoteWizard's motion to exclude the expert's testimony (ECF No. 368). The Court subsequently approved Plaintiff's proposed notice plan (ECF No. 385) and denied QuoteWizard's motion to re-open discovery (ECF No. 380). Plaintiff successfully opposed Defendant's Rule 23(f) petition to

appeal the class certification decision. (ECF No. 386). Finally, Plaintiff successfully opposed Defendant's Motion to Re-Open Discovery and for Leave to Serve Limited Interrogatories on Class Members. (ECF 385).

While the parties were preparing for trial, they mediated with Bruce Friedman of JAMS, which resulted in the settlement before this Court.

### III.    Summary of the Settlement Terms

The proposed settlement resolves a certified class action brought under the Telephone Consumer Protection Act, 47 U.S.C. § 227, on behalf of consumers who received multiple unsolicited telemarketing texts promoting QuoteWizard's services. The settlement class is identical to the class certified by the Court, and consists of all persons within the United States (a) whose telephone numbers were listed on the National Do Not Call Registry, and (b) who received more than one telemarketing text within any twelve-month period at any time from Drips, (c) to promote the sale of QuoteWizard's goods or services, and (d) whose numbers are included on the Class List. The relevant period runs from October 29, 2015 through the date of preliminary approval. *See* Class Action Settlement Agreement at ¶ 2.23.

The settlement provides for a non-reversionary common fund of $19 million. *Id.* at ¶ 2.28. Following deductions for Court-approved attorneys' fees and litigation costs, any service award to the named plaintiff, and administration costs, the remainder of the fund will be distributed to class members. *Id*. at ¶ 4.01.

Each class member will be awarded one "share" for each qualifying text message received, and class members will recover according to the number of text messages that they received. *Id*. at ¶ 5.04. The anticipated minimum recovery per class member of $76.00 falls within the reasonable and meaningful range for statutory TCPA damages, particularly given the absence of

any claim requirement and the guaranteed distribution of the entire fund. Further, given that Settlement Class Members have waited nearly a decade in some instances for compensation for their receipt of unwanted text messages, the Settlement envisions two payments to settlement class members. The first distribution (for one-third of the total amount) will occur 21 days after the first portion of the settlement is funded,[1] with the remaining distribution to issue 21 days after the final funding payment is made.[2] *Id.* at ¶ 5.04.

In addition to the payout, QuoteWizard will retain, at its own expense, a compliance company and/or third-party law firm to audit QuoteWizard's procedures to ensure going forward that QuoteWizard's consent language and process for obtaining consent is TCPA compliant. *Id.* at ¶ 4.05. The compliance company and/or third-party law firm should monitor QuoteWizard's procedures for a period of three years following final approval of the settlement to ensure compliance with state and federal telemarketing law. *Id.*

Plaintiff intends to seek a service award of $100,000 in recognition of the time and effort he invested over five years of litigation, including discovery and the contested class certification proceedings. The Plaintiff was deposed, his *wife and employer were deposed*, and he responded to multiple sets of discovery. His pursuit of the class was steadfast. Class Counsel will also separately petition the Court for an award of reasonable attorneys' fees and litigation expenses, not to exceed one-third of the common fund, plus expenses of approximately $322,000.

In exchange for the relief provided, settlement class members will release all claims arising out of the telemarketing texts at issue, including claims under the TCPA and related state and federal telemarketing laws. Settlement, Section 13. The release extends to any claims that were or

---

[1] If approval is granted, this would be in the fall of 2025.

[2] QuoteWizard is permitted to pay earlier, but this payment will be made by April 2026.

could have been asserted based on the same alleged conduct, and is limited to texts and/or calls made by or on behalf of QuoteWizard promoting its goods or services. *Id.*

In a noteworthy departure from the typical navigation of class action administration, *no claim form is required to receive a payment*. The Settlement Administrator will use the list of qualifying numbers—identified through third-party expert analysis of call records—to automatically issue payments. Notices will be sent by postcard and email, with address updates and skip tracing procedures in place to ensure deliverability. A dedicated settlement website and toll-free number will provide further information and allow class members to view case documents, check on payment timing, and confirm their inclusion.

The settlement also complies with the Class Action Fairness Act, 28 U.S.C. § 1715. Notice will be provided to the appropriate federal and state officials, and final approval will not be sought until at least 90 days have passed from the date of notice.

This settlement represents a significant recovery in light of the litigation risks, the potential challenges of establishing liability and damages at trial, and the significant likelihood of delay were the case litigated to final judgment. It was reached only after multiple mediation sessions overseen by an experienced neutral, and after the exchange of substantial discovery and expert analysis. Class Counsel respectfully submits that the settlement is fair, reasonable, and adequate, and merits preliminary approval under Rule 23(e).

## IV.    The Form and Method of Notice

Notice and Administration Expenses will be exclusively paid from the Settlement Fund. The Parties have agreed upon, and propose that the Court approve, the nationally recognized class action administration firm of AB Data, Ltd. to be the Settlement Administrator, to implement the Class Notice, and to administer the Settlement, subject to review by counsel and the Court. (Agreement. ¶ 2.17).

Federal Rule of Civil Procedure 23(e)(1) "provides that, in the event of a class settlement, '[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal.'" *Hill v. State St. Corp.*, No.1:09-cv-12146-GAO, 2014 U.S. Dist. LEXIS 179702, *36 (D. Mass. 2014) (quoting Fed. R. Civ. P. 23(e)(1)). "Federal Rule of Civil Procedure 23(c)(2)(B) provides that notice of the pendency of a class action certified under Rule 23(b)(3) must be 'the best notice that is practicable under the circumstances.'" *Hill*, 2014 U.S. Dist. LEXIS 179702 at *36. "At a minimum, notice must inform class members of '(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).'" *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 336 (D. Mass. 2015) (quoting Fed. R. Civ. P. 23(c)(2)). Second, Rule 23(e) requires notification to all members of the class of the terms of any proposed settlement.

Here, the proposed notices, including the Postcard Notice and the Long-Form Notice on the Settlement Website, provide detailed information about the Settlement, including: (1) a comprehensive summary of its terms; (2) Class Counsel's intent to request attorneys' fees,

reimbursement of costs and expenses, and a service award for the Plaintiff; and (3) detailed

information about the Released Claims.  (*See* Agreement, Exhibits B-C).  In addition, the notices

provide information about the Final Approval Hearing date, the right of Settlement Class

Members to seek exclusion from the Settlement Class or to object to the proposed Settlement (as

well as the deadlines and procedure for doing so), and the procedure to receive additional

information.  *Id.*  In short, the notices are intended to fully inform Settlement Class Members of

the lawsuit, the proposed Settlement, and the information they need to make informed decisions

about their rights.

When possible, individual notice should be attempted to all class members who can be

identified through reasonable efforts. *See In re Asacol Antitrust Litig.*, No. 1:15-cv-12730 (DJC),

2017 U.S. Dist. LEXIS 221904, *11 (D. Mass. 2017). Here, Postcard Notice will be sent to each

Settlement Class Member using the same database utilized for notice after the class was certified.

Prior to mailing, the Settlement Administrator will attempt to update the last known address of

the Class Members through the National Change of Address database. Each notice will also

direct Class Members to a Long-Form Notice which will be available via a case-dedicated

website. Accordingly, the proposed form and manner of notice are reasonable and adequate, in

accord with due process and Rule 23, and should be approved.

V.    **ARGUMENT**

A.    **The Settlement Agreement Should Be Preliminarily Approved as at Final
Approval it is Likely that the Court will Conclude the Settlement is Fair,
Reasonable and Adequate**

The First Circuit Court has long recognized that there is an overriding public interest in

favor of settling class actions, *Lazar v. Pierce,* 757 F.2d 435, 439 (1st Cir. 1985); *see In re*

*Lupron Mktg. and Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) ("the law favors class action settlements").

In addition, "[t]here is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for Court approval." H. Newberg, A. Conte, Newberg on Class Actions (4th ed. 2002), §11.41. This is especially true when those negotiations involved a mediator. *See Lapan v. Dick's Sporting Goods, Inc.,* No. 1:13-cv-11390-R, 2015 U.S. Dist. LEXIS 169508, at *3 (D. Mass. Dec. 11, 2015) ("The assistance of an experienced mediator…reinforces that the Settlement Agreement is non-collusive.").

Under Rule 23(e)(1)(B), a court may "grant preliminary approval of a proposed class action settlement—and hence send notice of it to the class—as long as the moving parties demonstrate that the court 'will likely be able to' grant final approval to the settlement." Rubenstein, *Newberg on Class Actions* (6th ed.) § 13:14 (quoting Fed. R. Civ. P. 23(e)(1)(B)). In 2019, Rule 23 was amended to list the specific factors a court must consider in evaluating whether to approve a class action settlement. A court may "authorize[] final approval only upon a showing that the settlement is 'fair, reasonable, and adequate,' made after a consideration of four factors." *Newberg,* § 13:14 (quoting Fed. R. Civ. P. 23(e)(5)). *Id.* The four factors are whether:

**(A)** the class representatives and class counsel have adequately represented the class;

**(B)** the proposal was negotiated at arm's length;

**(C)** the relief provided for the class is adequate, taking into account:

> **(i)** the costs, risks, and delay of trial and appeal;
>
> **(ii)** the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> **(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and

9

**(iv)** any agreement required to be identified under Rule 23(e)(3); and

**(D)** the proposal treats class members equitably relative to each other.

*Id.*[3]

Plaintiffs address these factors below.

**B. The Class has been Adequately Represented, and the Settlement Resulted from Arm's Length Negotiations and is Not the Product of Collusion.**

The Rule 23(e)(5)(A) and (B) factors of adequate representation and arms-length negotiation are procedural in nature, and do not look substantively at the settlement terms. This Court addressed adequacy of representation (23(e)(5)(A)) in its class certification order

That adequacy finding has been borne out by the extraordinary lengths to which class counsel and the class representative have gone to achieve this settlement, as outlined above. Further, the class representative has maintained his obligations to diligently represent the class, responding to Defendant's discovery and sitting for lengthy depositions.

The requirement of arms-length negotiation generally looks to the procedural posture of the case to determine if it is the subject of legitimate, informed negotiations. *Newberg* § 13:14. As the Advisory Committee's notes to the 2018 amendments state, "[T]he nature and amount of discovery . . . may indicate whether counsel negotiating on behalf of the class had an adequate information base." Fed. R. Civ. P. 23(e)(2) Adv. Comm. note to 2018 amendment. Here, years of discovery not only had been completed when the parties negotiated this settlement, but so had a Rule 23(f) petition been briefed and opposed. Trial was only months away, and Plaintiff already carried out notice of the certification to all class members. By the time the Settlement was reached, Plaintiff and Settlement Class Counsel, who are experienced in bringing TCPA class

---

[3] According to the leading treatise, these new provisions "essentially codified" the courts' prior jurisprudence governing preliminary settlement approval processes and standards, and therefore are "unlikely to generate a significant change in the settlement process or outcome." *Newberg* § 13:14.

actions, had "a clear view of the strengths and weaknesses" of their case. *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985). In sum, through their own investigation, Plaintiff and his counsel are in a strong position to make an informed decision on the merits of recommending the settlement, as they had a "full understanding of the legal and factual issues surrounding [the] case." *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996). Class Counsel all believe that the Settlement represents an excellent result for the class and merits preliminary approval. See Declarations of Counsel at Ex. B to F. This strongly supports settlement approval.

C.      **The Relief is Adequate and all class members are treated equitably**

A district court "can approve a class action settlement if it is fair, adequate and reasonable." *City Pshp. Co. v. Atlantic Acquisition*, 100 F.3d 1041, 1043 (1st Cir. 1996), quoting *Durrett v. Housing Auth. of City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990). At the preliminary approval stage, this Court need only be satisfied that there is "probable cause" to believe that the settlement is fair and reasonable. *Id.*

The question for this Court is whether the settlement falls well within the range of possible approval and is sufficiently fair, reasonable and adequate to warrant dissemination of notice apprising class members of the proposed settlement and to establish procedures for a final settlement hearing under Rule 23(e). In determining whether class action settlements should be approved, "[c]ourts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement. [Citation omitted] . . . They do not decide the merits of the case or resolve unsettled legal questions." *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

Under the Settlement Agreement, each Settlement Class Member will each receive a minimum of approximately $76.00, plus $38.00 per text additional text received, assuming this Court grants the requested administration expenses, attorneys' fees and costs, and a service award. Again, *there is no claims process*. All class members are treated equitably and indeed identically. The Settlement was achieved only after utilizing the efforts of an experienced and sophisticated mediator in Bruce Friedman of JAMS who has helped resolve numerous TCPA class actions.

The value of the Settlement and proposed award of attorneys' fees is squarely in line with other TCPA settlements. For example, in *Vasco v. Power Home Remodeling Group LLC*, No. 15-cv-4623, 2016 U.S. Dist. LEXIS 141044 (E.D. Pa. Oct. 12, 2016), the Court approved a TCPA class action settlement that provided for payments of $27 per claimant. There, the court found that "[t]his amount is consistent with other class action settlements under the Act." *Id.* at *23.[4] Similarly, in *Gehrich v. Chase Bank U.S.A., N.A.*, 316 F.R.D. 215 (N.D. Ill. March 2, 2016), another court approved a TCPA class action settlement. There, the court found that "[t]he actual recovery per claimant is approximately $52.50." *Id.* at 23. Although "that recovery is well below the $500 statutory recovery available for each call," the court found that "the recovery falls well within the range of recoveries in other recent TCPA class actions." *Id.* As the court in *Gehrich* held, "'[t]he essential point here is that the court should not 'reject[]' a settlement 'solely because it does not provide a complete victory to plaintiffs,' for 'the essence of settlement is compromise.'" *Id.*

---

[4] *See also Kolinek v. Walgreen Co.*, No. 13-cv-4806, 2015 WL 7450759, at *7 (N.D. Ill. Nov. 23, 2015) ($30); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) ($34.60).

Although Plaintiff's request for attorneys' fees will be the subject of a separate motion, Plaintiff notes that attorney fee award of one third of a settlement are routine in cases under the TCPA, particularly when supported by the amount of attorney time that was expended in this action. *See Kondash v. Citizens Bank*, No. 18-cv-00288-WES-LDA, 2020 U.S. Dist. LEXIS 241588, at *15 (D.R.I. Dec. 23, 2020) (calling request for one third of settlement fund "eminently reasonable."); In TCPA cases, awards of one-third of the entire settlement fund are commonplace. *See Martin v. Dun & Bradstreet, Inc.*, No. 12-215 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (Dkt. No. 63) (one-third of total payout); *Hanley v. Fifth Third Bank*, No. 12-1612 (N.D. Ill.) (Dkt. No. 87) (awarding attorneys' fees of one-third of total settlement fund); *Cummings v. Sallie Mae*, No. 12-9984 (N.D. Ill. May 30, 2014) (Gottschall, J.) (Dkt. No. 91) (one-third of common fund); *Dakota Med., Inc. v. RehabCare Grp., Inc.*, No. 114CV02081DAD, 2017 WL 4180497, at *9 (E.D. Cal. Sept. 21, 2017) (approving "an award of one-third of the $25 million settlement fund, or $8,333,333").

Finally, as discussed above, a payout is not the only benefit that Settlement Class Members will receive. QuoteWizard will retain, at its own expense, a compliance company and/or third-party law firm to audit QuoteWizard's procedures to ensure going forward QuoteWizard's consent language and process for obtaining consent complies with the TCPA. *See* Settlement Agreement at ¶ 4.05. The compliance company and/or third-party law firm should monitor QuoteWizard's procedures for a period of three years following final approval of the settlement to ensure compliance with state and federal telemarketing law. *Id*.

### D.    Continued Litigation Came with Significant Risks

The expense, complexity and duration of litigation are significant factors considered in evaluating the reasonableness of a settlement. If approved, the Settlement would bring a sure end to what would be contentious and costly litigation with substantial risk.

First, after this case was filed, the Supreme Court assessed the constitutionality of the TCPA in *Barr v. Am. Ass'n of Political Consultants (AAPC),* 140 S. Ct. 2335, 207 L. Ed. 2d 784 (2020) (July 6, 2020). At issue in that case was a 2015 congressional amendment to the TCPA's general robocall restriction to permit robocalls made to collect debts owed to or guaranteed by the federal government. In *Barr*, the Supreme Court struck that down as an unconstitutional content-based restriction on speech and severed it from the rest of the statute. *Id.* However, defendants in TCPA cases have argued that the Supreme Court's fractured decision in *Barr* amounts to an adjudication that the entirety of § 227(b)(1)(A)(iii) was unconstitutional from the moment Congress enacted the offending government-debt exception to the moment the Supreme Court severed that exception to preserve the rest of the law. Indeed, at least two federal courts has adopted this interpretation. *See Lidenbaum v. Realgy, LLC*, No. 1:19 CV 2862, 2020 U.S. Dist. LEXIS 201572 (N.D. Ohio Oct. 29, 2020); *Creasy v. Charter Communs., Inc.,* No. 20-1199, 2020 U.S. Dist. LEXIS 177798, at *2 (E.D. La. Sep. 28, 2020).

Second, a significant portion of this case was *lost* following the Supreme Court's decision in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021). Indeed, the parties stipulated to the Dismissal of Plaintiff's ATDS claim (ECF No. 187).

In addition, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards — even after a plaintiff has prevailed on the merits — on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons – Algonquin, Inc.*, No. 09-910, 2011 WL

1706061, at \*4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights …. Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."). Moreover, the narrative of the Defendant's telemarketing compliance efforts could present a case for reduction of any damages awarded after trial and some courts have applied this principle in the TCPA context. For example, in *Golan v. Veritas Entm't, LLC*, the court reduced the damages awarded in that TCPA class action lawsuit to $10 a call. *Golan v. Veritas Entm't, LLC*, No. 4:14CV00069 ERW, 2017 U.S. Dist. LEXIS 144501, at \*6-9 (E.D. Mo. Sep. 7, 2017).

Interpretations of the TCPA are ever-evolving and notoriously unpredictable, further injecting uncertainty into the outcome. And even had Plaintiff succeeded on the merits and prevailed on appeal, a reduction in statutory damages was possible. *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1125 (9th Cir. 2022) (vacating "the district court's denial of the defendant's post-trial motion challenging the constitutionality of the statutory damages award to permit reassessment of that question guided by the applicable factors.").

Finally, the collection of any judgment in this case was not without risk. QuoteWizard is a subsidiary of Lending Tree, Inc. (Lending Tree") and Lending Tree denied that it was liable for any debts of QuoteWizard. A bankruptcy filing by QuoteWizard could have fatally undermined this action. QuoteWizard and its parent company's finances are not unlimited, and securing certain payment strongly supports approval of the Settlement.

**E.   There is no agreement required to be Identified under Rule 23(e)(3)**

As is attested to by the Declaration of Edward A. Broderick, There is no agreement between Defendant, Plaintiff or his counsel required to be disclosed pursuant to Fed. R. Civ. 23(e)(3).

15

Broderick Declaration ¶ 5.

## VII.    The Court Should Certify a Settlement Class

The Supreme Court has made clear that even when the Court determines that a settlement is fair under the strictures of Fed. R. Civ. P. 23(e), it still must consider whether a class can be preliminarily certified under Rules 23(a) and (b). *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 619-21 (1997); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 858 (1999). However, this Court has previously certified a settlement class. Because the Settlement Class is identical to the adversary class already certified by the Court, the requirements of Rule 23(a) and (b) are met. ECF 368.

## VIII. Schedule

In connection with the Court's Preliminary Approval of the Settlement, Plaintiff respectfully requests that the Court schedule a Final Approval Hearing and set related deadlines consistent with the Class Action Settlement Agreement. The Settlement's implementation timeline is anchored to the entry of the Preliminary Approval Order and the Notice Date. Plaintiff proposes the following schedule, which is consistent with Rule 23(e) and provides adequate time for notice,

claims, objections, and administration:

| Event | Proposed Deadline |
|---|---|
| **Notice Date** | 30 days after entry of Preliminary Approval Order |
| **Deadline for Class Counsel's Fee and Expense Motion** | No fewer than 35 days before the Opt-Out and Objection Deadline |
| **Opt-Out and Objection Deadline** | 45 days after the Notice Date |
| **Deadline to File Motion for Final Approval** | No fewer than 14 days before the Final Approval Hearing |
| **Deadline for Responses to Objections** | No fewer than 7 days before the Final Approval Hearing |
| **Final Approval Hearing** | Approximately 120 days after entry of Preliminary Approval Order |

These proposed deadlines align with the Settlement Agreement's definitions (see §§ 2.19–2.20, 2.30), provide sufficient notice and due process to the Class, and ensure that Settlement Class Members have adequate time to assess the Settlement and file claims, objections, or opt-outs before the Final Approval Hearing. Plaintiff respectfully requests that the Court adopt this schedule in its Preliminary Approval Order and set the Final Approval Hearing accordingly.

**CONCLUSION**

For the reasons stated above, Plaintiff Joseph Mantha and Class Counsel respectfully request that the Court:

1. Grant preliminary approval of the proposed Settlement;

2. Preliminarily approve the terms of the Settlement as fair, reasonable, and adequate;

3. Provisionally certify the Settlement Class under Federal Rule of Civil Procedure 23(b)(3) and 23(e) for settlement purposes only;

4. Approve the proposed Notice Plan and the form and content of the Notices;

5. Approve the procedures for Settlement Class Members to request exclusion or object to the Settlement;

6. Appoint Joseph Mantha as Class Representative;

7. Appoint Bailey & Glasser LLP, the Law Office of Matthew P. McCue, Broderick Law, P.C., and Paronich Law, P.C. as Class Counsel; and

8. Schedule a Final Approval Hearing to determine the fairness of the Settlement, whether it was reached in good faith, and whether to grant final approval, including approval of Class Counsel's application for attorneys' fees, costs, and a service award to the Class Representative.

| Dated: May 22, 2025 | Respectfully Submitted: |
|---|---|
|  | */s/ Edward A. Broderick*<br>Edward A. Broderick<br>BRODERICK LAW, P.C.<br>10 Hillside Avenue<br>Winchester, MA 01890<br>(617) 738-7080<br>ted@broderick-law.com |

|  | John W. Barrett<br>BAILEY & GLASSER LLP<br>209 Capitol Street<br>Charleston, WV 25301<br>(304) 345-6555<br>jbarrett@baileyglasser.com<br><br>Matthew P. McCue<br>THE LAW OFFICE OF MATTHEW P. MCCUE<br>1 South Avenue, Suite 3<br>Natick, MA 01760<br>(508) 655-1415<br>mmccue@massattorneys.net<br><br><br>Anthony Paronich<br>PARONICH LAW, P.C.<br>350 Lincoln St., Suite 2400<br>Hingham, MA 02043<br>(617) 485-0018<br>anthony@paronichlaw.com<br><br>Alex M. Washkowitz<br>CW LAW GROUP, P.C.<br>160 Speen Street, Suite 309<br>Framingham, MA 01701<br>alex@cwlawgrouppc.com |
|---|---|

## **Certificate of Service**

I hereby certify that on May 22, 2025 I filed the foregoing vias the Court's CM/ECF system which will effect service on all counsel of record.

*Edward A. Broderick*
Edward A. Broderick

Dated: May 22, 2025