**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

JOSEPH MANTHA, on behalf of himself and
others similarly situated,

     Plaintiff,                                  Case No. 1:19-cv-12235-LTS-PK

v.


QUOTEWIZARD.COM, LLC,

     Defendant.

**PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND**
**EXPENSES AND FOR A SERVICE AWARD FOR THE CLASS REPRESENTATIVE**

# I.  <u>INTRODUCTION</u>

Plaintiff Joseph Mantha ("Plaintiff" or "Mr. Mantha") and Class Counsel respectfully file this motion to request a service award as well as an award of attorneys' fees and expenses.[1] After five years of hotly contested litigation, a proposed settlement has been achieved of class members' claims against QuoteWizard.com, LLC ("Defendant" or "QuoteWizard"). On May 22, 2025, the Court granted preliminary approval of a $19,000,000 non-reversionary settlement fund to be distributed to a nationwide class (the "Settlement"). This is believed to be the largest TCPA settlement in Massachusetts history. Broderick Decl. ¶ 4 and Doc. No. 391.[2]

Plaintiff now respectfully requests an attorneys' fee award of one-third of the settlement ($6,333,333.33, plus one third of any interest) and $322,289.21 in expenses. Class Counsel ask that this Court also recognize the exemplary conduct of Mr. Mantha on behalf of the class with a service award of $100,000.00.

The cash payments to class members are substantial; if the Court awards the requested fees, costs, and service award, class members will receive cash payments of $76 to $1,520, calculated at $38 per text received, all *without having to file claims*. Crucially, the Settlement also requires QuoteWizard to take steps to ensure that telemarketing conducted on its behalf going forward is compliant with the TCPA, itself a substantial benefit to Settlement Class Members.

---

[1] Plaintiff and Class Counsel respectfully request that action on this motion be deferred until the Final Approval hearing set on September 29, 2025 at 2:00 p.m.

[2] All capitalized terms not defined herein have the meanings set forth in the Parties' Settlement Agreement ("Settlement" or "Agreement"), filed at Doc. No. 389-1.

## II.    BACKGROUND OF THE CASE

Plaintiff filed this action on October 29, 2019, alleging that QuoteWizard violated the TCPA, by initiating telemarketing texts to his cell phone number despite its inclusion on the National Do Not Call Registry ("NDNC") (Doc. No. 1). The Complaint also alleged violations of the TCPA's restriction on use of an automatic telephone dialing system (ATDS). However, following the Supreme Court's decision in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021), the parties stipulated to the dismissal of Plaintiff's ATDS claim (Doc. No. 187). The DNC claim proceeded.

Over the next several years, the parties engaged in extensive litigation, with over 387 docket entries. The litigation was marked by Defendant's claim from the outset of the case that it had unimpeachable proof that Mr. Mantha had given his "prior express written consent" for QuoteWizard to send him telemarketing messages notwithstanding that his telephone number was listed on the NDNC. Indeed, it sent a Rule 11 letter to this effect. In the face of this threat, the Plaintiff continued to dispute the purported consent. At QuoteWizard's insistence, discovery was bifurcated with what was supposed to be an abbreviated discovery period leading to summary judgment as to Mr. Mantha's purported consent. The individual phase of the case, however occupied 268 docket entries and three years of litigation. This included over 20 filings regarding discovery disputes, briefing and argument on cross-motions for summary judgment (Doc. Nos. 201, 205), voluminous evidentiary submissions (e.g., Doc. Nos. 204, 207–208, 220–221), and multiple motions to strike (Doc. Nos. 219, 222, 227–229). Over the course of discovery, Plaintiff's counsel issued 30 subpoenas, took and defended 23 depositions and reviewed over 6,000 documents. Declaration of Edward A. Broderick ¶ 3. Indeed, in ruling on a motion to transfer a third-party subpoena action, this Court observed that:

> [A]s general matter discovery in this lawsuit has been litigated with exceptional vigor as reflected in the quite large number of filings on the docket for a case still deeply in discovery, the number of arguments advanced, as well as the various appeals whether to the undersigned (from the magistrate judge) of to the First Circuit (from the undersigned).

(Doc. No. 286).

On December 13, 2021, Magistrate Judge Kelley issued a Report and Recommendation recommending denial of QuoteWizard's motion for summary judgment and grant of Plaintiff's partial motion for summary judgment (Doc. No. 258), which this Court adopted over Defendant's objection on February 3, 2022 (Doc. No. 268). Following the summary judgment rulings, the Court adopted a new discovery schedule for class certification (Doc. No. 271-272).

After the completion of class certification discovery, expert discovery and multiple rounds of expert discovery and reports, Plaintiff moved for class certification on January 12, 2024 (Doc. No. 339). QuoteWizard opposed class certification (Doc. No. 348) and moved to exclude Plaintiff's expert testimony under *Daubert* (Doc. No. 348-349). On August 16, 2024, the Court granted Plaintiff's motion for class certification and denied QuoteWizard's motion to exclude the expert's testimony (Doc. No. 368). The Court subsequently approved Plaintiff's proposed notice plan (Doc. No. 385). Plaintiff successfully opposed Defendant's Rule 23(f) petition to appeal the class certification decision. (ECF No. 386). Finally, Plaintiff successfully opposed Defendant's Motion to Re-Open Discovery and for Leave to Serve Limited Interrogatories on Class Members. (Doc. 385).

While the parties were preparing for trial, they conducted two mediations with Bruce Friedman of JAMS, which resulted in the settlement before this Court.

## III.    ARGUMENT

### A.  The Court Should Approve a Fee Award from the Settlement Fund

The TCPA is not a fee-shifting statute. *Bais Yaakov of Spring Valley v. ACT, Inc*., 798 F.3d 46, 47 n.1 (1st Cir. 2015). Therefore, Class Counsel respectfully request a fee award from the Settlement Fund. The right of Class Counsel to be paid from a settlement fund derives from the long-accepted principal that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

The First Circuit has held that in contingent fee cases, the "percentage of the fund" approach is appropriate because it is easy to administer, reduces the possibilities of collateral disputes, enhances judicial efficiency, is less taxing on judicial resources and "better approximates the workings of the marketplace." *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig*., 56 F.3d 295, 307 (1st Cir. 1995).

### B.    The Requested Fee of One-Third of the Settlement Fund is Fair

In this Court and in the First Circuit, an award of one-third the common fund has been held to be appropriate in class action cases. *See, e.g. Dahl, et al. v. Bain Capital Partners, LLC, et al.*, 07-cv-12388-WGY (D. Mass. Feb. 2, 2015) (awarding 33 1/3 percent of Settlement Fund) (Dkt. 1095); *In re Loestrin 24 Fe Antitrust Litig*., 1:13-md-2472- WES-PAS, 2020 WL 4035125 at *4-5 (D.R.I. July 17, 2020) *report and recommendation adopted*, No. 1:13-md-2472- WES-PAS, ECF No. 1462 (D.R.I. Sept. 1, 2020) (awarding 1/3 of fund); *In re Relafen Antitrust Litig*., 231 F.R.D. 52, 77-82 (D. Mass. 2005) (approving 1/3 fee award).

As Judge Young explained in *Relafen*, "[t]he First Circuit has not endorsed a specified set of factors to be used in determining whether a fee request is reasonable" but noted that factors bearing on the reasonableness of a fee request include:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Relafen*, 231 F.R.D. at 79 (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3rd Cir. 2000)). Class counsel employs those factors here and as shown below, they strongly support the requested one-third fee as appropriate, fair and reasonable.

### C.    The Size of the Fund Created and Number of Persons Benefitted

This Settlement is one of the largest TCPA class action settlements in recent years and is the largest in Massachusetts federal court history. Broderick Decl. at ¶ 4. The proposed Settlement Class includes approximately 66,693 unique telephone numbers who received 314,828 text messages. Doc. No. 340 at 8. Subject to the Court's final approval, Settlement Class Members will receive an equal payment share of the net Settlement Fund (after deducting fees, expenses, and any Court-approved Service Award) per text received. Doc. No. 389-1, ¶ 5.04.  If the Court approves the fees and costs requested and the Service Award, the distribution to each class member would be *a minimum* $76.00 with an additional $38 per text received, with the largest distribution being $1,520.  Doc. No. 389 at 12.  Such a distribution would exceed many other approved TCPA settlements, a factor that weighs heavily in favor of approving the requested fee.

What makes this settlement stand out from other TCPA settlements is that the payout here is to every class member, unlike in most settlements where class members must submit claims, a burden that typically results in only a fraction of class members actually receiving payment. A 2019 Federal Trade Commission study of class action settlements found that in cases requiring a claims process, the median calculated claims rate was 9%, and the weighted mean (*i.e.*, cases

weighted by the number of notice recipients) was 4%. *See Consumers and Class Actions, A Retrospective Analysis of Settlement Campaigns*, Federal Trade Commission, September 2019 at § 2.1 (p.11).[3]  Accordingly, when comparing the per class member settlement value of this case, the per class member value is actually 10 to 20 times more valuable on a per class member basis than cases requiring a claims process. Bearing in mind this fundamental distinction between this settlement and typical settlements involving a claims process, this case represents an extraordinary result for the Settlement Class. *See, e.g., Rose v. Bank of Am. Corp.*, No. 11-cv-02390-EJD, 2014 U.S. Dist. LEXIS 121641, at *30 (N.D. Cal. Aug. 29, 2014) ($20 to $40 to class members submitting claims); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) ($30 to class members submitting claims); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) ($34.60 to class members submitting claims).

### D.    Class Counsel's Skill and Efficiency

Class Counsel's skill, experience and efficient lawyering helped Plaintiff favorably settle his claim on behalf of himself and all other class members. The goal of the percentage fee-award is to ensure that competent counsel undertakes risky litigation to recover for plaintiffs who may otherwise go uncompensated. This is particularly true for TCPA cases where statutory fees are not available and the recovery to individual plaintiffs is insufficient to pay for costs and fees associated with complex TCPA litigation. *See Kondash v. Citizens Bank Nat'l Assoc.*, 2020 WL 7641785 * 3 (D.R.I.) (Dec. 23, 2020), *report and recommendation adopted,* 2021 WL 63409 (D.R.I) (Jan. 7, 2021) ("[T]he private right of action that Congress created could be moribund but for the availability of relief on a class-wide basis.")

In evaluating the skill and efficiency of class counsel, courts determine whether counsel,

---

[3] https://www.ftc.gov/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns (lasted visited July 2, 2025).

"had a sufficient understanding of the merits of the case in order to engage in informed negotiations, particularly where plaintiffs' counsel are skilled and experienced in consumer class action litigation[.]" *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 348 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015). Here, Class Counsel met that standard. Class Counsel are both skilled and experienced in the specialized fields of consumer class action, TCPA litigation and appellate law. *See* Broderick Decl. at ¶¶ 6-11; Exhibit 1; McCue Decl. at ¶¶ 7-14, Exhibit 2; Paronich Decl. at ¶¶ 6-10, Exhibit 3; Barrett Decl. at ¶¶ 2, Exhibit 4; Washkowitz Decl. at ¶¶ 6-8, Exhibit 5. Class Counsel in this case were on the team that tried to verdict *Krakauer v. Dish Network, L.L.C.*, Civil Action No. 1:14-CV-333, Dkt. No. 292 (M.D.NC. September 9, 2015), a certified TCPA class action which resulted in more than a $61,000,000 award for approximately 50,000 telemarketing calls after a five-day trial, which is one of the few TCPA class action matters to go to trial. This decision was upheld by the Fourth Circuit Court of Appeals in May of 2019. *See Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643 (4th Cir. 2019).[4] Broderick Decl. at ¶ 11(xxxiii)**.** This fact supports their fee request. *See Relafen*, 231 F.R.D. at 80 (observing skill of class counsel).

### E.    The Complexity and Duration of the Litigation

Courts recognize that "particularly in class action suits, there is an overriding public interest in favor of settlement,' ... because ... 'class action suits have a well-deserved reputation as being most complex.'" *In re Pool Prods. Distrib. Market Antitrust Litig.*, 310 F.R.D. 300, 316 (E.D. La. 2015) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). This case was complex as Class Counsel fully litigated the issue of QuoteWizard's liability and the validity of his alleged consent to be texted on an individual basis before obtaining proceeding to full blown

---

[4] The United States Supreme Court rejected *certiorari* of this matter in December of 2019. *See DISH Network L.L.C. v. Krakauer,* 140 S. Ct. 676 (2019).

class discovery, obtaining class certification and reaching a favorable class-wide settlement.

Discovery in this case was particularly hard fought, with the defendant appealing each discovery ruling issued by Magistrate Judge Kelley to this Court, and even filing an interlocutory appeal as to this Court's discovery ruling to the First Circuit. Broderick Decl. ¶ 3. Indeed, QuoteWizard filed an interlocutory appeal to the First Circuit Court of Appeals regarding this Court's denial of a motion for reconsideration of a discovery order in favor of Plaintiff. Doc. No. 169.

This case also involved complex expert witness work. Class Counsel and their expert analyzed 48,451,776 text messages sent to 15,842,632 telephone numbers along with purportedly corresponding consent data associated with the telephone numbers. Class Counsel and their expert carefully culled the massive amount of data down to the certified Settlement Class of 66,693 unique telephone numbers that received 314,828 illegal texts which could be proven on a classwide basis through common proof, all of which would survive against QuoteWizard's purported defenses. *See* Doc. No. 340 at 6-8 (describing multi-step methodology employed to arrival the final class composition). Class Counsel additionally defeated Defendant's *Daubert* motion to exclude their expert witness, after full briefing. Doc. 368 at 5-7. Class Counsel's hard work on these issues led to Plaintiff's success in obtaining adversary class certification. *Id.* at 7-38. The complexity factor weighs in favor of approving the requested fee.

### F.    The Risk of Nonpayment

Class Counsel performed the legal work for this case on an entirely contingent basis. Broderick Decl. ¶ 5. "Many cases recognize that the risk assumed by an attorney is 'perhaps the foremost factor' in determining an appropriate fee award." *In re Lupron Mktg. & Sales Practices Litig.*, No. 01-CV-10861-RGS, 2005 WL 2006833, at *4 (D. Mass. Aug. 17, 2005).

First, Class Counsel accepted significant risk of nonpayment for their work in light of

recent developments and uncertainty in the law. Early in this litigation, the U.S. Supreme Court accepted review of *Barr v. American Association of Political Consultants, Inc.*, in which the Court considered the constitutionality of a TCPA exception and whether it was severable from the remaining provisions. Class Counsel vigorously pursued Plaintiff's claims, nonetheless. In *Barr*, the Supreme Court struck down that provision of the TCPA as an unconstitutional content-based restriction on speech and severed it from the rest of the statute. 140 S. Ct. 2335, 207 L. Ed. 2d 784 (2020) (July 6, 2020). However, defendants in TCPA cases have contended that the Supreme Court's fractured decision in *Barr* amounts to an adjudication that the entire TCPA was unconstitutional. They argue that from the moment Congress enacted the offending government-debt exception to the moment the Supreme Court severed that exception to preserve the rest of the law, the TCPA was unconstitutional and any alleged TCPA violations during that time are not enforceable in federal court. Indeed, multiple federal courts have adopted this interpretation. *See Creasy v. Charter Communs., Inc.,* No. 20-1199, 2020 U.S. Dist. LEXIS 177798, at *2 (E.D. La. Sep. 28, 2020).[5] As such, the Settlement Class members risked recovering *nothing* if this Court or the First Circuit sided with the Court in *Creasy*.

The risk of nonpayment was also substantial because class certification is far from certain in TCPA cases, including in TCPA cases decided by another court in this District and elsewhere in Massachusetts. *See e.g. Sandoe v. Bos. Sci. Corp.,* 333 F.R.D. 4, 9 (D. Mass. 2019) (denying TCPA class certification motion holding, "plaintiff has not met his burden of demonstrating that common issues predominate. The universe of potential class members includes only individuals who are associated with telephone numbers that Boston Scientific and its partner clinics believed

---

[5] *See also Lindenbaum v. Realgy, LLC*, --- F.Supp.3d ---, 2020 WL 6361915, at *4 (N.D. Ohio Oct. 29, 2020); *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, 2020 WL 7346536 (M.D. Fl., Dec. 11, 2020).

to be registered to clinic patients. This is not a case where the defendant engaged in 'random robocalling.'"); *Bais Yaakov of Spring Valley v. ACT, Inc.,* 328 F.R.D. 6 (D. Mass. 2018); *West Concord 5-10-1.00 Store, Inc. v. Interstate Mat Corp.*, No. 10-00356-C, 2013 Mass. Super. LEXIS 22, 2013 WL 988621, at *1 (Mass. Super. Ct. Mar. 5, 2013). Losing a motion for class certification was a meaningful risk from the outset of this case.

Even with the class certified, Class Counsel and Plaintiff faced substantial obstacles in establishing QuoteWizard's liability for the allegedly violative texts. QuoteWizard's affirmative defenses heightened the risk of no recovery at all. QuoteWizard defended its telemarketing campaign claiming throughout the litigation that it had "prior express written consent" with Plaintiff and the class.

TCPA defendants in text messaging cases have also been able to successfully argue that a cellular telephone is not a "residential" telephone, as required under the TCPA. "A cellular phone and a residential phone are not the same thing." *Moore v. Triumph CSR Acquisition, LLC*, No. 1:23-cv-04659, 2023 WL 8601528, at *2 (N.D. Ill. Dec. 12, 2023); *accord Gaker v. Q3M Ins. Sols.*, No. 3:22-cv-00296, 2023 WL 2472649, at *3 (W.D.N.C. Feb. 8, 2023). Since all of the text messages in this case were sent to cellular telephones, this also posed an existential risk.

And even had Plaintiff succeeded on the merits and prevailed on appeal, a reduction in statutory damages was possible. *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1125 (9th Cir. 2022) (vacating "the district court's denial of the defendant's post-trial motion challenging the constitutionality of the statutory damages award to permit reassessment of that question guided by the applicable factors.").

Underscoring the fairness of the compensation recovered for Class Members, the court in *Markos v. Wells Fargo Bank, N.A.* characterized a $24 per-claimant recovery in a TCPA class

action—far less than what participating Settlement Class Members stand to receive here—as "an excellent result when compared to the issues Plaintiff would face if they had to litigate the matter." No. 15-1156, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017). Here, Plaintiff's counsel has secured a result that exceeds that recovery by at least *three times* that amount.

Knowing these risks, Class Counsel "accepted the responsibility of prosecuting this class action on a contingent fee basis and without any guarantee of success or award." *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 281 (3d Cir. 2009) ("Class Counsel invested a substantial amount of time and effort to reach this point and obtain the favorable Settlement."). An unfavorable ruling in *Barr, Facebook Inc.*, a denial of class certification, or a finding that QuoteWizard had prior express consent to text Plaintiff and members of the Settlement Class would have wiped out Plaintiff's claims. The risk of nonpayment here was high, and this factor supports Class Counsel's requested attorney fee award.

### F.    Class Counsel's Time Invested

Class Counsel's commitment of time and resources in this case supports their requested fee award. As is reflected in the attached Declarations of Class Counsel, they spent a collective 5,558.7 hours on this case, yielding a lodestar at their rates of $4,267,347.00, and incurred out of pocket expenses of $322,289.21.  Broderick Decl. ¶ 8 (tallying total hours and expenses); McCue Decl. ¶ 4; Paronich Decl. ¶ 5; Barrett Decl. ¶3; Washkowitz Decl. ¶ 5;

A lodestar analysis confirms that the fee is reasonable.  Where exceptional results are obtained, courts have consistently used high multipliers of the lodestar in awards compensating the attorneys who achieved those results.  *See, e.g., Weiss v. Mercedes-Benz of North America, Inc.*, 899 F. Supp. 1297, 1304 (D.N.J. 1995) (lodestar multiplier of 9); *In re RJR Nabisco, Inc., Sec. Litig.* [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96, 984 at 94,267 (S.D.N.Y. 1992) (lodestar multiplier of 6); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 169 (S.D.N.Y. 1991) (lodestar

multiplier of 8.74); *Donald R. Szydlik v. Associates National Bank,* No. 92-1025, slip op. at 8 (W.D. Pa. Sept. 19, 1997) (lodestar multiplier of 8.5); *Glendora Community Redevelopment Agency v. Demeter*, 155 Cal. App. 3d 465, 479, 203 Cal Rptr. 389, 398 (Cal. Ct. App. 1984) (lodestar multiplier of 12).  The benefits achieved for the class in this case fully warrant a one third fee using the lodestar cross-check as well. The current lodestar multiplier is approximately 1.5, further confirming the reasonableness of the fees.

### G.    Awards in Similar Cases

Courts across the country have awarded attorneys' fees in class action TCPA cases in the percentage Class Counsel requests here, including Judge Saylor and Judge Hillman. *See Davila-Lynch v. HOSOPO Corporation, et. al.*, Civil Action No. 18-cv-10072 (D. MA. February 5, 2021) (Saylor, J.) (awarding one-third of the entire common fund in attorneys' fees); *Heaton et al v. Motor Vehicle Assurance et. al.,* Civil Acton No. 17-cv-40169 (D. MA. June 9, 2020) (Hillman, J.) (Same); *Hopkins v. Modernize, Inc.,* Civil Acton No. 17-cv-40169 (D. MA. October 9, 2019) (Hillman, J.) (Same); *Gonzalez v. TCR Sports Broad. Holding, LLP*, No. 1:18-CV-20048-DPG, 2019 U.S. Dist. LEXIS 87506, 2019 WL 2249941, at *6 (S.D. Fla. May 24, 2019) ("[C]ourts in this district regularly base fee awards on the market rate of one-third of the common fund in TCPA class action settlements."); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 949-50 (D. Minn. 2016) (citing TCPA cases from three circuits where attorney's fees were awarded roughly "equal to one-third of the settlement fund").[6]

---

[6] *See also Elzen v. Educator Grp. Plans, Ins. Servs.*, No. 1:18-cv-01373-WCG, 2019 U.S. Dist. LEXIS 170798, at *6 (E.D. Wis. Oct. 2, 2019) (awarding fees of one-third the Settlement Fund in a TCPA class action); *Martin v. JTH Tax, Inc.,* No. 13-6923 (N.D. Ill. Sept. 16, 2015) (38% of total fund in TCPA case); *Willett v. Redflex Traffic Systems, Inc.,* 13-cv-1241, ECF No. 269 (D. N.M. October 24, 2016) (awarding class counsel one third of settlement fund in TCPA class action).

The similarity of Class Counsel's requested fee award to those in similar cases favors approval of the award.

### H.    Public Policy Considerations

Public policy considerations support awarding Class Counsel the requested fee award. There is a "significant societal interest" in holding defendants accountable through class action litigation. *In re Lupron Mktg. & Sales Practices Litig.*, No. 01-CV-10861-RGS, 2005 WL 2006833, at *6 (D. Mass. Aug. 17, 2005). Indeed, lawsuits that curtail violative conduct on a widespread basis provide a valuable service in safeguarding "the welfare of the public." *In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167, 171 (D. Mass. 2014).

TCPA violations often cause widespread annoyance and harm to millions of individuals in a single telemarketing campaign. Indeed, as the Supreme Court explained last year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr* at *5. But an individual's claim is costly and inefficient to bring on its own, making class action relief the best vehicle to ensure the TCPA is enforced. As the Supreme Court previously explained:

> The current federal district court civil filing fee is $350. 28 U.S.C. §1914(a). How likely is it that a party would bring a $500 claim in, or remove a $500 claim to, federal court? Lexis and Westlaw searches turned up 65 TCPA claims removed to federal district courts in Illinois, Indiana, and Wisconsin since the Seventh Circuit held, in October 2005, that the Act does not confer exclusive jurisdiction on state courts. All 65 cases were class actions.

*Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386, 132 S. Ct. 740, 753 (2012) As discussed above, TCPA class actions are risky, all the more during this litigation when two Supreme Court decisions were pending. Public policy supports Plaintiff's attorney fee request given the relief they received in the context of the risk.

Class Counsel achieved the largest TCPA settlement in Massachusetts history and under

the Settlement Agreement QuoteWizard will retain, at its own expense, a compliance company and/or third-party law firm to audit QuoteWizard's procedures to ensure that going forward QuoteWizard's consent language and process for obtaining consent complies with the TCPA. *See* Settlement Agreement, Doc. No. 389-1 at ¶ 4.05. The compliance company and/or third-party law firm will monitor QuoteWizard's procedures for a period of three years following final approval of the settlement to ensure compliance with state and federal telemarketing law. *Id*. This benefit extends beyond members of the Settlement Class and is a public benefit which further supports approval of the requested fee.

### III.    Class Counsel's Expenses are Reasonable and Should Be Reimbursed

Counsel whose efforts create a common fund to benefit a class are entitled to recover from the fund "expenses. reasonable in amount, that were necessary to bring the action to a climax." *In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999); *In re Synthroid*, 264 F.3d 712, 722 (7th Cir. 2001). To be recoverable, the expenses must be "adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components, Inc. Sec. Litig.,* 166 F. Supp. 2d 72, 108 (D.N.J. 2001).

Here, Class Counsel incurred $322,289.21 in litigation expenses. *See* Broderick Decl. at ¶8 (tallying expenses). These expenses are well-documented, based on the firms' books and records and include, among other things, expert fees; deposition transcripts, travel expenses, court fees and mediation costs. Courts routinely authorize similar expenses. *See In re Remeron End-Payor Antitrust Litig.,* No. Civ. 02-2007, 2005 WL 2230314, at *32 (D.N.J. Sept. 13, 2005) (approving costs).

### IV.    The Requested Service Award Should Be Approved

Class Counsel respectfully request that the Court recognize Mr. Mantha's exemplary

service to the class in this case with a service award of $100,000. This is the *exact* amount offered to Mr. Mantha in an offer of judgment several years ago by the defendant QuoteWizard, in an effort to entice him to settle this case individually to the detriment of the class – which he refused to do.

As the First Circuit recently noted, "Rule 23 is designed to encourage claimants with small claims to vindicate their rights and hold unlawful behavior to account." *Murray v. Grocery Delivery E-Servs. USA Inc.,* 55 F.4th 340, 353 (1st Cir. 2022) (citing *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 41 (1st Cir. 2003) ("The core purpose of Rule 23(b)(3) is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation."); *Bais Yaakov of Spring Valley v. ACT, Inc.,* 798 F.3d 46, 49 (1st Cir. 2015) (noting that, through class actions, "Congress has chosen to empower citizens as private attorneys general to pursue claims for well-defined statutory damages"). However, "Rule 23 class actions still require named plaintiffs to bear the brunt of litigation (document collection, depositions, trial testimony, etc.), which is a burden that could guarantee a net loss for the named plaintiffs unless somehow fairly shifted to those whose interests they advance." *Murray,* 55 F.4th at 352–53. To fairly shift that burden and "remove an impediment to bringing meritorious class actions," *id.,* courts "routinely approve service awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Carlson v. Target Enter., Inc*., 447 F. Supp. 3d 1, 5 (D. Mass. 2020). Federal courts often exercise their discretion under Rule 23(d) and (e) to approve case  contribution awards to plaintiffs who instituted and prosecuted actions on the theory that there  would be no class-wide benefit absent their suits.  These awards recognize the burdens assumed  by plaintiff litigants in instituting and prosecuting the actions, the time spent by plaintiff on  communicating

15

with counsel and fulfilling class responsibilities of supervision, and the risks that  plaintiffs bear

in bringing the suit.

Courts in this district consider these factors in determining the appropriateness of a

service award:

> 1) the risk to the class representative in commencing suit, both financial and
> otherwise; 2) the notoriety and personal difficulties encountered by the class
> representative; 3) the amount of time and effort spent by the class representative;
> 4) the duration of the litigation and; 5) the personal benefit (or lack thereof)
> enjoyed by the class representative as a result of the litigation.

*Id*. (citing *Swack v. Credit Suisse First Boston, LLC*, No. 02-11943-DPW, 2006 WL 2987053, at

*4) (D. Mass. Oct. 4, 2006). *See also Herb v. Homesite Grp. Inc.,* No. 1:22-CV-11416-JEK,

2024 WL 3593918, at *3-4 (D. Mass. July 31, 2024) (same); *Sasoon v. Postmates, Inc.,* No. CV

17-11397-JCB, 2020 WL 8092224, at *3-4 (D. Mass. May 15, 2020) (same); *Physicians*

*Healthsource, Inc. v. Vertex Pharms. Inc.,* No. 1:15-CV-11517-JCB, 2019 WL 13178515, at *4

(D. Mass. Mar. 21, 2019) (same); *In re Puerto Rican Cabotage Antitrust Litig.,* 815 F. Supp. 2d

448, 468–69 (D.P.R. 2011) (same).

Here, the service award is warranted under these factors. First, Mr. Mantha filed this class

action and fought for class at significant personal risk. QuoteWizard accused Mr. Mantha of

engaging in unethical conduct and threatened him personally with sanctions. It subpoenaed and

deposed his employer, even though his employment had nothing to do with the allegations at

issue. Second, prosecuting the case was personally difficult for Mr. Mantha as it required him to

dedicate substantial time to this litigation, including sitting for multiple days of depositions and

responding to QuoteWizard's extensive document demands. QuoteWizard even insisted on

deposing Mr. Mantha's wife, who had nothing to do with the allegations, and his friend, whose

sole involvement in this case was to advise Mr. Mantha to seek counsel regarding illegal

telemarketing texts. In addition, Mr. Mantha's employer, the Doctor Franklin Perkins School in Lancaster, which serves children with development and behavioral challenges, was served with a document subpoena and was deposed.

However, the most compelling factor supporting the requested service award is the fifth *Carlson* factor – the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. At the outset of this case, QuoteWizard responded to Mr. Mantha's allegations with personal attacks. It claimed the lawsuit was frivolous, and threatened Rule 11 sanctions.[7] While simultaneously attacking Mr. Mantha and his counsel, QuoteWizard offered Mr. Mantha $4,000 to settle his claims individually. When Mr. Mantha rejected this, QuoteWizard increased the offer to $50,000. Thereafter, QuoteWizard moved for summary judgment claiming that Mr. Mantha's lawsuit was an "abuse of the Telephone Consumer Protection Act" and that he had engaged in a "money making scheme" of which it was apparently a victim. *See* Doc. No. 202, Defendant's Memorandum of Law in Support of Motion for Summary Judgment at 1. Then, after it lost on summary judgment, QuoteWizard offered to buy Mr. Mantha off for $100,000. Mr. Mantha rejected this offer as well, and chose to press on for the class's benefit, leading to a settlement to which no class member has objected.

Mr. Mantha's remarkable service is detailed in his affidavit attached as Exhibit 6. A service award equal to the amount he rejected in settlement is a particularly appropriate reward for his more-than-adequate representation of the class. *See Allapattah Servs., Inc. v. Exxon Corp.,* 454 F. Supp. 2d 1185, 1221–22 (S.D. Fla. 2006) ("The interests of the Class, such as here, are better served when they are presented by vigilant, competent and independent class representatives who actively monitor class counsel and the conduct of the litigation. Moreover,

---

[7] A copy of the Rule 11 letter can be found at Doc. No. 107-1.

where lawyers are rewarded for their risk and efforts on behalf of a class, but class representatives are not, there is little service for class representatives to serve as active client participants in the litigation, thus negating the 'adequate representation' safeguard of Rule 23 and transferring all decision-making responsibility to counsel.")

Although higher than the norm, the proposed service award is not without precedent. *See Dial Corporation v. News Corporation*, 317 F.R.D. 426 (S.D. N.Y. 2016) (awarding $50,000 each for six class representatives, justified by the significant investment of resources by each in pursuing the claims, the risk of retaliation from defendants, and the substantial time and effort expended by executives and employees in gathering documents, preparing for depositions, and being ready to testify at trial); *Van Vranken v. Atlantic Richfield Co,* 901 F.Supp. 294, 299–300 (N.D. Cal. 1995) (approving $50,000 award where the representative participated in "years of litigation," including sitting for two depositions, attending forty-nine telephone conferences, five meetings with class counsel, and three pre-trial hearings, and testifying at trial). *In re Domestic Air Transp*., 148 F.R.D. 297, 357–58 (N.D. Ga. 1993) (awarding $142,500 to class representatives out of $50 million fund); *In re Dun & Bradstreet Credit Svcs. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (awarding $215,000 to several class representatives out of an $18 million fund).

For the above reasons, Mr. Mantha's request for a service award of $100,000.00 should be granted.

## CONCLUSION

Based on the foregoing, Plaintiff's Counsel respectfully request that the Court approve the requested attorneys' fees and expenses and the proposed service award to Mr. Mantha.

Dated: July 19, 2025

Plaintiffs by their attorneys,

/s/ Anthony I. Paronich
PARONICH LAW, P.C.
Anthony I. Paronich
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
anthony@paronichlaw.com

Edward A. Broderick
BRODERICK LAW, P.C.
10 Hillside Avenue
Winchester, MA 01890
(617) 738-7080
ted@broderick-law.com

Matthew P. McCue
THE LAW OFFICE OF MATTHEW P.
McCUE
1 South Avenue, Suite 3
Natick, MA 01760
(508) 655-1415
mmccue@massattorneys.net

John W. Barrett
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
jbarrett@baileyglasser.com

Alex M. Washkowitz
CW LAW GROUP, P.C.
160 Speen Street, Suite 309
Framingham, MA 01701
alex@cwlawgrouppc.com

*Attorneys for Plaintiff and the Settlement Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 19, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send notification to all attorneys of record.

/s/ Edward A. Broderick
Edward A. Broderick