# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH MANTHA on behalf of himself and others similarly situated, | : : : |
| Plaintiff, | : : |
| v. | : : : |
| QUOTEWIZARD.COM, LLC | : : |
| Defendant. | : : : : |
| | : |

Case No. 1:19-cv-12235-LTS-PK

# MEMORANDUM IN SUPPORT OF PLAINTIFF'S
# MOTION FOR FINAL APPROVAL

**INTRODUCTION**

After completion of a robust direct notice campaign that reached over 91% of all settlement class members, not a single class member has objected to any aspect of the proposed settlement, nor have any requested exclusion. The settlement is unprecedented in that it appears to be the largest ever Telephone Consumer Protection Act settlement obtained in a Massachusetts federal court. Most importantly, the cash payments to class members are substantial; if the Court awards the requested fees, costs, and service award, class members will receive cash payments of **$76 to $1,520, with an average payout of over $178, calculated at $38 per text received, without having to file claims.**

By any measure, this is a strong settlement. But considering the risks of going forward to trial and appeals — a process that would lead to no certain result, and in any event would take years before class members would receive payment — the settlement is an outstanding result. For the reasons stated below, the settlement is fair, adequate, and reasonable, and should be finally approved so that class members may receive its benefits.

**ARGUMENT**

A. **Overview of settlement terms.**

The settlement would resolve a certified class action brought under the do-not-call provisions of Telephone Consumer Protection Act, 47 U.S.C. § 227(c), on behalf of consumers who received unsolicited telemarketing texts promoting QuoteWizard's services. The settlement class is identical to the class the Court has certified, and consists of all persons within the United States (a) whose telephone numbers were listed on the National Do Not Call Registry, (b) who received more than one telemarketing text within any twelve-month period at any time from Drips, (c) to promote the sale of QuoteWizard's goods or services, and (d) whose numbers are

included on the Class List. The class period runs from October 29, 2015 through the date of preliminary approval. *See* Class Action Settlement Agreement, Doc. No. 389-1, ¶ 2.20.

The settlement provides for a non-reversionary common fund of $19 million, funded in two stages, with two distributions to class members. *Id.* ¶ 2.24. The first distribution (for one-third of the total amount) will occur 21 days after the first portion of the settlement is funded (likely in the fall of 2025, if the Court approves the settlement), with the remaining distribution to issue 21 days after the second funding payment is made (likely by late spring, 2026). *Id.* ¶ 5.24.

Following deductions for Court-approved attorneys' fees and litigation costs, any service award to the named plaintiff, and administration costs, the remainder of the fund will be paid to class members. *Id.* ¶ 4.01. Each class member will be awarded one "share" for each qualifying text message received, and class members will recover according to the number of text messages that they received. *Id.* ¶ 5.04. The anticipated range of recovery per class member of $76 to $1,520, with an average payout of $178, falls within the reasonable and meaningful range for statutory TCPA damages, particularly given the absence of any claim requirement and the guaranteed distribution of the entire fund.

In addition to the payout, QuoteWizard will retain, at its own expense, a compliance company or third-party law firm to audit QuoteWizard's procedures to ensure that QuoteWizard's consent language and process for obtaining consent complies with the TCPA. *Id.* ¶ 4.05. The compliance company or third-party law firm must monitor QuoteWizard's procedures for a period of three years following final approval of the settlement to ensure compliance with state and federal telemarketing law. *Id.*

**B. The settlement class meets Rule 23(a) and (b)(3)'s standards for certification.**

The class certification required through this settlement mandates satisfaction of the standards outlined in Fed. R. Civ. P. 23(a) and (b). As the Court found in its order certifying the class, and again in its order preliminarily approving the Settlement, the class meets Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements. Doc. Nos. 368, 391.[1] The class also meets the Fed. R. Civ. P. 23(b) predominance and superiority requirements. *Id.* Under First Circuit case law, predominance "does not require an entire universe of common issues, but does require 'a sufficient constellation' of them." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 70 (D. Mass. 2005) (citing *Waste Mgmt. Holdings, Inc. v. Mowbray,* 208 F.3d 288, 298 (1st Cir. 2000)). The superiority requirement ensures that a class action resolution will achieve economies of time, effort, and expense, and promote a uniform decision to similarly situated people, without sacrificing procedural fairness or causing undesirable results. *Id.*

One court considered these principles when it concluded that class member differences on causation and damages did not defeat predominance. *Bezdek v. Vibram USA Inc.*, 79 F. Supp.3d 324, 342 (D. Mass. 2015).[2] Here, predominance is met because all class members received unwanted text advertisements promoting QuoteWizard's services, and all claims arise under the same provisions of the TCPA. And a class action is the superior method for resolving these claims, where the relief obtained through this settlement is comfortably within the range of

---

[1] Plaintiff incorporates in full his Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement (Doc. No. 389) and his Motion for an Award of Attorneys' Fees and for a Service Award for the Class Representative (Doc. No. 393).

[2] As the court in *Bezdek* observed, "by employing a broad definition of the class that includes individuals who purchased FiveFingers footwear during the relevant time period for any reason (other than resale), the settlement provides relief to the broadest class of individuals to whom relief would potentially be available." *Id.* at 341. The court went on: "Although this is notably less than the theoretical maximum potential relief available at trial, it appears as a practical matter in the range of what any class member could reasonably expect through pursuit of an individual claim, if it were feasible." *Id.* at 342.

the "up to the $500" statutory penalty (47 U.S.C. 227(c)(5)) that a class member would otherwise have to seek through an individual lawsuit—a costly, time-consuming, and frankly unlikely endeavor that is obviated by the class action relief obtained through this settlement.[3]

All class certification requirements are met here.

### C. After completion of the Court-approved settlement notice, no class member has opted out, and none has objected.

Rule 23(e)(1) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement. The best practicable notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 704 (7th Cir. 2014), citing *United States Air Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010). The notice that this Court approved, and which was disseminated to the settlement class, satisfies these criteria. The notice is clear and straightforward and provides class members with enough information to evaluate whether to participate in the settlement.

AB Data, Ltd. ("AB Data"), the Court's appointed settlement administrator (Doc. No. 391 ¶ 10), has complied with the Court's notice order and provided the class notice, which

---

[3] Other courts that certified TCPA classes reached a similar conclusion. *See Bee, Denning, Inc. v. Capital Alliance Grp.*, No. 13-cv-2654- BAS-WVG, 2015 U.S. Dist. LEXIS 129495, at *37-38 (S.D. Cal. Sept. 24, 2015) ("A statute such as the TCPA, which provides for a relatively small recovery for individual violations but is designed to deter conduct directed against a large number of individuals, can be effectively enforced only if consumers have available a mechanism that makes it economically feasible to bring their claims. Without the prospect of a class action suit, corporations balancing the costs and benefits of violating the TCPA are unlikely to be deterred"). Indeed, as the Massachusetts Court of Appeals stated, ""the majority of courts to have discussed the issue under various cognate class action provisions and hold that the class action mechanism is a superior avenue for adjudication of claims under 47 U.S.C. § 227." *Hazel's Cup & Saucer, LLC v. Around The Globe Travel, Inc.,* 2014 WL 4106870, 3 (Mass. App. Ct. August 22, 2014).

5

reached 91% of class members through a combination of postcard and email notice. Reid Declaration ¶ 10, attached as Exhibit A. This percentage far exceeds the minimum due process threshold for class notice.[4]

In addition to the mailed and emailed notice, AB Data also established a website, www.qwtcpasettlement.com, where potential class members could view case documents, motions (including Plaintiff's Motion for and Award of Attorneys' Fees and Expenses and for a Service Award for the Class Representative), as well as notice forms. *Id.* ¶ 12. The website received 17,736 visits. *Id.* AB Data also established a toll-free telephone number through which potential class members could receive additional information about the settlement. *Id.* ¶ 13. Finally, AB Data provided notice to relevant governmental entities pursuant to the Class Action Fairness Act ("CAFA"), and did not receive an objection from an attorney general of a state or territory or the Attorney General of the United States. *Id.* ¶ 3.

Notice is adequate if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974). Sending notice by first class mail to class members identified by reasonable means is regularly deemed adequate under Rule 23(c)(2). *Reppert v. Marvin Lumber & Cedar Co., Inc.*, 359 F.3d 53, 56-57 (1st Cir. 2004). Notice via email is also endorsed by federal courts following the 2018 amendment to Fed. R. Civ. P. 23(c)(2)(B), including in TCPA cases.[5] Reid Decl. ¶ 10.

---

[4] *See* Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010), *available at* https://goo.gl/KTo1gB (instructing that notice should have an effective "reach" to its target audience of 70-95%); *see also Swift v. Direct Buy, Inc.*, No. 2:11-cv-401-TLS, 2013 WL 5770633, at *3 (N.D. Ind. Oct. 24, 2013) ("The Federal Judicial Center's checklist on class notice instructs that class notice should strive to reach between 70% and 95% of the class").
[5] *See e.g. Chinitz v. Intero Real Estate Servs.*, No. 18-cv-05623-BLF, 2020 U.S. Dist. LEXIS 224999, at *7 (N.D. Cal. Dec. 1, 2020) ("email notice for each class member for whom

The notice plan constituted the best notice practicable, provided due and sufficient notice to the settlement class, and fully satisfied due process and Rule 23 requirements.

### D. The Settlement is fair, reasonable, and adequate, and should be finally approved.

The First Circuit has long recognized an overriding public interest in favor of settling class actions. *Lazar v. Pierce,* 757 F.2d 435, 439 (1st Cir. 1985). A district court may approve a class action settlement if it is fair, reasonable, and adequate, and not a product of collusion. *See* Fed. R. Civ. P. 23(e)(2); *In re Relafen Antitrust Litig.,* 231 F.R.D at 57, 71-72; *City Pshp. Co. v. Atlantic Acquisition*, 100 F.3d 1041, 1043 (1st Cir. 1996). In making this determination, a court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2), revised on December 1, 2018.

Consideration of these factors supports final approval.

### 1. The class representative and class counsel have adequately represented the class.

"When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight." *Rolland v. Cellucci*, 191 F.R.D. 3,

---

an email address is available…if email notice cannot be used, there will be postcard notice for each class member."); *Abramson v. American Advisors Group, et. al.,* No. 2:19-cv-01341-MJH, ECF No. 80 (W.D. PA, September 29, 2020) (same).

10 (D. Mass. 2000). Class counsel were appointed to represent the class by the Court in its class certification order, and their efforts on behalf of the class are detailed in Plaintiff's Motion for an Award of Attorneys' Fees submitted at Doc. No. 393.

### 2. Arm's length negotiations, conducted after years of litigation, led to the settlement.

The settlement agreement is entitled to a presumption of fairness and adequacy because experienced, fully-informed counsel reached it only after years of contested litigation and extensive arm's-length negotiations, through the assistance of nationally-recognized mediator Bruce A. Friedman. Doc. No. 389 at 4. While the parties were preparing for trial, they conducted two mediations with Mr. Friedman, which led to the proposed settlement. "Although the district court must carefully scrutinize the settlement, there is a presumption in favor of the settlement if the parties negotiated it at arms-length after conducting meaningful discovery." *New England Carpenters Health Benefits Fund, et al. v. First Data Bank, Inc.,* 602 F.Supp.2d 277, 280 (D. Mass. 2009); *see also In re Relafen Antitrust Litig.,* 231 F.R.D. at 71-72; *Lapan v. Dick's Sporting Goods, Inc.,* No. 1:13-cv-11390-R, 2015 U.S. Dist. LEXIS 169508, at *3 (D. Mass. Dec. 11, 2015) ("The assistance of an experienced mediator…reinforces that the Settlement Agreement is non-collusive.").[6]

### 3. The relief for the class is more than adequate considering the costs, risks, and delay of trial and appeal.

Rule 23(e)(2)(C) directs the Court to evaluate whether "the relief provided for the class is adequate." The settlement requires QuoteWizard to pay $19,000,000 into a settlement fund. The proposed Settlement Class includes approximately 66,693 unique telephone numbers who

---

[6] *In re Telik Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D. NY 2008) (the use of an experienced mediator "in the settlement negotiations strongly supports a finding that they were conducted at arm's length and without collusion").

received 314,828 text messages. Doc. No. 340 at 8. If the Court approves the fees and costs requested and the Service Award, the distribution to each class member would be *a minimum* $76.00 with an additional $38.00 per text received, with the largest distribution being $1,520.00. The average payout is $178.00.

The class's positive reaction to this settlement, with no objections or requests for exclusion, and the lack of objection from any state attorney general or other public official, is a strong indicator that this relief is adequate. This is especially true considering that the statutory damages provision applicable to the TCPA claims here provides for damages of "up to $500" per violation, 47 U.S.C. §227(c)(5), meaning a jury could find for the class after a trial and award only a nominal sum. The guaranteed average payout of $178 is anything but nominal.

And as Plaintiff pointed out in his motion for attorneys' fees, what makes this settlement stand out from other TCPA settlements is that the payout here is to every class member, unlike in most settlements where class members must submit claims — a burden that typically results in only a fraction of class members actually receiving payment. A 2019 Federal Trade Commission study of class action settlements found that in cases requiring a claims process, the median calculated claims rate was 9%, and the weighted mean (*i.e.*, cases weighted by the number of notice recipients) was 4%. *See Consumers and Class Actions, A Retrospective Analysis of Settlement Campaigns*, Federal Trade Commission, September 2019 at § 2.1 (p.11).[7]

Accordingly, when comparing the per class member settlement value of this case, the per class member value is actually 10 to 20 times more valuable on a per capita basis than cases requiring a claims process. Bearing in mind this fundamental distinction between this settlement and typical settlements involving a claims process, this case represents an extraordinary result for

---

[7] https://www.ftc.gov/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns (lasted visited July 2, 2025).

the Settlement Class. *See, e.g.*, *Rose v. Bank of Am. Corp.*, No. 11-cv-02390-EJD, 2014 U.S. Dist. LEXIS 121641, at *30 (N.D. Cal. Aug. 29, 2014) ($20 to $40 to class members submitting claims); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) ($30 to class members submitting claims); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) ($34.60 to class members submitting claims).

The adequacy of the relief obtained is more apparent considering that this case was fraught with litigation and delay risk to the Plaintiff and the class if no settlement was obtained. First, after this case was filed, the Supreme Court assessed the constitutionality of the TCPA in *Barr v. Am. Ass'n of Political Consultants (AAPC),* 140 S. Ct. 2335, 207 L. Ed. 2d 784 (2020) (July 6, 2020). At issue in that case was a 2015 congressional amendment to the TCPA's general robocall restriction to permit robocalls made to collect debts owed to or guaranteed by the federal government. In *Barr*, the Supreme Court struck that provision of the TCPA down as an unconstitutional content-based restriction on speech and severed it from the rest of the statute. *Id.* However, defendants in TCPA cases have argued that the Supreme Court's fractured decision in *Barr* amounts to an adjudication that the entirety of § 227(b)(1)(A)(iii) was unconstitutional from the moment Congress enacted the offending government-debt exception to the moment the Supreme Court severed that exception to preserve the rest of the law. Indeed, at least two federal courts have adopted this interpretation. *See Lidenbaum v. Realgy, LLC*, No. 1:19 CV 2862, 2020 U.S. Dist. LEXIS 201572 (N.D. Ohio Oct. 29, 2020); *Creasy v. Charter Communs., Inc.,* No. 20-1199, 2020 U.S. Dist. LEXIS 177798, at *2 (E.D. La. Sep. 28, 2020).

Second, a significant portion of this case was *lost* following the Supreme Court's decision in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021), a decision that all but made it impossible to prove violations of the TCPA's provisions regulating automated telephone dialing system

10

("ATDS") calls. Indeed, the parties stipulated to the dismissal of Plaintiff's ATDS claim. Doc No. 187.

Third, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards — even after a plaintiff has prevailed on the merits — on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons – Algonquin, Inc.*, No. 09-910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights …. Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."). Moreover, the narrative of the Defendant's telemarketing compliance efforts could present a case for reduction of any damages awarded after trial and some courts have applied this principle in the TCPA context. For example, in *Golan v. Veritas Entm't, LLC*, the court reduced the damages awarded in that TCPA class action lawsuit to $10 a call. *Golan v. Veritas Entm't, LLC*, No. 4:14CV00069 ERW, 2017 U.S. Dist. LEXIS 144501, at *6-9 (E.D. Mo. Sep. 7, 2017).

Fourth, the collection of any judgment in this case was not without risk. QuoteWizard is a subsidiary of Lending Tree, Inc. (Lending Tree") and Lending Tree denied it was liable for any debts of QuoteWizard. A bankruptcy filing by QuoteWizard could have all but ruled out even a nominal class recovery. One court put this factor into perspective against a pocket larger and deeper than QuoteWizard's when approving a TCPA settlement against Chase Bank:

> Individual class members receive less than the maximum value of their TCPA claims, but they receive a payout without having suffered anything beyond a few unwanted calls or texts, they receive it (reasonably) quickly, and they receive it without the time, expense, and uncertainty of litigation…. *[C]omplete victory for Plaintiff at $500 or $1,500 per class member could bankrupt [the defendant]…. [The] recovery in the hand is*

11

> *better than a $500 or $1,500 recovery that must be chased through the bankruptcy courts.*

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) (emphasis added). The same analysis is true here.

Fifth, in any class action there is a risk of decertification, a course other courts have taken for a variety of reasons. *See, e.g., Cordoba v. DIRECTV, LLC,* 942 F.3d 1259 (11th Cir. 2019) (decertifying TCPA class due to predominance issues related to standing); *Trenz v. On-Line Adm'rs*, No. 2:15-cv-08356-JLS-KS, 2020 U.S. Dist. LEXIS 187788 (C.D. Cal. Aug. 10, 2020) (same, but for individualized issues of consent). If the class was decertified, whether by this Court or the First Circuit Court of Appeals on an appeal then it would leave few, if any, class members with both the resources and financial incentive to chase an "up to $500" award for each statutory violation on their own.

Sixth and finally, while Plaintiff may have prevailed at trial, there is always the risk of extensive delays associated with appeals, the prospect of which would push out the recovery of any funds by years.

**4.     The settlement treats all class members the same, and will equitably pay all class members without the added burden of a claims process.**

The settlement treats each class member in precisely the same way. *See* Fed. R. Civ. P. 23(e)(2)(C) & (D) advisory committee's note (asking whether "the scope of the release may affect class members in different ways that bear on the apportionment of relief"). Every class member will receive the same payment for each QuoteWizard text. No class member was favored, disfavored, or otherwise treated differently.

12

## CONCLUSION

Plaintiffs respectfully submit that the settlement in this matter is an excellent result for class members, and the response from class members suggests they agree. A proposed Final Approval Order is attached to Plaintiff's Motion for Final Approval as <u>Exhibit 1 thereto.</u>

| Dated: August 20, 2025 | Respectfully Submitted: |
|---|---|
| | <u>/s/ Edward A. Broderick</u><br>Edward A. Broderick<br>BRODERICK LAW, P.C.<br>10 Hillside Avenue<br>Winchester, MA 01890<br>(617) 738-7080<br>ted@broderick-law.com<br><br>John W. Barrett<br>BAILEY & GLASSER LLP<br>209 Capitol Street<br>Charleston, WV 25301<br>(304) 345-6555<br>jbarrett@Sorokinglasser.com<br><br>Matthew P. McCue<br>THE LAW OFFICE OF MATTHEW P. MCCUE<br>1 South Avenue, Suite 3<br>Natick, MA 01760<br>(508) 655-1415<br>mmccue@massattorneys.net<br><br>Anthony Paronich<br>PARONICH LAW, P.C.<br>350 Lincoln St., Suite 2400<br>Hingham, MA 02043<br>(617) 485-0018<br>anthony@paronichlaw.com<br><br>Alex M. Washkowitz<br>CW LAW GROUP, P.C.<br>160 Speen Street, Suite 309<br>Framingham, MA 01701<br>alex@cwlawgrouppc.com |

**<u>Certificate of Service</u>**

  I hereby certify that on August 20, 2025 I filed the foregoing vias the Court's CM/ECF system which will effect service on all counsel of record.

                 <u>*Edward A. Broderick*</u>
                 Edward A. Broderick

Dated: August 20, 2025