## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

JOSEPH MANTHA, on behalf of himself and
others similarly situated,

     Plaintiff,                                 Case No. 1:19-cv-12235-LTS-PK

v.


QUOTEWIZARD.COM, LLC,

     Defendant.

## PLAINTIFF'S SUPPLEMENTAL SUBMISSION IN SUPPORT
## OF A SERVICE AWARD FOR THE CLASS REPRESENTATIVE

The law has long recognized that class actions cannot succeed without the willingness of ordinary citizens to serve as class representatives. Unlike absent class members, named plaintiffs subject themselves to discovery, public scrutiny, reputational attack, and the risk of retaliation. Service awards exist to compensate for those unique burdens, to encourage others to step forward in future cases, and to prevent defendants from defeating class litigation through the "pick off" strategy of enticing a representative to settle individually.

Over the course of more than five years of litigation, Plaintiff Joseph Mantha rejected repeated individual settlement offers, culminating in a $100,000 proposal designed to buy his silence. He did so at great personal cost. He endured threats of sanctions, attacks on his integrity, invasive depositions of his wife and employer, and accusations against his family and friends. He spent hours upon hours assisting counsel, responding to discovery, and remaining informed about the complex procedural battles that defined this case. Only because Mr. Mantha persevered did the class achieve an extraordinary $19 million settlement, delivering direct cash payments to

more than 60,000 consumers averaging $178 per class member without a claim form being required — a result unmatched in many TCPA settlements nationwide.

The requested $100,000 service award is appropriate. It reflects not only the traditional factors courts evaluate, but also the extraordinary fact that Mr. Mantha declined escalating settlement offers, thereby preserving the class's claims. Without his refusal, there would be no settlement, no class recovery, and no compliance reforms.

The single greatest risk to many consumer class actions is the defendant's effort to settle individually with the named plaintiff. Courts have consistently condemned this tactic, recognizing that without a mechanism to reward those who decline such offers, defendants could evade accountability entirely. See *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980) (recognizing that absent class certification, defendants could moot class claims by satisfying named plaintiffs individually). By refusing escalating offers — including an eventual $100,000 — Mr. Mantha fulfilled his fiduciary duty to the class at significant personal sacrifice. His refusal ensured that the claims of tens of thousands of consumers were preserved. Courts have recognized that such decisions are precisely what justify enhanced service awards. See *Parker v. J.M. Smucker Co.*, 2017 WL 605288, at *3 (N.D. Cal. Feb. 15, 2017) (noting the importance of rejecting settlement overtures inconsistent with class relief). Indeed, public policy supports recognition of plaintiffs who resist individual offers. Otherwise, rational plaintiffs would have every incentive to accept substantial personal payments and abandon the class. The TCPA is a statute that Congress designed to be enforced through private class actions. See *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386 (2012). But if defendants can routinely extinguish claims through "pick offs," the statute would become moribund. Courts therefore should ensure that plaintiffs who resist such tactics are compensated commensurately.

1

The extraordinary history of this case demonstrates why this service award is warranted for Mr. Mantha.

Unlike most absent class members, Mr. Mantha became the target of sustained personal attacks. In his sworn declaration, he recounts that Defendant accused him of fabricating consent and threatened sanctions against him and his counsel. He was deposed twice, and his wife — who had nothing to do with the litigation — was also forced to sit for a deposition. His employer received a subpoena, causing him anxiety about his professional reputation and job security. The Defendant even attempted to drag his wife's brother, who suffers from serious personal struggles, into the litigation narrative as part of a baseless theory of "consent".

Defendant also attacked his friend, Steven Novia, deposing him and accusing both men of participating in a supposed "scheme" to bring lawsuits. These efforts not only increased the litigation burden but publicly impugned Mr. Mantha's honesty and integrity. Few individuals would willingly endure such personal and reputational strain in the pursuit of claims and these tactics created discord within his family and inflicted stress that cannot be measured in dollars.

However, the Defendant has provided this Court with a measure by which it can try because in addition to personal attacks, Mr. Mantha was faced with the temptation of repeated settlement offers made solely to him. These offers escalated dramatically over time, culminating in a $100,000 payment proposal. For a husband and father of two young children, that amount represented a life-changing sum. Yet Mr. Mantha rejected each offer because they provided no relief for the class and no forward-looking compliance commitments. His steadfast refusal exemplifies the fiduciary duty Rule 23 requires and underscores why courts provide service awards.

Courts evaluating whether to grant a service or incentive award to a class representative properly consider whether the plaintiff has declined individual settlement offers that would have extinguished the class claims. This factor reflects both the fiduciary duty imposed by Rule 23 and the unique risks that named plaintiffs undertake when they resist "pick-off" tactics. In *Rodriguez v. West Publishing Corp.*, the Ninth Circuit explained that incentive awards serve to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and to recognize their willingness to act as a private attorney general." 563 F.3d 948, 958–59 (9th Cir. 2009). The rejection of a personal settlement offer—sometimes reaching life-changing amounts—is a prime example of a "financial risk" undertaken on behalf of the class. Indeed, Courts within this District have also emphasized the broader public interest in supporting plaintiffs who endure hardships to advance class claims. In *In re Lupron Marketing & Sales Practices Litigation*, Judge Stearns awarded service payments to class representatives, underscoring that "there is a significant societal interest in supporting plaintiffs who endure personal difficulties to vindicate claims." 2005 WL 2006833, at *6 (D. Mass. Aug. 17, 2005).

Academic commentary reinforces this point. Professor Theodore Eisenberg and Professor Geoffrey Miller's empirical study, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA Law Review 1303 (2006), analyzed 374 class action settlements and found that incentive awards were commonly granted in cases where class representatives bore unusual risks, including reputational harm or the sacrifice of personal gain. The authors emphasized that incentive awards are "best understood as compensation for the non-pecuniary costs that class representatives incur by serving the interests of absent class members," which includes refusing settlement overtures that would prejudice the class (id. at 1338–39). Likewise, Professor

3

Elizabeth Chamblee Burch, in *Incentive Awards: The Missing Analysis*, 74 Texas Law Review 1801 (1996), argued that courts should make explicit findings that incentive awards serve to offset disincentives such as the temptation of individual settlement, reputational attack, or intrusive discovery. By doing so, courts ensure that representatives are not penalized for fidelity to the class.

It is also important to emphasize the practical impact of the requested award on class recovery. The proposed service award, if approved, would reduce each class member's average payment from an average of around $179, to around $178, a small cost considering Mr. Mantha's refusal to drop this case and leave the class with nothing. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (approving incentive awards where "the incremental reduction in recovery to class members was de minimis compared to the benefit of committed representation").

By contrast, if Mr. Mantha had "lost his nerve" and accepted the escalating pick-off offers and threats — culminating in a $100,000 personal settlement — the class would have received nothing. The value to each class member in that scenario would not have been reduced by pocket change, but eliminated entirely. This stark contrast illustrates why courts should weigh rejected settlement offers when evaluating a service award: the named plaintiff's decision to prioritize the class over personal enrichment preserved the possibility of collective recovery. Put simply, the marginal effect of a service award on class distributions pales in comparison to the catastrophic effect that would have resulted had Mr. Mantha accepted the defendant's offers. A service award is thus not a windfall, but a measured recognition of the difference between "a few cents less" and "nothing at all" in response to service.

Mr. Mantha's perseverance over nearly six years of litigation—rejecting escalating individual settlement offers, withstanding personal attacks, enduring invasive discovery into his family and employment, and continuing to serve faithfully despite the strain—ensured that more than 60,000 consumers now stand to receive meaningful cash payments averaging $178 each, without even the burden of submitting a claim. His rejection of a $100,000 personal settlement preserved not pennies, but the entirety of the class's recovery. In these circumstances, denying him the recognition of this service award would invert Rule 23's policy: it would penalize, rather than honor, the very conduct that preserved this case for the benefit of absent class members.

In fact, denying this award would be inequitable. As the First Circuit has recently emphasized in affirming the utility of service awards, the burdens of litigation on the class representative are such that they "could guarantee a net loss for the named plaintiffs unless somehow fairly shifted to those whose interests they advance." *Murray v. Grocery Delivery E-Services USA Inc.*, 55 F.4th 340, 353 (1st Cir. 2022). Far from being unfair to class members, the fully compensatory service award proposed here will not only "remove an impediment to bringing meritorious class actions[,]" it will "fit snugly into the requirement of Rule 23(e)(2)(D) that the settlement 'treats class members equitably relative to each other.'" *Id.*

It bears emphasis that no class member has objected to the proposed service award. This silence is not apathy; it is the strongest signal of support that can be given in the context of a class settlement. The class members themselves, who stand to benefit directly from this recovery, plainly recognize that Mr. Mantha's sacrifices and service made their compensation possible. Their lack of objection reflects an appreciation that the requested award is not excessive, but instead a fair acknowledgment of the risks he bore on their behalf.

Accordingly, Plaintiff respectfully requests that the Court grant the requested $100,000 service award to Joseph Mantha.

Dated: October 7, 2025

Plaintiffs by their attorneys,

/s/ Anthony I. Paronich
PARONICH LAW, P.C.
Anthony I. Paronich
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
anthony@paronichlaw.com

Edward A. Broderick
BRODERICK LAW, P.C.
10 Hillside Avenue
Winchester, MA 01890
(617) 738-7080
ted@broderick-law.com

Matthew P. McCue
THE LAW OFFICE OF MATTHEW P.
McCUE
1 South Avenue, Suite 3
Natick, MA 01760
(508) 655-1415
mmccue@massattorneys.net

John W. Barrett
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
jbarrett@baileyglasser.com

Alex M. Washkowitz
CW LAW GROUP, P.C.
160 Speen Street, Suite 309
Framingham, MA 01701
alex@cwlawgrouppc.com

6

*Attorneys for Plaintiff and the Settlement Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 7, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send notification to all attorneys of record.

*/s/ Anthony I. Paronich*
PARONICH LAW, P.C.